1
CRAIG H. MILLET, SBN 106027, CMillet@gibsondunn.com
SOLMAZ KRAUS, SBN 223117, SKraus@gibsondunn.com
2
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
3
Irvine, California 92612-4412
Telephone: (949) 451-3800
4
Facsimile: (949) 451-4220

5
Attorneys for Debtors and Debtors in Possession

FILED & ENTERED

JUL 02 2009

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY rhambo   DEPUTY CLERK

6

7

UNITED STATES BANKRUPTCY COURT

8

FOR THE CENTRAL DISTRICT OF CALIFORNIA

9

RIVERSIDE DIVISION

10

11

In re

12

FLEETWOOD ENTERPRISES, INC., et al.,

13

Debtors.

14

15

16

17

18

| | |
|---|---|
| | CASE NO. 09-14254-MJ |
| | Chapter 11 |
| | [Jointly Administered] |

**ORDER (I) AUTHORIZING AND
APPROVING THE SALE OF RV ASSETS
FREE AND CLEAR OF LIENS, CLAIMS,
INTERESTS AND ENCUMBRANCES;
(II) AUTHORIZING AND APPROVING
ASSUMPTION AND ASSIGNMENT OF
CONTRACTS AND LEASES; AND
(III) GRANTING RELATED RELIEF**

19

20

21

22

**Hearing:**
Date:       June 24, 2009
Time:       1:30 p.m.
Place:      Courtroom 302
            3420 Twelfth Street
            Riverside, CA 92501
Judge:      Honorable Meredith A. Jury

23

24

25

26

27

28

Upon the motion of Fleetwood Enterprises, Inc. and its affiliated debtors and debtors in

possession (collectively, the "Debtors") dated May 29, 2009 (the "Sale Motion"), for entry of an order

authorizing (i) the sale and conveyance of substantially all of the assets related to the Debtors' motorized recreational vehicle business (the "Assets")[1] free and clear of all liens, claims, encumbrances and other interests pursuant to 11 U.S.C. § 363(b) and (f), and (ii) the assumption and assignment of certain unexpired leases and executory contracts, to AIP RV Acquisition Company, LLC (the "Purchaser"); and the Court having reviewed and considered: the record of the Sale Hearing (defined below), the record in these Chapter 11 cases, the Sale Motion and the objections thereto, and having determined that the relief requested in the Sale Motion is necessary and in the best interests of the Debtors, their estates, creditors, and other parties in interest; and it appearing that proper and adequate notice of the Sale Motion has been given and that no other or further notice need be given; and after due deliberation thereon; and good and sufficient cause appearing therefor; and hearings as to the Sale Motion and the form of this Order having been held before this Court on June 24, 2009 (the "Sale Hearing"), and all parties in interest having been afforded an opportunity to be heard; and upon the record of the Sale Hearing made by the Debtors before the Court; and any objections to the Sale Motion having been withdrawn, resolved, or overruled by the Court.

**IT IS HEREBY FOUND THAT:**

A. On March 10, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11, Title 11 of United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") (the "Debtors' Chapter 11 Cases"). Pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their business and manage their assets as debtors in possession. No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases.

B. This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtors' Chapter 11 Cases and the Sale Motion is proper in this District and the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Sale Motion.

C. The Sale Motion is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (M), (N) and (O). The statutory predicates for the relief requested in the Sale Motion are §§ 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9006, 9008 and 9014.

D. As evidenced by the certificate of service previously filed with the Court, and based upon representations of counsel at the Sale Hearing, (i) proper, timely, adequate and sufficient notice of the Sale Motion and the Sale Hearing has been provided, (ii) such notice constitutes due and proper notice for purposes of §§ 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9006, 9008 and 9014; (iii) such notice was reasonable, sufficient and appropriate under the circumstances, and (iv) no other or further notice of the Sale Motion, the Sale Hearing or of the entry of this Order is required.

E. A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all persons and entities who received notice in accordance with the notice provisions of the Sale Procedures Order previously approved by this Court.

F. The previous marketing efforts of the Debtors and the notice provided in accordance with the notice provisions of the Sale Procedures Order as previously approved by this Court, afforded potential purchasers a full, fair and reasonable opportunity, under the circumstances, to make the highest and best offer to purchase the Assets and no higher or better offer has been made.

G. The Debtors have exercised sound business judgment in deciding to sell the Assets to the Purchaser and consummate the related transactions pursuant to § 363(b) of the Bankruptcy Code.

H. The Asset Purchase Agreement, substantially in the form annexed as <u>Exhibit A</u> to this Order (the "APA"), was negotiated by the Debtors and the Purchaser and is being entered into by the Debtors and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions. The Purchaser is a good faith purchaser under § 363(m) of the Bankruptcy Code and is entitled to all of the protections afforded thereby. Neither the Debtors, nor the Purchaser, engaged in any conduct that would cause or permit the APA or the sale of the Assets to be avoided under § 363(n) of the Bankruptcy Code.

I. The Debtors have demonstrated sound business justifications for the assumption and assignment of the contracts identified on <u>Exhibit B</u> to this Order (the "Assumed Contracts") pursuant to

§ 365(a) and (f) of the Bankruptcy Code and have provided adequate assurance, if required by the Bankruptcy Code, (i) that any default, if any, under the Assumed Contracts will be cured; and (ii) of the Purchaser's future performance of the Assumed Contracts in accordance with § 365(b) of the Bankruptcy Code.

J.　　The Purchase Price (as defined in the APA) offered by the Purchaser for the Assets (i) is fair and reasonable; (ii) is the highest and best offer received for the sale of Assets; (iii) will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other practically available alternative; and (iv) under the circumstances, constitutes reasonably equivalent value, fair consideration and reasonable market value for the Assets under the Bankruptcy Code and under the laws of the United States, and of any state, territory or possession, or the District of Columbia.

K.　　The Debtors are the sole and lawful owners and have good and marketable title in the Assets.

L.　　The Debtors may sell the Assets free and clear of any and all Liens and Claims (as defined in paragraph 8 below), with all such Liens and Claims (as defined below) to attach to the sale proceeds with the priority and to the extent set forth in paragraph 26 below, because, in each case, either (i) each entity having a security interest in the Assets has consented to its sale or is deemed to have consented to its sale, or (ii) one or more of the other standards set forth in § 363(f) of the Bankruptcy Code has been satisfied.  Bank of America, N.A., as agent ("BofA") has consented to the Sale Motion subject to the terms of this Order, including but not limited to paragraphs 25, 26 and 27 hereof.  Additionally, the Debtors may sell the Assets free and clear of liens held by ISIS Lending, LLC ("ISIS") and liens held by Deutsche Bank Trust Company Americas, as Trustee and Collateral Agent for the 14% Notes ("Deutsche Bank"), because ISIS and Deutsche Bank have consented to the sale of Assets subject to the terms of this Order, including but not limited to paragraphs 25, 26 and 27 hereof.

M.　　Other than BofA, ISIS, Deutsche Bank, Westchester Fire Insurance Company ("Westchester") and Ace INA Insurance Company ("ACE"), those holders of Liens and Claims (as defined below) who did not object, or who withdrew their objections, to the sale or the Sale Motion are deemed to have consented pursuant to § 363(f)(2) of the Bankruptcy Code.  Those holders of Liens and

Claims (as defined below) who did object fall within one or more of the subsections of § 363(f) of the Bankruptcy Code and are adequately protected by having their Liens and Claims (as defined below), if any are valid and enforceable, attach to the cash proceeds of the sale in accordance with paragraph 26 of this Order.

N.      IDG USA, LLC d/b/a Boring-Smith an Industrial Distribution, Inc. Company ("IDG") objected to the inclusion in the sale of certain inventory located in a segregated storeroom within one of the Debtors' manufacturing facilities in Decatur, Indiana and identified on <u>Exhibit C</u> to this Order (the "IDG Inventory") on the grounds that it is IDG's sole property and not property of any of the Debtors' estates.  IDG has acknowledged that the storeroom also contains property owned by the Debtors which the Debtors bought from IDG and paid IDG for, but which the Debtors have not moved out of the segregated storeroom facility (the "Stored Property").  The Stored Property is identified on <u>Exhibit D</u> to this Order.  The Debtors and the Committee have acknowledged that (i) the IDG Inventory is not property of the Debtors' estates; and (ii) the Debtors do not assert any claim to or interest in the IDG Inventory.  IDG has acknowledged that (i) the Stored Property is property of the Debtors' estates and (ii) IDG does not assert any Liens and Claims (as defined below) in the Stored Property.

O.      The Debtors have  satisfied the requirements of §§ 365(b)(1) and 365(f) of the Bankruptcy Code in connection with the assumption and assignment of the Assumed Contracts by curing defaults, if any, under the Assumed Contracts, including by providing for Purchaser's payment of the cure amounts set forth on <u>Exhibit B</u> to this Order (the "Cure Amounts") in accordance with the terms of the APA.  The Purchaser, to the extent required, has provided adequate assurance of the Purchaser's future performance under the Assumed Contracts within the meaning of §§ 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

P.      The sale of the Assets to the Purchaser under the APA will be a legal, valid, and effective transfer of the Assets, and will vest in the Purchaser all right, title and interest of the Debtors in the Assets free and clear of all Liens and Claims  (as defined below).

Q.      The Purchaser would not consummate the transactions contemplated by the Sale Motion, thus adversely affecting the Debtors, its estates and their creditors, if the sale of the Assets to the Purchaser were not free and clear of all Liens and Claims (as defined below), or if the Purchaser

Gibson, Dunn & Crutcher LLP

would, or in the future could, be liable for any such Liens and Claims (as defined below), or if the transfer of the Assets could not be made under § 363 of the Bankruptcy Code. Except as specifically provided in the APA or this Order, Purchaser shall not assume or become liable for any liens, claims, interests and/or encumbrances relating to the Assets being sold by the Sellers. Any such valid and enforceable Liens and Claims (as defined below) shall attach to the proceeds of the sale as set forth in paragraph 26 below.

R.      The Debtors have articulated sound business reasons for performing the APA and selling the Assets as set forth in the Motion outside of a plan of reorganization, and it is a reasonable exercise of the Debtors' business judgment to execute, deliver and consummate the APA with the Purchaser and consummate the transactions contemplated by the APA.

S.      The terms and conditions of the APA, including the total consideration to be realized by the Debtors pursuant to the APA, are fair and reasonable and the transactions contemplated by the APA are in the best interests of the Debtors, their creditors and estates.

T.      A valid business purpose exists for approval of the transaction contemplated by the Sale Motion pursuant to §§ 105, 363(b), (f), and (m) of the Bankruptcy Code. The Debtors may sell, transfer and assign the Assets free and clear of all Liens and Claims (as defined below) in accordance with §§ 105 and 363 of the Bankruptcy Code. As a condition to purchasing the Assets, the Purchaser requires, except as set forth in the APA, that: (a) the Assets be sold free and clear of all liens, claims, encumbrances, options, rights of first refusal and other interests; and (b) the Purchaser shall have no liability whatsoever for any obligations of or claims (including without limitation as defined in §101(5) of the Bankruptcy Code) that have been or may have been asserted against the Debtors, except as otherwise explicitly provided in the APA. Purchaser would not enter into the APA and consummate the transactions contemplated by the APA, thus adversely affecting the Debtors' estates, if the sale to Purchaser was not free and clear of all liens, claims, encumbrances, options, rights of first refusal and other interests or if Purchaser was or would be liable for any obligations of or claims (including without limitation as defined in § 101(5) of the Bankruptcy Code) that have been or may be asserted against the Debtors, except as otherwise explicitly provided in the APA.

U. The transfer of the Assets to the Purchaser is or will be a legal, valid and effective transfer of the Assets, and will vest the Purchaser with all right, title and interest in and to the Assets, free and clear of all Liens and Claims (as defined below), except those explicitly and expressly assumed by the Purchaser in the APA or this Order.

V. A valid business purpose exists for approval of the assumption and assignment of the Assumed Contracts by the Debtors to the Purchaser in accordance with § 365 of the Bankruptcy Code.

W. An injunction against creditors and third parties pursuing any Liens and Claims (as defined below) as set forth in paragraph 37 below is necessary to induce Purchaser to close under the APA; the issuance of such an injunction is therefore necessary to avoid irreparable injury to the Debtors' estates, and will benefit all creditors.

X. Approval of the sale of the Assets and consummation of the sale of the Assets at this time are in the best interests of the Debtors, their creditors, the bankruptcy estates and other parties in interest.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, EFFECTIVE IMMEDIATELY, that:**

1. The findings of fact set forth above and conclusions of law stated herein shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

2. The Sale Motion be, and hereby is, granted, as further described herein.

3. The APA and all terms and conditions thereof, and the transactions contemplated thereby be, and are, approved and the Debtors are hereby authorized and empowered to enter into, and to perform, their obligations under the APA and to take such actions as are necessary to effectuate the terms of the APA without any further corporate authorization or order of this Court, except that the following shall supersede (govern in lieu of) anything in the APA to the contrary (capitalized terms used without definition in the following sub-paragraphs, unless otherwise defined therein, have the meanings given to them in the APA):

a.      The Estimated Purchase Price and the Final Purchase Price shall be calculated (including by any Reviewing Accountant), and the Post-Closing Statement shall be prepared, in accordance with the Final Pre-Closing Statement attached as <u>Exhibit E</u> to this Order, and such Final Pre-Closing Statement shall replace Annex I and Schedule 1.3(a)(ii) to the APA; *provided*, *however*, that Purchaser may revise Schedule 1.3(a)(ii) on or before the Closing Date to remove any Closing Liabilities from such schedule;

b.      In the event that the conditions in Section 6 of the APA are satisfied (or waived by the Sellers) and the Sellers fail to transfer their right, title and interest (free and clear of Encumbrances other than Permitted Encumbrances) to (i) any parcel of Transferred Real Property or (ii) any material portion of the Transferred Assets, taken as a whole, such failure shall be deemed a material breach of this Agreement by the Sellers (a "Material Breach").  In the event of a Material Breach, and the expiration of all applicable cure periods existing within the APA, the Purchaser shall have the right to terminate the APA upon written notice to the Sellers and the Sellers shall jointly and severally reimburse the Purchaser, in cash, for documented out-of-pocket expenses actually incurred by the Purchaser in connection with the APA and the transactions contemplated thereby, including the Purchaser's reasonable attorneys' fees and expenses (the "Expense Reimbursement").  The Sellers' obligation to pay the Expense Reimbursement shall survive termination of the APA and shall, pursuant to Section 364(c)(1) of the Bankruptcy Code, constitute a super-priority administrative expense with priority over all administrative expenses of the kind specified in Section 503(b) or 507(a) of the Bankruptcy Code, *provided*, *however*, that such super-priority administrative expense shall be junior in all respects to, and shall not be paid until the indefeasible payment or other satisfaction in full of,  (i) any super priority administrative expense claims or expenses (including, without limitation, any contingent or unliquidated claims) of the Prepetition Credit Facility Secured Parties, the Postpetition Secured Parties (as such terms are defined in the "Interim Order (1) Authorizing Debtors to Obtain Postpetition Secured Financing, (2) Authorizing the Use of Cash Collateral, (3) Granting Liens and Superpriority Claims, (4) Modifying the Automatic Stay and (5) Setting Final Hearing," entered by this Court on

Gibson, Dunn &
Crutcher LLP

April 1, 2009 (the "Interim DIP Order")), and/or any of their successors and assigns (collectively, the "Secured Lenders"), (ii) any super priority administrative expense claims or expenses (including, without limitation any contingent or unliquidated claims ) of Westchester and/or Ace and/or any of their successors and assigns, and (iii) all other super priority administrative expense claims approved by this Court in these bankruptcy cases prior to the entry of this Order.  The Purchaser shall not be entitled to a break-up fee under any circumstances and the provisions of Section 7.2 of the APA are not (i) approved by this Order, (ii) effective or (iii) deemed to be part of the APA; and

> c.     In the event that the APA is terminated by the Purchaser (or in the event of a breach or violation of any representation and warranty or covenant or agreement of any Seller under the APA), the Expense Reimbursement (if applicable, in accordance with this Order) shall be the Purchaser's sole and exclusive remedy against the Sellers (whether in contract or tort, under statute, rule, law or otherwise), in full satisfaction of all of the Seller's obligations under the APA, except in the case of fraud or intentional misconduct.

4.     To the extent that the provisions of this Order conflict with the provisions of the APA or the Sale Procedures Order, this Order shall govern.

5.     All objections to the Sale Motion or the relief requested therein, and all objections to the form of this Order, that have not been withdrawn, waived or settled, and all reservations of rights included therein, are overruled on the merits and denied.

6.     The IDG Inventory shall be excluded from the Assets being sold pursuant to this Order and the APA.  The Stored Property shall be included in the Assets being sold pursuant to this Order and the APA.

7.     Any party that received notice of the Sale Motion and did not object thereto by timely filing an objection shall be deemed to have consented to the relief sought in the Sale Motion.  Pursuant to § 363(b) of the Bankruptcy Code, the Debtors are hereby authorized to consummate the sale of the Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the APA.

8.     Except as expressly permitted or otherwise specifically provided in the APA or this Order, pursuant to §§ 105(a), 363(f) and 365 of the Bankruptcy Code, the Assets and the Assumed

Contracts shall be transferred to the Purchaser as of the Closing Date (as defined in the APA) free and clear of any interest in the Assets or the Assumed Contracts of an entity other than the Debtors' bankruptcy estates, including, without limitation, any and all liens (including mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), security interests, encumbrances and claims (including, but not limited to, any "claim" as defined in § 101(5) of the Bankruptcy Code), reclamation claims, mortgages, deeds of trust, pledges, covenants, restrictions, hypothecations, charges, indentures, loan agreements, instruments, contracts, leases, licenses, options, rights of first refusal, rights of offset, recoupment, rights of recovery, judgments, orders and decrees of any Court or foreign or domestic governmental entity, claims for reimbursement, contribution, indemnity or exoneration, assignment, debts, charges, suits, rights of recovery, interests, products liability, alter-ego, environmental, successor liability, tax and other liabilities, causes of action and claims, to the fullest extent of the law, in each case whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, or known or unknown, whether arising prior to, on, or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "Liens and Claims"), with all such Liens and Claims upon the Assets to be unconditionally released, discharged and terminated, and with all such Liens and Claims to attach only to the proceeds of the transaction to the extent, and with the priority, set forth in paragraph 26 below, subject to the rights, claims, defenses and objections, if any, the Debtors may possess with respect thereto.

        9.      Without in any way limiting the generality of the provisions of this Order, any and all mortgages, liens and encumbrances upon the real property described in the attached Exhibit of Real Property to be Sold (Exhibit F attached to this Order) and known as (i) 1903 Patterson; (ii) 1010 Commerce Drive; (iii) 2004 Patterson; (iv) 1800 Winchester Street; (v) 2709 Patterson Street, (vi) 1031 US 224 E; (vii) 1410 and 1420 Patterson Street; (viii) 1803 Winchester Street; (ix) 300 South 13th Street and (x) the Parcel referred to as "West Monroe Street" and which is more specifically described in Exhibit F are and shall be unconditionally released, discharged and terminated, with all

Gibson, Dunn &
Crutcher LLP

such Liens and Claims to attach only to the sale proceeds as set forth in paragraph 26 below. A copy of this order shall be recorded in the Office of the Adams County Recorders Office against the properties identified in the Exhibit of Real Property to be Sold to effectuate the release, discharge and cancellation of any and all mortgages as disclosed in the public records of Adams County, Indiana, which shall include but in no way be limited to the following mortgages:

       a.      Mortgage and Security Agreement with Assignment of Rents and Profits and UCC Financing Statement (Fixture Filing) from Gold Shield of Indiana, Inc., an Indiana corporation (formerly known as Gold Shield Fiberglass of Indiana, Inc.) to Bank of America, N.A., as agents for an amount not to exceed $237,000,000.00 dated July 1, 2005 and recorded July 7, 2005 in Mortgage Record 620, pages 31-61 as Instrument No. 200500003309; and modified by First Amendment dated January 3, 2007 and recorded January 10, 2007 as Instrument No. 2007000193.

       b.      Mortgage and Security Agreement with Assignment of Rents and Profits and UCC Financing (Fixture Filing) from Gold Shield of Indiana, Inc. (formerly known as Gold Shield Fiberglass of Indiana, Inc.) to Bank of America, N.A. in the principal amount of $22,000,000.00 dated July 1, 2005 and recorded July 7, 2005 as Instrument No. 200500003300. Amended by First Amendment  to Mortgage and Security Agreement with Assignment of Rents and Profits and UCC Financing Statement (Fixture Filing), recorded January 10, 2007 as Instrument No. 2007000193.

       c.      Mortgage and Security Agreement with Assignment of Rents and Profits and UCC Financing Statement (Fixture Filing) from Gold Shield of Indiana, Inc. (formerly known as Gold Shield Fiberglass of Indiana, Inc.) to Deutsche Bank Trust Company Americas, as Trustee and Collateral Agent up to the principal amount of $103,000,000.00 dated as of December 12, 2008 and recorded January 22, 2009 as Instrument No. 2009000299.

       d.      Mortgage and Security Agreement with Assignment of Rents and Profits and UCC Financing Statement (Fixture Filing) from Gold Shield of Indiana, Inc., an Indiana corporation, to Deutsche Bank Trust Company Americas, in the amount of $103,000,000.00, dated December 12, 2008 and recorded January 22, 2009 as document 2009000298.

e.      Mortgage from Fleetwood Motor Homes of Indiana, Inc. to Bank of America, N.A. in the principal amount of $260,000,000.00, dated July 27, 2001 and recorded July 31, 2001 in Book 433 page 301 as Instrument No. 200100003684; First Amendment to Mortgage dated May 14, 2004 and recorded May 20, 2004 in Book 577 page 214 as Instrument Number 200400002495; Second Amendment to Mortgage dated July 1, 2005 recorded July 13, 2005 in Book 620 page 488 as Instrument No. 200500003415; Third Amendment to Mortgage dated January 3, 2007 and recorded January 10, 2007 as Instrument No. 2007000191.

f.      Mortgage and Security Agreement with Assignment of Rents and Profits and UCC Financing Statement (Fixture Filing) from Fleetwood Motor Homes of Indiana, Inc. to Deutsche Bank Trust Company Americas, as Trustee and Collateral Agent, up to the principal amount of $103,000,000.00 dated as of December 12, 2008 and recorded January 22, 2009 as Instrument No. 2009000301.

g.      Mortgage and Security Agreement with Assignment of Rents and Profits and UCC Financing Statement (Fixture Filing) from Fleetwood Motor Homes of Indiana, Inc., to Deutsche Bank Trust Company Americas, as Trustee and Collateral Agent in the principal amount of $103,000,000.00 dated as of December 12, 2008 and recorded January 22, 2009 as Instrument No. 2009000302.

h.      Mortgage and Security Agreement with Assignment of Rents and Profits and UCC Financing Statement (Fixture Filing) from Fleetwood Motor Homes of Indiana, Inc. to Deutsche Bank Trust Company Americas, as Trustee and Collateral Agent up to the principal amount of $103,000,000.00 dated as of December 12, 2008 and recorded January 22, 2009 as Instrument No. 2009000300.

10.     At the Closing, the Debtors are authorized to cause the Debtor Fleetwood Travel Trailers of Indiana, Inc to transfer the property known as Plant 43, West Monroe Street, Decatur, Indiana 46733, which is more specifically described in <u>Exhibit F</u>, to the Purchaser free and clear of all Liens and Claims, other than Permitted Encumbrances under the APA.

11.     At the Closing, Debtor Fleetwood Motor Homes of Indiana, Inc. is authorized to transfer the properties known as (i) 1800 Winchester Street, Decatur, Indiana; (ii) 1410 and 1420

Patterson Street, Decatur, Indiana; (iii) 300 South 13th Street, Decatur, Indiana; (iv) 1031 US 224 E, Decatur, Indiana; (v) 1010 Commerce Drive, Decatur, Indiana and (vi) 1803 Winchester Street, Decatur, Indiana, each property is more specifically described in Exhibit F, to the Purchaser free and clear of all Encumbrances, other than Permitted Encumbrances under the APA.

12.     At the Closing, Debtor Gold Shield of Indiana, Inc. is authorized to transfer the properties known as (i) 2709 Patterson Street, Decatur, Indiana; (ii) 2004 Patterson Street, Decatur, Indiana and (iii) 1903 Patterson Street, Decatur, Indiana, each property is more specifically described in Exhibit F, to the Purchaser free and clear of all Encumbrances, other than Permitted Encumbrances under the APA.

13.     [Reserved]

14.     The sale and transfer of the Assets to the Purchaser pursuant to the APA shall constitute a legal, valid and effective transfer of the Assets, and shall vest in the Purchaser all right, title and interest of the Debtors in and to the Assets, free and clear of all Liens and Claims of any kind or nature whatsoever.

15.     If any person or entity that has filed financing statements, assignments, security agreements, lis pendens, or other documents or agreements evidencing Liens and Claims in the Debtors or the Assets shall not have delivered to the Debtors prior to the Closing under the APA, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens and Claims which the person or entity has with respect to the Debtors or otherwise, then (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments releases and other documents on behalf of the person or entity with respect to the Assets and (b) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens and Claims in the Assets of any kind or nature whatsoever.

16.     The transactions contemplated by the APA are undertaken by the Purchaser in good faith, as that term is used in § 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale of the Assets shall not affect the validity of the sale to the Purchaser, unless such authorization is duly stayed pending such

appeal prior to the Closing with respect to the Assets. The Purchaser is a purchaser in good faith of the Assets, which the Purchaser is purchasing pursuant to the terms of the APA, and the Purchaser is entitled to all of the protections afforded by § 363(m) of the Bankruptcy Code.

17. The consideration paid by the Purchaser for the Assets is deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, and of any state, territory or possession or the District of Columbia and may not be avoided under § 363(n) of the Bankruptcy Code.

18. This Order (a) shall be effective as a determination that, except as explicitly set forth in the APA, upon the Closing, all Liens and Claims of any kind or nature whatsoever existing prior to such Closing as to the Debtors or the Assets sold pursuant to the APA have been unconditionally released, discharged and terminated as to the Purchaser and the Assets, and that the conveyances described therein have been effected, and (b) shall be binding upon and shall govern the act of all entities, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.

19. Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

20. The Debtors and their officers, employees, and agents are hereby authorized and directed to execute and deliver, and are empowered to perform under, consummate and implement, the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession, the Assets, free and clear of all Liens and Claims, or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA.

21.     The Debtors are hereby authorized and empowered to assume and assign and sell the Assumed Contracts to the Purchaser free and clear of all Liens and Claims pursuant to Section 363 and 365 of the Bankruptcy Code.  The Assumed Contracts shall be transferred to and remain valid, binding, and in full force and effect for the benefit of the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract, including those of the type described in § 365 of the Bankruptcy Code, that prohibits, precludes, restricts, or conditions such assignment or transfer.

22.     Any provision in an Assumed Contract that purports to declare a breach or default as a result of a change in control of the Debtors' business or requires the consent of a non-seller party is hereby deemed unenforceable under § 365(f) of the Bankruptcy Code, and all Assumed Contracts shall remain in full force and effect and shall be valid, binding, and enforceable upon all non-seller parties thereto to the same extent that they were immediately prior to the Petition Date.

23.     Upon assignment, the Debtors shall be relieved of any liability or Liens and Claims arising after such assignment with respect to the Assumed Contracts.

24.     Each non-Debtor party to any Assumed Contract is forever barred, precluded, estopped, and permanently enjoined from asserting against the Debtors or the Purchaser, or against the property of the Debtors or the Purchaser (including, without limitation, the proceeds of the sale of the Assets), any default existing as of the date of the Sale Hearing; or from asserting against the Purchaser, any counterclaim, defense, setoff, or any other claim asserted or assertable against the Debtors.  Each non-debtor party to an Assumed Contract is hereby bound by the Cure Amount set forth on Exhibit B to this Order.  The Prepetition Cure Amount shall be paid to each non-debtor party to an Assumed Contract at the closing.

25.     The cash proceeds of the sale of the Assets (the "Sale Proceeds") shall be applied as follows:

a.     $10.2 million of the Sale Proceeds shall be held in a segregated account at BofA (the "Segregated Account"), pending a further order of this Court, whether pursuant to paragraph 27 or otherwise, determining the actual amount of the Sale Proceeds that are

allocable to the Assets subject to the first-priority liens and security interests of Deutsche Bank or otherwise providing for the distribution of such Sale Proceeds; and

        b.      The balance of the Sale Proceeds (the "Remaining Proceeds") shall be deposited in the Cash Collateral Account (as defined below) and applied in accordance with the terms of the Interim DIP Order (as extended and modified by that certain Order Extending the Debtors' Authorization to Use Cash Collateral to July 17, 2009 and Continuing Hearing (the "Current Cash Collateral Extension Order")).

26.      Section 1.10 of the APA shall not apply or govern in any respect to the allocation of the Sale Proceeds among the Debtors' creditors, and in connection with any allocation of the Sale Proceeds among the Debtors' creditors, Section 1.10 of the APA shall not bind or limit in any way this Court, the Debtors, any creditor or any other party in interest. The following liens and security interests shall attach to the Sale Proceeds to the extent, and with the priorities, set forth below; *provided* that nothing contained herein shall be deemed to be a finding or determination as to the validity or enforceability of any lien or security interest, and all such liens and security interests shall be subject to the rights, claims, defenses and objections, if any, the Debtors may possess with respect thereto:

        a.      The Secured Lenders shall have (i) a first-priority lien on and security interest in the Remaining Proceeds, any and all other funds in the cash collateral account described in paragraph 5 of the Interim DIP Order (the "Cash Collateral Account"), and the Cash Collateral Account, (ii) a second-priority lien on and security interest in that portion of the funds in the Segregated Account that are determined by the Court, whether pursuant to the proceedings described in paragraph 27 or otherwise, to be allocable to the first-priority liens of Deutsche Bank and (iii) a first-priority lien on and security interest in that portion of the funds in the Segregated Account that are determined by the Court, whether pursuant to the proceedings in paragraph 27 or otherwise, to not be allocable to the first-priority liens and security interests of Deutsche Bank;

        b.      Deutsche Bank shall have (i) a first-priority lien on and security interest in that portion of the funds in the Segregated Account that are determined by the Court, whether pursuant to the proceedings described in paragraph 27 or otherwise, to be allocable to the

Assets subject to such first priority liens and security interests and (ii) a second-priority lien and security interest in the Cash Collateral Account, the Remaining Proceeds and any and all other funds in the Cash Collateral Account, which second priority lien shall be in an amount equal to the lesser of $11.2 million or the amount determined by the Court, whether pursuant to the proceedings described in paragraph 27 or otherwise, to be allocable to the Assets subject to such second priority liens and security interests;

      c.     ISIS shall have (i) a second-priority lien and security interest on the Cash Collateral Account, the Remaining Proceeds and any and all funds in the Cash Collateral Account, which second priority lien shall secure all of Debtor's obligations to ISIS, with the maximum recovery by ISIS therefrom limited to $10.2 million, and (ii) a replacement lien (on account of any inventory that is its collateral and is consumed or sold by the Debtors during the pendency of these Chapter 11 Cases) on Debtors' real property commonly known as 110 Industrial Park Road, Elysburg, PA (Plant 71-1), and 162 Industrial Drive, Alma, GA (Plant 75-1) (and the personal property affiliated therewith) (the "Replacement Collateral"), which lien shall in all respects be junior to any liens and security interests of the Secured Lenders;

      d.     The second-priority liens and security interests of Deutsche Bank and ISIS on and in the Cash Collateral Account, the Remaining Proceeds and any and all other funds in the Cash Collateral Account shall be pari passu with each other, but shall be junior to the liens and security interests of the Secured Lenders; provided that, subject to further order of this Court, the liens and security interests of Deutsche Bank and ISIS on and in the Cash Collateral, the Remaining Proceeds and any and all other funds in the Cash Collateral Account shall not be junior to the liens and security interests of the Secured Lender to the extent (and only to the extent) that the liens and security interests of the Secured Lenders secure loans that (i) are made after the date hereof, (ii) are not extended in order to replace or extend any letter of credit existing as of the date of this Order and (iii) do not represent interest, fees, expenses or other amounts accrued on or in connection with credit and financial accommodations, including letters of credit, existing as of the date of this Order. In furtherance of the foregoing, until the Secured Lenders are Paid in Full, neither Deutsche Bank nor ISIS shall be permitted to exercise

any rights or remedies that it (or anyone on whose behalf it is purporting to act) might have or assert as a secured creditor solely on account of the second-priority liens and security interests described in this paragraph 26 without the prior written consent of BofA. Without limiting the scope of the previous sentence, until the Secured Lenders are Paid in Full, the liens and security interests of Deutsche Bank and ISIS on and in any funds in the Cash Collateral Account described in this paragraph 26 shall not give either of them any right to object to any use by the Debtors of the cash collateral of the Senior Lenders. Once the Secured Lenders have been Paid in Full, both ISIS and Deutsche Bank shall be free to exercise their rights and remedies with respect to their liens on the Cash Collateral Account, and the Debtors will no longer be able to use the funds therein without either their consent or the further order of the Court.

e.     Until the Secured Lenders are Paid in Full, cash in the Cash Collateral Account may continue to be used by the Debtors pursuant to, and subject to the terms and conditions of, the Interim DIP Order, as modified and extended by the Current Cash Collateral Extension Order, or any future cash collateral order approved by the Senior Lenders or approved by the Court over the objection of the Senior Lenders; *provided* that nothing contained herein shall be deemed to affirm, modify or extend the Interim DIP Order or the Current Cash Collateral Extension Order.

f.     As used in this paragraph 26, the term "Paid in Full" shall have the meaning given to it in that certain Intercreditor Agreement, dated as of December 12, 2008, among Fleetwood Enterprises, Inc., certain of its affiliates, BofA and Deutsche Bank.

27.     The Court shall conduct a further hearing on July 24, 2009, at 11:00 am, to consider the allocation of the Sale Proceeds.

28.     Except as provided in this Order, nothing in this Order shall grant Deutsche Bank or ISIS any rights or claims greater or different than what each held as of the Petition Date.

29.     As provided by Rules 6004(h), 6006(d) and 7062 of the Federal Rules of Bankruptcy Procedure, this Order shall not be stayed for ten (10) days after the entry of this Order and shall be effective and enforceable immediately upon entry, and any actions taken pursuant thereto shall survive entry of and shall govern with respect to any conflict with any order which may be entered confirming

any plan(s) of reorganization, dismissing any of these Chapter 11 Cases or converting any of these Chapter 11 Cases to a case under chapter 7.

30.     This Court retains jurisdiction to endorse and implement the terms and conditions of the APA, all amendments thereto, any waivers or consents thereunder, and each of the documents executed in connection therewith in all respects, including but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to the Purchaser, (b) compel delivery of the purchase price or performance of other obligations owed to the Debtors, (c) resolve any disputes arising under or related to the APA, except as otherwise provided therein, and (d) interpret, implement, and enforce the provisions of this Order.

31.     The terms and provisions of the APA and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and creditors, the Purchaser, and its affiliates, successors, designees, and assigns and any affected third parties (including, but not limited to, all persons asserting Liens and Claims in the Assets to be sold to the Purchaser pursuant to the APA), notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

32.     The omission in this Order of specific reference to any particular provision of the APA shall not impair or diminish the effectiveness, propriety, or approval of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

33.     The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties, and in accordance with the terms thereof, without further order of the Court, *provided* that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates or any of its creditors.

34.     All of the Assets shall be, as of the Closing, transferred to and vested in the Purchaser pursuant to the terms of the APA.  Upon the Closing, this Order shall be considered and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Assets to the Purchaser and a bill of sale or assignment transferring good, marketable and indefeasible title in and to the Assets to the Purchaser free and clear of all Liens and Claims.

35.     [Reserved]

36.     On the Closing Date, each of the creditors of the Debtors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Liens and Claims against or in the Assets, if any, as such Liens and Claims may have been recorded or may otherwise exist.

37.     Except as expressly permitted or otherwise specifically provided in the APA or this Order, effective upon closing, all parties and/or entities asserting Liens and Claims and contract rights against the Sellers and/or any of the Assets are hereby permanently enjoined and precluded from, with respect to such Liens and Claims:  (i) asserting, commencing or continuing in any manner any action against the Purchaser or any director, officer, agent, representative or employee of the Purchaser (all such entities are collectively referred to as the "Protected Parties") or against any Protected Party's assets or properties, including without limitation the Assets; (ii) the enforcement, attachment, collection or recovery, by any manner or means, of any judgment, award, decree or order against the Protected Parties or any properties or assets of the Protected Parties, including without limitation the Assets; (iii) creating, perfecting or enforcing any encumbrance of any kind against the Protected Parties or any properties or assets of the Protected Parties, including without limitation the Assets; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Protected Parties; and (v) taking any action, in any manner, in any place whatsoever, that violates the provisions of this Order or the APA.

38.     The provisions of this Order authorizing the sale of the Assets free and clear of Liens and Claims (with such Liens and Claims to attach to the Sale Proceeds as set forth herein) shall be self-executing, and neither the Sellers, the Purchaser nor any other party shall be required to execute or file releases, termination statements, assignments, cancellations, consents or other instruments to effectuate, consummate and/or  implement the provisions hereof with respect to such sale; *provided*, *however*, that this paragraph shall not excuse such parties from performing any and all of their respective obligations under the APA.  Without in any way limiting the foregoing, Purchaser is empowered to execute and file releases, termination statements, assignments, consents, cancellations or other instruments to effectuate, consummate and/or implement the provisions hereof with respect to such sale.

39.     Consummation of the APA and the transactions contemplated therein and thereby do not effect a *de facto* merger or consolidation of the Sellers and the Purchaser or result in the continuation of the Sellers' business under the Purchaser's control.  Purchaser is not the alter ego of, a successor in interest to, or a continuation of the Sellers, nor is Purchaser otherwise liable for the Sellers' debts and obligations, unless specifically provided for in the APA or pursuant to this Order.

40.     All entities who are presently, or on the Closing Date may be, in possession of some or all of the Assets are hereby directed to surrender possession of the Assets to the Purchaser on the Closing Date.

41.     Nothing in this Order or any agreement entered into under this Order releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental unit under police or regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order.

42.     Nothing contained in any plan of reorganization (or liquidation) confirmed in these cases or the order of confirmation confirming any such plan shall conflict with or derogate from the provisions of the APA or the terms of this Order.

43.     The APA is not a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford, and is not in violation of creditors' and equity security interest holders' voting rights.

44.     The provisions of this Order are nonseverable and mutually dependent.

### 

100684921_2.DOC

DATED: July 2, 2009

_____
United States Bankruptcy Judge

| In re: | | CHAPTER | 11 |
|---|---|---|---|
| Fleetwood Enterprises, Inc. | Debtors: | CASE NUMBER | 09-14254-MJ |

## SERVICE LIST FOR THE ENTERED ORDER

### NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **ORDER (I) AUTHORIZING AND APPROVING THE SALE OF RV ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING AND APPROVING ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES; AND (III) GRANTING RELATED RELIEF** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

I.     **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order.  As of (*insert date of service*), the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below:

*Andrew K Alper on behalf of Creditor GE Commercial Distribution Finance Corporation and GELCO Corporation dba GE Capital Fleet Services*
*aalper@frandzel.com, efiling@frandzel.com;ekidder@frandzel.com*

*Hilary L Barnes on behalf of Interested Party Courtesy NEF*
*hilary.barnes@quarles.com, sybil.aytch@quarles.com*

*John J Bingham on behalf of Interested Party Courtesy NEF*
*jbingham@dgdk.com*

*Mark S Blackman on behalf of Creditor 21st Mortgage Corporation*
*MBlackman@AlpertBarr.Com*

*William C Bollard on behalf of Debtor Fleetwood Enterprises, Inc.*
*eal@jbblaw.com*

*Timothy Bortz on behalf of Creditor Timothy Bortz*
*tbortz@state.pa.us*

*John A Boyd on behalf of Interested Party Courtesy NEF*
*fednotice@tclaw.net*

*Louis J Cisz on behalf of Creditor California Self-Insurers' Security Fund*
*lcisz@nixonpeabody.com*

*Peter A Davidson on behalf of Plaintiff Alicia Rice*
*pdavidson@ecjlaw.com*

*Caroline Djang on behalf of Creditor Atwood Mobile Products LLC*
*crd@jmbm.com*

*Richard T Egger on behalf of Interested Party Courtesy NEF*
*richard.egger@bbklaw.com*

1  Matthew B George on behalf of Creditor Ronald Doud
2  mbg@girardgibbs.com

3  Jeffrey T Gwynn on behalf of Creditor Dave Carter & Associates, Inc.
   jgwynn@gwynn-law.com

4  Michael J Heyman on behalf of Creditor AL-KO Kober Corporation
5  michael.heyman@klgates.com

6  Mark D Houle on behalf of Interested Party New York Mellon Trust Co., N.A.
   mark.houle@pillsburylaw.com

7  Sophie A Hubscher on behalf of Creditor Peggy Richan
8  sophie@korperlemonlaw.com

9  Jay W Hurst on behalf of Creditor Texas Comptroller of Public Accounts
   jay.hurst@oag.state.tx.us

10 Paul Jasper on behalf of Creditor Deutsche Bank Trust Company Americas
11 pjasper@dl.com

12 Yale K Kim on behalf of Creditor Brigade Capital Management, LLC
   ykim@allenmatkins.com

13 Solmaz Kraus on behalf of Debtor Fleetwood Enterprises, Inc.
14 skraus@gibsondunn.com, skraus@gibsondunn.com

15 Mary D Lane on behalf of Creditor Committee Official Committee of Creditors Holding Unsecured Claims
   mlane@pszjlaw.com

16 Daniel C Lapidus on behalf of Plaintiff Robert Myers
17 dan@lapiduslaw.com

18 Matthew A Lesnick on behalf of Creditor AT&T Capital Services Inc.
   matt@lesnicklaw.com

19 Elizabeth A Lossing on behalf of U.S. Trustee United States Trustee (RS)
20 elizabeth.lossing@usdoj.gov

21 Donald K Ludman on behalf of Creditor SAP America, Inc.
   dludman@brownconnery.com

22 Gregory O Lunt on behalf of Creditor Bank of America, N.A.
23 gregory.lunt@lw.com

24 Rose D Manos on behalf of Creditor FEMA Trailer
   rmanos@nexsenpruet.com

25 Rose D Manos on behalf of Interested Party Courtesy NEF
26 manos@nexsenpruet.com

27 David W. Meadows on behalf of Creditor American Electric Power
   david@davidwmeadowslaw.com

28 Craig Millet on behalf of Debtor Continental Lumber Products, Inc.

*cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com*

*Byron Z Moldo on behalf of Plaintiff Alicia Rice*
*bmoldo@ecjlaw.com, tmelendez@ecjlaw.com*

*John D Monte on behalf of Creditor Maytag Corporation*
*montelaw@earthlink.net*

*C Daniel Motsinger on behalf of Creditor ProLiance Energy, LLC*
*cmotsinger@kdlegal.com*

*Randy P Orlik on behalf of Creditor ISIS Lending, LLC*
*rorlik@coxcastle.com*

*Leo D Plotkin on behalf of Creditor Textron Financial Corporation*
*lplotkin@lsl-la.com, dsmall@lsl-la.com*

*David M Poitras on behalf of Creditor Atwood Mobile Products LLC*
*dpoitras@jmbm.com*

*Kimberly A Posin on behalf of Creditor Latham & Watkins LLP*
*kim.posin@lw.com*

*Samuel Price on behalf of Creditor National General Assurance Company*
*sprice@donahoeyoung.com*

*Hamid R Rafatjoo on behalf of Creditor Committee Official Committee of Creditors Holding Unsecured Claims*
*hrafatjoo@pszjlaw.com, hrafatjoo@pszjlaw.com*

*Michael Reed on behalf of Creditor Bell County TAD, et al*
*kmorriss@mvbalaw.com, dgibson@mvbalaw.com;dgoff@mvbalaw.com*

*Jeffrey H. Reeves on behalf of Plaintiff Fleetwood Enterprises, Inc.*
*jreeves@gibsondunn.com*

*Martha E Romero on behalf of Creditor c/o Martha E. Romero Texas Taxing Authorities*
*Romero@mromerolawfirm.com*

*Diane W Sanders on behalf of Creditor McLennan County*
*austin.bankruptcy@publicans.com*

*Mark C Schnitzer on behalf of Attorney Mark Schnitzer*
*mschnitzer@rhlaw.com*

*Howard Steinberg on behalf of Other Professional Greenhill & Co., LLC*
*hsteinberg@irell.com, awsmith@irell.com*

*United States Trustee (RS)*
*ustpregion16.rs.ecf@usdoj.gov*

*Anne A Uyeda on behalf of Debtor Fleetwood Enterprises, Inc.*
*auyeda@gibsondunn.com*

*Madeleine C Wanslee on behalf of Creditor Maricopa County Treasurer*
*mwanslee@gustlaw.com, rstein@gustlaw.com*

1
*Michael D Warner on behalf of Creditor IDG USA LLC d/b/a Boring-Smith an Industrial Distribution Group, Inc.*
*Company*
2
*echou@warnerstevens.com*

3
*Martha A Warriner on behalf of Creditor Esco Industries, Inc.*
*mwarriner@rhlaw.com*

4
*Sharon Z Weiss on behalf of Creditor LazyDays RV Supercenter, Inc.*
5
*sweiss@richardsonpatel.com*

6
*Elizabeth Weller on behalf of Creditor Dallas County - Tarrant County*
*dallas.bankruptcy@publicans.com*

7
*Rebecca J Winthrop on behalf of Creditor Westchester Fire Insurance Company*
8
*winthropr@ballardspahr.com*

- Service information continued on attached page
9

10
II.  **SERVED BY THE COURT VIA U.S. MAIL**:  A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es)
11
indicated below:

12
- Service information continued on attached page

13
III.  **TO BE SERVED BY THE LODGING PARTY**:  Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an
14
"Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email
15
address(es) indicated below:

16
Available upon request to Claims Noticing Agent, FleetwoodInfo@kccllc.com

17

18

19

20

21

22

23

24

25

26

27

28