CRAIG H. MILLET, SBN 106027, CMillet@gibsondunn.com
SOLMAZ KRAUS, SBN 223117, SKraus@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, California 92612-4412
Telephone: (949) 451-3800
Facsimile: (949) 451-4220
Attorneys for
Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>FLEETWOOD ENTERPRISES, INC., et al.,<br><br>Debtor | CASE NO. 09-14254-MJ<br><br>Chapter 11<br><br>[Jointly Administered]<br><br>**STIPULATION EXTENDING THE DEBTORS' AUTHORIZATION TO USE CASH COLLATERAL TO SEPTEMBER 2, 2009**<br><br><u>**Current Hearing**</u>**:**<br>Date: September 2, 2009<br>Time: 1:30 p.m.<br>Place: Courtroom 302<br>Judge: Hon. Meredith Jury |

### I.   RECITALS

A.   On April 1, 2009 the Court entered an interim order in the above captioned Chapter 11 Cases ("Interim Order") (all capitalized terms used herein but not otherwise defined shall have their respective meanings set forth in the Interim Order) on the Debtors' motion seeking interim and final orders authorizing the Debtors' to enter into postpetition secured financing ("Motion for Approval of DIP Financing") entitled: "Interim Order (1) Authorizing Debtors to Obtain Postpetition Secured Financing, (2) Authorizing the Use of Cash Collateral, (3) Granting Liens and Superpriority Claims, (4) Modifying the Automatic Stay, and (5) Setting Final Hearing."

B. The Final Hearing on the Interim Order was set for April 21, 2009, which, on the motion of the Official Committee of Unsecured Creditors, was continued to April 29, 2009.

C. On April 29, 2009 the Debtors filed an emergency "Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral…" in which the Debtors withdrew their Motion for Approval of DIP Financing ("Cash Collateral Motion"). On the request of the Debtors, the Court set the hearing on the Cash Collateral Motion for April 29, 2009.

D. The parties have agreed to continue the hearing on the Cash Collateral Motion from time to time since April 29, 2009, and have entered into a series of stipulations and consent orders extending the Debtors' authorization to use Cash Collateral in accordance with the terms of the Interim Order (as modified by such stipulations). Under the most recent stipulation and consent order, the hearing on the Cash Collateral Motion has been continued to September 2, 2009, and the Debtors' authorization to use Cash Collateral in accordance with the terms of the Interim Order (as modified by such stipulation) has been extended to September 2, 2009.

E. The parties have agreed to continue the Cash Collateral Motion and extend the Debtors' authorization to use Cash Collateral in accordance with the Interim Order (as modified below) subject to the terms and conditions set forth in this Stipulation.

F. In the interest of judicial economy, preventing expenses to the Debtors' estates, the agreements of the parties as stated on the record and as further discussed between them, and good cause appearing therefor, the parties agree as follows:

**STIPULATION RE USE OF CASH COLLATERAL AND CONTINUING HEARING**

1. Subject to entry of the order to be entered pursuant to this Stipulation entitled "Order Extending the Debtors' Authorization to Use Cash Collateral to September 2, 2009" ("Order"), the period during which the Debtors may use Cash Collateral as provided in (and subject to the limitations of) the "Interim Order (1) Authorizing Debtors to Obtain Postpetition Secured Financing, (2) Authorizing the Use of Cash Collateral, (3) Granting Liens and Superpriority Claims, (4) Modifying the Automatic Stay, and (5) Setting Final Hearing" (the "Interim Order") is extended such that the day on which the Debtors' right to use Cash Collateral is to terminate (such date, the "Cash Use Termination Date") is extended up to and including 5:00 p.m. PDT on September 2, 2009.

2. Except as set forth below, all provisions of the Interim Order pertaining to the use of Cash Collateral, shall remain in full force and effect and be binding on the Prepetition Agent, the Prepetition Credit Facility Lenders, the Postpetition Agent and the DIP Lenders (as such terms are defined in the Interim Order) (collectively, the "Secured Parties"), the Debtors and all other parties as provided therein; provided that, without prejudice to and with a full reservation of rights by all parties, the Secured Parties shall forbear, up to and including the Cash Use Termination Date, from exercising any rights and remedies on account of any default under the Interim Order or the DIP Credit Agreement that occurred on or prior to the date of the Order and any Default under the DIP Credit Agreement that occurs on or prior to the Cash Use Termination Date with respect to any failure on the part of the Borrowers on or prior to the dates separately disclosed to and agreed by the Postpetition Agent to have achieved certain benchmarks separately disclosed to and agreed by the Postpetition Agent (as further set forth in Section 9.1(xviii) of the DIP Credit Agreement); and provided further that the Debtors shall be entitled to use Cash Collateral based on the Additional Real Estate Availability (as defined below) with respect to each Real Estate Subfacility Asset subject to a Postpetition Lien granted by the Interim Order which remains valid, binding, enforceable and perfected; and provided still further that in order to receive credit in the Additional Real Estate Availability for any Real Estate Subfacility Asset (as defined in the DIP Credit Agreement), the Debtors shall have complied with their obligations to make the deliveries set forth in the first "proviso" of the defined term "Eligible Additional Real Estate Subfacility Assets" or the defined term "Eligible Existing Real Estate Subfacility Assets" (as each such term is defined in the DIP Credit Agreement), as applicable, with respect to each such Real Estate Subfacility Asset; and provided still further that the Debtors shall have otherwise complied with the terms of the DIP Credit Agreement, as modified hereby.

3. As defined herein, the term "Additional Real Estate Availability" means credit in the "Borrowing Base" (as defined in the DIP Credit Agreement) for up to the lesser of (1) seventeen percent (17%) of the aggregate appraised market values (limited to a twelve (12) month marketing timeframe) of Real Estate Subfacility Assets subject to a Mortgage (as defined in the DIP Credit Agreement) and (2) three million Dollars ($3,000,000); provided that immediately upon receipt by

any Debtor of Modified Net Proceeds of any disposition, liquidity source or other source of cash, in each case not in the ordinary course and not set forth in the Approved DIP Budget referred to in paragraph 9 below for the period commencing on the date hereof and ending on the Cash Use Termination Date, the Additional Real Estate Availability shall be permanently reduced by an amount equal to seventy-five percent (75%) of any such Modified Net Proceeds.

4. Notwithstanding anything herein or in the Interim Order (including, without limitation, paragraph 4 thereof) to the contrary, the definition of "Maximum Amount" as used in the DIP Credit Agreement shall mean thirty-four million six hundred ninety-five thousand sixteen and 30/100 Dollars ($34,695,016.30); provided that the Maximum Amount shall be permanently reduced, on any applicable date, by an amount equal to the aggregate reduction, from and after the date hereof, of the aggregate face amount of all outstanding Letters of Credit, and the DIP Credit Agreement and the Interim Order shall be deemed to be amended accordingly.

5. Notwithstanding anything herein or in the Interim Order (including, without limitation, paragraph 4 thereof) to the contrary, the definition of "Unused Letter of Credit Subfacility" as used in the DIP Credit Agreement shall mean an amount equal to thirty-four million six hundred ninety-five thousand sixteen and 30/100 Dollars ($34,695,016.30) minus the sum of (a) the aggregate undrawn amount of all outstanding Letters of Credit plus, without duplication, (b) the aggregate unpaid reimbursement obligations with respect to all Letters of Credit; provided that the Unused Letter of Credit Subfacility shall be permanently reduced, on any applicable date, by an amount equal to the aggregate reduction, from and after the date hereof, of the aggregate face amount of all outstanding Letters of Credit, and the DIP Credit Agreement and the Interim Order shall be deemed to be amended accordingly.

6. Notwithstanding anything herein or in the Interim Order to the contrary, the DIP Credit Agreement shall be amended by deleting clause (j) of Section 13.7 of the DIP Credit Agreement and inserting in lieu thereof "and (j) expenses of each Lender or each such Lender's own outside counsel, capped at each such Lender's Pro Rata Share of one-hundred thousand Dollars ($100,000)." Notwithstanding anything herein or in the Interim Order to the contrary, the Debtors

shall be authorized to pay such amounts pursuant to the terms of the DIP Credit Agreement (as so amended).

7. Notwithstanding anything herein or in the Interim Order to the contrary, (a) the covenants set forth in Section 7.22(a) and Section 7.22(b) of the DIP Credit Agreement shall only be applicable for any Measurement Period to the extent that actual net cash flow in the cumulative period from June 1, 2009 through the end of such Measurement Period is less than the amount in the Approved DIP Budget for the same period; and (b) the covenant set forth in Section 7.22(b)(i) shall only be applicable for any Measurement Period for a given Line Item to the extent that cash expenditures under such Line Item for the cumulative period from June 1, 2009 through the end of such Measurement Period are greater than the amount in the Approved DIP Budget for such Line Item for the same period.

8. In accordance with Paragraphs 8 and 11 of the Interim Order, the Postpetition Agent shall establish a Reserve with respect to the Carve-Out against the Borrowing Base in the amount of $1,500,000.

. 9. Attached hereto as Exhibit A is a rolling 13-week budget setting forth all projected cash receipts and cash disbursements (by line item) on a weekly basis for the time period set forth therein. Such budget shall constitute the current Approved DIP Budget prepared by the Debtors and approved by the Postpetition Agent and the Required Lenders.

10. The hearing to consider the Debtors' Cash Collateral Motion may be set for September 2, 2009 at 1:30 p.m. PDT at the United States Bankruptcy Court for the Central District of California, Riverside, California.

11. Any replies in support of the Cash Collateral Motion shall be filed and served so as to be received by counsel for Bank of America by August 31, 2009.

[*Signatures on next page*]

Dated: August 24, 2009

LATHAM & WATKINS LLP
GREGORY O. LUNT

By: /s/ Gregory O. Lunt
Gregory O. Lunt
Attorneys for Bank of America

Dated: August 24, 2009

CRAIG H. MILLET
SOLMAZ KRAUS
GIBSON, DUNN & CRUTCHER LLP

By: /s/ Craig H. Millet
Craig H. Millet
Attorneys for Debtors and Debtors in Possession