Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number

Gabriel Liao (SBN 205897)
GLiao@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East
Suite 1700
Los Angeles, CA 90067
Telephone: 310.788.9900
Facsimile: 310.788.3399

☐ *Individual appearing without counsel*

☒ *Attorney for:* Movant CRIC YUMA, LLC

FOR COURT USE ONLY

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

In re: FLEETWOOD ENTERPRISES, INC., et al.

Debtor(s).

CHAPTER: 11

CASE NO.: 09-14254-MJ

DATE: October 21, 2009
TIME: 11:00 a.m.
CTRM: 302
FLOOR:

## NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY UNDER 11 U.S.C. § 362(l) (with supporting declarations)
### (MOVANT: CRIC YUMA, LLC )
### (Unlawful Detainer)

1. NOTICE IS HEREBY GIVEN to the Debtor(s), Debtor's(s') attorney, and other interested parties ("Responding Party") that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay or for an order confirming that the automatic stay does not apply as to Debtor(s) and Debtor's(s') bankruptcy estate on the grounds set forth in the attached Motion.

   ☒ NOTICE IS ALSO GIVEN to the Trustee as an additional Responding Party, because the Motion relates to a nonresidential property.

2. **Hearing Location:** ☐ **255 East Temple Street, Los Angeles**    ☐ **411 West Fourth Street, Santa Ana**
   ☐ **21041 Burbank Boulevard, Woodland Hills**    ☐ **1415 State Street, Santa Barbara**
   ☒ **3420 Twelfth Street, Riverside**

3. a. ☒ This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Motion, you must file a written response to this Motion with the Bankruptcy Court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and appear at the hearing of the Motion.

   b. ☐ This Motion is being heard on SHORTENED TIME. If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence must be filed and served:

      ☐ at the hearing    ☐ at least _____ court days before the hearing.

   (1) ☐ A Motion for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

   (2) ☐ A Motion for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court and such motion and order have been or are being served upon the debtor and trustee, if any.

   (3) ☐ A Motion for Order Shortening Time has been filed and remains pending. Once the Court has ruled on that Motion, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*January 2009*                                        **F 4001-1M.UD**
F4001MUD

| In re                    (SHORT TITLE) | CHAPTER: 11 |
|---|---|
| FLEETWOOD ENTERPRISES, INC., et al.<br><br>Debtor(s). | CASE NO.: 09-14254-MJ |

4.  You may contact the Bankruptcy Clerk's Office to obtain a copy of an approved court form for use in preparing your response *(Optional Court Form F 4001-1M.RES)*, or you may prepare your response using the format required by Local Bankruptcy Rule 1002-1.

5.  If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.


Dated: September 17, 2009

PERKINS COIE LLP
*Print Law Firm Name (if applicable)*


Gabriel Liao (SBN 205897)                   /s/ Gabriel Liao
*Print Name of Individual Movant or Attorney for Movant*     *Signature of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                        **F 4001-1M.UD**

| In re (SHORT TITLE)<br>FLEETWOOD ENTERPRISES, INC., et al. | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NO.: 09-14254-MJ |

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY
## (Unlawful Detainer)

(**MOVANT:** CRIC YUMA, LLC _____ )

1. **The Property at Issue:** Movant moves for relief from the automatic stay to obtain possession of the residential or nonresidential premises at the following address (the "Property"):

   *Street Address:*     10637 South Frontage Road
   *Apartment/Suite No.:*
   *City, State, Zip Code:*   Yuma, AZ   85365

   **The Property is:**    [ ] Residential    [X] Nonresidential

2. **Case History:**

   a. [X] A voluntary    [ ] An involuntary     petition under Chapter    [ ] 7   [X] 11   [ ] 12   [ ] 13
       was filed on *(specify date):* July 29, 2009

   b. [ ] An Order of Conversion to Chapter     [ ] 7   [ ] 11   [ ] 12   [ ] 13
       was entered on *(specify date):*

   c. [ ] Plan was confirmed on *(specify date):*

   d. [ ] Other bankruptcy cases of the Debtor were pending within the year ending on the petition date. See attached Declaration.

   e. [ ] Other bankruptcy cases affecting this Property have been pending within the two years ending on the petition date. See attached Declaration.

3. **Grounds for Relief from Stay:** *(Check all that apply)*

   a. [X] Pursuant to 11 U.S.C. § 362(d)(1), cause exists because, as of petition date, Debtor(s) had no right to continued occupancy of the premises, as follows:

       (1) [ ] An unlawful detainer judgment in favor of Movant was entered prepetition.

          A. [ ] The debtor has not filed with the petition and served on the Movant the certification required under 11 U.S.C. § 362(l)(1).

          B. [ ] The debtor or adult dependent of debtor has not deposited with the Clerk any rent that would become due during the 30-day period after the filing of the petition.

          C. [ ] The debtor or adult dependent of debtor has not filed and served on the Movant the further certification required under 11 U.S.C. § 362(l)(2) that the entire monetary default that gave rise to the judgment has been cured.

          D. [ ] The Movant has filed and served an objection to the certification referenced in (a)(1)(A) and/or (a)(1)(C) above. A copy of the objection is attached hereto as Exhibit_____ . A hearing on this objection is set for: _____ .

       (2) [ ] An unlawful detainer proceeding was commenced prepetition.

       (3) [ ] Movant acquired title to the premises by foreclosure sale prepetition and recorded the deed within the period provided by state law for perfection.

       (4) [ ] Movant acquired title to the premises by foreclosure sale postpetition and recorded the deed within the period provided by state law for perfection.

       (5) [X] The lease or other right of occupancy expired by its terms prepetition.

       (6) [ ] The lease has been rejected or deemed rejected by operation of law.

       (7) [ ] Lease payments have not been made since the filing of the petition.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

| In re                                    (SHORT TITLE) | CHAPTER: 11 |
|---|---|
| FLEETWOOD ENTERPRISES, INC., et al. | CASE NO.: 09-14254-MJ |
|                                                          Debtor(s). | |

    (8) ☐ An eviction action has been filed to obtain possession of the subject residential property on grounds of endangerment of the property **or** because of illegal use of controlled substances on the property and Movant has filed and served upon Debtor a certification that ☐ such an action was filed or ☐ that within the 30 days preceding the certification Debtor has endangered the subject property or illegally allowed the use of controlled substances on the property. A copy of Movant's certification is attached as Exhibit _____ . Debtor ☐ has ☐ has not filed an objection to Movant's certification. A copy of Debtor's objection, if any, is attached as Exhibit_____ . A hearing on this objection is set for: _____ .

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor(s) has/have no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ The bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.

    (1) ☐ Movant is the only creditor or one of very few creditors listed on the master mailing matrix.

    (2) ☐ Other bankruptcy cases have been filed asserting an interest in the same property.

    (3) ☐ The Debtor(s) filed what is commonly referred to as a "face sheet" filing of only a few pages consisting of the Petition and a few other documents. No Schedules or Statement of Affairs (or Chapter 13 Plan, if appropriate) has been filed.

**4. Evidence in Support of Motion:** *(Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)*

    a. ☒ Movant submits the attached Unlawful Detainer Declaration to provide evidence in support of this Motion pursuant to Local Bankruptcy Rules.

    b. ☐ Other Declaration(s) are also attached in support of this Motion.

**WHEREFORE, Movant prays that this Court issue an Order granting the following** *(specify forms of relief requested)*:

1. ☒ Termination of the stay to allow Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to obtain possession of the Property.

2. ☐ Annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as set forth in the attached Declaration(s).

3. ☐ An order confirming that the automatic stay does not apply.

4. ☐ Alternatively, if immediate relief from stay is not granted with respect to the Property because the Property is the subject of a lease that may be assumable:

    a. Establishment of a deadline for assumption or rejection of the lease.

    b. Adequate protection in the form of regular payments at the lease rate from petition date until assumption or rejection of the lease.

*(Continued on next page)*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

| In re (SHORT TITLE) | CHAPTER: 11 |
|---|---|
| FLEETWOOD ENTERPRISES, INC., et al. | |
| Debtor(s). | CASE NO.: 09-14254-MJ |

5.  Additional provisions requested:

   a.  [X] That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

   b.  [ ] Termination or modification of the Co-debtor Stay of 11 U.S.C. § 1201 or § 1301 as to the above-named co-debtor, on the same terms and conditions.

   c.  [X] That the 10-day stay prescribed by Bankruptcy Rule 4001(a)(3) be waived.

   d.  [ ] That Extraordinary Relief be granted as set forth in the Attachment *(attach Optional Court Form F 4001-1M.ER)*.

   e.  [ ] For other relief requested, see attached continuation page.

Dated: September 17, 2009

Respectfully submitted,

CRIC YUMA, LLC
*Movant Name*

PERKINS COIE LLP
*Firm Name of Attorney for Movant (if applicable)*

By: /s/ Gabriel Liao
*Signature*

Name: Gabriel Liao (SBN 205897)
*Typed Name of Individual Movant or Attorney for Movant*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

| In re          (SHORT TITLE)<br>FLEETWOOD ENTERPRISES, INC., et al.<br><br>Debtor(s). | CHAPTER: 11<br>CASE NO.: 09-14254-MJ |
|---|---|

# UNLAWFUL DETAINER DECLARATION
## (MOVANT: <u>CRIC YUMA, LLC</u>)

I, <u>John K.C. Hyslip</u>, declare as follows:
   *(Print Name of Declarant)*

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the residential or nonresidental real property that is the subject of this Motion ("Property") because:

   ☐ I am the Movant and owner of the Property.

   ☐ I manage the Property as the authorized agent for the Movant.

   ☐ I am employed by Movant as *(state title and capacity)*:

   ☒ Other *(specify)*: I am an authorized representative of the owner of the Property/Movant.

2. I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the rental of this Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

3. The address of the Property that is the subject of this Motion is:

   *Street Address:*      10637 South Frontage Road
   *Apartment/Suite No.:*
   *City, State, Zip Code:*   Yuma, AZ  85365

4. Movant is the legal owner of the Property, or the owner's legally authorized agent. A true and correct copy of the Trustee's Deed upon Sale, lease, rental agreement, or other document evidencing Movant's interest in the Property is attached as Exhibit <u>A</u>. A true and correct copy of any applicable document establishing Movant's authority as agent for the owner is attached as Exhibit _____.

5. The Property is: ☐ residential property   ☒ nonresidential property
   a. Debtor(s) occupies the Property

      ☐ on a month-to-month tenancy                    ☐ pursuant to a lease that is in default

      ☐ after a foreclosure sale on: _____   ☒ other *(specify)*: as a holdover tenant

   b. ☐ Debtor(s) has/have failed to pay the monthly rent of $_____ since the following date *(specify date)*:

   c. ☐ In addition, Debtor(s) has/have failed to pay other obligations under the lease, including the following *(See attached continuation page for itemization)*:

      (1) ☐ Common area maintenance charges

      (2) ☐ Property taxes

      (3) ☐ For additional obligations, see attached continuation page.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                    **F 4001-1M.UD**

| In re                          (SHORT TITLE) | CHAPTER: 11 |
|---|---|
| FLEETWOOD ENTERPRISES, INC., et al. | |
| Debtor(s). | CASE NO.: 09-14254-MJ |

6. Debtor's(s') bankruptcy petition in this case was filed on *(specify date)*:  July 29, 2009

7. Procedural status *(indicate all that apply, and provide dates for completed steps)*:

    a. [X] Movant caused a Notice to Quit to be served upon the Debtor(s) on *(specify date)*: July 27, 2009
        A true and correct copy of which is attached hereto as Exhibit B___

    b. [ ] Before the filing of the petition, Movant had commenced an unlawful detainer proceeding in state court and completed the following:

        (1) [ ] Movant filed a Complaint for Unlawful Detainer against the Debtor(s) on *(specify date)*:_____ , a true and correct copy of which is attached as Exhibit_____ .

        (2) [ ] Trial was held on *(specify date)*:

        (3) [ ] An Unlawful Detainer Judgment against the Debtor(s) was entered on the Complaint for Unlawful Detainer on *(specify date)*:_____ , a true and correct copy of which is attached as Exhibit_____ .

        (4) [ ] A Writ of Possession for the Property was issued by the state court on *(specify date)*:_____ , a true and correct copy of which is attached as Exhibit_____ .

        (5) [ ] The Debtor has not filed with the petition and served on the Movant the certification required under 11 U.S.C. § 362(l)(1).

        (6) [ ] The Debtor or adult dependent of Debtor has not deposited with the Clerk any rent that would become due during the 30-day period after the filing of the petition.

        (7) [ ] The debtor or adult dependent of debtor has not filed and served on the Movant the further certification required under 11 U.S.C. § 362(l)(2) that the entire monetary default that gave rise to the judgment has been cured.

        (8) [ ] Movant has filed and served an objection to Debtor's certification referenced in paragraph (5) and/or (7) above, a copy of which is attached hereto as Exhibit_____ .  A hearing on this objection is set for:_____ .

        (9) [ ] An eviction action has been filed to obtain possession of the Property on grounds of endangerment of the Property or because of illegal use of controlled substances on the Property and Movant has filed a certification that [ ] such action was filed or [ ] that Debtor has endangered the subject property within 30 days preceding the certification or allowed the illegal use of controlled substances on the Property.  A copy of Movant's certification is attached hereto as Exhibit_____ . Debtor [ ] has [ ] has not filed an objection to Movant's certification.  A copy of Debtor's objection, if filed, is attached hereto as Exhibit_____ .  A hearing on this objection is set for: _____ .

    c. [ ] The lease was rejected on_____ *(date)*:

        (1) [ ] by operation of law.

        (2) [ ] by Order of the Court.

    d. [ ] The regular lease payments have not been made since the filing of the petition.

8. [X] Debtor(s) has/have no equity in the Property because Debtor(s) does/do not have a lease interest that could be assumed or assigned under 11 U.S.C. § 365.

9. [ ] The Property is not necessary to an effective reorganization because *(specify)*:

    a. [ ] The Property is residential and is not producing income for the Debtor(s).

    b. [ ] The Property is commercial, but no reorganization is reasonably in prospect.

    c. [ ] Other *(specify)*:

*(Continued on next page)*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

| In re                    (SHORT TITLE)<br>FLEETWOOD ENTERPRISES, INC., et al.<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NO.: 09-14254-MJ |
|---|---|

10. ☐  The bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.

   a. ☐  Movant is the only creditor or one of very few creditors listed on the master mailing matrix.

   b. ☐  Other bankruptcy cases have been filed asserting an interest in the same property.

   c. ☐  The Debtor(s) filed what is commonly referred to as a "face sheet" filing of only a few pages consisting of the Petition and a few other documents.  No Schedules or Statement of Affairs (or Chapter 13 Plan, if appropriate) has been filed.

   d. ☐  Other *(specify)*:

11. ☐  Other bankruptcy cases that have prevented Movant from recovering possession of this Property include the following:

   a. Case Name:
      Case Number:             Chapter:
      Date Filed:                Date Dismissed:
      Relief from stay re this Property   ☐ was   ☐ was not  granted.

   b. Case Name:
      Case Number:              Chapter:
      Date Filed:                Date Dismissed:
      Relief from stay re this Property   ☐ was   ☐ was not  granted.

   c. ☐  See attached continuation page for more information about other cases.

12. ☐  Movant seeks annulment of the automatic stay so that the filing of the bankruptcy petition does not affect any and all of the actions set forth in paragraph 7 that were taken after the filing of the bankruptcy petition in this case.

   a. ☐  These actions were taken by Movant without knowledge of the bankruptcy filing, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐  Although Movant knew about the bankruptcy filing, Movant had previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting this Property as set forth in paragraph 11 above.

   c. ☐  For other facts justifying annulment, see attached continuation page.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on** September 17, 2009 **, at** Nashua, NH, 03062 ____ **(city, state).**

*John K. C. Hyslip*
*Print Declarant's Name*

*John K. C. Hyslip*
*Signature of Declarant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**Exhibit A**

LEASE AGREEMENT

Between

CRICFW ONE LLC

as Lessor

and

Fleetwood Retail Corp. of Arizona
as Lessee

Dated as of

March 21, 2000

# TABLE OF CONTENTS

| | | |
|---|---|---|
| 1. | Demise; Title; Condition | 1 |
| 2. | Term | 1 |
| 3. | Rent | 2 |
| 4. | Use | 3 |
| 5. | Net Lease; Nonterminability | 3 |
| 6. | Taxes and Other Charges; Law and Agreements. | 5 |
| 7. | Liens; Subordinations | 7 |
| 8. | Indemnification; Fees and Expenses. | 8 |
| 9. | Environmental Matters | 9 |
| 10. | Maintenance and Repair; Additions. | 12 |
| 11. | Trade Fixtures | 14 |
| 12. | Condemnation and Casualty; Economic Obsolescence. | 14 |
| 13. | Insurance. | 18 |
| 14. | Financial Statements; Certificates | 23 |
| 15. | Purchase Procedure. | 24 |
| 16. | Quiet Enjoyment | 25 |
| 17. | Survival | 25 |
| 18. | Subletting; Assignment. | 25 |
| 19. | Advances by Lessor | 26 |
| 20. | Conditional Limitations -- Events of Default and Remedies. | 26 |
| 21. | Granting of Easements, Etc. | 29 |
| 22. | [Intentionally Omitted] | 30 |
| 23. | Rent Reset; Final Rent Payments. | 32 |
| 24. | Notices | 38 |
| 25. | Estoppel Certificates | 39 |
| 26. | No Merger | 39 |
| 27. | Surrender | 39 |
| 28. | Separability | 40 |
| 29. | Signs; Showing | 40 |
| 30. | Waiver of Trial by Jury | 40 |
| 31. | Recording | 40 |
| 32. | Miscellaneous | 40 |
| 33. | Additional Provisions Relating to Leased Property | 41 |

| APPENDIX I | Definitions |
|---|---|
| SCHEDULE A | Description of Leased Property |
| SCHEDULE B | Lease Data |
| SCHEDULE C | Certain Definitions |
| SCHEDULE D | Permitted Encumbrances |

i

SCHEDULE E      Trade Fixtures
SCHEDULE F      Subordination, Non-Disturbance and Attornment Agreement
SCHEDULE G      Estoppel Letter
SCHEDULE H      Market Rent

Edwards/legal/107547.182/lease/0310.doc

THIS LEASE, dated as of the date specified in Item 1 of Schedule B (as amended from time to time this Lease), between the Lessor specified in Item 2 of Schedule B (Lessor), as lessor, having an office at the address set forth in Item 2 of Schedule B and the Lessee specified in Item 3 of Schedule B (herein, together with any entity succeeding thereto by consolidation, merger or acquisition of its assets substantially as an entirety, called Lessee), having an address at the address set forth in Item 3 of Schedule B, both parties intending to be legally bound.

Capitalized terms not otherwise defined when they first appear are defined in Appendix I.

1.     Demise; Title; Condition.  Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, subject to the terms hereof, all of Lessor's right, title and interest in (i) the parcel of land (the Land) described in Schedule A hereto, (ii) all buildings and improvements now or hereafter existing on the Land and fixtures appurtenant thereto (the Improvements) and (iii) all easements, rights and appurtenances thereto (the Land, Improvements and all such easements, rights and appurtenances collectively called the Leased Property).

The Leased Property is leased in its present condition without representation or warranty by Lessor.  Lessee has examined the Leased Property and Lessor's title thereto, and has found the same to be satisfactory for all purposes.

LESSOR HAS NOT MADE AN INSPECTION OF THE LEASED PROPERTY AND MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO THE LEASED PROPERTY OR THE LOCATION, USE, DESCRIPTION, DESIGN, MERCHANTABILITY, FITNESS FOR USE FOR A PARTICULAR PURPOSE, CONDITION OR DURABILITY THEREOF, OR AS TO QUALITY OF THE MATERIAL OR WORKMANSHIP THEREIN; AND ALL RISKS INCIDENTAL TO THE LEASED PROPERTY SHALL BE BORNE BY LESSEE.  LESSOR SHALL NOT HAVE ANY RESPONSIBILITY OR LIABILITY WITH RESPECT TO ANY DEFECT OR DEFICIENCY OF ANY NATURE IN THE LEASED PROPERTY OR ANY PORTION THEREOF, WHETHER PATENT OR LATENT AND LESSOR SHALL NOT HAVE ANY RESPONSIBILITY OR LIABILITY FOR ANY DIRECT OR INDIRECT DAMAGE TO PERSONS OR PROPERTY RESULTING THEREFROM OR FOR LESSEE'S LOSS OF USE OF THE LEASED PROPERTY OR ANY PORTION THEREOF OR ANY INTERRUPTION IN LESSEE'S BUSINESS CAUSED BY LESSEE'S INABILITY TO USE THE LEASED PROPERTY OR ANY PORTION THEREOF FOR ANY REASON WHATSOEVER.  THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN NEGOTIATED AND ARE INTENDED TO BE A COMPLETE EXCLUSION AND NEGATION BY LESSOR OF, AND LESSOR DOES HEREBY DISCLAIM, ANY AND ALL WARRANTIES BY LESSOR, EXPRESS OR IMPLIED, WITH RESPECT TO THE LEASED PROPERTY OR ANY PORTION THEREOF, WHETHER ARISING PURSUANT TO THE UNIFORM COMMERCIAL CODE OR ANY OTHER LAW NOW OR HEREAFTER IN EFFECT OR OTHERWISE.

2.     Term.

        (a)     Subject to the provisions hereof, Lessee shall have and hold the Leased Property

for a term (the Basic Term) which shall begin on the commencement date specified in Item 4 of Schedule B (the Commencement Date) and end at midnight on the basic term expiration date set forth in Item 5 of Schedule B (the Basic Term Expiration Date) unless sooner terminated or extended as hereinafter expressly provided.

(b)        So long as no Event of Default shall have occurred and be continuing on the last day of the then current Term, Lessee may elect to extend and renew the Term for one (1) additional term for the period of time to be calculated as provided in Article 23(c) hereof and thereafter two (2) additional terms of five (5) years each (Renewal Terms). The right of Lessee to elect to extend for the First Renewal Term is subject to the terms and conditions contained in Article 23(c) relating thereto. Each such election shall be exercised by Lessee not less than 270 days prior to the expiration of the then current Term (or as otherwise required by Article 23(b)), by written notice to Lessor, which notice shall include the name and address of Lessee's designated appraiser for determination of the fair market rent or Useful Life (defined in Schedule H) in accordance with Schedule H of this Lease, provided that the exercise of the first Renewal Term must occur no later than the date on which Lessee gives or is deemed to have given the 22 Year Notice pursuant to subparagraph (b) of Article 23. Either party, upon request of the other, will execute and acknowledge, in form suitable for recording, an instrument confirming any such extension. Time shall be of the essence with respect to the giving of notice by Lessee of its election to extend any Term.

3.        Rent.

(a)        During the Term, Lessee shall pay the rent provided in Item 7 of Schedule B (Basic Rent) to Lessor (or to such other party as Lessor may from time to time specify in writing) by company check or by bank wire transfer of immediately available federal funds before 11:00 A.M., Eastern Time, at such place, within the continental United States, as Lessor may from time to time designate to Lessee in writing. Basic Rent shall be payable by Lessee in installments in the amounts set forth in Item 7 of Schedule B and (except for the first payment of Basic Rent which shall be due and payable on the date of commencement of the Basic Term) shall be due and payable on the dates specified in Item 7 of Schedule B (Installment Payment Dates) and shall constitute Basic Rent for the periods specified in said Item 7. If any Installment Payment Date falls on a day which is not a Business Day, Basic Rent shall be due and payable on the immediately following Business Day.

(b)        All amounts which Lessee is required to pay or discharge pursuant to this Lease in addition to Basic Rent (including, without limitation, amounts payable as the purchase price for the Leased Property and any amounts payable as liquidated damages hereunder) together with every penalty, overdue interest and cost which may be added for nonpayment or late payment thereof, shall constitute additional rent hereunder (Additional Rent). In the event of any failure by Lessee to pay or discharge any Additional Rent, Lessor shall have all rights, powers and remedies provided for herein or by law or otherwise in the case of nonpayment of Basic Rent. Lessee shall, unless otherwise requested by Lessor, pay Additional Rent directly to the Person entitled thereto. Lessee also covenants to pay to Lessor on demand as Additional Rent, interest at a rate (the Overdue Rate), calculated on the basis of a 360-day year of twelve equal months, equal to the

-2-

greater of (i) twelve percent (12%) per annum or (ii) four percent (4%) per annum over the prime commercial lending rate announced from time to time by Citibank, N.A., or its successor, or if no longer in existence, a banking institution selected by Lessor with a net worth of at least $5,000,000,000, but in no event greater than the maximum rate not prohibited by applicable law, on (i) all overdue installments of Basic Rent from the due date thereof until paid in full, (ii) all overdue amounts of Additional Rent, arising out of obligations which Lessor shall have paid on behalf of Lessee pursuant hereto from the date of such payment by Lessor until paid in full and (iii) each other sum required to be paid by Lessee hereunder which is overdue, including without limitation, amounts payable as the purchase price for the Leased Property pursuant to Article 12 and any amounts payable pursuant to Articles 19 or 23 or as liquidated damages pursuant to Article 20, from the date such sum was due until the date received by the Person entitled thereto. Lessee also covenants to pay to Lessor on demand as Additional Rent, a late fee equal to five percent (5%) of any Basic Rent or Additional Rent which has not been paid within 5 days after the same is due. In the event any Basic Rent or Additional Rent is collected by or through an attorney, as Additional Rent, Lessee agrees to pay all costs of collection, including, but not limited to attorney's fees and to reimburse Lessor for any costs of collection, including without limitation, attorney's fees, incurred by Lessor's Mortgagee.

4.  Use. Lessee may use the Leased Property for the following retail uses: sale of manufactured housing and related products and services. Any other use will be subject to the approval of Lessor, such approval shall not be unreasonably withheld, provided that such other use (i) is consistent with the business uses of other properties located in the same general area as the Leased Property, and (ii) does not result in, or increase the likelihood of, a decline in the value of the Leased Property or increase the risk of loss to Lessor (such as by an increase in the potential exposure to hazardous waste issues).

5.  Net Lease; Nonterminability.

(a)  This Lease is an absolutely "net lease" and Lessee shall pay all Basic Rent and Additional Rent without notice, demand, counterclaim, set-off, deduction, or defense, and without abatement, suspension, deferment, diminution or reduction, free from any charges, assessments, impositions, expenses or deductions of any and every kind or nature whatsoever. All costs, expenses and obligations of every kind and nature whatsoever relating to the Leased Property and the appurtenances thereto and the use and occupancy thereof by Lessee or anyone claiming by, through or under Lessee as lessee hereunder which may arise or become due during or with respect to the Term shall be paid by Lessee. Lessee assumes the sole responsibility for the condition, use, operation, maintenance and management of the Leased Property and Lessor shall have no responsibility in respect thereof and shall have no liability for damage to the property of Lessee or any sublessee of Lessee or anyone claiming by, through or under Lessee for any reason whatsoever, unless such damage is caused by the negligence of Lessor or Lessor's agents, contractors, invitees or employees.

(b)  Without limiting the generality of the foregoing, during the Term of this Lease, Lessee shall perform all of the obligations of the sublessor under any subleases affecting all or any part of the Leased Property which Lessee may hereinafter enter into as sublessor to the extent that

-3-

Lessee's failure to perform such obligations could result in the occurrence of an Event of Default under this Lease. Lessee acknowledges and agrees that its obligations hereunder, including, without limitation, its obligations to pay Basic Rent and Additional Rent, shall be unconditional and irrevocable under any and all circumstances and shall not be subject to cancellation, termination, modification or repudiation by Lessee. Except as expressly provided in paragraphs (c) or (f) of Article 12 or in Article 20, this Lease shall not terminate. Lessee shall have no right to terminate this Lease, and Lessee shall perform all obligations hereunder, including the payment of all Basic Rent and Additional Rent, without notice, demand, counterclaim, set-off, deduction, defense or recoupment, and without abatement, suspension, deferment, diminution or reduction for any reason, including, without limitation, any past, present or future claims which Lessee may have against the Lessor, its mortgagee, their respective successors and assigns or any other Person for any reason whatsoever; any defect in the Leased Property or any portion thereof, or in the title, condition, design, construction, durability or fitness for a particular use thereof; any damage to or destruction or loss of all or part of the Leased Property; any restriction, deprivation (including eviction) or prevention of, or any interference with or interruption of, any use or occupancy of the Leased Property (whether due to any defect in or failure of Lessor's title to the Leased Property, any lien or otherwise); any condemnation, requisition or other taking or sale of the use, occupancy or title to the Leased Property; any action, omission or breach on the part of Lessor under this Lease or under any other agreement between Lessor and Lessee, or any other indebtedness or liability, howsoever and whenever arising, of Lessor, any assignee of Lessor, or Lessee to any other Person, or by reason of insolvency, bankruptcy or similar proceedings by or against Lessor, or any assignee of Lessor, or Lessee; the inadequacy or inaccuracy of the description of the Leased Property or the failure to demise and let to Lessee the property intended to be leased hereby; Lessee's acquisition of ownership of the Leased Property (as to any obligation arising prior to or incident to such acquisition and any obligation intended to survive such acquisition including, without limitation, the payment of the full purchase price in strict accordance with the terms hereof); any sale or other disposition of the Leased Property; the impossibility or illegality of performance by Lessor or Lessee or both; the failure of Lessor to deliver possession of the Leased Property; any action of any court, administrative agency or other governmental authority; or any other cause, whether similar or dissimilar to the foregoing, any present or future law notwithstanding; it being the intention of the parties hereto that all Basic Rent and Additional Rent payable by Lessee hereunder shall continue to be payable in all events and in the manner and at the times herein provided, without notice or demand, unless the obligation to pay the same shall be terminated pursuant to the express provisions of this Lease.

(c) Lessee will remain obligated under this Lease in accordance with its terms, and will not take any action to terminate, rescind or avoid this Lease for any reason, notwithstanding any bankruptcy, insolvency, reorganization, liquidation, dissolution or other proceeding affecting Lessor, or any assignee of Lessor, or any action with respect to this Lease which may be taken by any receiver, trustee or liquidator, or any assignee of Lessor or by any court in any such proceeding. Lessee waives all rights at any time conferred by statute or otherwise to quit, terminate or surrender this Lease or the Leased Property or to any abatement, reduction, deferment or set-off of any Basic Rent, Additional Rent or other sum payable hereunder, or for damage, loss or expense suffered by Lessee on account of any cause referred to in this Article 5 or otherwise.

-4-

(d)     Lessor and Lessee agree that this Lease is a true lease and does not represent a financing arrangement. Each party shall reflect the transaction represented hereby in all applicable books, records and reports (including income tax filings) in a manner consistent with "true lease" treatment rather than "financing" treatment.

6.     Taxes and Other Charges; Law and Agreements.

(a)     Lessee shall pay and discharge, on or before the last day upon which the same may be paid without interest or penalty, all taxes, including any tax based upon or measured by gross rentals or receipts from the Leased Property, assessments, levies, fees, water and sewer rents, utility charges, and other governmental and similar charges, general and special, ordinary or extraordinary, and whether or not the same shall have been within the express contemplation of the parties hereto, and any interest and penalties thereon, which are levied or assessed or are otherwise due during the Term (collectively, Taxes and Impositions) against (i) Lessor and which relate to Lessor's ownership of the Leased Property, the use, occupancy, operation or possession of the Leased Property or any part thereof or the transactions contemplated by this Lease, including, if applicable, transfer taxes relating solely to the conveyance of the Leased Property to or from Lessee or its affiliates or in connection with the exercise of Lessor's or Lessor's Mortgagee's remedies after an Event of Default hereunder, (to the extent described in the second succeeding sentence), (ii) the Leased Property or this Lease or the interest of Lessee or Lessor therein or herein, (iii) Basic Rent or Additional Rent or other sums payable by Lessee hereunder, (iv) the use, occupancy, construction, repair or rebuilding of the Leased Property or any portion thereof, or (v) gross receipts from the Leased Property. If any tax and assessment levied or assessed against the Leased Property may legally be paid in installments, Lessee shall have the option to pay such tax or assessment in installments; provided, however, that upon the termination of the Term Lessee shall pay any such tax or assessment which it has been paying in installments in full, on or prior to such termination date. Nothing in this Lease shall require payment by Lessee of any franchise, estate, inheritance, succession, transfer (other than as set forth above), net income or profits taxes of Lessor (other than any gross receipts or similar taxes imposed or levied upon, assessed against or measured by the Basic Rent, Additional Rent or any other sums payable by Lessee hereunder or levied upon or assessed against the Leased Property), any taxes imposed by any state or local government on, or measured by, the net income of Lessor, unless any such tax is in lieu of or a substitute for any other tax or assessment upon or with respect to the Leased Property, in which case such tax would be payable by Lessee hereunder. Lessee shall furnish Lessor and Lessor's Mortgagee with receipts (or if receipts are not available, with copies of cancelled checks evidencing payment with receipts to follow promptly after they become available) showing payment of Taxes and Impositions prior to the applicable delinquency date therefor, and Lessee shall cause a tax service or other method acceptable to Lessor and Lessor's Mortgagee to provide Lessor and Lessor's Mortgagee timely evidence of the payment by Lessee of such Taxes and Impositions. Except with respect to taxes or assessments paid by Lessee in installments as set forth above, taxes, assessments, fees, water and sewer rents and other governmental charges which are payable by Lessee shall be apportioned between Lessor and Lessee as of the date on which this Lease terminates.

Lessee shall establish and maintain the Tax and Insurance Reserve Fund at the

-5-

, times required by and pursuant to the terms of Article 13.

(b)     Lessee shall pay all charges for utility, communication and other services to the extent rendered or used during the Term on or about the Leased Property, whether or not payment therefor shall become due after the Term.

(c)     At Lessee's cost and expense, Lessee shall perform and comply with all laws, rules, orders, ordinances, regulations and requirements now or hereafter enacted or promulgated, of every government and municipality and of any agency thereof having jurisdiction over the Leased Property, and with all restrictions under any reciprocal easement agreement, development agreement or similar agreement, relating to the Leased Property, or the improvements thereon, or the facilities or equipment thereon or therein, or the streets, sidewalks, vaults, vault spaces, curbs and gutters adjoining the Leased Property, or the appurtenances to the Leased Property, or the franchises and privileges connected therewith, whether or not such shall now exist or shall hereafter be enacted or promulgated, and whether or not such are within the present contemplation of Lessor or Lessee (collectively, Legal Requirements), whether or not such Legal Requirements shall necessitate structural changes, improvements, interference with use and enjoyment of the Leased Property, replacements or repairs, extraordinary as well as ordinary. Lessee shall, at Lessee's cost and expense, perform and comply with the terms of any easement granted or released pursuant to Article 21. Lessee shall, at its expense, comply with all provisions of insurance policies required pursuant to Article 13, and with the provisions of all contracts, agreements, instruments and restrictions affecting the Leased Property or any part thereof or its ownership, occupancy, use, operation or possession. Lessee shall comply with the terms of and perform its obligations under any consent of Lessee to any assignment of this Lease to Lessor's Mortgagee.

(d)     Notwithstanding the provisions of this Article 6 and Article 7, if no default or Event of Default shall have occurred and be continuing, Lessee shall have the right to contest (including through abatement proceedings), in good faith and at its expense, by appropriate legal proceedings, any Taxes or Impositions, and/or any Legal Requirement affecting the Leased Property, and to postpone payment of or compliance with the same during the pendency of such contest, provided that (i) the commencement and continuation of such proceedings shall suspend the collection thereof from, and suspend the enforcement thereof against, Lessor and the Leased Property, (ii) no part of the Leased Property nor any Basic Rent or Additional Rent shall be interfered with or shall be in danger of being sold, forfeited, attached or lost, (iii) Lessee shall promptly and diligently prosecute such contest to a final settlement or conclusion, (iv) there shall be no risk of the imposition of civil or criminal liability or penalty on Lessor or Lessor's Mortgagee for failure to comply therewith (v) Lessee shall satisfy any Legal Requirements, including, if required, that the Taxes and Impositions be paid in full before being contested, and (vi) at Lessor's option, Lessee shall have furnished Lessor with such security as Lessor shall reasonably request to insure payment of Taxes and Impositions and compliance with Legal Requirements. Lessee shall pay any and all judgments, decrees and costs (including all attorneys' fees and expenses) in connection with any such contest and shall, promptly after the final determination of such contest, fully pay and discharge the amounts which shall be levied, assessed, charged or imposed or be determined to be payable therein or in connection therewith, together

-6-

with all penalties, fines, interest, costs and expenses thereof or in connection therewith, and perform all acts the performance of which shall be ordered or decreed as a result thereof.

7. Liens; Subordinations.

(a) Subject to the provisions of paragraph (d) of Article 6, Lessee will promptly, but in any event no later than 30 days after its Actual Knowledge of the filing thereof but in any event prior to the enforcement of the same, at its own expense remove and discharge of record, by bond or otherwise, any charge, lien, security interest or encumbrance upon the Leased Property, upon any Basic Rent, or upon any Additional Rent which arises for any reason (except for liens arising out of the act or omission of Lessor without the consent of Lessee), including all liens which arise out of Lessee's possession, use, operation and occupancy of the Leased Property, but not including any Permitted Encumbrances. Nothing contained in this Lease shall be construed as constituting the consent or request of Lessor, express or implied, to or for the performance by any contractor, laborer, materialman, or vendor of any labor or services or for the furnishing of any materials for any construction, alteration, addition, repair or demolition of or to the Leased Property or any part thereof. Notice is hereby given that Lessor will not be liable for any labor, services or materials furnished or to be furnished to Lessee, or to anyone holding an interest in the Leased Property or any part thereof through or under Lessee, and that no mechanic's or other liens for any such labor, services or materials shall attach to or affect the interest of Lessor in and to the Leased Property. If Lessee shall fail to discharge any charge, lien, security interest or encumbrance within the time period permitted by this Lease, Lessor may discharge the same by payment or bond or both, and Lessee will repay to Lessor, upon demand, any and all amounts paid therefor, or by reason of any liability on such bond, and also any and all reasonable incidental expenses, including reasonable attorneys' fees, incurred by Lessor in connection therewith together with interest on all such amounts calculated at the Overdue Rate.

(b) This Lease shall be subject and subordinate to all present and future mortgages (Mortgages) on the fee interest in the Leased Property and to all advances made upon the security thereof, provided that the holder of the Mortgage shall execute and deliver to Lessee an agreement (SNDA Agreement), in form substantially similar to Schedule F hereto, providing that such holder will recognize this Lease and not disturb Lessee's possession of the Leased Property in the event of foreclosure if no Event of Default is then in existence; and concurrently therewith Lessee shall execute and deliver an estoppel certificate in form substantially similar to Schedule G hereto. Lessee agrees, upon receipt of such SNDA Agreement, to execute such further reasonable instrument(s) as may be necessary to subordinate this Lease to the lien of any such Mortgage, and also to execute such instrument(s) recognizing the assignment of this Lease or the Basic Rent, Additional Rent and other sums payable by Lessee hereunder to the holder of any such Mortgage. The term "Mortgage" shall include deeds of trust or any other similar lien documents.

(c) Lessee agrees to attorn, from time to time, to the holder of each Mortgage and/or the holder of such subsequent mortgage, or any purchaser of the Leased Property, for the remainder of the Term, provided that such holder or such purchaser, shall then be entitled to possession of the Leased Property subject to the provisions of this Lease. The provisions of this

-7-

subsection shall inure to the benefit of such holder or such purchaser, shall apply notwithstanding that, as a matter of law, this Lease may terminate upon the foreclosure of the Mortgage (in which event the parties shall execute a new lease for the remainder of the Term on the same terms set forth herein), shall be self-operative upon any such demand, and no further instrument shall be required to give effect to said provisions. Each such party, however, upon demand of the other, hereby agrees to execute, from time to time, instruments in confirmation of the foregoing provisions hereof, reasonably satisfactory to the requesting party acknowledging such subordination, non-disturbance and attornment as are provided herein and setting forth the terms and conditions of its tenancy.

8.    Indemnification: Fees and Expenses.

(a)    Lessee shall pay, and shall protect, defend and indemnify Lessor, Lessor's Mortgagee, the successors and assigns of either, the beneficial owners of any of the foregoing and the trustees, beneficiaries, partners, shareholders, officers, directors, agents or employees of Lessor, Lessor's Mortgagee or any such successor or assign or beneficial owner (each an Indemnified Party and collectively, the Indemnified Parties), against and hold the Indemnified Parties harmless from all liabilities, losses, damages, costs, expenses (including reasonable attorneys' fees and expenses), claims, demands or judgments of any nature (a) arising or alleged to arise from or in connection with the condition, use, operation, maintenance, subletting and management of the Leased Property, (b) relating to the Leased Property and the appurtenances thereto and the use and occupancy thereof by Lessee or anyone claiming by, through or under Lessee or (c) arising or alleged to arise from or in connection with any of the following events: (i) any injury to, or death of, any person or any damage to or loss of property on or adjacent to the Leased Property or growing out of or directly or indirectly connected with, ownership, use, nonuse, occupancy, operation, possession, condition, construction, repair or rebuilding of the Leased Property or adjoining sidewalks, streets or ways appurtenant thereto or resulting from the condition of any thereof; (ii) any claims by third parties resulting from any violation or alleged violation by Lessee of (A) any provision of this Lease, or (B) any Legal Requirement, or (C) any other lease or agreement relating to the Leased Property, or (D) any contract or agreement to which Lessee is a party or any restriction, law, ordinance or regulation, affecting the Leased Property or the ownership, use, nonuse, occupancy, condition, operation, possession, construction, repair or rebuilding thereof or of adjoining sidewalks, streets or ways; (iii) any contest permitted by Article 6; or (iv) Lessee's failure to pay in accordance with the terms and provisions hereof any item of Additional Rent or other sums payable by Lessee hereunder.  Lessee shall not be liable in any case to any Indemnified Party for any liabilities, obligations, claims, damages, penalties, causes of action, costs or expenses to the extent that they result from the gross negligence or willful misconduct of such Indemnified Party.  If Lessor, Lessor's Mortgagee, or any agent of Lessor or Lessor's Mortgagee, or any other Indemnified Party, shall be made a party to any such litigation commenced against Lessee, and if Lessee, at its expense, shall fail to provide Lessor or Lessor's Mortgagee or its agent or other Indemnified Party with counsel reasonably approved by such party, Lessee shall pay all costs and reasonable attorney's fees and expenses incurred or paid by Lessor or Lessor's Mortgagee or its agent or other Indemnified Party in connection with such litigation.

Edwards/legal/107547.182/lease/0310.doc

(b)     The representations, warranties and obligations of Lessee, and the rights and remedies of each Indemnified Party under this Article 8, are in addition to and not in limitation of any other representations, warranties, obligations, rights and remedies provided in this Lease or otherwise at law or in equity, and shall survive the expiration or termination of this Lease.

9.     Environmental Matters.

(a)     Lessee represents and warrants and covenants to the Indemnified Parties that:

(i)     at all times during the Term of this Lease, (x) the Leased Property, Lessee, all sublessees and any assignees of Lessee, and all other parties claiming by, through, or under Lessee, shall comply with all applicable Environmental Laws; (y) Lessee, all sublessees and any assignees of Lessee, and all other parties claiming by, through, or under Lessee, shall have obtained all permits, licenses, and any other authorizations required to conduct its or their operations at the Leased Property that are required under all applicable Environmental Laws and Lessee, all sublessees and any assignees of Lessee, and all other parties claiming by, through, or under Lessee, shall be in compliance with the same; and (z) Lessee shall remove and dispose of any Hazardous Substances present on the Leased Property not in compliance with applicable Environmental Laws;

(ii)     to the best of Lessee's knowledge after due inquiry the Leased Property is in compliance with applicable Environmental Laws; no Hazardous Substances are or have been discharged, generated, treated, disposed of, or stored on, incorporated in or removed or transported from the Leased Property except in compliance with applicable Environmental Laws or as disclosed in the Environmental Site Assessment. No notices, complaints or orders of violation or non-compliance of any nature whatsoever regarding alleged violations of, or strict liability under, Environmental Laws have been issued to Lessee or, to the best of its Actual Knowledge, to any Person regarding the Leased Property, and Lessee has no Actual Knowledge that any federal, state or local governmental environmental investigation nor any legal action by a private party is pending or threatened, in each case with regard to the Leased Property or any use thereof or any alleged violation of Environmental Laws with regard to the Leased Property; no liens have been placed upon the Leased Property in connection with any actual or alleged liability under any Environmental Laws;

(iii)     the Leased Property has not been used by Lessee or, to the best of Lessee's knowledge after reasonable inquiry, by any other Person and will not be used during the Term of this Lease to generate, manufacture, refine, produce or process any Hazardous Substance or to store, handle, treat, dispose, transfer or transport any Hazardous Substance other than normal and lawful uses of such Hazardous Substances in compliance with Environmental Laws which activities have not had and will not have any material adverse effect upon the Leased Property;

(iv)     no pits, lagoons, ponds, or other surface impoundments, above ground tanks or other containment structures will be or, to the best of Lessee's knowledge after due inquiry, have been, constructed, operated or maintained in or on the Leased Property in violation of applicable Environmental Laws and no underground storage tanks are or will be constructed,

-9-

operated or maintained in or on the Leased Property; to the best of Lessee's knowledge after due inquiry, there is presently no asbestos nor asbestos-containing material (except commercially produced product in non-friable bonded form in floor, ceiling or wall materials which is in good condition, the presence of which complies with all Environmental Laws) nor any PCB-containing equipment, including PCB-containing transformers, located in, on, at or under the Leased Property nor will any of the foregoing be located in, on, at or under the Leased Property at any time during the Term of this Lease. At Lessor's reasonable request, Lessee shall maintain and implement a written asbestos-containing material operations and maintenance program for any identified or presumed asbestos-containing materials, such written program to be in form and content reasonably acceptable to Lessor;

(v)     other than lawful quantities in connection with Lessee's use of the Leased Property in compliance with Environmental Laws, the Leased Property is free of Hazardous Substances at, in, on, over or under the Leased Property, regardless of the source of any such Hazardous Substances; and

(vi)     to Lessee's Actual Knowledge, the Environmental Site Assessment is true, correct and complete, and contains no misstatement of fact or omission of any fact which would make the statements contained therein untrue, incomplete or misleading in any material respect.

(b)     Promptly upon obtaining Actual Knowledge thereof, Lessee shall give to Lessor notice of the occurrence of any of the following, in each case relating to the Leased Property or the use, occupancy or operation thereof in respect of any Environmental Law: (i) the failure of the Leased Property, Lessee, any sublessee or assignee of Lessee or invitee of Lessee, or any other party claiming by, through, or under Lessee, to comply therewith in any manner whatsoever; (ii) the issuance to Lessee, or any sublessee of any portion of the Leased Property or any assignee of Lessee, or any other party claiming by, through, or under Lessee, of any notice, complaint or order of violation or non-compliance therewith of any nature whatsoever; (iii) any notice of a pending or threatened investigation thereunder; (iv) any notice from any governmental agency requiring any corrective action with respect to the Leased Property thereunder; or (v) any notice or other communication with respect to a pending or threatened governmental or private party action relating to violation thereof.

(c)     At any time (i) if a material adverse change in the environmental condition of the Leased Property has occurred or been discovered, and if Lessee shall not (A) diligently commence to cure such condition, to the extent necessary to meet Legal Requirements, to comply fully with applicable Environmental Laws, and to prevent a material diminution in the fair market value of the Leased Property related to the environmental condition, within 30 days after Lessee becomes aware of such adverse change (or such shorter period as may be required by law or in the event of an emergency) and (B) thereafter diligently prosecute to completion such cure, or (ii) after an Event of Default has occurred and is continuing under this Lease, or (iii) if Lessor has reasonable cause to believe that Lessee is in default or has permitted a default under this Article 9, Lessor may cause to be performed or direct Lessee to cause to be performed an environmental audit or site assessment of the Leased Property and the then uses thereof reasonable in scope under the circumstances, and may take such actions as it may deem necessary to cure such condition or to

-10-

cause the Leased Property to comply with any Legal Requirement. Such environmental audit or site assessment shall be performed by an engineer qualified by law and experience to perform the same and satisfactory to Lessor, shall include a review of the uses of the Leased Property and compliance of the same with all Environmental Laws, and shall include an estimate of the cost to cure any breach or default in Lessee's covenants hereunder. All costs and expenses incurred by Lessor in connection with such environmental audit or assessment and any remediation required shall be paid by Lessee upon demand, and shall bear interest at the Overdue Rate. Such audit or assessment shall be addressed to Lessor and Lessor's Mortgagee and shall provide expressly that they can rely on its findings. Except as required by law, the results of such audit or assessment shall not be disclosed to third parties by Lessor or Lessor's Mortgagee without the prior written consent of Lessee.

(d)     Subject to the provisions of paragraph (d) of Article 6 hereof, in the event of a violation of or the discovery of a violation of any Environmental Law by Lessee, any sublessee of any portion of the Leased Property, any assignee of Lessee or any invitee of Lessee, or any other Person claiming by, through, or under Lessee, or resulting from Lessee's failure to comply with this Article 9, Lessee shall promptly perform all remedial actions to clean up, contain, or remove any Hazardous Substances on, under or in the Leased Property in accordance with, and as required by, applicable Environmental Laws to restore the Leased Property to its pre-contamination condition and otherwise to cure any such violation of any Environmental Law, all at Lessee's sole cost and expense. Lessee shall determine the nature and scope of all such required remedial actions within 30 days after obtaining Actual Knowledge of any such violation and shall complete all such actions within 120 days following the date that the nature and scope of such required remedial actions are identified, provided that if such remedial actions cannot be completed with diligence within such 120 day period, and so long as Lessee is performing such remedial actions with due diligence, the time within which such remedial actions may be completed shall be extended for such period as may be reasonably necessary to complete such remedial action with diligence, provided the same shall be subject to Lessor's approval and consistent with the requirements of applicable law. If, as a result of any such violation, a lien attaches to the Leased Property that takes priority over the lien of the Mortgage, Lessee shall promptly, and in any event within 10 days after the attachment of any such lien, discharge or contest such lien in accordance with Article 6(d) and post a bond or deposit an irrevocable letter of credit with Lessor's Mortgagee, in either event satisfactory in form and substance and with a surety or obligor satisfactory to Lessor's Mortgagee and in an amount sufficient to discharge such lien.

(e)     In addition to, and not in limitation of, any indemnity contained in Article 8, Lessee agrees to indemnify, defend and hold harmless each Indemnified Party from and against any and all losses which may be suffered or incurred by, or asserted against such Indemnified Party to the extent arising directly or indirectly out of (i) the use, storage, transportation, disposal, treatment, release, threatened release, discharge, emission, generation or presence of any Hazardous Substances at, from, on, over, under or in the Leased Property, regardless of whether occurring before or during the Term of this Lease and regardless of the source of any such Hazardous Substances, or (ii) any default in the performance of any obligation under this Article 9 or any violation of any Environmental Law with respect to the Leased Property or by Lessee or any

-11-

Person claiming by, through or under Lessee, or resulting from Lessee's failure to comply with this Article 9.

(f)     The representations, warranties and obligations of Lessee, and the rights and remedies of each Indemnified Party under this Article 9, are in addition to and not in limitation of any other representations, warranties, obligations, rights and remedies provided in this Lease or otherwise at law or in equity.

(g)     The obligations and liabilities of Lessee with respect to each Indemnified Party, actual or contingent, under this Article 9 and relating to the period through the end of the Term, whether arising before or after the Term, shall survive such termination of this Lease or the abandonment of the Leased Property by Lessee, or any acquisition or disposition of the Leased Property, except with respect to events and circumstances resulting solely from the acts of any Person other than Lessee, any Affiliate of Lessee, or any Person claiming by or through Lessee or any such Affiliate and occurring after the foreclosure of the lien of the Mortgage and the sale of the Leased Property pursuant to such foreclosure.

10.     <u>Maintenance and Repair; Additions.</u>

(a)     Lessee will, at its cost and expense, keep and maintain the Leased Property, including the Improvements and any altered, rebuilt, additional or substituted buildings and other improvements, in the same condition as on the date of this Lease, ordinary wear and tear excepted, and (except as otherwise provided in paragraph (c) of Article 12) will make all structural and non-structural, and ordinary and extraordinary changes, repairs and replacements, foreseen or unforeseen, which may be required, whether or not caused by its act or omission, to be made upon or in connection with the improvements to the Leased Property in order to keep the same in such condition, including taking action necessary to maintain the Leased Property in compliance with Legal Requirements and Environmental Laws. Lessee shall keep the Leased Property orderly and free and clear of rubbish. Lessor shall not be required to maintain, alter, repair, rebuild or replace any improvements on the Leased Property or to maintain the Leased Property, and Lessee expressly waives the right to make repairs at the expense of Lessor pursuant to any law at any time in effect. Lessor shall have no obligation to incur any expense of any kind or character in connection with the management, operation or maintenance of the Leased Property during the Term of the Lease. Lessee shall use and operate the Leased Property or cause it to be used and operated only by personnel authorized by Lessee and Lessee shall use reasonable precautions to prevent loss or damage to the Leased Property from fire and other hazards.

(b)     If any Improvements shall encroach upon any property, street or right-of-way adjoining or adjacent to the Leased Property, or shall violate any restrictive covenant affecting the Leased Property or any part thereof, or shall impair the rights of others under or obstruct any easement or right-of-way to which the Leased Property is subject (excluding, however, covenants, easements or rights-of-way granted by Lessor after commencement of the Term without the consent of Lessee), then, promptly after the written request of Lessor or any Person affected by any such encroachment, violation, impairment or obstruction, Lessee shall, at its expense, either

-12-

(i) obtain effective waivers or settlements of all claims, liabilities and damages resulting from each such encroachment, violation, impairment or obstruction or (ii) make such changes in the Improvements and take such other action as shall be necessary to remove such encroachments or obstructions and to end such violations or impairments, including, if necessary, the alteration or removal of any Improvement. Any such alteration or removal shall be made to the same extent as if such alteration or removal were an alteration under the provisions of paragraphs (c) or (d) of this Article 10 and there shall be no abatement of rent by reason of such alteration or removal.

(c)     In addition to the Buildings, Lessee shall have the right to (i) make non-structural alterations, modifications or improvements to the Improvements and the Land, the cost of which in any instance is $100,000.00 or less and (ii) to make any alterations, additions, modifications or improvements to the Leased Property whether or not structurally integrated with the existing Improvements, the cost of which in any instance is $100,000.00 or less (any matter described in clauses (i) or (ii) being a Minor Addition) without Lessor's consent; provided, however, that prior to commencing any Minor Addition, Lessee shall have delivered to Lessor (A) if the Minor Addition involves alterations, modifications, improvements or additions which will affect the structural elements or building systems of the Improvements, a certificate of a structural engineer licensed in the state in which the Leased Property is located and (B) a certificate of an officer of Lessee certifying that such Minor Addition, if constructed in accordance with the proposed plans and specifications, will not adversely affect the structural integrity of the Improvements or materially impair the utility, fair market value, useful life or operation of the Leased Property and will conform with the character and quality of the existing Improvements and all Legal Requirements. All alterations and additions will be constructed in a good and workmanlike manner using a quality of material and workmanship at least as good as to the original work or installation of the Improvements and in compliance with all applicable Legal Requirements and will be completed in a commercially reasonable time period. Each alteration and addition shall be made at the sole cost and expense of Lessee, may not be encumbered by Lessee and (other than Trade Fixtures) shall become the property of Lessor and subject to this Lease. No Minor Addition or any other alteration or addition which does not satisfy all of the foregoing requirements of this subparagraph (c) shall be made without Lessor's written consent in Lessor's sole discretion.

(d)     All work done in accordance with this Article 10 shall comply with the requirements of all insurance policies required to be maintained by Lessee hereunder.

(e)     Lessee agrees that all of the Improvements shall be deemed real property and fixtures owned by Lessor. In furtherance of the foregoing, Lessee hereby grants, conveys and transfers to Lessor any and all of Lessee's right, title and interest in and to the Improvements (whether now existing or hereafter constructed). Lessee agrees that any and all Improvements of whatever nature at any time constructed, placed or maintained upon any part of the Land shall be and remain the property of Lessor, subject to Lessee's rights under this Lease. Lessee agrees to execute, acknowledge and deliver and file all documents necessary or appropriate to effect the purpose of this paragraph 10(e).

11.     <u>Trade Fixtures</u>. Lessor acknowledges and agrees that the items of trade fixtures,

-13-

machinery and equipment described in Schedule E (but specifically excluding Improvements, building systems and other replacements of fixtures, machinery and equipment which are the property of Lessor) hereto are and shall remain the property of Lessee (Trade Fixtures) and be treated as "trade fixtures" for the purposes of this Lease and Lessee may remove the same from the Leased Property at any time prior to the termination of this Lease, provided that Lessee shall repair any damage to the Leased Property resulting from such removal. Lessee may, at its own cost and expense, install or place or reinstall or replace upon or remove from the Leased Property any such Trade Fixtures. Any such Trade Fixtures shall not become the property of Lessor. Replacements of fixtures, machinery and equipment which are property of the Lessor shall be of at least equal quality to the replaced fixtures, machinery and equipment when the replaced items were new.

12.     Condemnation and Casualty; Economic Obsolescence.

        (a)     Lessee hereby assumes all risk of loss, damage or destruction, whether (i) by fire or hazard or casualty, or the theft of all or any portion of the Leased Property (a Casualty) or (ii) by taking, condemnation, seizure, confiscation or requisition of use or title of all or any portion of the Leased Property by any governmental body or authority or any Person legally vested with such powers (a Taking; a Taking and a Casualty are each sometimes referred to as a Destruction.) Lessee hereby assigns to Lessor any award or insurance or other payment to which Lessee may become entitled by reason of its interest in the Leased Property, (other than any award or insurance or other payment made to Lessee specifically made for interruption of business, moving expenses or Trade Fixtures; hereinafter referred to as Lessee's Loss) if the Leased Property, or any portion thereof, is damaged, destroyed, lost or taken in a Taking or a Casualty. If a Destruction with respect to the Leased Property occurs, the Lessee shall give Lessor and Lessor's Mortgagee prompt written notice thereof, and describe in reasonable detail in each case the circumstances of the Taking or Casualty and the damage to or loss of the Leased Property. So long as no Event of Default has occurred and is continuing, Lessee shall at its cost and expense, in the name and on behalf of the Lessor, Lessee, Lessor's Mortgagee or otherwise, appear in any such proceeding or other action, negotiate, accept and prosecute any claim for any award, compensation, insurance proceeds or other payment on account of any such Casualty or Taking and, subject to paragraph (b) below, cause each such award, compensation, insurance proceeds or other payment to be paid to Lessor's Mortgagee, if any, and otherwise, to Lessor. Lessee shall use commercially reasonable efforts to achieve the maximum award or other recoveries obtainable under the circumstances. Any negotiated awards, settlement or recoveries shall be subject to Lessor's and Lessor's Mortgagee's prior written approval. Lessee shall promptly inform Lessor of all settlement offers. Lessor may appear in any such proceeding or other action in a manner consistent with the foregoing and the costs and expenses of any such appearance shall be borne by Lessee and payable to Lessor as Additional Rent. If an Event of Default has occurred and is continuing, Lessor's Mortgagee (or if there be none, Lessor) shall have the right at Lessee's cost to negotiate, adjust and settle awards, settlements and recoveries without Lessee's approval.

        (b)     After giving notice of a Destruction under the provisions of paragraph 12(a) hereof, Lessee shall, at Lessee's own cost and expense, proceed with diligence and promptness (i) to carry out any work necessary to make the Leased Property safe and secure, and (ii) to

-14-

restore, repair, replace, rebuild and/or improve the Leased Property in order to restore the Leased Property, as nearly as practicable, to a condition and fair market value not less than the condition required to be maintained hereunder and fair market value immediately prior to such Destruction. All construction work shall be undertaken and completed in the same manner as if the same were undertaken pursuant to paragraph (c) of Article 10, and shall be subject to the reasonable requirements of Lessor and Lessor's Mortgagee as provided for in clause (ii) below. Failure by Lessee to restore the Leased Property by the date that is 24 months after the Destruction occurs, subject to extension by Lessor of not more than 12 months to the extent that restoration is delayed due to acts of God, strikes, unavailability of materials, or further Destruction, shall constitute an Event of Default hereunder. The foregoing obligations of Lessee so to restore, repair, replace and/or rebuild the Leased Property shall not be applicable (but the foregoing obligations of Lessee to make the Leased Property safe and secure shall be applicable) in the case of an Insured Major Taking pursuant to paragraph (c) below, or if the Leased Property is substituted in accordance with subsection (d) below.

Basic Rent and Additional Rent shall not abate hereunder by reason of any Destruction affecting the Leased Property, and this Lease shall continue in full force and effect and Lessee shall continue to perform and fulfill all of Lessee's obligations, covenants and agreements hereunder notwithstanding such Destruction.

The Net Award shall be applied to effect compliance with Lessee's obligations hereunder. If the Net Award is less than the estimated cost of restoring or rebuilding the Improvements to the condition required in this paragraph (b), as reasonably determined by Lessor, at Lessee's expense, then, unless such estimated cost is less than the Restoration Threshold Amount, Lessee shall deposit the amount by which such estimated cost exceeds the Net Award with the Depositary (as defined below) or shall post an equivalent bond or other security satisfactory in form and substance to Lessor and Lessor's Mortgagee issued by a surety, bank or other Person satisfactory to Lessor and Lessor's Mortgagee, whereupon such deposit or bonded amount shall be part of the Net Award for purposes of paragraph (c) of this Article 12. If the Net Award does not exceed $100,000 (the Restoration Threshold Amount), then the Net Award shall be promptly paid to Lessee to be applied to the repair and rebuilding required by this paragraph (b). If the Net Award exceeds the Restoration Threshold Amount then:

(i)      the full amount thereof shall be paid to a depositary (the Depositary). The Depositary shall be Lessor's Mortgagee or a servicer of the loan held thereby, or a bank or trust company, selected by Lessor and approved by Lessor's Mortgagee, and which has a credit rating from S&P or Moody's (or any successor to either entity) of "A" or "A2", respectively, or better. The Depositary shall have no affirmative obligation to prosecute a determination of the amount of, or to effect the collection of, any insurance proceeds or condemnation award or awards. Moneys so received by the Depositary shall be held by the Depositary in trust separately for the uses and purposes provided in this Lease. To the extent not available to be paid from the Net Award, fees and expenses payable to the Depositary shall be paid by Lessee as Additional Rent.

(ii)      Payments of the Net Award for the actual costs and expenses incurred by Lessee in connection with such repair and rebuilding shall be made to Lessee by the Depositary

-15-

after written notice to the Depositary, with a copy to Lessor, setting forth in reasonable detail all of such costs and expenses actually incurred by Lessee. Lessee shall comply with the reasonable requirements of Lessor's Mortgagee, if any, with respect to the distribution of any Net Award by the Depositary, including without limitation that no Event of Default shall have occurred and be continuing hereunder, that all plans and specifications shall have been reviewed and approved by Lessor and Lessor's Mortgagee, and that disbursements shall be conditioned upon, inter alia, the delivery of lien waivers, architect's certificates and title insurance endorsements.

(c)    If a Taking occurs that (i) renders the Leased Property permanently unusable by Lessee for the uses permitted under Article 4 hereof, and (ii) is covered by condemnation insurance meeting all insurance requirements set forth in Article 13 hereof, the net proceeds of which (after deducting therefrom the cost of obtaining such net proceeds) are equal to or in excess of the Property Account (but in no event less than the amount necessary to pay and satisfy in full (including, without limitation, any applicable Make-Whole Premium) the Note or Successor Note, as the case may be, at the time such net proceeds are paid to Lessor) (net proceeds in such amount being referred to herein as "Payoff Proceeds" and such insurance yielding Payoff Proceeds being referred to herein as "Applicable Condemnation Insurance") (an "Insured Major Taking"), then, Lessee may by written notice to Lessor given within thirty (30) days after such Payoff Proceeds become available for delivery to Lessor hereunder, offer to pay (or cause to be paid) the Payoff Proceeds to Lessor. Lessor shall have sixty (60) days after notice from Lessee of Lessee's offer of such Payoff Proceeds to accept or reject it, and if Lessor fails to act, it shall be deemed to have accepted such offer. No rejection of such offer shall be effective unless consented to by Lessor's Mortgagee. If Lessor rejects such offer, this Lease shall terminate on the Installment Payment Date first occurring thirty (30) days after such rejection, and the entire Net Award shall be retained by Lessor. If Lessor accepts such offer, then, upon payment to Lessor's Mortgagee or Lessor, in that order, of the Payoff Proceeds so as to pay and satisfy in full (including, without limitation, any applicable Make-Whole Premium) the Note or Successor Note, as the case may be, (x) this Lease shall terminate, (y) Lessor shall assign all rights to the Net Award to the issuer of such Applicable Condemnation Insurance, and (z) Lessor shall transfer its interest in the Leased Property, if any, to the issuer of such Applicable Condemnation Insurance. In the event of a Taking of all of the Leased Property, if such Taking is not covered by Applicable Condemnation Insurance yielding Payoff Proceeds, then, at the option of Lessor, upon notice from Lessor (which, to be effective, must be joined in by Lessor's Mortgagee), Lessor may require Lessee to make and Lessee shall be deemed to have made an offer to Lessor to purchase the Leased Property, together with any Net Award not actually received by Lessor or Lessor's Mortgagee, in the manner and under the terms of Article 15 on the Installment Payment Date first occurring thirty (30) days after Lessor's acceptance of such offer, for a purchase price equal to the Termination Value as of the date of purchase (but in no event less than an amount equal to the amount of the Payoff Proceeds as described above), plus, if at the time of such Taking or at any time thereafter there shall be an Event of Default under this Lease, the Reinvestment Premium, less in all events the Net Award actually received by Lessor or Lessor's Mortgagee. No rejection of such offer shall be effective unless consented to by Lessor's Mortgagee.

(d)    <u>Intentionally Omitted.</u>

-16-

(e)     Notwithstanding any other provision to the contrary contained in this Article 12, in the event of a temporary condemnation, this Lease shall remain in full force and effect (including without limitation the obligation of Lessee to continue to pay Basic Rent and Additional Rent) and the Lessee shall be obligated to continue to pay Basic Rent and Additional Rent and Lessee shall be entitled to the Net Award allowable to such temporary condemnation; except that any portion of the Net Award allocable to the time period after the expiration or termination of the Term shall be paid to Lessor.

(f)     Except during the period commencing on the Term Commencement Date and ending on the date that is the later of (i) the Year 5 Expiration Date (defined in Schedule B), or (ii) if the Note Reset Lease Amendment shall be deemed to have been entered into pursuant to Article 23(a)(v) hereof, the last day of the Note Reset Term (defined in Article 23(a)(v)), if:

(x)     the Leased Property shall have become uneconomic, obsolete or surplus, or because of the occurrence of any of such events has become impracticable for Lessee's continued use and occupancy in Lessee's business, as determined in good faith and certified by an Executive Officer of Lessee, having exercised reasonable business judgment in making its determination, and

(y)     Lessee has determined to discontinue such use and occupancy of the Leased Property, or if Lessee has on or before such date of delivery already permanently discontinued such use and occupancy, and

(z)     if at the time of at the time of the offer set forth in this subsection no Event of Default exists hereunder and no circumstance exists which with the giving of notice or the passage of time, or both, would constitute an Event of Default hereunder,

then Lessee may deliver to Lessor (I) a written offer to purchase the Leased Property pursuant to the provisions of Article 15 for an amount equal to sum of (A) the Termination Value and (B) the "Make-Whole Premium" (defined in Schedule C), if any, and (II) a certificate of Lessee stating that Lessee's senior management has determined that the events set forth in clauses (x), (y) and (z) above have occurred and are true and correct. Lessor shall have sixty (60) days after such offer to accept or reject it, and if it fails to act, it shall be deemed to have accepted such offer. No rejection of such offer shall be effective unless consented to by Lessor's Mortgagee. If Lessor accepts such offer, Lessee must effect such purchase within 120 days after the date of such notice of acceptance from Lessor in accordance with the terms and conditions of Article 15. If Lessee fails to effect such purchase on or before the expiration of such period, this Lease shall continue in full force and effect with respect to the Leased Property, Lessee's purchase offer shall be deemed null and void, and Lessee shall not be permitted to make another such purchase offer under this subsection until the date that is one year after the expiration of said 120 day period. If Lessor rejects such offer, this Lease shall terminate on the Installment Payment Date first occurring thirty (30) days after such rejection. Notwithstanding the foregoing, no such offer to purchase the

Leased Property shall be valid if prior to such time more than five (5) properties demised under Other Leases (hereinafter defined) have been the subject of such an offer resulting in either a purchase of the property demised thereunder by the lessee thereunder or a termination such Other Lease. "Other Lease" shall mean those twenty-one (21) other leases entered into on or about the date hereof between the original lessor named herein and Lessee or an affiliate thereof, each guaranteed by the Lease Guarantor.

13.    Insurance.

(a)    Lessee shall, at its cost and expense, maintain or cause to be maintained valid and enforceable insurance of the following character and shall cause to be delivered to Lessor and Lessor's Mortgagee annual certificates of the insurers as to such coverage and shall comply with the requirements of this Article 13 (Insurance Requirements):

(i)    "all risks" property insurance covering the Leased Property and

all replacements and additions thereto, and all building materials and other property which constitute part of the Leased Property in a manner consistent with insurance maintained by Lessee on properties similar to the Leased Property and in any event in amounts not less than the actual replacement cost of the Leased Property less Land and other uninsurable items, subject to an agreed value endorsement, together with an endorsement providing for law and ordinance coverage in an amount equal to at least twenty-five percent (25%) of the replacement value of all Improvements, all of such insurance to have a deductible not greater than $25,000.00.

(ii)    general liability insurance covering legal liability on an "occurrence" basis against claims for bodily injury, death or property damage, occurring on, in or about the Leased Property and the adjoining land, streets, sidewalks or ways occurring as a result of construction and use and occupancy of facilities located on the Leased Property or as a result of the construction thereof or the use of products or materials manufactured, processed, constructed or sold, or services rendered, on the Leased Property, in the minimum amount of $5,000,000 (or such higher amount as Lessor may reasonably require from time to time) with respect to any one occurrence, accident or disaster or incidence of negligence and with a maximum deductible of $10,000.00. Notwithstanding the foregoing, for so long as Guarantor maintains an Investment Grade Rating, the minimum amount of insurance required to be carried by Lessee with respect to claims arising from the use of products or materials manufactured, processed, constructed or sold, or services rendered, on the Leased Property shall be $1,000,000, provided that Lessee also carries not less than $5,000,000 in umbrella or excess general commercial liability insurance meeting the requirements of this Article 13 and covering any and all liabilities arising from such claims.

(iii)    Worker's compensation insurance (or other similar insurance or self insurance program permitted and in compliance with the laws of the state in which the Leased Property is located) covering all Persons employed in connection with any work done on or about the Leased Property with respect to which claims for death or bodily injury could be asserted against Lessor, Lessee or the Leased Property, complying with the laws of the state in which the

-18-

Leased Property is located.

(iv)     if any portion of the Leased Property is located in an area designated by the Federal Emergency Management Agency as having special flood hazards, flood insurance in the maximum available amount under the Flood Disaster Protection Act of 1973 and otherwise meeting the requirements of the Federal Insurance Administration.

(v)     At all times during which construction, repairs or alterations are being made with respect to the Improvements the insurance provided for in subsection (i) written in a so-called builder's risk completed value form on a non-reporting basis, including permission to occupy the Leased Property, and with an agreed amount endorsement waiving co-insurance provisions.

(vi)     No later than the effective date of a Rent Reset pursuant to Article 23(a), Lessee, at its sole cost and expense, shall obtain on behalf of Lessor, and naming Lessor as insured thereunder and Lessor's Mortgagee as loss payee thereunder residual value insurance, in form reasonably acceptable to Lessor and Lessor's Mortgagee indemnifying against decline in value of the Leased Property through the end of the Basic Term in an amount equal to 40% of the Purchase Price (defined in Schedule B).

(vii)     Such other insurance, in such amounts, against such risks, and with such other provisions as is customarily and generally maintained by operators of similar properties including war risk insurance (at and during such times as war risk insurance is commonly obtained in the case of property similar to the Leased Property), when and to the extent obtainable from the United States Government or any agency thereof.

Such insurance shall be written by insurance companies with a general policyholder's service rating of not less than "A" and a financial rating of not less than "XI" as rated by the most currently available Best's Insurance Reports, and with claims paying ability rating from S&P or Moody's of "A" or better which are legally qualified to issue such insurance in the state where the Leased Property is located, and otherwise reasonably satisfactory to Lessor and Lessor's Mortgagee.  Notwithstanding the foregoing sentence, solely in the case of the insurance required under clauses (i) and (v) above of this Article 13(a), and provided no Event of Default has occurred, such insurance may be provided by way of either (A) self-insurance by Lessee, provided further that Lessee satisfies all requirements for self-insurance as set forth in the paragraph immediately following, or (B) if Lessee does not satisfy such self-insurance requirements, by an insurance policy written by an insurance company with a general policyholder's service rating of not less than "A" and a financial rating of not less than "XI" as rated by the most currently available Best's Insurance Reports, and with claims paying ability rating from S&P of "BBB" or better, or a claims paying ability rating from the National Association of Insurance Commissioners (NAIC) of "NAIC 2" or better, and which is legally qualified to issue such insurance in the state where the Leased Property is located, and otherwise reasonably satisfactory to Lessor and Lessor's Mortgagee; provided, however, that if any Event of Default has occurred, or Lessee otherwise does not qualify to provide, or fails to provide insurance as described in the foregoing clauses (A) or (B) of this paragraph, Lessee shall provide the insurance required by clauses (i) and

-19-