Richard M Pachulski (CA Bar No. 90073)
Hamid R. Rafatjoo (CA Bar No. 181564)
PACHULSKI STANG ZIEHL &
    JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California  90067-4100
Telephone:    (310) 277-6910
Facsimile:    (310) 201-0760
Email: rpachulski@pszjlaw.com
        hrafatjoo@pszjlaw.com

*Counsel for Official Committee of Creditors
Holding Unsecured Claims*

Craig H. Millet (CA Bar No. 106027)
Kenneth A. Glowacki, Jr. (CA Bar No. 217762)
Solmaz Kraus (CA Bar No. 223117)
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive
Irvine, California  92612-4412
Telephone:    (949) 451-3800
Facsimile:    (949) 451-4220
Email:        cmillet@gibsondunn.com
              kglowacki@gibsondunn.com

*Counsel for Debtors and Debtors in
Possession*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| In re: | Case No.: 6:09-bk-14254-MJ |
| FLEETWOOD ENTERPRISES, INC., et al., | Chapter 11 |
| Debtors. | **JOINT PLAN OF LIQUIDATION OF FLEETWOOD ENTERPRISES, INC. AND ITS AFFILIATED DEBTORS AND THE OFFICIAL COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS** |
| | Judge:  Honorable Meredith A. Jury |
| | Hearing Date:  TBD<br>Time:        TBD<br>Courtroom:    301 3420 Twelfth St.<br>            Riverside, CA 92501 |
| | Objection Deadline:  TBD |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................ 1
II. DEFINED TERMS AND RULES OF INTERPRETATION ...................................... 2
    A.    Rules of Construction ...................................................................... 2
    B.    Definitions ........................................................................................ 3
    C.    Rules of Interpretation .................................................................. 22
    D.    Computation of Time ..................................................................... 23
    E.    Governing Law .............................................................................. 23
    F.    Exhibits .......................................................................................... 23
III. CLASSIFICATION OF CLAIMS AND INTERESTS ........................................... 23
    A.    Introduction ................................................................................... 23
IV. TREATMENT OF CLAIMS AND INTERESTS ................................................... 32
    A.    Unclassified Claims ...................................................................... 32
    B.    Claims ............................................................................................ 34
V. ACCEPTANCE OR REJECTION OF THE PLAN by claim holders...................... 47
    A.    Impaired Classes of Claims Entitled to Vote ............................... 47
    B.    Acceptance by an Impaired Class ................................................. 47
    C.    Presumed Acceptances by Unimpaired Classes ........................... 47
    D.    Classes Deemed to Reject Plan ..................................................... 48
    E.    Summary of Classes Voting on the Plan....................................... 48
    F.    Confirmation Pursuant to Bankruptcy Code Section 1129(b) ...... 48
VI. MEANS FOR IMPLEMENTATION OF THE PLAN ........................................... 48
    A.    Substantive Consolidation of Debtors' Estates............................ 48
    B.    Corporate Action. .......................................................................... 49
    C.    Sources for Plan Distribution ....................................................... 51
    D.    Payment of Claims ........................................................................ 51
    E.    KEIP Payments ............................................................................. 51
    F.    Liquidating Trust .......................................................................... 51
    G.    No Revesting of Assets ................................................................. 57
    H.    Accounts ........................................................................................ 58
    I.    Release of Liens ............................................................................ 58
    J.    Exemption from Certain Transfer Taxes ...................................... 58
    K.    Preservation of Causes of Action; Settlement of Causes of Action..................... 58
    L.    Effectuating Documents; Further Transactions ........................... 59
VII. PROVISIONS GOVERNING DISTRIBUTIONS ................................................ 60
    A.    Special Provision Regarding Unimpaired Claims ....................... 60
    B.    Allowed Claims ............................................................................ 60
    C.    Distributions for Claims Allowed as of the Effective Date ......... 60
    D.    Liquidating Trustee as Disbursing Agent .................................... 61
    E.    Delivery of Distributions and Undeliverable or Unclaimed Distributions .......... 61
    F.    Prepayment ................................................................................... 62
    G.    Means of Cash Payment................................................................ 62
    H.    Interest on Claims ......................................................................... 63
    I.    Withholding and Reporting Requirements ................................... 63
    J.    Setoffs ........................................................................................... 64
    K.    Procedure for Treating and Resolving Disputed, Contingent and/or
           Unliquidated Claims ..................................................................... 65
    L.    Fractional Dollars. ......................................................................... 66
    M.    Allocation of Plan Distributions Between Principal and Interest ...... 66
    N.    Distribution Record Date ............................................................. 67
VIII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......... 67
    A.    Rejected Contracts and Leases...................................................... 67
    B.    Bar to Rejection Damages ............................................................ 68

  C. Assumed and Assigned Contracts and Leases ...................................................... 68
IX. CONFIRMATION AND CONSUMMATION OF THE PLAN .......................................... 68
  A. Conditions to Confirmation ................................................................................ 68
  B. Conditions to Effective Date .............................................................................. 69
  C. Waiver of Conditions ......................................................................................... 70
  D. Consequences of Non-Occurrence of Effective Date ......................................... 70
  E. Substantial Consummation ................................................................................. 70
X. ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS ............ 70
  A. Professional Fee Claims ..................................................................................... 70
  B. Substantial Contribution Compensation and Expenses Bar Date ....................... 71
  C. Other Administrative Claims .............................................................................. 71
XI. EFFECT OF PLAN CONFIRMATION ......................................................................... 72
  A. Binding Effect .................................................................................................... 72
  B. Discharge of the Debtors .................................................................................... 72
  C. Releases by the Debtors ...................................................................................... 72
  D. Release By Holders of Claims and Equity Interests ........................................... 74
  E. Injunction ........................................................................................................... 75
  F. Term of Bankruptcy Injunction or Stays ............................................................ 75
  G. Exculpation and Limitation of Liability ............................................................. 75
  H. Indemnification Obligations ............................................................................... 76
  I. Dissolution of the Creditors' Committee ............................................................ 77
XII. RETENTION OF JURISDICTION ............................................................................... 77
XIII. MISCELLANEOUS PROVISIONS ............................................................................. 79
  A. Modifications and Amendments ......................................................................... 79
  B. Severability of Plan Provisions .......................................................................... 80
  C. Successors and Assigns ....................................................................................... 80
  D. Payment of Statutory Fees .................................................................................. 80
  E. Revocation, Withdrawal or Non-Consummation ............................................... 81
  F. Service of Documents ......................................................................................... 81
  G. Plan Supplement(s) ............................................................................................. 82
  H. Plan Exhibits ...................................................................................................... 82
  I. Tax Reporting And Compliance .......................................................................... 83
  J. Filing Of Additional Documents ........................................................................ 83

1    <u>EXHIBITS</u>

2    EXHIBIT A              LISTING OF SUBSIDIARY DEBTORS

3    EXHIBIT B              LIQUIDATING TRUST AGREEMENT

4    EXHIBIT C              NON-EXCLUSIVE LIST OF EXECUTORY CONTRACTS TO BE
                           ASSUMED
5
     EXHIBIT D              NON-EXCLUSIVE LIST OF RETAINED CAUSES OF ACTION
6
     EXHIBIT E              IT AGREEMENTS
7

8    **<u>Note</u>:   To the extent that the foregoing Exhibits are not annexed to this Plan, such Exhibits
     will be filed with the Bankruptcy Court in Plan Supplement(s) filed on or before the date(s) set
9    for the filing of such documents and forms of documents.**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

## INTRODUCTION

Fleetwood Enterprises, Inc., its affiliated debtors and debtors in possession (the "Debtors"), and the Official Committee of Unsecured Creditors Holding Unsecured Claims (the "Creditors' Committee") propose the following chapter 11 plan of liquidation. The Debtors and the Creditors' Committee are the proponents of the Plan (the "Plan Proponents") within the meaning of Bankruptcy Code section 1129. This Plan contemplates the distribution of the proceeds of the liquidation of the Debtors' Assets and the resolution of the outstanding Claims against and Equity Interests in the Debtors. Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of (i) the Debtors' history, business and operations, (ii) a summary and analysis of this Plan, and (iii) certain related matters, including risk factors relating to the consummation of this Plan. All Holders of Claims who are eligible to vote on the Plan are encouraged to read the Plan and the accompanying Disclosure Statement (including all exhibits thereto) in their entirety before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127 and Bankruptcy Rule 3019, the Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

The Plan is a liquidating plan. Pursuant to prior orders of the Bankruptcy Court, the Debtors have sold or will sell substantially all of their Assets. The Plan provides for the distribution of certain proceeds from such sales and the creation of a Liquidating Trust that will administer and liquidate all remaining property of the Debtors, including Causes of Action, not sold, transferred or otherwise waived or released before the Effective Date of the Plan. The Plan further provides for the substantive consolidation of all of the Debtors, the termination of all Equity Interests in the Debtors, the dissolution and wind-up of the affairs of the Debtors, and the transfer of any remaining Estate Assets to the Liquidating Trust. The Plan also provides for Distributions to certain Holders of Administrative Claims and Priority Claims and to other Claimholders and the funding of the Liquidating Trust.

The Plan embodies a settlement in principle with the majority holders of 14% Notes and 6% Notes that, in the aggregate, asserted in excess of $233 million of claims against the Debtors. In December 2008, approximately $81 million of the 5% Notes issued by FEI were exchanged for 14% notes, which were guaranteed and secured by certain assets of the Debtors.   The Debtors instituted an avoidance action against the 14% Notes.  The Creditors' Committee was then given standing to pursue the avoidance action and filed an amended complaint to avoid the issuance of the 14% Notes, the security interests and guarantees granted to the holders of the 14% Notes.  As explained in more detail in the Disclosure Statement, the Plan Proponents believe that the Noteholder Settlement, which resolves the litigation against the holders of the 14% Notes (the "DB Litigation"), avoids litigation over the relative rights of the 14% Notes, is in the best interests of the Estates and will provide a far greater recovery to general unsecured creditors than awaiting the uncertain results of expensive protracted litigation against the 14% Notes.

No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith, have been approved for use in soliciting acceptances and rejections of the Plan.  Nothing in the Plan should be construed as constituting a solicitation of acceptances of the Plan unless and until the Disclosure Statement has been approved and distributed to all Holders of Claims and Equity Interests to the extent required by Bankruptcy Code section 1125.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS THERETO) AND THE PLAN, EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## II.

### DEFINED TERMS AND RULES OF INTERPRETATION

**A.      Rules of Construction**

For purposes of this Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined, including those capitalized terms used in the preceding Introduction, shall have the meanings ascribed to them in Article II of this Plan or any Exhibit hereto.  Any term used in this Plan that is not defined herein, but is defined in the

Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the

Bankruptcy Code or the Bankruptcy Rules, as applicable.  To the extent that there is an

inconsistency between a definition in this Plan and a definition set forth in the Bankruptcy Code, the

definition set forth herein shall control.  Whenever the context requires, such terms shall include the

plural as well as the singular number, the masculine gender shall include the feminine, and the

feminine gender shall include the masculine.

**B.**    **Definitions**

    **1.**    **5% Notes** means those remaining 5% Convertible Senior Subordinated Debentures

due 2023 issued in the original aggregate principal amount of $100 million by FEI in December

2003, which were not exchanged for 14% Notes or for the stock of FEI.

    **2.**    **6% Notes** means those certain 6% Convertible Subordinated Debentures due 2028,

issued in the original aggregate principal amount of $296.4 million by FEI to Debtor Fleetwood

Capital Trust, Bank of New York as indenture trustee, on account of which the aggregate Allowed

Claim shall be $161.173 million.

    **3.**    **14% Notes** means the 14% Senior Secured Notes due 2011, issued by FEI on

December 12, 2008 in the aggregate principal amount of approximately $81.4 million in exchange

for the 5% Notes, on account of which the aggregate Allowed Claim shall be Allowed on a secured

basis in the amount of $84,256,664.

    **4.**    **503(b)(9) Claim** means a Claim to the extent asserted against one or more of the

Debtors pursuant to Bankruptcy Code section 503(b)(9).

    **5.**    **503(b)(9) Claim Bar Date** means September 9, 2009 for all Debtors.

    **6.**    **Administrative Claim** means a Claim for costs and expenses of administration of the

Chapter 11 Cases under Bankruptcy Code sections 503(b), 507(b), or 1114(e)(2), and entitled to

priority under Bankruptcy Code section 507(a)(2), including:  (a) any actual and necessary costs and

expenses, incurred after the Petition Date, of preserving the Estates and operating the businesses of

the Debtors (such as wages, salaries and commissions for services and payments for inventory,

leased equipment and premises) and Claims of governmental units for taxes (including tax audit

Claims related to tax years commencing after the Petition Date, but excluding Claims relating to tax

periods, or portions thereof, ending on or before the Petition Date); (b) 503(b)(9) Claims, and (c) all other claims entitled to administrative claim status pursuant to a Final Order of the Bankruptcy Court, including Professional Fee Claims.

7.      **Administrative Claims Bar Date** means the last date by which a request for payment of an Administrative Claim that arises after the Petition Date up to and through the Effective Date, may be filed, which date is thirty (30) days after the Effective Date, provided however, that Professional Fee Claims may be filed up to forty-five (45) days after the Effective Date.

8.      **Administrative Claims Objection Deadline** means the last day for filing an objection to any request for the payment of an Administrative Claim, which shall be the later of (a) one hundred eighty (180) days after the Effective Date or (b) such other date specified in this Plan or ordered by the Bankruptcy Court.  The filing of a motion to extend the Administrative Claims Objection Deadline shall automatically extend the Administrative Claims Objection Deadline until a Final Order is entered on such motion.  In the event that such motion to extend the Administrative Claims Objection Deadline is denied by the Bankruptcy Court, the Administrative Claims Objection Deadline shall be the later of the current Administrative Claims Objection Deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to extend the Administrative Claims Objection Deadline.

9.      **Allowed Claim** means a Claim or any portion thereof (a) that has been allowed by a Final Order of the Bankruptcy Court (or such court as the Liquidating Trustee and the Holders of any such Claim agree may adjudicate such Claim and any objections thereto), (b) that either (x) has been Scheduled as a liquidated, non-contingent, and undisputed Claim in an amount greater than zero on the Schedules, or (y) is the subject of a timely filed Proof of Claim as to which either (i) no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Plan, the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, or (c) that is expressly allowed in a liquidated amount in the Plan or by the Liquidating Trustee in its sole and absolute discretion.  For purposes of

determining the status (i.e., Allowed or Disputed) of a particular Claim prior to the expiration of the period fixed for filing objections to the allowance or disallowance of Claims, any such Claim which has not been previously allowed or disallowed by a Final Order of the Bankruptcy Court or the Plan shall be deemed a Disputed Claim unless such Claim is specifically identified by the Plan Proponents and/or the Liquidating Trustee as being an Allowed Claim.

10.     **"Allowed ... Claim"** means an Allowed Claim of the particular type or Class described.

11.     **Assets** means all tangible and intangible assets of every kind and nature of the Debtors and their Estates, and all proceeds thereof, existing as of the Effective Date.

12.     **Avoidance Actions** means Causes of Action arising under Bankruptcy Code sections 510, 541, 542, 544, 545, 547 through 551 and/or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action.

13.     **Ballot** means each of the ballot forms distributed to each Holder of a Claim or Equity Interest entitled to vote to accept or reject this Plan.

14.     **Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter amended and as applicable to the Chapter 11 Cases.

15.     **Bankruptcy Court** means the United States Bankruptcy Court for the Central District of California (Riverside Division) or any other court with jurisdiction over the Chapter 11 Cases.

16.     **Bankruptcy Rules** means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended and as applicable to the Chapter 11 Cases on proceedings therein, as the case may be, and the Local Rules, as now in effect or hereafter amended.

17.     **BofA Cash Collateral Amount** has the meaning ascribed to it in Article IV.B.2 herein.

18.     **BofA Indemnification Claims** has the meaning ascribed to it in Article IV.B.2 herein.

**19.**    **BofA Indemnification Reserve** has the meaning ascribed to it in Article IV.B.2 herein.

**20.**    **Business Day** means any day, other than a Saturday, Sunday or Legal Holiday (as defined in Bankruptcy Rule 9006(a)).

**21.**    **Case Interest Rate** means the federal judgment rate provided in 28 U.S.C. § 1961 in effect on the Petition Date.

**22.**    **Cash** means legal tender of the United States of America and equivalents thereof, which may be conveyed by check or wire transfer.

**23.**    **Causes of Action** means any and all claims, actions, proceedings, causes of action, Avoidance Actions, suits, accounts, controversies, agreements, promises, rights of action, rights to legal remedies, rights to equitable remedies, rights to payment and Claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, that any Debtor and/or Estate may hold against any Person but excluding those released, exculpated or waived pursuant to this Plan.

**24.**    **Chapter 11 Case(s)** means, (a) when used with reference to a particular Debtor, the case under chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court and (b) when used with reference to all Debtors, the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court.

**25.**    **Claim** has the meaning set forth in Bankruptcy Code section 101(5).

**26.**    **Claimholder** means the Holder of a Claim.

**27.**    **Claims Agent** means Kurtzman Carson Consultants, LLC.

**28.**    **Claims Objection Deadline** means the last day for filing objections to Claims, including but not limited to 503(b)(9) Claims and Reclamation Claims, but excluding all other Administrative Claims and Professional Fee Claims, which day shall be the later of (a) one year after the Effective Date or (b) such other date as the Bankruptcy Court may order.  The filing of a motion to extend the Claims Objection Deadline shall automatically extend the Claims Objection Deadline until a Final Order is entered on such motion.  In the event that such motion to extend the Claims

Objection Deadline is denied, the Claims Objection Deadline shall be the later of the current Claims

Objection Deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy

Court's entry of an order denying the motion to extend the Claims Objection Deadline.

29.    **Class** means a category of Holders of Claims or Equity Interests.

30.    **Class 1** consists of Non-Tax Priority Claims.

31.    **Class 2** consists of the Secured Credit Facility Claims.

32.    **Class 3** consists of the ISIS Claim.

33.    **Class 4** consists of the Miscellaneous Secured Claims.

34.    **Class 5** consists of the 14% Notes Claims.

35.    **Class 6** consists of the General Unsecured Claims against the Debtors that are not

otherwise classified herein.

36.    **Class 7** consists of the 6% Notes Claims.

37.    **Class 8** consists of the 5% Notes Claims.

38.    **Class 9** consists of the Convenience Claims.

39.    **Class 10** consists of the Product Liability PI Claims.

40.    **Class 11** consists of the WARN Class Claims and Severance Class Claims.

41.    **Class 12A** consists of the Claim of Lumbermen's Underwriting Alliance.

42.    **Class 12B** consists of the Claim of Georgia Self Insurance Guaranty Trust Fund.

43.    **Class 13A** consists of the Claim of Westchester Fire Insurance Company and ACE

INA Insurance.

44.    **Class 13B** consists of the Claim of Old Republic Insurance Co.

45.    **Class 13C** consists of the Claim of National Union Fire Insurance Company of

Pittsburgh, PA, American Home Assurance Company, American International Specialty Lines

Insurance Company of the State of Pennsylvania, Commerce and Industry Insurance Company, AIU

Insurance Company, Birmingham Fire Insurance Company of the State of Pennsylvania, Illinois

National Insurance Company, American International South Insurance Company, National Union

Fire Insurance Company of Louisiana, American International Pacific Insurance Company, Granit

State Insurance Company, New Hampshire Insurance Company, Lexington Insurance Company,

Landmark Insurance Company, Starr Excess Liability Insurance Company Ltd.

46. **Class 13D** consists of the Claim of Fidelity and Deposit Company of Maryland.

47. **Class 13E** consists of the Claim of Lumbermen's Mutual Casualty Company, American Motorists Insurance Company, American Manufacturers Mutual Insurance Company American Protection Insurance Company and Kemper Insurance Co.

48. **Class 14** consists of Intercompany Claims by and between the Debtors.

49. **Class 15** consists of the Equity Interests.

50. **Collateral** means any property or interest in property of a Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

51. **Confirmation** means entry by the Bankruptcy Court of the Confirmation Order.

52. **Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court docket in the jointly administered Chapter 11 Cases.

53. **Confirmation Hearing** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

54. **Confirmation Order** means the order entered by the Bankruptcy Court confirming the Plan under Bankruptcy Code section 1129.

55. **Consummation or Consummate** means the occurrence of or to achieve the Effective Date.

56. **Contingent** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

57. **Convenience Claim** means a Class 6 General Unsecured Claim Allowed in an amount of $10,000 or less or as to which a Holder of an Allowed Claim in excess of $10,000 elects to reduce its Allowed Claim to $10,000.

58. **Creditor** means any Person who holds a Claim against one or more of the Debtors.

59. **Creditors' Committee** means the Official Committee of Creditors Holding

Unsecured Claims of Fleetwood Enterprises, Inc., et al., appointed by the United States Trustee in the Chapter 11 Cases pursuant to Bankruptcy Code section 1102.

**60.** **DB** means Deutsche Bank Trust Company Americas, a New York Banking corporation, as Trustee and as Collateral Agent for the 14% Notes.

**61.** **DB Fees** has the meaning ascribed to such term as set forth in Article IV.B.5.

**62.** **DB Litigation** means that action entitled *Fleetwood Homes of Washington, Inc., et al. v. Deutsche Bank Trust Company Americas, a New York Banking corporation, as Trustee and as Collateral Agent of the Fleetwood Enterprises, Inc. Indenture*, dated as of December 12, 2008, et al., as amended, currently pending before the Bankruptcy Court as adversary case number 09-01258-MJ.

**63.** **Debtor** means any of Fleetwood Enterprises, Inc. or the Subsidiary Debtors in their individual capacity.

**64.** **Debtors** means, collectively, Fleetwood Enterprises, Inc. and all of the Subsidiary Debtors.

**65.** **DIP Credit Agreement** means the document entitled "Fourth Amended and Restated Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement dated as of March [26], 2009 among the Financial Institutions Named Herein, as the Lenders; Bank of America, N.A., as the Agent; Fleetwood Enterprises, Inc., as a Guarantor; and Fleetwood Holdings Inc., and certain of its Subsidiaries, as the Borrowers," and any of the documents and instruments relating thereto, as amended, supplemented or modified as of the date hereof.

**66.** **Disallowed** means, with respect to a Claim, or any portion thereof, that such Claim (a) has been disallowed by a Final Order, (b) is Scheduled at zero or as contingent, disputed or unliquidated and as to which no Proof of Claim has been filed by the applicable Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (c) is not Scheduled, and as to which (i) no Proof of Claim has been filed by the applicable Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (ii) no request for payment of an Administrative Claim has been filed by the Administrative Claims Bar Date, as appropriate, or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law.

**67.**    **Disclosure Statement** means the disclosure statement (including all exhibits and schedules thereto) relating to this Plan, distributed contemporaneously herewith in accordance with Bankruptcy Code sections 1125 and 1126(b) and Bankruptcy Rule 3018.

**69.**    **Disputed Claim** means a Claim, or any portion thereof, that has not been Allowed and:

(a)    if no Claim has been filed, or deemed to have been filed, by the applicable Bar Date, which has been or hereafter is listed on the Schedules as unliquidated, contingent or disputed, and which has not been resolved by written agreement of the parties or an order of the Bankruptcy Court;

(b)    if a Claim has been filed, or deemed to have been filed, by the applicable Bar Date (i) a Claim for which a corresponding Claim has been listed on the Schedules as unliquidated, contingent or disputed; (ii) a Claim for which a corresponding Claim has been listed on the Schedules as other than unliquidated, contingent or disputed, but the amount or priority such Claim as asserted in the Claim varies from the amount or priority of such Claim as listed in the Schedules; or (iii) a Claim as to which any party in interest has timely filed an objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court, or which is otherwise disputed by a Debtor and/or the Liquidating Trustee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn, or determined by a Final Order;

(c)    if a request for payment of an Administrative Claim has been filed or deemed to have been filed by the Administrative Claims Bar Date, as appropriate, an Administrative Claim as to which any party in interest has timely filed an objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or which is otherwise disputed by a Debtor or the Liquidating Trustee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order;

(d)    for which a Claim was required to be filed by order of the Bankruptcy Court, but as to which a Claim was not timely or properly filed; or

(e)     that is disputed in accordance with the provisions of this Plan.

**70.**    **Disputed ... Claim** means a Disputed Claim of the type described.

**71.**    **Disputed Claim Amount** means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the liquidated amount set forth in the Proof of Claim relating to the Disputed Claim; (ii) an amount agreed to by a Debtor or the Liquidating Trustee and the Holder of such Disputed Claim; or (iii) if a request for estimation is filed by any party, the amount at which such Claim is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) an amount agreed to by a Debtor or the Liquidating Trustee and the Holder of such Disputed Claim or (ii) the amount estimated by the Bankruptcy Court with respect to such Disputed Claim; or (c) if the Claim was listed on the Schedules as unliquidated, contingent or disputed and no Proof of Claim was filed, or deemed to have been filed, by the applicable Bar Date and the Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, zero.

**72.**    **Disputed Costs** has the meaning as set forth in Article IV.B.2 herein.

**73.**    **Distribution** means any distribution pursuant to the Plan to the Holders of Allowed Claims.

**74.**    **Distribution Date** means either the Initial Distribution Date or a Periodic Distribution Date.

**75.**    **Distribution Record Date** means the record date for purposes of making Distributions under the Plan on account of Allowed Claims, which date shall be the Confirmation Date or such other date designated in the Confirmation Order.

**76.**    **Effective Date** means the Business Day this Plan becomes effective as provided in Article IX hereof.

**77.**    **Equity Interests** means the legal, equitable, contractual, and other rights of any Person with respect to any capital stock or other ownership interest in any Debtor, whether or not transferable, and all options, warrants, call rights, puts, awards, or rights or agreements to purchase, sell, or subscribe for an ownership interest or other equity security in any Debtor, including the Old Common Stock Interests and the Subsidiary Interests.  For the avoidance of doubt, Equity Interests

does not include any interest that a Debtor may own in a non-Debtor affiliate, which interest is an Asset of the Debtors and is being transferred to the Liquidating Trust pursuant to the terms of this Plan.

**78.**    **Estate(s)** means, individually, the estate of Fleetwood Enterprises, Inc. or any of the Subsidiary Debtors and, collectively, the estates of all of the Debtors created under Bankruptcy Code section 541.

**79.**    **Estate Claim** has the meaning ascribed to such term in Article VII.J hereof.

**80.**    **Exhibit** means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement.

**81.**    **Exhibit Filing Date** means the date on which Exhibits to the Plan or the Disclosure Statements shall be filed with the Bankruptcy Court, which date shall be at least five (5) days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court without further notice to parties in interest.

**82.**    **Extension Order** means that Order entered by the Bankruptcy Court on February 10, 2010 at [Docket No. 1808] entitled "Order Extending the Debtors' Authorization to Use Cash Collateral to Earlier of April 30, 2010 and the Effective Date of a Plan of Liquidation."

**83.**    **Face Amount** means (a) when used in reference to a Disputed Claim, the Disputed Claim Amount and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

**84.**    **FEI** means Fleetwood Enterprises, Inc.

**85.**    **Final Cash Collateral Order** means the Final Order Extending the Debtors' Authorization to Use Cash Collateral to Earlier of January 31, 2010 and the Effective Date of a Plan of Liquidation entered by the Bankruptcy Court on September 10, 2009 (Docket No. 1255), as extended from time to time by further Orders of the Bankruptcy Court, including the Extension Order.

**86.**    **Final Decree** means the decree contemplated under Bankruptcy Rule 3022.

**87.**    **Final Fee Applications** means the final requests for payment of Professional Fee Claims.

**88.**    **Final Order** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Chapter 11 Case, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

**89.**    **Final Trust Distribution Date** means the date of the last Distribution from the Liquidating Trust under the Plan for and on account of an Allowed Claim.

**90.**    **Future Costs** has the meaning ascribed to it in Article IV.B.2 herein.

**91.**    **General Bar Date** means the bar date for filing Proofs of Claims for Claims arising prior to the Petition Date against any and/or all of the Debtors in the Chapter 11 Cases, other than those Claims expressly excluded from the General Bar Date pursuant to a Final Order of the Bankruptcy Court, or (i) August 28, 2009 for the Primary Filers or (ii) January 4, 2010 for the Secondary and Tertiary Filers.

**92.**    **General Unsecured Claim** means a Claim that is not otherwise separately classified under the Plan.  For the avoidance of doubt, a General Unsecured Claim excludes Administrative Claims, Priority Claims, Miscellaneous Secured Claims, Secured Credit Facility Claims, ISIS Claim, 14% Notes Claims, 5% Notes Claims, 6% Notes Claims, Convenience Claims, Intercompany Claims, and Equity Interests.  A General Unsecured Claim does not include a Product Liability PI Claim, except to the extent of any deficiency of such claim as set forth in more detail in Article IV.B.10 herein or to the extent that a Non-Tax Priority Claim exceeds the amount of the statutory cap under section 507 of the Bankruptcy Code as set forth in more detail in Article IV.B.1 herein.

**93.**    **Gibraltar** means Gibraltar Insurance Co. Ltd. a wholly owned subsidiary of FEI organized under the laws of Bermuda that issued policies of insurance covering product liability asserted against the Debtors and certain of the Debtors' workers' compensation liability.

**94.**    **Governmental Bar Date** means the bar date for Governmental Units to file Proofs of Claim for Claims arising prior to the Petition Date against any and/or all of the Debtors, which date was September 8, 2009 for the Primary Filers, January 25, 2010 for the Secondary, and February 8, 2010 for the Tertiary Filers.

**95.**     **Governmental Unit** has the meaning set forth in Bankruptcy Code section 101(27).

**96.**     **Holdback Amount** means the amount equal to twenty percent (20%) of fees billed to the Debtors for a given month that were retained by the Debtors as a holdback on payment of Professional Fee Claims.

**97.**     **Holder** means an entity holding a Claim or Interest.

**98.**     **Impaired** means, when used in reference to a Claim, Interest or Class, a Claim, Interest or Class that is impaired within the meaning of Bankruptcy Code section 1124.

**99.**     **Indemnification Obligation** means any obligation of any of the Debtors to indemnify, reimburse, or provide contribution to any present or former officer, director, or employee, or any present or former Professionals, advisors, or representatives of the Debtors, pursuant to by-laws, articles of incorporation, contract, or otherwise as may be in existence immediately prior to the Petition Date.

**100.**     **Initial Distribution Date** means a Business Day, as determined by the Liquidating Trustee, as soon as practicable after the Effective Date, that is at least thirty (30) Business Days after the funding of the Liquidating Trust or as soon thereafter as practicable.

**101.**     **Initial Net Distributable Proceeds** means the amount of Net Distributable Proceeds available for distribution to the Holders of Allowed General Unsecured Claims and the 14% Notes as of the Effective Date, if any.

**102.**     **Intercompany Claim** means any Claim held by a Debtor against another Debtor, including, without limitation: (a) any account reflecting intercompany book entries by a Debtor with respect to another Debtor, (b) any Claim not reflected in such book entries that is held by a Debtor against another Debtor, and (c) any derivative Claim asserted by or on behalf of one Debtor against another Debtor.

**103.**     **Interim DIP Order** means the *Interim Order (I) Authorizing Debtors to Obtain Postpetition Secured Financing, (2) Authorizing the Use of Cash Collateral, (3) Granting Liens and Superpriority Claims, (4) Modifying the Automatic Stay, and (5) Setting Final Hearing* entered by the Bankruptcy Court on April 1, 2009 (Docket No. 183).

**104.**     **IRS** means the Internal Revenue Service.

**105.**    **ISIS Claim** means the Claim asserted by ISIS Lending, LLC for amounts owing to it under the prepetition ISIS Promissory Note.

**106.**    **ISIS Promissory Note** means the Promissory Note Secured By Deed of Trust, dated as of August 22, 2008, which evidences the loan made by ISIS to Fleetwood Motor Homes of California and Fleetwood Homes of California, Inc. in the principal amount of $27,250,000.

**107.**    **KEIP Employees** mean Andrew Griffiths, Leonard J. McGill, James Smith, and Michael Shearin.

**108.**    **KEIP Participants** means those individuals who are eligible to receive retention and/or incentive payments pursuant to the Fleetwood Enterprises, Inc. Key Employee Incentive and Retention Programs approved by the Bankruptcy Court on July 17, 2009 (Docket No. 956) or the Amended and Restated Key Employee Retention and Incentive Plan approved by the Bankruptcy Court on February 11, 2010 (Docket No. 1846).

**109.**    **KEIP Payment** means the discretionary incentive payment that is payable to the KEIP Employees pursuant to the *Order Approving the Debtors' Payment of Incentive Bonuses and Severance Payments to Key Employees* entered on July 17, 2009 (Docket No. 956) and the Modified and Amended KEIP Plan Order.

**110.**    **Lien** shall mean any lien, security interest, pledge, title retention agreement, encumbrance, charge, mortgage, or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

**111.**    **Liquidating Trust Agreement** means the agreement to be executed as of the Effective Date establishing the Liquidating Trust pursuant to the Plan in substantially the form attached as Exhibit B hereto.

**112.**    **Liquidating Trust Oversight Committee** means the committee comprised of the following three entities:  two members nominated by the Creditors' Committee and one by Whippoorwill.

**113.**    **Liquidating Trust Professionals** means the agents, financial advisors, attorneys, consultants, independent contractors, representatives, and other professionals of the Liquidation

Trustee (in their capacities as such).

**114.    Liquidating Trustee** means SltnTrst LLC or such designee of which Peter Kravitz is the principal, or any successor in interest.

**115.    Local Rules** means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Central District of California.

**116.    Miscellaneous Secured Claim** means a Claim that is (a) secured by a valid and perfected Lien on property in which a Debtor's Estate has an interest or (b) subject to setoff under Bankruptcy Code section 553 and such right of setoff has been asserted by the holder of such right as required by Article VII.J hereof, to the extent of the value of the Claimholder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code section 506(a) or, in the case of setoff, pursuant to Bankruptcy Code section 553.

**117.    Modified and Amended KEIP Plan Order** means the Order Approving Amended and Restated Key Employee Incentive Program entered by the Bankruptcy Court on February 12, 2010 [Docket No. 1846].

**118.    Net Distributable Proceeds** means the Net Proceeds derived from the liquidation or monetization of any and all of the Assets of the Debtors to be vested in the Liquidating Trust (including all Cash of the Debtors wherever located, including, but not limited to, Cash presently held in any segregated accounts for the benefit of the 14% Notes Claims), after payment of, or adequately reserving for payment of, all Allowed Administrative Claims, all Allowed Priority Claims, all Allowed Secured Credit Facility Claims, all Allowed Miscellaneous Secured Claims, Professional Fee Claims of the Debtors and Creditors' Committee, and all Liquidating Trust expenses.

**119.    Net Proceeds** means such amounts collected from the sale or liquidation of Assets after payment of all costs and expenses of such sale or liquidation, including, without limitation, attorney fees.

**120.    Non-Tax Priority Claim** means a Claim, other than an Administrative Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to Bankruptcy Code section

507(a) and not otherwise separately classified herein.

**121.    Noteholder Settlement** means the settlement embodied in this Plan between the Creditors' Committee and the holders of 14% Notes in principle.

**122.    Old Common Stock Interests** means, the shares of common stock of the Debtors issued and outstanding as of the Petition Date or otherwise held as of the applicable Distribution Record Date, including common stock acquired by holders of stock options and other rights to acquire stock who exercise their rights by the applicable Distribution Record Date.

**123.    Periodic Distribution Date** means a Distribution Date after the Initial Distribution Date which shall occur (i) after the first Business Day occurring ninety (90) days after the immediately preceding Distribution Date or (ii) on such other Business Day selected by the Liquidating Trustee, in its sole and absolute discretion.

**124.    Periodic Net Distributable Proceeds** means, with respect to each Periodic Distribution Date, the amount of Net Distributable Proceeds available to be distributed from the Liquidating Trust to the Holders of Allowed Claims pursuant to the terms hereunder.

**125.    Person** has the meaning set forth in Bankruptcy Code section 101(41).

**126.    Petition Date** means the date of filing of the applicable voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code, or March 19, 2009 for the Primary Filers, July 29, 2009 for the Secondary Filer, or August 11, 2009 for the Tertiary Filers.

**127.    Plan** means this chapter 11 plan, including the Exhibits and all supplements, appendices, and schedules hereto, either in its current form or as the same may be altered, amended, or modified from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**128.    Plan Document** means the Plan, together with any contract, instrument, release, or other agreement or document entered in connection with Plan.

**129.    Plan Proponents** means the Debtors and the Creditors' Committee.

**130.    Plan Supplement** means the compilation(s) of documents and forms of documents, specified in the Plan, that the Debtors will file with the Bankruptcy Court on or before the date that is (a) ten (10) days prior to the Voting Deadline or (b) set by the Bankruptcy Court for the filing of such documents and forms of documents.

**131.     Plant 47** means that certain real property against which ISIS asserts a first priority lien as evidenced by the Deed of Trust, assignment of Rents, Security Agreement and Fixture Filing recorded on August 25, 2008 as Instrument No. 2008-04678624 (Plant 47), but excluding that certain personal property (including inventory) located at Plant 47 against which ISIS asserted a second priority lien that was sold in connection with the RV Assets Sale Order.

**132.     Primary Filers** means all of the Debtors except the Secondary Filer and the Tertiary Filers.

**133.     Priority Claims** means, collectively, all Priority Tax Claims and Non-Tax Priority Claims.

**134.     Priority Tax Claim** means a Claim of a Governmental Unit of the kind specified in Bankruptcy Code sections 502(i) or 507(a)(8).

**135.     Product Liability PI Claims** means any Claim asserted for personal injury based on allegations of product liability against the Debtors that are covered by product liability insurance policies issued by Gibraltar.

**136.     Professional** means (a) any professional employed in these Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 328, or 1103 or otherwise, and (b) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to Bankruptcy Code section 503(b)(4).

**137.     Professional Fee Claim** means a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and prior to and including the Effective Date.

**138.     Proof of Claim** means a proof of claim filed on or before the General Bar Date or the Governmental Bar Date, as applicable, or such other date as ordered by the Bankruptcy Court.

**139.     Pro Rata** means, at any time, the proportion that the Face Amount of an Allowed Claim in a particular Class bears to the aggregate Face Amount of all Allowed Claims in such Class, unless the Plan provides otherwise.

**140.     Reclamation Claim** means each Claim to the extent asserted against one or more of the Debtors pursuant to Bankruptcy Code section 546(c).

**141.    Released Claims** means the claims or causes of actions described in Article XI hereof.

**142.    Released Parties** means (i) any Professional, (ii) the Creditors' Committee, (iii) any member of the Creditors' Committee, solely in its capacity as a member of the Creditors' Committee and not in any other capacity, and (iv) any of the representatives, agents, officers, directors, employees, professionals, financial advisors, consultants, or attorneys of the foregoing.

**143.    RV Assets Sale Order** means the *Amended Order (I) Authorizing and Approving the Sale of RV Assets Free and Clear of Liens, Claims, Interests and Encumbrances; (II) Authorizing and Approving Assumption and Assignment of Contracts and Leases; and (III) Granting Related Relief* entered on August 6, 2009 (Docket No. 1056).

**144.    Scheduled** means, with respect to any Claim, the status, priority and amount, if any, of such Claim as set forth in the Schedules.

**145.    Schedules** means the schedules of assets and liabilities, the list of Holders of Interests, and the statements of financial affairs filed by the Debtors pursuant to Bankruptcy Code section 521 and the Bankruptcy Rules, as such schedules have been or may be further modified, amended or supplemented in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

**146.    Secured Claims** means either the Miscellaneous Secured Claims or the Secured Credit Facility Claims.

**147.    Secured Credit Facility** means that certain Third Amended Credit Agreement (as subsequently amended), dated as of January 5, 2007 among FEI, FHI and certain of FEI's and FHI's subsidiaries, as Borrowers, the Lenders referred to therein, and Bank of America, N.A., as Agent for the Lenders, and any of the documents and instruments relating thereto, as amended, supplemented or modified as of the date hereof.

**148.    Secured Parties** means those lenders under the Secured Credit Facility, the DIP Credit Agreement and Interim DIP Order.

**149.    Securities Act** means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended.

**150.**    **Security** shall have the meaning ascribed to it in Bankruptcy Code section 101(49).

**151.**    **Secondary Filer** means Fleetwood Retail Corp. of Arizona.

**152.**    **Severance Action** means that adversary action entitled *Curtis Jay Howe v. Fleetwood Enterprises, Inc.*, Adversary No. 09-01421-MJ, alleging claims for breach of contract and violation of the Employee Retirement Income Security Act on the grounds that FEI had an obligation to pay severance to terminated employees, but failed to do so.

**153.**    **Severance Class** is defined as all persons who were employed by one of the Debtors, were eligible to receive severance under the Debtors' severance policy and were terminated on or after March 6, 2009, without receiving severance, with the exception of the KEIP Participants.

**154.**    **Severance Class Claim** means any and all demands, claims, damages, and causes of action, present and future, which were asserted or could have been asserted in the Severance Action, including, but not limited to, any other claims against the Debtors for severance pay or benefits based on or arising out of any federal, state or local statute, ordinance or regulation.

**155.**    **Severance Class Members** shall mean all individuals within the definition of the Severance Class.

**156.**    **Solicitation** means the solicitation by the Plan Proponents of acceptances of the Plan.

**157.**    **Solicitation Procedures Order** means the order entered by the Bankruptcy Court establishing procedures for Solicitation of votes for or against the Plan under Bankruptcy Code sections 105, 1125, 1126 and 1128 and Bankruptcy Rules 2002, 3017, 2018 and 3020.

**158.**    **Subsidiary Debtor(s)** means, individually or collectively, the debtors and debtors in possession identified on Exhibit A annexed hereto.

**159.**    **Substantial Contribution Claim** means a Claim under Bankruptcy Code subsections 503(b)(3), (b)(4), or (b)(5) for compensation or reimbursement of expenses incurred in making a substantial contribution in the Chapter 11 Cases.

**160.**    **Tax Claim** means all or that portion of a Claim held by a Governmental Unit for a tax assessed or assessable against the Debtors, including income and employment taxes and any related penalties or interest.

**161.**    **Tax Items** has the meaning ascribed to such term in Article VI.F.6 hereof.

**162.** **Taxes** means any and all taxes, levies, imposts, assessments, or other charges of whatever nature imposed at any time by a Governmental Unit or by any political subdivision or taxing authority thereof or therein and all interest, penalties, or similar liabilities with respect thereto.

**163.** **Tertiary Filers** means Fleetwood Retail Corp. of Arkansas, Fleetwood Retail Corp. of Florida, Fleetwood Retail Corp. of Georgia, and Fleetwood Retail Corp. of South Carolina.

**164.** **Unclassified Claims** means Administrative Claims and Priority Tax Claims.

**165.** **Unimpaired** means, when used in reference to a Claim, Equity Interest or Class, a Claim, Equity Interest or Class that is not impaired within the meaning of Bankruptcy Code section 1124.

**166.** **U.S. Trustee** means the Office of the United States Trustee for the Central District of California.

**167.** **Voting Deadline** means the date and time, as fixed by an order of the Bankruptcy Court by which all Ballots to accept or reject the Plan must be received in order to be counted.

**168.** **WARN Action** means the Consolidated Complaint for Damages and Other Relief filed on September 22, 2009 by Sandra Justice, Alicia Rice, Ronald Doud, Jeremiah Hastings, Brian Tucker, and Robert Myers, purportedly acting on behalf of a putative class, alleging that Fleetwood Enterprises, Inc., Fleetwood Travel Trailers of Ohio, Inc., Fleetwood Motor Homes of California, Inc. and Fleetwood Travel Trailers of Oregon, Inc. violated the WARN Act and California WARN Act.

**169.** **WARN and Severance Class Settlement Agreement** means the Compromise and Settlement Agreement entered into by and between the Debtors and the Creditors' Committee on the one hand, and Plaintiffs Sandra Justice, Alicia Rice, Ronald Doud, Jeremiah Hastings, Brian Tucker, Robert Myers and Curtis Jay Howe, on behalf of themselves and on behalf of each person who is a member of the WARN Class or the Severance Class and thus eligible to participate in the settlement on the other hand.

**170.** **WARN Class** means all persons who were employed by one of the Debtors in a facility with greater than 50 employees and were terminated on or after March 9, 2009, without receiving a full 60 days' notice in advance of their termination by a Debtor who either (a) conducted

a mass layoff of more than 50 employees on or after March 9, 2009, or within 30 days thereafter, or (b) conducted a plant closing on or after March 9, 2009, with the exception of the KEIP Participants.

**171. WARN Class Claim** means any and all demands, claims, damages, and causes of action, present and future, which (a) were asserted or could have been asserted in the WARN Action, including, but not limited to, any claims against the Debtors for back pay or benefits based on or arising out of any federal, state or local statute, ordinance or regulation.

**172. WARN Class Member** means all individuals included within the definition of the WARN Class.

**173. Whippoorwill** means Whippoorwill Associates Inc., as agent for its discretionary accounts, and Brigade Capital Management, LLC, on behalf of the accounts it represents, as the beneficial owners of approximately 55.4% of the entire issuance of the 14% Notes.

**174. Whippoorwill Fees** has the meaning ascribed to such term as set forth in Article IV.B.5.

**C. Rules of Interpretation**

For purposes of the Plan (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in the Plan to sections, articles, Schedules and Exhibits are references to sections, articles, Schedules and Exhibits of or to the Plan, (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (f) to the extent not modified herein, the rules of construction set forth in Bankruptcy Code section 102 and in the Bankruptcy Rules shall apply.

**D.    Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**E.    Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of (i) the State of California shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan and (ii) the laws of the state of incorporation of each Debtor shall govern corporate governance matters with respect to such Debtor, in either case without giving effect to the principles of conflicts of law thereof.

**F.    Exhibits**

All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court on or before the Exhibit Filing Date.  After the Exhibit Filing Date, copies of Exhibits can be obtained upon written request to the Claims Agent to the Debtors, at Fleetwood Claims Processing, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245, or by downloading such Exhibits from the Bankruptcy Court's website at http://www.caeb.uscourts.gov (registration required) or the Claims Agent's website at www.kccllc.net/fleetwood.  To the extent any Exhibit is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-Exhibit portion of the Plan shall control.

**III.**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

**A.    Introduction**

All Claims and Equity Interests, except Administrative Claims and Priority Tax Claims are placed in the Classes set forth below.  In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified.

A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in other Classes to

the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

The Plan provides for substantive consolidation of the Debtors' assets and liabilities for voting and distribution purposes, as described in Article VI.A of this Plan.  However, the Plan Proponents specifically reserve the right to seek confirmation of the Plan with respect to each Debtor separately.  The Debtors have set forth the Classes below, which is a summary of the Claims treatment.  Readers should refer to Article IV for the complete discussion of Claims treatment.

## CLAIMS TREATMENT

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| N/A | Administrative Claims | $3.1 million | Full payment – one hundred cents on the dollar (100/100) upon the earlier of the Distribution Date immediately following the date the Claim becomes an Allowed Claim or the date that is ninety (90) days after the date on which such Claim becomes an Allowed Claim. |
| N/A | Priority Tax Claims | $1.0 million | Full payment – one hundred cents on the dollar (100/100) consistent with Bankruptcy Code section 1129(a)(9)(C). |
| 1 | Non-Tax Priority Claims | $7.2 million | Full payment – one hundred cents on the dollar (100/100).  Cash equal to the unpaid portion of the Allowed Non-Priority Claim or such other treatment as agreed upon between the Claim holder and the Liquidating Trustee upon the earlier of the Distribution Date immediately following the date that the Claim becomes an Allowed Claim or 90 days after the date when such claim becomes an Allowed Claim.<br><br>Estimated Projected Payment:  100%<br>**Unimpaired; Deemed to Accept** |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 2 | Secured Credit Facility Claim | $1.7 million | Cash equal to 105% of the face amount as of the Effective Date of Outstanding Letters of Credit (as defined in the Interim DIP Order) issued on behalf of any or all of the Debtors by Bank of America, which shall be placed in a segregated account plus the other treatment as more fully set forth in Article IV.B.2 herein.<br><br>Estimated Projected Payment:  100%<br>**Impaired; Entitled to Vote** |
| 3 | ISIS Claim | $23.2 million (approximately less further paydowns and credits applied prior to the Effective Date) | On the Effective Date, in full and final satisfaction of the Allowed ISIS Claim, the Debtors shall quitclaim Plant 47 securing the Allowed ISIS Claim to ISIS.  On the Effective Date, any Liens granted in favor of ISIS, whether existing as of the Petition Date or granted through the Chapter 11 Cases, shall be deemed released.<br><br>Estimated Projected Payment: 100%<br>**Impaired; Entitled to Vote** |
| 4 | Miscellaneous Secured Claims | Unknown | At the election of the Liquidating Trustee, (i) Cash equal to the lesser of the unpaid portion of such Allowed Claim and the value of the Holder's Collateral securing the Miscellaneous Secured Claim as required pursuant to section 506(b) of the Bankruptcy Code; (ii) a return of the Holder's Collateral; or (iii) such other treatment as agreed to in writing upon the earlier of (a) the Distribution Date immediately following the date the Claim becomes an Allowed Claim or (b) the date that is ninety (90) days after the date on which such Claim becomes an Allowed Claim.<br><br>Estimated Projected Payment: 100%<br>**Unimpaired; Deemed to Accept** |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 5 | 14% Notes Claims | $84.3 million | On the Effective Date, the Liens of the 14% Notes shall remain as valid Liens for Plan purposes only and the 14% Notes Claims shall be Allowed as a Secured Claim in the amount of $84,256,664.  In full and final satisfaction of their Secured Allowed Claim, the 14% Notes Claims shall receive their Pro Rata share of 43.5% of the Net Distributable Proceeds, the Initial Net Distributable Proceeds of which shall be payable on the Effective Date, and the balance of which shall be distributable on each subsequent Distribution Date, as reasonably practicable after the Liquidating Trust acquires such Net Distributable Proceeds.  *See* Article IV.B.5 below for further treatment.<br><br>Estimated Projected Payment: 23.9%<br>**Impaired; Entitled to Vote** |
| 6 | General Unsecured Claims | $115 million to $195 million | Provided that all Allowed Administrative Claims, Priority Claims and Secured Claims have been paid in full or funds sufficient to satisfy all Allowed Administrative Claims, Priority Claims and Secured Claims have been placed in a segregated reserve, as set forth in the Plan and in the Liquidating Trust Agreement, and subject to the occurrence of the Effective Date, on, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date a General Unsecured Claim becomes an Allowed General Unsecured Claim or (b) the date that is ninety (90) days after the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for such Allowed General Unsecured Claim, Pro Rata with the Holders of Allowed Class 6 and Class 10 Claims, its share of the Initial Net Distributable Proceeds and, on each Periodic Distribution Date, each Holder of an Allowed General Unsecured Claim shall receive their Pro Rata share of the Periodic Net Distributable Proceeds.  In the aggregate, Allowed General Unsecured Claims shall receive 56.5% of the Net Distributable Proceeds available for distribution.<br><br>Estimated Projected Payment:  11.8% to 20.1%<br>**Impaired; Entitled to Vote** |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 7 | 6% Notes Claims | $161.173 million | Provided that all Allowed Administrative Claims, Priority Claims and Secured Claims have been paid in full or funds sufficient to satisfy all Allowed Administrative Claims, Priority Claims and Secured Claims have been placed in a segregated reserve, as set forth in the Plan and in the Liquidating Trust Agreement, and subject to the occurrence of the Effective Date, and subject to acceptance of the Plan by Class 7, Holders of 6% Notes Claims shall receive $2 million from the 56.5% of Net Distributable Proceeds allocable to the General Unsecured Claims. Concurrently with the final payment of Professional Fee Claims after the Effective Date and provided that Class 7 has voted to accept the Plan, the Holders of 6% Notes Claims shall be paid the fees and expenses payable to the indenture trustee and professionals of the 6% Notes Claims, subject to a review for reasonableness by the Creditors' Committee, but if at the time of such distribution, there are insufficient funds to make payment in full, then such fees shall be paid Pro Rata with other Professionals paid at such time. <br><br> Estimated Projected Payment:  1.2% <br> **Impaired; Entitled to Vote** |
| 8 | 5% Notes Claims | $1.069 million | Pursuant to the terms of the Noteholder Settlement, the parties agreed that the Holders of the 14% Notes Claims would pay for the distribution to the Holders of 5% Notes Claims, if any, out of the 43.5% of the Net Distributable Proceeds allocable to the Allowed 14% Notes Claims.  However, the 14% Notes have evaluated the 5% Notes Claims and have determined that they are not entitled to a distribution under the Plan. <br><br> Estimated Projected Payment:  0%. <br> Impaired; Deemed to Reject |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 9 | Convenience Claims | $5 million (approximate) | Holders of an Allowed Convenience Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for such Convenience Claim, 25% of their Allowed Claim as a final distribution.  Holders of Class 6 Claims in excess of $10,000 will be eligible to opt into this Class by reducing their claim to $10,000 by checking the "Opt-In to Convenience Class" box on their ballot.  Total distributions under this Class are anticipated to be limited to $1.25 million, subject to the Liquidating Trustee's discretion to increase this amount at the time of the Initial Distribution Date.  In the event that this Class has greater demand than funds allocated to this Class, then the Liquidating Trustee shall have the absolute discretion to select and remove certain of the opt-in members of this Class.  In no instance shall the Liquidating Trustee remove a non-opt-in Allowed Convenience Claim from this Class.<br><br>Estimated Projected Payment:  22.4%<br>**Impaired; Entitled to Vote** |
| 10 | Product Liability PI Claims | Unknown | Unless their Product Liability PI Claim has previously become an Allowed Claim, all Holders of Claims in Class 10 shall be required to participate in the Product Liability PI Claim Mediation Process attached to the Disclosure Statement as Appendix E.  As provided in the Product Liability PI Claim Mediation Process, if and when Allowed, Holders of Class 10 Claims shall receive a Pro Rata distribution of available insurance proceeds from Gibraltar policies covering Product Liability PI Claims upon the year in which the claim arose.  To the extent the allowed amount of any Class 10 Claim is not paid in full with insurance proceeds, then the unpaid deficiency amount shall receive the treatment provided for under Class 6 for Allowed General Unsecured Claims.<br><br>Estimated Projected Payment:  Unknown<br>**Impaired; Entitled to Vote** |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 11 | WARN Class Claims and Severance Class Claims | Unknown | If the WARN and Severance Class Settlement Agreement is approved:<br>• Class Members who do not Opt Out will receive the treatment afforded in the WARN and Severance Class Settlement.<br>• Class Members who Opt Out, who have filed claims and whose Claims are Allowed Claims, shall receive full payment of their Claims up to the cap set by Bankruptcy Code section 507 with any excess treated as an unsecured claim to share Pro Rata with Claims in Class 6.<br>If the WARN and Severance Class Settlement Agreement is *not* approved:<br>• The WARN Class Claim and Severance Class claims shall continue to be litigated and class members whose Claims become Allowed Claims, shall receive full payment of their Claims up to the cap set by Bankruptcy Code section 507 with any excess treated as Claims in Class 6.<br><br>Estimated Projected Payment:  Unknown<br>**Impaired; Entitled to Vote.** |
| 12A | Lumbermen's Underwriting Alliance | Unknown | On the Effective Date, in full and final satisfaction of its Allowed Claim, the Holder of Allowed Claims in Class 12A shall be permitted to retain any proceeds of previously drawn letters of credit, as well as other Cash on hand, in exchange for waiver of any deficiency claim.<br><br>Estimated Projected Payment:  Unknown<br>**Impaired; Entitled to Vote.** |
| 12B | Georgia Self Insurance Guaranty Trust Fund | Unknown | On the Effective Date, in full and final satisfaction of its Allowed Claim, the Holder of Allowed Claims in Class 12B shall be permitted to retain any proceeds of previously drawn letters of credit, as well as other Cash on hand, in exchange for waiver of any deficiency claim.<br><br>Estimated Projected Payment:  Unknown<br>**Impaired; Entitled to Vote.** |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 13A | Westchester Fire Insurance Company and ACE INA Insurance | Unknown | On, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date that the Class 13A Claim becomes an Allowed Class 13A Claim, or (b) the date that is ninety (90) days after the date on which such Class 13A Claim becomes an Allowed Class 13A Claim, in full and final satisfaction, settlement and release of and in exchange for, such Allowed Secured Claim, the Holder of the Allowed Class 13A Claim shall be permitted to either (i) retain proceeds of letters of credit (drawn or undrawn), as well as other Cash on hand, equal to the lesser of the unpaid portion of such Allowed Class 13A Claim and the value of the Collateral securing such Claim or (ii) accept such other treatment as to which such Holder and the Debtors and/or Liquidating Trustee shall have agreed upon in writing.<br><br>Estimated Projected Payment:  Unknown<br>**Unimpaired; Deemed to Accept** |
| 13B | Old Republic Insurance Co. | Unknown | On, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date that the Class 13B Claim becomes an Allowed Class 13B Claim, or (b) the date that is ninety (90) days after the date on which such Class 13B Claim becomes an Allowed Class 13B Claim, in full and final satisfaction, settlement and release of and in exchange for, such Allowed Secured Claim, the Holder of the Allowed Class 13B Claim shall be permitted to either (i) retain proceeds of letters of credit (drawn or undrawn), as well as other Cash on hand, equal to the lesser of the unpaid portion of such Allowed Class 13B Claim and the value of the Collateral securing such Claim, or (ii) accept such other treatment as to which such Holder and the Debtors and/or Liquidating Trustee shall have agreed upon in writing.<br><br>Estimated Projected Payment:  Unknown<br>**Unimpaired; Deemed to Accept** |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 13C | National Union Fire Insurance Company of Pittsburgh, PA, et al. | Unknown | On, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date that the Class 13C Claim becomes an Allowed Class 13C Claim, or (b) the date that is ninety (90) days after the date on which such Class 13A Claim becomes an Allowed Class 13C Claim, in full and final satisfaction, settlement and release of and in exchange for, such Allowed Secured Claim, the Holder of the Allowed Class 13C Claim shall be permitted to either (i) retain proceeds of letters of credit (drawn or undrawn), as well as other Cash on hand, equal to the lesser of the unpaid portion of such Allowed Class 13C Claim and the value of the Collateral securing such Claim, or (ii) accept such other treatment as to which such Holder and the Debtors and/or Liquidating Trustee shall have agreed upon in writing.<br><br>Estimated Projected Payment:  Unknown<br>**Unimpaired; Deemed to Accept** |
| 13D | Fidelity and Deposit Company of Maryland | Unknown | On, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date that the Class 13D Claim becomes an Allowed Class 13D Claim, or (b) the date that is ninety (90) days after the date on which such Class 13D Claim becomes an Allowed Class 13D Claim, in full and final satisfaction, settlement and release of and in exchange for, such Allowed Secured Claim, the Holder of the Allowed Class 13D Claim shall be permitted to either (i) retain proceeds of letters of credit (drawn or undrawn), as well as other Cash on hand, equal to the lesser of the unpaid portion of such Allowed Class 13D Claim and the value of the Collateral securing such Claim, or (ii) accept such other treatment as to which such Holder and the Debtors and/or Liquidating Trustee shall have agreed upon in writing.<br><br>Estimated Projected Payment:  Unknown<br>**Unimpaired; Deemed to Accept** |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 13E | Kemper Insurance Co., et al. | Unknown | On, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date that the Class 13E Claim becomes an Allowed Class 13E Claim, or (b) the date that is ninety (90) days after the date on which such Class 13E Claim becomes an Allowed Class 13E Claim, in full and final satisfaction, settlement and release of and in exchange for, such Allowed Secured Claim, the Holder of the Allowed Class 13E Claim shall be permitted to either (i) retain proceeds of letters of credit (drawn or undrawn), as well as other Cash on hand, equal to the lesser of the unpaid portion of such Allowed Class 13E Claim and the value of the Collateral securing such Claim, or (ii) accept such other treatment as to which such Holder and the Debtors and/or Liquidating Trustee shall have agreed upon in writing. Estimated Projected Payment:  Unknown **Unimpaired; Deemed to Accept** |
| 14 | Intercompany Claims By and Between Debtors | Unknown | On the Effective Date, all Intercompany Claims by and between the Debtors shall be cancelled. Estimated Projected Payment:  0% **Impaired; Deemed to Reject** |
| 15 | Equity Interests | Unknown | On the Effective Date, all Equity Interests shall be cancelled. Estimated Projected Payment:  0% **Impaired; Deemed to Reject** |

## IV.

## TREATMENT OF CLAIMS AND INTERESTS

**A.    Unclassified Claims**

In accordance with Bankruptcy Code section 1123(a)(1) of the Bankruptcy Code, certain Claims have not been classified, and the respective treatment of such Unclassified Claims is set forth immediately below.

### 1.    Administrative Claims

Except as otherwise provided herein, and subject to the requirements of this Plan, on, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date an Administrative Claim becomes an Allowed Administrative Claim or (b) the date that is ninety (90) days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, a Holder of an Allowed Administrative Claim against the Debtors shall receive, in full and final satisfaction, settlement and release of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of such Allowed Administrative Claim or (b) such other treatment as to which such Holder and the Debtors and/or the Liquidating Trustee shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by a Debtor in the ordinary course of business during the Chapter 11 Cases may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto (i) prior to the Effective Date, by the Debtors and (ii) subsequent to the Effective Date, by the Liquidating Trustee.  Administrative Claimholders will be paid in full on account of their Claims and are not entitled to vote on the Plan.

### 2.    Priority Tax Claims

Except to the extent that an Allowed Priority Tax Claim has been paid prior to the Distribution Date, a Holder of an Allowed Priority Tax Claim shall be entitled to receive, in full and final satisfaction, settlement and release of and in exchange for such Allowed Priority Tax Claim, (i) regular installment Cash payments, occurring not less frequently than quarterly over a period not exceeding five (5) years after the Petition Date, in an aggregate principal amount equal to the unpaid portion of such Allowed Priority Tax Claim, plus interest on the unpaid portion thereof at the Case Interest Rate from the Effective Date through the date of payment thereof or (ii) such other treatment as to which such Holder and the Debtors and/or the Liquidating Trustee shall have agreed upon in writing; provided, however, that the Liquidating Trustee shall have the right to pay any Allowed Priority Tax Claim, or any remaining balance of any Allowed Priority Tax Claim, in full at any time on or after the Effective Date without premium or penalty.  Priority Tax Claimholders will be paid in full on account of their Claims and are not entitled to vote on the Plan.

**B.       Claims**

     **1.       Class 1:  Non-Tax Priority Claims**

          On, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date a Non-Tax Priority Claim becomes an Allowed Non-Tax Priority Claim or (b) the date that is ninety (90) days after the date on which such Non-Tax Priority Claim becomes an Allowed Non-Tax Priority Claim, a Holder of an Allowed Non-Tax Priority Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for such Allowed Non-Tax Priority Claim, (i) Cash equal to the unpaid portion of such Allowed Non-Tax Priority Claim or (ii) such other treatment as to which such Holder and the Debtors and/or the Liquidating Trustee shall have agreed upon in writing.  Any deficiency claim over and above the limits set forth under section 507 of the Bankruptcy Code for priority claims shall be treated as a Class 6 General Unsecured Claim.

          Class 1 is conclusively presumed to have accepted the Plan and, therefore, Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan.

     **2.       Class 2:  Allowed Secured Credit Facility Claims**

          On the Effective Date, Holders of Allowed Secured Credit Facility Claims shall receive:

          A.       Payment in full of all Postpetition Obligations (as defined in the Interim DIP Order) then outstanding (including, without limitation, all costs, fees and/or expenses of the Secured Parties payable by the Debtors in accordance with the Interim DIP Order, the DIP Credit Agreement and the Final Cash Collateral Order (in each case modified by the Extension Order) which have been invoiced to the Debtors and which are neither contested nor disputed by either the Debtors or the Creditors' Committee).

          B.       Cash equal to 105% of the face amount as of the Effective Date of Outstanding Letters of Credit (as defined in the Interim DIP Order) to be held as collateral for Outstanding Letters of Credit.

          C.       Cash in the amount of $200,000 shall be held as collateral for any further costs, fees and/or expenses of the Secured Parties incurred on or prior to the Effective Date and

payable by the Debtors in accordance with the Interim DIP Order, the DIP Credit Agreement and the

Final Cash Collateral Order (in each case modified by the Extension Order) ("Future Costs") that are

either disputed or unpaid.  The amount of collateral held on account of Future Costs shall be reduced

and released to the Liquidating Trust to the extent Future Costs are undisputed and paid such that the

amount to remain as collateral shall then equal Future Costs that are disputed and/or remain unpaid.

D.    Cash in the amount of $2,500,000 shall be held as collateral for any

unliquidated or contingent claims of the Secured Parties, including, without limitation, any claims

for indemnification that any of them might have asserted or may assert ("BofA Indemnification

Claims").

The aggregated of the amounts in paragraphs B, C & D above shall be known as the

BofA Cash Collateral Amount.

On the Effective Date, the BofA Cash Collateral Amount shall be placed in a

segregated account at Bank of America in the name of the Liquidating Trustee (the "BofA Cash

Collateral Account.")  The BofA Cash Collateral Amount shall be free and clear of all existing Liens

as to any party other than the Prepetition Agent, the Prepetition Credit Facility Lenders, the

Postpetition Agent and the DIP Lenders (as such terms are defined in the Interim DIP Order)

(collectively, the "Secured Parties"), which shall have a fully perfected first priority lien on all

amounts in the BofA Cash Collateral Account necessary to secure the obligations of all of the

Debtors and the Liquidating Trustee to the Secured Parties with respect to any and all Outstanding

Letters of Credit, the Future Costs, the Disputed Costs (as defined below), and any BofA

Indemnification Claims.

Except as otherwise agreed to by the Secured Parties and the Liquidating Trustee, or

as ordered by the Bankruptcy Court, from and after the Effective Date, the BofA Cash Collateral

Amount required to be maintained at all times in the BofA Cash Collateral Account shall be an

amount equal to (a) 105% multiplied by the face amount as of such date of all Outstanding Letters of

Credit remaining outstanding plus (b) the amount set forth in paragraph C above to secure the Future

Costs plus (c) an amount equal to all costs, fees and/or expenses of the Secured Parties (including

costs, fees and/or expenses of its counsel) disputed by the Debtors, the Committee or the Liquidating

Trustee and not reimbursed by the Debtors in accordance with the Interim DIP Order, the DIP Credit Agreement and the Final Cash Collateral Order (in each case to the extent modified by the Extension Order) within 10 days of receipt by the Debtors of any applicable invoices, statements, receipts or other documents (the "Disputed Costs"); plus (d) the amount set forth in paragraph D above to secure the BofA Indemnification Claims.

The BofA Cash Collateral Amount in the BofA Cash Collateral Account shall be reduced from time to time and the funds released to the Liquidating Trustee, either by agreement of the Liquidating Trustee and the Secured Parties or by Final Order of the Bankruptcy Court or such other court of competent jurisdiction (including any appellate court), in the event of the reduction of the amount of Outstanding Letters of Credit, the resolution or other disposition of the underlying claims giving rise to the BofA Indemnification Claims, other circumstances on which the Secured Parties and the Liquidating Trustee may mutually agree or for any other reason as set forth in a Final Order of the Bankruptcy Court or such other court of competent jurisdiction (including any appellate court).

The collateralization of the Future Costs, the Disputed Costs, or the BofA Indemnification Claims shall not be deemed to be an admission by the Debtors or the Liquidating Trustee that any of the Future Costs or BofA Indemnification Claims are valid and proper claims against the Debtors or the Liquidating Trustee either in the amount collateralized or in any other amount and the Liquidating Trust reserves the right to seek an Order of the Bankruptcy Court (which Order shall be subject to any appeal rights of any party) as to the Secured Parties' entitlement to the Future Costs and/or BofA Indemnification Claims.  Any dispute asserted as to fees and cost owed to or previously paid to the Secured Parties, including any dispute under submission to the Court, is preserved for the benefit of the Debtors or the Liquidating Trust, as applicable.

Except for the Liens and rights provided herein (including, without limitation, the right to reimbursement of costs, fees and/or expenses of the Secured Parties payable by the Debtors in accordance with the Interim DIP Order, the DIP Credit Agreement, and the Final Cash Collateral Order (in each case modified by the Extension Order) and all BofA Indemnification Claims), all rights held by the Secured Parties under the DIP Credit Agreement, Interim DIP Order, Final Cash

Collateral Order and the Extension Order (including Liens granted prior to the Effective Date) shall be terminated upon the Effective Date.

The foregoing treatment shall be in full and complete satisfaction of any and all claims that Bank of America has or may have against the Debtors and with respect to any such claims, and recourse shall be limited as set forth above.

Class 2 is Impaired and is entitled to vote on the Plan.

**3.      Class 3:  Allowed ISIS Claim**

On the Effective Date, in full and final satisfaction of the Allowed ISIS Claim, the Debtors shall quitclaim Plant 47 securing the Allowed ISIS Claim to ISIS.  On the Effective Date, any Liens granted in favor of ISIS by the Debtors, whether existing as of the Petition Date or granted through the Chapter 11 Cases, shall be deemed released and extinguished.  Class 3 is Impaired and is entitled to vote on the Plan.

**4.      Class 4:  Miscellaneous Secured Claims**

On, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date a Miscellaneous Secured Claim becomes an Allowed Miscellaneous Secured Claim or (b) the date that is ninety (90) days after the date on which such Miscellaneous Secured Claim becomes an Allowed Miscellaneous Secured Claim, a Holder of an Allowed Miscellaneous Secured Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for, such Allowed Miscellaneous Secured Claim, at the election of the Liquidating Trustee, (i) Cash equal to the lesser of the unpaid portion of such Allowed Miscellaneous Secured Claim and the value of the Holder's Collateral securing the Miscellaneous Secured Claim as required pursuant to section 506(b) of the Bankruptcy Code, (ii) a return of the Holder's Collateral securing the Miscellaneous Secured Claim or (iii) such other treatment as to which such Holder and the Debtors and/or the Liquidating Trustee shall have agreed upon in writing.  Any Holder of a Miscellaneous Secured Claim shall retain its Lien in the Collateral or the proceeds of the Collateral (to the extent that such Collateral is sold by the Debtors or the Liquidating Trustee free and clear of such Lien) to the same extent and with the same priority as such Lien held as of the Petition Date until such time as (a) the Holder of such Miscellaneous Secured Claim (i) has been paid Cash equal

to the value of its Allowed Miscellaneous Secured Claim, (ii) has received a return of the Collateral securing the Miscellaneous Secured Claim or (iii) has been afforded such other treatment as to which such Holder and the Debtors and/or the Liquidating Trustee shall have agreed upon in writing; or (b) such purported Lien has been determined by an order of the Bankruptcy Court to be invalid or otherwise avoidable.

Class 4 is conclusively presumed to have accepted the Plan and, therefore, Holders of Class 4 Claims are not entitled to vote to accept or reject the Plan.

**5.      Class 5:  14% Notes Claims**

On the Effective Date, the Liens of the 14% Notes held as of the Petition Date shall remain as valid Liens for purposes of the Plan only and the 14% Notes Claims shall be Allowed as a Secured Claim in the amount of $84,256,664.  In full and final satisfaction of their Secured Allowed Claim, the 14% Notes Claims shall receive their Pro Rata share of 43.5% of the Net Distributable Proceeds, less:  (a) fees and expenses payable and paid to DB (both for its services and those of its agents) (the "DB Fees"); (b) any amounts payable and paid to Whippoorwill for fees and expenses incurred by its professionals (collectively, the "Whippoorwill Fees"), pursuant to a Substantial Contribution Claim; and (c) any funds distributed to the Holders of the 5% Notes.  The Creditors Committee will support Whippoorwill's Substantial Contribution Claim, provided any recovery thereon is paid in accordance with the previous sentence.  The 43.5% of Net Distributable Proceeds payable to the 14% Notes Claims shall be paid (x) on the Effective Date with respect to the Initial Net Distributable Proceeds; and (y) on each subsequent Distribution Date as reasonably practicable after the Liquidation Trust acquires such Net Distributable Proceeds with respect to the balance.

Without recourse, representation, or warranty and solely for purposes of enforcing the percentage allocation of Net Distributable Proceeds, on the Effective Date, the 14% Notes shall be deemed to assign to the Liquidating Trustee that portion of their intercreditor rights necessary to preclude the Holders of the 5% Notes from exercising a payover demand against distribution to the Holders of 6% Notes.  On the Effective Date, provided that Class 5 votes to accept the Plan, the 14% Notes shall be deemed to release any intercreditor rights or payover demands that they have against the Holders of 6% Notes.  For the avoidance of doubt, any rights or Liens granted to the 14% Notes

prior to the Effective Date will be extinguished on the Effective Date in exchange for the treatment afforded to the 14% Notes Claims hereunder.

All of the DB Fees shall be paid concurrently with the final payment of Professional Fee Claims, but if at the time of such distribution, there are insufficient funds to make a payment in full, then DB shall be entitled to its Pro Rata portion of the DB Fees distributed at such time relative to the total fees and expenses paid to all Professionals, which amount shall be deducted from the 43.5% Net Distributable Proceeds allocated to the 14% Notes Claims.  Similarly, all of the Whippoorwill Fees shall be paid concurrently with the final payment of Professional Fee Claims (but if at the time of such distribution, there are insufficient funds to make a payment in full, then Whippoorwill shall be entitled to its Pro Rata portion relative to the total fees and expenses paid to all Professionals of the Whippoorwill Fees distributed at such time), provided that such Whippoorwill Fees have been approved by allowance of the Substantial Contribution Claim, and such amount shall be deducted from the 43.5% Net Distributable Proceeds allocated to the 14% Notes Claims.

Upon the Effective Date, the DB Litigation shall be deemed dismissed with respect to all parties, with prejudice, and confirmation of this Plan shall constitute a final and binding resolution of all issues raised, or that could be raised, in connection with the DB Litigation.

Class 5 is Impaired and is entitled to vote on the Plan.

**6.    Class 6:  General Unsecured Claims**

Provided that all Allowed Administrative Claims, Priority Claims and Secured Claims have been paid in full or funds sufficient to satisfy all Allowed Administrative Claims, Priority Claims and Secured Claims have been placed in a segregated reserve, as set forth in the Plan and in the Liquidating Trust Agreement, and subject to the occurrence of the Effective Date, on, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date a General Unsecured Claim becomes an Allowed General Unsecured Claim or (b) the date that is ninety (90) days after the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for such Allowed General

Unsecured Claim, its Pro Rata share of the Initial Net Distributable Proceeds, if any, and, on each Periodic Distribution Date, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the Periodic Net Distributable Proceeds, not to exceed in the aggregate receive 56.5% of the total Net Distributable Proceeds.  Class 6 is Impaired and is entitled to vote on the Plan.

**7.      Class 7:  6% Notes Claims**

Provided that all Allowed Administrative Claims, Priority Claims and Secured Claims have been paid in full or funds sufficient to satisfy all Allowed Administrative Claims, Priority Claims and Secured Claims have been placed in a segregated reserve, as set forth in the Plan and in the Liquidating Trust Agreement, and subject to the occurrence of the Effective Date, and subject to acceptance of the Plan by Class 7, Holders of 6% Notes Claims shall receive $2 million from the 56.5% Net Distributable Proceeds allocable to the General Unsecured Claims, which amount shall be paid at the time Distributions are made to General Unsecured Creditors pursuant to the Plan or as the Liquidating Trustee shall determine in its sole and absolute discretion. Concurrently with the final payment of Professional Fee Claims for the Debtors and the Creditors' Committee after the Effective Date and provided that Class 7 has voted to accept the Plan, the Professional fees and expenses of the indenture trustee of the 6% Notes and the trustee's professionals shall be paid to such applicable indenture trustee or professional, subject to a review for reasonableness by the Creditors' Committee, out of the 56.5% of the Net Distributable Proceeds allocable to the Allowed General Unsecured Claims, but if at the time of such distribution, there are insufficient funds to make payment in full, then such fees shall be paid Pro Rata with other professionals paid at such time.

Class 7 is Impaired and is entitled to vote on the Plan.

**8.      Class 8:  5% Notes Claims**

Pursuant to the terms of the Noteholder Settlement, the parties agreed that the Holders of the 14% Notes Claims would pay for the distribution to the Holders of 5% Notes Claims, if any, out of the 43.5% of the Net Distributable Proceeds allocable to the Allowed 14% Notes Claims. However, the 14% Notes have evaluated the 5% Notes Claims and have determined that they are not entitled to a distribution under the Plan.

Class 8 is deemed to have rejected the Plan and, therefore, Holders of Class 8 Claims are not entitled to vote to accept or reject the Plan.

9.    **Class 9:  Convenience Claims**

On, or as soon as reasonably practicable after, the Initial Distribution Date, each Holder of an Allowed Convenience Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for such Convenience Claim, 25% of its Allowed Claim as a final distribution.  Holders of Class 6 Claims in excess of $10,000 will be eligible to opt into this Class by reducing their claim to $10,000 by checking the "Opt-In to Convenience Class" box on their ballot. Total distributions under this Class shall be paid out of the 56.5% of the Net Distributable Proceeds allocable to the Allowed General Unsecured Claims, and are anticipated to be limited to $1.25 million, subject to the Liquidating Trustee's discretion to increase this amount at the time of the Initial Distribution Date.  In the event that this class has greater demand than funds allocated to this Class, then the Liquidating Trustee shall have the absolute discretion to select and remove certain of the opt-in members of this class.  In no instance shall the Liquidating Trustee remove a non-opt-in Allowed Convenience Claim from this Class.  Class 9 is Impaired and is entitled to vote on the Plan.

10.    **Class 10:  Product Liability PI Claims**

Unless their Product Liability PI Claim has previously become an Allowed Claim, all Holders of Claims in Class 10 shall be required to participate in the Product Liability PI Claim Mediation Process attached to the Disclosure Statement as Appendix E.  As provided in the Product Liability PI Claim Mediation Process, if and when Allowed, Holders of Class 10 Claims shall receive a Pro Rata distribution of available insurance proceeds from Gibraltar policies covering Product Liability PI Claims upon the year in which the claim arose.  Once all mediations as to Product Liability PI Claims in a given policy year have been liquidated, the Liquidating Trustee may, in its discretion, begin the distribution of Gibraltar policy proceeds for that year without regard to whether the Product Liability PI Claims in any other policy year have been liquidated or allowed, or he may wait until Product Liability PI Claims in other policy years, or all policy years have been liquidated, before making distributions of Gibraltar policy proceeds.  To the extent the allowed amount of any Class 10 Claim is not paid in full with insurance proceeds, then the unpaid deficiency

amount shall receive the treatment provided for under Class 6 for Allowed General Unsecured Claims, and any distributions thereto shall be paid out of the 56.5% of the Net Distributable Proceeds allocable to the Allowed General Unsecured Claims.  Class 10 is Impaired and is entitled to vote on the Plan.

**11.    Class 11:  WARN Class Claims and Severance Class Claims.**

The WARN and Severance Class Settlement Agreement shall be presented to the Bankruptcy Court for approval pursuant to Rule 9019 of the Bankruptcy Rules and as a class settlement under Rule 23 of the Federal Rules of Civil Procedure and notice of the WARN and Severance Class Settlement Agreement shall be given to all WARN Class Members and or Severance Class Member as required under Rule 23 and the Order of the Bankruptcy Court.  If the WARN and Severance Class Settlement Agreement is approved, any WARN Class Member or Severance Class Member may affirmatively elect not to accept the treatment ("Opt Out") afforded to the WARN Class Members and Severance Class Members in the WARN and Severance Class Settlement Agreement by following the procedures in the notice of the WARN and Severance Class Settlement Agreement.

If the WARN and Severance Class Settlement Agreement is approved by the Bankruptcy Court:

A.    On the effective date of the WARN and Severance Class Settlement Agreement or the Effective Date of this Plan, whichever is later, any WARN Class Member or Severance Class Member who has not affirmatively elected to Opt Out shall receive, in full satisfaction of their Claims, the treatment provided in the WARN and Severance Class Settlement Agreement.

B.    As to any WARN Class Member or Severance Class Member who affirmatively elects to Opt Out, if and when their WARN Claim or Severance Claim becomes an Allowed Claim, then they shall be afforded the treatment of a Non-Tax Priority Claim in Class 1 subject to the limitations of Section 507(a)(4) and (5) of the Bankruptcy Code with any amount of their WARN Claim or Severance Claim in excess of the limitations of Section 507(a)(4) and (5) of the Bankruptcy Code treated as a General Unsecured Claim in Class 6 and any distribution under

Class 6 shall be paid out of the 56.5% Net Distributable Proceeds allocable to the Allowed General Unsecured Claims.

C.      Any WARN Class Member or Severance Class Member who Opts Out of the treatment afforded in the WARN and Severance Class Settlement Agreement shall have the same rights and obligations as he or she would have had if the WARN Action and/or the Severance Action had never been filed and this WARN and Severance Class Settlement Agreement had never been executed.

If the WARN and Severance Class Settlement Agreement is not approved by the Bankruptcy Court:

The WARN Class Claims and Severance Class Claims will continue to be litigated before the Bankruptcy Court.  If and when the Claim of any WARN Class Member or any Severance Class Member becomes an Allowed Claim, the Claim of the WARN Class Member or Severance Class member shall be afforded the treatment of a Non-Tax Priority Claim in Class 1 subject to the limitations of Section 507(a)(4) and (5) of the Bankruptcy Code with any amount in excess of the limitations of Section 507(a)(4) and (5) of the Bankruptcy Code treated as a General Unsecured Claim in Class 6 with any distribution under Class 6 to be paid out of the 56.5% of Net Distributable Proceeds allocable to the Allowed General Unsecured Claims.

The Class 11 Claims of WARN Class Members and Severance Class Members are impaired and are entitled to vote on the Plan.

**12.    Class 12**

Each Claimant in Class 12 is or was the beneficiary of a letter of credit ("LC") issued by the Debtors' Secured Parties pursuant to the Secured Credit Facility and which comprises the Allowed Senior Credit Facility Claims.  Upon the Effective Date, each Claim in Classes 12A through 12B shall be deemed an Allowed Claim and each holder of an Allowed Claim in Class 12 shall receive the treatment described below in exchange for waiver of any deficiency claims.  Each Claim in Class 12A through Class 12B, inclusive, is Impaired and is entitled to vote on the Plan.

(a)      **Class 12A: Lumbermen's Underwriting Alliance.**

Lumbermen's Underwriting Alliance ("LUA") insured the workers' compensation liability of the Debtors in the states of Arizona, Idaho, Tennessee, Virginia, Texas, Florida, Maryland and Kentucky between November 1, 1981 and February 1, 1999.  The Debtors' liability to LUA was secured by LC No. 3040443 in the amount of $100,000 which LUA drew on or about December 4, 2009.  LUA was also holding cash deposits of $86,774.   On the Effective Date, in full and final satisfaction of LUA's Allowed Claim, LUA shall retain the approximately $186,000 in LC proceeds as well as other Cash on hand.

(b)    **Class 12B:  Georgia Self Insurance Guaranty Trust Fund.**

The Debtors' workers' compensation liability in the state of Georgia, was secured by LC No. 3040445 in the amount of $1,230,000.  The Georgia Self Insurers Guaranty Trust Fund ("Georgia"), drew on LC No. 3140445 on July 23, 2009 and it now holds $1,230,000 in cash.  On the Effective Date, in full and final satisfaction of the Allowed Claim of the Georgia, Georgia shall retain the proceeds of LC No. 3040445 in the amount $1,230,000 as well as other Cash on hand.

**13.    Class 13**

Each Claimant in Class 13 is or was the beneficiary of an LC issued by the Debtors' Secured Parties pursuant to the Secured Credit Facility and which comprises the Allowed Secured Credit Facility Claims.  On, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date a Class 13 Claim becomes an Allowed Class 13 Claim or (b) the date that is ninety (90) days after the date on which such Class 13 Secured Claim becomes an Allowed Class 13 Claim, a Holder of an Allowed Class 13 Claim shall be allowed to retain, in full and final satisfaction, settlement and release of and in exchange for, such Allowed Class 13 Claim, at the election of the Liquidating Trustee, (i) proceeds of letters of credit (drawn or undrawn), as well as other Cash on hand, equal to the lesser of the unpaid portion of such Allowed Class 13 Claim and the value of the Holder's Collateral securing the Class 13 Claim or (ii) such other amounts as to which such Holder and the Debtors and/or the Liquidating Trustee shall have agreed upon in writing.

Each Holder of a Class 13 Claim shall retain its Collateral or the proceeds of the Collateral to the same extent and with the same priority held as of the Petition Date until such time

as (a) the Holder of such Allowed Class 13 Claim (i) is allowed to retain letter of credit proceeds and/or other Cash equal to the value of its Allowed Class 13 Claim, (ii) has been afforded such other treatment as to which such Holder and the Debtors and/or the Liquidating Trustee shall have agreed upon in writing; or (b) such purported Claim has been determined by an order of the Bankruptcy Court to be invalid or otherwise avoidable.

Each holder of a Claim in Class 13 is conclusively presumed to have accepted the Plan and, therefore, each Holder of a Class 13 Claim is not entitled to vote to accept or reject the Plan.

(a)    **Class 13A:  Westchester Fire Insurance Company and ACE INA Insurance.**

Westchester Fire Insurance Company and ACE issued construction bonds with respect to the Debtors' military housing business and bonds supporting the Debtors' self insured workers' compensation liability in Washington and Indiana all of which were secured by LC No. 3051853.  On or about December 29, 2009, ACE drew on LC. No. 3051853 in its entirety and as of January 31, 2010, ACE held $13,897,702.50 in cash as security for the Claims of ACE against the Debtors.

(b)    **Class 13B:  Old Republic Insurance Co.**

On behalf of Gibraltar, Old Republic Insurance Co. ("Old Republic") provided workers' compensation coverage to the Debtors in Alabama and Georgia and the reimbursement obligations of the Debtors and Gibraltar to Old Republic were secured by LC No. 3040444 in the amount of $1.08 million.  On November 27, 2009, Old Republic drew on LC No. 3040444 and it now holds $1.08 million in cash.

(c)    **Class 13C:  National Union Fire Insurance Company of Pittsburgh, PA, et al.**

The Debtors' workers' compensation liability in the states of Arizona, Idaho, Tennessee, Virginia, Florida, Maryland and Kentucky from April 1, 2003 to the present was covered by National Union Fire Insurance Company of Pittsburgh, PA, American Home Assurance Company, American International Specialty Lines Insurance Company of the State of Pennsylvania,

Commerce and Industry Insurance Company, AIU Insurance Company, Birmingham Fire Insurance Company of the State of Pennsylvania, Illinois National Insurance Company, American International South Insurance Company, National Union Fire Insurance Company of Louisiana, American International Pacific Insurance Company, Granit State Insurance Company, New Hampshire Insurance Company, Lexington Insurance Company, Landmark Insurance Company, Starr Excess Liability Insurance Company Ltd. ("National Union"). The Debtors' reimbursement obligations to National Union are secured by LC No. 3056166 in the amount of $4,302,210, which expires on March 31, 2010.

(d)    **Class 13D: Fidelity and Deposit Company of Maryland**

Fidelity and Deposit Company of Maryland ("Fidelity") issued a surety bond with respect to the Debtors' contract to supply manufactured housing to the U.S. Department of Defense for Fort Sill. The Surety Bond is secured by LC No. 3092431 in the amount of $3,017,440, which expires on March 11, 2010. Morgan Buildings and Spas, Inc. ("Morgan Spa") has made claims against the Debtors, which the Debtors deny, and which are now being litigated in Texas along with the Debtors' claims against Morgan Spa. If Morgan Spa prevails, it will be entitled to payment under the surety bond and Fidelity will then be entitled to indemnification from the proceeds of LC No. 3092431.

(e)    **Class 13E:  Kemper Insurance Co., et al.**

Lumbermen's Mutual Casualty Company, American Motorists Insurance Company, American Manufacturers Mutual Insurance Company and American Protection Insurance Company and Kemper Insurance Co. ("Kemper") insured the workers' compensation liability of the Debtors in the states of Arizona, Idaho, Tennessee, Virginia, Texas, Florida, Maryland and Kentucky between February 1, 1996 and April 1, 2003. The Debtors' liability to Kemper is secured by LC No. 3040130 in the remaining amount of $1,070,000 plus cash of approximately $1.428 million held by Kemper from prior draws on letters of credit.

**14.    Class 14:  Intercompany Claims**

In connection with, to the extent of and as a result of, the substantive consolidation of the Debtors' Estates and the Chapter 11 Cases, on the Confirmation Date or such other date as may

be set by an order of the Bankruptcy Court, but subject to the occurrence of the Effective Date, all

Intercompany Claims by and between the Debtors shall be deemed eliminated, cancelled and/or

extinguished and the Holders of Class 14 Claims shall not be entitled to, and shall not receive or

retain any property or interest in property on account of such Claims.  Class 14 is deemed to have

rejected the Plan and, therefore, Holders of Class 14 Claims are not entitled to vote to accept or

reject the Plan.

      **15.**    **Class 15: Equity Interests**

      On the Effective Date, all Equity Interests in the Debtors shall be cancelled and each

Holder thereof shall not be entitled to, and shall not receive or retain any property or interest in

property on account of, such Equity Interests.  Class 15 is deemed to have rejected the Plan and,

therefore, Holders of Equity Interests are not entitled to vote to accept or reject the Plan.

**V.**

**ACCEPTANCE OR REJECTION OF THE PLAN BY CLAIM HOLDERS**

**A.**    **Impaired Classes of Claims Entitled to Vote**

      Holders of Claims and Equity Interests in Impaired Classes who receive or retain

property on account of their Claims or Interests and who are entitled to vote under the Solicitation

Procedures Order will be solicited for acceptance or rejection of the Plan.

**B.**    **Acceptance by an Impaired Class**

      In accordance with Bankruptcy Code section 1126(c) and except as provided in

Bankruptcy Code section 1126(e), an Impaired Class of Claims shall have accepted the Plan if the

Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half

(1/2) in number of the Claims of such Class that are entitled to vote and have timely and properly

voted to accept or reject the Plan.

**C.**    **Presumed Acceptances by Unimpaired Classes**

      Classes 1, 4, and 13 are Unimpaired by the Plan.  Under Bankruptcy Code section

1126(f), such Claimholders are conclusively presumed to accept the Plan, and the votes of such

Claimholders will not be solicited.

**D.    Classes Deemed to Reject Plan**

Claimholders in Classes 8 and 14 and Equity Interest Holders in Class 15 are not entitled to receive or retain any property under the Plan.  Under Bankruptcy Code section 1126(g), Holders of Claims in Classes 8 and 14 and Holders of Equity Interests in Class 15 are deemed to reject the Plan, and the votes of such Claimholders or Equity Interest Holders will not be solicited.

**E.    Summary of Classes Voting on the Plan**

The votes of Holders of Claims in Classes 2, 3, 5, 6, 7, 9, 10, 11, and 12 whose Claims are not the subject of an objection and whose Claims are not listed in the Debtors' Schedules as contingent, unliquidated, or disputed, will be temporarily allowed for voting purposes as set forth in the Solicitation Procedures Order and will be solicited with respect to the Plan.

**F.    Confirmation Pursuant to Bankruptcy Code Section 1129(b)**

To the extent necessary, the Plan Proponents will seek confirmation of the Plan from the Court by employing the "cramdown" procedures set forth in section 1129(b) of the Bankruptcy Code.  The Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Plan or any Plan Exhibit or schedule, including to amend or modify the Plan or such Exhibits or schedules to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

## VI.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.    Substantive Consolidation of Debtors' Estates**

The Plan contemplates and is predicated upon entry of an order substantially consolidating the Debtors' Estates.  On the Effective Date, (i) all Intercompany Claims by, between and among the Debtors shall be eliminated, (ii) all assets and liabilities of the Debtors shall be merged or treated as if they were merged with the assets and liabilities of the Debtors, (iii) any obligation of a Debtor and all guarantees thereof by one or more of the other Debtors shall be deemed to be one obligation of the Debtors, (iv) the Equity Interests shall be cancelled, and (v) each Claim filed or to be filed against any Debtor shall be deemed filed as a single Claim against and a single obligation of the Debtors.  On the Effective Date, in accordance with the terms of the Plan, and the consolidation of the assets and liabilities of the Debtors, all Claims based upon guarantees of

collection, payment, or performance made by the Debtors as to the obligations of another Debtor shall be released and of no further force and effect. The foregoing (x) shall not affect the rights of any Holder of a Miscellaneous Secured Claim with respect to the Collateral securing its Claim, or the terms and implementation of any settlement, and the rights and obligations of the parties thereto, entered into in connection with the confirmation of the Plan and (y) shall not, and shall not be deemed to, prejudice the Causes of Action and the Avoidance Actions (subject to the releases set forth in Article XI of the Plan), which shall survive entry of the Confirmation Order for the benefit of the Debtors and their Estates, as if there had been no substantive consolidation.

The Plan and Disclosure Statement, jointly, shall serve as, and shall be deemed to be, a motion for entry of an order under Bankruptcy Rule 9019 and the substantive consolidation of the Debtors' Chapter 11 Cases. If no objection to the Plan is timely filed and served by any Holder of an Impaired Claim affected by the Plan as provided herein on or before the Voting Deadline or such other date as may be established by the Bankruptcy Court, the Confirmation Order will serve as the Order approving substantive consolidation pursuant to the terms of this Plan. If any such objections are timely filed and served, a hearing with respect to the Plan and the objections thereto shall be scheduled by the Bankruptcy Court, which hearing may, but is not required to, coincide with the Confirmation Hearing.

**B.    Corporate Action**

**1.    Transfer of Estate Assets**

Upon the Effective Date, the members of the board of directors or managers, as the case may be, of each of the Debtors shall be deemed to have resigned.

**2.    Dissolution of the Debtors**

On the Effective Date, each of the Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith.

As soon as practicable after the transfer of Assets to the Liquidating Trust, the Liquidating Trustee shall provide for the retention and storage of the books, records and files that shall have been delivered to the Liquidating Trust until such time as all such books, records and files

are no longer required to be retained under applicable law, and file a certificate informing the Bankruptcy Court of the location at which such books, records, and files are being stored.

The Professionals employed by the Debtors shall be entitled to reasonable compensation and reimbursement of actual, necessary expenses for post-Effective Date activities, including the preparation, filing, and prosecution of Final Fee Applications, upon the submission of invoices to the Liquidating Trust, but if at the time of such distribution, there are insufficient funds to make payment in full, then such fees shall be paid Pro Rata with other Professionals paid at such time.  Any time or expenses incurred in the preparation, filing, and prosecution of Final Fee Applications shall be disclosed by each Professional in its Final Fee Application and shall be subject to approval of the Bankruptcy Court.

**3.      Cancellation of Existing Securities and Agreements**

Except as otherwise provided in the Plan, and in any contract, instrument or other agreement or document created in connection with the Plan, on the Effective Date, the Equity Interests and any other promissory notes, share certificates, whether for preferred or common stock (including treasury stock), other instruments evidencing any Claims or Equity Interests, and all options, warrants, calls, rights, puts, awards and commitments shall be deemed cancelled and of no further force and effect, without any further act or action under any applicable agreement, law, regulation, order, or rule, and the obligations of the Debtors under the notes, share certificates, and other agreements and instruments governing such Claims and Equity Interests shall be released; provided, however, that certain instruments, documents, and credit agreements related to Claims shall continue in effect solely for the purposes of allowing the agents to make distributions to the beneficial holders and lenders thereunder.  The holders of or parties to such canceled notes, share certificates and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates and other agreements and instruments or the cancellation thereof, except the rights provided pursuant to the Plan.

**4.      No Further Action**

Each of the matters provided for under the Plan involving the corporate or limited liability company structure of the Debtors or corporate or limited liability company action to be

taken by or required of the Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by any Person, including but not limited to, the Liquidating Trust, the Liquidating Trustee, Holders of Claims or Equity Interests against or in the Debtors, or directors or officers of the Debtors.

**C.     Sources for Plan Distribution**

All Cash necessary for the Liquidating Trustee to make payments of Cash pursuant to the Plan shall be obtained from the following sources:  (a) the Debtors' Cash on hand, which shall be deemed vested in the Liquidating Trust on the Effective Date, (b) Cash received in liquidation of the Assets of the Debtors, and (c) proceeds of the Causes of Action.

**D.     Payment of Claims**

The Liquidating Trust shall not pay any amounts on account of Allowed Unsecured Claims, or Convenience Claims unless and until all Allowed Administrative Claims, Priority Claims and Secured Claims have been paid in full or funds sufficient to satisfy all Allowed Administrative Claims, Priority Claims and Secured Claims have been placed in a segregated reserve.

**E.     KEIP Payments**

The Liquidating Trustee or the Debtors shall be permitted to pay to the KEIP Employees the KEIP Payments up to the maximum incentive payment set forth in the KEIP Order and Modified and Amended KEIP Plan Order.

**F.     Liquidating Trust**

**1.     Establishment of the Liquidating Trust**

The Liquidating Trust shall be established and shall become effective on the Effective Date.  All Distributions to the Holders of Allowed Claims shall be from the Liquidating Trust.  The Liquidating Trust shall hold and administer the Assets of the Debtors, including but not limited to the Causes of Action for liquidation and distribution in accordance with the Plan unless otherwise settled or released by Order of the Bankruptcy Court prior to the Effective Date, and the Net Proceeds thereof (collectively, the "Liquidating Trust Assets").

**2.        Trust Distributions**

The Liquidating Trustee shall liquidate all Assets of the Debtors and the Estates

(including, without limitation, all Causes of Action) and distribute the Net Proceeds of such

liquidation from the Liquidating Trust in accordance with this Plan and the Liquidating Trust

Agreement.

**3.        Duration of Trust**

The Liquidating Trust shall have an initial term of five (5) years; provided, however,

that, if warranted by the facts and circumstances, and subject to the approval of the Bankruptcy

Court with jurisdiction over the case, upon a finding that an extension of the term of the Liquidating

Trust is necessary to accomplish the liquidating purpose of the Trust, the Liquidating Trust's terms

may be extended for a finite term based on facts and circumstances.  Each extension of the term of

the Liquidating Trust must be approved by the Court.  The Liquidating Trust may be terminated

earlier than its scheduled termination if (a) the Bankruptcy Court has entered a Final Order closing

the Chapter 11 Cases pursuant to Bankruptcy Code section 350(a) and (b) the Liquidating Trustee

has administered all assets of the Liquidating Trust and performed all other duties required by the

Plan and the Liquidating Trust Agreement.  As soon as practicable after the Final Trust Distribution

Date, the Liquidating Trustee shall seek entry of a Final Order closing the Chapter 11 Cases pursuant

to Bankruptcy Code section 350.

**4.        Liquidation of Causes of Action**

Notwithstanding any other term or provision of the Plan, the Debtors shall have, prior

to the Effective Date, and the Liquidating Trustee shall have, on and after the Effective Date, sole

authority and responsibility for investigating, analyzing, commencing, prosecuting, litigating,

compromising, collecting, and otherwise administering the Causes of Action pursuant to the terms of

the Plan and Liquidating Trust Agreement.  Further, the Liquidation Trust Oversight Committee

shall set thresholds for approval with respect to the initiation of prosecution of any Avoidance

Actions in its sole discretion.

**5.      Liquidating Trustee**

(a)      Appointment

The appointment of the Liquidating Trustee shall be effective as of the Effective Date, although the Liquidating Trustee shall be entitled to payment of reasonable fees and expenses incurred prior to the Effective Date as approved by the Bankruptcy Court in the Confirmation Order. Successor Liquidating Trustee(s) shall be appointed as set forth in the Liquidating Trust Agreement.

(b)      Term

Unless the Liquidating Trustee resigns or dies earlier, the Liquidating Trustee's term shall expire upon termination of the Liquidating Trust pursuant to the Plan and/or the Liquidating Trust Agreement.

(c)      Powers and Duties

The Liquidating Trustee shall have the rights and powers set forth in the Liquidating Trust Agreement including, but not limited to, the powers of a debtor-in-possession under Bankruptcy Code sections 1107 and 1108. The Liquidating Trustee shall be governed in all things by the terms of the Liquidating Trust Agreement and the Plan. The Liquidating Trustee shall administer the Liquidating Trust, and its assets, and make Distributions from the proceeds of the Liquidating Trust in accordance with the Plan. In addition, the Liquidating Trustee shall, in accordance with the terms of the Plan, take all actions necessary to wind down the affairs of the Debtors consistent with the Plan and applicable non-bankruptcy law. Without limitation, the Liquidating Trustee shall file final federal, state, foreign and, to the extent applicable, local, tax returns. Subject to the terms of the Liquidating Trust Agreement, which includes, among other things, limitations on the Liquidating Trustee's discretion to take certain action without approval of the Liquidating Trust Oversight Committee or, in some circumstances, the Bankruptcy Court, the Liquidating Trustee shall be authorized, empowered and directed to take all actions necessary to comply with the Plan and exercise and fulfill the duties and obligations arising thereunder, including, without limitation, to:

(1)      object to the allowance of Claims pursuant to the terms of the Plan;

(2)    open, maintain and administer bank accounts as necessary to discharge the duties of the Liquidating Trustee under the Plan and the Liquidating Trust Agreement;

(3)    pay reasonable and necessary professional fees, costs, and expenses as set forth in the Plan;

(4)    investigate, analyze, commence, prosecute, litigate, compromise, and otherwise administer the Causes of Action and all related Liens for the benefit of the Liquidating Trust and its beneficiaries, as set forth in the Plan, and take all other necessary and appropriate steps to collect, recover, settle, liquidate, or otherwise reduce to Cash the Causes of Action, including all receivables, and to negotiate and effect settlements and lien releases with respect to all related Claims and all related Liens;

(5)    administer, sell, liquidate, or otherwise dispose of all Collateral and all other Assets of the Estates in accordance with the terms of the Plan and the Liquidating Trust Agreement;

(6)    represent the Estates before the Bankruptcy Court and other courts of competent jurisdiction with respect to matters concerning the Liquidating Trust;

(7)    seek the examination of any entity under and subject to the provisions of Bankruptcy Rule 2004;

(8)    report to the Liquidating Trust Oversight Committee and provide it with reasonable access to information regarding the Liquidating Trust;

(9)    comply with applicable orders of the Bankruptcy Court and any other court of competent jurisdiction over the matters set forth herein;

(10)    comply with all applicable laws and regulations concerning the matters set forth herein;

(11)    exercise such other powers as may be vested in the Liquidating Trust pursuant to the Liquidating Trust Agreement, the Plan, or other Final Orders of the Bankruptcy Court;

(12)    execute any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of the Liquidating Trust; and

(13)    stand in the shoes of the Debtors for all purposes.

(d)    Fees and Expenses

Except as otherwise provided in the Plan, compensation of the Liquidating Trustee and the costs and expenses of the Liquidating Trustee and the Liquidating Trust (including, without limitation, professional fees and expenses) shall be paid from the Liquidating Trust.  The Liquidating Trustee shall pay, without further order, notice, or application to the Bankruptcy Court, the reasonable fees and expenses of the Liquidating Trust Professionals, as necessary to discharge the

Liquidating Trustee's duties under the Plan and the Liquidating Trust Agreement.  Payments to the Liquidating Trustee, or to the Liquidating Trust Professionals, shall not require notice to any party, or an order of the Bankruptcy Court approving such payments; provided, however, that the Liquidating Trustee shall be entitled to payment of reasonable fees and expenses incurred prior to the Effective Date in an amount to be agreed to by the Plan Proponents and approved by the Bankruptcy Court in the Confirmation Order.  After the Effective Date, the Liquidating Trustee shall be entitled to payment at a rate of $25,000 for the first six months, $20,000 for the next twelve months, and $10,000 per month thereafter.

(e)    Retention of Professionals and Compensation Procedure

On and after the Effective Date, subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee may engage such professionals and experts as may be deemed necessary and appropriate by the Liquidating Trustee to assist the Liquidating Trustee in carrying out the provisions of the Plan and the Liquidating Trust Agreement, including, but not limited to, professionals retained prior to the Effective Date by either the Debtors or the Creditors' Committee. Prior to hiring a professional financial advisory firm who shall be selected by the Liquidating Trustee in its sole discretion, the Liquidating Trustee shall consult Whippoorwill who shall have an opportunity to express its views on the professional financial advisory firm.  Subject to the terms of the Liquidating Trust Agreement, for services performed from and after the Effective Date, Liquidating Trust Professionals shall receive compensation and reimbursement of expenses in a manner to be determined reasonably by the Liquidating Trustee.

(f)    Liquidating Trustee as Successor

Pursuant to Bankruptcy Code section 1123(b), the Liquidating Trustee shall be the successor to the Debtors for all purposes.

(g)    Compromising Claims

Pursuant to the Plan and the Liquidating Trust Agreement, as of the Effective Date, the Liquidating Trustee is authorized to approve compromises of the Causes of Action and all Claims, Disputed Claims, and Liens and to execute necessary documents, including Lien releases and stipulations of settlement or release, without notice to any party and without further order of the

Bankruptcy Court, except as otherwise provided in the Liquidating Trust Agreement and pursuant to the threshold amounts for approval as may be set by the Liquidation Trust Oversight Committee.

(h)     Investment Powers

The powers of the Liquidating Trustee to invest any Cash that is held by the Liquidating Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Liquidating Trust's liquidating purposes, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills.  The Liquidating Trustee is prohibited from continuing or engaging in the conduct of a trade or business, except to the extent reasonably necessary to and consistent with the liquidating purpose of the Liquidating Trust.

(i)     Distributions

The Liquidating Trustee is required to distribute at least annually to beneficiary Claimholders qualifying for Distributions from the Liquidating Trust under the Plan the Liquidating Trust's net income and all net proceeds from the sale of assets by the Liquidating Trust, except that the Liquidating Trust may retain an amount of Net Proceeds or net income reasonably necessary to maintain the value of its assets or to meet Claims and contingent liabilities (including Disputed Claims).  The Liquidating Trustee shall make continuing efforts to dispose of the Liquidating Trust's Assets, make timely Distributions, and not unduly prolong the duration of the Liquidating Trust.

(j)     Vesting of Assets

On the Effective Date, all property treated by the Plan, any minutes, and general corporate records of Debtors, and any books and records relating to the foregoing not otherwise treated by the Plan, shall automatically vest in the Liquidating Trust free and clear of all Liens, Claims, encumbrances, and other interests and shall thereafter be administered, liquidated by sale, collection, recovery, or other disposition and distributed by the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement and the Plan without further action of the Debtors.

**6.**     **Federal Income Taxation of Liquidating Trust**

(a)     Treatment of Liquidating Trust and Asset Transfers

For federal income tax purposes, the Debtors, the Liquidating Trust, the Liquidating

Trustee and the beneficiary Claimholders shall treat the Liquidating Trust as a liquidating trust

within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue

Procedure 94-45, 1994-2 C.B. 124.  For federal income tax  purposes, the transfer of assets to the

Liquidating Trust under the Plan is treated as a deemed transfer to the beneficiary Claimholders in

satisfaction of their Claims followed by a deemed transfer of the assets by the beneficiary

Claimholders to the Liquidating Trust.  For federal income tax purposes, the beneficiary

Claimholders will be deemed to be the grantors and owners of the Liquidating Trust and their assets.

For federal income tax purposes, the Liquidating Trust will be taxed as a grantor trust within the

meaning of IRC Sections 671-677 (a non-taxable pass-through tax entity) owned by the beneficiary

Claimholders.  The Liquidating Trust will file federal income tax returns as a grantor trust under IRC

Section 671 and Treasury Income Tax Regulation Section 1.671-4 and report, but not pay tax on the

Liquidating Trust's tax items of income, gain, loss deductions and credits ("Tax Items").  The

beneficiary Claimholders will report on their federal income tax returns and pay any federal income

tax liability attributable to such Liquidating Trust's Tax Items.  The Debtors, Liquidating Trust and

the beneficiary Claimholders will use consistent valuations of the assets transferred to the

Liquidating Trust for all federal income tax purposes, such valuations to be determined jointly by the

Debtors and the Liquidating Trustee.

**G.**     **No Revesting of Assets**

The property of the Debtors' Estates shall not be vested in the Debtors on or

following the Effective Date, but shall be vested in the Liquidating Trust and continue to be subject

to the jurisdiction of the Bankruptcy Court following confirmation of the Plan until such property is

distributed to Holders of Allowed Claims in accordance with the provisions of the Plan, the

Liquidating Trust Agreement, and the Confirmation Order.

**H.    Accounts**

The Liquidating Trustee shall (a) establish one or more general accounts into which shall be deposited all funds not required to be deposited into any other account or reserve and (b) create, fund, and withdraw funds from, as appropriate, any reserves or other accounts maintained or established by the Liquidating Trustee.

**I.    Release of Liens**

Except as otherwise provided in the Plan, the Confirmation Order, or in any document, instrument, or other agreement created in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, liens, or other security interests against the property of the Estates shall be released.

**J.    Exemption from Certain Transfer Taxes**

Pursuant to Bankruptcy Code section 1146(c), any transfers from any of the Debtors to the Liquidating Trust or to any other Person pursuant to the Plan in the United States shall not be subject to any stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**K.    Preservation of Causes of Action; Settlement of Causes of Action**

**1.    Preservation of Causes of Action**

In accordance with section 1123(b)(3) of the Bankruptcy Code or any corresponding provision of similar federal or state laws, on and after the Effective Date, (a) the Liquidating Trustee shall be deemed to be a representative of the Debtors as the party in interest in the Chapter 11 Cases and any adversary proceeding in the Chapter 11 Cases, under the Plan or in any judicial proceeding or appeal as to which any of the Debtors is a party and (b) the Liquidating Trustee shall retain all of the Causes of Action of the Debtors and their Estates, a nonexclusive list of which is set forth on Exhibit D, annexed hereto, and other similar claims arising under applicable state laws, including, without limitation, Avoidance Actions, if any, and all other causes of action of a trustee and debtor in possession under the Bankruptcy Code.  The Liquidating Trustee and/or the Liquidating Trust

may, in accordance with the Liquidating Trust Agreement and the terms of this Plan, enforce, sue on, settle or compromise (or decline to do any of the foregoing) any or all of the Causes of Action.

The Plan Proponents have not concluded their investigation into all of the Causes of Action. Accordingly, in considering the Plan, each party in interest should understand that any and all Causes of Action that may exist against such Person or entity may be pursued by the Liquidating Trust and/or the Liquidating Trustee, regardless of whether, or the manner in which, such Causes of Action are listed on <u>Exhibit D</u> to this Plan. The failure of the Plan Proponents to list a claim, right, cause of action, suit or proceeding on <u>Exhibit D</u> shall not constitute a waiver or release by the Debtors or their Estates of such claim, right of action, suit or proceeding. The substantive consolidation of the Debtors and their Estates shall not, and shall not be deemed to, prejudice the Liquidating Trust with respect to any of the Causes of Action, which shall survive entry of the Confirmation Order for the benefit of the Debtors and their Estates, and, upon the Effective Date, for the benefit of the Liquidating Trust.

**2.      Settlement of Causes of Action**

Subject to the terms of the Liquidating Trust Agreement, at any time after the Confirmation Date but before the Effective Date, notwithstanding anything in this Plan to the contrary, the Debtors may settle some or all of the Causes of Action with the approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019. After the Effective Date, the Liquidating Trustee, in accordance with the terms of this Plan and the Liquidating Trust Agreement, will determine whether to bring, settle, release, compromise, enforce or abandon such rights (or decline to do any of the foregoing).

**L.      Effectuating Documents; Further Transactions**

Subject to the terms and conditions of the Plan, prior to the Effective Date, any appropriate officer of the applicable Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Subject to the terms and conditions of the Plan and the Liquidating Trust Agreement, after the Effective Date, the Liquidating Trust shall be authorized to execute, deliver,

file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## VII.

### PROVISIONS GOVERNING DISTRIBUTIONS

**A.    Special Provision Regarding Unimpaired Claims**

Except as otherwise provided in the Plan, the Confirmation Order, any other order of the Bankruptcy Court, or any document or agreement enforceable pursuant to the terms of the Plan, nothing shall affect the rights and defenses, both legal and equitable, of the Debtors and the Liquidating Trustee with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

**B.    Allowed Claims**

Except as set forth in Article VII.A above and in this Article VII.B, the Liquidating Trustee shall only make Distributions to Holders of Allowed Claims.  No Holder of a Disputed Claim will receive any Distribution on account thereof until (and then only to the extent that) its Disputed Claim becomes an Allowed Claim.  The Liquidating Trustee may, in its discretion, withhold Distributions otherwise due hereunder to any Claimholder until the Claims Objection Deadline, to enable a timely objection thereto to be filed.  Any Holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its Distribution in accordance with the terms and provisions of this Plan.

**C.    Distributions for Claims Allowed as of the Effective Date**

Except as otherwise provided herein or as ordered by the Bankruptcy Court, all Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Distribution Date by the Liquidating Trustee.  Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made pursuant to the terms and conditions of this Plan.  Notwithstanding any other provision of the Plan to the contrary, no Distribution shall be made on account of any Allowed Claim or portion thereof that (i) has been satisfied after the Petition Date pursuant to an order of the Bankruptcy Court; (ii) is listed in the

Schedules as contingent, unliquidated, disputed or in a zero amount, and for which a Proof of Claim

has not been timely filed; or (iii) is evidenced by a Proof of Claim that has been amended by a

subsequently filed Proof of Claim that purports to amend the prior Proof of Claim.

**D.    Liquidating Trustee as Disbursing Agent**

The Liquidating Trustee shall make all Distributions required under this Plan, subject

to the terms and provisions of this Plan and the Liquidating Trust Agreement.  The Liquidating

Trustee shall be authorized and directed to rely upon the Debtors' books and records and its

representatives and professionals in determining Allowed Claims not entitled to Distribution under

the Plan in accordance with the terms of the Plan.

**E.    Delivery of Distributions and Undeliverable or Unclaimed Distributions**

**1.    Delivery of Distributions in General**

Distributions to Holders of Allowed Claims shall be made by the Liquidating Trustee

(a) at the addresses set forth on the Proofs of Claim filed by such Holders, (b) at the addresses set

forth in any written notices of address changes delivered to the Liquidating Trustee after the date of

any related Proof of Claim, (c) at the addresses reflected in the Schedules if no Proof of Claim has

been filed and the Liquidating Trustee has not received a written notice of a change of address, (d) at

the addresses set forth in the other records of the Debtors or the Liquidating Trustee at the time of

the Distribution or (e) in the case of the Holder of a Claim that is governed by an agreement and is

administered by an agent or servicer, at the addresses contained in the official records of such agent

or servicer.

Distributions shall be made from the Liquidating Trust in accordance with the terms

of this Plan and the Liquidating Trust Agreement.

In making Distributions under the Plan, the Liquidating Trustee may rely upon the

accuracy of the claims register maintained by the Claims Agent in the Chapter 11 Cases, as modified

by any Final Order of the Bankruptcy Court disallowing Claims in whole or in part.

**2.    Undeliverable and Unclaimed Distributions**

If the Distribution to any Holder of an Allowed Claim is returned to the Liquidating

Trustee as undeliverable or is otherwise unclaimed, no further Distributions shall be made to such

Holder unless and until the Liquidating Trustee is notified in writing of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest. Amounts in respect of undeliverable Distributions made by the Liquidating Trustee shall be returned to the Liquidating Trustee until such Distributions are claimed.  The Liquidating Trustee shall, with respect to Cash, maintain in the Liquidating Trust Cash on account of undeliverable and unclaimed Distributions until such time as a Distribution becomes deliverable, is claimed or is forfeited.

Any Holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an undeliverable or unclaimed Distribution within six (6) months after the last Periodic Distribution Date shall be deemed to have forfeited its Claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such Claim for an undeliverable or unclaimed Distribution against the Debtors and their Estates, the Liquidating Trustee, the Liquidating Trust, and their respective agents, attorneys, representatives, employees or independent contractors, and/or any of its and their property.  In such cases, any Cash otherwise reserved for undeliverable or unclaimed Distributions shall become the property of the Liquidating Trust free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary and shall be distributed in accordance with the terms of this Plan as Net Distributable Proceeds and the Liquidating Trust Agreement.  Nothing contained in this Plan or the Liquidating Trust Agreement shall require the Debtors, or the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim; provided, however, that in his sole discretion, the Liquidating Trustee may periodically publish notice of unclaimed Distributions.

**F.      Prepayment**

Except as otherwise provided in this Plan or the Confirmation Order, the Debtors or the Liquidating Trustee, as the case may be, shall have the right to prepay in their discretion, without penalty, all or any portion of an Allowed Administrative Claim, Allowed Priority Tax Claim, Allowed Miscellanous Secured Claim, or Allowed Non-Tax Priority Claim, at any time.

**G.      Means of Cash Payment**

Cash payments made pursuant to this Plan shall be in U.S. dollars and shall be made, on and after the Effective Date, at the option and in the sole discretion of the Liquidating Trustee by

(i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Liquidating Trustee. In the case of foreign creditors, Cash payments may be made, at the option of the Liquidating Trustee, in such funds and by such means as are necessary or customary in a particular jurisdiction.

**H.      Interest on Claims**

Unless otherwise specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Claimholder shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

**I.      Withholding and Reporting Requirements**

In connection with this Plan and all Distributions under this Plan, the Liquidating Trustee shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding, payment, and reporting requirements.  The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements. All amounts properly withheld from Distributions to a Holder as required by applicable law and paid over to the applicable taxing authority for the account of such Holder shall be treated as part of the Distributions to such Holder.  All persons holding Claims shall be required to provide any information necessary to effect information reporting and withholding of such taxes.  For example, with respect to any employee-related withholding, if the Debtors are obligated by law to withhold amounts from Distributions to a present or former employee to satisfy such present or former employee's tax and other payroll obligations, the Liquidating Trustee may withhold a portion of the Distributions allocated to the Holder of an Allowed Claim that is a present or former employee, whether or not such Distributions are in the form of Cash, in such amount as is determined necessary to satisfy such Holder's tax and other payroll obligations with respect to the Distributions.

Notwithstanding any other provision of this Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Liquidating Trustee in connection with such Distribution.  Any property to be distributed pursuant to this Plan shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution pursuant to Article VII.E.2 of this Plan.

**J.    Setoffs**

**1.    By a Debtor**

Except as otherwise provided in the Plan, the Debtors, prior to the Effective Date, and the Liquidating Trustee, on and after the Effective Date, may, pursuant to Bankruptcy Code section 553 or applicable nonbankruptcy laws, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, Claims of any nature whatsoever that the Debtors may have against the Holder of such Claim without seeking relief from the Bankruptcy Court; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Liquidating Trust or the Liquidating Trustee of any such Claim that the Debtors may have against such Holder.

**2.    By Non-Debtors**

Unless otherwise stipulated in writing by the Debtors (before the Effective Date) or by the Liquidating Trustee (after the Effective Date), any party against whom a claim or counterclaim is asserted by the Estates (an "Estate Claim") must assert any setoff rights, right of subrogation, or recoupment of any kind against such Estate Claim at the time it answers such Estate Claim, or such right of setoff, subrogation or recoupment will be deemed waived and forever barred; provided, however that nothing herein shall limit the assertion of such right of setoff, subrogation or

recoupment via an amended or supplemental pleading to the extent required by Rule 15 of the

Federal Rules of Civil Procedure and/or Rule 7015 of the Federal Rules of Bankruptcy Procedure.

**K.** **Procedure for Treating and Resolving Disputed, Contingent and/or Unliquidated Claims**

    **1.** **Objection Deadline; Prosecution of Objections**

        Except as set forth in the Plan with respect to Administrative Claims, all objections to

Claims must be filed and served on the Holders of such Claims by the Claims Objection Deadline, as

the same may be extended by the Bankruptcy Court.  If an objection has not been filed to a Proof of

Claim or the Schedules have not been amended with respect to a Claim that (i) was Scheduled by the

Debtors but (ii) was not Scheduled as contingent, unliquidated, and/or disputed, by the Claims

Objection Deadline, as the same may be extended by order of the Bankruptcy Court, the Claim to

which the Proof of Claim or Scheduled Claim relates will be treated as an Allowed Claim if such

Claim has not been allowed earlier.  Notice of any motion for an order extending the Claims

Objection Deadline shall be required to be given only to those persons or entities that have requested

notice in the Chapter 11 Cases, or to such persons as the Bankruptcy Court shall order.

        From the Confirmation Date through the Claims Objection Deadline, any party in

interest, including the Liquidating Trustee, may file objections, settle, compromise, withdraw, or

litigate to judgment objections to Claims.  Subject to the terms of the Liquidating Trust Agreement,

from and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed

Claim without approval of the Bankruptcy Court.  Nothing contained herein, however, shall limit the

right of the Liquidating Trustee to object to Claims, if any, filed or amended after the Effective Date.

    **2.** **No Distributions on Disputed Claims**

        Notwithstanding any other provision of the Plan or the Liquidating Trust Agreement,

no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim

unless and until all objections to such Disputed Claim are resolved.

    **3.** **Distributions on Allowed Claims**

        Payments and Distributions from the Liquidating Trust to each respective

Claimholder on account of a Disputed Claim, to the extent that it ultimately becomes an Allowed

Claim, shall be made in accordance with provisions of the Plan that govern Distributions to such Claimholders.  On the earlier of (a) the Distribution Date following the date when a Disputed Claim becomes an Allowed Claim or (b) ninety (90) days after such Disputed Claim becomes an Allowed Claim, the Liquidating Trustee will distribute to the Claimholder any Cash that would have been distributed on the dates Distributions were previously made to Claimholders had such Allowed Claim been an Allowed Claim on such dates.

All Distributions made under this Article of the Plan on account of an Allowed Claim will be made together with any dividends, payments, or other Distributions made on account of, as well as any obligations arising from, the distributed property as if such Allowed Claim had been an Allowed Claim on the dates Distributions were previously made to Holders of Allowed Claims included in the applicable Class.

**4.      De Minimis Distributions**

Except as otherwise provided in the Plan, the Liquidating Trustee shall not have any obligation to make a Distribution on account of an Allowed Claim if the amount to be distributed to the specific Holder of the Allowed Claim on the particular Periodic Distribution Date does not constitute a final Distribution to such Holder and such Distribution has a value less than $10.00.  The Liquidating Trustee shall have no obligation to make any Distribution on Claims Allowed in an amount less than $100.00.

**L.      Fractional Dollars**

Any other provision of this Plan notwithstanding, the Liquidating Trustee shall <u>not</u> be required to make Distributions or payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

**M.      Allocation of Plan Distributions Between Principal and Interest**

To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for all income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent

the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

**N.      Distribution Record Date**

The Liquidating Trustee will have no obligation to recognize the transfer of or sale of any participation in any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize, deal with and distribute only to those Holders of Allowed Claims who are record Holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date, as stated on the official claims register.

## VIII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.      Rejected Contracts and Leases**

Except as otherwise provided in the Confirmation Order, the Plan, or any other Plan Document, the Confirmation Order shall constitute an order under Bankruptcy Code section 365 rejecting all prepetition executory contracts and unexpired leases to which any Debtor is a party, to the extent such contracts or leases are executory contracts or unexpired leases, on and subject to the occurrence of the Effective Date, unless such contract or lease (a) previously shall have been assumed, assumed and assigned, or rejected by the Debtors, (b) previously shall have expired or terminated pursuant to its own terms before the Effective Date, (c) is the subject of a pending motion to assume or reject on the Confirmation Date, (d) is identified in <u>Exhibit C</u> to the Plan as an executory contract or unexpired lease of the Debtors to be assumed; <u>provided, however</u>, that the Plan Proponents may amend such Exhibit C at any time prior to the Confirmation Date; <u>provided further however</u>, that listing such an agreement on such Exhibit shall not constitute an admission by a Debtor that such agreement is an executory contract  or unexpired lease or that any Debtor has any liability thereunder, or (e) is identified in <u>Exhibit E</u> to the Plan as an IT agreement that will not be rejected by the Plan, but will continue for up to 200 days after the Effective Date, and if not assumed by the expiration thereof, will be deemed to be automatically rejected without a further order of the Court (with creditors having 30 days after notice of rejection to file rejection damage claims, if any).

**B.      Bar to Rejection Damages**

If the rejection of an executory contract or unexpired lease pursuant to Article VIII.A above gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the applicable Debtor or its Estate, the Liquidating Trust, or their respective successors or properties unless a Proof of Claim is filed and served on the Liquidating Trust and counsel for the Liquidating Trustee within thirty (30) days after service of a notice of the Effective Date or such other date as is prescribed by the Bankruptcy Court.

**C.      Assumed and Assigned Contracts and Leases**

Except as otherwise provided in the Confirmation Order, the Plan, or any other Plan Document entered into after the Petition Date or in connection with the Plan, the Confirmation Order shall constitute an order under Bankruptcy Code section 365 assuming, as of the Effective Date, those insurance agreements listed on Exhibit C to this Plan; provided, however, that the Plan Proponents may amend such Exhibit at any time prior to the Confirmation Date; provided further, however, that listing an insurance agreement on such Exhibit shall not constitute an admission by a Debtor that such agreement is an executory contract or that any Debtor has any liability thereunder.

**IX.**

**CONFIRMATION AND CONSUMMATION OF THE PLAN**

**A.      Conditions to Confirmation**

The following are conditions precedent to the occurrence of the Confirmation Date:

(a)    A Final Order finding that the Disclosure Statement contains adequate information pursuant to Bankruptcy Code section 1125 shall have been entered by the Bankruptcy Court;

(b)    A proposed Confirmation Order in form and substance, reasonably acceptable to the Plan Proponents and Whippoorwill with respect to provisions that impact its rights under the Plan; and

(c)    Approval of all provisions, terms and conditions hereof in the Confirmation Order.

**B.    Conditions to Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing in accordance with Article IX.C:

(a)    The Confirmation Order shall have been entered and become a Final Order and shall provide that the Debtors, the Liquidating Trust, and the Liquidating Trustee are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan or effectuate, advance, or further the purposes thereof;

(b)    All Plan Exhibits shall be, in form and substance, reasonably acceptable to the Plan Proponents, and shall have been executed and delivered by all parties' signatory thereto;

(c)    The Debtors shall be authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and the agreements or documents created in connection with, and expressly provided for under, the Plan;

(d)    All other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed; and

(e)    The Debtors shall have sufficient Cash to satisfy in full, or adequately reserve for, all Allowed Administrative Claims, Priority Claims and Miscellaneous Secured Claims.

**C.      Waiver of Conditions**

Each of the conditions set forth in Articles IX.A and IX.B of the Plan may be waived in whole or in part by the Plan Proponents.  The failure to satisfy or waive any condition to the Effective Date may be asserted by the Plan Proponents regardless of the circumstances giving rise to the failure of such condition to be satisfied.  The failure of a party to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

**D.      Consequences of Non-Occurrence of Effective Date**

In the event that the Effective Date does not timely occur, the Plan Proponents reserve all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated, that the Plan be null and void in all respects, and/or that any settlement of Claims provided for in the Plan be null and void.  In the event that the Bankruptcy Court shall enter an order vacating the Confirmation Order, the time within which the Debtors may assume and assign or reject all executory contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated, without prejudice to further extensions.

**E.      Substantial Consummation**

Substantial consummation of the Plan, as defined in Bankruptcy Code section 1101(2), shall not be deemed to have occurred unless and until all Allowed Administrative Claims, Priority Claims and Miscellaneous Secured Claims have been paid in full or funds sufficient to satisfy all Allowed Administrative Claims, Priority Claims and Miscellaneous Secured Claims have been placed in a segregated reserve.

**X.**

**ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS**

**A.      Professional Fee Claims**

**1.      Final Fee Applications**

The Final Fee Applications must be filed no later than forty-five (45) days after the Effective Date.  Objections, if any, to Final Fee Applications of such Professionals must be filed and

served on the Liquidating Trustee and its respective counsel, the requesting Professional and the Office of the U.S. Trustee no later than ninety (90) days from the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

        2.        **Employment of Professionals after the Effective Date**

Except as otherwise provided for in the Liquidating Trust Agreement, from and after the Effective Date, any requirement that Professionals comply with Bankruptcy Code sections 327 through 331 or any order previously entered by the Bankruptcy Court in seeking retention or compensation for services rendered or expenses incurred after such date shall terminate.

**B.      Substantial Contribution Compensation and Expenses Bar Date**

Any Person who wishes to make a Substantial Contribution Claim based on facts or circumstances arising after the Petition Date, must file an application with the clerk of the Court, on or before the Administrative Claims Bar Date, and serve such application on counsel for the Plan Proponents and as otherwise required by the Court and the Bankruptcy Code on or before the Administrative Claims Bar Date, or be forever barred from seeking such compensation or expense reimbursement.  Objections, if any, to the Substantial Contribution Claim must be filed no later than the Administrative Claims Objection Deadline, unless otherwise extended by Order of the Court.

**C.      Other Administrative Claims**

All other requests for payment of an Administrative Claim arising after the Petition Date up to and through the Effective Date, other than Professional Fee Claims, must be filed with the Court and served on counsel for the Plan Proponents no later than the Administrative Claims Bar Date.  Unless the Liquidating Trustee or any other party in interest objects to an Administrative Claim by the Administrative Claims Objection Deadline, such Administrative Claim shall be deemed allowed in the amount requested.  In the event that the Liquidating Trustee or any other party in interest objects to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim.

# XI.

## EFFECT OF PLAN CONFIRMATION

**A.      Binding Effect**

This Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims and Interests, and their respective successors and assigns, including, but not limited to, the Liquidating Trust and the Liquidating Trustee.

**B.      Discharge of the Debtors**

Pursuant to Bankruptcy Code section 1141(d)(3), Confirmation will not discharge Claims against the Debtors; provided, however, that no Claimholder or Equity Interest Holder may, on account of such Claim or Equity Interest, seek or receive any payment or other distribution from, or seek recourse against, any Debtor, the Liquidating Trust, the Liquidating Trustee, and/or their respective successors, assigns and/or property, except as expressly provided in this Plan.

**C.      Releases by the Debtors**

**1.      Professionals and Creditors' Committee**

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors (in their individual capacities and as debtors and debtors in possession) will be deemed to release forever, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities (other than the rights of the Debtors to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered hereunder, and liabilities arising after the Effective Date in the ordinary course of business) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or part on any act omission, transaction, event, or other occurrences taking place on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Debtors, the Chapter 11 Cases, the negotiation and filing of the Plan, the Disclosure Statement or any prior plans of reorganization, the filing of the Chapter 11 Cases, the pursuit of confirmation of the Plan or any prior plans of reorganization, the consummation**

of the Plan, the administration of the Plan, or the property to be liquidated and/or distributed under the Plan, and that could have been asserted by or on behalf of the Debtors or their Estates, including pursuant to principles of substantive consolidation, piercing the corporate veil, alter ego, domination, constructive trust and similar principles of state or federal creditors' rights laws, in any such case, against the Released Parties except Avoidance Actions or objections to Proofs of Claims filed by any Released Parties.

      2.      **Debtor Released Parties**

      Pursuant to section 1123(b)(3) of the Bankruptcy Code, effective as of the Effective Date, the Debtors, in their individual capacity and as debtors-in possession, for and on behalf of their Estates, shall release and forever unconditionally release all the Debtors' present or former, officers, directors, employees, attorneys, financial advisors, representatives or agents ("Debtor Released Parties") for and from any and all  Claims or Rights contingent or existing as of the Effective Date in any manner arising from, based on or relating to, in whole or in part, the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or interest that is treated in the Plan, the business or contractual arrangements between any Debtor or any Debtor Released Party, the restructuring of Claims and interests prior to or in the Chapter 11 Cases, or any act, omission, occurrence or event in any manner related to any such Claims, interest, or the Chapter 11 Case except for Avoidance Actions or objections to Proof of Claims filed by any of the Debtor Released Parties.

      No provision of this Plan or of the Confirmation Order, including without limitation, any release or exculpation provision, shall modify, release or otherwise limit the liability of any person not specifically released hereunder, including without limitation, any person that is a co-obligor or joint tortfeasor of a Debtor Released Party or that otherwise is liable under theories of vicarious or other derivative liability.

      After the Effective Date, the Liquidating Trustee and the Liquidating Trust shall be bound, to the same extent the Debtor is bound, by all of the releases set forth above.

**D.    Release By Holders of Claims and Equity Interests**

On the Effective Date (a) each Person that votes to accept this Plan or any Person who fails to vote on the Plan, and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, all holders of Claims and Equity Interests, in consideration for the obligations of the Liquidating Trust and the Liquidating Trustee under the Plan and the Cash and other consideration to be delivered in connection with the Plan and the Liquidating Trust, each entity (other than a Debtor) that has held, holds or may hold a Claim or Equity Interest, as applicable, (each, a "Release Obligor") shall have conclusively, absolutely, unconditionally, irrevocably and forever, released each Debtor Released Party from any Claim or Cause of Action (except Avoidance Actions) existing as of the Effective Date arising from, based on or relating to, in whole or in part, the subject matter of, or the transaction or event giving rise to, the Claim or Equity Interest of such Release Obligor, and any act, omission, occurrence or event in any manner related to such subject matter, transaction or obligation and any act, omission, occurrence, representation or failure to act that occurred prior to the Petition Date, including the decision to file and the preparation and filing the Chapter 11 cases and the timing of the commencement of the Chapter 11 Cases.

Notwithstanding the foregoing, however, this Section shall not release any Debtor Released Party from any Claims or Causes of Action existing as of the Effective Date, based on (i) the Internal Revenue Code or other domestic state, city or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city or municipality, (iii) any criminal laws of the United States or any domestic state, city or municipality, (iv) Sections 1104-1109 and 1342(d) of the Employee Retirement Income Security Act of 1974, as amended, (v) any Claim previously asserted or hereinafter asserted that is covered by an existing policy of insurance, (vi) any Claim or Cause of Action expressly reserved in the Plan or (vii) a Debtor Released Party's acts of gross negligence or willful misconduct.

### E.    Injunction

Except as otherwise provided in the Plan, the Confirmation Order shall provide, among other things, that **from and after the Effective Date all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtors are permanently enjoined from taking any of the following actions against the Estate(s), the Liquidating Trust, the Liquidating Trustee, Gibraltar, or any of their property on account of any such Claims or Equity Interests: (A) commencing or continuing, in any manner or in any place, any action or other proceeding; (B) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting, or enforcing any lien or encumbrance; (D) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors; (E) commencing or continuing, in any manner or in any place, any action or other proceeding (including, without limitation, any "direct action" under the laws of any state) to obtain or claim entitlement to the proceeds of any policy of insurance issued by Gibraltar which cover Claims against the Debtors or to determine if a Claim is covered by one or more policies of insurance issued by Gibraltar; and, (F) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of this Plan or the Confirmation Order.**

### F.    Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code section 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.  Upon the Effective Date, the injunction provided in Article XI.E shall apply.

### G.    Exculpation and Limitation of Liability

**Except as otherwise specifically provided in this Plan, the Debtors, the Liquidating Trustee, the Liquidating Trust, the Creditors' Committee, the members of the Creditors' Committee, solely in their capacity as such, and any of the foregoing parties'**

**respective present or former members, officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur any claim, action, proceeding, cause of action, Avoidance Action, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, right to payment, or Claim (as defined in Bankruptcy Code Section 101(5)), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured and whether asserted or assertable directly or derivatively, in law, equity, or otherwise to one another or to any Claimholder or Equity Interest Holder, or any other party in interest, or any of their respective agents, employees, representatives, advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission originating or occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Debtors, the Chapter 11 Cases, the negotiation and filing of the Plan, the Disclosure Statement or any prior plans of reorganization, the filing of the Chapter 11 Cases, the pursuit of confirmation of the Plan or any prior plans of reorganization, the consummation of the Plan, the administration of the Plan, or the property to be liquidated and/or distributed under the Plan except for their willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided however, that the foregoing shall not be deemed to exculpate or release any of the parties from Avoidance Actions or objections to Proofs of Claims that the Debtors may hold against such parties.**

**H.    Indemnification Obligations**

Except as otherwise provided in this Plan or any contract, instrument, release, or other agreement or document entered into in connection with this Plan, any and all indemnification obligations that the Debtors have pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document or any other document, or applicable law shall be rejected as of the Effective Date, to the extent executory.

I.    **Dissolution of the Creditors' Committee**

Effective on the Effective Date, the Creditors' Committee shall have no further powers or duties and shall be dissolved for all purposes; provided, however, that the Creditors' Committee and the Professionals employed by the Creditors' Committee shall be entitled to reasonable compensation and reimbursement of actual, necessary expenses for post-Effective Date activities, including the preparation, filing, and prosecution of Final Fee Applications, upon the submission of invoices to the Liquidating Trust.  Any time or expenses incurred in the preparation, filing, and prosecution of Final Fee Applications shall be disclosed by each Professional in its Final Fee Application and shall be subject to approval of the Bankruptcy Court.

## XII.

## RETENTION OF JURISDICTION

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, substantial consummation of the Plan and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(1)    Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the allowance or priority of Claims or Equity Interests and the determination of requests for the payment of claims entitled to priority under Bankruptcy Code section 507(a)(1), including compensation of any reimbursement of expenses of parties entitled thereto;

(2)    Hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103, and 1129(a)(4); provided, however, that from and after the Effective Date, the payment of the fees and expenses of the retained Professionals of the Liquidating Trust and/or the Liquidating Trustee shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(3)    Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(4)    Effectuate performance of and payments under the provisions of the Plan;

(5)    Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under or related to the Chapter 11 Cases, the Plan or the Liquidating Trust Agreement;

(6)    Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(7)    Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

(8)    Consider any modifications of the Plan, cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(9)    Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(10)    Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

(11)    Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(12)    Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

(13)    Except as otherwise limited herein, recover all Assets of the Debtors and property of the Estates, wherever located;

(14)    Hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

(15)    Hear and determine all matters related to the property of the Estates from and after the Confirmation Date;

(16)    Hear and determine the Causes of Action;

(17)    Hear and determine all disputes involving the existence, nature or scope of the injunctions, indemnification, exculpation and releases granted pursuant to this Plan;

(18)    Hear and determine all matters related to (i) the property of the Estates from and after the Confirmation Date, (ii) the winding up of the Debtors' affairs, and (iii) the activities of the Liquidating Trust and/or the Liquidating Trustee, including (A) challenges to or approvals of the Liquidating Trustee's activities, (B) resignation, incapacity or removal of the Liquidating Trustee and successor Liquidating Trustees, (C) reporting by, termination of and

accounting by the Liquidating Trustee, and (D) release of the Liquidating Trustee from its duties;

(19)    Hear and determine disputes with respect to compensation of the Liquidating Trustee and the Liquidating Trust Professionals;

(20)    Hear and determine all disputes involving the existence, nature and/or scope of the injunctions and releases provided herein, including any dispute relating to any liability arising out of any termination of employment or the termination of any employee or retiree benefit provision, regardless of whether such termination occurred prior to or after the Effective Date;

(21)    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(22)    Hear and determine the WARN and Severance Class Settlement Agreement and any disputes or issues relating thereto;

(23)    Enforce all orders previously entered by the Bankruptcy Court;

(24)    Dismiss any and/or all of the Chapter 11 Cases; and

(25)    Enter a final decree closing the Chapter 11 Cases.

## XIII.

## MISCELLANEOUS PROVISIONS

### A.    Modifications and Amendments

The Plan Proponents together may alter, amend or modify the Plan or any Exhibits thereto under Bankruptcy Code section 1127(a) at any time prior to the Confirmation Date, subject to the reasonable approval of Whippoorwill with respect to provisions that impact its rights hereunder.  After the Confirmation Date and prior to substantial consummation of the Plan as defined in Bankruptcy Code section 1101(2), the Plan Proponents may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

**B.     Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, then the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and interpret such terms or provisions to make them valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such terms or provisions shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**C.     Successors and Assigns**

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of that Person.

**D.     Payment of Statutory Fees**

All fees then due and payable pursuant to 28 U.S.C. § 1930, as determined by the Court at the Confirmation Hearing, shall be paid on or before the Effective Date by the Debtors.  All such fees that become due and payable thereafter by a Debtor shall be paid by the Liquidating Trustee.  The Liquidating Trustee shall pay quarterly fees to the U.S. Trustee until the Chapter 11 Cases are closed or converted and/or the entry of final decrees.  The Debtors, through the Liquidating Trust, shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformance with the U.S. Trustee Guidelines.  The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which shall be paid by the Debtors and/or the Liquidating Trustee.

**E.       Revocation, Withdrawal or Non-Consummation**

The Plan Proponents reserve the right to collectively revoke or withdraw the Plan as to any or all of the Debtors prior to the Confirmation Date and to file subsequent plans.  If the Plan Proponents revoke or withdraw the Plan as to any or all of the Debtors, or if Confirmation or consummation of the Plan as to any or all of the Debtors does not occur, then, with respect to such Debtors, (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtors or any other Person, (ii) prejudice in any manner the rights of such Debtors or any other Person, or (iii) constitute an admission of any sort by such Debtors or any other Person.

**F.       Service of Documents**

Any notice, request or demand required or permitted to be made or provided to or upon a Debtor, the Creditors' Committee, and/or the Liquidating Trustee under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission, (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, and (d) addressed as follows:

***The Debtors:***

If by overnight or hand delivery:

Fleetwood
c/o Chief Financial Officer
Fleetwood Enterprises, Inc.
3125 Myers Street
Riverside, CA 92503

with a copy to:

Craig H. Millet
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive
Irvine, California  92612-4412

*The Creditors' Committee:*

Hamid R. Rafatjoo
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California  90067-4100

*The Liquidating Trust/The Liquidating Trustee:*

SltnTrst LLC
9952 S. Santa Monica Blvd.
2nd Floor
Beverly Hills, CA 90212

**G.      Plan Supplement(s)**

           Exhibits to the Plan not attached hereto shall be filed in one or more Plan

Supplements by the Exhibit Filing Date.  Any Plan Supplement (and amendments thereto) filed by

the Plan Proponents shall be deemed an integral part of the Plan and shall be incorporated by

reference as if fully set forth herein.  Substantially contemporaneously with their filing, the Plan

Supplements may be viewed at the office of the clerk of the Bankruptcy Court or its designee during

normal business hours, by visiting the Court's website at www.caeb.uscourts.gov (PACER account

required) or by visiting www.kccllc.net/fleetwood.  Holders of Claims and/or Equity Interests may

obtain a copy of any Plan Supplements upon reasonable written request to the Claims Agent.  The

documents contained in any Plan Supplements shall be approved by the Bankruptcy Court pursuant

to the Confirmation Order.

**H.      Plan Exhibits**

           Any and all Plan Exhibits, or other lists or schedules not filed with the Plan shall be

filed with the Clerk of the Bankruptcy Court on or before the Exhibit Filing Date.  Upon such filing,

such documents may be inspected in the office of the Clerk of the Bankruptcy Court during normal

court hours.  Holders of Claims or Equity Interests may obtain a copy of any such document upon

written request to the Debtors in accordance with Article XIII of the Plan.

**I.      Tax Reporting And Compliance**

      The Liquidating Trustee is hereby authorized, on behalf of each of the Debtors, to request an expedited determination under Bankruptcy Code section 505(b) of the tax liability of the Debtors for all taxable periods ending after the Petition Date through and including the Effective Date.

**J.      Filing Of Additional Documents**

      On or before substantial consummation of this Plan, the Debtors shall file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

1  Dated: Riverside, California
        March **3**, 2010

2

3                                          FLEETWOOD ENTERPRISES, INC., et al.
                                           (for itself and on behalf of the Debtors)

4

5                                          By: _____
                                               Name:   Andrew M. Griffiths
                                               Title:  Chief Financial Officer

6

7  Dated: March ___, 2010

8

9                                          OFFICIAL COMMITTEE OF CREDITORS HOLDING
                                           UNSECURED CLAIMS

10

11                                         By: _____
                                               Name:   Peter Kravitz, Giant RV
                                               Title:  Co-Chair of the Official Committee of

12                                                     Creditors Holding Unsecured Claims

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Dated: Riverside, California
           March ___, 2010

2

3                           FLEETWOOD ENTERPRISES, INC., et al.
                          (for itself and on behalf of the Debtors)

4                           By: _____

5                                Name:   Andrew M. Griffiths
                               Title:    Chief Financial Officer

6

7    Dated: March _2_, 2010

8

9                        OFFICIAL COMMITTEE OF CREDITORS HOLDING
                       UNSECURED CLAIMS

10

11                        By: _____
                           Name:   Peter Kravitz, Giant RV

12                            Title:    Co-Chair of the Official Committee of
                                  Creditors Holding Unsecured Claims

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit A**

**Schedule of Subsidiary Debtors**

## SCHEDULE OF SUBSIDIARY DEBTORS

1.    Fleetwood Holdings, Inc.;
2.    Fleetwood Retail Corp.;
3.    Fleetwood Homes Investment, Inc.;
4.    Fleetwood General Partner of Texas, Inc.;
5.    Fleetwood Homes of Texas, L.P.;
6.    Trendsetter Homes, Inc.;
7.    Fleetwood Homes of Pennsylvania, Inc.;
8.    Fleetwood Homes of Arizona, Inc.;
9.    Fleetwood Homes of Tennessee, Inc.;
10.   Fleetwood Homes of California, Inc.;
11.   Fleetwood Homes of Virginia, Inc.;
12.   Fleetwood Homes of Florida, Inc.;
13.   Fleetwood Homes of Washington, Inc.;
14.   Fleetwood Homes of Georgia, Inc.;
15.   Fleetwood Motor Homes of California, Inc.;
16.   Fleetwood Homes of Idaho, Inc.;
17.   Fleetwood Motor Homes of Indiana, Inc.;
18.   Fleetwood Homes of Indiana, Inc.;
19.   Fleetwood Motor Homes of Pennsylvania, Inc.;
20.   Fleetwood Homes of Kentucky, Inc.;
21.   Fleetwood Travel Trailers of California, Inc.;
22.   Fleetwood Homes of North Carolina, Inc.;
23.   Fleetwood Travel Trailers of Indiana, Inc.;
24.   Fleetwood Homes of Oregon, Inc.;
25.   Fleetwood Travel Trailers of Kentucky, Inc.;
26.   Fleetwood Travel Trailers of Maryland, Inc.;
27.   Fleetwood Travel Trailers of Ohio, Inc.;
28.   Fleetwood Travel Trailers of Oregon, Inc.;
29.   Fleetwood Travel Trailers of Texas, Inc.;
30.   Gold Shield, Inc.;
31.   Gold Shield of Indiana, Inc.;
32.   Hauser Lake Lumber Operations, Inc.;
33.   Fleetwood Home Centers of Nevada, Inc.;
34.   Fleetwood Home Centers of Texas, Inc.;
35.   Fleetwood Retail Corp. of Arizona;
36.   Fleetwood Retail Corp. of Arkansas;
37.   Fleetwood Retail Corp. of California;
38.   Fleetwood Retail Corp. of Florida;
39.   Fleetwood Retail Corp. of Georgia;
40.   Fleetwood Retail Corp. of Illinois;
41.   Fleetwood Retail Corp. of South Carolina;
42.   Fleetwood Retail Corp. of North Carolina;
43.   Fleetwood Retail Corp. of Tennessee;
44.   Fleetwood Retail Corp. of Virginia;
45.   Fleetwood Retail Corp. of West Virginia;
46.   Fleetwood Capital Trust;
47.   Fleetwood International Inc;
48.   Fleetwood Homes of Mississippi, Inc.;  and
49.   Continental Lumber Products, Inc.

**Exhibit B**

**Liquidating Trust Agreement**

**(To Be Filed On Or Before The Exhibit Filing Date)**

**Exhibit C**

**List of Executory Contracts to Be Assumed**

**(To Be Filed On Or Before The Exhibit Filing Date)**

**Exhibit D**

**Non-Exclusive List of Causes of Action**

**(To Be Filed On Or Before The Exhibit Filing Date)**

**Exhibit E**
**IT Agreements**


**(To Be Filed On Or Before The Exhibit Filing Date)**