

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| In re: | Case No. 09-14254-MJ |
| Fleetwood Enterprises, Inc., et al., | Chapter 11 |
| Debtors. | [Jointly Administered] |
| | **OPINION ON MOTION FOR TURNOVER OF COMMITMENT FEE** |
| | Date: December 16, 2009 |

The Official Committee of Creditors Holding Unsecured Claims of Fleetwood Enterprises, Inc. and its affiliated debtors and debtors-in-possession filed a motion seeking turnover under § 542[1] of a $2.4 million commitment fee that debtors paid to Bank of America, National Association ("BofA") in connection with a court-approved postpetition debtor-in-possession ("DIP") interim financing order.

For the reasons set forth below, the court DENIES the Committee's motion.

---

[1] Unless otherwise indicated, all chapter, section and rule references below are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

## I.   FACTS AND PROCEDURAL BACKGROUND

Debtors filed their voluntary chapter 11 petitions on March 10, 2009 and continue to operate their businesses as debtors-in-possession under §§ 1107 and 1108.  When debtors sought protection under chapter 11, their financial picture was bleak. As a consequence, debtors determined the best option for reorganization was to sell various divisions.  (Decl. of Andrew M. Griffiths in Support of First Day Pleadings ¶¶ 53, 57 Dkt. No. 10.)  In the meantime, they needed funds to continue operations and maintain the value of their businesses.

By way of first day motions filed on March 12, 2009, debtors sought the interim use of cash collateral subject to the security of the lenders represented in court by BofA.  After a hearing on March 13, 2009, an interim order for use of cash collateral was entered by stipulation on that date, scheduling a final hearing on March 26, 2009.  The use of cash collateral under the interim order expired on March 29, 2009.  In the meantime, as represented by debtors to the court on March 13, 2009, debtors sought postpetition financing with BofA and any other viable lenders.

Ultimately, BofA was the only lender willing to lend to debtors on terms which were economically viable.[2]  BofA agreed

---

[2] BofA was acting as the administrative agent for a syndicate of lenders.

-2-

to lend debtors an amount not to exceed $80 million, including a $65 million sub-limit for existing letters of credit; to do so, BofA required the payment of numerous fees and expenses under the financing agreement, including the $2.4 million commitment fee.

Instead of seeking final approval of use of cash collateral as scheduled on March 26, 2009, on March 24, 2009 debtors filed an Emergency Motion for Entry of Interim and Final Orders (1) Authorizing Debtors to Obtain Postpetition Secured Financing, (2) Authorizing the Use of Cash Collateral, (3) Granting Liens and SuperPriority Claims, (4) Modifying the Automatic Stay and (5) Setting a Final Hearing. As part of the motion, debtors requested the court to enter an interim order authorizing it to borrow from BofA as a postpetition lender.

The motion and supporting evidence showed that debtors had an urgent need for postpetition financing in order to continue their operations and preserve the value of their businesses. Debtors proposed to obtain the financing by providing superpriority claims, security interests and liens to BofA under § 364(c)(1), (2), and (3) and § 364(d). Due to debtors' immediate need for access to cash collateral and other funds, the court held expedited hearings on March 26, 27 and 31, 2009.

At the March 26, 2009 hearing, numerous parties objected

-3-

orally to the proposed financing, including the Committee.[3]   The
Committee alleged, among other things, that debtors did not need
to borrow new money until sometime in April.  According to the
Committee, the urgent nature of the motion was due to covenants
in the existing cash collateral order — debtors would be in
default if the financing was not approved on an interim basis.
(Tr. 27:1-10, March 26, 2009.)  The Committee further objected
to the commitment fee, referring to it as "outrageous".  (Id.
28:22.)  Due to these issues and others, and the abundance of
pleadings and documents filed within a very short time, the
Committee suggested the interim financing order provide a
blanket reservation of rights with respect to the issues that
were raised.  (Id. at 17-20.)  BofA refused the request.

At the court's urging, further negotiations regarding a
broad reservation of rights ensued, but the parties were unable
to resolve all of the issues.  The parties appeared before the
court for a second hearing on March 27, 2009.  BofA's counsel
confirmed that the commitment fee, along with certain other
provisions pertaining to new security if advances were made, was
a non-negotiable point and that the lenders required payment of
the fee prior to any lending.  BofA explained that the lenders'
view was that they were making the commitment now, they were

---

[3] Deutsche Bank Trust Company Americas and Whippoorwill
Associates filed written objections which raised issues not
pertinent to this motion.

agreeing that their capital would be set aside for DIP financing loans and as a result they should be entitled to the commitment fee when the commitment was actually made (as opposed to waiting until the final order). (Tr. 7:19-25, March 27, 2009.) Further, BofA was unwilling to move forward without a full comprehension of its rights and obligations during the interim period.

The Committee again objected to the fee, commenting that it was "obscenely high" for what it perceived to be a $20 million credit facility. (Id. 13:17.) Debtors reiterated that the "market was tough" and the fee lowered their interest rate. (Id. 24:15-17.) Given the reduced interest rate and the amount of the loan, the court observed that the amount of the commitment fee was not necessarily unreasonable. (Id. 35:16; 36:5-12.)

On March 31, 2009 the court held a third hearing at which the Committee again raised its concern about the fee.[4] (Tr. 5:9-22, March 31, 2009.) After hearing oral argument, the court approved the heavily negotiated terms of the DIP loan and entered an interim order on April 1, 2009. The interim order scheduled a final hearing for April 21, 2009, which was rescheduled for April 30, 2009 at debtors' request.

---

[4] A hastily negotiated interim agreement extended debtors' use of cash collateral to March 31, 2009.

-5-

On April 1, 2009 the commitment fee was charged against debtors' DIP loan account.[5]  (Decl. of Todd R. Eggertsen, November 18, 2009, 1:24-25.)  The Committee did not appeal the interim order.[6]

Less than twenty-four hours before the final hearing, debtors informed BofA that they were withdrawing their request to proceed with the DIP loans.  Debtors, realizing that they could survive on the use of cash collateral alone, filed a new motion for use of cash collateral and thereafter negotiated a series of interim agreements to continue using cash collateral, which culminated in a Final Order Extending Authorization to Use Cash Collateral entered on September 10, 2009, extending the use to January 31, 2010.[7]

On November 2, 2009 the Committee filed its Motion for Turnover of Property of the Estate Pursuant to 11 U.S.C. § 542.[8]

---

[5] The Committee asserts that although the underlying credit agreement authorized BofA to charge the commitment fee to debtors' loan account, debtors instead paid the fee from their operating cash. (Notice of Motion and Motion for Turnover of Property of the Estate Pursuant to 11 U.S.C. § 542 filed November 2, 2009, 4:14-16).  The Committee contends that the operating cash constituted property of debtors' estate.  (Id.).  Given the court's conclusion, it is unnecessary to resolve this factual inconsistency.

[6] Whether the order was "final" and therefore automatically appealable is discussed below.

[7] This order has since been extended by agreement.

[8] The Committee obtained standing to file the turnover motion by a court-approved stipulation with debtors entered on

After hearing oral argument on December 16, 2009, the court took
the matter under submission.

## II.   JURISDICTION

This court has jurisdiction to determine this matter
pursuant to 28 U.S.C. § § 1334 and 157(b)(1) and General Order
No. 329 of the United States District Court for the Central
District of California.  This is a core proceeding under
28 U.S.C. § 157(b)(2)(A) and (E).

## III.   ISSUES

A.   Whether the commitment fee constitutes an
administrative expense claim under § 503(b)(1)(A) subject to the
requirements that it directly and substantially benefit debtors'
estates;

B.   Whether the commitment fee is entitled to protection
under the safe harbor of § 364(e); and

C.   Whether modification of the interim order is
appropriate under either Fed. R. Civ. P. 60(b)(6), <u>incorporated</u>
<u>by</u> Rule 9024 or § 105(a).

## IV.   DISCUSSION

Summarized, the Committee's arguments are:  (1) turnover is
appropriate because the commitment fee did not benefit debtors'

August 10, 2009.  The court and parties agreed that the Committee
would seek turnover of the commitment fee by motion and,
therefore, no adversary proceeding was necessary.

-7-

estates or otherwise meet the requirements as an actual or necessary expense under § 503(b)(1)(A); (2) the court has the inherent equitable power to reexamine its prior ruling because the interim order is interlocutory and the equities weigh in favor of the unsecured creditors; or, alternatively, (3) if the interim order is a final order, Fed. R. Civ. P. 60(b)(6) provides a basis for this court to grant the Committee relief.

On the other hand, BofA asserts that turnover of the fee is precluded by the explicit language of the interim order and § 364(e). BofA contends it is too late for any relief regarding the fee since the Committee failed to appeal this court's interim order within ten days from the entry of the order. Finally, BofA argues that even if the court has discretion to reconsider the interim order with respect to the commitment fee provision, the evidence shows that debtors received a direct and substantial benefit by having access to the funds during the interim period.

The resolution of this matter turns on the statutory construction of § 364(c)(1) and (e) and the unambiguous terms of the interim order.

**A. The Plain Language Of § 364(c)(1) Does Not Incorporate The Requirements for Allowance of Administrative Expenses Under § 503(b)(1)(A)**

Initially, the court observes that the issue whether BofA could establish an administrative expense priority claim for the

-8-

1  commitment fee under § 503(b)(1)(A) was not raised or addressed

2  during the three March 2009 hearings which culminated in the

3  interim order.  Now, after the fact, the Committee argues that

4  the fee did not benefit debtors' estates or otherwise meet the

5  requirements as an actual or necessary expense under

6  § 503(b)(1)(A).

7

8  The interim order approving the financing agreement between

9  BofA and debtors specifically provides that the fees incurred in

10  connection with the DIP loan, including the commitment fee,

11  would be paid on a superpriority basis under § 364(c)(1).  There

12  is no reference to §503(b) in the order.

13  Paragraph 5 of the interim financing order provides in

14  relevant part:

15  [A]ny and all fees paid or required to be paid in
    connection with the DIP Loan Documents . . . are
16  hereby authorized and shall be paid . . . each with
    the same priority as the Postpetition Obligations and
17  without further notice to or order of the Court
18  . . . .

19  Paragraph 9(c), entitled "<u>Superpriority Claims</u>" provides in

20  relevant part:

21  All Postpetition Obligations, subject only to the
    Carve-Out, hereby constitute under Section 364(c)(1)
22  <u>allowed superpriority administrative expense</u>
    <u>claims</u> . . . . (emphasis added).
23

24  The Bankruptcy Code does not use the term "superpriority",

25  but it is generally understood as a short-hand term "to

26  articulate the priority that § 364(c)(1) confers over

27

28  -9-

administrative expense claims."   <u>Matter of Mayco Plastics, Inc.</u>,

379 B.R. 691, 701-02 (Bankr. E.D. Mich. 2008).  In fact, not all

parties use the same terms in this area of the law.  The court's

cursory examination of case law in this area reveals that courts

and practitioners use terms to describe § 364(c)(1) claims as

those with "super-super priority", "superpriority status" or

"administrative priority claims" or, like debtors did here,

"superpriority administrative expense claims."

        However, this court is not bound by the terminology of the

parties and must follow the plain language of the statute.

<u>United States v. Ron Pair Enters., Inc.</u>, 489 U.S. 235, 241-42

(1989)(if the words of the statute are clear, the court must

apply the statute by its terms unless to do so would lead to

absurd results).  Besides the plain language, the court also

examines "the specific context in which that language is used,

and the broader context of the statute as a whole."   <u>Hough v.</u>

<u>Fry (In re Hough)</u>, 239 B.R. 412, 414 (9th Cir. BAP 1999)

(citation omitted).

        Section 364 provides in relevant part:

        (b) The court, after notice and a hearing, may
        authorize the trustee to obtain unsecured credit or to
        incur unsecured debt . . . , allowable under section
        503(b)(1) of this title as an administrative expense.

        (c) If the trustee is unable to obtain unsecured
        credit allowable under § 503(b)(1) of this title as an
        administrative expense, the court, after notice and a
        hearing, may authorize the obtaining of credit or the
        incurring of debt —

-10-

         (1) with priority over any or all administrative
             expenses of the kind specified in section 503(b) or 507(b)
             of this title;

         . . . .

    The language of § 364(c)(1) is clear enough — a debtor's

authority to obtain unsecured credit under that subsection is

expressly premised on its inability to obtain credit under

§ 503(b)(1), i.e. as an allowable administrative expense under

§ 364(b).   There is no other legislative requirement under the

statute.

    Here, debtors were unable to obtain unsecured credit from

BofA by giving it an allowable administrative expense under

§ 503(b)(1).   In fact, nowhere does their motion or the interim

order mention § 364(b) or obtaining unsecured administrative

priority debt.   Rather, BofA required the greater protection

under § 364(c)(1) of a priority claim "over any or all

administrative expenses of the kind specified in section 503(b)

or 507(b) of this title."

    Notably, the plain language of the statute does not say

that to establish priority "over any or all administrative

expenses" under § 364(c)(1), lenders must also independently

prove their claim qualifies as an allowable administrative

expense under § 503(b)(1)(A).   Cf. Mark IV Props., Inc. v. Club

Dev. & Mgmt. Corp. (In re Club Dev. & Mgmt. Corp.), 27 B.R. 610,

611-12 (9th Cir. BAP 1982)(holding that an order granted

1  pursuant to § 364(b) must be supported by a finding that the

2  debt was an actual, necessary cost and expense of preserving the

3  estate).  Such a result would render subsection (b) superfluous

4  and put additional burdens on lenders who do not agree to

5  administrative expense priority but instead require priority

6  over those very types of claims.

7
        [A] debt authorized under § 364(c)(1) is not just a
8       kind of an administrative expense under § 503(b).  It
        is by its nature different, indeed superior, in the
9       sense that it must be paid with 'priority' over all
        administrative expenses.  To state it another way, the
10      statutory requirement that a § 364(c)(1) claim must be
        paid before all administrative expenses are paid
11      precludes that § 364(c)(1) claim from also,
        simultaneously, being itself a kind or form of an
12      administrative expense allowable under § 503(b)(1) of
        the Bankruptcy Code.
13

14
   Mayco Plastics, 379 B.R. at 701-02.  Although Mayco Plastics is
15
   factually distinguishable from this matter, the court finds the
16
   court's statutory analysis and rationale persuasive under these
17
   circumstances.[9]
18

19      In short, the court declines to read words or requirements

20  into the statute that are not there.  The priority of a claim

21  under § 364(c)(1) is established under the statute when a court

22  authorizes such priority due to a debtor's inability to obtain

23  unsecured credit on an administrative expense priority basis

24

25      [9] In Mayco Plastics, the issue was whether a postpetition
26  lender with a priority claim under § 364(c)(1) also had standing
    as an administrative expense claimant for purposes of objecting
27  to the debtor's plan under § 1129(a)(9).

28                              -12-

under § 364(a) or (b).  Application of the statute by its terms

does not lead to absurd results.  Accordingly, the court is not

required to find the fee was a necessary expense which actually

benefitted the estate.  Plainly stated, the Committee's

administrative expense argument was a time-consuming foray under

the wrong legal standard and does not support its turnover

motion.

**B.    The Commitment Fee is Protected Under § 364(e)**

BofA argues that the commitment fee is protected under

§ 364(e) because the interim order, by its very terms,

incorporates the protection offered under the statute.   (Interim

Order ¶ 26.)   Section 364(e) provides:

> The reversal or modification on appeal of an
> authorization under this section to obtain credit or
> incur debt, or of a grant under this section of a
> priority or a lien, does not affect the validity of
> any debt so incurred, or any priority or lien so
> granted, to an entity that extended such credit in
> good faith, whether or not such entity knew of the
> pendency of the appeal, unless such authorization and
> the incurring of such debt, or the granting of such
> priority or lien, were stayed pending appeal.

It is well-settled that the overall policy behind § 364 is to

encourage lenders to provide financing to debtors by offering

them incentives for their risk taking.  Burchinal v. Cent. Wash.

Bank (In re Adams Apple, Inc.), 829 F.2d 1484, 1488 (9th Cir.

1987).

The Committee argues that the safe harbor of § 364(e) is

-13-

applicable only to appeals. This argument arises from the words of the statute, but that limitation in the context of this motion is refuted by two circumstances. First, the policy behind §364(e) strongly implicates its applicability when the order in question is challenged in the bankruptcy court after the lender has relied on the order's protections. Second, the incorporation of the language of §364(e) into the interim order has the effect of making that protection part of the relief ordered by the court such that it applies pre-appeal.

Lenders who deal with debtors and request and receive court approval for interim financing arrangements rely on provisions contained in interim orders just as they would rely on provisions contained in a final, appealable order. <u>Adams Apple</u>, 829 F.2d at 1489 (noting that the policies behind § 364(e) indicate that a claim is moot as soon as a lender has relied on the authorization). Accordingly, lenders commonly seek, and obtain, § 364(e) protection for transactions in court-approved interim orders. Under these circumstances, to allow an interim financing order which is non-modifiable on its face to be modified subsequent to its issuance is inconsistent with the protection given to BofA as a DIP lender under § 364(e). Put simply, § 364(e) would offer little incentive to lenders if its protection was limited only to appeals since the bankruptcy court's modification of its own orders during the interim period

-14-

1   "poses the same risks as does reversal on appeal." <u>See</u> <u>Kham &</u>

2   <u>Nate's Shoes No. 2, Inc. v. First Bank of Whiting (In re Kham &</u>

3   <u>Nate's Shoes No. 2, Inc.)</u>, 908 F.2d 1351, 1355 (7th Cir. 1990);

4   see also, <u>Vafer Inv. Group, LLC v. Case (In re Visionaire</u>

5   <u>Corp.)</u>, 299 B.R. 530, 535 (8th Cir. BAP 2003)(finding that it

6   would an abuse of discretion if the bankruptcy court modified

7   interim financing order after lender made advances during

8   interim period but noting that lender was not protected for

9   advances once interim period expired without final order).

10

11      The court concludes that the fee falls squarely within the

12  meaning of § 364(e).  In this circuit, the law is settled that

13  § 364(e) "broadly protects any requirement or obligation that

14  was part of a postpetition creditor's agreement to finance . . .

15  and therefore any agreements or conditions necessary to obtain

16  that credit were protected by § 364(e)." <u>Weinstein v. Gill (In</u>

17  <u>re Cooper Commons, LLP</u>, 430 F.3d 1215, 1219 (9th Cir. 2005); <u>see</u>

18  <u>Adams Apple</u>, 829 F.2d 1484.

19

20      In <u>Adams Apple</u>, the Ninth Circuit provided guidance for

21  determining whether a particular provision falls within the

22  meaning of § 364(e).  Creditors appealed the district court's

23  affirmance of the bankruptcy court's authorization of a

24  financing order that contained a cross-collateralization clause.

25  Before reaching the merits of the cross-collateralization issue,

26  the Ninth Circuit considered whether the appeal was statutorily

27

28                                -15-

1   moot under § 364(e) by examining the plain language of the

2   statute and the policy behind it.  The court found that reversal

3   or modification of the cross-collateralization clause would

4   affect the "validity of the debt" within the meaning of

5   § 364(e).  Moreover, the court construed the statute to align

6   with congressional intent, viz that it was "designed to overcome

7   a good faith lender's reluctance to extend financing in a

8   bankruptcy context by permitting reliance on a bankruptcy

9   judge's authorization."  <u>Adams Apple</u>, 829 B.R. at 1488.

10

11      In including cross-collateralization clauses within the

12   protection of § 364(e), the court recognized that a lender's

13   reliance on a court's order approving such clauses in connection

14   with postpetition DIP financing was paramount.  Thus, <u>Adams</u>

15   <u>Apple</u> teaches that a lender is entitled as a matter of law to

16   rely on a bankruptcy court's financing orders, unless shown to

17   act in bad faith.

18

19      The court concludes that the analysis and rationale set

20   forth in <u>Adams Apple</u> applies with equal force to interim

21   financing orders.  The Committee seeks to undo a requirement and

22   precondition of the financing.  Here, the good faith of BofA is

23   not at issue.  Moreover, there can be little dispute about

24   BofA's reliance.  The evidence before the court showed that the

25   financing offered by BofA was the "only deal" debtors could

26   obtain and that the terms, including the up-front payment of the

27

28                                 -16-

commitment fee, were heavily negotiated. Undoubtedly, the fee was an integral part of the bargained-for consideration for BofA to provide the financing.

Accordingly, the court finds that ordering turnover of the commitment fee would affect the "priority so granted" within the meaning of § 364(e). Further, this case does not simply involve BofA's reluctance to extend financing, but its outright refusal, when queried by the court, to extend credit without an up-front payment of the commitment fee. In reality, there would be no financing unless the commitment fee was paid immediately and in conjunction with the interim order. Thus, the circumstances of this case offer a compelling reason to uphold the policy under § 364(e) which is to protect a lender by allowing it to rely on the court's authorization of bargained-for terms.

In addition to this policy consideration, the exact language in ¶ 26 of the interim order compels the prohibition on modification by the bankruptcy court:

Any stay, modification, reversal, or vacatur of this Interim Order shall not affect the validity of any Postpetition Obligations outstanding immediately prior to the effective time of such stay, modification or vacatur, or the validity or enforceability of any Lien, priority, right, privilege or benefit authorized hereby with respect to any such Postpetition Obligations.  Notwithstanding any such stay, modification or vacatur, any postpetition Obligations outstanding immediately prior to the effective time of such modification, stay or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the Postpetition Agent and the DIP Lenders shall be entitled to all of the rights,

-17-

privilege and benefits, including, without limitation,
the Liens and priorities granted herein, with respect
to all such Postpetition Obligations.

These sentences, standing alone, make no reference to an appeal

and their only purpose is to provide the anti-modification

protections in the bankruptcy court.

The Committee argues that there was no indication at the

hearings on the interim financing or in the interim order itself

that the court intended the commitment fee to be "earned on

receipt" or otherwise nonrefundable regardless of whether the

proposed DIP financing materialized for the benefit of the

estate.  However, this argument misses the mark because it is

not the court's intent that controls, but the agreement between

the parties.  At the hearing, BofA stated it was the lenders'

position that, under the contract, the commitment fee was earned

once they made the funds available.  See In re Arlington

Hospitality, Inc., 368 B.R. 702, 713 (Bankr. N.D. Ill.

2007)(noting that the court's role is to approve the agreement

presented and that it is the agreement, not the order approving

it, that is the contract).  Commitment fee provisions have been

enforced under the same theory advanced by BofA.  See The Matter

of Four Seasons Nursing Ctrs. of Am., Inc., 483 F.2d 599, 603

(10th Cir. 1973)(holding that commitment fee was fixed and fully

earned when loan commitment agreement was signed and fact debtor

did not borrow full amount was of no consequence).

-18-

1    The Committee also argues that § 364(e) protection should

2   not be afforded to postpetition lenders in the absence of

3   significant postpetition financing.[10]  (Reply Br. 7:13-25; 8:1-

4   3).   This argument is a red-herring because turnover of the

5   commitment fee involves a narrow issue which does not require

6   this court to decide whether a lender is protected under

7   § 364(e) as to money it did, or did not, disburse.  Further,

8   Adams Apple instructs the court to focus on the particular

9   provision at hand to determine whether it fits within the scope

10  of § 364(e).  Adams Apple, 829 F.2d at 1486, 1489 (finding

11  appeal moot even though post-petition lender advanced $450,000

12  of a $775,000 credit line).  Accordingly, the actual amount of

13  the financing extended before debtor decided not to proceed with

14  additional financing does not enter into the equation under

15  these circumstances.[11]

16
17    Additionally, there are no allegations that BofA was not

18  ready, willing and able to loan the amount of funds authorized

19  under the interim order.  Rather, through no fault of BofA,

20  debtors decided not to borrow past the interim period.  Simply

21

22  _____

23    [10] BofA contends that throughout the interim period, the
    lenders advanced funds under the terms of the DIP loan as
24  authorized by the interim order.  The Committee disputes this
    contention and asserts that the DIP lenders did not advance a
25  single dollar to debtors under the proposed DIP financing.

26    [11] It also is an immaterial argument, as the Committee bases
    its argument on the requirements of §503(b) administrative
27  priority, not required here as discussed above.

28                              -19-

1  put, BofA performed its part of the bargain and requiring it to

2  now turn over the fee runs afoul of § 364(e)'s policy of

3  protecting lenders who offer financing on terms authorized by

4  the bankruptcy court.[12]  Cf. In re The Korea Chosun Daily Times,

5  Inc., 337 B.R. 773, 778-81 (Bankr. E.D.N.Y. 2005)(finding that

6
7  debtor's failure to close postpetition loan that was approved by

8  court triggered lender's right to commitment fee and payment of

9  reasonable expenses when it was a term of the underlying

10  agreement and lender was not at fault).

11      In sum, the court holds that § 364(e) protects the

12  commitment fee.

13  **C.   Modification of the Interim Order is not Appropriate
         Under Fed. R. Civ. Proc. 60(b)(6) or § 105(a)**
14

15      The court now considers whether modification of the interim

16  order under Fed. R. Civ. Proc. 60(b)(6) or § 105(a) is

17  appropriate.

18      Fed. R. Civ. P. 60(b)(6) applies by its terms only to final

19  orders.[13]  Bankruptcy courts have taken a pragmatic approach to

20

21      [12] It goes without saying that § 364(e) would not protect
    BofA had it backed out of the financing.  Rather, BofA would not
22  have been entitled to keep the commitment fee under a contract
    analysis.  Arlington Hospitality, 368 B.R. at 720 (noting that
23  financing orders under § 364 approve financing agreements, but
    when it comes to enforcing those orders contractual principles
24  apply).

25      [13] At the December 16, 2009 hearing, the Committee asserted
26  for the first time that ¶ 18 of the September 10, 2009 cash
    collateral order stated that the parties agreed the interim order
27  was not final.  This assertion was incorrect and misleading.  The

28                              -20-

1   finality.  <u>Elliott v. Four Seasons Props. (In re Frontier</u>

2   <u>Props., Inc.)</u>, 979 F.2d 1358, 1363 (9th Cir. 1992).  "This

3   'pragmatic approach' to finality in bankruptcy focuses on

4   whether the decision appealed from 'effectively determined the

5   outcome of the case.'"  <u>Id.</u>  In <u>Frontier Properties</u>, the Ninth

6   Circuit held that a bankruptcy order is appealable where it 1)

7   resolves and seriously affects substantive rights and 2) finally

8   determines the discrete issue to which it is addressed.  <u>Id.</u>  In

9   <u>Wiersma</u>, the Ninth Circuit explained further that an order is

10  final if it "constitutes a complete adjudication of the issues

11  and clearly evidences the judge's intention it be final."

12  <u>Wiersma v. Bank of the West (In re Wiersma)</u>, 483 F.3d 933, 938

13  (9th Cir. 2007).

15      Here, the court concludes the test for finality is easily

16  met.  The interim order resolved and seriously affected the

17  substantive rights of the parties with respect to the

18  availability and advancement of credit during the interim

19  period.  Each of the discrete issues, including debtors' up-

20  front payment of the commitment fee and its superpriority status

21  under § 364(c)(1), were finally determined.  Additionally, the

24  language of ¶ 18 very clearly provided that nothing in the
25  September 10 order would have any effect on whether the interim
    order was final and preserved the rights of both the Committee
26  and BofA to argue about the finality of that order in this
    turnover motion.  The tactics of the Committee in raising this
27  meritless argument at the hearing are questionable advocacy.

28                              -21-

court evinced the finality of the order when, in approving the financing, it stated that some aspects of the order were irreversible and what might be modified at the time of the final order would be any additional lending made by BofA. (Tr. 29:10-24, March 31, 2009). Thus, Fed. R. Civ. P. 60(b)(6) applies.

Courts in this circuit have been instructed that Fed. R. Civ. P. 60(b)(6) "should be 'used sparingly as an equitable remedy to prevent manifest injustice' and 'is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment.'" United States v. Wash., 394 F.3d 1152, 1157 (9th Cir. 2005). Further, although courts are given wide discretion to reconsider their orders under Fed. R. Civ. P. 60(b), their discretion is limited to those circumstances were no intervening rights have vested in reliance on the order. Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.), 503 F.3d 933, 941 (9th Cir. 2007). "Accordingly, a party who moves for such relief 'must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with . . . the action in a proper fashion.'" Id.

Here, the court finds the facts of this case do not justify relieving the Committee from the provisions in the interim order which exhibited finality. The equities clearly weigh in favor of BofA. Though hindsight revealed that the interim financing

1  may have been unnecessary to the preservation of debtors'

2  estate, this was not the fault of BofA, which maintained all its

3  obligations throughout the interim period.  The court observes

4  that debtors could have bargained for a refundable fee, but they

5  did not.[14]  Thus, the court does not perceive a manifest

6
   injustice will result by upholding the fee when BofA performed
7
   under the agreement.
8

9       Furthermore, having found § 364(e) protects the commitment

10  fee, it would be inappropriate to allow modification of the

11  interim order when BofA's rights have vested in reliance on the

12  order.  Int'l Fibercom, 503 F.3d at 941.

13      Finally, while it goes without saying that unsecured

14  creditors suffer an injury when estate funds are paid to higher

15  priority creditors, the Committee has not demonstrated

16  circumstances beyond its control that prevented it from filing

17  an appeal.  The circumstances actually suggest otherwise.

18
   First, BofA made clear that the fee was a non-negotiable point
19
   in extending DIP postpetition financing.  Second, the court
20
21  expressed its view on the record that its decision approving the

22  commitment fee could not later be undone.  Next, the interim

23  order made its provisions "effective as of the date of signature

24  by the Court."  (Interim Order ¶ 32)  Thus, upon issuance, the

25  order itself triggered the Committee's obligation to, at

26

27      [14] At least, not successfully.

28                            -23-

minimum, immediately seek a stay.  Last, although the Committee

contends that it reserved its rights, reserving rights on the

record alone does not toll the time for filing an appeal.[15]

Accordingly, for all these reasons, the court concludes that

relief under Fed. R. Civ. P. 60(b)(6) is not available.

Nor is the Committee entitled to relief under § 105(a).

Section 105(a) authorizes bankruptcy courts to "issue any order,

process or judgment that is necessary or appropriate to carry

out the provisions of [the Bankruptcy Code]."  Relief under

§ 105(a) complements that under Fed. R. Civ. P. 60(b).  Int'l

Fibercom, 503 F.3d at 940.  But that power cannot be used to

circumvent the requirements of Fed. R. Civ. P. 60(b) or other

clear statutory language.  Missoula Fed. Credit Union v.

Reinerston (In re Reinerston), 241 B.R. 451, 456 (9th Cir. BAP

1999).

Even if the interim order was not a final order, the

balance of equities in this case do not support a modification

of the interim order under § 105(a).

---

[15] The court also observes that the assertion by the
Committee that it "reserved its rights" is disingenuous on this
record.  The court recessed the initial hearing on March 26, 2009
for the express purpose of giving the Committee the opportunity
to bargain for a broad reservation of rights with BofA.  The
transcript of the March 27, 2009 hearing makes it clear the
Committee was unsuccessful in achieving any such reservation
pertaining to the commitment fee.

-24-

1

### III.   CONCLUSION

2

   For the reasons stated above, the court denies the

3

Committee's motion.

4

   This Memorandum Decision constitutes findings of fact and

5

conclusions of law under Federal Rule of Bankruptcy Procedure

6

7052.   Counsel for BofA is directed to file with this Court an

7

order in conformance with this Opinion within ten (10) days from

8

the date of the entry hereof.

9

10

11

12

13

14

Dated:   April 5, 2010

15

_____
                     MEREDITH A. JURY
   United States Bankruptcy Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

-25-

| In re: Fleetwood Enterprises, Inc. Et al., | CHAPTER: 11 |
| Debtor(s). | CASE NUMBER: RS 6:09-bk-14254 MJ |

### NOTE TO USERS OF THIS FORM:

**1)** Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category** I. below: The United States trustee and case trustee (if any) will always be in this category.
**4) Category** II. below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that the attached order was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), I, deputy clerk who is making this entry, certify that service on all parties under Section II was completed, the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. The following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

Andrew K Alper on behalf of Creditor GE Commercial Distribution Finance Corporation and GELCO
Corporation dba GE Capital Fleet Services
aalper@frandzel.com, efiling@frandzel.com;ekidder@frandzel.com

Lawrence Bass on behalf of Creditor Philips Products, Inc.
lbass@faegre.com

Dennis G Bezanson on behalf of Creditor Flexsteel Industries, Inc.
dennis.bezanson@bbklaw.com, arthur.johnston@bbklaw.com;kenneth.burgess@bbklaw.com;bknotices@bbklaw.co

Mark S Blackman on behalf of Creditor 21st Mortgage Corporation
MBlackman@AlpertBarr.Com

Bradley D Blakeley on behalf of Defendant Gibraltar Insurance Company, Ltd., a corporation
bblakeley@blakeleyllp.com

William C Bollard on behalf of Debtor Fleetwood Enterprises, Inc.
eal@jbblaw.com, kmg@jbblaw.com;dritchie@jbblaw.com;william@jbblaw.com

Timothy Bortz on behalf of Creditor Timothy Bortz
tbortz@state.pa.us

John A Boyd on behalf of Interested Party Courtesy NEF
fednotice@tclaw.net

Mark Bradshaw on behalf of Interested Party Courtesy NEF

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                    **F 9021-1.1**

| In re:  Fleetwood Enterprises, Inc. Et al.,  Debtor(s). | CHAPTER: 11  CASE NUMBER:  RS 6:09-bk-14254 MJ |
|---|---|

mbradshaw@shbllp.com

Bradley E Brook on behalf of Defendant Kelly Schalmo
bbrook@bbrooklaw.com, jimmy@bbrooklaw.com

Andrew W Caine on behalf of Creditor Committee Official Committee of Creditors Holding Unsecured Claims
acaine@pszyjw.com

Rebecca J Callahan on behalf of Creditor First American Trust Company, as Trustee of the Century Trust
rcallahan@callahanlaw.biz

Craig C Chiang on behalf of Interested Party Courtesy NEF
cchiang@buchalter.com

Louis J Cisz on behalf of Creditor California Self-Insurers' Security Fund
lcisz@nixonpeabody.com

Fred M Cohen on behalf of Creditor Sandra Dinsmore
fmcbktaxlaw@hotmail.com

Sidney A Cotlar on behalf of Creditor Conrad Budd
scotlar@hhkc.com

Peter A Davidson on behalf of Plaintiff Alicia Rice
pdavidson@ecjlaw.com

Caroline Djang on behalf of Creditor Atwood Mobile Products LLC
crd@jmbm.com

Lynsey M Eaton on behalf of Creditor Cast Products Corporation
leaton@gglts.com

Richard T Egger on behalf of Interested Party Courtesy NEF
richard.egger@bbklaw.com

Amanda N Ferns on behalf of Defendant Bluelinx Corporation
aferns@fernslaw.com

Travis W Feuerbacher on behalf of Defendant Cast Products Corporation
tfeuerbacher@gglts.com

Abram Feuerstein on behalf of U.S. Trustee United States Trustee (RS)
abram.s.feuerstein@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

F 9021-1.1

| In re:<br>Fleetwood Enterprises, Inc. Et al.,<br><div align="right">Debtor(s).</div> | CHAPTER: 11<br>CASE NUMBER: RS 6:09-bk-14254 MJ |
| --- | --- |

Wayne S Flick on behalf of Creditor Bank of America, N.A.
wayne.s.flick@lw.com, colleen.rico@lw.com

Donald L Gaffney on behalf of Interested Party Courtesy NEF
dgaffney@swlaw.com

Jeffrey K Garfinkle on behalf of Creditor Oracle USA, Inc.
bkgroup@buchalter.com, jgarfinkle@buchalter.com

Matthew B George on behalf of Creditor Ronald Doud
mbg@girardgibbs.com

Kenneth A Glowacki on behalf of Debtor Fleetwood Enterprises, Inc.
kglowacki@gibsondunn.com

Jeffrey T Gwynn on behalf of Creditor Dave Carter & Associates, Inc.
jgwynn@gwynn-law.com

Michael J Heyman on behalf of Creditor AL-KO Kober Corporation
michael.heyman@klgates.com

Mark D Houle on behalf of Interested Party New York Mellon Trust Co., N.A.
mark.houle@pillsburylaw.com

Sophie A Hubscher on behalf of Creditor Peggy Richan
sophie@korperlemonlaw.com

Jay W Hurst on behalf of Creditor Texas Comptroller of Public Accounts
jay.hurst@oag.state.tx.us, sherri.simpson@oag.state.tx.us

Yale K Kim on behalf of Creditor Brigade Capital Management, LLC
ykim@allenmatkins.com

Alan J Kornfeld on behalf of Creditor Committee Official Committee of Creditors Holding Unsecured Claims
akornfeld@pszjlaw.com, akornfeld@pszjlaw.com

Solmaz Kraus on behalf of Debtor Fleetwood Enterprises, Inc.
skraus@gibsondunn.com, skraus@gibsondunn.com

John F Kurtz on behalf of Creditor Boise Cascade, L.L.C.
jkurtz@hawleytroxell.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

**F 9021-1.1**

| In re:<br>Fleetwood Enterprises, Inc. Et al.,<br><br>                                    Debtor(s). | CHAPTER:  11<br><br>CASE NUMBER:  RS 6:09-bk-14254 MJ |
|---|---|

Lewis R Landau on behalf of Interested Party Courtesy NEF
lew@landaunet.com

Mary D Lane on behalf of Creditor Committee Official Committee of Creditors Holding Unsecured Claims
mlane@pszjlaw.com

Daniel C Lapidus on behalf of Plaintiff Robert Myers
dan@lapiduslaw.com

Jean LeBlanc on behalf of Creditor Power Gear, a division of Actuant Corporation
jleblanc@mwe.com

Scott Lee on behalf of Creditor Philips Products, Inc.
slee@lbbslaw.com

Matthew A Lesnick on behalf of Creditor AT&T Capital Services Inc.
matt@lesnicklaw.com

Gabriel Liao on behalf of Creditor CRIC YUMA, LLC
gliao@perkinscoie.com

Elizabeth A Lossing on behalf of U.S. Trustee United States Trustee (RS)
elizabeth.lossing@usdoj.gov

Donald K Ludman on behalf of Creditor SAP America, Inc.
dludman@brownconnery.com

Gregory O Lunt on behalf of Creditor Bank of America, N.A.
gregory.lunt@lw.com

Rose D Manos on behalf of Creditor FEMA Trailer
rmanos@nexsenpruet.com

Rose D Manos on behalf of Defendant Allen Dailet
manos@nexsenpruet.com

Frank F McGinn on behalf of Interested Party Courtesy NEF
ffm@bostonbusinesslaw.com

David W. Meadows on behalf of Creditor American Electric Power
david@davidwmeadowslaw.com

Craig Millet on behalf of Debtor Continental Lumber Products, Inc.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                    F 9021-1.1

| In re: Fleetwood Enterprises, Inc. Et al., | CHAPTER: 11 |
| Debtor(s). | CASE NUMBER:  RS 6:09-bk-14254 MJ |

cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com

Christopher Minier on behalf of Creditor Courtesy Ford, Inc.
becky@ringstadlaw.com

Byron Z Moldo on behalf of Plaintiff Alicia Rice
bmoldo@ecjlaw.com, tmelendez@ecjlaw.com

John D Monte on behalf of Creditor Maytag Corporation
montelaw@earthlink.net

Harvey M Moore on behalf of Interested Party Progressive Casualty Insurance Company
hmoore@bidnakeys.com

Randall P Mroczynski on behalf of Defendant Fluor Corporation, a corporation
randym@cookseylaw.com

Randy P Orlik on behalf of Creditor ISIS Lending, LLC
rorlik@coxcastle.com

Todd L Padnos on behalf of Creditor Deutsche Bank Trust Company Americas
tpadnos@dl.com, dkennedy@dl.com;sholstrom@dl.com;rkeenan@dl.com;tboothe@dl.com

Leo D Plotkin on behalf of Creditor Textron Financial Corporation
lplotkin@lsl-la.com, dsmall@lsl-la.com

David M Poitras on behalf of Creditor Atwood Mobile Products LLC
dpoitras@jmbm.com

Kimberly A Posin on behalf of Creditor Latham & Watkins LLP
kim.posin@lw.com

Samuel Price on behalf of Creditor National General Assurance Company
sprice@donahoeyoung.com

Hamid R Rafatjoo on behalf of Creditor Committee Official Committee of Creditors Holding Unsecured Claims
hrafatjoo@pszjlaw.com, hrafatjoo@pszjlaw.com

Michael Reed on behalf of Creditor Bell County TAD, et al
othercourts@mvbalaw.com

Jeffrey H. Reeves on behalf of Defendant Fleetwood Enterprises, Inc.
jreeves@gibsondunn.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9021-1.1

| In re: Fleetwood Enterprises, Inc. Et al.,<br><br>Debtor(s). | CHAPTER: 11<br>CASE NUMBER: RS 6:09-bk-14254 MJ |
| --- | --- |

Michael B Reynolds on behalf of Creditor Cavco Industries
mreynolds@swlaw.com, kcollins@swlaw.com

Christopher P Ridout on behalf of Creditor Conrad Budd
c.ridout@ridoutlyonlaw.com

Martha E Romero on behalf of Creditor San Bernardino County Tax Collector
Romero@mromerolawfirm.com

Diane W Sanders on behalf of Creditor McLennan County
austin.bankruptcy@publicans.com

Scott A Schiff on behalf of Creditor Maricopa County Treasurer
sas@soukup-schiff.com

Mark C Schnitzer on behalf of Creditor Esco Industries, Inc.
mschnitzer@rhlaw.com

Daniel R Shapiro on behalf of Creditor Christie Davis
dnalaw@sbcglobal.net

Pamela E Singer on behalf of Creditor Committee Official Committee of Creditors Holding Unsecured Claims
psinger@pszjlaw.com, ksuk@pszjlaw.com

Ramesh Singh on behalf of Interested Party Courtesy NEF
claims@recoverycorp.com

Howard Steinberg on behalf of Other Professional Greenhill & Co. LLC
hsteinberg@irell.com, awsmith@irell.com

Jason D Strabo on behalf of Creditor Power Gear, a division of Actuant Corporation
jstrabo@venable.com, losangelestrialdocket@mwe.com

United States Trustee (RS)
ustpregion16.rs.ecf@usdoj.gov

Anne A Uyeda on behalf of Debtor Fleetwood Enterprises, Inc.
auyeda@gibsondunn.com

Gary R Wallace on behalf of Creditor Shaw Industries, Inc.
gwallace@hbblaw.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9021-1.1

| In re: Fleetwood Enterprises, Inc. Et al., | CHAPTER: 11 |
| Debtor(s). | CASE NUMBER:  RS 6:09-bk-14254 MJ |

Madeleine C Wanslee on behalf of Creditor Maricopa County Treasurer
mwanslee@gustlaw.com, rstein@gustlaw.com

Michael D Warner on behalf of Creditor IDG USA LLC d/b/a Boring-Smith an Industrial Distribution Group,
Inc. Company
echou@warnerstevens.com

Martha A Warriner on behalf of Creditor Esco Industries, Inc.
mwarriner@rhlaw.com

Sharon Z Weiss on behalf of Creditor LazyDays RV Supercenter, Inc.
sweiss@richardsonpatel.com, bkdeptnef@richardsonpatel.com

Joseph M Welch on behalf of Creditor Flexsteel Industries, Inc.
joseph.welch@bbklaw.com, kenneth.burgess@bbklaw.com;bknotices@bbklaw.com;joseph.welch@bbklaw.com;art

Elizabeth Weller on behalf of Creditor Dallas County - Tarrant County
dallas.bankruptcy@publicans.com

Rebecca J Winthrop on behalf of Creditor Westchester Fire Insurance Company
winthropr@ballardspahr.com

Alan Z Yudkowsky on behalf of Creditor Southpaw Koufax LLC
ayudkowsky@stroock.com

☐  Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** I deputy clerk who is making this entry; certify that service on all parties
under Section II  was completed, A copy of this notice and a true copy of this judgment or order was sent by United States
Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

| Terry L Baker on behalf of Plaintiff Robert Barabino<br>Makler & Baker LLP<br>820 Bay Ave Ste 230J<br>Capitola, CA 95010 | John T Banks on behalf of Creditor Kendall County<br>3301 Northland Dr Ste 505<br>Austin, TX 78731 |
| Patrick Barrows<br>721 N 8th<br>Ellin, OR 97827 | Annette Bax<br>1004 NE 72nd Street Apt 31<br>Vanc, WA 98665 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9021-1.1

| In re:                               | CHAPTER: 11                          |
|--------------------------------------|--------------------------------------|
| Fleetwood Enterprises, Inc. Et al.,  |                                      |
|                          Debtor(s).  | CASE NUMBER:  RS 6:09-bk-14254 MJ    |

| | |
|---|---|
| Raul R Bencomo on behalf of Defendant Carl Tasker<br>Bencomo & Associates<br>639 Loyola Ave<br>Ste 2110<br>New Orleans, LA 70113 | Howard M. Bidna on behalf of Plaintiff First<br>American Trust Company, as Trustee of the Century Trust<br>Bidna & Keys APLC<br>5120 Campus Dr.<br>Newport Beach, CA 92660 |
| Bluelinx Corporation<br>c/o Ferns, Adams & Associates<br>2815 Mitchell Drive<br>Suite 210<br>Walnut Creek, CA 94598 | Richard E. Bromley on behalf of Creditor American<br>Industrial Partners LP<br>Nixon Peabody LLP<br>555 West Fifth St 46th Fl<br>Los Angeles, CA 90013-1010 |
| Bradley Brook<br>Law Offices of Bradley Brook<br>523 W. Sixth Street, Suite 215<br>Los Angeles, CA 90014 | Richard L Brown on behalf of Plaintiff Fleetwood<br>Enterprises, Inc A Delaware corporation<br>Julander Brown & Bollard<br>9110 Irvine Center Drive<br>Irvine, CA 92618 |
| Joseph M Bruno on behalf of Defendant Carl Tasker<br>Law Office of Joseph M. Bruno<br>855 Baronne St<br>3rd fl<br>New Orleans, LA 70113 | Stephen P Bruno on behalf of Defendant Jean Joseph<br>Bruno & Bruno LLP<br>855 Baronne St<br>New Orleans, LA 70113 |
| Richard J Burdge on behalf of Creditor FEMA Trailer<br>Howrey LLP<br>550 S Hope St<br>Los Angeles, CA 90071 | Roberta L Burns on behalf of Defendant Tina Ladner<br>Law Offices of Sidney D. Torres, III, AP<br>8301 W Judge Perez Dr<br>Chalmette, LA 70043 |
| Nick Clavijo<br>Box 237<br>Mt Mourne, NC 28123 | G Bret Culbreth on behalf of Creditor Allstate<br>Insurance Company<br>Culbreth Schroeder LLP<br>2945 Ramco Street Ste 180<br>West Sacramento, CA 95691 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9021-1.1

| In re: Fleetwood Enterprises, Inc. Et al., | CHAPTER: 11 |
| Debtor(s). | CASE NUMBER: RS 6:09-bk-14254 MJ |

| | |
|---|---|
| Debt Acquisition Company of America V, LLC<br>1565 Hotel Circle South<br>Suite 310<br>San Diego, CA 92108 | John P. Dillman on behalf of Creditor Fort Bend County<br>PO Box 3064<br>Houston, TX 77253-3064 |
| Richard E Donahoo on behalf of Creditor Jose Rosales<br>Donahoo & Associates<br>440 West First St Ste 101<br>Tustin, CA 92780 | Engineering Systems Inc<br>3851 Exchange Ave<br>Aurora, IL 60504 |
| FTI Consulting<br>633 West 5th Street Ste 1600<br>Los Angeles, CA 90071 | Matthew B George on behalf of Plaintiff Curtis Howe<br>601 California St 14th Floor<br>San Francisco, CA 94108 |
| Eric H Gibbs on behalf of Creditor Ronald Doud<br>601 California St, Suite 1400<br>San Francisco, CA 94108 | Jason C Gless on behalf of Plaintiff Robert Barabino<br>Wood Smith Henning & Berman<br>3801 University Ave Ste 710<br>Riverside, CA 92501 |
| R. L. Goodrich<br>22365 Barton Road, Suite 220<br>Grand Terrace, CA 92313 | Lance G Greene on behalf of Creditor Daniel Bancroft<br>1875 Century Park East<br>Century City, CA 90067 |
| Jim S Hall on behalf of Defendant Allen Dailet<br>Jim S Hall & Associates<br>800 N Causeway Blvd Ste 100<br>Metairie, LA 70113 | Lee Harrington on behalf of Creditor Fleetwood RV Inc<br>Nixon & Peabody<br>100 Summer St<br>Boston, MA 02110 |
| Dale C Hoy on behalf of Plaintiff People Of The State Of California<br>4075 Main St<br>1st Floor<br>Riverside, CA 92501 | Dylan Hughes on behalf of Plaintiff Brian Tucker<br>601 California St 14th Fl<br>San Francisco, CA 94108 |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9021-1.1

| | |
|---|---|
| In re:<br>    Fleetwood Enterprises, Inc. Et al.,<br><br>                                                    Debtor(s). | CHAPTER:  11<br><br>CASE NUMBER:   RS 6:09-bk-14254 MJ |

| | |
|---|---|
| Scott R Kamrath on behalf of Creditor State Farm<br>Mutual Automobile Insurance Company<br>Law Offices of Scott R Kamrath<br>22845 Ventura Blvd Ste 523<br>Woodland Hills, CA 91364-1202 | Richard D Keys on behalf of Plaintiff First American<br>Trust Company, as Trustee of the Century Trust<br>Bidna & Keys APLC<br>5120 Campus Drive<br>Newport Beach, CA 92660 |
| Lane County Assessment and Taxation<br>125 East 8th Ave<br>Eugene, OR 97401-2968 | Ryan D Lapidus on behalf of Plaintiff Robert Myers<br>177 S Beverly Dr<br>Beverly Hills, CA 90212 |
| Alan M Mansfield on behalf of Creditor Jesse Browder<br>Consumer Law Group<br>9466 Black Mountain Road<br>San Diego, CA 92126 | Gerald Meunier on behalf of Defendant Markiesha Bennett<br>Gainsburgh Benjamin David Meunier, et al<br>1100 Poydras, St. 2800 Energy Centre<br>New Orleans, LA 70163 |
| Timothy D Murphy on behalf of Creditor Pat and<br>Mary Lafferty<br>The Law Offices of James Jay Seltzer<br>3300 Powell Street, Ste 201<br>Emeryville, CA 94608 | Ramona Neal on behalf of Creditor Hewlett-Packard Co<br>11311 Chinden Blvd<br>Mailstop 314<br>Boise, ID 83714-0021 |
| Rod Pacheco on behalf of Plaintiff People Of The<br>State Of California<br>4075 Main St<br>1st fl<br>Riverside, CA 92501 | Pachulski Stang Zieh on behalf of Creditor<br>Committee Official Committee of Creditors Holding<br>Unsecured Claims<br>10100 Santa Monica Blvd<br>Los Angeles, CA 90067 |
| Richard Pachulski on behalf of Plaintiff Official<br>Committee of Creditors Holding Unsecured Claims<br>10100 Santa Monica Bl Ste 1100<br>Los Angeles, CA 90067-4003 | David B Pillemer on behalf of Creditor State Farm<br>Mutual Automobile Insurance Company<br>Pillemer & Pillemer<br>14724 Ventura Blvd Ste 401<br>Sherman Oaks, CA 91403-3510 |
| Vincent E Rhynes<br>1514 W Manchester Ave #5<br>Los Angeles, CA 90047 | David P Riley<br>14 E Duke Ave<br>Pensacola, FL 32534 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                                    F 9021-1.1

| | |
|---|---|
| In re:<br>Fleetwood Enterprises, Inc. Et al.,<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER:  RS 6:09-bk-14254 MJ |

| | |
|---|---|
| Robert S Robinson on behalf of Defendant Maytag Corporation dba Magic Chef, a corporation<br>Bowman & Brooke LLP<br>879 W 190th St Ste 700<br>Gardena, CA 90248 | Mark C Schnitzer<br>Reid & Hellyer A Professional Corp<br>P O Box 1300<br>Riverside, CA 92502-1300 |
| Andrea Teves Smith on behalf of Creditor Jeaneen Goff<br>Peterson & Meyers PA<br>POB 24628<br>Lakeland, FL 33802 | Dean P Sperling on behalf of Creditor State Farm Mutual Automobile Insurance Company<br>201 E Sandpointe Ste 220<br>Santa Ana, CA 92870 |
| Tennessee Department of Revenue<br>c/o TN Attorney General's Office<br>PO Box 20207<br>Nashville, TN 37202-0207 | Travelers<br>National Accounts<br>Attn: Chantel Pinnock<br>1 Tower Sq - 5MN<br>Hartford, Ct 06183-4044 |
| Daniel F Vidas on behalf of Creditor North Pacific Group, Inc<br>851 SW Sixth Avenue Ste 1500<br>Portland, OR | Clifton L Wiseman on behalf of Creditor California Suncoast Inc et al<br>West & Miyamoto<br>5151 Verdugo Way Ste 203<br>Camarillo, CA 93012 |
| Richard J Wittbrodt on behalf of Creditor Tristar Distributing Inc<br>1880 Century Park E 12th FL<br>Los Angeles, CA | **Bank of America, N.A.**<br>Latham & Watkins LLP<br>355 South Grand Ave.<br>Los Angeles, CA 90071-1560 |
| **Gregory O Lunt**<br>Latham & Watkins LLP<br>355 S Grand Ave, Ste 100 | **Craig Millet**<br>3161 Michelson Dr, Ste 1200<br>Irvine, CA 92612 |
| **Gibson Dunn & Crutcher**<br>3161 Michelson Drive Suite 1200<br>Irvine, CA 92612-4412 | **Todd L Padnos**<br>1950 University Ave Ste 500<br>East Palo Alto, CA 94303 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                   **F 9021-1.1**

| In re: Fleetwood Enterprises, Inc. Et al., | CHAPTER: 11 |
| Debtor(s). | CASE NUMBER: RS 6:09-bk-14254 MJ |

| **Elizabeth A Lossing**<br>3685 Main St Ste 300<br>Riverside, CA 92501 | **Yale K Kim**<br>515 S Figueroa St 7th Flr<br>Los Angeles, CA 90071-3398 |
| **Allen Matkins Leck Gamble**<br><br>**Mallory & Natsis LLP**<br>1900 Main Street, Fifth Floor<br>Irvine, CA 92614-7321 | Cadwalader Wickersham & Taft LLP<br>Peter M. Friedman<br>1201 F St NOTICE WAIVED<br>Washington, DC 20004 |

☐  Service information continued on attached page

**III. <u>TO BE SERVED BY THE LODGING PARTY</u>:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐  Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re:<br>Fleetwood Enterprises, Inc. Et al.,<br><br>Debtor(s). | CHAPTER:  11<br><br>CASE NUMBER:  RS 6:09-bk-14254 MJ |
|---|---|

**ADDITIONAL SERVICE INFORMATION** (if needed):

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                         **F 9021-1.1**