Committee will support Whippoorwill's Substantial Contribution Claim, provided any recovery thereon is paid in accordance with the previous sentence. The 43.5% of Net Distributable Proceeds payable to the 14% Notes Claims shall be paid (x) on the Effective Date with respect to the Initial Net Distributable Proceeds; and (y) on each subsequent Distribution Date as reasonably practicable after the Liquidation Trust acquires such Net Distributable Proceeds with respect to the balance.

The 14% Notes Claims shall not be subject to avoidance, disallowance, recharacterization or subordination (whether equitable or otherwise). All amounts due to be paid to, and all amounts paid to and received by, the holders of the 14% Notes Claims shall not be subject to avoidance, disallowance, disgorgement, recharacterization or subordination.

Without recourse, representation, or warranty and solely for purposes of enforcing the percentage allocation of Net Distributable Proceeds, on the Effective Date, the 14% Notes shall be deemed to assign to the Liquidating Trustee that portion of their intercreditor rights necessary to preclude the Holders of the 5% Notes from exercising a payover demand against distribution to the Holders of 6% Notes. On the Effective Date, provided that Class 5 votes to accept the Plan, the 14% Notes shall be deemed to release any intercreditor rights or payover demands that they have against the Holders of 6% Notes. For the avoidance of doubt, any Liens granted to the 14% Notes prior to the Effective Date will be extinguished on the Effective Date in exchange for the treatment afforded to the 14% Notes Claims hereunder.

All of the DB Fees shall be paid concurrently with the final payment of Professional Fee Claims, but if at the time of such distribution, there are insufficient funds to make a payment in full, then DB shall be entitled to its Pro Rata portion of the DB Fees distributed at such time relative to the total fees and expenses paid to all Professionals, which amount shall be deducted from the 43.5% Net Distributable Proceeds allocated to the 14% Notes Claims. Similarly, all of the Whippoorwill Fees shall be paid concurrently with the final payment of Professional Fee Claims (but if at the time of such distribution, there are insufficient funds to make a payment in full, then Whippoorwill shall be entitled to its Pro Rata portion relative to the total fees and expenses paid to all Professionals of the Whippoorwill Fees distributed at such time), provided that such Whippoorwill Fees have been approved by allowance of the Substantial Contribution Claim, and

such amount shall be deducted from the 43.5% Net Distributable Proceeds allocated to the 14% Notes Claims.

Notwithstanding anything to the contrary contained herein, all distributions to holders of 14% Notes Claims shall be subject to, and the allocations made herein shall be reduced on a pro rata basis by, the Charging Lien to the extent of any unpaid fees and expenses of DB, whether such fees and expenses are incurred by DB prior to or after the Effective Date, it being understood that DB shall be entitled to the recovery of all fees and expenses incurred under the 14% Indenture and in administering distributions to the holders of 14% Notes Claims before any distributions are made to the holders of the 14% Notes Claims.

Upon the Effective Date, the DB Litigation shall be deemed dismissed with respect to all parties, with prejudice, and confirmation of this Plan shall constitute a final and binding resolution of all issues raised, or that could be raised, in connection with the DB Litigation.

Class 5 is Impaired and is entitled to vote on the Plan.

6.    **Class 6:  General Unsecured Claims**

Provided that all Allowed Administrative Claims, Priority Claims and Secured Claims have been paid in full or funds sufficient to satisfy all Allowed Administrative Claims, Priority Claims and Secured Claims have been placed in a segregated reserve, as set forth in the Plan and in the Liquidating Trust Agreement, and subject to the occurrence of the Effective Date, on, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date a General Unsecured Claim becomes an Allowed General Unsecured Claim or (b) the date that is ninety (90) days after the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for such Allowed General Unsecured Claim, its Pro Rata share of the Initial Net Distributable Proceeds, if any, and, on each Periodic Distribution Date, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the Periodic Net Distributable Proceeds, not to exceed in the aggregate 56.5% of the total Net Distributable Proceeds.

Class 6 is Impaired and is entitled to vote on the Plan.

7.    **Class 7:  6% Notes Claims**

Provided that all Allowed Administrative Claims, Priority Claims and Secured Claims have been paid in full or funds sufficient to satisfy all Allowed Administrative Claims, Priority Claims and Secured Claims have been placed in a segregated reserve, as set forth in the Plan and in the Liquidating Trust Agreement, and subject to the occurrence of the Effective Date, and subject to acceptance of the Plan by Class 7, Holders of 6% Notes Claims shall receive $2 million from the 56.5% Net Distributable Proceeds allocable to the General Unsecured Claims, which amount shall be paid at the time Distributions are made to General Unsecured Creditors pursuant to the Plan or as the Liquidating Trustee shall determine in its sole and absolute discretion. Concurrently with the final payment of Professional Fee Claims for the Debtors and the Creditors' Committee after the Effective Date and provided that Class 7 has voted to accept the Plan, the Professional fees and expenses of the indenture trustee of the 6% Notes and the trustee's professionals shall be paid to such applicable indenture trustee or professional, subject to a review for reasonableness by the Creditors' Committee, out of the 56.5% of the Net Distributable Proceeds allocable to the Allowed General Unsecured Claims, but if at the time of such distribution, there are insufficient funds to make payment in full, then such fees shall be paid Pro Rata with other professionals proposed to be paid at such time under this Plan (including the DB Fees and Whippoorwill Fees).  Any rights granted to the 6% Notes prior to the Effective Date shall be extinguished on the Effective Date in exchange for the treatment afforded to the 6% Notes herein.

Class 7 is Impaired and is entitled to vote on the Plan.

8.    **Class 8:  5% Notes Claims**

Pursuant to the terms of the Noteholder Settlement among the Creditors' Committee and the Holders of a majority of the 14% Notes, the parties agreed that the Holders of the 14% Notes Claims would pay for the distribution to the Holders of the 5% Notes Claims, if any, out of the 43.5% of the Net Distributable Proceeds allocable to the Allowed 14% Notes Claims.  Pursuant to negotiations between the Holders of a majority of the 14% Notes and the 5% Indenture Trustee, provided that Class 8 does not vote to reject the Plan and the 5% Indenture Trustee does not object to the Plan or Disclosure Statement, Holders of the Allowed 14% Notes Claims will allocate to Holders

of Allowed 5% Notes Claims a total of $75,000 from the 43.5% of Net Distributable Proceeds allocated to the Allowed 14% Notes Claims. The $75,000 distribution to Holders of Allowed 5% Notes Claims shall include all fess and expenses of the 5% Indenture Trustee and shall be subject to the exercise by the 5% Indenture Trustee of any contractual right of priority or charging lien under the 5% Notes indenture for payment of its fees and expenses. Distribution to Holders of Class 8 Claims shall be made pro rata and contemporaneously with the first distribution to the Holders of Class 5 Claims, other than payments for fees and expenses of DB and Whippoorwill.

On the Effective Date, in consideration for the distribution provided for herein, holders of the 5% Notes shall be deemed to release any intercreditor rights or payover demands they have, if any, against the Holders of the 6% Notes and the 14% Notes.

Class 8 is Impaired and is entitled to vote on the Plan.

**9.      Class 9:  Convenience Claims**

On, or as soon as reasonably practicable after, the Initial Distribution Date, each Holder of an Allowed Convenience Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for such Convenience Claim, 25% of its Allowed Claim as a final distribution. Holders of Class 6 Claims in excess of $10,000 will be eligible to opt into this Class by reducing their claim to $10,000 by checking the "Opt-In to Convenience Class" box on their ballot. Total distributions under this Class shall be paid out of the 56.5% of the Net Distributable Proceeds allocable to the Allowed General Unsecured Claims, and are anticipated to be limited to $1.25 million, subject to the Liquidating Trustee's discretion to increase this amount at the time of the Initial Distribution Date. In the event that this class has greater demand than funds allocated to this Class, then the Liquidating Trustee shall have the absolute discretion to select and remove certain of the opt-in members of this class. In no instance shall the Liquidating Trustee remove a non-opt-in Allowed Convenience Claim from this Class. Class 9 is Impaired and is entitled to vote on the Plan.

**10.      Class 10:  Product Liability PI Claims**

Unless their Product Liability PI Claim has previously become an Allowed Claim, all Holders of Claims in Class 10 shall be required to participate in the Product Liability PI Claim Mediation Process attached to the Disclosure Statement as Appendix E. As provided in the Product

Liability PI Claim Mediation Process, if and when Allowed, Holders of Class 10 Claims shall receive a Pro Rata distribution of available insurance proceeds from Gibraltar policies covering Product Liability PI Claims upon the year in which the claim arose. Once all mediations as to Product Liability PI Claims in a given policy year have been liquidated, the Liquidating Trustee may, in its discretion, begin the distribution of Gibraltar policy proceeds for that year without regard to whether the Product Liability PI Claims in any other policy year have been liquidated or allowed, or he may wait until Product Liability PI Claims in other policy years, or all policy years have been liquidated, before making distributions of Gibraltar policy proceeds. To the extent the allowed amount of any Class 10 Claim is not paid in full with insurance proceeds, then the unpaid deficiency amount shall receive the treatment provided for under Class 6 for Allowed General Unsecured Claims, and any distributions thereto shall be paid out of the 56.5% of the Net Distributable Proceeds allocable to the Allowed General Unsecured Claims. Class 10 is Impaired and is entitled to vote on the Plan.

**11.    Class 11: WARN Class Claims and Severance Class Claims.**

The WARN and Severance Class Settlement Agreement shall be presented to the Bankruptcy Court for approval pursuant to Rule 9019 of the Bankruptcy Rules and as a class settlement under Rule 23 of the Federal Rules of Civil Procedure and notice of the WARN and Severance Class Settlement Agreement shall be given to all WARN Class Members and or Severance Class Member as required under Rule 23 and the Order of the Bankruptcy Court. If the WARN and Severance Class Settlement Agreement is approved, any WARN Class Member or Severance Class Member may affirmatively elect not to accept the treatment ("Opt Out") afforded to the WARN Class Members and Severance Class Members in the WARN and Severance Class Settlement Agreement by following the procedures in the notice of the WARN and Severance Class Settlement Agreement.

If the WARN and Severance Class Settlement Agreement is approved by the Bankruptcy Court:

A.    On the effective date of the WARN and Severance Class Settlement Agreement or the Effective Date of this Plan, whichever is later, any WARN Class Member or

Severance Class Member who has not affirmatively elected to Opt Out shall receive, in full satisfaction of their Claims, the treatment provided in the WARN and Severance Class Settlement Agreement.

B.    As to any WARN Class Member or Severance Class Member who affirmatively elects to Opt Out, if and when their WARN Claim or Severance Claim becomes an Allowed Claim, then they shall be afforded the treatment of a Non-Tax Priority Claim in Class 1 subject to the limitations of Section 507(a)(4) and (5) of the Bankruptcy Code with any amount of their WARN Claim or Severance Claim in excess of the limitations of Section 507(a)(4) and (5) of the Bankruptcy Code treated as a General Unsecured Claim in Class 6 and any distribution to Class 11 pursuant thereto shall be paid out of the 56.5% Net Distributable Proceeds allocable to the Allowed General Unsecured Claims.

C.    Any WARN Class Member or Severance Class Member who Opts Out of the treatment afforded in the WARN and Severance Class Settlement Agreement shall have the same rights and obligations as he or she would have had if the WARN Action and/or the Severance Action had never been filed and this WARN and Severance Class Settlement Agreement had never been executed.

If the WARN and Severance Class Settlement Agreement is not approved by the Bankruptcy Court:

The WARN Class Claims and Severance Class Claims will continue to be litigated before the Bankruptcy Court.  If and when the Claim of any WARN Class Member or any Severance Class Member becomes an Allowed Claim, the Claim of the WARN Class Member or Severance Class member shall be afforded the treatment of a Non-Tax Priority Claim in Class 1 subject to the limitations of Section 507(a)(4) and (5) of the Bankruptcy Code with any amount in excess of the limitations of Section 507(a)(4) and (5) of the Bankruptcy Code treated as a General Unsecured Claim in Class 6 with any distribution to Class 11 pursuant thereto to be paid out of the 56.5% of Net Distributable Proceeds allocable to the Allowed General Unsecured Claims.

The Class 11 Claims of WARN Class Members and Severance Class Members are impaired and are entitled to vote on the Plan.

**12.    Class 12**

Each Claimant in Class 12 is or was the beneficiary of a letter of credit ("LC") issued by the Debtors' Secured Parties pursuant to the Secured Credit Facility and which comprises the Allowed Senior Credit Facility Claims.  Upon the Effective Date, each Claim in Classes 12A through 12B shall be deemed an Allowed Claim and each holder of an Allowed Claim in Class 12 shall receive the treatment described below in exchange for waiver of any deficiency claims.  Each Claim in Class 12A through Class 12B, inclusive, is Impaired and is entitled to vote on the Plan.

(a)    **Class 12A: Lumbermen's Underwriting Alliance.**

Lumbermen's Underwriting Alliance ("LUA") insured the workers' compensation liability of the Debtors in the states of Arizona, Idaho, Tennessee, Virginia, Texas, Florida, Maryland and Kentucky between November 1, 1981 and February 1, 1999.  The Debtors' liability to LUA was secured by LC No. 3040443 in the amount of $100,000 which LUA drew on or about December 4, 2009.  LUA was also holding cash deposits of $86,774.  On the Effective Date, in full and final satisfaction of LUA's Allowed Claim, LUA shall retain the approximately $186,000 in LC proceeds as well as other Cash on hand.

(b)    **Class 12B:  Georgia Self Insurance Guaranty Trust Fund.**

The Debtors' workers' compensation liability in the state of Georgia, was secured by LC No. 3040445 in the amount of $1,230,000.  The Georgia Self Insurers Guaranty Trust Fund ("Georgia"), drew on LC No. 3140445 on July 23, 2009 and it now holds $1,230,000 in cash.  On the Effective Date, in full and final satisfaction of the Allowed Claim of the Georgia, Georgia shall retain the proceeds of LC No. 3040445 in the amount $1,230,000 as well as other Cash on hand.

**13.    Class 13**

Each Claimant in Class 13 is or was the beneficiary of an LC issued by the Debtors' Secured Parties pursuant to the Secured Credit Facility and which comprises the Allowed Secured Credit Facility Claims.  The Debtors assert that each Claimant in Class 13 holds Collateral consisting of (i) its rights under an outstanding LC, (ii) the proceeds of a LC and/or (iii) Cash.  The Debtors also assert that they are entitled to the return of the Collateral (or, if not drawn upon, the exoneration of a LC) to the extent the amount of the Collateral exceeds the Allowed Claim of the Holder of a

Class 13 Claim. The Plan Proponents have undertaken a detailed analysis of the Collateral held by each Holder of a Class 13 Claim and the likelihood of each such Holder's Class 13 Claim becoming under secured. Based on that analysis, the Plan Proponents believe that, if and when Allowed, each holder of an Allowed Class 13 Claim will be significantly over secured and that each such Claimholder will ultimately end up returning Collateral to the Estate. However, in the event that the Plan Proponents are mistaken and a Holder of a Class 13 Claim receives an Allowed Class 13 Claim in an amount that exceeds the Collateral, the deficiency amount shall be treated as a Class 6 General Unsecured Claim.

Unless otherwise provided with respect to any subclass of Class 13, upon a Claim in Class 13 becoming an Allowed Claim, such Claim shall be treated as follows:

(i)    To the extent the Allowed Claim is less than the amount of the Collateral held by the Class 13 Claimant, then the Class 13 Claimant shall retain the Collateral up to the amount of such Allowed Claim and any excess shall be returned to the Liquidating Trustee;

(ii)    To the extent the Allowed Claim exceeds the aggregate amount of the Collateral held by the Class 13 Claimant, then the Class 13 Claimant shall retain the Collateral and the amount by which the Allowed Claim exceeds the amount of the Collateral shall be treated as a General Unsecured Claim in Class 6; or,

(iii)    As the Holder of a Claim in Class 13 and the Debtors and/or the Liquidating Trustee shall agree upon in writing.

Each Holder of a Class 13 Claim shall continue to hold its Collateral to the same extent and with the same priority held as of the Petition Date until such time as (a) the Claim of the Holder of such Class 13 Claim becomes an Allowed Claim, (b) such purported Claim has been determined by a Final Order of the Bankruptcy Court to be invalid, disallowed or otherwise avoidable, or (c) as the Holder of a Class 13 Claim and the Debtors and/or the Liquidating Trustee shall agree upon in writing. A Class 13 Claim shall become an Allowed Claim as provided in the Plan and no Holder of a Claim in Class 13 is obligated to take any action to seek the allowance of its Claim.

Each Holder of a Claim in Class 13 is conclusively presumed to have accepted the Plan and, therefore, each Holder of a Class 13 Claim is unimpaired and not entitled to vote to accept or reject the Plan.

(a)    **Class 13A:  Westchester Fire Insurance Company and ACE INA Insurance**

Westchester Fire Insurance Company and ACE issued construction bonds with respect to the Debtors' military housing business and bonds supporting the Debtors' self insured workers' compensation liability in Washington and Indiana all of which were secured by LC No. 3051853.  On or about December 29, 2009, ACE drew on LC. No. 3051853 in its entirety.  As of January 31, 2010, ACE held $13,897,702.50 in Cash as security for the Claims of ACE against the Debtors.

The Holder of the Class 13A Claim shall have an unliquidated Claim as reflected in Proofs of Claim number 7661 through 7678, inclusive, filed by such Holder and the Agreements of Indemnity referenced therein, subject to being liquidated or reduced, in whole or in part, as such Holder and the Debtors (or the Liquidating Trustee) may mutually agree in writing after taking into account any exposure or loss related to liabilities allegedly giving rise to the Class 13A Claim that has been fully and indefeasibly released or otherwise extinguished in accordance with the provisions of Agreements of Indemnity between such Holder and any of the Debtors governing draws under such Holder's LC, or the holding, use, or return of any proceeds thereof.

(b)    **Class 13B:  Old Republic Insurance Co.**

On behalf of Gibraltar, Old Republic Insurance Co. ("Old Republic") provided workers' compensation coverage to the Debtors in Alabama and Georgia and the reimbursement obligations of the Debtors and Gibraltar to Old Republic were secured by LC No. 3040444 in the amount of $1.08 million.  On November 27, 2009, Old Republic drew on LC No. 3040444 and it now holds $1.08 million in Cash.

(c)    **Class 13C:  National Union Fire Insurance Company of Pittsburgh, PA,**

**et al.**

The Debtors' workers' compensation liability in the states of Arizona, Idaho,

Tennessee, Virginia, Florida, Maryland and Kentucky from April 1, 2003 to the present was covered

by National Union Fire Insurance Company of Pittsburgh, PA, American Home Assurance

Company, American International Specialty Lines Insurance Company of the State of Pennsylvania,

Commerce and Industry Insurance Company, AIU Insurance Company, Birmingham Fire Insurance

Company of the State of Pennsylvania, Illinois National Insurance Company, American International

South Insurance Company, National Union Fire Insurance Company of Louisiana, American

International Pacific Insurance Company, Granit State Insurance Company, New Hampshire

Insurance Company, Lexington Insurance Company, Landmark Insurance Company, Starr Excess

Liability Insurance Company Ltd. ("National Union").  The Debtors' reimbursement obligations to

National Union are secured by LC No. 3056166 in the amount of $4,302,210, which expires on

March 31, 2010.

(d)    **Class 13D: Fidelity and Deposit Company of Maryland**

Fidelity and Deposit Company of Maryland ("Fidelity") issued a surety bond with

respect to the Debtors' contract to supply manufactured housing to the U.S. Department of Defense

for Fort Sill.  The Surety Bond is secured by LC No. 3092431 in the amount of $3,017,440, which

expires on March 11, 2010.  Morgan Buildings and Spas, Inc. ("Morgan Spa") has made claims

against the Debtors, which the Debtors deny, and which are now being litigated in Texas along with

the Debtors' claims against Morgan Spa.  If Morgan Spa prevails, it will be entitled to payment

under the surety bond and Fidelity will then be entitled to indemnification from the proceeds of LC

No. 3092431.

(e)    **Class 13E:  Kemper Insurance Co., et al.**

Lumbermen's Mutual Casualty Company, American Motorists Insurance Company,

American Manufacturers Mutual Insurance Company and American Protection Insurance Company

and Kemper Insurance Co. ("Kemper") insured the workers' compensation liability of the Debtors in

the states of Arizona, Idaho, Tennessee, Virginia, Texas, Florida, Maryland and Kentucky between

February 1, 1996 and April 1, 2003.  The Debtors' liability to Kemper is secured by LC No.

3040130 in the remaining amount of $1,070,000 plus Cash of approximately $1.428 million held by

Kemper from prior draws on letters of credit.

**14.    Class 14:  Intercompany Claims**

In connection with, to the extent of and as a result of, the substantive consolidation of

the Debtors' Estates and the Chapter 11 Cases, on the Confirmation Date or such other date as may

be set by an order of the Bankruptcy Court, but subject to the occurrence of the Effective Date, all

Intercompany Claims by and between the Debtors shall be deemed eliminated, cancelled and/or

extinguished and the Holders of Class 14 Claims shall not be entitled to, and shall not receive or

retain any property or interest in property on account of such Claims.  Class 14 is deemed to have

rejected the Plan and, therefore, Holders of Class 14 Claims are not entitled to vote to accept or

reject the Plan.

**15.    Class 15:  Equity Interests**

On the Effective Date, all Equity Interests in the Debtors shall be cancelled and each

Holder thereof shall not be entitled to, and shall not receive or retain any property or interest in

property on account of, such Equity Interests.  Class 15 is deemed to have rejected the Plan and,

therefore, Holders of Equity Interests are not entitled to vote to accept or reject the Plan.

**V.**

**ACCEPTANCE OR REJECTION OF THE PLAN BY CLAIM HOLDERS**

**A.    Impaired Classes of Claims Entitled to Vote**

Holders of Claims and Equity Interests in Impaired Classes who receive or retain

property on account of their Claims or Interests and who are entitled to vote under the Solicitation

Procedures Order will be solicited for acceptance or rejection of the Plan.

**B.    Acceptance by an Impaired Class**

In accordance with Bankruptcy Code section 1126(c) and except as provided in

Bankruptcy Code section 1126(e), an Impaired Class of Claims shall have accepted the Plan if the

Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half

(1/2) in number of the Claims of such Class that are entitled to vote and have timely and properly voted to accept or reject the Plan.

**C.      Presumed Acceptances by Unimpaired Classes**

Classes 1, 3, 4, and 13 are Unimpaired by the Plan.  Under Bankruptcy Code section 1126(f), such Claimholders are conclusively presumed to accept the Plan, and the votes of such Claimholders will not be solicited.

**D.      Classes Deemed to Reject Plan**

Claimholders in Class 14 and Equity Interest Holders in Class 15 are not entitled to receive or retain any property under the Plan.  Under Bankruptcy Code section 1126(g), Holders of Claims in Class 14 and Holders of Equity Interests in Class 15 are deemed to reject the Plan, and the votes of such Claimholders or Equity Interest Holders will not be solicited.

**E.      Summary of Classes Voting on the Plan**

The votes of Holders of Claims in Classes 2, 5, 6, 7, 8, 9, 10, 11, and 12 whose Claims are not the subject of an objection and whose Claims are not listed in the Debtors' Schedules as contingent, unliquidated, or disputed, will be temporarily allowed for voting purposes as set forth in the Solicitation Procedures Order and will be solicited with respect to the Plan.

**F.      Confirmation Pursuant to Bankruptcy Code Section 1129(b)**

To the extent necessary, the Plan Proponents will seek confirmation of the Plan from the Bankruptcy Court by employing the "cramdown" procedures set forth in section 1129(b) of the Bankruptcy Code.  Subject to the reasonable approval of Whippoorwill with respect to provisions that impact its rights under the Plan, the Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Plan or any Plan Exhibit or schedule, including to amend or modify the Plan or such Exhibits or schedules to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

# VI.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.    Substantive Consolidation of Debtors' Estates**

The Plan contemplates and is predicated upon entry of an order substantially consolidating the Debtors' Estates.  On the Effective Date, (i) all Intercompany Claims by, between and among the Debtors shall be eliminated, (ii) all assets and liabilities of the Debtors shall be merged or treated as if they were merged with the assets and liabilities of the Debtors, (iii) any obligation of a Debtor and all guarantees thereof by one or more of the other Debtors shall be deemed to be one obligation of the Debtors, (iv) the Equity Interests shall be cancelled, and (v) each Claim filed or to be filed against any Debtor shall be deemed filed as a single Claim against and a single obligation of the Debtors.  On the Effective Date, in accordance with the terms of the Plan, and the consolidation of the assets and liabilities of the Debtors, all Claims based upon guarantees of collection, payment, or performance made by the Debtors as to the obligations of another Debtor shall be released and of no further force and effect.  The foregoing (x) shall not affect the rights of any Holder of a Miscellaneous Secured Claim with respect to the Collateral securing its Claim, or the terms and implementation of any settlement, and the rights and obligations of the parties thereto, entered into in connection with the confirmation of the Plan and (y) shall not, and shall not be deemed to, prejudice the Causes of Action and the Avoidance Actions (subject to the releases set forth in Article XI of the Plan), which shall survive entry of the Confirmation Order for the benefit of the Debtors and their Estates, as if there had been no substantive consolidation.

The Plan and Disclosure Statement, jointly, shall serve as, and shall be deemed to be, a motion for entry of an order under Bankruptcy Rule 9019 and the substantive consolidation of the Debtors' Chapter 11 Cases.  If no objection to the Plan is timely filed and served by any Holder of an Impaired Claim affected by the Plan as provided herein on or before the Voting Deadline or such other date as may be established by the Bankruptcy Court, the Confirmation Order will serve as the Order approving substantive consolidation pursuant to the terms of this Plan.  If any such objections are timely filed and served, a hearing with respect to the Plan and the objections thereto shall be

scheduled by the Bankruptcy Court, which hearing may, but is not required to, coincide with the Confirmation Hearing.

**B.      Corporate Action**

**1.      Resignation of Directors and Officers**

Upon the Effective Date, the members of the board of directors or managers, as the case may be, of each of the Debtors shall be deemed to have resigned.

**2.      Dissolution of the Debtors**

On the Effective Date, each of the Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith.

As soon as practicable after the transfer of Assets to the Liquidating Trust, the Liquidating Trustee shall provide for the retention and storage of the books, records and files that shall have been delivered to the Liquidating Trust until such time as all such books, records and files are no longer required to be retained under applicable law, and file a certificate informing the Bankruptcy Court of the location at which such books, records, and files are being stored.

The Professionals employed by the Debtors shall be entitled to reasonable compensation and reimbursement of actual, necessary expenses for post-Effective Date activities, including the preparation, filing, and prosecution of Final Fee Applications, upon the submission of invoices to the Liquidating Trust, but if at the time of such distribution, there are insufficient funds to make payment in full, then such fees shall be paid Pro Rata with other Professionals to be paid at such time under this Plan and the other professional payments contemplated under this Plan and the payment of fees and costs to DB and Whippoorwill.  Any time or expenses incurred in the preparation, filing, and prosecution of Final Fee Applications shall be disclosed by each Professional in its Final Fee Application and shall be subject to approval of the Bankruptcy Court.

**3.      Surrender and Cancellation of Existing Securities and Agreements**

(a)      Except as otherwise provided in the Plan, and in any contract, instrument or other agreement or document created in connection with the Plan, on the Effective Date, the Equity Interests and any other promissory notes, share certificates, whether for preferred or common stock

(including treasury stock), other instruments evidencing any Claims or Equity Interests, and all options, warrants, calls, rights, puts, awards and commitments shall be deemed cancelled and of no further force and effect, without any further act or action under any applicable agreement, law, regulation, order, or rule, and the obligations of the Debtors under the notes, share certificates, and other agreements and instruments governing such Claims and Equity Interests shall be released; provided, however, that certain instruments, documents, and credit agreements related to Claims shall continue in effect solely for the purposes of allowing the agents to make distributions to the beneficial holders and lenders thereunder.  The holders of or parties to such canceled notes, share certificates and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates and other agreements and instruments or the cancellation thereof, except the rights provided pursuant to the Plan.

(b)    Notwithstanding the foregoing, the following provisions shall apply to the treatment of the 14% Indenture and the 14% Notes Certificates:

(1)    The Holders of the 14% Notes shall surrender their 14% Notes Certificates to the Liquidating Trustee prior to the first anniversary of the Effective Date.

(2)    Any Holder of the 14% Notes with respect to which its underlying 14% Notes Certificates have been lost, stolen, mutilated, or destroyed must, in lieu of surrendering such certificates, deliver to the Liquidating Trustee: (i) evidence satisfactory to the Liquidating Trustee of the loss, theft, mutilation, or destruction; and (ii) such security or indemnity as may be required by the Liquidating Trustee to hold it harmless from any damages, liabilities, or costs incurred in treating such person or entity as a Holder of the 14% Notes.  Upon compliance with this provision, such Holder will, for all purposes under this Plan, be deemed to have surrendered its applicable 14% Notes Certificates.

(3)    The Liquidating Trustee shall not make any distribution to the Holder of a 14% Notes Claim unless and until such Holder surrenders its 14% Notes Certificates or the

unavailability of such certificates is established to the reasonable satisfaction of the Liquidating Trustee.

(4)    Any Holder of the 14% Notes who fails to surrender or cause the surrender of its 14% Notes Certificates, or fails to execute and deliver an affidavit of loss and indemnity reasonable satisfactory to the Liquidating Trustee, prior to the first anniversary of the Effective Date shall be deemed to have forfeited all rights and Claims in respect of such certificates and shall not participate in any distribution under this Plan, and all property in respect of such forfeited distribution shall be subject to redistribution by the Liquidating Trustee to all other Holders of Claims under the 14% Indenture who have duly surrendered or caused the surrender of their certificates or reasonably established the unavailability thereof.

(5)    Notwithstanding the foregoing, if the record Holder of the 14% Notes is DTC or its nominee or such other securities depository or custodian thereof, or if the 14% Notes are held in book-entry or electronic form pursuant to a global security held by DTC, then the beneficial Holder of such 14% Notes shall be deemed to have surrendered such Holder's 14% Notes Certificates upon surrender of such global security by DTC or such other securities depository or custodian thereof to the Liquidating Trustee.

(6)    Unless otherwise provided for herein, on the Effective Date, the 14% Indenture, all 14% Notes Certificates, and all instruments or other documents evidencing, giving rise to, or governing any 14% Notes Claim shall be deemed cancelled and shall represent only the right, subject to the other terms and conditions described in this Plan, to participate in the distributions contemplated by this Plan.

(7)    At the request of the Liquidating Trustee, DB shall provide to the Liquidating Trustee a list of the names of the beneficial Holders and amounts of holdings and other related information requested by the Liquidating Trustee from DTC and the Liquidating Trustee

1    shall be entitled to rely upon such list from DTC for making distributions under this Plan to the

2    Holders of the 14% Notes Claims.

3                (8)    Notwithstanding the foregoing and anything else contained in this

4    Plan, the 14% Indenture shall be deemed to be cancelled on the Effective Date and DB discharged of

5    its obligations under the 14% Indenture; provided, however, the 14% Indentures shall continue in

6    effect solely for the purposes of (i) allowing distributions to be made under this Plan pursuant to the

7    Indenture and the Liquidating Trustee to perform such other necessary functions with respect to

8    distributions to the 14% notes; (ii) permitting DB to maintain or assert any right or Charging Lien it

9    may have with respect to distributions pursuant to the terms of this Plan; (iii) permitting DB to assert

10   any right to indemnification, contribution, or other Claim it may have under the 14% Indenture; and

11   (iv) permitting DB to exercise its rights and obligations relating to the interests of the Holders of

12   14% Notes Claims and its relationship with the Holders of the 14% Notes Claims pursuant to the

13   14% Indenture, including all rights it may have to appear and be heard in these bankruptcy cases and

14   any appeals.

15                (9)    As of the close of business on the Distribution Record Date, the

16   transfer register for the 14% Notes will be closed.  The Liquidating Trustee will be entitled for all

17   purposes in the Plan and the 14% Indenture to recognize and make distributions only to those

18   Holders who are Holders of 14% Notes as of the close of business on the Distribution Record Date

19   as reported to it by DTC.  Distributions on account of the 14% Notes Claims by the Liquidating

20   Trustee to the record Holders of the 14% Notes will not be made as of the Distribution Record Date

21   but rather will be accomplished in accordance with the 14% Indenture upon consultation with DB.

22                At the sole option of the Liquidating Trustee and in consultation with the 5%

23   Indenture Trustee and /or the indenture trustee for the 6% Notes, the above provisions may be made

24   applicable to the Holders of 5% Notes and the Holders of 6% Notes.

25       **4.    No Further Action**

Each of the matters provided for under the Plan involving the corporate or limited liability company structure of the Debtors or corporate or limited liability company action to be taken by or required of the Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by any Person, including but not limited to, the Liquidating Trust, the Liquidating Trustee, Holders of Claims or Equity Interests against or in the Debtors, or directors or officers of the Debtors.

## C.    Sources for Plan Distribution

All Cash necessary for the Liquidating Trustee to make payments of Cash pursuant to the Plan shall be obtained from the following sources:  (a) the Debtors' Cash on hand, which shall be deemed vested in the Liquidating Trust on the Effective Date, (b) Cash received in liquidation of the Assets of the Debtors, and (c) proceeds of the Causes of Action.

## D.    Payment of Claims

The Liquidating Trust shall not pay any amounts on account of Allowed Unsecured Claims, or Convenience Claims unless and until all Allowed Administrative Claims, Priority Claims and Secured Claims have been paid in full or funds sufficient to satisfy all Allowed Administrative Claims, Priority Claims and Secured Claims have been placed in a segregated reserve.

## E.    KEIP Payments

The Liquidating Trustee or the Debtors shall be permitted to pay to the KEIP Employees the KEIP Payments up to the maximum incentive payment set forth in the KEIP Order and Modified and Amended KEIP Plan Order.

## F.    Liquidating Trust

### 1.    Establishment of the Liquidating Trust

The Liquidating Trust shall be established and shall become effective on the Effective Date.  All Distributions to the Holders of Allowed Claims shall be from the Liquidating Trust.  The Liquidating Trust shall hold and administer the Assets of the Debtors, including but not limited to the Causes of Action for liquidation and distribution in accordance with the Plan unless otherwise

settled or released by Order of the Bankruptcy Court prior to the Effective Date, and the Net

Proceeds thereof (collectively, the "Liquidating Trust Assets").

### 2.    Trust Distributions

The Liquidating Trustee shall liquidate all Assets of the Debtors and the Estates

(including, without limitation, all Causes of Action) and distribute the Net Proceeds of such

liquidation from the Liquidating Trust in accordance with this Plan and the Liquidating Trust

Agreement.

### 3.    Duration of Trust

The Liquidating Trust shall have an initial term of five (5) years; provided, however,

that, if warranted by the facts and circumstances, and subject to the approval of the Bankruptcy

Court with jurisdiction over the case, upon a finding that an extension of the term of the Liquidating

Trust is necessary to accomplish the liquidating purpose of the Trust, the Liquidating Trust's terms

may be extended for a finite term based on facts and circumstances.  Each extension of the term of

the Liquidating Trust must be approved by the Court.  The Liquidating Trust may be terminated

earlier than its scheduled termination if (a) the Bankruptcy Court has entered a Final Order closing

the Chapter 11 Cases pursuant to Bankruptcy Code section 350(a) and (b) the Liquidating Trustee

has administered all assets of the Liquidating Trust and performed all other duties required by the

Plan and the Liquidating Trust Agreement.  As soon as practicable after the Final Trust Distribution

Date, the Liquidating Trustee shall seek entry of a Final Order closing the Chapter 11 Cases pursuant

to Bankruptcy Code section 350.

### 4.    Liquidation of Causes of Action

Notwithstanding any other term or provision of the Plan, the Debtors shall have, prior

to the Effective Date, and the Liquidating Trustee shall have, on and after the Effective Date, sole

authority and responsibility for investigating, analyzing, commencing, prosecuting, litigating,

compromising, collecting, and otherwise administering the Causes of Action pursuant to the terms of

the Plan and Liquidating Trust Agreement.  Further, the Liquidation Trust Oversight Committee

shall set thresholds for approval with respect to the initiation of prosecution of any Avoidance

Actions in its sole discretion.

**5.      Liquidating Trustee**

(a)      Appointment

The appointment of the Liquidating Trustee shall be effective as of the Effective Date, although the Liquidating Trustee shall be entitled to payment of reasonable fees and expenses incurred prior to the Effective Date as approved by the Bankruptcy Court in the Confirmation Order. Successor Liquidating Trustee(s) shall be appointed as set forth in the Liquidating Trust Agreement.

(b)      Term

Unless the Liquidating Trustee resigns or dies earlier, the Liquidating Trustee's term shall expire upon termination of the Liquidating Trust pursuant to the Plan and/or the Liquidating Trust Agreement.

(c)      Powers and Duties

The Liquidating Trustee shall have the rights and powers set forth in the Liquidating Trust Agreement including, but not limited to, the powers of a debtor-in-possession under Bankruptcy Code sections 1107 and 1108. The Liquidating Trustee shall be governed in all things by the terms of the Liquidating Trust Agreement and the Plan. The Liquidating Trustee shall administer the Liquidating Trust, and its assets, and make Distributions from the proceeds of the Liquidating Trust in accordance with the Plan. In addition, the Liquidating Trustee shall, in accordance with the terms of the Plan, take all actions necessary to wind down the affairs of the Debtors consistent with the Plan and applicable non-bankruptcy law. Without limitation, the Liquidating Trustee shall file final federal, state, foreign and, to the extent applicable, local, tax returns. Subject to the terms of the Liquidating Trust Agreement, which includes, among other things, limitations on the Liquidating Trustee's discretion to take certain action without approval of the Liquidating Trust Oversight Committee or, in some circumstances, the Bankruptcy Court, the Liquidating Trustee shall be authorized, empowered and directed to take all actions necessary to comply with the Plan and exercise and fulfill the duties and obligations arising thereunder, including, without limitation, to:

(1)      object to the allowance of Claims pursuant to the terms of the Plan;

(2)     open, maintain and administer bank accounts as necessary to discharge the duties of the Liquidating Trustee under the Plan and the Liquidating Trust Agreement;

(3)     pay reasonable and necessary professional fees, costs, and expenses as set forth in the Plan;

(4)     investigate, analyze, commence, prosecute, litigate, compromise, and otherwise administer the Causes of Action and all related Liens for the benefit of the Liquidating Trust and its beneficiaries, as set forth in the Plan, and take all other necessary and appropriate steps to collect, recover, settle, liquidate, or otherwise reduce to Cash the Causes of Action, including all receivables, and to negotiate and effect settlements and lien releases with respect to all related Claims and all related Liens;

(5)     administer, sell, liquidate, or otherwise dispose of all Collateral and all other Assets of the Estates in accordance with the terms of the Plan and the Liquidating Trust Agreement;

(6)     represent the Estates before the Bankruptcy Court and other courts of competent jurisdiction with respect to matters concerning the Liquidating Trust;

(7)     seek the examination of any entity under and subject to the provisions of Bankruptcy Rule 2004;

(8)     report to the Liquidating Trust Oversight Committee and provide it with reasonable access to information regarding the Liquidating Trust;

(9)     comply with applicable orders of the Bankruptcy Court and any other court of competent jurisdiction over the matters set forth herein;

(10)    comply with all applicable laws and regulations concerning the matters set forth herein;

(11)    exercise such other powers as may be vested in the Liquidating Trust pursuant to the Liquidating Trust Agreement, the Plan, or other Final Orders of the Bankruptcy Court;

(12)    execute any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of the Liquidating Trust; and

(13)    stand in the shoes of the Debtors for all purposes.

(d)    Fees and Expenses

Except as otherwise provided in the Plan, compensation of the Liquidating Trustee and the costs and expenses of the Liquidating Trustee and the Liquidating Trust (including, without limitation, professional fees and expenses) shall be paid from the Liquidating Trust. The Liquidating Trustee shall pay, without further order, notice, or application to the Bankruptcy Court, the reasonable fees and expenses of the Liquidating Trust Professionals, as necessary to discharge the Liquidating Trustee's duties under the Plan and the Liquidating Trust Agreement. Payments to the Liquidating Trustee, or to the Liquidating Trust Professionals, shall not require notice to any party, or an order of the Bankruptcy Court approving such payments; provided, however, that the Liquidating Trustee shall be entitled to payment of reasonable fees and expenses incurred prior to the Effective Date in an amount to be agreed to by the Plan Proponents and approved by the Bankruptcy Court in the Confirmation Order. After the Effective Date, the Liquidating Trustee shall be entitled to payment at a rate of $25,000 for the first six months, $20,000 for the next twelve months, and $10,000 per month thereafter.

(e)    Retention of Professionals and Compensation Procedure

On and after the Effective Date, subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee may engage such professionals and experts as may be deemed

necessary and appropriate by the Liquidating Trustee to assist the Liquidating Trustee in carrying out

the provisions of the Plan and the Liquidating Trust Agreement, including, but not limited to,

professionals retained prior to the Effective Date by either the Debtors or the Creditors' Committee.

Prior to hiring a professional financial advisory firm who shall be selected by the Liquidating

Trustee in its sole discretion, the Liquidating Trustee shall consult Whippoorwill who shall have an

opportunity to express its views on the professional financial advisory firm.  Subject to the terms of

the Liquidating Trust Agreement, for services performed from and after the Effective Date,

Liquidating Trust Professionals shall receive compensation and reimbursement of expenses in a

manner to be determined reasonably by the Liquidating Trustee.

(f)    Liquidating Trustee as Successor

Pursuant to Bankruptcy Code section 1123(b), the Liquidating Trustee shall be the

successor to the Debtors for all purposes.

(g)    Compromising Claims

Pursuant to the Plan and the Liquidating Trust Agreement, as of the Effective Date,

the Liquidating Trustee is authorized to approve compromises of the Causes of Action and all

Claims, Disputed Claims, and Liens and to execute necessary documents, including Lien releases

and stipulations of settlement or release, without notice to any party and without further order of the

Bankruptcy Court, except as otherwise provided in the Liquidating Trust Agreement and pursuant to

the threshold amounts for approval as may be set by the Liquidation Trust Oversight Committee.

(h)    Investment Powers

The powers of the Liquidating Trustee to invest any Cash that is held by the

Liquidating Trust, other than those powers reasonably necessary to maintain the value of the assets

and to further the Liquidating Trust's liquidating purposes, shall be limited to powers to invest in

demand and time deposits, such as short-term certificates of deposit, in banks or other savings

institutions, or other temporary liquid investments, such as treasury bills.  The Liquidating Trustee is

prohibited from continuing or engaging in the conduct of a trade or business, except to the extent

reasonably necessary to and consistent with the liquidating purpose of the Liquidating Trust.

(i)    Distributions

The Liquidating Trustee is required to distribute at least annually to beneficiary Claimholders qualifying for Distributions from the Liquidating Trust under the Plan the Liquidating Trust's net income and all net proceeds from the sale of assets by the Liquidating Trust, except that the Liquidating Trust may retain an amount of Net Proceeds or net income reasonably necessary to maintain the value of its assets or to meet Claims and contingent liabilities (including Disputed Claims). The Liquidating Trustee shall make continuing efforts to dispose of the Liquidating Trust's Assets, make timely Distributions, and not unduly prolong the duration of the Liquidating Trust.

(j)    Vesting of Assets

On the Effective Date, all of the Liquidating Trust Assets shall automatically vest in the Liquidating Trust free and clear of all Liens, Claims, encumbrances, and other interests and shall thereafter be administered, liquidated by sale, collection, recovery, or other disposition and distributed by the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement and the Plan without further action of the Debtors.

**6.    Federal Income Taxation of Liquidating Trust**

(a)    Treatment of Liquidating Trust and Asset Transfers

For federal income tax purposes, the Debtors, the Liquidating Trust, the Liquidating Trustee and the beneficiary Claimholders shall treat the Liquidating Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124. For federal income tax  purposes, the transfer of assets to the Liquidating Trust under the Plan is treated as a deemed transfer to the beneficiary Claimholders in satisfaction of their Claims followed by a deemed transfer of the assets by the beneficiary Claimholders to the Liquidating Trust. For federal income tax purposes, the beneficiary Claimholders will be deemed to be the grantors and owners of the Liquidating Trust and their assets. For federal income tax purposes, the Liquidating Trust will be taxed as a grantor trust within the meaning of IRC Sections 671-677 (a non-taxable pass-through tax entity) owned by the beneficiary Claimholders. The Liquidating Trust will file federal income tax returns as a grantor trust under IRC Section 671 and Treasury Income Tax Regulation Section 1.671-4 and report, but not pay tax on the

Liquidating Trust's tax items of income, gain, loss deductions and credits ("Tax Items"). The beneficiary Claimholders will report on their federal income tax returns and pay any federal income tax liability attributable to such Liquidating Trust's Tax Items. The Debtors, Liquidating Trust and the beneficiary Claimholders will use consistent valuations of the assets transferred to the Liquidating Trust for all federal income tax purposes, such valuations to be determined jointly by the Debtors and the Liquidating Trustee.

**G.     No Revesting of Assets**

The property of the Debtors' Estates shall not be vested in the Debtors on or following the Effective Date, but shall be vested in the Liquidating Trust and continue to be subject to the jurisdiction of the Bankruptcy Court following confirmation of the Plan until such property is distributed to Holders of Allowed Claims in accordance with the provisions of the Plan, the Liquidating Trust Agreement, and the Confirmation Order.

**H.     Accounts**

The Liquidating Trustee shall (a) establish one or more general accounts into which shall be deposited all funds not required to be deposited into any other account or reserve and (b) create, fund, and withdraw funds from, as appropriate, any reserves or other accounts maintained or established by the Liquidating Trustee.

**I.     Release of Liens**

Except as otherwise provided in the Plan, the Confirmation Order, or in any document, instrument, or other agreement created in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, liens, or other security interests against the property of the Estates shall be released.

**J.     Exemption from Certain Transfer Taxes**

Pursuant to Bankruptcy Code section 1146(c), any transfers from any of the Debtors to the Liquidating Trust or to any other Person pursuant to the Plan in the United States shall not be subject to any stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental

assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**K.     Preservation of Causes of Action; Settlement of Causes of Action**

   **1.     Preservation of Causes of Action**

        In accordance with section 1123(b)(3) of the Bankruptcy Code or any corresponding provision of similar federal or state laws, on and after the Effective Date, (a) the Liquidating Trustee shall be deemed to be a representative of the Debtors as the party in interest in the Chapter 11 Cases and any adversary proceeding in the Chapter 11 Cases, under the Plan or in any judicial proceeding or appeal as to which any of the Debtors is a party and (b) the Liquidating Trustee shall retain all of the Causes of Action of the Debtors and their Estates, a nonexclusive list of which is set forth on Exhibit D, annexed hereto, and other similar claims arising under applicable state laws, including, without limitation, Avoidance Actions, if any, and all other causes of action of a trustee and debtor in possession under the Bankruptcy Code.  The Liquidating Trustee and/or the Liquidating Trust may, in accordance with the Liquidating Trust Agreement and the terms of this Plan, enforce, sue on, settle or compromise (or decline to do any of the foregoing) any or all of the Causes of Action.

        The Plan Proponents have not concluded their investigation into all of the Causes of Action.  Accordingly, in considering the Plan, each party in interest should understand that any and all Causes of Action that may exist against such Person or entity may be pursued by the Liquidating Trust and/or the Liquidating Trustee, regardless of whether, or the manner in which, such Causes of Action are listed on Exhibit D to this Plan.  The failure of the Plan Proponents to list a claim, right, cause of action, suit or proceeding on Exhibit D shall not constitute a waiver or release by the Debtors or their Estates of such claim, right of action, suit or proceeding.  The substantive consolidation of the Debtors and their Estates shall not, and shall not be deemed to, prejudice the Liquidating Trust with respect to any of the Causes of Action, which shall survive entry of the Confirmation Order for the benefit of the Debtors and their Estates, and, upon the Effective Date, for the benefit of the Liquidating Trust.

   **2.     Settlement of Causes of Action**

Subject to the terms of the Liquidating Trust Agreement, at any time after the Confirmation Date but before the Effective Date, notwithstanding anything in this Plan to the contrary, the Debtors may settle some or all of the Causes of Action with the approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019. After the Effective Date, the Liquidating Trustee, in accordance with the terms of this Plan and the Liquidating Trust Agreement, will determine whether to bring, settle, release, compromise, enforce or abandon such rights (or decline to do any of the foregoing).

**L.      Effectuating Documents; Further Transactions**

Subject to the terms and conditions of the Plan, prior to the Effective Date, any appropriate officer of the applicable Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Subject to the terms and conditions of the Plan and the Liquidating Trust Agreement, after the Effective Date, the Liquidating Trust shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

**A.      Special Provision Regarding Unimpaired Claims**

Except as otherwise provided in the Plan, the Confirmation Order, any other order of the Bankruptcy Court, or any document or agreement enforceable pursuant to the terms of the Plan, nothing shall affect the rights and defenses, both legal and equitable, of the Debtors and the Liquidating Trustee with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

**B.      Allowed Claims**

Except as set forth in Article VII.A above and in this Article VII.B, the Liquidating Trustee shall only make Distributions to Holders of Allowed Claims. No Holder of a Disputed

Claim will receive any Distribution on account thereof until (and then only to the extent that) its Disputed Claim becomes an Allowed Claim. The Liquidating Trustee may, in its discretion, withhold Distributions otherwise due hereunder to any Claimholder until the Claims Objection Deadline, to enable a timely objection thereto to be filed. Any Holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its Distribution in accordance with the terms and provisions of this Plan.

**C.    Distributions for Claims Allowed as of the Effective Date**

Except as otherwise provided herein or as ordered by the Bankruptcy Court, all Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Distribution Date by the Liquidating Trustee. Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made pursuant to the terms and conditions of this Plan. Notwithstanding any other provision of the Plan to the contrary, no Distribution shall be made on account of any Allowed Claim or portion thereof that (i) has been satisfied after the Petition Date pursuant to an order of the Bankruptcy Court; (ii) is listed in the Schedules as contingent, unliquidated, disputed or in a zero amount, and for which a Proof of Claim has not been timely filed; or (iii) is evidenced by a Proof of Claim that has been amended by a subsequently filed Proof of Claim that purports to amend the prior Proof of Claim.

**D.    Liquidating Trustee as Disbursing Agent**

The Liquidating Trustee shall make all Distributions required under this Plan, subject to the terms and provisions of this Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall be authorized and directed to rely upon the Debtors' books and records and its representatives and professionals in determining Allowed Claims not entitled to Distribution under the Plan in accordance with the terms of the Plan.

**E.    Delivery of Distributions and Undeliverable or Unclaimed Distributions**

**1.    Delivery of Distributions in General**

Distributions to Holders of Allowed Claims shall be made by the Liquidating Trustee (a) at the addresses set forth on the Proofs of Claim filed by such Holders, (b) at the addresses set forth in any written notices of address changes delivered to the Liquidating Trustee after the date of

any related Proof of Claim, (c) at the addresses reflected in the Schedules if no Proof of Claim has

been filed and the Liquidating Trustee has not received a written notice of a change of address, (d) at

the addresses set forth in the other records of the Debtors or the Liquidating Trustee at the time of

the Distribution or (e) in the case of the Holder of a Claim that is governed by an agreement and is

administered by an agent or servicer, at the addresses contained in the official records of such agent

or servicer.

Distributions shall be made from the Liquidating Trust in accordance with the terms

of this Plan and the Liquidating Trust Agreement.

In making Distributions under the Plan, the Liquidating Trustee may rely upon the

accuracy of the claims register maintained by the Claims Agent in the Chapter 11 Cases, as modified

by any Final Order of the Bankruptcy Court disallowing Claims in whole or in part.

The Liquidating Trustee may require any Claimant to furnish to the Liquidating

Trustee (a) its employer or taxpayer identification number as assigned by the IRS, and (b) such other

records or documents necessary to satisfy the Liquidating Trustee's tax reporting obligations

(including, but not limited to, certificates of non-foreign status).  The Liquidating Trustee may

condition the payment of any Distribution to any Claimant upon receipt of such identification

number and requested documents.  If the Liquidating Trustee, after contacting the Claimant on two

separate occasions and does not receive the requested employer or taxpayer identification number

requested after providing 30 days notice, the Claimant shall be deemed to have forfeited its interest

in the Distribution and such amount shall become the property of the Liquidating Trust free of any

restrictions thereon and notwithstanding any federal or state escheat laws to the contrary and shall be

distributed in accordance with the terms of this Plan as Net Distributable Proceeds and this

Liquidating Trust Agreement.

### 2.    Undeliverable and Unclaimed Distributions

If the Distribution to any Holder of an Allowed Claim is returned to the Liquidating

Trustee as undeliverable or is otherwise unclaimed, no further Distributions shall be made to such

Holder unless and until the Liquidating Trustee is notified in writing of such Holder's then-current

address, at which time all missed Distributions shall be made to such Holder without interest.