CRAIG H. MILLET, SBN 106027, CMillet@gibsondunn.com
KENNETH A. GLOWACKI, JR., SBN 217762, KGlowacki@gibsondunn.com
SOLMAZ KRAUS, SBN 223117, SKraus@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, California 92612-4412
Telephone: (949) 451-3800
Facsimile: (949) 451-4220

Attorneys for
Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| In re | CASE NO. 09-14254-MJ |
| FLEETWOOD ENTERPRISES, INC., et al., | Chapter 11 |
| Debtors. | [Jointly Administered] |
| | **NOTICE OF SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING SECOND AMENDED JOINT PLAN OF LIQUIDATION OF FLEETWOOD ENTERPRISES, INC. AND ITS AFFILIATED DEBTORS AND THE OFFICIAL COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS DATED APRIL 21, 2010** |

**Hearing On Disclosure Statement Held:**
Date:      April 14, 2010
Time:      2:30 p.m.
Place:     Courtroom 301
              3420 Twelfth Street
              Riverside, CA 92501

Judge:     Honorable Meredith A. Jury

1    TO THE HONORABLE MEREDITH A. JURY, UNITED STATES BANKRUPTCY JUDGE, AND

2    ALL PARTIES ENTITLED TO NOTICE:

3        **PLEASE TAKE NOTICE** that on March 3, 2010, Fleetwood Enterprises, Inc. and its

4    affiliated debtors and debtors in possession (the "Debtors" or "Fleetwood") and the Official

5    Committee of Creditors Holding Unsecured Claims (the "Creditors' Committee," together with the

6    Debtors, the "Plan Proponents"), filed: (i) the *Disclosure Statement Describing Joint Plan Of*

7    *Liquidation Of Fleetwood Enterprises, Inc. And Its Affiliated Debtors And The Official Committee of*

8    *Creditors Holding Unsecured Claims Dated March 3, 2010* [Docket No. 1868] (the "Disclosure

9    Statement"); (ii) the *Joint Plan of Liquidation Of Fleetwood Enterprises, Inc. And Its Affiliated*

10   *Debtors And the Official Committee Of Creditors Holding Unsecured Claims Dated March 3, 2010*

11   [Docket No. 1867] (the "Plan"); and (iii) a motion for approval of the Disclosure Statement and the

12   solicitation procedures and dates regarding Plan confirmation [Docket No. 1869] (the "Motion").

13       **PLEASE TAKE FURTHER NOTICE** that, as a result of the Plan Proponents' ongoing

14   negotiations with multiple creditors and parties-in-interest, as well as in response to objections filed

15   in response to the Motion, the Plan Proponents revised the Disclosure Statement and its appendices,

16   which revisions were reflected in the *First Amended Disclosure Statement Describing the First*

17   *Amended Joint Plan Of Liquidation Of Fleetwood Enterprises, Inc. And Its Affiliated Debtors And*

18   *The Official Committee of Creditors Holding Unsecured Claims Dated April 12, 2010* [Docket No.

19   2061] (the "First Amended Disclosure Statement").

20       **PLEASE TAKE FURTHER NOTICE** that, at the Disclosure Statement Hearing held on

21   April 14, 2010, various objecting creditors and parties-in-interest agreed to certain additional changes

22   to the First Amended Disclosure Statement, with which the Court agreed.  Further negotiations with

23   multiple creditors and parties-in-interest after the Disclosure Statement Hearing yielded additional

24   consensual changes to the First Amended Disclosure Statement.  All of these revisions are reflected

25   in the *Second Amended Disclosure Statement Describing the Second Amended Joint Plan Of*

26   *Liquidation Of Fleetwood Enterprises, Inc. And Its Affiliated Debtors And The Official Committee of*

27   *Creditors Holding Unsecured Claims Dated April 21, 2010* (the "Second Amended Disclosure

28

Gibson, Dunn &
Crutcher LLP

1  Statement"), a clean version of which is attached hereto as **Exhibit A** and a "track changes" version

2  of which is attached hereto as **Exhibit B**.

3      **PLEASE TAKE FURTHER NOTICE** that the Second Amended Disclosure Statement is

4  accessible at the Court's Internet site, www.cacb.uscourts.gov, through an account obtained from

5  Pacer Service Center by dialing 1-800-676-6856 (from the United States) or (210) 301-6440 (from

6  outside the United States).   You may also obtain a copy *free of charge* by accessing the website

7  maintained by the Debtors' claims and noticing agent, Kurtzman Carson Consultants, LLC, at

8  www.kccllc.net/fleetwood.

9  Dated:  April 21, 2010

CRAIG MILLET
SOLMAZ KRAUS
KENNETH A. GLOWACKI JR.
GIBSON, DUNN & CRUTCHER LLP

By:_____/S/ Kenneth A. Glowacki Jr._____
            Kenneth A. Glowacki Jr.

Attorneys for Debtors and Debtors in Possession

100853189_1.DOC

Gibson, Dunn &
Crutcher LLP

# Exhibit A

CRAIG H. MILLET, SBN 106027, CMillet@gibsondunn.com
KENNETH A. GLOWACKI JR., SBN 217762, KGlowacki@gibsondunn.com
SOLMAZ KRAUS, SBN 223117, SKraus@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, California 92612-4412
Telephone: (949) 451-3800
Facsimile: (949) 451-4220

Attorneys for Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| In re | CASE NO. 09-14254-MJ |
| FLEETWOOD ENTERPRISES, INC., et al., | Chapter 11 |
| Debtors. | [Jointly Administered] |
| | **DEBTORS' SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING SECOND AMENDED JOINT PLAN OF LIQUIDATION OF FLEETWOOD ENTERPRISES, INC. AND ITS AFFILIATED DEBTORS AND THE OFFICIAL COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS DATED APRIL 21, 2010** |
| | **Hearing On Disclosure Statement Held:** <br> Date:    April 14, 2010 <br> Time:    2:30 p.m. <br> Place:    Courtroom 301 <br>             3420 Twelfth Street <br>             Riverside, CA 92501 <br><br> Judge:    Honorable Meredith A. Jury |

# DISCLAIMER

THE INFORMATION CONTAINED IN THIS SECOND AMENDED DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE SECOND AMENDED JOINT PLAN OF LIQUIDATION OF FLEETWOOD ENTERPRISES, INC. AND ITS AFFILIATED DEBTORS AND THE OFFICIAL COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE SECOND AMENDED PLAN. NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS SECOND AMENDED DISCLOSURE STATEMENT, REGARDING THE SECOND AMENDED PLAN OR THE SOLICITATION OF ACCEPTANCES THEREOF.

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS SECOND AMENDED DISCLOSURE STATEMENT AND THE SECOND AMENDED PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT SAID PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS SECOND AMENDED DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE SECOND AMENDED PLAN AND THE EXHIBITS AND SCHEDULES ANNEXED THERETO AND HERETO. IN THE EVENT OF ANY INCONSISTENCIES BETWEEN THE SECOND AMENDED PLAN AND THE SUMMARY OF SAID PLAN AS SET FORTH IN THIS SECOND AMENDED DISCLOSURE STATEMENT, THE TERMS OF THE SECOND AMENDED PLAN SHALL CONTROL. THE STATEMENTS CONTAINED IN THIS SECOND AMENDED DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS SECOND AMENDED DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE UNITED STATES BANKRUPTCY CODE AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAW. IT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING SECURITIES OR CLAIMS OF FLEETWOOD ENTERPRISES, INC. OR ANY OF THE AFFILIATED DEBTORS AND DEBTORS IN POSSESSION IN THESE CASES SHOULD EVALUATE THIS SECOND AMENDED DISCLOSURE STATEMENT AND THE SECOND AMENDED PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS SECOND AMENDED DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS PURSUANT TO RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND OTHER APPLICABLE EVIDENTIARY RULES. THIS SECOND AMENDED DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE SECOND AMENDED PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, FLEETWOOD ENTERPRISES, INC. OR ANY OF THE AFFILIATED DEBTORS AND DEBTORS IN POSSESSION IN THESE CASES.

## OVERVIEW OF THE CHAPTER 11 CASES, THE PLAN AND THE TREATMENT OF CLAIMS AND EQUITY INTERESTS THEREUNDER

This Second Amended Disclosure Statement (the "Disclosure Statement") contains, among other things, descriptions and summaries of provisions of the Second Amended Joint Plan of Liquidation of Fleetwood Enterprises, Inc. and its Affiliated Debtors (collectively, the "Debtors" or "Fleetwood") and the Official Committee of Creditors Holding Unsecured Claims (the "Creditors' Committee"), dated as of April 21, 2010 (the "Plan"). The Debtors and the Creditors' Committee are the proponents of the Plan (the "Plan Proponents").

*The following introduction and summary (the "Overview") is a general overview only, which is qualified in its entirety by, and should be read in conjunction with, the more detailed discussions, information and financial statements and notes thereto appearing elsewhere in this Disclosure Statement and the Plan. This Overview is intended solely as a summary of the background of the Debtors' Chapter 11 Cases and the distribution provisions of the Plan and is qualified in its entirety by the terms and provisions of the Plan.*

YOUR RIGHTS MAY BE AFFECTED BY PLAN CONFIRMATION. FOR A COMPLETE UNDERSTANDING OF THE PLAN AND HOW IT MAY AFFECT YOUR RIGHTS, YOU SHOULD READ THE DISCLOSURE STATEMENT, THE PLAN AND THE EXHIBITS THERETO IN THEIR ENTIRETY.

All capitalized terms not defined in this Disclosure Statement have the meanings ascribed to such terms in the Plan. A copy of the Plan is annexed hereto as <u>Appendix A</u>.

### A.    Introductory Note

Fleetwood Enterprises, Inc. ("FEI") and certain of its affiliates filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") on March 10, 2009 (the "Petition Date"),[1] thereby commencing these cases (the "Cases"). The Cases are pending before the United States Bankruptcy Court for the Central District of California, Riverside Division, before the Honorable Meredith Jury (the "Bankruptcy Court" or "Court"). The Cases are being jointly administered under Cases No. 09-14254-MJ. The Debtors are managing their affairs as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

### B.    General Structure of the Plan

The Plan is a liquidating plan. Pursuant to prior orders of the Bankruptcy Court, the Debtors have sold or will sell substantially all of their Assets. The Plan provides for the orderly liquidation of the remaining Assets of the Debtors and the distribution of the proceeds of the liquidation of the Debtors' Assets according to the priorities set forth in the Bankruptcy Code. To accomplish these liquidation and distribution goals, the Plan contemplates the creation of a Liquidating Trust to hold estate assets and the appointment of a Liquidating Trustee to administer such assets.

The Plan also provides for the substantive consolidation of all fifty (50) of the Debtors' estates. Following entry of the order approving the Plan (the "Confirmation Order"), on the Effective Date, (i) all Intercompany Claims by, between and among the Debtors shall be eliminated, (ii) all assets and liabilities of the Debtors shall be merged or treated as if they are one set of assets and

---

[1]  For the reasons set forth below in section III.E., five additional Fleetwood retail debtors filed their chapter 11 petitions on July 29, 2009 and August 11, 2009. However, for purposes of this Disclosure Statement, the Petition Date is defined as March 10, 2009.

liabilities, (iii) any obligation of a Debtor and all guarantees thereof by one or more of the other Debtors shall be deemed to be one obligation, (iv) the Equity Interests shall be cancelled, and (v) each Claim filed or to be filed against any Debtor shall be deemed a single Claim against, and a single obligation of, the consolidated Debtors.

**C.    Summary of Treatment of Claims and Equity Interests Under the Plan**

Under the Plan, Claims and Equity Interests are treated according to the priority rules set forth in the Bankruptcy Code.  Under the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified under the Plan.  Allowed Administrative Claims are intended to be paid in full on or, as soon as reasonably practicable after, the Distribution Date of the Plan (or thereafter when they become allowed) or, for ordinary course Administrative Claims, when such Claims become due.  Priority Tax Claims are intended to be paid in full in regular installment Cash payments, occurring not less frequently than quarterly over a period not exceeding five (5) years after the Petition Date.

A Claim is a Disputed Claim until it becomes an Allowed Claim.  Only an Allowed Claim will receive a distribution under the Plan.  The table below summarizes the classification and treatment of prepetition Claims and Equity Interests under the Plan.  The table below also contains an estimate of the percentage recoveries that the Plan Proponents believe will ultimately be available to each Class of Claims.  These estimates are based upon a number of assumptions, which may or may not prove to be accurate.

**Summary of Claims Against, and Equity Interests in, the Debtors**

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| N/A | Administrative Claims | $3.1 million | Full payment – one hundred cents on the dollar (100/100) upon the earlier of the Distribution Date immediately following the date the Claim becomes an Allowed Claim or the date that is ninety (90) days after the date on which such Claim becomes an Allowed Claim. |
| N/A | Priority Tax Claims | $1.0 million | Full payment – one hundred cents on the dollar (100/100) consistent with Bankruptcy Code section 1129(a)(9)(C). |
| 1 | Non-Tax Priority Claims | $7.2 million | Full payment – one hundred cents on the dollar (100/100).  Cash equal to the unpaid portion of the Allowed Non-Priority Claim or such other treatment as agreed upon between the Claim holder and the Liquidating Trustee upon the earlier of the Distribution Date immediately following the date that the Claim becomes an Allowed Claim or 90 days after the date when such claim becomes an Allowed Claim.<br><br>Estimated Projected Payment: 100%<br>**Unimpaired; Deemed to Accept** |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 2 | Secured Credit Facility Claim | $1.7 million | Cash equal to 105% of the face amount as of the Effective Date of Outstanding Letters of Credit (as defined in the Interim DIP Order) issued on behalf of any or all of the Debtors by Bank of America, which shall be placed in a segregated account, plus the other treatment as more fully set forth in Section IV.B.2 of the Plan.<br><br>Estimated Projected Payment:  100%<br>**Impaired; Entitled to Vote** |
| 3 | ISIS Claim | $17.8 million | On or as soon as reasonably practicable after the Effective Date, the Allowed ISIS Claim shall be treated in the manner set forth in Article IV.B.3 in the Plan as agreed to between the parties.<br><br>Estimated Projected Payment: 100%<br>**Impaired; Entitled to Vote** |
| 4 | Miscellaneous Secured Claims | Unknown | At the election of the Liquidating Trustee, (i) Cash equal to the lesser of the unpaid portion of such Allowed Claim and the value of the Holder's Collateral securing the Miscellaneous Secured Claim as required pursuant to section 506(b) of the Bankruptcy Code; (ii) a return of the Holder's Collateral; or (iii) such other treatment as agreed to in writing upon the earlier of (a) the Distribution Date immediately following the date the Claim becomes an Allowed Claim or (b) the date that is ninety (90) days after the date on which such Claim becomes an Allowed Claim.<br><br>Estimated Projected Payment: 100%<br>**Unimpaired; Deemed to Accept** |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 5 | 14% Notes Claims | $84.3 million | On the Effective Date, the Liens of the 14% Notes shall remain as valid Liens for Plan purposes only and the 14% Notes Claims shall be Allowed as a Secured Claim in the amount of $84,256,664.  In full and final satisfaction of their Secured Allowed Claim, the 14% Notes Claims shall receive their Pro Rata share of 43.5% of the Net Distributable Proceeds, net of the fees and expenses payable to DB and Whippoorwill (including those of their counsel) and the distribution to Class 8, the Initial Net Distributable Proceeds of which shall be payable on the Effective Date, and the balance of which shall be distributable on each subsequent Distribution Date, as reasonably practicable after the Liquidating Trust acquires such Net Distributable Proceeds.  The Distribution to the 14% Notes Claims shall be subject to the exercise by DB of any contractual right of priority or charging lien under the 14% Indenture for payment of its fees and expenses. *See* Section IV.B.5 in the Plan for further treatment.<br><br>Estimated Projected Payment: 21%<br>**Impaired; Entitled to Vote** |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 6 | General Unsecured Claims | $115 million to $195 million | Provided that all Allowed Administrative Claims, Priority Claims and Secured Claims have been paid in full or funds sufficient to satisfy all Allowed Administrative Claims, Priority Claims and Secured Claims have been placed in a segregated reserve, as set forth in the Plan and in the Liquidating Trust Agreement, and subject to the occurrence of the Effective Date, on, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date a General Unsecured Claim becomes an Allowed General Unsecured Claim or (b) the date that is ninety (90) days after the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for such Allowed General Unsecured Claim, its Pro Rata share of the Initial Net Distributable Proceeds, if any, and, on each Periodic Distribution Date, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the Periodic Net Distributable Proceeds not to exceed in the aggregate 56.5% of the total Net Distributable Proceeds.  In the aggregate, including any distributions herein to Classes 7, 10 (to the extent of any deficiency), 11 (to the extent of any deficiency), Allowed General Unsecured Claims shall receive 56.5% of the Net Distributable Proceeds available for distribution.<br><br>Estimated Projected Payment:  10.3% to 17.4%<br>**Impaired; Entitled to Vote** |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 7 | 6% Notes Claims | $161.173 million | Provided that all Allowed Administrative Claims, Priority Claims and Secured Claims have been paid in full or funds sufficient to satisfy all Allowed Administrative Claims, Priority Claims and Secured Claims have been placed in a segregated reserve, as set forth in the Plan and in the Liquidating Trust Agreement, and subject to the occurrence of the Effective Date, and subject to acceptance of the Plan by Class 7, in full and final satisfaction of their Allowed Claim, Holders of 6% Notes Claims shall receive $2 million from the 56.5% Net Distributable Proceeds allocable to the General Unsecured Claims, which amount shall be paid at the time Distributions are made to General Unsecured Creditors pursuant to the Plan or at such earlier time as the Liquidating Trustee shall determine in its sole and absolute discretion. Concurrently with the final payment of Professional Fee Claims for the Debtors and the Creditors' Committee after the Effective Date and provided that Class 7 has voted to accept the Plan, the fees and expenses of the indenture trustee of the 6% Notes and the trustee's professionals, including its counsel, shall be paid to such applicable indenture trustee or professional, subject to a review for reasonableness by the Creditors' Committee, out of the 56.5% of the Net Distributable Proceeds allocable to the Allowed General Unsecured Claims, but if at the time of such distribution, there are insufficient funds to make payment in full, then such fees shall be paid Pro Rata with other professionals propose to be paid at such time under the Plan (including DB Fees and Whippoorwill Fees). <br><br>Estimated Projected Payment:  1.2% <br>**Impaired; Entitled to Vote** |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 8 | 5% Notes Claims | $1.069 million | Pursuant to the terms of the Noteholder Settlement among the Creditors' Committee and the Holders of a majority of the 14% Notes, the parties agreed that the Holders of the 14% Notes Claims would pay for the Distribution to the Holders of the 5% Notes Claims, if any, out of the 43.5% of the Net Distributable Proceeds allocable to the Allowed 14% Notes Claims.  ~~Plan~~ Pursuant to negotiations between the Holders of a majority of the 14% Notes and Law Debenture Trust Company of New York, as indenture trustee for the 5% Notes (the "5% Indenture Trustee"), provided that Class 8 does not vote to reject the Plan and the 5% Indenture Trustee does not object to the Plan or Disclosure Statement, Holders of the Allowed 14% Notes Claims will allocate to Holders of Allowed 5% Notes Claims a total of $75,000 from the 43.5% of Net Distributable Proceeds allocated to the Allowed 14% Notes Claims.  The $75,000 distribution to Holders of Allowed 5% Notes Claims shall include all fees and expenses of the 5% Indenture Trustee and shall be subject to the exercise by such 5% Indenture Trustee of any contractual right of priority or charging lien under the 5% Notes indenture for payment of its fees and expenses.  Distributions to Holders of Class 8 Claims shall be made pro rata and contemporaneously with the first distribution to the Holders of Class 5 Claims, other than payments for fees and expenses of DB and Whippoorwill.<br><br>Estimated Projected Payment:  6.8%<br>**Impaired; Entitled to Vote** |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 9 | Convenience Claims | $5 million (approximate) | Holders of an Allowed Convenience Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for such Convenience Claim, 25% of their Allowed Claim as a final distribution.  Holders of Class 6 Claims in excess of $10,000 will be eligible to opt into this Class by reducing their claim to $10,000 by checking the "Opt-In to Convenience Class" box on their ballot.  Total distributions under this Class are anticipated to be limited to $1.25 million, subject to the Liquidating Trustee's discretion to increase this amount at the time of the Initial Distribution Date.  In the event that this Class has greater demand than funds allocated to this Class, then the Liquidating Trustee shall have the absolute discretion to select and remove certain of the opt-in members of this Class.  In no instance shall the Liquidating Trustee remove a non-opt-in Allowed Convenience Claim from this Class.<br><br>Estimated Projected Payment:  22.4%<br>**Impaired; Entitled to Vote** |
| 10 | Product Liability PI Claims | Unknown | Unless their Product Liability PI Claim has previously become an Allowed Claim, all Holders of Claims in Class 10 shall be required to participate in the Product Liability PI Claim Mediation Process attached to the Disclosure Statement as <u>Appendix E</u>.  As provided in the Product Liability PI Claim Mediation Process, if and when Allowed, Holders of Class 10 Claims shall receive a Pro Rata distribution of available insurance proceeds from Gibraltar policies covering Product Liability PI Claims upon the year in which the claim arose.  To the extent the allowed amount of any Class 10 Claim is not paid in full with insurance proceeds, then the unpaid deficiency amount shall receive the treatment provided for under Class 6 for Allowed General Unsecured Claims.<br><br>Estimated Projected Payment:  Unknown<br>**Impaired; Entitled to Vote** |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 11 | WARN Class Claims and Severance Class Claims | Unknown | If the WARN and Severance Class Settlement Agreement is approved:<br>• Class Members who do not Opt Out will receive the treatment afforded in the WARN and Severance Class Settlement.<br>• Class Members who Opt Out, who have filed claims and whose Claims are Allowed Claims, shall receive full payment of their Claims up to the cap set by Bankruptcy Code section 507 with any excess treated as an unsecured claim to share Pro Rata with Claims in Class 6.<br>If the WARN and Severance Class Settlement Agreement is *not* approved:<br>• The WARN Class Claim and Severance Class Claims shall continue to be litigated and class members whose Claims become Allowed Claims, shall receive full payment of their Claims up to the cap set by Bankruptcy Code section 507 with any excess treated as Claims in Class 6.<br><br>Estimated Projected Payment:  Unknown<br>**Impaired; Entitled to Vote** |
| 12A | Lumbermen's Underwriting Alliance | Unknown | On the Effective Date, in full and final satisfaction of its Allowed Claim, the Holder of Allowed Claims in Class 12A shall be permitted to retain any proceeds of previously drawn letters of credit, as well as other Cash on hand, in exchange for waiver of any deficiency Claim.<br><br>Estimated Projected Payment:  Unknown<br>**Impaired; Entitled to Vote** |
| 12B | Georgia Self Insurance Guaranty Trust Fund | Unknown | On the Effective Date, in full and final satisfaction of its Allowed Claim, the Holder of Allowed Claims in Class 12B shall be permitted to retain any proceeds of previously drawn letters of credit, as well as other Cash on hand, in exchange for waiver of any deficiency Claim.<br><br>Estimated Projected Payment:  Unknown<br>**Impaired; Entitled to Vote** |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 13A | Westchester Fire Insurance Company and ACE INA Insurance | Unknown | The Class 13A Holder has an unliquidated Claim as set forth in Proofs of Claim filed by the Class 13A Holder and assigned number 7661 through 7678, inclusive, on the register maintained by the Debtors' claims agent, against which it is holding the Cash proceeds of Letter of Credit No. 3051853, drawn in full by ACE on December 29, 2009 and which, as of April 1, 2010, totaled $11,783,000. ACE shall continue to have whatever rights it had or now has under the ACE Order [Docket No. 103], if any, and the Plan does not vacate, alter, rescind or modify the ACE Order nor does it provide ACE with any greater rights than ACE may have under the ACE Order and the agreements reference therein.  Estimated Projected Payment: Unknown **Impaired; Entitled to Vote** |
| 13B | Old Republic Insurance Co. | Unknown | Upon a Claim in Class 13B becoming an Allowed Claim, the Holder of a Class 13B Claim shall be permitted to either: (i) to the extent the Allowed Claim is *less than* the amount of the Collateral held by Holder, retain the Collateral up to the amount of such Allowed Claim and any excess shall be returned to the Liquidating Trustee; (ii) to the extent the Allowed Claim *exceeds* the amount of the Collateral held by Holder, retain the Collateral and the amount by which the Allowed Claim exceeds the amount of the Collateral shall be treated as a General Unsecured Claim in Class 6; or (iii) accept such other treatment as to which such Holder and the Debtors and/or Liquidating Trustee shall have agreed upon in writing.  Estimated Projected Payment: Unknown **Unimpaired; Deemed to Accept** |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 13C | National Union Fire Insurance Company of Pittsburgh, PA, et al. | Unknown | Upon a Claim in Class 13C becoming an Allowed Claim, the Holder of a Class 13C Claim shall be permitted to either: (i) to the extent the Allowed Claim is *less than* the amount of the Collateral held by Holder, retain the Collateral up to the amount of such Allowed Claim and any excess shall be returned to the Liquidating Trustee; (ii) to the extent the Allowed Claim *exceeds* the amount of the Collateral held by Holder, retain the Collateral and the amount by which the Allowed Claim exceeds the amount of the Collateral shall be treated as a General Unsecured Claim in Class 6; or (iii) accept such other treatment as to which such Holder and the Debtors and/or Liquidating Trustee shall have agreed upon in writing.<br><br>Estimated Projected Payment: Unknown<br>**Unimpaired; Deemed to Accept** |
| 13D | Fidelity and Deposit Company of Maryland | Unknown | Upon a Claim in Class 13D becoming an Allowed Claim, the Holder of a Class 13D Claim shall be permitted to either: (i) to the extent the Allowed Claim is *less than* the amount of the Collateral held by Holder, retain the Collateral up to the amount of such Allowed Claim and any excess shall be returned to the Liquidating Trustee; (ii) to the extent the Allowed Claim *exceeds* the amount of the Collateral held by Holder, retain the Collateral and the amount by which the Allowed Claim exceeds the amount of the Collateral shall be treated as a General Unsecured Claim in Class 6; or (iii) accept such other treatment as to which such Holder and the Debtors and/or Liquidating Trustee shall have agreed upon in writing.<br><br>Estimated Projected Payment: Unknown<br>**Unimpaired; Deemed to Accept** |
| 14 | Intercompany Claims By and Between Debtors | Unknown | On the Effective Date, all Intercompany Claims by and between the Debtors shall be cancelled.<br><br>Estimated Projected Payment: 0%<br>**Impaired; Deemed to Reject** |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 15 | Equity Interests | Unknown | On the Effective Date, all Equity Interests shall be cancelled.<br><br>Estimated Projected Payment:  0%<br>**Impaired; Deemed to Reject** |

**ALTHOUGH THE PLAN PROPONENTS HAVE DONE THEIR BEST TO ENSURE THE ACCURACY OF THE ESTIMATED CLAIM AMOUNTS AND THE ESTIMATED PERCENTAGE RECOVERIES SHOWN IN THE TABLE ABOVE, THE _ACTUAL_ CLAIM AMOUNTS AND PERCENTAGE RECOVERIES MAY VARY.**

The actual recoveries under the Plan will be dependent upon a variety of factors including, but not limited to, whether, and in what amount and with what priority, Contingent Claims against the Debtors become non-contingent, fixed and Allowed Claims; and whether, and to what extent, Disputed Claims are resolved in favor of the Debtors.  Accordingly, no representation can be nor is any representation being made with respect to whether each estimated percentage recovery shown in the table above will be realized by the Holder of an Allowed Claim in any particular Class.

**IN THE VIEW OF THE PLAN PROPONENTS, THE PLAN PROVIDES THE HOLDERS OF CLAIMS WITH THE BEST RECOVERY POSSIBLE.  ACCORDINGLY, THE PLAN PROPONENTS BELIEVE THAT THE PLAN IS IN THE BEST INTERESTS OF SUCH HOLDERS AND STRONGLY RECOMMEND THAT ALL SUCH HOLDERS ENTITLED TO VOTE, VOTE TO ACCEPT THE PLAN.**

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................... 2

   A.    Contents of the Disclosure Statement ............................................... 2

   B.    Purpose and Effect of Plan................................................................ 2

II. DESCRIPTION OF THE DEBTORS' PRIOR BUSINESS, EVENTS THAT
PRECIPITATED THE FILING OF THESE CHAPTER 11 CASES...................................... 3

   A.    Overview of the Debtors and Their Prior Businesses ......................... 3

       1.    Fleetwood's Businesses ................................................... 3

       2.    Fleetwood's Corporate Structure ..................................... 4

       3.    Manufactured Homes Business......................................... 4

       4.    FRC's Business ............................................................... 5

       5.    Recreational Vehicles Business:  Motor Homes and Travel Trailers .............. 6

   B.    Fleetwood's Debt and Equity Structure ............................................ 7

       1.    Prepetition Secured Bank Debt ........................................ 7

       2.    5% Notes ........................................................................ 8

       3.    6% Notes ........................................................................ 8

       4.    The 5% Notes Put Right, The Exchange Offer and the Repurchase
Offer .............................................................................. 9

       5.    The New 14% Secured Notes ........................................... 9

       6.    Common Stock Issued in the Repurchase Offer in Exchange for 5%
Notes ............................................................................ 11

       7.    Remaining 5% Notes That Neither Tendered in the Exchange Offer nor
the Repurchase Offer...................................................... 11

       8.    ISIS Lending Obligation ................................................ 11

       9.    The ISIS Replacement Liens............................................ 12

       10.   Summary of Indebtedness .............................................. 12

       11.   FEI's Intercompany Claim Against the Subsidiary Debtors............ 13

       12.   Equity Interests in the Debtors ...................................... 13

   C.    Fleetwood's Business Downturn And Liquidity Crisis ...................... 14

TABLE OF CONTENTS
[Continued]

|   |   |   | Page |
|---|---|---|---|
| D. | | After Exploring Alternatives, Fleetwood Sought Relief Under Chapter 11 | 16 |
| III. | SIGNIFICANT EVENTS OCCURRING IN THESE CHAPTER 11 CASES | | 17 |
| A. | | Overview of Chapter 11 and the Plan Process | 17 |
| B. | | The Transition to Operations as Debtors in Possession | 18 |
| | 1. | Cash Collateral Motion | 18 |
| | 2. | Joint Administration Motion | 19 |
| | 3. | Cash Management Motion | 20 |
| | 4. | Utilities Motion | 20 |
| | 5. | Employee Wages and Benefits Motion | 21 |
| C. | | Appointment of the Creditors' Committee | 21 |
| D. | | Professionals Retained at the Expense of the Estates | 21 |
| E. | | Subsequent Chapter 11 Filing by Five Fleetwood Retail Corp. Entities | 22 |
| F. | | Fleetwood's Application to Have These Chapter 11 Cases Recognized as a Foreign Proceeding in Canada | 23 |
| G. | | The Bar Dates for Pre-Petition Claims | 24 |
| H. | | Management Compensation | 24 |
| I. | | D&O Insurance | 25 |
| J. | | Significant Asset Sales Occurring During the Bankruptcy Cases | 26 |
| | 1. | Military Housing Assets | 27 |
| | 2. | RV Assets | 28 |
| | 3. | Housing Assets | 29 |
| | 4. | Travel Trailer Inventory | 30 |
| | 5. | La Grande, Oregon Travel Trailer Manufacturing Plant | 31 |
| | 6. | Mexicali Assets | 31 |
| | 7. | Miscellaneous Asset Sales | 32 |
| K. | | Certain Environmental Matters | 34 |
| | 1. | Riverside District Attorney | 34 |

**TABLE OF CONTENTS**
**[Continued]**

| | | | | Page |
|---|---|---|---|---|---|

|       | 2.  | SCAQMD | 35 |

| L. | The Browder Class Action | 36 |

| M. | Litigation Commenced During these Chapter 11 Cases | 38 |

|       | 1.  | WARN and Severance Class Actions and Pending Settlements | 38 |

|       | 2.  | First American Trust Company Adversary Proceeding | 39 |

|       | 3.  | Schechter Litigation | 42 |

|       | 4.  | Deutsche Bank Litigation | 42 |

| N. | Plan Preparations and Negotiations | 43 |

|       | 1.  | Plan Exclusivity | 43 |

|       | 2.  | Plan Negotiations | 43 |

**IV. DESCRIPTION OF ASSETS AND LIABILITIES (INCLUDING CLAIMS) OF THE DEBTORS** .......... 44

| A. | Anticipated Assets of the Debtors as of the Effective Date | 44 |

| B. | Description of Liabilities | 44 |

|       | 1.  | Scheduled Liability | 44 |

|       | 2.  | Filed Claims Summary | 45 |

**V. INSURANCE CONSIDERATIONS:  PRODUCT LIABILITY PI CLAIMS, WORKERS' COMPENSATION CLAIMS, AND FEMA CLAIMS** .......... 45

| A. | Gibraltar Insurance Company, Ltd. and Insurance Coverage Provided | 45 |

|       | 1.  | General Overview | 45 |

|       | 2.  | Important Financial Information Regarding Gibraltar and Unknown Factors That May Affect Insurance Coverage | 46 |

| B. | Product Liability PI Claims | 47 |

|       | 1.  | Product Liability Insurance Coverage Provided By Gibraltar to Debtors and Availability for Product Liability PI Claims | 47 |

| C. | Product Liability PI Claims Mandatory Mediation Procedures | 48 |

| D. | Workers' Compensation Claims and Claims of Those Holding Proceeds of Letters of Credit | 49 |

|       | 1.  | Workers' Compensation Insurance | 49 |

TABLE OF CONTENTS
[Continued]

|  |  |  | Page |
|---|---|---|---|
| | 2. | ACE INA and Westchester--Bonding | 54 |
| | 3. | Debtors' Plan Regarding Undrawn Letters of Credit | 56 |
| E. | | FEMA Claims | 59 |
| VI. SUMMARY OF THE SECOND AMENDED PLAN OF LIQUIDATION | | | 61 |
| A. | | Treatment of Claims and Equity Interests | 61 |
| | 1. | Unclassified Claims | 61 |
| | 2. | Claims | 62 |
| B. | | Acceptance or Rejection of the Plan by Claim Holders | 85 |
| | 1. | Impaired Classes of Claims Entitled to Vote | 85 |
| | 2. | Acceptance by an Impaired Class | 85 |
| | 3. | Presumed Acceptances by Unimpaired Classes | 85 |
| | 4. | Classes Deemed to Reject Plan | 85 |
| | 5. | Summary of Classes Voting on the Plan | 85 |
| | 6. | Confirmation Pursuant to Bankruptcy Code Section 1129(b) | 85 |
| C. | | Substantive Consolidation of All of the Debtors' Estates | 86 |
| | 2. | The Plan Proponents Can Satisfy the Single Entity Test | 87 |
| | 3. | The Plan Proponents Can Satisfy the Hopeless Entanglement Test | 87 |
| | 4. | The Effect of Substantive Consolidation Under the Plan | 88 |
| D. | | Employee Related Provisions | 89 |
| | 1. | Employees | 89 |
| | 2. | KEIP Payments | 89 |
| | 3. | Benefit Plans | 89 |
| E. | | The Liquidating Trust | 89 |
| | 1. | Establishment of Liquidating Trust | 89 |
| | 2. | Trust Distributions | 89 |
| | 3. | Duration of Trust | 90 |
| | 4. | Liquidation of Causes of Action | 90 |

TABLE OF CONTENTS
[Continued]

| | | | Page |
|---|---|---|---|
| | 5. | Liquidating Trustee | 90 |
| | 6. | Federal Income Taxation of Liquidating Trust | 93 |
| F. | | Release of Liens | 93 |
| G. | | Exemption from Certain Transfer Taxes | 93 |
| H. | | Preservation of Causes of Action; Settlement of Causes of Action | 94 |
| | 1. | Preservation of Causes of Action | 94 |
| | 2. | Settlement of Causes of Action | 94 |
| I. | | Provisions Governing Distributions | 94 |
| | 1. | Special Provision Regarding Unimpaired Claims | 94 |
| | 2. | Allowed Claims | 95 |
| | 3. | Distributions for Claims Allowed as of the Effective Date | 95 |
| | 4. | Liquidating Trustee as Disbursing Agent | 95 |
| | 5. | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 95 |
| | 6. | Prepayment | 96 |
| | 7. | Means of Cash Payment | 96 |
| | 8. | Interest on Claims | 96 |
| | 9. | Withholding and Reporting Requirements | 96 |
| | 10. | Setoffs | 97 |
| | 11. | Procedure for Treating and Resolving Disputed, Contingent and/or Unliquidated Claims | 98 |
| | 12. | Distribution Record Date | 98 |
| J. | | Treatment Of Executory Contracts And Unexpired Leases | 98 |
| | 1. | Rejected Contracts And Leases | 98 |
| | 2. | Bar to Rejection Damages | 99 |
| | 3. | Assumed and Assigned Contracts and Leases | 99 |
| K. | | Confirmation And Consummation Of The Plan | 99 |
| | 1. | Conditions Precedent to Confirmation and Effective Date | 99 |

| | | | Page |
|---|---|---|---|
| | 2. | Waiver of Conditions | 99 |
| | 3. | Consequences of Non-Occurrence of Effective Date | 100 |
| | 4. | Substantial Consummation | 100 |
| L. | | Allowance And Payment Of Certain Administrative Claims | 100 |
| | 1. | Professional Fee Claims | 100 |
| | 2. | Substantial Contribution Compensation and Expenses Bar Date | 100 |
| | 3. | Other Administrative Claims | 101 |
| M. | | Effect Of Plan Confirmation | 101 |
| | 1. | Binding Effect | 101 |
| | 2. | Discharge of the Debtors | 101 |
| | 3. | Releases by the Debtors | 102 |
| | 4. | Release By Holders of Claims and Equity Interests | 103 |
| | 5. | Injunction | 105 |
| | 6. | Term of Bankruptcy Injunction or Stays | 106 |
| | 7. | Exculpation and Limitation of Liability | 106 |
| | 8. | Discharge of DB under the 14% Indenture | 107 |
| | 9. | No Effect on Schechter Action | 107 |
| VII. CERTAIN FACTORS TO BE CONSIDERED | | | 108 |
| A. | | General Considerations | 108 |
| B. | | Certain Bankruptcy Considerations | 108 |
| C. | | Administrative and Priority Claims | 109 |
| VIII. CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN | | | 109 |
| A. | | Certain Tax Consequences of the Plan | 112 |
| | 1. | Treatment of Transfers to and Distributions by the Liquidating Trust | 112 |
| | 2. | Allocation of Plan Distributions Between Principal and Interest | 116 |
| | 3. | Withholding, Backup Withholding, and Information Reporting | 116 |
| B. | | Importance of Obtaining Professional Tax Assistance | 118 |

**TABLE OF CONTENTS**
**[Continued]**

| | | Page |
|---|---|---|

IX. FEASIBILITY OF THE PLAN, BEST INTERESTS OF CREDITORS, and analysis of recovery to creditors .................................................................................. 118

    A.    Feasibility of the Plan ................................................................................ 118

    B.    Acceptance of the Plan .............................................................................. 119

    C.    Best Interests Test ..................................................................................... 119

    D.    Liquidation Analysis ................................................................................. 120

    E.    Application of the "Best Interests" of Creditors Test to the Liquidation Analysis and the Plan ......................................................... 121

    F.    Confirmation Without Acceptance of All Impaired Classes: The "Cramdown" Alternative ............................................................... 121

    G.    Significant Changes to Financial Assets of the Debtors as of Conversion Date ...... 123

X. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ............ 124

    A.    Alternative Plan(s) of Liquidation ........................................................... 125

    B.    Liquidation under Chapter 7 ..................................................................... 125

    C.    Dismissal of the Chapter 11 Cases ........................................................... 125

XI. PLAN VOTING INSTRUCTIONS AND PROCEDURES ............................................ 126

    A.    Notice to Holders of Claims and Equity Interests .................................... 126

    B.    Holders of Claims Entitled to Vote .......................................................... 127

    C.    Solicitation Package .................................................................................. 129

    D.    Voting Procedures, Ballots and Voting Deadline ..................................... 129

    E.    Confirmation Hearing and Deadline for Objections to Confirmation ....... 130

    F.    Claim Amount For Voting Purposes ......................................................... 130

    G.    Challenges to Claim Amount For Voting Purposes .................................. 132

    H.    Internet Access to Bankruptcy Court Documents ..................................... 133

XII. RECOMMENDATION AND CONCLUSION ............................................................ 133

1                              **APPENDICES**

2        A.      Second Amended Joint Plan of Liquidation

3        B.      Organizational Chart

4        C.      Liquidation Analysis

5        D.      Litigation Commenced During These Chapter 11 Cases

6        E.      Mediation Procedures for Product Liability PI Claims

7        F.      Balance Sheet Comparison

8        G.      Case-To-Date Income Statement

9        H.      Wind Down Cost Summary

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING THE SECOND
AMENDED JOINT PLAN OF LIQUIDATION OF FLEETWOOD ENTERPRISES, INC., ITS
AFFILIATED DEBTORS, AND ITS OFFICIAL COMMITTEE OF CREDITORS HOLDING
UNSECURED CLAIMS**

**I.
INTRODUCTION**

The Debtors submit this Disclosure Statement pursuant to Bankruptcy Code section 1125, for use in the solicitation of votes on the Plan. A copy of the Plan is annexed as <u>Appendix A</u> to this Disclosure Statement.

**A.      Contents of the Disclosure Statement**

This Disclosure Statement sets forth certain information regarding the Debtors' prepetition operating and financial history, the need to seek chapter 11 protection, significant events that have occurred during the Chapter 11 Cases, the past, current and anticipated liquidation of the Debtors' Assets, and the winding down of the Debtors' business operations. This Disclosure Statement also describes various terms and provisions of the Plan, the substantive consolidation of all fifty (50) of the Debtors' estates, certain effects of Plan Confirmation, treatment of Creditors' Claims against the estates, and the manner in which Distributions will be made under the Plan. In addition, this Disclosure Statement discusses the Confirmation process and the voting procedures that Holders of Claims entitled to vote under the Plan must follow for their votes to be counted.

Except as otherwise provided herein, capitalized terms not otherwise defined in this Disclosure Statement have the meanings ascribed to them in the foregoing "Overview" and the Plan. Unless otherwise noted herein, all dollar amounts provided in this Disclosure Statement and in the Plan are given in United States dollars.

**B.      Purpose and Effect of Plan**

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under chapter 11, a debtor is authorized to reorganize its business for the benefit of its creditors and shareholders. If reorganization is not feasible, Chapter 11 also allows a debtor to formulate and consummate a plan of liquidation, which sets forth the process for the orderly satisfaction of claims against and interests in a debtor pursuant to the priority rules of the Bankruptcy Code.

1    Confirmation of a plan of liquidation by a bankruptcy court makes the plan binding upon the

2    debtor and any creditor of or interest holder in the debtor, whether or not such creditor or interest

3    holder (i) is impaired (*i.e.*, will receive less than 100% of its Allowed Claim) under the plan, (ii) has

4    accepted the plan, or (iii) receives or retains any property under the plan.

5    In these Chapter 11 Cases, the Plan provides for the distribution of the proceeds from the

6    liquidation of all Assets of the Debtors to various Creditors as set forth under the Plan, and for the

7    winding-down of the Debtors' corporate affairs.  Under the Plan, Claims against, and Equity Interests

8    in, the Debtors are divided into Classes according to their relative seniority and other criteria as

9    required under the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court and

10   ultimately consummated, the Claims and Equity Interests of the various Classes will be treated in

11   accordance with the provisions in the Plan established for each Class.  On the Distribution Dates, a

12   liquidating trust formed under the Plan will make Distributions to certain Classes of Claims (to the

13   extent that such Claims have been Allowed) as provided in the Plan.

14   A summary of the Classes of Claims and Equity Interests, as well as their treatment under the

15   Plan, is included in the Overview above.  A more detailed description of the Classes of Claims

16   against the Debtors created under the Plan, the treatment of those Classes under the Plan, and the

17   property to be distributed under the Plan are described in Section VI below.

18   **II.**
     **DESCRIPTION OF THE DEBTORS' PRIOR BUSINESS, EVENTS THAT**
19   **PRECIPITATED THE FILING OF THESE CHAPTER 11 CASES**

20   **A.      Overview of the Debtors and Their Prior Businesses**

21      **1.     *Fleetwood's Businesses***

22   Fleetwood began as a California-based producer of manufactured housing in 1950.  In 1964,

23   Fleetwood entered the recreational vehicle market with the purchase of a travel trailer manufacturer.

24   Prior to the Petition Date, through its subsidiaries and affiliates, Fleetwood was one of the nation's

25   leading producers of manufactured housing and recreational vehicles.  Fleetwood operated its

26   business through three divisions:  motor homes, housing and travel trailers.  Each division operated

27   through separate subsidiaries, which employed the individuals who carried out those operations, from

28   assembly line employees and plant managers to sales professionals and technical staff.  As of the