CRAIG H. MILLET, SBN 106027, CMillet@gibsondunn.com
MICHELE L. MARYOTT, SBN 191993, MMaryott@gibsondunn.com
KATE G. KIMBERLIN, SBN 261017, KKimberlin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, California 92612-4412
Telephone: (949) 451-3800
Facsimile: (949) 451-4220

Attorneys for
Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| In re | CASE NO. 09-14254-MJ |
| FLEETWOOD ENTERPRISES, INC., et al., | Chapter 11 |
| Debtors. | [Jointly Administered] |
| | **MOTION OF THE DEBTORS FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 APPROVING CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| | [Notice of Motion and Supporting Declaration of Andrew M. Griffiths Filed Herewith] |
| | **Hearing:**<br>Date:    May 19, 2010<br>Time:    1:30 p.m.<br>Place:   Courtroom 301<br>         3420 Twelfth Street<br>         Riverside, CA 92501<br>Judge:   Honorable Meredith A. Jury |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.
### INTRODUCTION

The settlement presented here resolves two class actions brought on behalf of more than 1,500 former employees of the Debtors seeking damages relating to the termination of their employment. Specifically, the settlement resolves (1) the class action filed by the WARN Class Plaintiffs[1] against defendants Fleetwood Enterprises, Inc. ("FEI"), Fleetwood Travel Trailers of Ohio, Inc., Fleetwood Travel Trailers of Oregon, Inc. and Fleetwood Motor Homes of California, Inc. (collectively, the "Defendants"), entitled *Sandra Justice, et al. v. Fleetwood Enterprises, Inc., et al.*, Consolidated Adversary No. 6:09-ap-01114-MJ, asserting claims for alleged violations of the federal Worker Adjustment and Retraining Notification Act ("the WARN Act") and California Labor Code section 1400, *et seq.* (the "California WARN Act"), and (2) the class action filed by Curtis Howe against Fleetwood Enterprises, Inc., entitled *Curtis Jay Howe, et al. v. Fleetwood Enterprises, Inc.*, Adversary No. 6:09-ap-01421-MJ, asserting claims for breach of contract and violation of ERISA for the Debtors' alleged failure to pay severance to employees terminated on and after March 9, 2009.

FEI, together with its affiliated debtors and debtors in possession (collectively, the "Debtors"), have agreed to pay $1,550,000 to resolve these class actions, which includes attorneys' fees and costs that the Court may award to Class Counsel, plus the employer's share of taxes due on the Settlement Payments distributed to the Settlement Class Members. In exchange, the Debtors will obtain releases from the Settlement Class Members of all claims which were or could have been brought in the WARN Action and the Severance Action. In addition, any Proofs of Claim filed by Settlement Class Members in the Bankruptcy Case for WARN damages, back pay or severance will be deemed withdrawn.[2]

---

[1] Unless otherwise defined in this Motion, the capitalized terms have the meanings ascribed to them in the Compromise and Settlement Agreement ("Settlement Agreement"), which are set forth in the Table of Defined Terms attached hereto for the Court's convenience.

[2] The WARN Class Plaintiffs have only asserted claims against four Debtors—FEI, Fleetwood Ohio, Fleetwood Oregon and Fleetwood Homes California. If former employees of other
[Footnote continued on next page]

Gibson, Dunn &
Crutcher LLP

The Debtors also have contemporaneously filed the *Joint Motion Of Plaintiffs, The Debtors And The Official Committee Of Creditors Holding Unsecured Claims For Preliminary Approval Of Class Action Settlement* ("Rule 23 Motion") in the WARN Action and the Severance Action seeking preliminary approval of the class settlement as required under Rule 23 of the Federal Rules of Civil Procedure. A true and correct copy of the Rule 23 Motion is attached hereto as Exhibit A. **This Motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure presents the same facts and information as the Rule 23 Motion, but is filed here in the main bankruptcy case to insure that proper notice of the settlement is given to those parties in interest who are not parties to the adversary proceedings and, hence, would not otherwise receive notice of the Rule 23 Motion.**

The Debtors, with the full support and involvement of the Committee, seek this Court's approval of the Settlement on the grounds that the Settlement is fair and equitable and in the best interest of the Debtors' estates. The Settlement eliminates not only the risk and uncertainty associated with continued litigation of the Actions, but also any further costs to the Debtors' estates associated with litigating the Actions, which the Debtors estimate would have easily exceeded $1,000,000. In addition, the Debtors have achieved through this Settlement a significant reduction in the amount of potential priority claims against the Debtors' estates. This Court should thus grant approval of the Settlement Agreement pursuant to Bankruptcy Rule 9019(a), provided that this Court also grants final approval of the pending Rule 23 Motion.

## II.
## GENERAL BACKGROUND AND JURISDICTION

On March 10, 2009, FEI and forty-four of its affiliates each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"). Five additional FEI affiliates filed voluntary petitions for relief under chapter 11 on July 29, 2009, and August 11, 2009. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections

---

[Footnote continued from previous page]
  Debtors have asserted claims in the Bankruptcy Case for WARN damages, the Debtors, any successor to the Debtors and/or the Committee will file omnibus objections to those claims.

Gibson, Dunn & Crutcher LLP

1107(a) and 1108 of the United States Bankruptcy Code ("Bankruptcy Code").  On March 19, 2009, the Office of the United States Trustee appointed the Committee.  Pursuant to the Bankruptcy Rules, the Debtors' chapter 11 cases are being jointly administered for procedural purposes under Case No. 09-14254-MJ (the "Bankruptcy Case").  On March 3, 2010, the Debtors filed the proposed Joint Plan of Liquidation of Fleetwood Enterprises, Inc. And Its Affiliated Debtors And The Official Committee of Creditors Holding Unsecured Claims and the proposed Disclosure Statement in support thereof.  On April 14, 2010, the Court approved the proposed Disclosure Statement in the form of the Second Amended Disclosure Statement filed on April 21, 2010.

Statements establishing the jurisdiction of the Court to consider this Motion, the authority of the Debtors to seek relief from this Court and the general facts with respect to the Debtors' business and the filing of these chapter 11 cases are set forth in Motion Of The Debtors For An Order Setting An Expedited Hearing On First Day Pleadings filed on March 10, 2009, and are incorporated herein by reference.

### III.
### STATEMENT OF FACTS

The facts relevant to this Motion are set forth in Section III, Statement of Facts, of the Rule 23 Motion.  Rather than repeat the Statement of Facts in this Motion, the Debtors hereby incorporate Section III of the Rule 23 Motion, as if it were set forth fully herein.

### IV.
### THE COURT SHOULD APPROVE THE SETTLEMENT UNDER BANKRUPTCY RULE 9019 BECAUSE THE COMPROMISE CONTAINED THEREIN IS FAIR AND EQUITABLE

**A.    Legal Standards for Approval**

Bankruptcy Rule 9019(a) permits a debtor to compromise and settle claims by and against the bankruptcy estate, subject to bankruptcy court approval.  Fed. R. Bankr. P. 9019(a).  In fact, "[s]ettlements are generally favored in bankruptcy proceedings, in that they provide for an often needed and efficient resolution of the bankruptcy case." *Tindall v. Mavrode (In re Mavrode)*, 205 B.R. 716, 719 (Bankr. D.N.J. 1997) ("Under [Bankruptcy Rule 9019], the bankruptcy court is expressly given the authority to approve a proposed compromise or settlement."); *see also In re Stein*,

Gibson, Dunn &
Crutcher LLP

4

236 B.R. 34, 37 (D. Ore. 1999) ("Pursuant to Bankruptcy Rule 9019(a), compromises are favored in bankruptcy . . . .").

The United States Supreme Court has noted that "[c]ompromises are a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quotations omitted). "Indeed, it is an unusual case in which there is not some litigation that is settled between the representative of the estate and an adverse party." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). Guided by these principles, the Supreme Court has held that compromises and settlements in bankruptcy should be approved if they are "fair and equitable." *Anderson*, 390 U.S. at 424; *see also Martin v. Kane (In re A&C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986).

According to the Ninth Circuit, a court should consider the following factors in determining whether a proposed settlement is fair and equitable:

> (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*A&C Props.*, 784 F.2d at 1381; *Redwood Trust v. Am. Budget Storage, LLC (In re Am. Bldg. Storage)*, 285 Fed. Appx. 375, 376 (9th Cir. 2008) (applying four *A&C Props.* factors to determine whether compromise is fair and equitable).

A bankruptcy court is not required to decide the numerous questions of law and facts raised by the litigation that is the subject of a Bankruptcy Rule 9019 motion. In other words, a bankruptcy court should not substitute its own judgment for the judgment of a trustee or the debtor. *Matter of Carla Leather, Inc.*, 44 B.R.457, 465 (Bankr. S.D.N.Y. 1984). Instead, the bankruptcy court's responsibility is only to "canvass the issues to see whether the settlement 'falls below the lower point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); *In re Solafide, Inc.*, 2008 U.S. Dist. LEXIS 74851 (C.D. Cal. Sept. 22, 2008) (same). Only if the bankruptcy court concludes that the settlement falls below the lowest point in the range of reasonableness should the compromise be rejected. *In re Pennsylvania Truck Lines, Inc.*, 150 B.R. 595, 601 (E.D. Pa. 1992).

The Court need not, and should not, undertake a "mini-trial" on the merits of the underlying cause of action. *In re Blair*, 538 F.2d 849 (9th Cir. 1976).

**B.     The Settlement is Reasonable and in the Best Interests of the Estate**

    **1.     Successful Litigation of the Actions Is Uncertain At Best for Both the Class Members and the Debtors**

Both the WARN Action and the Severance Action raise significant, complex legal and factual issues. As to the WARN Action, there are factual and legal disputes regarding the applicability of the WARN Act and the California WARN Act to the terminations at issue. The Defendants asserted multiple defenses that if established would defeat the WARN claims in their entirety, severely limit the class size and/or severely limit the damages available to the WARN Class Members. *See* Rule 23 Motion, Section III.A. The question of whether the WARN claims asserted in the WARN Action, if allowed, may be entitled to wage priority or administrative priority treatment also involves unsettled legal issues. Given the issues raised by the WARN Action, fully litigating the defenses raised in the WARN Action would require the parties to engage in costly expert practice. Acceptance of expert testimony is never certain, no matter how distinguished and qualified the experts, inevitably leading to a "battle of the experts." Settlement avoids the risks attendant to this "battle of the experts" that could have resulted in substantial expense and a ruling against the WARN Class. The Debtors estimate the cost of litigation alone would likely have exceeded $1,000,000. Griffiths Decl., ¶ 10.

As to the Severance Action, there are significant factual and legal disputes regarding the viability of the severance claims, such as whether the Severance Policy created a contractual obligation on the part of the Debtors to pay severance to employees who were terminated without cause, whether the Debtors' termination of the Severance Policy as of March 9, 2009 defeats any claims for severance arising from terminations on or after that date, and the proper treatment of severance claims in terms of priority treatment under the Bankruptcy Code. *See* Rule 23 Motion, Section III.B.

Neither the Class Plaintiffs nor the Debtors have any certainty of succeeding at trial in either of the Actions. Potentially, each of the parties could prove successful on some of the issues, in which case the benefits would not outweigh the time and effort undertaken to reach that result.

Gibson, Dunn &
Crutcher LLP

6

Upon balancing the likelihood of the Debtors' success in opposing the Actions with the costs of prosecuting such opposition, the Debtors believe that the compromise contained in the Settlement Agreement fairly resolves the instant disputes between the Debtors and the Class Members, and eliminates the inherent uncertainty as to outcome and costs involved in litigating the claims. In sum, the Debtors have exercised their reasonable business judgment in determining that the Settlement Agreement benefits the Debtors' estates by resolving the disputes between the Parties once and for all, avoiding any uncertainty in litigation, and allowing a much quicker resolution of these chapter 11 cases.

### 2. Without Settlement, Collection on any Judgment is Uncertain

Ordinarily, the difficulty and cost of executing a judgment against a party is an important factor in determining the reasonability of a settlement. With respect to the Class Members' claims against the Debtors, the Debtors' position as defendants in the Actions renders this *A&C Properties* factor irrelevant.

### 3. Prosecuting the Actions Would Result in Great Expense and Inconvenience to All Parties Given the Complexity of the Claims

Continued litigation of the Actions would be costly and time-consuming and would expose the Debtors' estates to significant litigation risks. The WARN Class Plaintiffs have asserted that the potential amount of WARN Act damages which would be entitled to priority treatment pursuant to Sections 507(a)(4) or (a)(5) of the Bankruptcy Code equals approximately $3.5 million. In addition, Plaintiff Howe asserts that the amount of potential severance liability entitled to priority treatment is approximately $785,000. *See* Ercole Decl., ¶ 11.

The Debtors have raised numerous, formidable defenses to the Class Plaintiffs' WARN Act and severance claims, but the costs associated with litigating them through trial and appeal as well as the uncertain outcome supports the Debtors' decision to resolve the claims through this Settlement for $1,550,000, inclusive of Class Counsel's fees and costs, plus the employer's share of taxes. Based on economics alone, the Settlement is in the best interest of the Debtors' estates. *See* Griffiths Decl., ¶¶ 9-10. In addition, further litigation would create a burden and distraction for the Debtors' remaining employees who need to focus on completing the Chapter 11 plan confirmation process.

There is no question that continued litigation would result in substantial expense and inconvenience for the Parties.

### 4. The Settlement is in the Best Interest of Creditors and the Estate

When determining whether a compromise is in the best interests of the estate, the Court must assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal. *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). To properly balance these values, the Court should consider all factors "relevant to a full and fair assessment of the wisdom of the proposed compromise." *Id.* Here, settlement would greatly serve the interests of the Debtors and their creditors.

First, the Settlement would spare the Debtors the significant expense and uncertainty associated with the litigation, while providing a fair recovery to the Debtors' former employees. Griffiths Decl., ¶ 11. Second, the Settlement will reduce the potential amount of priority payments the Debtors would have been obligated to pay if the Class Plaintiffs had prevailed at trial. As discussed above, the Class Plaintiffs estimate the maximum aggregate potential liability entitled to priority treatment to be approximately $4,285,000. The Settlement Amount represents a nearly 65% reduction of this potential liability. This outcome will substantially benefit the Debtors' creditors by making additional funds available that would not have been available if Class Plaintiffs prevailed at the conclusion of the litigation. *Id.* Third, the Settlement will result in the withdrawal of Proofs of Claim filed by Settlement Class Members to the extent their claims are associated with the WARN Act, California WARN Act or claims for severance or back pay, thus adding efficiency to the claims settlement process. The Settlement Class Members who filed Proofs of Claim will retain their right to pursue Non-Included Claims, such as vacation pay, sick pay and reimbursable business expenses.

Also, to be clear, some former employees who do not meet the eligibility requirement for severance–*i.e.*, those who worked hourly, part-time or for less than one year–may have filed claims for severance in the Bankruptcy Case. Those claims will still need to be resolved through the claims settlement process. Moreover, there may be former employees who filed Proofs of Claim for back pay under the WARN Act, but who are not included in the Settlement because they were not employed by the Defendants in the WARN Action. Those claims will also need to be addressed

Gibson, Dunn & Crutcher LLP

through the claims settlement process.  However, the Parties believe that the majority of the WARN Act claims and the severance claims will be resolved through this Settlement.

The paramount interest of creditors and reasonable deference to the Committee's views favors approval of the Settlement Agreement.  The Committee has been extensively involved with the negotiation of the Settlement and fully supports its approval.  Based upon the foregoing, the Debtors submit that the Settlement, which was negotiated at arm's length, constitutes a meaningful benefit to the Debtors' estates that is in the best interest of their creditors.

## V.
## CONCLUSION AND ORDER REQUESTED

To become effective the Settlement must receive final approval under Rule 23 as provided in the Rule 23 Motion.  Provided that final approval under Rule 23 is granted by this Court, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit B, (a) granting this Motion and (b) authorizing and approving the Settlement Agreement and the terms thereof, subject only to and as modified, if any, pursuant to this Court's final Approval of the Rule 23 Motion.

Dated:  April 22, 2010

    CRAIG H. MILLET
    MICHELE L. MARYOTT
    KATE G. KIMBERLIN
    GIBSON, DUNN & CRUTCHER LLP


By:     /s/ Craig H. Millet
        Craig H. Millet

Attorneys for Debtors and Debtors in Possession

100791804_1.DOC

Gibson, Dunn & Crutcher LLP

9