1   Hamid R. Rafatjoo (CA Bar No. 181564)
    Jennifer L. Nassiri (CA Bar No. 209796)
2   Venable LLP
    2049 Century Park East, Suite 2100
3   Los Angeles, CA  90067
    Telephone:     (310) 229-9900
4   Facsimile:     (310) 229-9901
    Email: hrafatjoo@venable.com;
5          jnassiri@venable.com

6   *Counsel for Official Committee of Creditors*
    *Holding Unsecured Claims*
7

    Craig H. Millet (CA Bar No. 106027)
    Kenneth A. Glowacki, Jr. (CA Bar No. 217762)
    Solmaz Kraus (CA Bar No. 223117)
    Gibson, Dunn & Crutcher LLP
    3161 Michelson Drive
    Irvine, California  92612-4412
    Telephone:     (949) 451-3800
    Facsimile:     (949) 451-4220
    Email:         cmillet@gibsondunn.com;
                   kglowacki@gibsondunn.com

    *Counsel for Debtors and Debtors in*
    *Possession*

8                   UNITED STATES BANKRUPTCY COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        RIVERSIDE DIVISION

11
    In re:                                  Case No.: 6:09-bk-14254-MJ
12
    FLEETWOOD ENTERPRISES, INC., et al.,    Chapter 11
13
                        Debtors.            **FOURTH AMENDED JOINT PLAN OF**
14                                          **LIQUIDATION OF FLEETWOOD**
                                            **ENTERPRISES, INC. AND ITS**
15                                          **AFFILIATED DEBTORS AND THE**
                                            **OFFICIAL COMMITTEE OF**
16                                          **CREDITORS HOLDING UNSECURED**
                                            **CLAIMS DATED AUGUST 5, 2010**
17
                                            Judge:  Honorable Meredith A. Jury
18

19                                          Hearing Date:  July 29, 2010
                                            Time:          1:30 p.m.
20                                          Courtroom:     301 3420 Twelfth St.
                                                           Riverside, CA 92501
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................... 1
II. DEFINED TERMS AND RULES OF INTERPRETATION ................................... 2
    A.    Rules of Construction ................................................................................ 2
    B.    Definitions ................................................................................................. 3
    C.    Rules of Interpretation ............................................................................. 24
    D.    Computation of Time ................................................................................ 24
    E.    Governing Law ......................................................................................... 24
    F.    Exhibits .................................................................................................... 25
III. CLASSIFICATION OF CLAIMS AND INTERESTS ......................................... 25
    A.    Introduction .............................................................................................. 25
IV. TREATMENT OF CLAIMS AND INTERESTS ................................................. 36
    A.    Unclassified Claims ................................................................................. 36
    B.    Claims ...................................................................................................... 37
V. ACCEPTANCE OR REJECTION OF THE PLAN by claim holders.................... 68
    A.    Impaired Classes of Claims Entitled to Vote .......................................... 68
    B.    Acceptance by an Impaired Class ............................................................ 68
    C.    Presumed Acceptances by Unimpaired Classes ...................................... 69
    D.    Classes Deemed to Reject Plan ............................................................... 69
    E.    Summary of Classes Voting on the Plan.................................................. 69
    F.    Confirmation Pursuant to Bankruptcy Code Section 1129(b) ................. 69
VI. MEANS FOR IMPLEMENTATION OF THE PLAN ......................................... 69
    A.    Substantive Consolidation of Debtors' Estates........................................ 69
    B.    Corporate Action. ..................................................................................... 70
    C.    Sources for Plan Distribution ................................................................... 76
    D.    Payment of Claims ................................................................................... 77
    E.    KEIP Payments ........................................................................................ 77
    F.    Liquidating Trust ..................................................................................... 77
    G.    No Revesting of Assets ............................................................................ 83
    H.    Accounts .................................................................................................. 83
    I.    Release of Liens ....................................................................................... 84
    J.    Exemption from Certain Transfer Taxes ................................................. 84
    K.    Preservation of Causes of Action; Settlement of Causes of Action........ 84
    L.    Effectuating Documents; Further Transactions ...................................... 85
VII. PROVISIONS GOVERNING DISTRIBUTIONS ............................................. 86
    A.    Special Provision Regarding Unimpaired Claims ................................... 86
    B.    Allowed Claims ....................................................................................... 86
    C.    Distributions for Claims Allowed as of the Effective Date .................... 86
    D.    Liquidating Trustee as Disbursing Agent ................................................ 87
    E.    Delivery of Distributions and Undeliverable or Unclaimed Distributions .......... 87
    F.    Prepayment .............................................................................................. 89
    G.    Means of Cash Payment........................................................................... 89
    H.    Interest on Claims .................................................................................... 89
    I.    Withholding and Reporting Requirements .............................................. 89
    J.    Setoffs ...................................................................................................... 90
    K.    Procedure for Treating and Resolving Disputed, Contingent and/or
        Unliquidated Claims ................................................................................ 91
    L.    Fractional Dollars. ................................................................................... 93
    M.    Allocation of Plan Distributions Between Principal and Interest ............ 93
    N.    Distribution Record Date ......................................................................... 93
VIII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........... 93
    A.    Rejected Contracts and Leases................................................................. 93
    B.    Bar to Rejection Damages ....................................................................... 94

     C.     Assumed and Assigned Contracts and Leases ..................................................... 94
IX. CONFIRMATION AND CONSUMMATION OF THE PLAN ........................................... 95
     A.     Conditions to Confirmation ................................................................................. 95
     B.     Conditions to Effective Date ............................................................................... 95
     C.     Waiver of Conditions .......................................................................................... 96
     D.     Consequences of Non-Occurrence of Effective Date .......................................... 96
     E.     Substantial Consummation .................................................................................. 96
X. ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS ............ 97
     A.     Professional Fee Claims ...................................................................................... 97
     B.     Substantial Contribution Compensation and Expenses Bar Date ...................... 97
     C.     Other Administrative Claims ............................................................................... 98
XI. EFFECT OF PLAN CONFIRMATION ............................................................................ 98
     A.     Binding Effect ..................................................................................................... 98
     B.     Discharge of the Debtors ..................................................................................... 98
     C.     Discharge of DB under the 14% Indenture .......................................................... 99
     D.     Discharge of the Law Debenture under the 5% Indenture ................................... 99
     E.     Discharge of BNYM ............................................................................................ 99
     F.     Releases by the Debtors ....................................................................................... 99
     G.     Release By Holders of Claims and Equity Interests ......................................... 101
     H.     Injunction .......................................................................................................... 102
     I.     Term of Bankruptcy Injunction or Stays .......................................................... 104
     J.     Exculpation and Limitation of Liability ............................................................ 104
     K.     Indemnification Obligations .............................................................................. 105
     L.     Dissolution of the Creditors' Committee ........................................................... 105
     M.     Browder Objection ............................................................................................ 106
     N.     No Effect on Schechter Action .......................................................................... 107
     O.     No Effect on Certain Actions of the National Highway Traffic Safety
             Administration Against Non-Debtors ................................................................ 107
     P.     Paxinos, PA Storage Tank Remediation ............................................................ 107
XII. RETENTION OF JURISDICTION ............................................................................... 108
XIII. MISCELLANEOUS PROVISIONS .............................................................................. 112
     A.     Modifications and Amendments ........................................................................ 112
     B.     Severability of Plan Provisions .......................................................................... 112
     C.     Successors and Assigns ...................................................................................... 113
     D.     Payment of Statutory Fees ................................................................................. 113
     E.     Revocation, Withdrawal or Non-Consummation .............................................. 113
     F.     Service of Documents ........................................................................................ 114
     G.     Plan Supplement(s) ............................................................................................ 114
     H.     Plan Exhibits ...................................................................................................... 115
     I.     Tax Reporting And Compliance ........................................................................ 115
     J.     Filing Of Additional Documents ...................................................................... 115

1    <u>EXHIBITS</u>

2    EXHIBIT A          LISTING OF SUBSIDIARY DEBTORS

3    EXHIBIT B          LIQUIDATING TRUST AGREEMENT

4    EXHIBIT C          NON-EXCLUSIVE LIST OF EXECUTORY CONTRACTS TO BE
                                  ASSUMED

5

   EXHIBIT D          NON-EXCLUSIVE LIST OF RETAINED CAUSES OF ACTION

6    EXHIBIT E          [Intentionally Omitted]

7

8    EXHIBIT F          MEDIATION PROCEDURES FOR PRODUCT LIABILITY PI
                                  CLAIMS

9

10   EXHIBIT G          CLASS 13A EXHIBITS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

## INTRODUCTION

Fleetwood Enterprises, Inc., its affiliated debtors and debtors in possession (the "Debtors"), and the Official Committee of Unsecured Creditors Holding Unsecured Claims (the "Creditors' Committee") propose the following chapter 11 plan of liquidation.  The Debtors and the Creditors' Committee are the proponents of the Plan (the "Plan Proponents") within the meaning of Bankruptcy Code section 1129.  This Plan contemplates the distribution of the proceeds of the liquidation of the Debtors' Assets and the resolution of the outstanding Claims against and Equity Interests in the Debtors.  Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of (i) the Debtors' history, business and operations, (ii) a summary and analysis of this Plan, and (iii) certain related matters, including risk factors relating to the consummation of this Plan.  All Holders of Claims who are eligible to vote on the Plan are encouraged to read the Plan and the accompanying Disclosure Statement (including all exhibits thereto) in their entirety before voting to accept or reject the Plan.  Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127 and Bankruptcy Rule 3019, the Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

The Plan is a liquidating plan.  Pursuant to prior orders of the Bankruptcy Court, the Debtors have sold or will sell substantially all of their Assets.  The Plan provides for the distribution of certain proceeds from such sales and the creation of a Liquidating Trust that will administer and liquidate all remaining property of the Debtors, including Causes of Action, not sold, transferred or otherwise waived or released before the Effective Date of the Plan.  The Plan further provides for the substantive consolidation of all of the Debtors, the termination of all Equity Interests in the Debtors, the dissolution and wind-up of the affairs of the Debtors, and the transfer of any remaining Estate Assets to the Liquidating Trust.  The Plan also provides for Distributions to certain Holders of Administrative Claims and Priority Claims and to other Claimholders and the funding of the Liquidating Trust.

The Plan embodies a settlement in principle with the majority holders of 14% Notes and 6% Notes that, in the aggregate, asserted in excess of $233 million of claims against the Debtors. In December 2008, approximately $81 million of the 5% Notes issued by FEI were exchanged for 14% notes, which were guaranteed and secured by certain assets of the Debtors.   The Debtors instituted an avoidance action against the 14% Notes.  The Creditors' Committee was then given standing to pursue the avoidance action and filed an amended complaint to avoid the issuance of the 14% Notes, the security interests and guarantees granted to the holders of the 14% Notes.  As explained in more detail in the Disclosure Statement, the Plan Proponents believe that the Noteholder Settlement, which resolves the litigation against the holders of the 14% Notes (the "DB Litigation"), avoids litigation over the relative rights of the 14% Notes, is in the best interests of the Estates and will provide a far greater recovery to general unsecured creditors than awaiting the uncertain results of expensive protracted litigation against the 14% Notes.

No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith, have been approved for use in soliciting acceptances and rejections of the Plan.  Nothing in the Plan should be construed as constituting a solicitation of acceptances of the Plan unless and until the Disclosure Statement has been approved and distributed to all Holders of Claims and Equity Interests to the extent required by Bankruptcy Code section 1125.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS THERETO) AND THE PLAN, EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

**II.**

**DEFINED TERMS AND RULES OF INTERPRETATION**

**A.      Rules of Construction**

For purposes of this Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined, including those capitalized terms used in the preceding Introduction, shall have the meanings ascribed to them in Article II of this Plan or any Exhibit hereto.  Any term used in this Plan that is not defined herein, but is defined in the

Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.  To the extent that there is an inconsistency between a definition in this Plan and a definition set forth in the Bankruptcy Code, the definition set forth herein shall control.  Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

**B.    Definitions**

1.    **5% Notes** means those remaining 5% Convertible Senior Subordinated Debentures due 2023 issued in the original aggregate principal amount of $100 million by FEI in December 2003, which were not exchanged for 14% Notes or for the stock of FEI.

2.    **5% Indenture** means the Indenture dated as of December 22, 2003 by and between FEI and The Bank of New York Mellon, as original Trustee, pursuant to which FEI issued the 5% Notes.

3.    **5% Notes Certificates** means the securities and certificates of authentication issued pursuant to the 5% Indenture to evidence ownership of the 5% Notes.

4.    **6% Notes** means those certain 6% Convertible Subordinated Debentures due 2028, issued in the original aggregate principal amount of $296.4 million by FEI to Debtor Fleetwood Capital Trust, Bank of New York as indenture trustee, on account of which the aggregate Allowed Claim shall be $161.173 million.

5.    **6% Indenture** means the Indenture dated as of February 10, 1998 by and between FEI and The Bank of New York (predecessor to BNYM), as trustee, pursuant to which FEI issued the 6% Notes.

6.    **14% Notes** means the 14% Senior Secured Notes due 2011, issued by FEI on December 12, 2008 in the aggregate principal amount of approximately $81.4 million in exchange for the 5% Notes, on account of which the aggregate Allowed Claim shall be Allowed on a secured basis in the amount of $84,256,664.

7.    **14% Notes Certificates** means the securities and certificates of authentication issued pursuant to the 14% Indenture to evidence ownership of the 14% Notes.

-3-

**8.**    **14% Indenture** means the Indenture dated as of December 12, 2008 among FEI as Issuer, certain subsidiaries of FEI listed therein as Guarantors, and DB as Trustee and Collateral Agent, pursuant to which FEI issued the 14% Notes.

**9.**    **503(b)(9) Claim** means a Claim to the extent asserted against one or more of the Debtors pursuant to Bankruptcy Code section 503(b)(9).

**10.**    **503(b)(9) Claim Bar Date** means September 9, 2009 for all Debtors.

**11.**    **Administrative Claim** means a Claim for costs and expenses of administration of the Chapter 11 Cases under Bankruptcy Code sections 503(b), 507(b), or 1114(e)(2), and entitled to priority under Bankruptcy Code section 507(a)(2), including: (a) any actual and necessary costs and expenses, incurred after the Petition Date, of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries and commissions for services and payments for inventory, leased equipment and premises) and Claims of governmental units for taxes (including tax audit Claims related to tax years commencing after the Petition Date, but excluding Claims relating to tax periods, or portions thereof, ending on or before the Petition Date); (b) 503(b)(9) Claims, and (c) all other claims entitled to administrative claim status pursuant to a Final Order of the Bankruptcy Court, including Professional Fee Claims.

**12.**    **Administrative Claims Bar Date** means the last date by which a request for payment of an Administrative Claim that arises after the Petition Date up to and through the Effective Date, may be filed, which date is thirty (30) days after the Effective Date, provided however, that Professional Fee Claims may be filed up to forty-five (45) days after the Effective Date.

**13.**    **Administrative Claims Objection Deadline** means the last day for filing an objection to any request for the payment of an Administrative Claim, which shall be the later of (a) one hundred eighty (180) days after the Effective Date or (b) such other date specified in this Plan or ordered by the Bankruptcy Court. The filing of a motion to extend the Administrative Claims Objection Deadline shall automatically extend the Administrative Claims Objection Deadline until a Final Order is entered on such motion. In the event that such motion to extend the Administrative Claims Objection Deadline is denied by the Bankruptcy Court, the Administrative Claims Objection

-4-

Deadline shall be the later of the current Administrative Claims Objection Deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to extend the Administrative Claims Objection Deadline.

14.    **Allowed Claim** means a Claim or any portion thereof (a) that has been allowed by a Final Order of the Bankruptcy Court (or such court as the Liquidating Trustee and the Holders of any such Claim agree may adjudicate such Claim and any objections thereto), (b) that either (x) has been Scheduled as a liquidated, non-contingent, and undisputed Claim in an amount greater than zero on the Schedules, or (y) is the subject of a timely filed Proof of Claim as to which either (i) no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Plan, the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, or (c) that is expressly allowed in a liquidated amount in the Plan or by the Liquidating Trustee in its sole and absolute discretion.  For purposes of determining the status (*i.e.*, Allowed or Disputed) of a particular Claim prior to the expiration of the period fixed for filing objections to the allowance or disallowance of Claims, any such Claim which has not been previously allowed or disallowed by a Final Order of the Bankruptcy Court or the Plan shall be deemed a Disputed Claim unless such Claim is specifically identified by the Plan Proponents and/or the Liquidating Trustee as being an Allowed Claim.

15.    **Allowed …Claim** means an Allowed Claim of the particular type or Class described.

16.    **Assets** means all tangible and intangible assets of every kind and nature of the Debtors and their Estates, and all proceeds thereof, existing as of the Effective Date.

17.    **Avoidance Actions** means Causes of Action arising under Bankruptcy Code sections 510, 541, 542, 544, 545, 547 through 551 and/or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action.

18.    **Ballot** means each of the ballot forms distributed to each Holder of a Claim or Equity Interest entitled to vote to accept or reject this Plan.

19.    **Bankruptcy Code** means title 11 of the United States Code, as now in effect or

hereafter amended and as applicable to the Chapter 11 Cases.

20.     **Bankruptcy Court** means the United States Bankruptcy Court for the Central District of California (Riverside Division) or any other court with jurisdiction over the Chapter 11 Cases.

21.     **Bankruptcy Rules** means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended and as applicable to the Chapter 11 Cases on proceedings therein, as the case may be, and the Local Rules, as now in effect or hereafter amended.

22.     **BNYM** has the meaning Bank of New York Mellon, as indenture trustee for the holders of the 6% Notes.

23.     **BofA Cash Collateral Account** has the meaning ascribed to it in Article IV.B.2 herein.

24.     **BofA Cash Collateral Amount** has the meaning ascribed to it in Article IV.B.2 herein.

25.     **BofA Indemnification Claims** has the meaning ascribed to it in Article IV.B.2 herein.

26.     **BofA Indemnification Reserve** has the meaning ascribed to it in Article IV.B.2 herein.

27.     **Business Day** means any day, other than a Saturday, Sunday or Legal Holiday (as defined in Bankruptcy Rule 9006(a)).

28.     **Case Interest Rate** means the federal judgment rate provided in 28 U.S.C. § 1961 in effect on the Petition Date.

29.     **Cash** means legal tender of the United States of America and equivalents thereof, which may be conveyed by check or wire transfer.

30.     **Causes of Action** means any and all claims, actions, proceedings, causes of action, Avoidance Actions, suits, accounts, controversies, agreements, promises, rights of action, rights to legal remedies, rights to equitable remedies, rights to payment and Claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent,

-6-

matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, that any Debtor and/or Estate may hold against any Person but excluding those released, exculpated or waived pursuant to this Plan.

31.    **Chapter 11 Case(s)** means, (a) when used with reference to a particular Debtor, the case under chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court and (b) when used with reference to all Debtors, the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court.

32.    **Charging Lien** means the lien that Law Debenture or DB, as applicable, is entitled to exercise under the terms of the 5% Indenture or 14% Indenture against, or any other contractual right of priority of payment to which Law Debenture or DB is entitled under the terms of the 5% Indenture or 14% Indenture with respect to, any distribution to be made under the 5% Indenture or the 14% Indenture or on account of the 5% Notes Claims or the 14% Notes Claims.

33.    **Claim** has the meaning set forth in Bankruptcy Code section 101(5).

34.    **Claimholder** means the Holder of a Claim.

35.    **Claims Agent** means Kurtzman Carson Consultants, LLC.

36.    **Claims Objection Deadline** means the last day for filing objections to Claims, including but not limited to 503(b)(9) Claims and Reclamation Claims, but excluding all other Administrative Claims and Professional Fee Claims, which day shall be the later of (a) one year after the Effective Date or (b) such other date as the Bankruptcy Court may order.  The filing of a motion to extend the Claims Objection Deadline shall automatically extend the Claims Objection Deadline until a Final Order is entered on such motion.  In the event that such motion to extend the Claims Objection Deadline is denied, the Claims Objection Deadline shall be the later of the current Claims Objection Deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to extend the Claims Objection Deadline.

37.    **Class** means a category of Holders of Claims or Equity Interests.

38.    **Class 1** consists of Non-Tax Priority Claims.

39.    **Class 2** consists of the Secured Credit Facility Claims.

40.    **Class 3** consists of the ISIS Claim.

-7-

41.    **Class 4** consists of the Miscellaneous Secured Claims.

42.    **Class 5** consists of the 14% Notes Claims.

43.    **Class 6** consists of the General Unsecured Claims against the Debtors that are not otherwise classified herein.

44.    **Class 7** consists of the 6% Notes Claims.

45.    **Class 8** consists of the 5% Notes Claims.

46.    **Class 9** consists of the Convenience Claims.

47.    **Class 10** consists of the Product Liability PI Claims.

48.    **Class 11** consists of the WARN Class Claims and Severance Class Claims.

49.    **Class 13A** consists of the Claim of Westchester Fire Insurance Company and ACE INA Insurance.

50.    **Class 13B** consists of the Claim of Old Republic Insurance Co.

51.    **Class 13C** consists of the Claim of National Union Fire Insurance Company of Pittsburgh, PA, American Home Assurance Company, American International Specialty Lines Insurance Company of the State of Pennsylvania, Commerce and Industry Insurance Company, AIU Insurance Company, Birmingham Fire Insurance Company of the State of Pennsylvania, Illinois National Insurance Company, American International South Insurance Company, National Union Fire Insurance Company of Louisiana, American International Pacific Insurance Company, Granit State Insurance Company, New Hampshire Insurance Company, Lexington Insurance Company, Landmark Insurance Company, Starr Excess Liability Insurance Company Ltd.

52.    **Class 13D** consists of the Claim of Fidelity and Deposit Company of Maryland.

53.    **Class 13E** consists of the Claim of North Carolina Self-Insurance Security Association.

54.    **Class 13F** consists of the Claim of Georgia Self-Insurers Guaranty Trust Fund.

55.    **Class 13G** consists of the Claim of Lumbermen's Underwriting Alliance.

56.    **Class 14** consists of Intercompany Claims by and between the Debtors.

57.    **Class 15** consists of the Equity Interests.

58.    **Collateral** means any property or interest in property of a Debtor's Estate subject to a

-8-

Lien to secure the payment or performance of a Claim.

**59.**    **Confirmation** means entry by the Bankruptcy Court of the Confirmation Order.

**60.**    **Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court docket in the jointly administered Chapter 11 Cases.

**61.**    **Confirmation Hearing** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**62.**    **Confirmation Order** means the order entered by the Bankruptcy Court confirming the Plan under Bankruptcy Code section 1129.

**63.**    **Consummation or Consummate** means the occurrence of or to achieve the Effective Date.

**64.**    **Contingent** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

**65.**    **Convenience Claim** means a Class 6 General Unsecured Claim Allowed in an amount of $10,000 or less or as to which a Holder of an Allowed Claim in excess of $10,000 elects to reduce its Allowed Claim to $10,000.

**66.**    **Creditor** means any Person who holds a Claim against one or more of the Debtors.

**67.**    **Creditors' Committee** means the Official Committee of Creditors Holding Unsecured Claims of Fleetwood Enterprises, Inc., et al., appointed by the United States Trustee in the Chapter 11 Cases pursuant to Bankruptcy Code section 1102.

**68.**    **DB** means Deutsche Bank Trust Company Americas, a New York Banking corporation, as Trustee and as Collateral Agent for the 14% Notes under the terms of the 14% Indenture.

**69.**    **DB Fees** has the meaning ascribed to such term as set forth in Article IV.B.5.

**70.**    **DB Litigation** means that action entitled *Fleetwood Homes of Washington, Inc., et al. v. Deutsche Bank Trust Company Americas, a New York Banking corporation, as Trustee and as Collateral Agent of the Fleetwood Enterprises, Inc. Indenture*, dated as of December 12, 2008, et al.,

as amended, currently pending before the Bankruptcy Court as adversary case number 09-01258-MJ.

**71.** **Debtor** means any of Fleetwood Enterprises, Inc. or the Subsidiary Debtors in their individual capacity.

**72.** **Debtors** means, collectively, Fleetwood Enterprises, Inc. and all of the Subsidiary Debtors.

**73.** **Disallowed** means, with respect to a Claim, or any portion thereof, that such Claim (a) has been disallowed by a Final Order, (b) is Scheduled at zero or as contingent, disputed or unliquidated and as to which no Proof of Claim has been filed by the applicable Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (c) is not Scheduled, and as to which (i) no Proof of Claim has been filed by the applicable Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (ii) no request for payment of an Administrative Claim has been filed by the Administrative Claims Bar Date, as appropriate, or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law.

**74.** **Disclosure Statement** means the disclosure statement (including all exhibits and schedules thereto) relating to this Plan, distributed contemporaneously herewith in accordance with Bankruptcy Code sections 1125 and 1126(b) and Bankruptcy Rule 3018.

**75.** **Disputed Claim** means a Claim, or any portion thereof, that has not been Allowed and:

(a)    if no Claim has been filed, or deemed to have been filed, by the applicable Bar Date, which has been or hereafter is listed on the Schedules as unliquidated, contingent or disputed, and which has not been resolved by written agreement of the parties or an order of the Bankruptcy Court;

(b)    if a Claim has been filed, or deemed to have been filed, by the applicable Bar Date (i) a Claim for which a corresponding Claim has been listed on the Schedules as unliquidated, contingent or disputed; (ii) a Claim for which a corresponding Claim has been listed on the Schedules as other than unliquidated, contingent or disputed, but the amount or priority such Claim as asserted in the Claim varies from the amount or priority of such Claim as listed in the Schedules;

-10-

or (iii) a Claim as to which any party in interest has timely filed an objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court, or which is otherwise disputed by a Debtor and/or the Liquidating Trustee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn, or determined by a Final Order;

(c)    if a request for payment of an Administrative Claim has been filed or deemed to have been filed by the Administrative Claims Bar Date, as appropriate, an Administrative Claim as to which any party in interest has timely filed an objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or which is otherwise disputed by a Debtor or the Liquidating Trustee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order;

(d)    for which a Claim was required to be filed by order of the Bankruptcy Court, but as to which a Claim was not timely or properly filed; or

(e)    that is disputed in accordance with the provisions of this Plan.

**76.**    **Disputed ... Claim** means a Disputed Claim of the type described.

**77.**    **Disputed Claim Amount** means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the liquidated amount set forth in the Proof of Claim relating to the Disputed Claim; (ii) an amount agreed to by a Debtor or the Liquidating Trustee and the Holder of such Disputed Claim; or (iii) if a request for estimation is filed by any party, the amount at which such Claim is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) an amount agreed to by a Debtor or the Liquidating Trustee and the Holder of such Disputed Claim or (ii) the amount estimated by the Bankruptcy Court with respect to such Disputed Claim; or (c) if the Claim was listed on the Schedules as unliquidated, contingent or disputed and no Proof of Claim was filed, or deemed to have been filed, by the applicable Bar Date and the Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, zero.

**78.**    **Disputed Costs** has the meaning ascribed to it in Article IV.B.2 herein.

-11-

**79.    Distribution** means any distribution pursuant to the Plan to the Holders of Allowed Claims.

**80.    Distribution Date** means either the Initial Distribution Date or a Periodic Distribution Date.

**81.    Distribution Record Date** means the record date for purposes of making Distributions under the Plan on account of Allowed Claims, which date shall be the Confirmation Date or such other date designated in the Confirmation Order.

**82.    DTC** means the Depository Trust Company.

**83.    Effective Date** means the Business Day this Plan becomes effective as provided in Article IX hereof.

**84.    Equity Interests** means the legal, equitable, contractual, and other rights of any Person with respect to any capital stock or other ownership interest in any Debtor, whether or not transferable, and all options, warrants, call rights, puts, awards, or rights or agreements to purchase, sell, or subscribe for an ownership interest or other equity security in any Debtor, including the Old Common Stock Interests and the Subsidiary Interests.  For the avoidance of doubt, Equity Interests does not include any interest that a Debtor may own in a non-Debtor affiliate, which interest is an Asset of the Debtors and is being transferred to the Liquidating Trust pursuant to the terms of this Plan.

**85.    Estate(s)** means, individually, the estate of Fleetwood Enterprises, Inc. or any of the Subsidiary Debtors and, collectively, the estates of all of the Debtors created under Bankruptcy Code section 541.

**86.    Estate Claim** has the meaning ascribed to such term in Article VII.J hereof.

**87.    Exhibit** means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement.

**88.    Exhibit Filing Date** means the date on which Exhibits to the Plan or the Disclosure Statements shall be filed with the Bankruptcy Court, which date shall be at least five (5) days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court without further notice to parties in interest.

-12-

**89.**    **Extension Order** means that Order entered by the Bankruptcy Court on February 10, 2010 at [Docket No. 1808] entitled "Order Extending the Debtors' Authorization to Use Cash Collateral to Earlier of April 30, 2010 and the Effective Date of a Plan of Liquidation."

**90.**    **Face Amount** means (a) when used in reference to a Disputed Claim, the Disputed Claim Amount and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

**91.**    **FEI** means Fleetwood Enterprises, Inc.

**92.**    **Final Cash Collateral Order** means the Final Order Extending the Debtors' Authorization to Use Cash Collateral to Earlier of January 31, 2010 and the Effective Date of a Plan of Liquidation entered by the Bankruptcy Court on September 10, 2009 [Docket No. 1255], as extended from time to time by further Orders of the Bankruptcy Court, including the Extension Order.

**93.**    **Final Decree** means the decree contemplated under Bankruptcy Rule 3022.

**94.**    **Final Fee Applications** means the final requests for payment of Professional Fee Claims.

**95.**    **Final Order** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Chapter 11 Case or any related proceeding, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

**96.**    **Final Trust Distribution Date** means the date of the last Distribution from the Liquidating Trust under the Plan for and on account of an Allowed Claim.

**97.**    **First American Trust Adversary Action** has the meaning ascribed to it in Article X.B.

**98.**    **Future Costs** has the meaning ascribed to it in Article IV.B.2 herein.

**99.**    **Georgia Deed to Secure Debt** has the meaning ascribed to it in Article IV.B.3 herein.

**100.** **General Bar Date** means the bar date for filing Proofs of Claims for Claims arising prior to the Petition Date against any and/or all of the Debtors in the Chapter 11 Cases, other than those Claims expressly excluded from the General Bar Date pursuant to a Final Order of the Bankruptcy Court, or (i) August 28, 2009 for the Primary Filers or (ii) January 4, 2010 for the Secondary and Tertiary Filers.

**101.** **General Unsecured Claim** means a Claim that is not otherwise separately classified under the Plan.  For the avoidance of doubt, a General Unsecured Claim excludes Administrative Claims, Priority Claims, Miscellaneous Secured Claims, Secured Credit Facility Claims, ISIS Claim, 14% Notes Claims, 5% Notes Claims, 6% Notes Claims, Convenience Claims, Intercompany Claims, and Equity Interests.  A General Unsecured Claim does not include a Product Liability PI Claim, except to the extent of any deficiency of such claim as set forth in more detail in Article IV.B.10 herein or to the extent that a Non-Tax Priority Claim exceeds the amount of the statutory cap under section 507 of the Bankruptcy Code as set forth in more detail in Article IV.B.1 herein.

**102.** **Gibraltar** means Gibraltar Insurance Co. Ltd. a wholly owned subsidiary of FEI organized under the laws of Bermuda that issued policies of insurance covering product liability asserted against the Debtors and certain of the Debtors' workers' compensation liability.

**103.** **Governmental Bar Date** means the bar date for Governmental Units to file Proofs of Claim for Claims arising prior to the Petition Date against any and/or all of the Debtors, which date was September 8, 2009 for the Primary Filers, January 25, 2010 for the Secondary, and February 8, 2010 for the Tertiary Filers.

**104.** **Governmental Unit** has the meaning set forth in Bankruptcy Code section 101(27).

**105.** **Holdback Amount** means the amount equal to twenty percent (20%) of fees billed to the Debtors for a given month that were retained by the Debtors as a holdback on payment of Professional Fee Claims.

**106.** **Holder** means an entity holding a Claim or Interest.

**107.** **Impaired** means, when used in reference to a Claim, Interest or Class, a Claim, Interest or Class that is impaired within the meaning of Bankruptcy Code section 1124.

**108.** **Indemnification Obligation** means any obligation of any of the Debtors to

-14-

indemnify, reimburse, or provide contribution to any present or former officer, director, or employee, or any present or former Professionals, advisors, or representatives of the Debtors, pursuant to by-laws, articles of incorporation, contract, or otherwise as may be in existence immediately prior to the Petition Date.

**109.** **Initial Distribution Date** means a Business Day, as determined by the Liquidating Trustee, as soon as practicable after the Effective Date, that is at least thirty (30) Business Days after the funding of the Liquidating Trust or as soon thereafter as practicable.

**110.** **Initial Net Distributable Proceeds** means the amount of Net Distributable Proceeds available for distribution to the Holders of Allowed General Unsecured Claims and the 14% Notes as of the Effective Date, if any.

**111.** **Intercompany Claim** means any Claim held by a Debtor against another Debtor, including, without limitation: (a) any account reflecting intercompany book entries by a Debtor with respect to another Debtor, (b) any Claim not reflected in such book entries that is held by a Debtor against another Debtor, and (c) any derivative Claim asserted by or on behalf of one Debtor against another Debtor.

**112.** **Interim DIP Order** means the *Interim Order (I) Authorizing Debtors to Obtain Postpetition Secured Financing, (2) Authorizing the Use of Cash Collateral, (3) Granting Liens and Superpriority Claims, (4) Modifying the Automatic Stay, and (5) Setting Final Hearing* entered by the Bankruptcy Court on April 1, 2009 [Docket No. 183].

**113.** **IRS** means the Internal Revenue Service.

**114.** **ISIS Claim** means the Claim asserted by ISIS Lending, LLC for amounts owing to it under the prepetition ISIS Promissory Note.

**115.** **ISIS Collateral** has the meaning ascribed to it in Article IV.B.3 herein.

**116.** **ISIS Cure Payment** has the meaning ascribed to it in Article IV.B.3 herein.

**117.** **ISIS Effective Date Payment** has the meaning ascribed to it in Article IV.B.3 herein.

**118.** **ISIS Estimated Net Proceeds** has the meaning ascribed to it in Article IV.B.3 herein.

**119.** **ISIS Lien on Cash** has the meaning ascribed to it in Article IV.B.3 herein.

**120.** **ISIS Monthly Payment Amount** has the meaning ascribed to it in Article IV.B.3

-15-

herein.

121.    **ISIS Promissory Note** means the Promissory Note Secured By Deed of Trust, dated as of August 22, 2008, which evidences the loan made by ISIS to Fleetwood Motor Homes of California and Fleetwood Homes of California, Inc. in the principal amount of $27,250,000.

122.    **KEIP Employees** mean Andrew Griffiths, Leonard J. McGill, James Smith, and Michael Shearin.

123.    **KEIP Participants** means those individuals who are eligible to receive retention and/or incentive payments pursuant to the Fleetwood Enterprises, Inc. Key Employee Incentive and Retention Programs approved by the Bankruptcy Court on July 17, 2009 [Docket No. 956] or the Amended and Restated Key Employee Retention and Incentive Plan approved by the Bankruptcy Court on February 11, 2010 [Docket No. 1846].

124.    **KEIP Payment** means the discretionary incentive payment that is payable to the KEIP Employees pursuant to the *Order Approving the Debtors' Payment of Incentive Bonuses and Severance Payments to Key Employees* entered on July 17, 2009 [Docket No. 956] and the Modified and Amended KEIP Plan Order.

125.    **Law Debenture** means Law Debenture Trust Company of New York, a New York corporation and trust company, as successor Trustee for the 5% Notes under the terms of the 5% Indenture, and its successors and assigns.

126.    **Lien** means any lien, security interest, pledge, title retention agreement, encumbrance, charge, mortgage, or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

127.    **Liquidating Trust** means the trust established under this Plan with the power and authority set forth in this Plan and the Liquidating Trust Agreement.

128.    **Liquidating Trust Agreement** means the agreement to be executed as of the Effective Date establishing the Liquidating Trust pursuant to the Plan in substantially the form attached as <u>Exhibit B</u> hereto.

129.    **Liquidating Trust Assets** means all of the Debtors' Assets, property treated by the

Plan, any minutes, and general corporate records of Debtors, and any books and records relating to the foregoing not otherwise treated by the Plan, which shall automatically vest in the Liquidating Trust on the Effective Date pursuant to the terms of this Plan.

**130.    Liquidating Trust Oversight Committee** means the committee comprised of the following three entities:  two members nominated by the Creditors' Committee, which shall be Giant RV and Mike Thompson RV, and one by Whippoorwill.

**131.    Liquidating Trust Professionals** means the agents, financial advisors, attorneys, consultants, independent contractors, representatives, and other professionals of the Liquidation Trustee (in their capacities as such).

**132.    Liquidating Trustee** means SltnTrst LLC or such designee of which Peter Kravitz is the principal, or any successor in interest.

**133.    Local Rules** means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Central District of California.

**134.    Miscellaneous Secured Claim** means a Claim that is (a) secured by a valid and perfected Lien on property in which a Debtor's Estate has an interest (including, in some instances, secured tax claims) or (b) subject to setoff under Bankruptcy Code section 553 and such right of setoff has been asserted by the holder of such right as required by Article VII.J hereof, to the extent of the value of the Claimholder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code section 506(a) or, in the case of setoff, pursuant to Bankruptcy Code section 553.

**135.    Modified and Amended KEIP Plan Order** means the Order Approving Amended and Restated Key Employee Incentive Program entered by the Bankruptcy Court on February 12, 2010 [Docket No. 1846].

**136.    Net Distributable Proceeds** means the Net Proceeds derived from the liquidation or monetization of any and all of the Assets of the Debtors to be vested in the Liquidating Trust (including all Cash of the Debtors wherever located, including, but not limited to, Cash presently held in any segregated accounts for the benefit of the 14% Notes Claims but excluding the BofA Cash Collateral Amount), after payment of, or adequately reserving for payment of, all Allowed

-17-

Administrative Claims, all Allowed Priority Claims, all Allowed Secured Credit Facility Claims, all Allowed Miscellaneous Secured Claims, Professional Fee Claims of the Debtors and Creditors' Committee, and all Liquidating Trust expenses.

**137.**    **Net Proceeds** means such amounts collected from the sale or liquidation of Assets after payment of all costs and expenses of such sale or liquidation, including, without limitation, attorney fees.

**138.**    **Non-Tax Priority Claim** means a Claim, other than an Administrative Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to Bankruptcy Code section 507(a) and not otherwise separately classified herein.

**139.**    **Noteholder Settlement** means the settlement embodied in this Plan between the Creditors' Committee and the holders of a majority of the 14% Notes in principle.

**140.**    **Old Common Stock Interests** means, the shares of common stock of the Debtors issued and outstanding as of the Petition Date or otherwise held as of the applicable Distribution Record Date, including common stock acquired by holders of stock options and other rights to acquire stock who exercise their rights by the applicable Distribution Record Date.

**141.**    **Pennsylvania Mortgage** has the meaning ascribed to it in Article IV.B.3 herein.

**142.**    **Periodic Distribution Date** means a Distribution Date after the Initial Distribution Date which shall occur (i) after the first Business Day occurring ninety (90) days after the immediately preceding Distribution Date or (ii) on such other Business Day selected by the Liquidating Trustee, in its sole and absolute discretion.

**143.**    **Periodic Net Distributable Proceeds** means, with respect to each Periodic Distribution Date, the amount of Net Distributable Proceeds available to be distributed from the Liquidating Trust to the Holders of Allowed Claims pursuant to the terms hereunder.

**144.**    **Person** has the meaning set forth in Bankruptcy Code section 101(41).

**145.**    **Petition Date** means the date of filing of the applicable voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code, or March 19, 2009 for the Primary Filers, July 29, 2009 for the Secondary Filer, or August 11, 2009 for the Tertiary Filers.

**146.**    **Plan** means this chapter 11 plan, including the Exhibits and all supplements,

-18-

appendices, and schedules hereto, either in its current form or as the same may be altered, amended, or modified from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules.

147.    **Plan Document** means the Plan, together with any contract, instrument, release, or other agreement or document entered in connection with Plan.

148.    **Plan Proponents** means the Debtors and the Creditors' Committee.

149.    **Plan Supplement** means the compilation(s) of documents and forms of documents, specified in the Plan, that the Debtors will file with the Bankruptcy Court on or before the date that is (a) ten (10) days prior to the Voting Deadline or (b) set by the Bankruptcy Court for the filing of such documents and forms of documents.

150.    **Pre-Petition Secured Credit Facility** means the credit facility governed by that certain Third Amended Credit Agreement (as subsequently amended), dated as of January 5, 2007 among FEI, FHI and certain of FEI's and FHI's subsidiaries, as Borrowers, the Lenders referred to therein, and Bank of America, N.A., as Agent for the Lenders, and any of the documents and instruments relating thereto, as amended, supplemented or modified as of the date hereof.

151.    **Primary Filers** means all of the Debtors except the Secondary Filer and the Tertiary Filers.

152.    **Priority Claims** means, collectively, all Priority Tax Claims and Non-Tax Priority Claims.

153.    **Priority Tax Claim** means a Claim of a Governmental Unit of the kind specified in Bankruptcy Code sections 502(i) or 507(a)(8).

154.    **Product Liability PI Claims** means any Claim asserted for personal injury based on allegations of product liability against the Debtors that are covered by product liability insurance policies issued by Gibraltar.

155.    **Professional** means (a) any professional employed in these Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 328, or 1103 or otherwise, and (b) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to Bankruptcy Code section 503(b)(4).

156.    **Professional Fee Claim** means a Claim of a Professional for compensation for

services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and prior to and including the Effective Date.

157.    **Proof of Claim** means a proof of claim filed on or before the General Bar Date or the Governmental Bar Date, as applicable, or such other date as ordered by the Bankruptcy Court.

158.    **Pro Rata** means, at any time, the proportion that the Face Amount of an Allowed Claim in a particular Class bears to the aggregate Face Amount of all Allowed Claims in such Class, unless the Plan provides otherwise.

159.    **Reclamation Claim** means each Claim to the extent asserted against one or more of the Debtors pursuant to Bankruptcy Code section 546(c).

160.    **Released Claims** means the claims or causes of actions described in Article XI hereof.

161.    **Released Parties** means (i) any Professional, (ii) the Creditors' Committee, (iii) any member of the Creditors' Committee, solely in its capacity as a member of the Creditors' Committee and not in any other capacity, (iv) Law Debenture; (v) DB; (vi) BNYM and (vii) any of the representatives, agents, officers, directors, employees, professionals, financial advisors, consultants, or attorneys of the foregoing.

162.    **RV Assets Sale Order** means the *Amended Order (I) Authorizing and Approving the Sale of RV Assets Free and Clear of Liens, Claims, Interests and Encumbrances; (II) Authorizing and Approving Assumption and Assignment of Contracts and Leases; and (III) Granting Related Relief* entered on August 6, 2009 [Docket No. 1056].

163.    **Scheduled** means, with respect to any Claim, the status, priority and amount, if any, of such Claim as set forth in the Schedules.

164.    **Schedules** means the schedules of assets and liabilities, the list of Holders of Interests, and the statements of financial affairs filed by the Debtors pursuant to Bankruptcy Code section 521 and the Bankruptcy Rules, as such schedules have been or may be further modified, amended or supplemented in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

165.    **Secured Claims** means either the Miscellaneous Secured Claims or the Secured

Credit Facility Claims.

166.    **Secured Credit Facility** means the credit facility governed by the "Fourth Amended and Restated Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement dated as of March [26], 2009 among the Financial Institutions Named Herein, as the Lenders; Bank of America, N.A., as the Agent; Fleetwood Enterprises, Inc., as a Guarantor; and Fleetwood Holdings Inc., and certain of its Subsidiaries, as the Borrowers," the Interim DIP Order, and any of the documents and instruments relating thereto, as amended, supplemented or modified as of the date hereof.

167.    **Secured Credit Facility Claims** means the Claims of the Secured Parties arising under or from the Secured Credit Facility (including, without limitation, the Claims under the Pre-Petition Credit Facility (which were rolled up into the Secured Credit Facility)), the Interim DIP Order and/or the Final Cash Collateral Order, including without limitation the Postpetition Obligations (as defined in the Interim DIP Order).

168.    **Secured Parties** means the Prepetition Agent, the Prepetition Credit Facility Lenders, the Postpetition Agent and the DIP Lenders, as such terms are defined in the Interim DIP Order.

169.    **Secured Parties Releasees** has the meaning ascribed to it in Article XI.F.1. herein.

170.    **Securities Act** means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended.

171.    **Security** shall have the meaning ascribed to it in Bankruptcy Code section 101(49).

172.    **Secondary Filer** means Fleetwood Retail Corp. of Arizona.

173.    **Severance Action** means that adversary action entitled *Curtis Jay Howe v. Fleetwood Enterprises, Inc.*, Adversary No. 09-01421-MJ, alleging claims for breach of contract and violation of the Employee Retirement Income Security Act on the grounds that FEI had an obligation to pay severance to terminated employees, but failed to do so.

174.    **Severance Class** means all persons who were employed by one of the Debtors, were eligible to receive severance under the Debtors' severance policy and were terminated on or after March 6, 2009, without receiving severance, with the exception of the KEIP Participants.

175.    **Severance Class Claim** means any and all demands, claims, damages, and causes of action, present and future, which were asserted or could have been asserted in the Severance Action,

including, but not limited to, any other claims against the Debtors for severance pay or benefits based on or arising out of any federal, state or local statute, ordinance or regulation.

176.    **Severance Class Members** means all individuals within the definition of the Severance Class.

177.    **Solicitation** means the solicitation by the Plan Proponents of acceptances of the Plan.

178.    **Solicitation Procedures Order** means the order entered by the Bankruptcy Court establishing procedures for Solicitation of votes for or against the Plan under Bankruptcy Code sections 105, 1125, 1126 and 1128 and Bankruptcy Rules 2002, 3017, 2018 and 3020.

179.    **Subsidiary Debtor(s)** means, individually or collectively, the debtors and debtors in possession identified on Exhibit A annexed hereto.

180.    **Substantial Contribution Claim** means a Claim under Bankruptcy Code subsections 503(b)(3), (b)(4), or (b)(5) for compensation or reimbursement of expenses incurred in making a substantial contribution in the Chapter 11 Cases.

181.    **Tax Claim** means all or that portion of a Claim held by a Governmental Unit for a tax assessed or assessable against the Debtors, including income and employment taxes and any related penalties or interest.

182.    **Tax Items** has the meaning ascribed to such term in Article VI.F.6 hereof.

183.    **Taxes** means any and all taxes, levies, imposts, assessments, or other charges of whatever nature imposed at any time by a Governmental Unit or by any political subdivision or taxing authority thereof or therein and all interest, penalties, or similar liabilities with respect thereto.

184.    **Tertiary Filers** means Fleetwood Retail Corp. of Arkansas, Fleetwood Retail Corp. of Florida, Fleetwood Retail Corp. of Georgia, and Fleetwood Retail Corp. of South Carolina.

185.    **Turnover Motion** has the meaning ascribed to it in Article IV.B.2 herein.

186.    **Unclassified Claims** means Administrative Claims and Priority Tax Claims.

187.    **Unimpaired** means, when used in reference to a Claim, Equity Interest or Class, a Claim, Equity Interest or Class that is not impaired within the meaning of Bankruptcy Code section 1124.

188.    **U.S. Trustee** means the Office of the United States Trustee for the Central District of

-22-

California.

**189.    Voting Deadline** means the date and time, as fixed by an order of the Bankruptcy Court by which all Ballots to accept or reject the Plan must be received in order to be counted.

**190.    WARN Action** means the Consolidated Complaint for Damages and Other Relief filed on September 22, 2009 by Sandra Justice, Alicia Rice, Ronald Doud, Jeremiah Hastings, Brian Tucker, and Robert Myers, purportedly acting on behalf of a putative class, alleging that Fleetwood Enterprises, Inc., Fleetwood Travel Trailers of Ohio, Inc., Fleetwood Motor Homes of California, Inc. and Fleetwood Travel Trailers of Oregon, Inc. violated the WARN Act and California WARN Act.

**191.    WARN and Severance Class Settlement Agreement** means the Compromise and Settlement Agreement entered into by and between the Debtors and the Creditors' Committee on the one hand, and Plaintiffs Sandra Justice, Alicia Rice, Ronald Doud, Jeremiah Hastings, Brian Tucker, Robert Myers and Curtis Jay Howe, on behalf of themselves and on behalf of each person who is a member of the WARN Class or the Severance Class and thus eligible to participate in the settlement on the other hand.

**192.    WARN Class** means all persons who were employed by one of the Debtors in a facility with greater than 50 employees and were terminated on or after March 9, 2009, without receiving a full 60 days' notice in advance of their termination by a Debtor who either (a) conducted a mass layoff of more than 50 employees on or after March 9, 2009, or within 30 days thereafter, or (b) conducted a plant closing on or after March 9, 2009, with the exception of the KEIP Participants.

**193.    WARN Class Claim** means any and all demands, claims, damages, and causes of action, present and future, which (a) were asserted or could have been asserted in the WARN Action, including, but not limited to, any claims against the Debtors for back pay or benefits based on or arising out of any federal, state or local statute, ordinance or regulation.

**194.    WARN Class Member** means all individuals included within the definition of the WARN Class.

**195.    Whippoorwill** means Whippoorwill Associates Inc., as agent for its discretionary accounts, and Brigade Capital Management, LLC, on behalf of the accounts it represents, as the

-23-

beneficial owners of approximately 55.4% of the entire issuance of the 14% Notes.

**196.    Whippoorwill Fees** has the meaning ascribed to such term as set forth in Article IV.B.5.

**C.    Rules of Interpretation**

For purposes of the Plan (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in the Plan to sections, articles, Schedules and Exhibits are references to sections, articles, Schedules and Exhibits of or to the Plan, (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (f) to the extent not modified herein, the rules of construction set forth in Bankruptcy Code section 102 and in the Bankruptcy Rules shall apply.

To the extent there is an inconsistency between the Second Amended Disclosure Statement as approved by the Court on April 27, 2010 and the Plan, the terms of the Plan shall govern.  To the extent that there is an inconsistency between this Plan and any prior version thereof, the terms of this Plan shall govern.

**D.    Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**E.    Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of (i) the State of California shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan and (ii) the laws

-24-

of the state of incorporation of each Debtor shall govern corporate governance matters with respect to such Debtor, in either case without giving effect to the principles of conflicts of law thereof.

**F.      Exhibits**

All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court on or before the Exhibit Filing Date.  After the Exhibit Filing Date, copies of Exhibits can be obtained upon written request to the Claims Agent to the Debtors, at Fleetwood Claims Processing, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245, or by downloading such Exhibits from the Bankruptcy Court's website at http://www.caeb.uscourts.gov (registration required) or the Claims Agent's website at www.kccllc.net/fleetwood.  To the extent any Exhibit is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-Exhibit portion of the Plan shall control.

<div align="center">

**III.**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

</div>

**A.      Introduction**

All Claims and Equity Interests, except Administrative Claims and Priority Tax Claims are placed in the Classes set forth below.  In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified.

A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

The Plan provides for substantive consolidation of the Debtors' assets and liabilities for voting and distribution purposes, as described in Article VI.A of this Plan.  However, the Plan Proponents specifically reserve the right to seek confirmation of the Plan with respect to each Debtor

separately.  The Debtors have set forth the Classes below, which is a summary of the Claims

treatment.  Readers should refer to Article IV for the complete discussion of Claims treatment.

## CLAIMS TREATMENT

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| N/A | Administrative Claims | $3.1 million | Full payment – one hundred cents on the dollar (100/100) upon the earlier of the Distribution Date immediately following the date the Claim becomes an Allowed Claim or the date that is ninety (90) days after the date on which such Claim becomes an Allowed Claim. |
| N/A | Priority Tax Claims | $1.0 million | Full payment – one hundred cents on the dollar (100/100) consistent with Bankruptcy Code section 1129(a)(9)(C). |
| 1 | Non-Tax Priority Claims | $7.2 million | Full payment – one hundred cents on the dollar (100/100).  Cash equal to the unpaid portion of the Allowed Non-Priority Claim or such other treatment as agreed upon between the Claim holder and the Liquidating Trustee upon the earlier of the Distribution Date immediately following the date that the Claim becomes an Allowed Claim or 90 days after the date when such claim becomes an Allowed Claim.<br><br>Estimated Projected Payment:  100% **Unimpaired; Deemed to Accept** |
| 2 | Secured Credit Facility Claim | $1.7 million | On the Effective Date, the Allowed Secured Credit Facility Claim shall be treated in the manner set forth in Article IV.B.2 herein as agreed to between the parties.<br><br>Estimated Projected Payment:  100% **Impaired; Entitled to Vote** |
| 3 | ISIS Claim | $17.8 million | On or as soon as reasonably practicable after the Effective Date, the Allowed ISIS Claim shall treated in the manner set forth in Article IV.B.3 herein as agreed to between the parties.<br><br>Estimated Projected Payment: 100% **Impaired; Entitled to Vote** |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 4 | Miscellaneous Secured Claims | Unknown | At the election of the Liquidating Trustee, (i) Cash equal to the lesser of the unpaid portion of such Allowed Claim and the value of the Holder's Collateral securing the Miscellaneous Secured Claim as required pursuant to section 506(b) of the Bankruptcy Code, and which only to secured tax Claims, shall include applicable interest as required under 11 U.S.C. section 511; (ii) a return of the Holder's Collateral; or (iii) such other treatment as agreed to in writing upon the earlier of (a) the Distribution Date immediately following the date the Claim becomes an Allowed Claim or (b) the date that is ninety (90) days after the date on which such Claim becomes an Allowed Claim. <br><br> Estimated Projected Payment: 100% <br> **Unimpaired; Deemed to Accept** |
| 5 | 14% Notes Claims | $84.3 million | On the Effective Date, the Liens of the 14% Notes shall remain as valid Liens for Plan purposes only and the 14% Notes Claims shall be Allowed as a Secured Claim in the amount of $84,256,664. In full and final satisfaction of their Secured Allowed Claim, the 14% Notes Claims shall receive their Pro Rata share of 43.5% of the Net Distributable Proceeds, net of the fees and expenses payable to DB and Whippoorwill (including those of their counsel) and the distribution to Class 8, the Initial Net Distributable Proceeds of which shall be payable on the Effective Date, and the balance of which shall be distributable on each subsequent Distribution Date, as reasonably practicable after the Liquidating Trust acquires such Net Distributable Proceeds. The Distribution to the 14% Notes Claims shall be subject to the exercise by DB of any contractual right of priority or charging lien under the 14% Indenture for payment of its fees and expenses. *See* Article IV.B.5 below for further treatment. <br><br> Estimated Projected Payment: 18.2% <br> **Impaired; Entitled to Vote** |

-27-

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 6 | General Unsecured Claims | $115 million to $195 million | Provided that all Allowed Administrative Claims, Priority Claims and Secured Claims have been paid in full or funds sufficient to satisfy all Allowed Administrative Claims, Priority Claims and Secured Claims have been placed in a segregated reserve, as set forth in the Plan and in the Liquidating Trust Agreement, and subject to the occurrence of the Effective Date, on, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date a General Unsecured Claim becomes an Allowed General Unsecured Claim or (b) the date that is ninety (90) days after the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for such Allowed General Unsecured Claim, its Pro Rata share of the Initial Net Distributable Proceeds, if any, and, on each Periodic Distribution Date, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the Periodic Net Distributable Proceeds, not to exceed in the aggregate 56.5% of the total Net Distributable Proceeds.   In the aggregate, including any distributions herein to Classes 7, 10 (to the extent of any deficiency), 11 (to the extent of any deficiency), Allowed General Unsecured Claims shall receive 56.5% of the Net Distributable Proceeds available for distribution.<br><br>Estimated Projected Payment:  8.7% to 14.7%<br>**Impaired; Entitled to Vote** |

LA1DOCS1-#278556-v2-Fleetwood_-_Fourth_Amended_Joint_Plan_of_Liquidation.DOC

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 7 | 6% Notes Claims | $161.173 million | Provided that all Allowed Administrative Claims, Priority Claims and Secured Claims have been paid in full or funds sufficient to satisfy all Allowed Administrative Claims, Priority Claims and Secured Claims have been placed in a segregated reserve, as set forth in the Plan and in the Liquidating Trust Agreement, and subject to the occurrence of the Effective Date, and subject to acceptance of the Plan by Class 7, in full and final satisfaction of their Allowed Claim, Holders of 6% Notes Claims shall receive $2 million from the 56.5% Net Distributable Proceeds allocable to the General Unsecured Claims, which amount shall be paid at the time Distributions are made to General Unsecured Creditors pursuant to the Plan or at such earlier time as the Liquidating Trustee shall determine in its sole and absolute discretion. Concurrently with the final payment of Professional Fee Claims for the Debtors and the Creditors' Committee after the Effective Date and provided that Class 7 has voted to accept the Plan, the fees and expenses of the indenture trustee of the 6% Notes and the trustee's professionals, including its counsel, shall be paid to such applicable indenture trustee or professional, subject to a review for reasonableness by the Creditors' Committee, out of the 56.5% of the Net Distributable Proceeds allocable to the Allowed General Unsecured Claims, but if at the time of such distribution, there are insufficient funds to make payment in full, then such fees shall be paid Pro Rata with other professionals proposed to be paid at such time under this Plan (including the DB Fees and Whippoorwill Fees).<br><br>Estimated Projected Payment:  1.2%<br>**Impaired; Entitled to Vote** |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 8 | 5% Notes Claims | $1.069 million | Pursuant to the terms of the Noteholder Settlement among the Creditors' Committee and the Holders of a majority of the 14% Notes, the parties agreed that the Holders of the 14% Notes Claims would pay for the distribution to the Holders of the 5% Notes Claims, if any, out of the 43.5% of the Net Distributable Proceeds allocable to the Allowed 14% Notes Claims.  Pursuant to negotiations between the Holders of a majority of the 14% Notes and Law Debenture Trust Company of New York, as indenture trustee for the 5% Notes (the "5% Indenture Trustee"), provided that Class 8 does not vote to reject the Plan and the 5% Indenture Trustee does not object to the Plan or Disclosure Statement, Holders of the Allowed 14% Notes Claims will allocate to Holders of Allowed 5% Notes Claims a total of $75,000 from the 43.5% of Net Distributable Proceeds allocated to the Allowed 14% Notes Claims.  The $75,000 distribution to Holders of Allowed 5% Notes Claims shall include all fees and expenses of the 5% Indenture Trustee and shall be subject to the exercise by such 5% Indenture Trustee of any contractual right of priority or charging lien under the 5% Notes Indenture for payment of its fees and expenses.  Distributions to Holders of Class 8 Claims shall be made pro rata and contemporaneously with the first distribution to the Holders of Class 5 Claims, other than payments for fees and expenses of DB and Whippoorwill.  *See* Section IV.A.5 below for further treatment.<br><br>Estimated Projected Payment:  6.8%<br>**Impaired; Entitled to Vote** |

LA1DOCS1-#278556-v2-Fleetwood_-_Fourth_Amended_Joint_Plan_of_Liquidation.DOC

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 9 | Convenience Claims | $5 million (approximate) | Holders of an Allowed Convenience Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for such Convenience Claim, 25% of their Allowed Claim as a final distribution.  Holders of Class 6 Claims in excess of $10,000 will be eligible to opt into this Class by reducing their claim to $10,000 by checking the "Opt-In to Convenience Class" box on their ballot.  Total distributions under this Class are anticipated to be limited to $1.25 million, subject to the Liquidating Trustee's discretion to increase this amount at the time of the Initial Distribution Date.  In the event that this Class has greater demand than funds allocated to this Class, then the Liquidating Trustee shall have the absolute discretion to select and remove certain of the opt-in members of this Class.  In no instance shall the Liquidating Trustee remove a non-opt-in Allowed Convenience Claim from this Class.<br><br>Estimated Projected Payment:  22.4%<br>**Impaired; Entitled to Vote** |
| 10 | Product Liability PI Claims | Unknown | Unless their Product Liability PI Claim has previously become an Allowed Claim, all Holders of Claims in Class 10 shall be required to participate in the Product Liability PI Claim Mediation Process attached hereto as Exhibit "F."  As provided in the Product Liability PI Claim Mediation Process, if and when Allowed, Holders of Class 10 Claims shall receive a Pro Rata distribution of available insurance proceeds from Gibraltar policies covering Product Liability PI Claims upon the year in which the claim arose.  To the extent the allowed amount of any Class 10 Claim is not paid in full with insurance proceeds, then the unpaid deficiency amount shall receive the treatment provided for under Class 6 for Allowed General Unsecured Claims.<br><br>Estimated Projected Payment:  Unknown<br>**Impaired; Entitled to Vote** |

LA1DOCS1-#278556-v2-Fleetwood_-_Fourth_Amended_Joint_Plan_of_Liquidation.DOC

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 11 | WARN Class Claims and Severance Class Claims | Unknown | If the WARN and Severance Class Settlement Agreement is approved:<br>• Class Members who do not Opt Out will receive the treatment afforded in the WARN and Severance Class Settlement.<br>• Class Members who Opt Out, who have filed claims and whose Claims are Allowed Claims, shall receive full payment of their Claims up to the cap set by Bankruptcy Code section 507 with any excess treated as an unsecured claim to share Pro Rata with Claims in Class 6.<br>If the WARN and Severance Class Settlement Agreement is *not* approved:<br>• The WARN Class Claim and Severance Class claims shall continue to be litigated and class members whose Claims become Allowed Claims, shall receive full payment of their Claims up to the cap set by Bankruptcy Code section 507 with any excess treated as Claims in Class 6.<br><br>Estimated Projected Payment: Unknown<br>**Impaired; Entitled to Vote.** |
| 13A | Westchester Fire Insurance Company and ACE INA Insurance | Capped at the amount of the proceeds of the Letter of Credit | The Allowed Class 13A Holder Claims shall be treated in the manner set forth in Article IV.B.13(a) herein as agreed to between the parties.<br><br>Estimated Projected Payment: Unknown<br>**Impaired; Entitled to Vote** |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 13B | Old Republic Insurance Co. | Unknown | Upon a Claim in Class 13B becoming an Allowed Claim, the Holder of a Class 13B Claim shall be permitted to either:  (i) to the extent the Allowed Claim is less than the amount of the Collateral held by Holder, retain  the Collateral up to the amount of such Allowed Claim and any excess shall be returned to the Liquidating Trustee; (ii) to the extent the Allowed Claim exceeds the amount of the Collateral held by Holder, retain the Collateral and the amount by which the Allowed Claim exceeds the amount of the Collateral shall be treated as a General Unsecured Claim in Class 6; or (iii)  accept such other treatment as to which such Holder and the Debtors and/or Liquidating Trustee shall have agreed upon in writing.<br><br>Estimated Projected Payment:  Unknown<br>**Unimpaired; Deemed to Accept** |
| 13C | National Union Fire Insurance Company of Pittsburgh, PA, et al. | Unknown | Upon a Claim in Class 13C becoming an Allowed Claim, the Holder of a Class 13C Claim shall be permitted to either: (i) to the extent the Allowed Claim is less than the amount of the Collateral held by Holder, retain  the Collateral up to the amount of such Allowed Claim and any excess shall be returned to the Liquidating Trustee; (ii) to the extent the Allowed Claim exceeds the amount of the Collateral held by Holder, retain the Collateral and the amount by which the Allowed Claim exceeds the amount of the Collateral shall be treated as a General Unsecured Claim in Class 6; or (iii)  accept such other treatment as to which such Holder and the Debtors and/or Liquidating Trustee shall have agreed upon in writing.<br><br>Estimated Projected Payment:  Unknown<br>**Unimpaired; Deemed to Accept** |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 13D | Fidelity and Deposit Company of Maryland | Unknown | Upon a Claim in Class 13D becoming an Allowed Claim, the Holder of a Class 13D Claim shall be permitted to either: (i) to the extent the Allowed Claim is less than the amount of the Collateral held by Holder, retain the Collateral up to the amount of such Allowed Claim and any excess shall be returned to the Liquidating Trustee; (ii) to the extent the Allowed Claim exceeds the amount of the Collateral held by Holder, retain the Collateral and the amount by which the Allowed Claim exceeds the amount of the Collateral shall be treated as a General Unsecured Claim in Class 6; or (iii)  accept such other treatment as to which such Holder and the Debtors and/or Liquidating Trustee shall have agreed upon in writing.<br><br>Estimated Projected Payment:  Unknown<br>**Unimpaired; Deemed to Accept** |
| 13E | North Carolina Self-Insurance Guaranty Association | Unknown | Upon a Claim in Class 13E becoming an Allowed Claim, the Holder of a Class 13E Claim shall be permitted to either: (i) to the extent the Allowed Claim is *less than* the amount of the Collateral held by Holder, retain the Collateral up to the amount of such Allowed Claim and any excess shall be returned to the Liquidating Trustee; (ii) to the extent the Allowed Claim *exceeds* the amount of the Collateral held by Holder, retain the Collateral and the amount by which the Allowed Claim exceeds the amount of the Collateral shall be treated as a General Unsecured Claim in Class 6; or (iii) accept such other treatment as to which such Holder and the Debtors and/or Liquidating Trustee shall have agreed upon in writing.<br><br>Estimated Projected Payment:  Unknown<br>**Impaired; Entitled to Vote** |

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS AS OF THE EFFECTIVE DATE (VALUES ON A CONSOLIDATED BASIS) | ESTIMATED PROJECTED PAYMENT/TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|---|
| 13F | Georgia Self-Insurers Guaranty Trust Fund | Unknown | Upon a Claim in Class 13F becoming an Allowed Claim, the Holder of a Class 13F Claim shall be permitted to either: (i) to the extent the Allowed Claim is *less than* the amount of the Collateral held by Holder, retain the Collateral up to the amount of such Allowed Claim and any excess shall be returned to the Liquidating Trustee; (ii) to the extent the Allowed Claim *exceeds* the amount of the Collateral held by Holder, retain the Collateral and the amount by which the Allowed Claim exceeds the amount of the Collateral shall be treated as a General Unsecured Claim in Class 6; or (iii) accept such other treatment as to which such Holder and the Debtors and/or Liquidating Trustee shall have agreed upon in writing.<br><br>Estimated Projected Payment: Unknown<br>**Impaired; Entitled to Vote** |
| 13G | Lumbermen's Underwriting Alliance | Unknown | Upon a Claim in Class 13G becoming an Allowed Claim, the Holder of a Class 13G Claim shall be permitted to either: (i) to the extent the Allowed Claim is less than the amount of the Collateral held by Holder, retain the Collateral up to the amount of such Allowed Claim and any excess shall be returned to the Liquidating Trustee; (ii) to the extent the Allowed Claim exceeds the amount of the Collateral held by Holder, retain the Collateral and the amount by which the Allowed Claim exceeds the amount of the Collateral shall be treated as a General Unsecured Claim in Class 6; or (iii) accept such other treatment as to which such Holder and the Debtors and/or Liquidating Trustee shall have agreed upon in writing.<br><br>Estimated Projected Payment: Unknown<br>**Impaired; Entitled to Vote.** |
| 14 | Intercompany Claims By and Between Debtors | Unknown | On the Effective Date, all Intercompany Claims by and between the Debtors shall be cancelled.<br><br>Estimated Projected Payment: 0%<br>**Impaired; Deemed to Reject** |
| 15 | Equity Interests | Unknown | On the Effective Date, all Equity Interests shall be cancelled.<br><br>Estimated Projected Payment: 0%<br>**Impaired; Deemed to Reject** |

-35-

**IV.**

**TREATMENT OF CLAIMS AND INTERESTS**

**A.     Unclassified Claims**

In accordance with Bankruptcy Code section 1123(a)(1) of the Bankruptcy Code, certain Claims have not been classified, and the respective treatment of such Unclassified Claims is set forth immediately below.

**1.     Administrative Claims**

Except as otherwise provided herein, and subject to the requirements of this Plan, on, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date an Administrative Claim becomes an Allowed Administrative Claim or (b) the date that is ninety (90) days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, a Holder of an Allowed Administrative Claim against the Debtors shall receive, in full and final satisfaction, settlement and release of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of such Allowed Administrative Claim or (b) such other treatment as to which such Holder and the Debtors and/or the Liquidating Trustee shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by a Debtor in the ordinary course of business during the Chapter 11 Cases may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto (i) prior to the Effective Date, by the Debtors and (ii) subsequent to the Effective Date, by the Liquidating Trustee.  Administrative Claimholders will be paid in full on account of their Claims and are not entitled to vote on the Plan.

**2.     Priority Tax Claims**

Except to the extent that an Allowed Priority Tax Claim has been paid prior to the Distribution Date, a Holder of an Allowed Priority Tax Claim shall be entitled to receive, in full and final satisfaction, settlement and release of and in exchange for such Allowed Priority Tax Claim, (i) regular installment Cash payments, occurring not less frequently than quarterly over a period not exceeding five (5) years after the Petition Date, in an aggregate principal amount equal to the unpaid portion of such Allowed Priority Tax Claim, plus interest on the unpaid portion thereof at the rate

-36-

provided under applicable non-bankruptcy law as set forth in Bankruptcy Code section 511 from the Effective Date through the date of payment thereof or (ii) such other treatment as to which such Holder and the Debtors and/or the Liquidating Trustee shall have agreed upon in writing; provided, however, that the Liquidating Trustee shall have the right to pay any Allowed Priority Tax Claim, or any remaining balance of any Allowed Priority Tax Claim, in full at any time on or after the Effective Date without premium or penalty.  Priority Tax Claimholders will be paid in full on account of their Claims and are not entitled to vote on the Plan.

**B.    Claims**

      **1.    Class 1:  Non-Tax Priority Claims**

On, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date a Non-Tax Priority Claim becomes an Allowed Non-Tax Priority Claim or (b) the date that is ninety (90) days after the date on which such Non-Tax Priority Claim becomes an Allowed Non-Tax Priority Claim, a Holder of an Allowed Non-Tax Priority Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for such Allowed Non-Tax Priority Claim, (i) Cash equal to the unpaid portion of such Allowed Non-Tax Priority Claim or (ii) such other treatment as to which such Holder and the Debtors and/or the Liquidating Trustee shall have agreed upon in writing.  Any deficiency claim over and above the limits set forth under section 507 of the Bankruptcy Code for priority claims shall be treated as a Class 6 General Unsecured Claim.

Class 1 is conclusively presumed to have accepted the Plan and, therefore, Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan.

      **2.    Class 2:  Allowed Secured Credit Facility Claims**

The Secured Credit Facility Claims shall be Allowed Claims, except for amounts at issue in the Creditors' Committee's Motion for Turnover of Property of the Estate Pursuant to 11 U.S.C. § 542 [Docket No. 1476] (the "Turnover Motion")  (which shall become Allowed Claims to the extent the Turnover Motion is denied pursuant to a Final Order of the Bankruptcy Court or other court of competent jurisdiction (including any appellate court)), the Disputed Costs, any disputed Further Costs, any disputed post-Effective Date costs and any BofA Indemnification Claims (as

LA1DOCS1-#278556-v2-Fleetwood_-_Fourth_Amended_Joint_Plan_of_Liquidation.DOC

defined below) that are contingent, unliquidated or disputed as of the Effective Date. On the

Effective Date, Holders of Secured Credit Facility Claims shall receive the following treatment in

full and final satisfaction of such Allowed Claims:

(a)    **Payment of Undisputed Postpetition Obligations.**  The Debtors shall

pay in full all Postpetition Obligations (as defined in the Interim DIP Order) then outstanding

(including, without limitation, all costs, fees and/or expenses of the Secured Parties

(including, without limitation, costs, fees, and/or expenses of their counsel) other than the

Disputed Costs, the Further Costs and any BofA Indemnification Claims that are contingent,

unliquidated or disputed as of the Effective Date) and that are payable by the Debtors in

accordance with the Interim DIP Order, the Secured Credit Facility and the Final Cash

Collateral Order (in each case modified by the Extension Order); provided that the payment

of any amount pursuant to this subsection (a) shall not constitute a waiver or release of any

claim, defense, right or remedy that any Person might have or assert in connection with the

Turnover Motion.

(b)    **Turnover Motion**:

(1)    Unless the Turnover Motion has been resolved by a Final

Order of the Bankruptcy Court or other court of competent jurisdiction (including any

appellate court) as of the Effective Date, the Debtors shall provide, or cause to be

provided, to BofA Cash in the amount of $600,000 (plus any interest and other

earnings that accrue thereon) (the "Turnover Motion Cash Collateral") to cover costs,

fees and/or expenses of the Secured Parties (including, without limitation, costs, fees

and/or expenses of their counsel) incurred by the Secured Parties after the Effective

Date in relation to the Turnover Motion until such time as the Turnover Motion has

been resolved by a Final Order of the Bankruptcy Court or other court of competent

jurisdiction (including any appellate court) (the "Turnover Motion Costs").

(2)    BofA shall promptly return any portion of the Turnover Motion

Cash Collateral that has not been used by the Secured Parties to pay Turnover Motion

Costs in accordance with this subsection (b) within the later of five (5) Business Days

-38-

after the entry of a Final Order of the Bankruptcy Court or other court of competent

jurisdiction (including any appellate court) or five (5) Business Days after resolution

of any and all Cost Disputes (as defined below) relating to Turnover Motion Costs in

accordance with subsection (b)(3) below.

(3)    Subject to subsection (f)(2) below, BofA, for and on behalf of the

Secured Parties, shall be entitled, without the need for any further notice to or

approval of any Person, including without limitation the Debtors, the Liquidating

Trustee, or the Bankruptcy Court, to apply the Turnover Motion Cash Collateral to

pay any documented Turnover Motion Costs unless any such payment is subject to a

Cost Dispute.   In the event of a Cost Dispute relating to any Turnover Motion Cost,

BofA, for and on behalf of the Secured Parties, shall be entitled to apply the Turnover

Cash Collateral to pay any such disputed Turnover Motion Cost only upon either (i)

entry of a Final Order of the Bankruptcy Court or other court of competent

jurisdiction (including any appellate court) authorizing such payment or (ii) receipt by

BofA of written notice from the Liquidating Trustee withdrawing its Cost Dispute as

to such payment.

(4)    To the extent the Turnover Motion Costs exceed the Turnover Motion

Cash Collateral**,** then any Turnover Motion Costs in excess of the Turnover Motion

Cash Collateral that are (i) not the subject of a Cost Dispute or (ii) to the extent the

subject of a Cost Dispute, are either approved by a Final Order of the Bankruptcy

Court or other court of competent jurisdiction (including any appellate court) or

withdrawn by the Liquidating Trustee (as reflected in a written notice from the

Liquidating Trustee), shall be paid by the Liquidating Trustee.

(5)    Notwithstanding anything contained in the Plan to the contrary,

the Turnover Motion is preserved for the benefit of the Debtors or the Liquidating

Trust, as applicable, to the extent that as of the Effective Date it has not been

withdrawn with prejudice or denied with prejudice by a Final Order of the

-39-

Bankruptcy Court or other court of competent jurisdiction (including any appellate court).

(c)    **Costs Incurred Prior to the Effective Date.**

(1)    As of the Effective Date, the Debtors shall provide, or cause to be provided, to BofA Cash in the amount of $100,000 (plus any interest and other earnings that accrue thereon) (the "Further Costs Cash Collateral") to be held as collateral for any further costs, fees and/or expenses of the Secured Parties (including, without limitation, costs, fees, and/or expenses of their counsel) incurred on or prior to the Effective Date and payable by the Debtors in accordance with the Interim DIP Order, the Secured Credit Facility and the Final Cash Collateral Order (in each case modified by the Extension Order) ("Further Costs") that have not been invoiced and remain unpaid as of the Effective Date.

(2)    All invoices, statements, receipts or other documents evidencing such Further Costs must be submitted to the Liquidating Trustee within sixty (60) days of the Effective Date. Subject to subsection (f)(2) below, BofA, for and on behalf of the Secured Parties, shall be entitled, without the need for any further notice to or approval of any Person, including without limitation, the Debtors, the Liquidating Trustee, or the Bankruptcy Court, to apply the Further Costs Cash Collateral to pay any documented Further Costs unless any such payment is subject to a Cost Dispute. In the event of a Cost Dispute relating to any Further Cost, BofA, for and on behalf of the Secured Parties, shall be entitled to apply the Further Costs Cash Collateral to pay such disputed Further Costs only upon either (i) entry of a Final Order of the Bankruptcy Court or other court of competent jurisdiction (including any appellate court) authorizing such payment or (ii) receipt by BofA of written notice from the Liquidating Trustee withdrawing its Cost Dispute as to such payment.

(3)    Any Further Costs Cash Collateral remaining sixty (60) days after the Effective Date that exceeds the amount of any Further Costs claimed by

BofA as provided above shall be released by BofA to the Liquidating Trust within ten (10) Business Days.

(d)      **Pre-Confirmation Costs That Have Previously been Disputed.**

(1)      The Debtors shall provide, or cause to be provided, to BofA Cash in the amount equal to any  costs, fees and/or expenses of the Secured Parties (including costs, fees and/or expense of their counsel) that were disputed by the Debtors or the Creditors' Committee prior to the Effective Date in accordance with the requirements of paragraph 13 of the Final Cash Collateral Order (or corresponding provisions of any previous cash collateral order or the Extension Order) (the "Disputed Costs") (plus any interest and other earnings that accrue thereon) (the "Disputed Costs Cash Collateral") that have not been paid to BofA or any of the other Secured Parties as of the Effective Date to be held as collateral for such Disputed Costs.

(2)      BofA, for and on behalf of the Secured Parties, shall be entitled, without the need for any further notice to or approval of any Person, including without limitation, the Debtors, the Liquidating Trustee, or the Bankruptcy Court, to apply the Disputed Costs Cash Collateral to pay such Disputed Costs that are either (i) not the subject of a motion, objection or other formal action commenced by the Liquidating Trustee in the Bankruptcy Court prior to one year after the Effective Date or (ii) approved by a Final Order of the Bankruptcy Court or other court of competent jurisdiction (including any appellate court) or (iii) are no longer disputed by the Liquidating Trustee (as reflected in a written notice from the Liquidating Trustee).

(3)      Notwithstanding anything to the contrary contained in the Plan, the Liquidating Trust reserves the right to seek an Order of the Bankruptcy Court (which Order shall be subject to any appeal rights of any party) as to the Secured Parties' entitlement to any Disputed Costs; provided, however, that unless the Liquidating Trustee has filed a motion or brought a formal action in the Bankruptcy

Court seeking such an Order within one year after the Effective Date, the Liquidating

Trust and the Liquidating Trustee shall be deemed to have irrevocably waived any

right to seek such an Order, and the Disputed Costs shall be deemed to be Allowed

Claims for the purpose of this Plan and shall not be subject to any further objection,

challenge, action or adversary proceeding by any Person whether in the Bankruptcy

Court or elsewhere.

(4)    Any Disputed Costs Cash Collateral remaining after the

resolution and payment of all Disputed Costs pursuant to this subsection (d) shall be

promptly released by BofA to the Liquidating Trustee within five (5) Business Days

after the resolution of all Disputed Costs.

(e)    **Contingent Indemnity Collateral.**

(1)    The Debtors shall provide, or cause to be provided, to BofA

Cash in the amount of $5,000,000 (plus any interest and other earnings that accrue

thereon) (the "Indemnity Cash Collateral") to be held as collateral for any

unliquidated, contingent, or post-Effective Date claims of the Secured Parties,

including, without limitation, any claims for indemnification that any of them might

have asserted or may assert and costs, fees and/or expenses of the Secured Parties

(including, without limitation, costs, fees and/or expenses of their counsel) payable by

the Debtors in accordance with the Interim DIP Order, the Secured Credit Facility and

the Final Cash Collateral Order (in each case modified by the Extension Order) that

are incurred after the Effective Date in connection with any such unliquidated,

contingent and/or indemnification claims (collectively, "BofA Indemnification

Claims").

(2)    Subject to Section (f)(2) below, BofA, for and on behalf of the

Secured Parties, shall be entitled, without the need for any further notice to or

approval of any Person, including without limitation the Debtors, the Liquidating

Trustee, or the Bankruptcy Court, to apply the Indemnity Cash Collateral to pay any

documented BofA Indemnification Claim as and when such claim become liquidated

-42-

and non-contingent unless any such payment is subject to a Cost Dispute.  In the event of a Cost Dispute relating to any BofA Indemnification Claim, BofA, for and on behalf of the Secured Parties, shall be entitled to apply the Indemnity Cash Collateral to pay any such disputed BofA Indemnification Claim only upon either (i) entry of a Final Order of the Bankruptcy Court or other court of competent jurisdiction (including any appellate court) authorizing such payment or (ii) receipt by BofA of written notice from the Liquidating Trustee withdrawing its Cost Dispute as to such payment.

(3)     Within five (5) Business Days after the later to occur of (i) receipt by BofA of a judgment of a court of competent jurisdiction (including any appellate court) dismissing with prejudice the First American Trust Adversary Action as to all of the Secured Parties (including, without limitation, BofA) and (ii) the date on which such judgment has become a Final Order, BofA shall release to the Liquidating Trust from the Indemnity Cash Collateral an amount, if any, equal to the difference between (x) the total amount of Indemnity Cash Collateral then held and (y) the sum of $2.5 million *plus* the aggregate amount of all liquidated BofA Indemnification Claims (whether or not disputed) that have not been paid as of such time; *provided* that, in the event that any other lawsuit, claim or other action has been commenced or threatened against any of the Secured Parties (including, without limitation, BofA) that could, in BofA's determination, result in or give rise to BofA Indemnification Claims in an amount in excess of the Indemnity Cash Collateral that would remain after giving effect to the release described in this subsection, BofA shall be entitled to retain from the Indemnity Cash Collateral that would otherwise be released pursuant to this subsection an amount that it deems reasonably necessary to reserve for such potential BofA Indemnification Claims.

(4)     Subject to the occurrence of the release contemplated in subsection (e)(3) above and satisfaction of the conditions set forth in subsection (e)(5)

below, BofA shall release to the Liquidating Trust the Indemnity Cash Collateral as follows:

(i)     On the first Business Day that is one year after the Effective Date, Indemnity Cash Collateral, if any, in excess of the sum of $1.5 million plus the aggregate amount of all liquidated BofA Indemnification Claims (whether or not disputed) that have not been paid as of such time shall be released.;

(ii)    On the first Business Day that is eighteen (18) months after the Effective Date, Indemnity Cash Collateral, if any, in excess of the sum of $1 million plus the aggregate amount of all liquidated BofA Indemnification Claims (whether or not disputed) that have not been paid as of such time shall be released; and

(iii)   On the first Business Day that is two years after the Effective Date, any remaining Indemnity Cash Collateral (less any unpaid BofA Indemnification Claims) shall be released.

(5)     Notwithstanding the foregoing or anything else contained in this Plan, except as otherwise agreed between the Liquidating Trustee and BofA, BofA shall not be required to release any Indemnity Cash Collateral to the Liquidating Trustee or any other Person or entity pursuant to subsection (e)(4) above unless, at the time such release would otherwise be required, (i) all of the Secured Parties (including, without limitation, BofA) have been dismissed with prejudice as defendants in the First American Trust Adversary Action by Final Order of the Bankruptcy Court or other court of competent jurisdiction (including any appellate court), (ii) no other lawsuit, claim or other action has been commenced or threatened against any of the Secured Parties (including, without limitation, BofA) that could, in BofA's determination, result in or give rise to a BofA Indemnification Claim, and (iii) any Cost Dispute  by the Liquidating Trustee of any BofA Indemnification Claims has been resolved in accordance with subsection (e)(2) above (and BofA, for and on

-44-

behalf of the Secured Parties, has been paid any BofA Indemnification Claims that it is entitled to be paid in accordance with such resolution).

(6)    In the event that any of the events described in clauses (i) through (iii) of the preceding sentence have not occurred as of the time a release of Indemnity Cash Collateral would otherwise be required pursuant to subsection (e)(4), BofA shall not be required to make such release of Indemnity Cash Collateral to the Liquidating Trust until (y) such time as all such events (including any lawsuit, claim or cause of action described in clause (ii) of subsection (e)(5)) have been fully and finally resolved pursuant to a Final Order of the Bankruptcy Court or other court of competent jurisdiction (including any appellate court) or have otherwise been resolved to the satisfaction of BofA, and (z) any BofA Indemnification Claims arising from or relating to any such events shall have been paid pursuant to this subsection (e).

(7)    Any disputes, other than Cost Disputes, as to BofA's continuing retention of Indemnity Cash Collateral as provided in this subsection (e) shall be resolved by the Bankruptcy Court.  The retention of Indemnity Cash Collateral on account of a Cost Dispute shall be resolved as provided in subsection(e)(2) above.

(f)    **The BofA Cash Collateral; Cost Disputes.**

(1)  The Turnover Motion Cash Collateral, Further Costs Cash Collateral, Disputed Costs Cash Collateral and Indemnity Cash Collateral shall, collectively, be referred to herein as the "BofA Cash Collateral."  On the Effective Date, the BofA Cash Collateral shall be placed in a segregated account at Bank of America in the name of the Liquidating Trustee (the "BofA Cash Collateral Account"). The BofA Cash Collateral and the BofA Cash Collateral Account shall be free and clear of all existing and future Liens as to any Person other than the Secured Parties, which parties shall have a fully perfected first priority lien on the BofA Cash Collateral Account and all amounts in the BofA Cash Collateral Account. Such lien

-45-

shall secure the obligations of all of the Debtors and the Liquidating Trustee to the Secured Parties with respect to any and all Turnover Motion Costs, Further Costs, Disputed Costs, and BofA Indemnification Claims.

(2)    Before applying any BofA Cash Collateral to pay any Turnover Motion Cost, Further Cost or BofA Indemnification Claim (each, a "BofA Cost"), BofA shall provide the Liquidating Trustee with any applicable invoices, statements, receipts or other documents supporting such BofA Cost (the "Supporting Documents"). If the Liquidating Trustee objects to the payment of such BofA Cost, he or she shall provide written notice of the amount being disputed and the basis for such dispute, which notice must be received by BofA within ten (10) Business Days after the date that the Liquidating Trustee received the Supporting Documents (a "Cost Dispute").

(3)    The collateralization of the Turnover Motion Costs, Further Costs, the Disputed Costs, or the BofA Indemnification Claims shall not be deemed to be an admission by the Debtors or the Liquidating Trustee that any of the Turnover Motion Costs, Further Costs or BofA Indemnification Claims are valid and proper claims against the Debtors or the Liquidating Trustee either in the amount collateralized or in any other amount, nor shall it give rise to any right of recovery or right to the recovery of fees or expenses as to any matter by BofA on behalf of itself or the Secured Lenders greater or different from their rights under the Interim DIP Order, the Secured Credit Facility and/or the Final Cash Collateral Order (in each case as modified by the Extension Order).

(g)    **Retention of Real Property and Related Liens.**

(1)    In addition to the liens provided herein (including, without limitation, the liens on the BofA Cash Collateral and the BofA Cash Collateral Account), and notwithstanding any other provision of this Plan or any document entered into in connection therewith, including without limitation, Sections VI.F.5.g, VI.F.5.j and VI.I of the Plan and Section 1.7 of the Liquidating Trust Agreement, all

-46-

liens on real property of the Debtors (and any personal property held at such real property) held by the Secured Parties under the Secured Credit Facility, Interim DIP Order, Final Cash Collateral Order and the Extension Order (including Liens granted thereunder prior to the Effective Date) shall continue in full force and effect and with the same priority as existed prior to the Effective Date notwithstanding the vesting of the assets in the Liquidating Trust, the entry of the Confirmation Order or the occurrence of the Effective Date.

(2)     From and after the Effective Date, the Liquidating Trustee shall provide BofA with a report on or before the 15th day of each month describing the status of his or her efforts to liquidate any real property on which the Secured Parties have a lien.  In addition, the Liquidating Trustee shall promptly provide BofA with a copy of any purchase agreement he or she enters into for the sale of any real property in which the Secured Parties have a lien, and shall serve BofA with any motion by the Liquidating Trust for Bankruptcy Court approval to sell any real property on which the Secured Parties have a lien at least twenty-one days prior to any objection deadline or, if no motion seeking Bankruptcy Court approval is to be filed, then provide BofA with at least twenty-one (21) days' written notice of the closing of any sale of any such real property.  If a motion is filed, then BofA may oppose the motion or, if no motion is filed, then BofA shall have the right prior to the expiration of such twenty-one (21) day notice period to file a motion with the Bankruptcy Court objecting to such sale and/or in either case request that the proceeds of such sale be reserved by BofA as additional Indemnity Cash Collateral for BofA Indemnification Claims.  In the event such a motion is filed, the Court shall direct that all or a portion of the net proceeds from such sale be provided to BofA as additional Indemnity Cash Collateral upon a showing by BofA that the amount of Indemnity Cash Collateral then held is inadequate to provide the Secured Parties with the indubitable equivalent of their Claims based on the circumstances at the time of such motion.  If BofA does not timely oppose a motion filed by the Liquidating Trust or file a motion pursuant to

-47-

this paragraph, it shall be deemed to have consented to the release of its liens (including its liens on any sale proceeds) on any assets that are sold by the Liquidating Trustee in compliance with the requirements of this paragraph.

(h)    **Survival of Certain Orders and Agreements.**  The Secured Credit Facility, Interim DIP Order, Final Cash Collateral Order and the Extension Order shall survive entry of an Order confirming the Plan to the extent necessary to effect the treatment provided to BofA under this Plan. For the avoidance of doubt, except as otherwise expressly provided in the Plan, the following provisions are necessary to effect the treatment provided to BofA under this Plan and shall thus survive entry of an Order confirming the Plan: Sections 1.4(e), 1.4(f), 2.4, 2.6, 3.6, 3.7, 3.8, 3.9, 3.10, 4, 11, 12, 13.3, 13.4, 13.7, 13.8, 13.10, 13.11 of the Secured Credit Facility, paragraphs 3, 5, 13, 15, 19, 25, 26, 29, and 30 of the Interim DIP Order and Section 15 of the Final Cash Collateral Order. In the event of any conflict between the provisions of the Secured Credit Facility, Interim DIP Order, Final Cash Collateral Order and the Extension Order and the Plan, the provisions of this Plan shall govern. The foregoing treatment shall be in full and complete satisfaction of any and all Class 2 Claims, and recourse shall be limited as set forth above.

(i)    **Voting**.  Class 2 is Impaired and is entitled to vote on the Plan.

3.    **Class 3:  Allowed ISIS Claim**

As agreed to between the Plan Proponents and ISIS, the Holder of the Allowed ISIS Claim will receive the following treatment in full and final satisfaction thereof:

On the Effective Date, the Holder of the ISIS Claim shall receive the following payments (collectively, the "ISIS Effective Date Payment"):  (i) all of ISIS's actual and documented out-of-pocket costs and expenses incurred in connection with the Chapter 11 Cases since the Petition Date (including without limitation appraisal costs and attorneys' fees), which are expected to be approximately $150,000; (ii) $300,000 as a payment of either on account of compound interest and/or default interest; (iii) $3,550,500 on account of amounts owing under the ISIS Promissory Note ("ISIS Cure Payment"), which amount may be increased by the ISIS Monthly Payment Amount if the Effective Date occurs after July 31, 2010.

-48-

In the event that, as of the Effective Date, the disposition of Plant 47-3 shall have been consummated, then (i) if the actual amount of net proceeds paid to the Holder of the ISIS Claim exceeds $4,500,000 (the "ISIS Estimated Net Proceeds"), then the amount of the ISIS Cure Payment described above to which the Holder of the ISIS Claim is entitled to receive shall be reduced on a dollar-for-dollar basis to the extent such actual net proceeds exceed the ISIS Estimated Net Proceeds and (ii) if the actual amount of net proceeds paid to the Holder of the ISIS Claim is less than the amount of the Estimated Net Proceeds, then the amount of the ISIS Cure Payment described above to which the Holder of the ISIS Claim is entitled to receive shall be increased on a dollar-for-dollar basis to the extent the Estimated Net Proceeds exceed such actual net proceeds.

ISIS shall have a valid and perfected first priority security interest on an amount equal to the difference between $4,400,000 and the ISIS Effective Date Payment (the "ISIS Lien on Cash"), which amount shall be placed in a separate segregated bank account by the Liquidating Trustee, which shall execute a control agreement in order to perfect ISIS's security interest therein, or instead of a control agreement, the Plan Proponents may elect to pay such amount to ISIS in cash as an Effective Date Payment as a reduction against principal, in which case the ISIS Lien on Cash shall not come into effect.

After giving effect to the ISIS Effective Date Payment (assuming the Effective Date occurs on or before July 31, 2010), the principal amount outstanding and owing to ISIS will be $17,791,100 under the ISIS Promissory Note.  If the Effective Date occurs after July 31, 2010 and the ISIS Effective Date Payment includes the ISIS Monthly Payment owing under the ISIS Promissory Note on August 1, 2010, such principal amount will be reduced by the principal payment included in that August 1, 2010 ISIS Monthly Payment.

On the Effective Date, the ISIS Promissory Note will be secured by the ISIS Lien on Cash (unless such ISIS Lien on Cash does not come into effect as provided for above) and ISIS's existing security interest and liens as in effect on the Effective Date on (i) that certain real property and personal property of Plant 47-1 and 47-2 as more fully set forth in the deed of trust securing the ISIS Promissory Note; (ii) that certain real property and personal property of Plant 75-1 and Plant 71-1 as more fully set forth in (A) that Order Authorizing and Approving Debtors' Grant of

-49-

Replacement Liens to ISIS Lending, LLC as Adequate Protection [Docket No. 852] with respect to Plant 75-1 and Plant 71-1 and (B) (1) that certain Deed to Secure Debt and Security Agreement dated December 7, 2009 ("Georgia Deed to Secure Debt"), made by Fleetwood Homes of Georgia, Inc., a Georgia corporation, in favor of ISIS, recorded March 1, 2010 in the Official Records of Bacon County, Georgia, at Book 448, Pages 190-221 and (2) that certain Mortgage, dated January 4, 2001 ("Pennsylvania Mortgage") made by Fleetwood Homes of Pennsylvania, Inc., a Pennsylvania corporation, for the benefit of ISIS, recorded February 26, 2010 in the Official Records of Northumberland County, Pennsylvania, at Book 2209, Pages 467-495; and (iii) if the disposition of Plant 47-3 shall have not have been consummated as of the Effective Date, Plant 47-3 (collectively, the "ISIS Collateral").

ISIS will receive the regularly scheduled monthly payments of principal and interest required under the ISIS Promissory Note in the amount of $241,055.56 (the "ISIS Monthly Payment Amount") commencing with the payment due on the first of the month following the Effective Date. Commencing on the Effective Date, the contract rate of interest under the ISIS Promissory Note will be reduced from 9.95% to 9.45%.

Payments may be made under the ISIS Promissory Note at any time. ISIS agrees that there will be no pre-payment fees due for any pre-payments of principal made after the Effective Date. The exit fee will still be due with respect to any payments, in accordance with the terms of the ISIS Promissory Note. Payments made from the proceeds of the ISIS Collateral must be applied to principal, until all principal is fully paid, and thereafter to the balance of the indebtedness owing to ISIS. Payments made from anything other than the proceeds of the ISIS Collateral may be applied in any way chosen by the Liquidating Trust.

Except as expressly modified by the foregoing, the terms of the ISIS Note, California Deeds of Trust, the Georgia Deed to Secure Debt, the Pennsylvania Mortgage and the other documents securing the ISIS Claim shall remain in full force and effect.

Class 3 is Impaired under the Plan and entitled to vote.

4.    **Class 4: Miscellaneous Secured Claims**

On, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date a Miscellaneous Secured Claim (which includes secured tax Claims) becomes an Allowed Miscellaneous Secured Claim or (b) the date that is ninety (90) days after the date on which such Miscellaneous Secured Claim becomes an Allowed Miscellaneous Secured Claim, a Holder of an Allowed Miscellaneous Secured Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for, such Allowed Miscellaneous Secured Claim, at the election of the Liquidating Trustee, (i) Cash equal to the lesser of the unpaid portion of such Allowed Miscellaneous Secured Claim and the value of the Holder's Collateral securing the Miscellaneous Secured Claim as required pursuant to section 506(b) of the Bankruptcy Code, and which, only as to secured tax Claims, shall include applicable interest as required under 11 U.S.C. Section 511, (ii) a return of the Holder's Collateral securing the Miscellaneous Secured Claim or (iii) such other treatment as to which such Holder and the Debtors and/or the Liquidating Trustee shall have agreed upon in writing.  Any Holder of a Miscellaneous Secured Claim shall retain its Lien in the Collateral or the proceeds of the Collateral (to the extent that such Collateral is sold by the Debtors or the Liquidating Trustee free and clear of such Lien) to the same extent and with the same priority as such Lien held as of the Petition Date until such time as (a) the Holder of such Miscellaneous Secured Claim (i) has been paid Cash equal to the value of its Allowed Miscellaneous Secured Claim, and which, only as to secured tax Claims, shall include applicable interest as required under 11 U.S.C. Section 511 (ii) has received a return of the Collateral securing the Miscellaneous Secured Claim or (iii) has been afforded such other treatment as to which such Holder and the Debtors and/or the Liquidating Trustee shall have agreed upon in writing; or (b) such purported Lien has been determined by an order of the Bankruptcy Court to be invalid or otherwise avoidable.[1]    To the extent a secured tax Claim that accrues postpetition is not paid in full as

---

[1] The Maricopa County Treasurer's ("Maricopa") Claim, Pima County's Claims, Riverside Taxing Authority's Claim and the Claims of the following Texas Tax Authorities (specifically, McLennan County, Dallas County, Fort Bend County, Harris County, Liberty County, Tarrant County, the City of Waco *et al.*, Hill County and Hill CAD), are Class 4 Miscellaneous Secured Claims.  If Maricopa's Claim and Pima County's Claims are Allowed and are found to be over secured under section 506(b) of the Bankruptcy Code, interest may accrue at the state statutory rate of 16% per annum. If the Texas Tax Authorities' Claims  are Allowed and are found to be over secured under section 506(b) of the

provided under applicable non-bankruptcy law in the ordinary course of business and in a timely

manner, then the Claimholder holding a postpetition secured tax Claim may assert an Administrative

Claim as provided in this Plan, the Bankruptcy Code, and the Bankruptcy Rules.

Class 4 is conclusively presumed to have accepted the Plan and, therefore, Holders of

Class 4 Claims are not entitled to vote to accept or reject the Plan.

**5.    Class 5:  14% Notes Claims**

On the Effective Date, the Liens of the 14% Notes held as of the Petition Date shall

remain as valid Liens for purposes of the Plan only and the 14% Notes Claims shall be Allowed as a

Secured Claim in the amount of $84,256,664.  In full and final satisfaction of their Secured Allowed

Claim, the 14% Notes Claims shall receive their Pro Rata share of 43.5% of the Net Distributable

Proceeds, less:  (a) fees and expenses payable and paid to DB (both for its services and those of its

agents, including those of its counsel) (the "DB Fees"); (b) any amounts payable and paid to

Whippoorwill for fees and expenses incurred by its professionals (collectively, the "Whippoorwill

Fees"), pursuant to a Substantial Contribution Claim; and (c) any funds distributed to the Holders of

the 5% Notes.  The Creditors Committee will support Whippoorwill's Substantial Contribution

Claim, provided any recovery thereon is paid in accordance with the previous sentence.  The 43.5%

of Net Distributable Proceeds payable to the 14% Notes Claims shall be paid (x) on the Effective

Date with respect to the Initial Net Distributable Proceeds; and (y) on each subsequent Distribution

Date as reasonably practicable after the Liquidation Trust acquires such Net Distributable Proceeds

with respect to the balance.

The 14% Notes Claims shall not be subject to avoidance, disallowance,

recharacterization or subordination (whether equitable or otherwise).  All amounts due to be paid to,

and all amounts paid to and received by, the holders of the 14% Notes Claims shall not be subject to

avoidance, disallowance, disgorgement, recharacterization or subordination.

Without recourse, representation, or warranty and solely for purposes of enforcing the

percentage allocation of Net Distributable Proceeds, on the Effective Date, the 14% Notes shall be

Bankruptcy Code, interest may accrue at the state statutory rate of 12% per annum.  For the avoidance of doubt, the
Riverside Taxing Authority will not receive a return of its Collateral in satisfaction of its Class 4 Claim.

deemed to assign to the Liquidating Trustee that portion of their intercreditor rights necessary to preclude the Holders of the 5% Notes from exercising a payover demand against distribution to the Holders of 6% Notes. On the Effective Date, provided that Class 5 votes to accept the Plan, the 14% Notes shall be deemed to release any intercreditor rights or payover demands that they have against the Holders of 6% Notes. For the avoidance of doubt, any Liens granted to the 14% Notes prior to the Effective Date will be extinguished on the Effective Date in exchange for the treatment afforded to the 14% Notes Claims hereunder.

All of the DB Fees shall be paid concurrently with the final payment of Professional Fee Claims, but if at the time of such distribution, there are insufficient funds to make a payment in full, then DB shall be entitled to its Pro Rata portion of the DB Fees distributed at such time relative to the total fees and expenses paid to all Professionals, which amount shall be deducted from the 43.5% Net Distributable Proceeds allocated to the 14% Notes Claims. Similarly, all of the Whippoorwill Fees shall be paid concurrently with the final payment of Professional Fee Claims (but if at the time of such distribution, there are insufficient funds to make a payment in full, then Whippoorwill shall be entitled to its Pro Rata portion relative to the total fees and expenses paid to all Professionals of the Whippoorwill Fees distributed at such time), provided that such Whippoorwill Fees have been approved by allowance of the Substantial Contribution Claim, and such amount shall be deducted from the 43.5% Net Distributable Proceeds allocated to the 14% Notes Claims.

Notwithstanding anything to the contrary contained herein, all distributions to holders of 14% Notes Claims shall be subject to, and the allocations made herein shall be reduced on a pro rata basis by, the Charging Lien to the extent of any unpaid fees and expenses of DB, whether such fees and expenses are incurred by DB prior to or after the Effective Date, it being understood that DB shall be entitled to the recovery of all fees and expenses incurred under the 14% Indenture and in administering distributions to the holders of 14% Notes Claims before any distributions are made to the holders of the 14% Notes Claims.

Upon the Effective Date, the DB Litigation shall be deemed dismissed with respect to all parties, with prejudice, and confirmation of this Plan shall constitute a final and binding resolution of all issues raised, or that could be raised, in connection with the DB Litigation.

Class 5 is Impaired and is entitled to vote on the Plan.

**6.    Class 6:  General Unsecured Claims**

Provided that all Allowed Administrative Claims, Priority Claims and Secured Claims have been paid in full or funds sufficient to satisfy all Allowed Administrative Claims, Priority Claims and Secured Claims have been placed in a segregated reserve, as set forth in the Plan and in the Liquidating Trust Agreement, and subject to the occurrence of the Effective Date, on, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date a General Unsecured Claim becomes an Allowed General Unsecured Claim or (b) the date that is ninety (90) days after the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for such Allowed General Unsecured Claim, its Pro Rata share of the Initial Net Distributable Proceeds, if any, and, on each Periodic Distribution Date, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the Periodic Net Distributable Proceeds, not to exceed in the aggregate 56.5% of the total Net Distributable Proceeds.

Class 6 is Impaired and is entitled to vote on the Plan.

**7.    Class 7:  6% Notes Claims**

Provided that all Allowed Administrative Claims, Priority Claims and Secured Claims have been paid in full or funds sufficient to satisfy all Allowed Administrative Claims, Priority Claims and Secured Claims have been placed in a segregated reserve, as set forth in the Plan and in the Liquidating Trust Agreement, and subject to the occurrence of the Effective Date, and subject to acceptance of the Plan by Class 7, in full and final satisfaction of their Allowed Claim, Holders of 6% Notes Claims shall receive $2 million from the 56.5% Net Distributable Proceeds allocable to the General Unsecured Claims, which amount shall be paid at the time Distributions are made to General Unsecured Creditors pursuant to the Plan or at such earlier time as the Liquidating

-54-

Trustee shall determine in its sole and absolute discretion.  Concurrently with the final payment of

Professional Fee Claims for the Debtors and the Creditors' Committee after the Effective Date and

provided that Class 7 has voted to accept the Plan, the fees and expenses of the indenture trustee of

the 6% Notes and the trustee's professionals, including its counsel, shall be paid to such applicable

indenture trustee or professional, subject to a review for reasonableness by the Creditors'

Committee, out of the 56.5% of the Net Distributable Proceeds allocable to the Allowed General

Unsecured Claims, but if at the time of such distribution, there are insufficient funds to make

payment in full, then such fees shall be paid Pro Rata with other professionals proposed to be paid at

such time under this Plan (including the DB Fees and Whippoorwill Fees).

Class 7 is Impaired and is entitled to vote on the Plan.

**8.      Class 8:  5% Notes Claims**

Pursuant to the terms of the Noteholder Settlement among the Creditors' Committee

and the Holders of a majority of the 14% Notes, the parties agreed that the Holders of the 14% Notes

Claims would pay for the distribution to the Holders of the 5% Notes Claims, if any, out of the

43.5% of the Net Distributable Proceeds allocable to the Allowed 14% Notes Claims.  Pursuant to

negotiations between the Holders of a majority of the 14% Notes and the 5% Indenture Trustee,

provided that Class 8 does not vote to reject the Plan and the 5% Indenture Trustee does not object to

the Plan or Disclosure Statement, Holders of the Allowed 14% Notes Claims will allocate to Holders

of Allowed 5% Notes Claims a total of $75,000 from the 43.5% of Net Distributable Proceeds

allocated to the Allowed 14% Notes Claims.  The $75,000 distribution to Holders of Allowed 5%

Notes Claims shall include all fees and expenses of the 5% Indenture Trustee and shall be subject to

the exercise by the 5% Indenture Trustee of any contractual right of priority or charging lien under

the 5% Notes Indenture for payment of its fees and expenses.  Distribution to Holders of Class 8

Claims shall be made pro rata and contemporaneously with the first distribution to the Holders of

Class 5 Claims, other than payments for fees and expenses of DB and Whippoorwill.

On the Effective Date, in consideration for the distribution provided for herein,

holders of the 5% Notes shall be deemed to release any intercreditor rights or payover demands they

have, if any, against the Holders of the 6% Notes and the 14% Notes.

Class 8 is Impaired and is entitled to vote on the Plan.

**9.      Class 9:  Convenience Claims**

On, or as soon as reasonably practicable after, the Initial Distribution Date, each Holder of an Allowed Convenience Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for such Convenience Claim, 25% of its Allowed Claim as a final distribution.  Holders of Class 6 Claims in excess of $10,000 will be eligible to opt into this Class by reducing their claim to $10,000 by checking the "Opt-In to Convenience Class" box on their ballot. Total distributions under this Class shall be paid out of the 56.5% of the Net Distributable Proceeds allocable to the Allowed General Unsecured Claims, and are anticipated to be limited to $1.25 million, subject to the Liquidating Trustee's discretion to increase this amount at the time of the Initial Distribution Date.  In the event that this class has greater demand than funds allocated to this Class, then the Liquidating Trustee shall have the absolute discretion to select and remove certain of the opt-in members of this class.  In no instance shall the Liquidating Trustee remove a non-opt-in Allowed Convenience Claim from this Class.

Class 9 is Impaired and is entitled to vote on the Plan.

**10.      Class 10:  Product Liability PI Claims**

Unless their Product Liability PI Claim has previously become an Allowed Claim, all Holders of Claims in Class 10 shall be required to participate in the Product Liability PI Claim Mediation Process attached hereto as Exhibit "F."  As provided in the Product Liability PI Claim Mediation Process, if and when Allowed, Holders of Class 10 Claims shall receive a Pro Rata distribution of available insurance proceeds from Gibraltar policies covering Product Liability PI Claims upon the year in which the claim arose.  Once all mediations as to Product Liability PI Claims in a given policy year have been liquidated, the Liquidating Trustee may, in its discretion, begin the distribution of Gibraltar policy proceeds for that year without regard to whether the Product Liability PI Claims in any other policy year have been liquidated or allowed, or he may wait until Product Liability PI Claims in other policy years, or all policy years have been liquidated, before making distributions of Gibraltar policy proceeds.  To the extent the allowed amount of any Class 10 Claim is not paid in full with insurance proceeds, then the unpaid deficiency amount shall

receive the treatment provided for under Class 6 for Allowed General Unsecured Claims, and any

distributions thereto shall be paid out of the 56.5% of the Net Distributable Proceeds allocable to the

Allowed General Unsecured Claims.

Class 10 is Impaired and is entitled to vote on the Plan.

**11.    Class 11:  WARN Class Claims and Severance Class Claims.**

The WARN and Severance Class Settlement Agreement shall be presented to the

Bankruptcy Court for approval pursuant to Rule 9019 of the Bankruptcy Rules and as a class

settlement under Rule 23 of the Federal Rules of Civil Procedure and notice of the WARN and

Severance Class Settlement Agreement shall be given to all WARN Class Members and or

Severance Class Member as required under Rule 23 and the Order of the Bankruptcy Court.  If the

WARN and Severance Class Settlement Agreement is approved, any WARN Class Member or

Severance Class Member may affirmatively elect not to accept the treatment ("Opt Out") afforded to

the WARN Class Members and Severance Class Members in the WARN and Severance Class

Settlement Agreement by following the procedures in the notice of the WARN and Severance Class

Settlement Agreement.

If the WARN and Severance Class Settlement Agreement is approved by the

Bankruptcy Court:

A.    On the effective date of the WARN and Severance Class Settlement

Agreement or the Effective Date of this Plan, whichever is later, any WARN Class Member or

Severance Class Member who has not affirmatively elected to Opt Out shall receive, in full

satisfaction of their Claims, the treatment provided in the WARN and Severance Class Settlement

Agreement.

B.    As to any WARN Class Member or Severance Class Member who

affirmatively elects to Opt Out, if and when their WARN Claim or Severance Claim becomes an

Allowed Claim, then they shall be afforded the treatment of a Non-Tax Priority Claim in Class 1

subject to the limitations of Section 507(a)(4) and (5) of the Bankruptcy Code with any amount of

their WARN Claim or Severance Claim in excess of the limitations of Section 507(a)(4) and (5) of

the Bankruptcy Code treated as a General Unsecured Claim in Class 6 and any distribution to Class

-57-

11 pursuant thereto shall be paid out of the 56.5% Net Distributable Proceeds allocable to the Allowed General Unsecured Claims.

C.     Any WARN Class Member or Severance Class Member who Opts Out of the treatment afforded in the WARN and Severance Class Settlement Agreement shall have the same rights and obligations as he or she would have had if the WARN Action and/or the Severance Action had never been filed and this WARN and Severance Class Settlement Agreement had never been executed.

If the WARN and Severance Class Settlement Agreement is not approved by the Bankruptcy Court:

The WARN Class Claims and Severance Class Claims will continue to be litigated before the Bankruptcy Court.  If and when the Claim of any WARN Class Member or any Severance Class Member becomes an Allowed Claim, the Claim of the WARN Class Member or Severance Class member shall be afforded the treatment of a Non-Tax Priority Claim in Class 1 subject to the limitations of Section 507(a)(4) and (5) of the Bankruptcy Code with any amount in excess of the limitations of Section 507(a)(4) and (5) of the Bankruptcy Code treated as a General Unsecured Claim in Class 6 with any distribution to Class 11 pursuant thereto to be paid out of the 56.5% of Net Distributable Proceeds allocable to the Allowed General Unsecured Claims.

The Class 11 Claims of WARN Class Members and Severance Class Members are impaired and are entitled to vote on the Plan.

**12.     Reserved**

**13.     Class 13**

Each Claimant in Class 13 is or was the beneficiary of a letter of credit ("LC") issued by the Debtors' Secured Parties pursuant to the Secured Credit Facility and which comprises the Allowed Secured Credit Facility Claims.  The Debtors assert that each Claimant in Class 13 holds Collateral consisting of (i) its rights under an outstanding LC, (ii) the proceeds of a LC and/or (iii) Cash.  The Debtors also assert that they are entitled to the return of the Collateral (or, if not drawn upon, the exoneration of a LC) to the extent the amount of the Collateral exceeds the Allowed Claim of the Holder of a Class 13 Claim.  The Plan Proponents have undertaken a detailed analysis of the

Collateral held by each Holder of a Class 13 Claim and the likelihood of each such Holder's Class 13 Claim becoming under secured. Based on that analysis, the Plan Proponents believe that, if and when Allowed, each holder of an Allowed Class 13 Claim will be significantly over secured and that each such Claimholder will ultimately end up returning Collateral to the Estate. However, in the event that the Plan Proponents are mistaken and a Holder of a Class 13 Claim receives an Allowed Class 13 Claim in an amount that exceeds the Collateral, the deficiency amount shall be treated as a Class 6 General Unsecured Claim.

For the avoidance of doubt, Letter of Credit Number 3058109 held by the Maryland Workers' Compensation Commission remains outstanding and is not included in Class 13.

Unless otherwise provided with respect to any subclass of Class 13, upon a Claim in Class 13 becoming an Allowed Claim, such Claim shall be treated as follows:

(i)     To the extent the Allowed Claim is less than the amount of the Collateral held by the Class 13 Claimant, then the Class 13 Claimant shall retain the Collateral up to the amount of such Allowed Claim and any excess shall be returned to the Liquidating Trustee;

(ii)     To the extent the Allowed Claim exceeds the aggregate amount of the Collateral held by the Class 13 Claimant, then the Class 13 Claimant shall retain the Collateral and the amount by which the Allowed Claim exceeds the amount of the Collateral shall be treated as a General Unsecured Claim in Class 6; or,

(iii)     As the Holder of a Claim in Class 13 and the Debtors and/or the Liquidating Trustee shall agree upon in writing.

Each Holder of a Class 13 Claim shall continue to hold its Collateral to the same extent and with the same priority held as of the Petition Date until such time as (a) the Claim of the Holder of such Class 13 Claim becomes an Allowed Claim, (b) such purported Claim has been determined by a Final Order of the Bankruptcy Court to be invalid, disallowed or otherwise avoidable, or (c) as the Holder of a Class 13 Claim and the Debtors and/or the Liquidating Trustee shall agree upon in writing. A Class 13 Claim shall become an Allowed Claim as provided in the Plan and no Holder of a Claim in Class 13 is obligated to take any action to seek the allowance of its Claim.

Each Holder of a Claim in Classes 13B, 13C, and 13D is conclusively presumed to have accepted the Plan and, therefore, each Holder of a Claim in Classes 13B, 13C, and 13D is unimpaired and not entitled to vote to accept or reject the Plan.  Each Holder of a Claim in Classes 13A, 13E, 13F and 13G are impaired and are entitled to vote to accept or reject the Plan.

(a)    **Class 13A:  Westchester Fire Insurance Company and ACE INA Insurance Company**

Notwithstanding the foregoing and in place thereof, the Claims of the Holder of the Class 13A Claim (the "Class 13A Holder") shall be allowed and treated as follows:

1.    **Allowance of Claim:**  Subject to section 3, in full and final satisfaction of any and all Claims of the Class 13A Holder, including without limitation, those set forth in the Proofs of Claim filed by the Class 13A Holder and assigned number 7661 through 7678, inclusive, on the register maintained by the Debtors' claims agent, the Class 13A Holder shall be deemed to have the following Allowed Claims:

(a)    Bond Claim:  An Allowed Claim (the "Bond Claim") with respect to any exposure of the Class 13A Holder to the obligees under the bonds (individually, a "Bond" and, collectively, the "Bonds") listed on Exhibit 13A-1[2] attached hereto, equal to the amount of the proceeds of Letter of Credit No. 3051853, issued by Bank of America, N.A., and drawn in full on December 29, 2009 (the "LC Proceeds"), held by the Class 13A Holder on the Effective Date, which LC Proceeds total $8,870,500 as of June 30, 2010.

(b)    Expense Claim:  Subject to subsection 2(c), an Allowed Claim for any amounts other than the Bond Claim due under any Agreement of Indemnity, any Bond, or any other bond or bonding agreement between the Class 13A Holder and the Debtors (collectively, the "Indemnity Agreements"), or otherwise under applicable law, including, without limitation, any premium, and any other reasonable liabilities, claims, demands, losses, damages, expenses, costs, and attorney's fees and expenses, including without limitation, fees and disbursements of outside counsel to the extent payable under such Indemnity Agreements or such applicable law (collectively, the "Expense Claim" and, with the Bond Claim, the "Class 13A Allowed Claims").

---

[2] Exhibit 13A-1 is included in Exhibit "G" attached hereto.

2.    **Treatment of Claim**:  The Class 13A Allowed Claims shall be treated as follows:

(a)    <u>Certain Defined Terms</u>:

(i)    "Adjusted Amount" means, as to any Bond, the Amount of such Bond, as such amount may be reduced on by any decrease rider or other release of liability in form and substance reasonably satisfactory to the Class 13A Holder.  The Class 13A Holder agrees that the Bankruptcy Court shall have jurisdiction to hear and decide any dispute arising with respect to whether the Class 13A Holder has acted reasonably in regard to any such rider or release.

(ii)    "Amount" means, as to any Bond, the amount reflected on Exhibit 13A-2[3] as the "Original Bond Amount" of such Bond.

(iii)    "Bond Demand" means an outstanding demand by any person or entity under a Bond.

(iv)    "Bond Demand Amount," as to any Bond Demand, shall mean the stated amount of such Bond Demand or, if no amount is stated, the Amount of the applicable Bond; provided, that if a Bond Demand in an unstated amount shall later be revised to include a stated amount, the Bond Demand Amount shall be adjusted accordingly, but in no event to an amount in excess of the Amount of the applicable Bond.

(v)    "Bond Exposure Period" means (1) as to any WCB Bond, the period concluding when the Adjusted Amount of such WCB Bond is $-0-, (2) as to any MSB Bond, the period concluding on the later of (A) six months after the Adjusted Amount of such MSB Bond has been reduced to $-0-, and (B) the resolution of any outstanding Bond Demand under such MSB Bond, and (3) as to any other Bond, the period concluding on the later of (A) the date reflected on Exhibit 13A-2 attached hereto as the date for release of any remaining LC Proceeds held with respect to such other Bond, and (B) the final resolution of any outstanding Bond Demand under such other Bond.

---

[3] Exhibit 13A-2 is included in Exhibit "G" attached hereto.

LA1DOCS1-#278556-v2-Fleetwood_-_Fourth_Amended_Joint_Plan_of_Liquidation.DOC

(vi)    "LC Proceeds Release Date" shall mean each of June 30, 2010, September 30, 2010, October 30, 2010, June 30, 2011, October 30, 2011, and the last day of each calendar quarter thereafter until the Final Proceeds Release.

(vii)    "MLB Bonds," "MPP Bonds," "MSB Bonds," and "WCB Bonds" shall mean the respective Bonds listed beneath such terms on Exhibit 13A-1.

(viii)    "Outstanding Bonds" means Bonds as to which the Bond Exposure Period has not yet expired.

(ix)    "Remaining Bond Exposure" shall mean, as of any LC Proceeds Release Date, the sum of the following as to Outstanding Bonds:

(1)    Outstanding MSB Bonds: (A) 125% of the Amount of any such MSB Bond with an Adjusted Amount greater than $-0-; (B) the Retained Amount of any such MSB Bond with an Adjusted Amount equal to $-0- that is subject to a Bond Demand, and (C) 25% of the Amount of any such MSB Bond with an Adjusted Amount equal to $-0- that is not subject to a Bond Demand.  No MSB Bond shall fall into more than one of the foregoing categories at any one time, and the Remaining Bond Exposure as to any MSB Bond shall be determined using only the category into which such MSB Bond falls at the time of calculation, and shall not be an aggregate of all potential categories.

(2)    Outstanding WCB Bonds:  100% of the Amount of any such WCB Bond;

(3)    Outstanding MPP Bonds:  100% of the Amount of any such MPP Bond; and

(4)    Outstanding MLB Bonds:  (A) the Retained Amount of any such MLB Bond that is subject to a Bond Demand, and (B) 50% of the Amount of any such MLB Bond that is not subject to a Bond Demand.  No MLB Bond shall fall into more than one of the foregoing categories at any one time, and the Remaining Bond Exposure as to any MLB Bond shall be determined using only the category into which such MLB Bond falls at the time of calculation, and shall not be an aggregate of all potential categories.

(x)    "Retained Amount" means:

LA1DOCS1-#278556-v2-Fleetwood_-_Fourth_Amended_Joint_Plan_of_Liquidation.DOC

(1)     As to any MSB Bond, the lesser of (A) the Amount of such MSB Bond, and (B) the aggregate Bond Demand Amounts of the outstanding Bond Demands with respect to such MSB Bond, but in no event less than 25% of the Amount of such MSB Bond prior to expiration of the Tail Period for such MSB Bond; and

(2)     As to any MLB Bond, the lesser of (A) the Amount of such MLB Bond, and (B) the aggregate Bond Demand Amounts of the outstanding Bond Demands with respect to such MLB Bond, but in no event less than 50% of the Amount of such MLB Bond prior to expiration of the Tail Period for such MLB Bond.

(xi)     "Tail Period" means:

(1)     As to any MSB Bond, the period ending six months after the Adjusted Amount of such MSB Bond has been reduced to $-0-; and

(2)     As to any MLB Bond, the period ending on the date reflected for such MLB Bond on Exhibit 13A-3[4] attached hereto.

(b)     <u>Application and Release of LC Proceeds</u>:

(i)     Subject to subsections 2(b)(ii) and 2(c), the Class 13A Holder shall be entitled to hold the LC Proceeds as collateral for the Class 13A Allowed Claims, and may apply such proceeds from time to time to such claims as and when they shall become due and payable in accordance with the terms of the Indemnity Agreements as modified by the treatment of the Class 13A Allowed Claims set forth herein.  The Class 13A Holder may apply the LC Proceeds held by such holder to any portion of the Class 13A Allowed Claims notwithstanding, and without regard to, the allocation of such proceeds for purposes of calculating Remaining Bond Exposure.

(ii)     Notwithstanding the foregoing, the Class 13A Holder, on each LC Proceeds Release Date, shall release to the Debtors or to such other party as shall be entitled thereto, such LC Proceeds then held by the Class 13A Holder as are in excess of:

(1)     the Remaining Bond Exposure; <u>plus</u>

(2)     any accrued but unpaid portion of the Expense Claim, notice of which is or has been given in accordance with subsection 2(c); <u>plus</u>

---

[4] Exhibit 13A-3 is included in Exhibit "G" attached hereto.

(3)    $500,000.

(iii)    On any LC Proceeds Release Date as to which there are any outstanding Bond Demands, the Class 13A Holder shall provide to the Debtors or the Liquidating Trustee, as applicable, such documentation as has been provided by the parties making such demands to the Class 13A Holder.

(iv)    At such time as the Remaining Bond Exposure is $-0-, and the Expense Claim has been paid in full or otherwise resolved in accordance with subsection 2(c), the Class 13A Holder shall promptly release all remaining LC Proceeds, if any, to the Liquidating Trustee (the "Final Proceeds Release").

(v)    For illustrative purposes only, it is anticipated that LC Proceeds in the respective amounts reflected on the LC Proceeds Release Schedule attached hereto as Exhibit 13A-2 will be released in accordance with subsection 2(b)(ii) on the respective LC Proceeds Release Dates reflected thereon. Such schedule assumes the expiration of Bond Exposure Periods within certain timeframes, and no assertion of Bond Demands under any of the Bonds. Changes in such timeframes, or Bond Demands under any of the Bonds, could materially alter the timing and amount of the release of LC Proceeds.

(c)    Payment of Expense Claim:    Prior to application of LC Proceeds to any amount of the Expense Claim other than premiums, as to which this subsection shall not apply, the Class 13A Holder shall provide to the Liquidating Trustee, as applicable, (i) an itemized statement of such amount (the "Statement Amount") containing reasonable detail (an "Expense Claim Statement"), and (ii) such other information, material, or evidence supporting the Statement Amount as is reasonably requested by the Liquidating Trustee. Unless an Expense Claim Statement has been objected to by the Liquidating Trustee within 15 days of receipt thereof (an "Expense Objection"), the Class 13A Holder may indefeasibly apply LC Proceeds to the full Statement Amount reflected therein. If the Liquidating Trustee files an Expense Objection in response to any Expense Claim Statement, such objection must identify the specific portion of the Statement Amount reflected in such statement to which the Liquidating Trustee objects (the "Objected Amount"), and the nature of the Liquidating Trustee's objection. The Class 13A Holder may apply LC Proceeds to

-64-

the indefeasible payment of any portion of a Statement Amount that is not an Objected Amount, notwithstanding the assertion of an Expense Objection.  As to any Objected Amount, the Class 13A Holder may only apply LC Proceeds thereto upon either (i) the entry of a Final Order of the Bankruptcy Court approving payment of such Objected Amount or (ii) an agreement in writing between the Class 13A Holder and the Liquidating Trustee as to the payment of such Objected Amount.

3. **Non-Recourse Nature of Allowed Claims:** Notwithstanding anything herein or in the Indemnity Agreements to the contrary, the Class 13A Allowed Claims as set forth herein are non-recourse to the Debtors and the Estate, and are payable only out of the LC Proceeds. Without limiting the generality of the foregoing, no reserves need to be established, and no distribution from Estate assets (other than the LC Proceeds) need to be made, in respect of the Class 13A Allowed Claims.

4. **Interest on the LC Proceeds:** Using the Class 13A Holder's standard collateral account agreement with such revisions as shall be necessary to conform such agreement to the provisions hereof, the Class 13A Holder shall deposit the LC Proceeds into an interest bearing account, and shall remit to the Debtors or to such other party as shall be entitled thereto, on each LC Proceeds Release Date and on the date of the Final Proceeds Release, interest accrued on such account since the immediately preceding LC Proceeds Release Date, net of any fees or expenses that may have accrued or been charged with respect to such account during such period.

Class 13A is Impaired and entitled to vote on the Plan.

(b)    **Class 13B:  Old Republic Insurance Co.**

Old Republic Insurance Company ("Old Republic") provided excess workers' compensation policies to the Debtors in Pennsylvania, Florida and Georgia, which policies were reinsured by Gibraltar.   The reimbursement obligations of the Debtors and Gibraltar to Old Republic were secured by LC No. 3040444 in the amount of $1.08 million.  On November 27, 2009, Old Republic drew on LC No. 3040444 and it now holds $1.08 million in Cash.[5]

---

[5] Old Republic also issued general liability and automobile liability policies to the Debtors, under which there are no open claims.

LA1DOCS1-#278556-v2-Fleetwood_-_Fourth_Amended_Joint_Plan_of_Liquidation.DOC

(c)    **Class 13C:  National Union Fire Insurance Company of Pittsburgh, PA, et al.**

The Debtors' workers' compensation liability in the states of Arizona, Idaho, Tennessee, Virginia, Florida, Maryland and Kentucky from April 1, 2003 to the present was covered by National Union Fire Insurance Company of Pittsburgh, PA, American Home Assurance Company, American International Specialty Lines Insurance Company of the State of Pennsylvania, Commerce and Industry Insurance Company, AIU Insurance Company, Birmingham Fire Insurance Company of the State of Pennsylvania, Illinois National Insurance Company, American International South Insurance Company, National Union Fire Insurance Company of Louisiana, American International Pacific Insurance Company, Granit State Insurance Company, New Hampshire Insurance Company, Lexington Insurance Company, Landmark Insurance Company, Starr Excess Liability Insurance Company Ltd. ("National Union").  The Debtors' reimbursement obligations to National Union are secured by LC No. 3056166 in the amount of $4,302,210, which expired on March 31, 2010.

(d)    **Class 13D: Fidelity and Deposit Company of Maryland**

Fidelity and Deposit Company of Maryland ("Fidelity") issued a surety bond with respect to the Debtors' contract to supply manufactured housing to the U.S. Department of Defense for Fort Sill.  The Surety Bond is secured by LC No. 3092431 in the amount of $3,017,440, which was drawn down in the full amount on March 4, 2010.  Morgan Buildings and Spas, Inc. ("Morgan Spa") has made claims against the Debtors, which the Debtors deny, and which are now being litigated in Texas along with the Debtors' claims against Morgan Spa.  If Morgan Spa prevails, it will be entitled to payment under the surety bond and Fidelity will then be entitled to indemnification from the proceeds of LC No. 3092431.

(e)    **Class 13E:  North Carolina Self-Insurance Security Association**

The claims of the Holder of the Class 13E Claim (the "Class 13E Holder") shall be treated as follows:

Upon a Claim in Class 13E becoming an Allowed Claim, the Holder of a Class 13E Claim shall be permitted to either: (i) to the extent the Allowed Claim is *less than* the amount of the

Collateral held by Holder, retain the Collateral up to the amount of such Allowed Claim and any excess shall be returned to the Liquidating Trustee; (ii) to the extent the Allowed Claim *exceeds* the amount of the Collateral held by Holder, retain the Collateral and the amount by which the Allowed Claim exceeds the amount of the Collateral shall be treated as a General Unsecured Claim in Class 6; or (iii) accept such other treatment as to which such Holder and the Debtors and/or Liquidating Trustee shall have agreed upon in writing.

Class 13E is Impaired and entitled to vote on the Plan.

(f)    **Class 13F:  Georgia Self-Insurers Guaranty Trust Fund**

The claims of the Holder of the Class 13F Claim (the "Class 13F Holder") shall be treated as follows:

Upon a Claim in Class 13F becoming an Allowed Claim, the Holder of a Class 13F Claim shall be permitted to either: (i) to the extent the Allowed Claim is *less than* the amount of the Collateral held by Holder, retain the Collateral up to the amount of such Allowed Claim and any excess shall be returned to the Liquidating Trustee; (ii) to the extent the Allowed Claim *exceeds* the amount of the Collateral held by Holder, retain the Collateral and the amount by which the Allowed Claim exceeds the amount of the Collateral shall be treated as a General Unsecured Claim in Class 6; or (iii) accept such other treatment as to which such Holder and the Debtors and/or Liquidating Trustee shall have agreed upon in writing.

Class 13F is Impaired and entitled to vote on the Plan.

(g)    **Class 13G: Lumbermen's Underwriting Alliance**

Lumbermen's Underwriting Alliance ("LUA") insured the workers' compensation liability of the Debtors in the states of Arizona, Idaho, Tennessee, Virginia, Texas, Florida, Maryland and Kentucky between November 1, 1981 and February 1, 1999.  The Debtors' liability to LUA was secured by LC No. 3040443 in the amount of $100,000 which LUA drew on or about December 4, 2009.  LUA was also holding cash deposits of $86,774.

Class 13G is Impaired and entitled to vote on the Plan.

14.     **Class 14:  Intercompany Claims**

In connection with, to the extent of and as a result of, the substantive consolidation of the Debtors' Estates and the Chapter 11 Cases, on the Confirmation Date or such other date as may be set by an order of the Bankruptcy Court, but subject to the occurrence of the Effective Date, all Intercompany Claims by and between the Debtors shall be deemed eliminated, cancelled and/or extinguished and the Holders of Class 14 Claims shall not be entitled to, and shall not receive or retain any property or interest in property on account of such Claims.  Class 14 is deemed to have rejected the Plan and, therefore, Holders of Class 14 Claims are not entitled to vote to accept or reject the Plan.

15.     **Class 15:  Equity Interests**

On the Effective Date, all Equity Interests in the Debtors shall be cancelled and each Holder thereof shall not be entitled to, and shall not receive or retain any property or interest in property on account of, such Equity Interests.  Class 15 is deemed to have rejected the Plan and, therefore, Holders of Equity Interests are not entitled to vote to accept or reject the Plan.

<div align="center">

**V.**

**ACCEPTANCE OR REJECTION OF THE PLAN BY CLAIM HOLDERS**

</div>

A.     **Impaired Classes of Claims Entitled to Vote**

Holders of Claims and Equity Interests in Impaired Classes who receive or retain property on account of their Claims or Interests and who are entitled to vote under the Solicitation Procedures Order will be solicited for acceptance or rejection of the Plan.

B.     **Acceptance by an Impaired Class**

In accordance with Bankruptcy Code section 1126(c) and except as provided in Bankruptcy Code section 1126(e), an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Claims of such Class that are entitled to vote and have timely and properly voted to accept or reject the Plan.

**C.      Presumed Acceptances by Unimpaired Classes**

Classes 1, 4, 13B, 13C, and 13D are Unimpaired by the Plan.  Under Bankruptcy Code section 1126(f), such Claimholders are conclusively presumed to accept the Plan, and the votes of such Claimholders will not be solicited.

**D.      Classes Deemed to Reject Plan**

Claimholders in Class 14 and Equity Interest Holders in Class 15 are not entitled to receive or retain any property under the Plan.  Under Bankruptcy Code section 1126(g), Holders of Claims in Class 14 and Holders of Equity Interests in Class 15 are deemed to reject the Plan, and the votes of such Claimholders or Equity Interest Holders will not be solicited.

**E.      Summary of Classes Voting on the Plan**

The votes of Holders of Claims in Classes 2, 3, 5, 6, 7, 8, 9, 10, 11, 13A, 13E, 13F and 13G whose Claims are not the subject of an objection and whose Claims are not listed in the Debtors' Schedules as contingent, unliquidated, or disputed, will be temporarily allowed for voting purposes as set forth in the Solicitation Procedures Order and will be solicited with respect to the Plan.

**F.      Confirmation Pursuant to Bankruptcy Code Section 1129(b)**

To the extent necessary, the Plan Proponents will seek confirmation of the Plan from the Bankruptcy Court by employing the "cramdown" procedures set forth in section 1129(b) of the Bankruptcy Code.  Subject to the reasonable approval of Whippoorwill with respect to provisions that impact its rights under the Plan, the Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Plan or any Plan Exhibit or schedule, including to amend or modify the Plan or such Exhibits or schedules to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

<div align="center">

**VI.**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

</div>

**A.      Substantive Consolidation of Debtors' Estates**

The Plan contemplates and is predicated upon entry of an order substantively consolidating the Debtors' Estates.  On the Effective Date, (i) all Intercompany Claims by, between

<div align="center">-69-</div>

and among the Debtors shall be eliminated, (ii) all assets and liabilities of the Debtors shall be merged or treated as if they were merged with the assets and liabilities of the Debtors, (iii) any obligation of a Debtor and all guarantees thereof by one or more of the other Debtors shall be deemed to be one obligation of the Debtors, (iv) the Equity Interests shall be cancelled, and (v) each Claim filed or to be filed against any Debtor shall be deemed filed as a single Claim against and a single obligation of the Debtors.  On the Effective Date, in accordance with the terms of the Plan, and the consolidation of the assets and liabilities of the Debtors, all Claims based upon guarantees of collection, payment, or performance made by the Debtors as to the obligations of another Debtor shall be released and of no further force and effect.  The foregoing (x) shall not affect the rights of any Holder of a Miscellaneous Secured Claim with respect to the Collateral securing its Claim, or the terms and implementation of any settlement, and the rights and obligations of the parties thereto, entered into in connection with the confirmation of the Plan and (y) shall not, and shall not be deemed to, prejudice the Causes of Action and the Avoidance Actions (subject to the releases set forth in Article XI of the Plan), which shall survive entry of the Confirmation Order for the benefit of the Debtors and their Estates, as if there had been no substantive consolidation.

The Plan and Disclosure Statement, jointly, shall serve as, and shall be deemed to be, a motion for entry of an order under Bankruptcy Rule 9019 and the substantive consolidation of the Debtors' Chapter 11 Cases.  If no objection to the Plan is timely filed and served by any Holder of an Impaired Claim affected by the Plan as provided herein on or before the Voting Deadline or such other date as may be established by the Bankruptcy Court, the Confirmation Order will serve as the Order approving substantive consolidation pursuant to the terms of this Plan.  If any such objections are timely filed and served, a hearing with respect to the Plan and the objections thereto shall be scheduled by the Bankruptcy Court, which hearing may, but is not required to, coincide with the Confirmation Hearing.

**B.    Corporate Action**

**1.    Resignation of Directors and Officers**

Upon the Effective Date, the members of the board of directors or managers, as the case may be, of each of the Debtors shall be deemed to have resigned.

**2.     Dissolution of the Debtors**

On the Effective Date, each of the Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith.

As soon as practicable after the transfer of Assets to the Liquidating Trust, the Liquidating Trustee shall provide for the retention and storage of the books, records and files that shall have been delivered to the Liquidating Trust until such time as all such books, records and files are no longer required to be retained under applicable law, and file a certificate informing the Bankruptcy Court of the location at which such books, records, and files are being stored.

The Professionals employed by the Debtors shall be entitled to reasonable compensation and reimbursement of actual, necessary expenses for post-Effective Date activities, including the preparation, filing, and prosecution of Final Fee Applications, upon the submission of invoices to the Liquidating Trust, but if at the time of such distribution, there are insufficient funds to make payment in full, then such fees shall be paid Pro Rata with other Professionals to be paid at such time under this Plan and the other professional payments contemplated under this Plan and the payment of fees and costs to DB and Whippoorwill.  Any time or expenses incurred in the preparation, filing, and prosecution of Final Fee Applications shall be disclosed by each Professional in its Final Fee Application and shall be subject to approval of the Bankruptcy Court.

**3.     Surrender and Cancellation of Existing Securities and Agreements**

(a)     Except as otherwise provided in the Plan, and in any contract, instrument or other agreement or document created in connection with the Plan, on the Effective Date, the Equity Interests and any other promissory notes, share certificates, whether for preferred or common stock (including treasury stock), other instruments evidencing any Claims or Equity Interests, and all options, warrants, calls, rights, puts, awards and commitments shall be deemed cancelled and of no further force and effect, without any further act or action under any applicable agreement, law, regulation, order, or rule, and the obligations of the Debtors under the notes, share certificates, and other agreements and instruments governing such Claims and Equity Interests shall be released; provided, however, that certain instruments, documents, and credit agreements related to Claims

-71-

shall continue in effect solely for the purposes of allowing the agents to make distributions to the beneficial holders and lenders thereunder.  The holders of or parties to such canceled notes, share certificates and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates and other agreements and instruments or the cancellation thereof, except the rights provided pursuant to the Plan.

(b)  On or after the Effective Date, the Liquidating Trustee shall amend the corporate charter of any Debtor-controlled entity transferred to the Trust to reduce the number of outstanding shares to the statutory minimum and shall cause one (1) share of stock to be issued to the Liquidating Trust.

(c)  Distributions made by the Liquidating Trustee on account of the 5% Notes Claims or the 14% Notes Claims shall be made to Law Debenture or DB, respectively.  The Liquidating Trustee and the Liquidating Trust's obligations to make distributions under the Plan to Holders of Class 5 Claims on account of the 14% Notes Claims and Class 8 Claims on account of the 5% Notes Claims shall be deemed satisfied and completed upon remittance of distributions to Law Debenture or DB, respectively, and the Liquidating Trustee and the Liquidating Trust, including its professionals, shall not have any further responsibility, liability, or obligations to Holders of Claims in Class 5 or Class 8 under the Plan on account of a particular distribution to Law Debenture or DB.  Law Debenture receiving a distribution hereunder shall distribute such property in accordance with the 5% Indenture and the policies and procedures of DTC and DB receiving a distribution hereunder shall distribute such property in accordance with the 14% Indenture and the policies and procedures of the DTC.  Law Debenture and DB shall not be required to give any bond, surety, or other security for the performance of their duties with respect to the administration and implementation of distributions, but agree to be bound by the jurisdiction of the Bankruptcy Court with respect to any issues that may arise out of the administration or implementation of distributions. Notwithstanding anything to the contrary in this Plan, the following provisions shall apply to the treatment of the 5% Indenture, the 14% Indenture, the 5% Notes Certificates, and the 14% Notes Certificates:

-72-

(1)    The Holders of 5% Notes shall surrender the 5% Notes Certificates to Law Debenture prior to the first anniversary of the Effective Date.  The Holders of 14% Notes shall surrender the 14% Notes Certificates to DB prior to the first anniversary of the Effective Date.

(2)    Any Holder of the 5% Notes or the 14% Notes with respect to which its underlying 5% Notes Certificates or 14% Notes Certificates, as applicable, have been lost, stolen, mutilated, or destroyed must, in lieu of surrendering such certificates, deliver to Law Debenture or DB, as applicable: (i) evidence satisfactory of the loss, theft, mutilation, or destruction; and (ii) such security or indemnity as may be required by either the 5% Indenture or the 14% Indenture, as applicable, to hold the indenture trustee harmless from any damages, liabilities, or costs incurred in treating such person or entity as a holder of the 5% Notes Certificates or the 14% Notes Certificates, as applicable.  Upon compliance with this provision, such holder will, for all purposes under this Plan, be deemed to have surrendered its applicable 5% Notes Certificates or 14% Notes Certificates, as applicable.

(3)    Law Debenture and DB shall not make any distribution to the Holder of a 5% Notes Claim or a 14% Notes Claim unless and until such holder surrenders its 5% Notes Certificates or 14% Notes Certificates, as applicable, or the unavailability of such certificates is established to the reasonable satisfaction of Law Debenture or DB, as applicable.

(4)    Any holder of 5% Notes Certificates or 14% Notes Certificates who fails to surrender or cause the surrender of its 5% Notes Certificates or 14% Notes Certificates, as applicable, or fails to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to either Law Debenture or DB, as applicable, prior to the first anniversary of the Effective Date shall be deemed to have forfeited all rights and Claims in respect of such certificates and shall not participate in any distribution under this Plan, and all property in respect of such forfeited distribution shall be subject to redistribution by Law Debenture or DB to all other holders of Claims under the 5% indenture or the 14% Indenture, as applicable, who have duly surrendered or caused the surrender of their certificates or reasonably established the unavailability thereof.

(5)    Notwithstanding the foregoing, if the record holder of the 5% Notes or the 14% Notes is DTC or its nominee or such other securities depository or custodian thereof, or if the

5% Notes or the 14% Notes are held in book-entry or electronic form pursuant to a global security held by DTC, then the beneficial holder of such 5% Notes or 14% Notes shall be deemed to have surrendered such holder's Notes Certificates upon surrender of such global security by DTC or such other securities depository or custodian thereof to either Law Debenture or DB, as applicable.

(6)     Unless otherwise provided for herein, on the Effective Date, the 5% Indenture, the 14% Indenture, all 5% Notes Certificates, all 14% Notes Certificates, and all instruments or other documents evidencing, giving rise to, or governing any 5% Notes Claim or 14% Notes Claim shall be deemed cancelled and shall represent only the right, subject to the other terms and conditions described in this Plan, to participate in the distributions contemplated by this Plan.

(7)     Notwithstanding the foregoing and anything else contained in this Plan, the 5% Indenture and the 14% Indenture shall each be deemed to be cancelled on the Effective Date and Law Debenture and DB discharged of their obligations under the 5% Indenture and 14% Indenture, respectively; provided, however, the 5% Indenture and the 14% Indenture shall each continue in effect solely for the purposes of (i) allowing distributions to be made under this Plan pursuant to the Indentures and the Indenture Trustees to perform such other necessary functions with respect thereto and to have the benefit of all the protections and other provisions of the 5% Indenture or the 14% Indenture in doing so; (ii) permitting Law Debenture and DB to maintain or assert any Charging Lien they may have with respect to distributions pursuant to the terms of this Plan; (iii) permitting Law Debenture and DB to assert any right to indemnification, contribution, or other Claim they may have under the 5% Indenture or the 14% Indenture; and (iv) permitting Law Debenture and DB to exercise their respective rights and obligations relating to the interests of the holders of 5% Notes Claims and 14% Notes Claims and their relationship with the holders of the 5% Notes Claims or the 14% Notes Claims pursuant to the 5% Indenture or the 14% Indenture, including all rights they may have to appear and be heard in these bankruptcy cases and any appeals.

(8)     Any and all distributions on account of the 5% Notes Claims and the 14% Notes Claims shall be subject to the right of Law Debenture and DB, respectively, to exercise their Charging Liens for any unpaid fees and expenses. The Liquidating Trustee and all other persons and entities involved in the making of any distributions or disbursements under this Plan (1) are deemed

to have recognized the validity of Law Debenture's Charging Lien and DB's Charging Lien and (2) are prohibited from undertaking any act or omission in contravention either Law Debenture's Charging Lien or DB's Charging Lien.

(9)     Any and all distributions on account of the 14% Notes Claims shall be made through DB or upon DB's written confirmation that all of the DB Fees and expenses have been paid. Any and all distributions on account of the 5% Notes Claims shall be made through Law Debenture or upon Law Debenture's written confirmation that all of Law Debenture's fees and expenses have been paid.

(10)     The exercise by Law Debenture or DB of a Charging Lien against a distribution to recover payment of any unpaid fees and expenses shall not subject either Law Debenture or DB to the jurisdiction of the Bankruptcy Court with respect to either the exercise of the Charging Lien or the fees and costs recovered thereby.

(11)     Notwithstanding any of the foregoing, nothing herein shall be deemed to impair, waive, or extinguish any rights of Law Debenture under the 5% Indenture or DB under the 14% Indenture with respect to their respective Charging Liens.

(12)     DB shall be compensated for all of its services and reimbursed for all of its disbursements related to its role as the Indenture Trustee under the 14% Indenture and for making distributions pursuant to the Plan (and for all related fees and expenses of any counsel or professional engaged by DB with respect to the foregoing).  Such compensation and reimbursement to DB shall be made without the need for filing any application or request with, or approval by, the Bankruptcy Court.

(13)     Subject to the full payment of all fees and expenses of DB and the establishment of a reserve by DB with respect to any anticipated future fees and expenses of DB (including fees and expenses of counsel and other professionals), all Charging Liens of DB in any distributions shall be released and discharged.

(14)     As of the close of business on the Distribution Record Date, the transfer register for the 14% Notes will be closed.  DB will be entitled for all purposes in the Plan and the 14% Indenture to recognize and make distributions only to those holders who are holders of 14%

Notes as of the close of business on the Distribution Record Date. Distributions on account of the 14% Notes Claims by DB to the record holders of the 14% Notes will not be made as of the Distribution Record Date but rather will be accomplished in accordance with the 14% Indenture and the policies and procedures of DTC.

(15)    As of the close of business on the Distribution Record Date, the transfer register for the 5% Notes will be closed. The Law Debenture will be entitled for all purposes in the Plan and the 5% Indenture to recognize and make distributions only to those holders who are holders of 5% Notes as of the close of business on the Distribution Record Date. Distributions on account of the 5% Notes Claims by the Law Debenture to the record holders of the 5% Notes will not be made as of the Distribution Record Date but rather will be accomplished in accordance with the 5% Indenture and the policies and procedures of DTC.

At the sole option of BNYM, any and all of the above provisions of this section shall be made applicable to the 6% Indenture, the 6% Notes, and the Holders of 6% Notes.

**4.    No Further Action**

Each of the matters provided for under the Plan involving the corporate or limited liability company structure of the Debtors or corporate or limited liability company action to be taken by or required of the Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by any Person, including but not limited to, the Liquidating Trust, the Liquidating Trustee, Holders of Claims or Equity Interests against or in the Debtors, or directors or officers of the Debtors.

**C.    Sources for Plan Distribution**

All Cash necessary for the Liquidating Trustee to make payments of Cash pursuant to the Plan shall be obtained from the following sources:  (a) the Debtors' Cash on hand, which shall be deemed vested in the Liquidating Trust on the Effective Date, (b) Cash received in liquidation of the Assets of the Debtors, and (c) proceeds of the Causes of Action.

**D.    Payment of Claims**

The Liquidating Trust shall not pay any amounts on account of Allowed Unsecured Claims, or Convenience Claims unless and until all Allowed Administrative Claims, Priority Claims and Secured Claims have been paid in full or funds sufficient to satisfy all Allowed Administrative Claims, Priority Claims and Secured Claims have been placed in a segregated reserve.

**E.    KEIP Payments**

The Liquidating Trustee or the Debtors shall be permitted to pay to the KEIP Employees the KEIP Payments up to the maximum incentive payment set forth in the KEIP Order and Modified and Amended KEIP Plan Order.

**F.    Liquidating Trust**

**1.    Establishment of the Liquidating Trust**

The Liquidating Trust shall be established and shall become effective on the Effective Date.  All Distributions to the Holders of Allowed Claims shall be from the Liquidating Trust.  The Liquidating Trust shall hold and administer the Assets of the Debtors, including but not limited to the Causes of Action for liquidation and distribution in accordance with the Plan unless otherwise settled or released by Order of the Bankruptcy Court prior to the Effective Date, and the Net Proceeds thereof (collectively, the "Liquidating Trust Assets").

**2.    Trust Distributions**

The Liquidating Trustee shall liquidate all Assets of the Debtors and the Estates (including, without limitation, all Causes of Action) and distribute the Net Proceeds of such liquidation from the Liquidating Trust in accordance with this Plan and the Liquidating Trust Agreement.

**3.    Duration of Trust**

The Liquidating Trust shall have an initial term of five (5) years; provided, however, that, if warranted by the facts and circumstances, and subject to the approval of the Bankruptcy Court with jurisdiction over the case, upon a finding that an extension of the term of the Liquidating Trust is necessary to accomplish the liquidating purpose of the Trust, the Liquidating Trust's terms may be extended for a finite term based on facts and circumstances.  Each extension of the term of

-77-

the Liquidating Trust must be approved by the Court.  The Liquidating Trust may be terminated

earlier than its scheduled termination if (a) the Bankruptcy Court has entered a Final Order closing

the Chapter 11 Cases pursuant to Bankruptcy Code section 350(a) and (b) the Liquidating Trustee

has administered all assets of the Liquidating Trust and performed all other duties required by the

Plan and the Liquidating Trust Agreement.  As soon as practicable after the Final Trust Distribution

Date, the Liquidating Trustee shall seek entry of a Final Order closing the Chapter 11 Cases pursuant

to Bankruptcy Code section 350.

> **4.**      **Liquidation of Causes of Action**

> Notwithstanding any other term or provision of the Plan, the Debtors shall have, prior

to the Effective Date, and the Liquidating Trustee shall have, on and after the Effective Date, sole

authority and responsibility for investigating, analyzing, commencing, prosecuting, litigating,

compromising, collecting, and otherwise administering the Causes of Action pursuant to the terms of

the Plan and Liquidating Trust Agreement.  Further, the Liquidation Trust Oversight Committee

shall set thresholds for approval with respect to the initiation of prosecution of any Avoidance

Actions in its sole discretion.

> **5.**      **Liquidating Trustee**

> (a)      Appointment

> The appointment of the Liquidating Trustee shall be effective as of the Effective

Date, although the Liquidating Trustee shall be entitled to payment of reasonable fees and expenses

incurred prior to the Effective Date as approved by the Bankruptcy Court in the Confirmation Order.

Successor Liquidating Trustee(s) shall be appointed as set forth in the Liquidating Trust Agreement.

> (b)      Term

> Unless the Liquidating Trustee resigns or dies earlier, the Liquidating Trustee's term

shall expire upon termination of the Liquidating Trust pursuant to the Plan and/or the Liquidating

Trust Agreement.

> (c)      Powers and Duties

> The Liquidating Trustee shall have the rights and powers set forth in the Liquidating

Trust Agreement including, but not limited to, the powers of a debtor-in-possession under

Bankruptcy Code sections 1107 and 1108. The Liquidating Trustee shall be governed in all things by the terms of the Liquidating Trust Agreement and the Plan. The Liquidating Trustee shall administer the Liquidating Trust, and its assets, and make Distributions from the proceeds of the Liquidating Trust in accordance with the Plan. In addition, the Liquidating Trustee shall, in accordance with the terms of the Plan, take all actions necessary to wind down the affairs of the Debtors consistent with the Plan and applicable non-bankruptcy law. Without limitation, the Liquidating Trustee shall file final federal, state, foreign and, to the extent applicable, local, tax returns. Subject to the terms of the Liquidating Trust Agreement, which includes, among other things, limitations on the Liquidating Trustee's discretion to take certain action without approval of the Liquidating Trust Oversight Committee or, in some circumstances, the Bankruptcy Court, the Liquidating Trustee shall be authorized, empowered and directed to take all actions necessary to comply with the Plan and exercise and fulfill the duties and obligations arising thereunder, including, without limitation, to:

(1)    object to the allowance of Claims pursuant to the terms of the Plan;

(2)    open, maintain and administer bank accounts as necessary to discharge the duties of the Liquidating Trustee under the Plan and the Liquidating Trust Agreement;

(3)    pay reasonable and necessary professional fees, costs, and expenses as set forth in the Plan;

(4)    investigate, analyze, commence, prosecute, litigate, compromise, and otherwise administer the Causes of Action and all related Liens for the benefit of the Liquidating Trust and its beneficiaries, as set forth in the Plan, and take all other necessary and appropriate steps to collect, recover, settle, liquidate, or otherwise reduce to Cash the Causes of Action, including all receivables, and to negotiate and effect settlements and lien releases with respect to all related Claims and all related Liens;

(5)     administer, sell, liquidate, or otherwise dispose of all Collateral and all other Assets of the Estates in accordance with the terms of the Plan and the Liquidating Trust Agreement;

(6)     represent the Estates before the Bankruptcy Court and other courts of competent jurisdiction with respect to matters concerning the Liquidating Trust;

(7)     seek the examination of any entity under and subject to the provisions of Bankruptcy Rule 2004;

(8)     report to the Liquidating Trust Oversight Committee and provide it with reasonable access to information regarding the Liquidating Trust;

(9)     comply with applicable orders of the Bankruptcy Court and any other court of competent jurisdiction over the matters set forth herein;

(10)    comply with all applicable laws and regulations concerning the matters set forth herein;

(11)    exercise such other powers as may be vested in the Liquidating Trust pursuant to the Liquidating Trust Agreement, the Plan, or other Final Orders of the Bankruptcy Court;

(12)    execute any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of the Liquidating Trust; and

(13)    stand in the shoes of the Debtors for all purposes.

(d)     Fees and Expenses

Except as otherwise provided in the Plan, compensation of the Liquidating Trustee and the costs and expenses of the Liquidating Trustee and the Liquidating Trust (including, without limitation, professional fees and expenses) shall be paid from the Liquidating Trust.  The Liquidating

-80-

Trustee shall pay, without further order, notice, or application to the Bankruptcy Court, the reasonable fees and expenses of the Liquidating Trust Professionals, as necessary to discharge the Liquidating Trustee's duties under the Plan and the Liquidating Trust Agreement.  Payments to the Liquidating Trustee, or to the Liquidating Trust Professionals, shall not require notice to any party, or an order of the Bankruptcy Court approving such payments; provided, however, that the Liquidating Trustee shall be entitled to payment of reasonable fees and expenses incurred prior to the Effective Date in an amount to be agreed to by the Plan Proponents and approved by the Bankruptcy Court in the Confirmation Order.  After the Effective Date, the Liquidating Trustee shall be entitled to payment at a rate of $25,000 for the first six months, $20,000 for the next twelve months, and $10,000 per month thereafter.

        (e)        Retention of Professionals and Compensation Procedure

        On and after the Effective Date, subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee may engage such professionals and experts as may be deemed necessary and appropriate by the Liquidating Trustee to assist the Liquidating Trustee in carrying out the provisions of the Plan and the Liquidating Trust Agreement, including, but not limited to, professionals retained prior to the Effective Date by either the Debtors or the Creditors' Committee. Prior to hiring a professional financial advisory firm who shall be selected by the Liquidating Trustee in its sole discretion, the Liquidating Trustee shall consult Whippoorwill who shall have an opportunity to express its views on the professional financial advisory firm.  Subject to the terms of the Liquidating Trust Agreement, for services performed from and after the Effective Date, Liquidating Trust Professionals shall receive compensation and reimbursement of expenses in a manner to be determined reasonably by the Liquidating Trustee.

        (f)        Liquidating Trustee as Successor

        Pursuant to Bankruptcy Code section 1123(b), the Liquidating Trustee shall be the successor to the Debtors for all purposes.

        (g)        Compromising Claims

        Pursuant to the Plan and the Liquidating Trust Agreement, as of the Effective Date, the Liquidating Trustee is authorized to approve compromises of the Causes of Action and all

Claims, Disputed Claims, and Liens and to execute necessary documents, including Lien releases and stipulations of settlement or release, without notice to any party and without further order of the Bankruptcy Court, except as otherwise provided in the Liquidating Trust Agreement and pursuant to the threshold amounts for approval as may be set by the Liquidation Trust Oversight Committee.

(h)    Investment Powers

The powers of the Liquidating Trustee to invest any Cash that is held by the Liquidating Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Liquidating Trust's liquidating purposes, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills.  The Liquidating Trustee is prohibited from continuing or engaging in the conduct of a trade or business, except to the extent reasonably necessary to and consistent with the liquidating purpose of the Liquidating Trust.

(i)    Distributions

The Liquidating Trustee is required to distribute at least annually to beneficiary Claimholders qualifying for Distributions from the Liquidating Trust under the Plan the Liquidating Trust's net income and all net proceeds from the sale of assets by the Liquidating Trust, except that the Liquidating Trust may retain an amount of Net Proceeds or net income reasonably necessary to maintain the value of its assets or to meet Claims and contingent liabilities (including Disputed Claims).  The Liquidating Trustee shall make continuing efforts to dispose of the Liquidating Trust's Assets, make timely Distributions, and not unduly prolong the duration of the Liquidating Trust.

(j)    Vesting of Assets

On the Effective Date, all of the Liquidating Trust Assets shall automatically vest in the Liquidating Trust free and clear of all Liens, Claims, encumbrances, and other interests and shall thereafter be administered, liquidated by sale, collection, recovery, or other disposition and distributed by the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement and the Plan without further action of the Debtors.

**6.    Federal Income Taxation of Liquidating Trust**

(a)    Treatment of Liquidating Trust and Asset Transfers

For federal income tax purposes, the Debtors, the Liquidating Trust, the Liquidating Trustee and the beneficiary Claimholders shall treat the Liquidating Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124.  For federal income tax purposes, the transfer of assets to the Liquidating Trust under the Plan is treated as a deemed transfer to the beneficiary Claimholders in satisfaction of their Claims followed by a deemed transfer of the assets by the beneficiary Claimholders to the Liquidating Trust.  For federal income tax purposes, the beneficiary Claimholders will be deemed to be the grantors and owners of the Liquidating Trust and their assets. For federal income tax purposes, the Liquidating Trust will be taxed as a grantor trust within the meaning of IRC Sections 671-677 (a non-taxable pass-through tax entity) owned by the beneficiary Claimholders.  The Liquidating Trust will file federal income tax returns as a grantor trust under IRC Section 671 and Treasury Income Tax Regulation Section 1.671-4 and report, but not pay tax on the Liquidating Trust's tax items of income, gain, loss deductions and credits ("Tax Items").  The beneficiary Claimholders will report on their federal income tax returns and pay any federal income tax liability attributable to such Liquidating Trust's Tax Items.  The Debtors, Liquidating Trust and the beneficiary Claimholders will use consistent valuations of the assets transferred to the Liquidating Trust for all federal income tax purposes, such valuations to be determined jointly by the Debtors and the Liquidating Trustee.

## G.    No Revesting of Assets

The property of the Debtors' Estates shall not be vested in the Debtors on or following the Effective Date, but shall be vested in the Liquidating Trust and continue to be subject to the jurisdiction of the Bankruptcy Court following confirmation of the Plan until such property is distributed to Holders of Allowed Claims in accordance with the provisions of the Plan, the Liquidating Trust Agreement, and the Confirmation Order.

## H.    Accounts

The Liquidating Trustee shall (a) establish one or more general accounts into which shall be deposited all funds not required to be deposited into any other account or reserve and (b)

create, fund, and withdraw funds from, as appropriate, any reserves or other accounts maintained or established by the Liquidating Trustee.

**I.    Release of Liens**

Except as otherwise provided in the Plan, the Confirmation Order, or in any document, instrument, or other agreement created in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, liens, or other security interests against the property of the Estates shall be released.

**J.    Exemption from Certain Transfer Taxes**

Pursuant to Bankruptcy Code section 1146(a), any transfers from any of the Debtors to the Liquidating Trust or to any other Person pursuant to the Plan in the United States shall not be subject to any stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**K.    Preservation of Causes of Action; Settlement of Causes of Action**

**1.    Preservation of Causes of Action**

In accordance with section 1123(b)(3) of the Bankruptcy Code or any corresponding provision of similar federal or state laws, on and after the Effective Date, (a) the Liquidating Trustee shall be deemed to be a representative of the Debtors as the party in interest in the Chapter 11 Cases and any adversary proceeding in the Chapter 11 Cases, under the Plan or in any judicial proceeding or appeal as to which any of the Debtors is a party and (b) the Liquidating Trustee shall retain all of the Causes of Action of the Debtors and their Estates, a nonexclusive list of which is set forth on Exhibit D, annexed hereto, and other similar claims arising under applicable state laws, including, without limitation, Avoidance Actions, if any, and all other causes of action of a trustee and debtor in possession under the Bankruptcy Code.  The Liquidating Trustee and/or the Liquidating Trust may, in accordance with the Liquidating Trust Agreement and the terms of this Plan, enforce, sue on, settle or compromise (or decline to do any of the foregoing) any or all of the Causes of Action.

The Plan Proponents have not concluded their investigation into all of the Causes of Action. Accordingly, in considering the Plan, each party in interest should understand that any and all Causes of Action that may exist against such Person or entity may be pursued by the Liquidating Trust and/or the Liquidating Trustee, regardless of whether, or the manner in which, such Causes of Action are listed on Exhibit D to this Plan. The failure of the Plan Proponents to list a claim, right, cause of action, suit or proceeding on Exhibit D shall not constitute a waiver or release by the Debtors or their Estates of such claim, right of action, suit or proceeding. The substantive consolidation of the Debtors and their Estates shall not, and shall not be deemed to, prejudice the Liquidating Trust with respect to any of the Causes of Action, which shall survive entry of the Confirmation Order for the benefit of the Debtors and their Estates, and, upon the Effective Date, for the benefit of the Liquidating Trust.

**2.    Settlement of Causes of Action**

Subject to the terms of the Liquidating Trust Agreement, at any time after the Confirmation Date but before the Effective Date, notwithstanding anything in this Plan to the contrary, the Debtors may settle some or all of the Causes of Action with the approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019. After the Effective Date, the Liquidating Trustee, in accordance with the terms of this Plan and the Liquidating Trust Agreement, will determine whether to bring, settle, release, compromise, enforce or abandon such rights (or decline to do any of the foregoing).

**L.    Effectuating Documents; Further Transactions**

Subject to the terms and conditions of the Plan, prior to the Effective Date, any appropriate officer of the applicable Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Subject to the terms and conditions of the Plan and the Liquidating Trust Agreement, after the Effective Date, the Liquidating Trust shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents,

and take such actions as may be necessary or appropriate to effectuate and further evidence the terms

and conditions of the Plan.

## VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

**A.** **Special Provision Regarding Unimpaired Claims**

Except as otherwise provided in the Plan, the Confirmation Order, any other order of

the Bankruptcy Court, or any document or agreement enforceable pursuant to the terms of the Plan,

nothing shall affect the rights and defenses, both legal and equitable, of the Debtors and the

Liquidating Trustee with respect to any Unimpaired Claims, including, but not limited to, all rights

with respect to legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

**B.** **Allowed Claims**

Except as set forth in Article VII.A above and in this Article VII.B, the Liquidating

Trustee shall only make Distributions to Holders of Allowed Claims.  No Holder of a Disputed

Claim will receive any Distribution on account thereof until (and then only to the extent that) its

Disputed Claim becomes an Allowed Claim.  The Liquidating Trustee may, in its discretion,

withhold Distributions otherwise due hereunder to any Claimholder until the Claims Objection

Deadline, to enable a timely objection thereto to be filed.  Any Holder of a Claim that becomes an

Allowed Claim after the Effective Date will receive its Distribution in accordance with the terms and

provisions of this Plan.

**C.** **Distributions for Claims Allowed as of the Effective Date**

Except as otherwise provided herein or as ordered by the Bankruptcy Court, all

Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall

be made on the Distribution Date by the Liquidating Trustee.  Distributions on account of Claims

that first become Allowed Claims after the Effective Date shall be made pursuant to the terms and

conditions of this Plan.  Notwithstanding any other provision of the Plan to the contrary, no

Distribution shall be made on account of any Allowed Claim or portion thereof that (i) has been

satisfied after the Petition Date pursuant to an order of the Bankruptcy Court; (ii) is listed in the

Schedules as contingent, unliquidated, disputed or in a zero amount, and for which a Proof of Claim

-86-

has not been timely filed; or (iii) is evidenced by a Proof of Claim that has been amended by a subsequently filed Proof of Claim that purports to amend the prior Proof of Claim.

**D.     Liquidating Trustee as Disbursing Agent**

The Liquidating Trustee shall make all Distributions required under this Plan, subject to the terms and provisions of this Plan and the Liquidating Trust Agreement.  The Liquidating Trustee shall be authorized and directed to rely upon the Debtors' books and records and its representatives and professionals in determining Allowed Claims not entitled to Distribution under the Plan in accordance with the terms of the Plan.

**E.     Delivery of Distributions and Undeliverable or Unclaimed Distributions**

**1.     Delivery of Distributions in General**

Distributions to Holders of Allowed Claims shall be made by the Liquidating Trustee (a) at the addresses set forth on the Proofs of Claim filed by such Holders, (b) at the addresses set forth in any written notices of address changes delivered to the Liquidating Trustee after the date of any related Proof of Claim, (c) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Liquidating Trustee has not received a written notice of a change of address, (d) at the addresses set forth in the other records of the Debtors or the Liquidating Trustee at the time of the Distribution or (e) in the case of the Holder of a Claim that is governed by an agreement and is administered by an agent or servicer, at the addresses contained in the official records of such agent or servicer.

Distributions shall be made from the Liquidating Trust in accordance with the terms of this Plan and the Liquidating Trust Agreement.

In making Distributions under the Plan, the Liquidating Trustee may rely upon the accuracy of the claims register maintained by the Claims Agent in the Chapter 11 Cases, as modified by any Final Order of the Bankruptcy Court disallowing Claims in whole or in part.

The Liquidating Trustee may require any Claimant to furnish to the Liquidating Trustee (a) its employer or taxpayer identification number as assigned by the IRS, and (b) such other records or documents necessary to satisfy the Liquidating Trustee's tax reporting obligations (including, but not limited to, certificates of non-foreign status).  The Liquidating Trustee may

condition the payment of any Distribution to any Claimant upon receipt of such identification number and requested documents.  If the Liquidating Trustee, after contacting the Claimant on two separate occasions, does not receive the requested employer or taxpayer identification number requested after providing 30 days notice, the Claimant shall be deemed to have forfeited its interest in the Distribution and such amount shall become the property of the Liquidating Trust free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary and shall be distributed in accordance with the terms of this Plan as Net Distributable Proceeds and this Liquidating Trust Agreement.

## 2.      Undeliverable and Unclaimed Distributions

If the Distribution to any Holder of an Allowed Claim is returned to the Liquidating Trustee as undeliverable or is otherwise unclaimed, no further Distributions shall be made to such Holder unless and until the Liquidating Trustee is notified in writing of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest. Amounts in respect of undeliverable Distributions made by the Liquidating Trustee shall be returned to the Liquidating Trustee until such Distributions are claimed.  The Liquidating Trustee shall, with respect to Cash, maintain in the Liquidating Trust Cash on account of undeliverable and unclaimed Distributions until such time as a Distribution becomes deliverable, is claimed or is forfeited.

Any Holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an undeliverable or unclaimed Distribution within six (6) months after the last Periodic Distribution Date shall be deemed to have forfeited its Claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such Claim for an undeliverable or unclaimed Distribution against the Debtors and their Estates, the Liquidating Trustee, the Liquidating Trust, and their respective agents, attorneys, representatives, employees or independent contractors, and/or any of its and their property.  In such cases, any Cash otherwise reserved for undeliverable or unclaimed Distributions shall become the property of the Liquidating Trust free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary and shall be distributed in accordance with the terms of this Plan as Net Distributable Proceeds and the Liquidating Trust Agreement.  Nothing contained in this Plan or the Liquidating

-88-

Trust Agreement shall require the Debtors, or the Liquidating Trustee to attempt to locate any

Holder of an Allowed Claim; provided, however, that in his sole discretion, the Liquidating Trustee

may periodically publish notice of unclaimed Distributions.

**F.    Prepayment**

Except as otherwise provided in this Plan or the Confirmation Order, the Debtors or

the Liquidating Trustee, as the case may be, shall have the right to prepay in their discretion, without

penalty, all or any portion of an Allowed Administrative Claim, Allowed Priority Tax Claim,

Allowed Miscellaneous Secured Claim, or Allowed Non-Tax Priority Claim, at any time.

**G.    Means of Cash Payment**

Cash payments made pursuant to this Plan shall be in U.S. dollars and shall be made,

on and after the Effective Date, at the option and in the sole discretion of the Liquidating Trustee by

(i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Liquidating Trustee.

In the case of foreign creditors, Cash payments may be made, at the option of the Liquidating

Trustee, in such funds and by such means as are necessary or customary in a particular jurisdiction.

**H.    Interest on Claims**

Unless otherwise specifically provided for in this Plan or the Confirmation Order, or

required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any

Claims, and no Claimholder shall be entitled to interest accruing on or after the Petition Date on any

Claim.  Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from

the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim

becomes an Allowed Claim.

**I.    Withholding and Reporting Requirements**

In connection with this Plan and all Distributions under this Plan, the Liquidating

Trustee shall, to the extent applicable, comply with all tax withholding, payment, and reporting

requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all

Distributions under this Plan shall be subject to any such withholding, payment, and reporting

requirements.  The Liquidating Trustee shall be authorized to take any and all actions that may be

necessary or appropriate to comply with such withholding, payment, and reporting requirements.

-89-

All amounts properly withheld from Distributions to a Holder as required by applicable law and paid over to the applicable taxing authority for the account of such Holder shall be treated as part of the Distributions to such Holder.  All persons holding Claims shall be required to provide any information necessary to effect information reporting and withholding of such taxes.  For example, with respect to any employee-related withholding, if the Debtors are obligated by law to withhold amounts from Distributions to a present or former employee to satisfy such present or former employee's tax and other payroll obligations, the Liquidating Trustee may withhold a portion of the Distributions allocated to the Holder of an Allowed Claim that is a present or former employee, whether or not such Distributions are in the form of Cash, in such amount as is determined necessary to satisfy such Holder's tax and other payroll obligations with respect to the Distributions.

Notwithstanding any other provision of this Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Liquidating Trustee in connection with such Distribution.  Any property to be distributed pursuant to this Plan shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution pursuant to Article VII.E.2 of this Plan.

**J.    Setoffs**

**1.    By a Debtor**

Except as otherwise provided in the Plan, the Debtors, prior to the Effective Date, and the Liquidating Trustee, on and after the Effective Date, may, pursuant to Bankruptcy Code section 553 or applicable nonbankruptcy laws, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, Claims of any nature whatsoever that the Debtors may have against the Holder of such Claim without seeking relief from the Bankruptcy Court; provided, however, that neither the failure to do so nor the

allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Liquidating Trust or the Liquidating Trustee of any such Claim that the Debtors may have against such Holder.  With respect to claims arising prepetition between the Debtors and various manufactured housing and recreational vehicle dealers with whom the Debtors did business prepetition, the setoff procedures as set forth in the Bankruptcy Court's Order Approving Setoff Procedures [Docket No. 2215] shall be followed.

**2.    By Non-Debtors**

Unless otherwise stipulated in writing by the Debtors (before the Effective Date) or by the Liquidating Trustee (after the Effective Date), any party against whom a claim or counterclaim is asserted by the Estates (an "Estate Claim") must assert any setoff rights, right of subrogation, or recoupment of any kind against such Estate Claim at the time it answers such Estate Claim, or such right of setoff, subrogation or recoupment will be deemed waived and forever barred; provided, however that nothing herein shall limit the assertion of such right of setoff, subrogation or recoupment via an amended or supplemental pleading to the extent required by Rule 15 of the Federal Rules of Civil Procedure and/or Rule 7015 of the Federal Rules of Bankruptcy Procedure.

**K.    Procedure for Treating and Resolving Disputed, Contingent and/or Unliquidated Claims**

**1.    Objection Deadline; Prosecution of Objections**

Except as set forth in the Plan with respect to Administrative Claims, all objections to Claims must be filed and served on the Holders of such Claims by the Claims Objection Deadline, as the same may be extended by the Bankruptcy Court.  If an objection has not been filed to a Proof of Claim or the Schedules have not been amended with respect to a Claim that (i) was Scheduled by the Debtors but (ii) was not Scheduled as contingent, unliquidated, and/or disputed, by the Claims Objection Deadline, as the same may be extended by order of the Bankruptcy Court, the Claim to which the Proof of Claim or Scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier.  Notice of any motion for an order extending the Claims Objection Deadline shall be required to be given only to those persons or entities that have requested notice in the Chapter 11 Cases, or to such persons as the Bankruptcy Court shall order.

LA1DOCS1-#278556-v2-Fleetwood_-_Fourth_Amended_Joint_Plan_of_Liquidation.DOC

From the Confirmation Date through the Claims Objection Deadline, any party in interest, including the Liquidating Trustee, may file objections, settle, compromise, withdraw, or litigate to judgment objections to Claims. Subject to the terms of the Liquidating Trust Agreement, from and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. Nothing contained herein, however, shall limit the right of the Liquidating Trustee to object to Claims, if any, filed or amended after the Effective Date.

### 2.   No Distributions on Disputed Claims

Notwithstanding any other provision of the Plan or the Liquidating Trust Agreement, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim are resolved.

### 3.   Distributions on Allowed Claims

Payments and Distributions from the Liquidating Trust to each respective Claimholder on account of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, shall be made in accordance with provisions of the Plan that govern Distributions to such Claimholders. On the earlier of (a) the Distribution Date following the date when a Disputed Claim becomes an Allowed Claim or (b) ninety (90) days after such Disputed Claim becomes an Allowed Claim, the Liquidating Trustee will distribute to the Claimholder any Cash that would have been distributed on the dates Distributions were previously made to Claimholders had such Allowed Claim been an Allowed Claim on such dates.

All Distributions made under this Article of the Plan on account of an Allowed Claim will be made together with any dividends, payments, or other Distributions made on account of, as well as any obligations arising from, the distributed property as if such Allowed Claim had been an Allowed Claim on the dates Distributions were previously made to Holders of Allowed Claims included in the applicable Class.

### 4.   De Minimis Distributions

Except as otherwise provided in the Plan, the Liquidating Trustee shall not have any obligation to make a Distribution on account of an Allowed Claim if the amount to be distributed to the specific Holder of the Allowed Claim on the particular Periodic Distribution Date does not

constitute a final Distribution to such Holder and such Distribution has a value less than $10.00.  The

Liquidating Trustee shall have no obligation to make any Distribution on Claims Allowed in an

amount less than $100.00.

**L.      Fractional Dollars**

Any other provision of this Plan notwithstanding, the Liquidating Trustee shall <u>not</u> be

required to make Distributions or payments of fractions of dollars.  Whenever any payment of a

fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a

rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded

down.

**M.      Allocation of Plan Distributions Between Principal and Interest**

To the extent that any Allowed Claim entitled to a Distribution under this Plan is

composed of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for all

income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent

the consideration exceeds the principal amount of the Claim, to the portion of such Claim

representing accrued but unpaid interest.

**N.      Distribution Record Date**

The Liquidating Trustee will have no obligation to recognize the transfer of or sale of

any participation in any Allowed Claim that occurs after the close of business on the Distribution

Record Date, and will be entitled for all purposes herein to recognize, deal with and distribute only

to those Holders of Allowed Claims who are record Holders of such Claims, or participants therein,

as of the close of business on the Distribution Record Date, as stated on the official claims register.

## VIII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.      Rejected Contracts and Leases**

Except as otherwise provided in the Confirmation Order, the Plan, or any other Plan

Document, the Confirmation Order shall constitute an order under Bankruptcy Code section 365

rejecting all prepetition executory contracts and unexpired leases to which any Debtor is a party, to

the extent such contracts or leases are executory contracts or unexpired leases, on and subject to the

occurrence of the Effective Date, unless such contract or lease (a) previously shall have been assumed, assumed and assigned, or rejected by the Debtors, (b) previously shall have expired or terminated pursuant to its own terms before the Effective Date, (c) is the subject of a pending motion to assume or reject on the Confirmation Date, or (d) is identified in <u>Exhibit C</u> to the Plan as an executory contract or unexpired lease of the Debtors to be assumed; <u>provided, however</u>, that the Plan Proponents may amend such Exhibit C at any time prior to the Confirmation Date; <u>provided further however</u>, that listing such an agreement on such Exhibit shall not constitute an admission by a Debtor that such agreement is an executory contract  or unexpired lease or that any Debtor has any liability thereunder.

**B.      Bar to Rejection Damages**

If the rejection of an executory contract or unexpired lease pursuant to Article VIII.A above gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the applicable Debtor or its Estate, the Liquidating Trust, or their respective successors or properties unless a Proof of Claim is filed and served on the Liquidating Trust and counsel for the Liquidating Trustee within thirty (30) days after service of a notice of the Effective Date or such other date as is prescribed by the Bankruptcy Court.

**C.      Assumed and Assigned Contracts and Leases**

Except as otherwise provided in the Confirmation Order, the Plan, or any other Plan Document entered into after the Petition Date or in connection with the Plan, the Confirmation Order shall constitute an order under Bankruptcy Code section 365 assuming, as of the Effective Date, those insurance agreements listed on <u>Exhibit C</u> to this Plan; <u>provided</u>, <u>however</u>, that the Plan Proponents may amend such Exhibit at any time prior to the Confirmation Date; <u>provided further</u>, <u>however</u>, that listing an insurance agreement on such Exhibit shall not constitute an admission by a Debtor that such agreement is an executory contract or that any Debtor has any liability thereunder.

# IX.

## CONFIRMATION AND CONSUMMATION OF THE PLAN

**A.      Conditions to Confirmation**

The following are conditions precedent to the occurrence of the Confirmation Date:

(a)      A Final Order finding that the Disclosure Statement contains adequate information pursuant to Bankruptcy Code section 1125 shall have been entered by the Bankruptcy Court;

(b)      A proposed Confirmation Order in form and substance, reasonably acceptable to the Plan Proponents, BofA, and Whippoorwill with respect to provisions that impact their rights under the Plan; and

(c)      Approval of all provisions, terms and conditions hereof in the Confirmation Order.

**B.      Conditions to Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing in accordance with Article IX.C:

(a)      Fifteen (15) calendar days shall have passed following entry of the Confirmation Order and no stay of the Confirmation Order is in effect and the Confirmation Order shall provide that the Debtors, the Liquidating Trust, and the Liquidating Trustee are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan or effectuate, advance, or further the purposes thereof;

(b)      All Plan Exhibits shall be, in form and substance, reasonably acceptable to the Plan Proponents and Whippoorwill to the extent that any Plan Exhibits impact their rights, and shall have been executed and delivered by all parties' signatory thereto;

(c)      The Debtors shall be authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and the agreements or documents created in connection with, and expressly provided for under, the Plan;

-95-

(d)    All other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed; and

(e)    The Debtors shall have sufficient Cash to satisfy in full, or adequately reserve for, the BofA Cash Collateral Amount, and all Allowed Administrative Claims, Priority Claims and Miscellaneous Secured Claims, unless the Creditors or the Professionals agree otherwise.

## C.    Waiver of Conditions

Subject to the reasonable approval of Whippoorwill with respect to provisions that impact its rights under the Plan, each of the conditions set forth in Articles IX.A and IX.B of the Plan may be waived in whole or in part by the Plan Proponents and, in the case of Article IX.A(b), by BofA and Whipporwill, as applicable.  The failure to satisfy or waive any condition to the Effective Date may be asserted by the Plan Proponents regardless of the circumstances giving rise to the failure of such condition to be satisfied.  The failure of a party to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

## D.    Consequences of Non-Occurrence of Effective Date

In the event that the Effective Date does not timely occur, the Plan Proponents reserve all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated, that the Plan be null and void in all respects, and/or that any settlement of Claims provided for in the Plan be null and void.  In the event that the Bankruptcy Court shall enter an order vacating the Confirmation Order, the time within which the Debtors may assume and assign or reject all executory contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated, without prejudice to further extensions.

## E.    Substantial Consummation

Substantial consummation of the Plan, as defined in Bankruptcy Code section 1101(2), shall not be deemed to have occurred unless and until all Allowed Administrative Claims, Priority Claims and Miscellaneous Secured Claims have been paid in full or funds sufficient to

-96-

satisfy all Allowed Administrative Claims, Priority Claims and Miscellaneous Secured Claims have

been placed in a segregated reserve.

## X.

## ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

### A.    Professional Fee Claims

#### 1.    Final Fee Applications

The Final Fee Applications must be filed no later than forty-five (45) days after the

Effective Date.  Objections, if any, to Final Fee Applications of such Professionals must be filed and

served on the Liquidating Trustee and its respective counsel, the requesting Professional and the

Office of the U.S. Trustee no later than ninety (90) days from the Effective Date.  After notice and a

hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of

the Bankruptcy Court, the allowed amounts of such Professional Fee Claims shall be determined by

the Bankruptcy Court.

#### 2.    Employment of Professionals after the Effective Date

Except as otherwise provided for in the Liquidating Trust Agreement, from and after

the Effective Date, any requirement that Professionals comply with Bankruptcy Code sections 327

through 331 or any order previously entered by the Bankruptcy Court in seeking retention or

compensation for services rendered or expenses incurred after such date shall terminate.

### B.    Substantial Contribution Compensation and Expenses Bar Date

Any Person who wishes to make a Substantial Contribution Claim based on facts or

circumstances arising after the Petition Date, must file an application with the clerk of the Court, on

or before the Administrative Claims Bar Date, and serve such application on counsel for the Plan

Proponents and as otherwise required by the Court and the Bankruptcy Code on or before the

Administrative Claims Bar Date, or be forever barred from seeking such compensation or expense

reimbursement.  Objections, if any, to the Substantial Contribution Claim must be filed no later than

the Administrative Claims Objection Deadline, unless otherwise extended by Order of the Court.

**C.    Other Administrative Claims**

All other requests for payment of an Administrative Claim arising after the Petition Date up to and through the Effective Date, other than Professional Fee Claims, must be filed with the Court and served on counsel for the Plan Proponents no later than the Administrative Claims Bar Date.  Unless the Liquidating Trustee or any other party in interest objects to an Administrative Claim by the Administrative Claims Objection Deadline, such Administrative Claim shall be deemed allowed in the amount requested.  In the event that the Liquidating Trustee or any other party in interest objects to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim.

## XI.

## EFFECT OF PLAN CONFIRMATION

**A.    Binding Effect**

This Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims and Interests, and their respective successors and assigns, including, but not limited to, the Liquidating Trust and the Liquidating Trustee.

**B.    Discharge of the Debtors**

Pursuant to Bankruptcy Code section 1141(d)(3), Confirmation will not discharge Claims against the Debtors; provided, however, that no Claimholder or Equity Interest Holder may, on account of such Claim or Equity Interest, seek or receive any payment or other distribution from, or seek recourse against, any Debtor, the Liquidating Trust, the Liquidating Trustee, and/or their respective successors, assigns and/or property, except as expressly provided in this Plan.  Nothing in the Plan, including but not limited to this discharge provision, shall prevent First American from (a) prosecuting its claims against FEI in the First American Trust Adversary Action (*First American Trust Company v. Fleetwood Enterprises, Inc.*, et al., Case No. 6:09-ap-1415-MJ) to final judgment or negotiated compromise approved by the Court, and (b) receiving whatever treatment is determined or otherwise approved by the Court.

**C.      Discharge of DB under the 14% Indenture**

Upon the satisfaction of all of DB's duties set forth in this Plan, DB (collectively with its successors and assigns) shall be discharged and relieved of all obligations under the 14% Indenture effective as of the Effective Date.

**D.      Discharge of the Law Debenture under the 5% Indenture**

Upon the satisfaction of all of the Law Debenture's duties set forth in this Plan, the Law Debenture (collectively with its successors and assigns) shall be discharged and relieved of all obligations under the 5% Indenture effective as of the Effective Date.

**E.      Discharge of BNYM**

Upon the satisfaction of all of the BNYM's duties set forth in this Plan, the BNYM (collectively with its successors and assigns) shall be discharged and relieved of all obligations under the 6% Indenture effective as of the Effective Date

**F.      Releases by the Debtors**

**1.      Professionals, Creditors' Committee and Secured Parties**

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors (in their individual capacities and as debtors and debtors in possession) will be deemed to release forever, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities (other than the rights of the Debtors to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered hereunder, and liabilities arising after the Effective Date in the ordinary course of business) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or part on any act omission, transaction, event, or other occurrences taking place on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Debtors, the Chapter 11 Cases, the negotiation and filing of the Plan, the Disclosure Statement or any prior plans of reorganization, the filing of the Chapter 11 Cases, the pursuit of Confirmation of the Plan or any prior plans of reorganization, the**

consummation of the Plan, the administration of the Plan, or the property to be liquidated and/or distributed under the Plan, and that could have been asserted by or on behalf of the Debtors or their Estates, including pursuant to principles of substantive consolidation, piercing the corporate veil, alter ego, domination, constructive trust and similar principles of state or federal creditors' rights laws, in any such case, against (i) the Released Parties except Avoidance Actions or objections to Proofs of Claims filed by any Released Parties, and (ii) the Secured Parties, together with their respective affiliates, agents, attorneys, officers, directors and employees (collectively with the Secured Parties, the "Secured Parties Releasees"), except with respect to the Turnover Action or the Disputed Costs.

      2.     **Debtor Released Parties and Secured Parties Releasees**

      Pursuant to section 1123(b)(3) of the Bankruptcy Code, effective as of the Effective Date, the Debtors, in their individual capacity and as debtors in possession, for and on behalf of their Estates, shall release and forever unconditionally release all the Debtors' present or former, officers, directors, employees, attorneys, financial advisors, representatives or agents ("Debtor Released Parties") for and from any and all  Claims or Rights contingent or existing as of the Effective Date in any manner arising from, based on or relating to, in whole or in part, the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Debtor Released Party or Secured Parties Releasees, as applicable, the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Cases, or any act, omission, occurrence or event in any manner related to any such Claims, Equity Interest, or the Chapter 11 Case, except for (i) in the case of the Debtor Released Parties, Avoidance Actions or objections to Proof of Claims filed against any of the Debtor Released Parties and (ii) in the case of any Secured Party Releasees, with respect to the Turnover Action or the Disputed Costs.

      No provision of this Plan or of the Confirmation Order, including without limitation, any release or exculpation provision, shall modify, release or otherwise limit the liability of any person not specifically released hereunder, including without limitation, any

person that is a co-obligor or joint tortfeasor of a Debtor Released Party or that otherwise is liable under theories of vicarious or other derivative liability.

After the Effective Date, the Liquidating Trustee and the Liquidating Trust shall be bound, to the same extent the Debtors are bound, by all of the releases set forth above.

**G.    Release By Holders of Claims and Equity Interests**

On the Effective Date  (a) each Person that votes to accept the Plan, and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, all Holders of Claims and Equity Interests (each, a "Release Obligor"), in consideration for the obligations of the Liquidating Trust and the Liquidating Trustee under the Plan and the Cash and other consideration to be delivered in connection with the Plan and the Liquidating Trust, shall have conclusively, absolutely, unconditionally, irrevocably and forever, released each Debtor Released Party and each Secured Parties Releasee from any Claim or Cause of Action (except Avoidance Actions) existing as of the Effective Date arising from, based on or relating to, in whole or in part, the subject matter of, or the transaction or event giving rise to, the Claim or Equity Interest of such Release Obligor, and any act, omission, occurrence or event in any manner related to such subject matter, transaction or obligation and any act, omission, occurrence, representation or failure to act that occurred prior to the Petition Date, including the decision to file and the preparation and filing the Chapter 11 Cases and the timing of the commencement of the Chapter 11 Cases.

Notwithstanding the foregoing, however, this Section shall not release (A) any Debtor Released Party from any Claims or Causes of Action existing as of the Effective Date, based on (i) the Internal Revenue Code or other domestic state, city or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city or municipality, (iii) any criminal laws of the United States or any domestic state, city or municipality, (iv) Sections 1104-1109 and 1342(d) of the Employee Retirement Income Security Act of 1974, as amended, (v) any Claim previously asserted or hereinafter asserted that is covered by an existing policy of insurance, (vi) any Claim or Cause of Action expressly reserved in the Plan, (vii) a Debtor Released Party's acts of gross negligence or willful misconduct, or (viii) any claims or causes of

-101-

action First American may have against any non-debtors, including but not limited to the bank defendants or any present or former officer, director, employee, financial advisor or alleged agent of FEI, including but not limited TRC Financial, James Roberson and David Roberson, and irrespective of whether such claims or causes of action have been asserted as of the date of this Plan, or (B) any Secured Party Releasee from any Claims or Causes of Action existing as of the Effective Date, based on (i) the First American Trust Adversary Action, (ii) the Internal Revenue Code or other domestic state, city or municipal tax code, (iii) the environmental laws of the United States or any domestic state, city or municipality, or (iv) any criminal laws of the United States or any domestic state, city or municipality.

The releases of the Secured Parties Releasees contained in this Plan, including, without limitation, the releases set forth in Sections XI.F and XI.G of this Plan, shall be in addition to, and not in limitation of, the releases of the Secured Parties Releasees contained in section 19 of the Interim DIP Order and any other releases of any of the Secured Parties Releasees contained in or approved by the Interim DIP Order or the Final Cash Collateral Order, all of which releases are hereby incorporated into this Plan by this reference and made a part hereof.

Nothing in this section (but subject to any release of the Secured Parties Releasees contained in the Interim DIP Order or the Final Cash Collateral Order) shall prohibit Encore Partners, LLC, James D. Nichols, Richard J. Breidenbach, John D. Stewart, El Dorado Homes, Inc. d/b/a/ Sierra Homes, Budget Homes of Arizona, LLC d/b/a Catalina Housing, Budget Homes of Arizona, LLC d/b/a Mesquite Canyon, and Desert Plateau Homes, LLC from asserting third party claims, counterclaims, setoff, recoupment, or affirmative defenses in response to any litigation filed by or on behalf of the Estates.

H.    Injunction

Except as otherwise provided in the Plan, the Confirmation Order shall provide, among other things, that from and after the Effective Date all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtors are permanently enjoined from taking any of the following actions against the Estate(s), the Liquidating Trust, the Liquidating

**Trustee, Gibraltar, or any of their property on account of any such Claims or Equity Interests:**
**(A) commencing or continuing, in any manner or in any place, any action or other proceeding;**
**(B) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree**
**or order; (C) creating, perfecting, or enforcing any Lien or encumbrance; (D) asserting a**
**setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation**
**due to the Debtors; (E) commencing or continuing, in any manner or in any place, any action**
**or other proceeding (including, without limitation, any "direct action" under the laws of any**
**state) to obtain or claim entitlement to the proceeds of any policy of insurance issued by**
**Gibraltar which cover Claims against the Debtors or to determine if a Claim is covered by one**
**or more policies of insurance issued by Gibraltar; and, (F) commencing or continuing, in any**
**manner or in any place, any action that does not comply with or is inconsistent with the**
**provisions of the Plan; provided, however, that nothing contained herein shall preclude such**
**Persons from exercising their rights pursuant to and consistent with the terms of this Plan or**
**the Confirmation Order; and provided further that nothing contained herein shall preclude**
**any insurance company that is a counterparty to a reinsurance agreement with Gibraltar or**
**state self-insurance guaranty association, including, without limitation the North Carolina**
**Self-Insurance Security Association and the Georgia Self Insurers Guaranty Trust Fund, that**
**asserts the rights of the Debtors in subrogation thereof pursuant to a Gibraltar excess**
**workers' compensation insurance policy, from exercising any of its rights against Gibraltar**
**under the reinsurance agreement or excess workers' compensation insurance policy provided**
**that any action to enforce any claim against Gibraltar must be brought before this Bankruptcy**
**Court; and provided further that nothing contained herein is intended or will be construed as**
**affecting, impairing, compromising, releasing or enjoining any claim First American may have**
**against any non-Debtors, including but not limited to the Bank Defendants or any present or**
**former officer, director, employee, financial advisor or alleged agent of FEI, including but not**
**limited to TRC Financial, James Roberson and David Roberson; and provided further that**
**nothing contained herein is intended or will be construed as affecting, impairing,**
**compromising, releasing or enjoining First American's claim to the proceeds of any available**

**D&O policies; and provided further that nothing contained herein shall alter, impair, or affect the setoff rights of the Texas Comptroller of Public Accounts.**

**I.      Term of Bankruptcy Injunction or Stays**

All injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code section 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.  Upon the Effective Date, the injunction provided in Article XI.E shall apply.

**J.      Exculpation and Limitation of Liability**

**Except as otherwise specifically provided in this Plan, the Debtors, the Liquidating Trustee, the Liquidating Trust, DB, BNYM, Whippoorwill, the Secured Parties Releasees, the 6% Indenture Trustee, 5% Indenture Trustee, the Creditors' Committee, the members of the Creditors' Committee, solely in their capacity as such, and any of the foregoing parties' respective present or former members, officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur any claim, action, proceeding, cause of action, Avoidance Action, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, right to payment, or Claim (as defined in Bankruptcy Code Section 101(5)), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured and whether asserted or assertable directly or derivatively, in law, equity, or otherwise to one another or to any Claimholder or Equity Interest Holder, or any other party in interest, or any of their respective agents, employees, representatives, advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission originating or occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Debtors, the Chapter 11 Cases, the negotiation and filing of the Plan, the Disclosure Statement or any prior plans of reorganization, the filing of the Chapter 11 Cases, the pursuit of Confirmation of the Plan or any prior plans of reorganization, the consummation of the Plan, the administration of the**

**Plan, or the property to be liquidated and/or distributed under the Plan except for their willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided however, that the foregoing shall not be deemed to exculpate or release (i) any of the parties (other than the Secured Parties Releasees, DB, and BNYM) from Avoidance Actions or objections to Proofs of Claims that the Debtors may hold against such parties or (ii) any Secured Party Releasee with respect to the Turnover Action or the Disputed Costs.**

**K.      Indemnification Obligations**

Except as otherwise provided in this Plan, the Interim DIP Order, the Final Cash Collateral Order (in each case modified by the Extension Order), or any contract, instrument, release, or other agreement or document entered into in connection with this Plan, any and all indemnification obligations that the Debtors have pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document or any other document, or applicable law shall be rejected as of the Effective Date, to the extent executory.

**L.      Dissolution of the Creditors' Committee**

Effective on the Effective Date, the Creditors' Committee shall have no further powers or duties and shall be dissolved for all purposes; provided, however, that the Creditors' Committee and the Professionals employed by the Creditors' Committee shall be entitled to reasonable compensation and reimbursement of actual, necessary expenses for post-Effective Date activities relating to the preparation, filing, and prosecution of Final Fee Applications, upon the submission of invoices to the Liquidating Trust.  Any time or expenses incurred in the preparation, filing, and prosecution of Final Fee Applications shall be disclosed by each Professional in its Final Fee Application and shall be subject to approval of the Bankruptcy Court.  Payments of fees and expenses made to the Creditors' Committee and the Professionals employed by the Creditors' Committee shall be made concurrently with payments of fees and expenses to DB and Whippoorwill and other Professionals.

**M.     Browder Objection**

The Plan Proponents and/or Fleetwood believe that the Claims asserted by Jesse Browder, Mary White, Otha Townsend, Vera and Robert Burns, Tamicca Stantley, and Mary Goodwin and the class of plaintiffs represented thereby (collectively, the "Browder Plaintiffs") in an action in the United States District Court for the Central District of California (Case No. EDCV 07 - 0 1180 SGL) (the "Browder Class Action"), are not covered by any policy of insurance issued in favor of Fleetwood. The Browder Plaintiffs dispute this contention. Notwithstanding the foregoing, the Plan does not release or discharge any claims that the Browder Plaintiffs may have against any policy of insurance issued in favor of Fleetwood, to the extent any such claim exists.

Nothing in the Plan or in any Confirmation Order shall preclude the Browder Plaintiffs from pursuing their claims to the extent of available insurance coverage and proceeds. The Claims of the Browder Plaintiffs asserted against the Debtors, solely to the extent of available insurance, are preserved and not discharged by the Plan. However, to the extent the Browder Plaintiffs assert that they are entitled to any recovery on account of any policy of insurance issued by Gibraltar, then any action to establish coverage, to assert a claim against Gibraltar or to obtain any other recovery from Gibraltar must be brought before the Bankruptcy Court.

Nothing in the Plan or in any Confirmation Order shall affect, compromise, impair, release, enjoin or impact in any way (i) the prosecution of the Claims asserted, or to be asserted, against any non Debtor in the Browder Class Action; and (ii) the Browder Plaintiffs' ability to access any liability insurance available to cover the Claims asserted or to be asserted by the Browder Plaintiffs in the Browder Class Action.

If and when the Claims of the Browder Plaintiffs become Allowed Claims, and to the extent not covered by insurance, then such Allowed Claims shall be treated as General Unsecured Claims in Class 6. To the extent any portion of the Claims of the Browder Plaintiffs is covered by the proceeds of insurance, any deficit will be treated as a General Unsecured Claim in Class 6. The Liquidating Trust shall not destroy, abandon or otherwise render unavailable documents relating to the Browder Plaintiffs except upon entry of an Order by a court of competent jurisdiction on notice to parties in interest, including the Browder Plaintiffs, and an opportunity to be heard.

**N.    No Effect on Schechter Action**

On September 1, 2009, Robert Alan Schechter filed a putative class action lawsuit (the "Schechter Action") on behalf of purchasers of FEI common stock (the "Schechter Plaintiffs") between December 6, 2007 and March 10, 2009 against FEI officers Elden L. Smith and Boyd R. Plowman (the "Schechter Defendants") in the United States District Court for the Central District of California (Case No. EDCV 09-01653 MJG (OPx)).  No provision of the Plan, including without limitation, the foregoing releases and/or injunction, is intended or will be construed as affecting, impairing, compromising, releasing or enjoining any claim the Schechter Plaintiffs may have against any non-Debtors, including, but not limited to, the Schechter Defendants.  Further, no provision of the Plan, including without limitation, the foregoing releases and/or injunction, is intended or will be construed as affecting, impairing, compromising, releasing or enjoining any person's claim to the proceeds of the D&O policies.

**O.    No Effect on Certain Actions of the National Highway Traffic Safety Administration Against Non-Debtors**

No provision of the Plan or the Confirmation Order shall be construed to enjoin, prohibit, impair, or otherwise prejudice any request by the National Highway Traffic Safety Administration for clarification of the Bankruptcy Court's Order of July 2, 2009, approving the sale of the Debtors' RV Assets [Docket No. 853], and the amended RV Assets Sale Order dated August 6, 2009 [Docket No. 1056], or any request for relief from those Orders. Further, no provision of the Plan or the Confirmation Order shall be construed to enjoin, prohibit, impair, or otherwise prejudice the National Highway Traffic Safety Administration from taking any action against any non-Debtor third party to enforce the provisions of the National Traffic and Motor Vehicle Safety Act, as amended, 49 U.S.C. § 30101 *et seq*., any applicable regulations, and other non-bankruptcy law.

**P.    Paxinos, PA Storage Tank Remediation**

Subsidiary Debtor Fleetwood Motor Homes of Pennsylvania, Inc., maintains an underground storage tank ("UST") at its manufacturing Plant #71-2, located at Route 487, R.F.D. #1, PO Box 5, Paxinos, PA 17860.  Notwithstanding any other provision in this Plan, the Liquidating Trust Agreement, or the Confirmation Order, the Liquidating Trust shall comply with all

requirements applicable to the UST, pursuant to Title 25, Chapter 245 of the Pennsylvania

Administrative Code (the "Storage Tank Requirements").

Upon the Effective Date, the Liquidating Trust shall reserve $10,000 in Cash to fund

compliance with the Storage Tank Requirements as to the UST set forth above, and shall use such

reserve to pay for the permanent closure of the UST in accordance with the Storage Tank

Requirements and, until permanent closure, to pay the required annual registration fee of $50.00 for

the UST to the Pennsylvania Department of Environmental Protection ("PADEP.")   Upon the

receipt of a "No Further Action" letter or the equivalent as to the UST from the PADEP, or other

confirmation from the PADEP or the United States Environmental Protection Agency that the UST

closure has been completed and no additional remediation is required, the Liquidating Trust may

treat any and all remaining Cash in the aforementioned reserve as Net Distributable Proceeds and

dispose thereof in accordance with the Plan, Liquidating Trust Agreement, and Confirmation Order.

## XII.

## RETENTION OF JURISDICTION

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the

Confirmation Order, substantial consummation of the Plan and occurrence of the Effective Date, the

Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the

Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things,

jurisdiction to:

> (1)      Allow, disallow, determine, liquidate, classify, estimate or establish
> the priority or secured or unsecured status of any Claim or Equity Interest,
> including the resolution of any request for payment of any Administrative
> Claim, the resolution of any objections to the allowance or priority of Claims
> or Equity Interests and the determination of requests for the payment of claims
> entitled to priority under Bankruptcy Code section 507(a)(1), including
> compensation of any reimbursement of expenses of parties entitled thereto;

(2)    Hear and determine all applications for compensation and

reimbursement of expenses of Professionals under the Plan or under

Bankruptcy Code sections 330, 331, 503(b), 1103, and 1129(a)(4); provided,

however, that from and after the Effective Date, the payment of the fees and

expenses of the retained Professionals of the Liquidating Trust and/or the

Liquidating Trustee shall be made in the ordinary course of business and shall

not be subject to the approval of the Bankruptcy Court;

(3)    Hear and determine all matters with respect to the assumption or

rejection of any executory contract or unexpired lease to which a Debtor is a

party or with respect to which a Debtor may be liable, and to hear, determine

and, if necessary, liquidate any Claims arising therefrom;

(4)    Effectuate performance of and payments under the provisions of the

Plan;

(5)    Hear and determine any and all adversary proceedings, motions,

applications and contested or litigated matters arising out of, under or related

to the Chapter 11 Cases, the Plan or the Liquidating Trust Agreement;

(6)    Enter such orders as may be necessary or appropriate to execute,

implement or consummate the provisions of the Plan and all contracts,

instruments, releases and other agreements or documents created in

connection with the Plan, the Disclosure Statement or the Confirmation Order;

(7)    Hear and determine disputes arising in connection with the

interpretation, implementation, consummation or enforcement of the Plan,

including disputes arising under agreements, documents or instruments

executed in connection with the Plan;

(8)    Consider any modifications of the Plan, cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(9)    Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(10)    Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

(11)    Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(12)    Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

(13)    Except as otherwise limited herein, recover all Assets of the Debtors and property of the Estates, wherever located;

(14)    Hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

(15)    Hear and determine all matters related to the property of the Estates from and after the Confirmation Date;

(16)    Hear and determine the Causes of Action;

(17)     Hear and determine all disputes involving the existence, nature or scope of the injunctions, indemnification, exculpation and releases granted pursuant to this Plan;

(18)     Hear and determine all matters related to (i) the property of the Estates from and after the Confirmation Date, (ii) the winding up of the Debtors' affairs, and (iii) the activities of the Liquidating Trust and/or the Liquidating Trustee, including (A) challenges to or approvals of the Liquidating Trustee's activities, (B) resignation, incapacity or removal of the Liquidating Trustee and successor Liquidating Trustees, (C) reporting by, termination of and accounting by the Liquidating Trustee, and (D) release of the Liquidating Trustee from its duties;

(19)     Hear and determine disputes with respect to compensation of the Liquidating Trustee and the Liquidating Trust Professionals;

(20)     Hear and determine all disputes involving the existence, nature and/or scope of the injunctions and releases provided herein, including any dispute relating to any liability arising out of any termination of employment or the termination of any employee or retiree benefit provision, regardless of whether such termination occurred prior to or after the Effective Date;

(21)     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(22)     Hear and determine the WARN and Severance Class Settlement Agreement and any disputes or issues relating thereto;

(23)     Enforce all orders previously entered by the Bankruptcy Court;

(24)     Dismiss any and/or all of the Chapter 11 Cases; and

1

(25)    Enter a final decree closing the Chapter 11 Cases.

## XIII.

## MISCELLANEOUS PROVISIONS

### A.    Modifications and Amendments

The Plan Proponents together may alter, amend or modify the Plan or any Exhibits thereto under Bankruptcy Code section 1127(a) at any time prior to the Confirmation Date, subject to the reasonable approval of Whippoorwill and BofA with respect to provisions that impact their rights hereunder.  After the Confirmation Date and prior to substantial consummation of the Plan as defined in Bankruptcy Code section 1101(2), the Plan Proponents may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

### B.    Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, then the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and interpret such terms or provisions to make them valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such terms or provisions shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## C.    Successors and Assigns

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of that Person.

## D.    Payment of Statutory Fees

All fees then due and payable pursuant to 28 U.S.C. § 1930, as determined by the Court at the Confirmation Hearing, shall be paid on or before the Effective Date by the Debtors.  All such fees that become due and payable thereafter by a Debtor shall be paid by the Liquidating Trustee.  The Liquidating Trustee shall pay quarterly fees to the U.S. Trustee until the Chapter 11 Cases are closed or converted and/or the entry of final decrees.  The Debtors, through the Liquidating Trust, shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformance with the U.S. Trustee Guidelines.  The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which shall be paid by the Debtors and/or the Liquidating Trustee.

## E.    Revocation, Withdrawal or Non-Consummation

The Plan Proponents reserve the right to collectively revoke or withdraw the Plan as to any or all of the Debtors prior to the Confirmation Date and to file subsequent plans.  If the Plan Proponents revoke or withdraw the Plan as to any or all of the Debtors, or if Confirmation or consummation of the Plan as to any or all of the Debtors does not occur, then, with respect to such Debtors, (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtors or any other Person, (ii) prejudice in any manner the rights of such Debtors or any other Person, or (iii) constitute an admission of any sort by such Debtors or any other Person.

1

**F.     Service of Documents**

2

Any notice, request or demand required or permitted to be made or provided to or

3

upon a Debtor, the Creditors' Committee, and/or the Liquidating Trustee under the Plan shall be (a)

4

in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight

5

delivery service, (iv) first class mail, or (v) facsimile transmission, (c) deemed to have been duly

6

given or made when actually delivered or, in the case of notice by facsimile transmission, when

7

received and telephonically confirmed, and (d) addressed as follows:

8

9

*The Debtors:*

10

If by overnight or hand delivery:

11

Fleetwood
c/o Chief Financial Officer

12

Fleetwood Enterprises, Inc.
3125 Myers Street

13

Riverside, CA 92503

14

with a copy to:

15

Craig H. Millet

16

Gibson, Dunn & Crutcher LLP
3161 Michelson Drive

17

Irvine, California  92612-4412

18

*The Creditors' Committee:*

19

Hamid R. Rafatjoo
Venable LLP

20

2049 Century Park East, Suite 2100
Los Angeles, CA  90067

21

*The Liquidating Trust/The Liquidating Trustee:*

22

SltnTrst LLC

23

9952 S. Santa Monica Blvd.
2nd Floor

24

Beverly Hills, CA 90212

25

**G.     Plan Supplement(s)**

26

Exhibits to the Plan not attached hereto shall be filed in one or more Plan

27

Supplements by the Exhibit Filing Date.  Any Plan Supplement (and amendments thereto) filed by

28

the Plan Proponents shall be deemed an integral part of the Plan and shall be incorporated by

reference as if fully set forth herein.  Substantially contemporaneously with their filing, the Plan

Supplements may be viewed at the office of the clerk of the Bankruptcy Court or its designee during

normal business hours, by visiting the Court's website at www.caeb.uscourts.gov (PACER account

required) or by visiting www.kccllc.net/fleetwood.  Holders of Claims and/or Equity Interests may

obtain a copy of any Plan Supplements upon reasonable written request to the Claims Agent.  The

documents contained in any Plan Supplements shall be approved by the Bankruptcy Court pursuant

to the Confirmation Order.

**H.      Plan Exhibits**

   Any and all Plan Exhibits, or other lists or schedules not filed with the Plan shall be

filed with the Clerk of the Bankruptcy Court on or before the Exhibit Filing Date.  Upon such filing,

such documents may be inspected in the office of the Clerk of the Bankruptcy Court during normal

court hours.  Holders of Claims or Equity Interests may obtain a copy of any such document upon

written request to the Debtors in accordance with Article XIII of the Plan.

**I.      Tax Reporting And Compliance**

   The Liquidating Trustee is hereby authorized, on behalf of each of the Debtors, to

request an expedited determination under Bankruptcy Code section 505(b) of the tax liability of the

Debtors for all taxable periods ending after the Petition Date through and including the Effective

Date.

**J.      Filing Of Additional Documents**

   On or before substantial consummation of this Plan, the Debtors shall file such

agreements and other documents as may be necessary or appropriate to effectuate and further

evidence the terms and conditions of this Plan.

1

2    Dated: August __5__, 2010        FLEETWOOD ENTERPRISES, INC., et al.
                                      (for itself and on behalf of the Debtors)
3

4                                     By: _____
5                                          Name:  Andrew M. Griffiths
                                           Title:   Senior Vice President/CFO
6

7

8    Dated: August___, 2010          OFFICIAL COMMITTEE OF CREDITORS HOLDING
9                                     UNSECURED CLAIMS

10
                                      By: _____
11                                         Name: J. Chris Matthews
                                           Title:   Co-Chair of the Official Committee of
12                                                 Creditors Holding Unsecured Claims

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-116-

1

2    Dated: August__, 2010        FLEETWOOD ENTERPRISES, INC., et al.
                                   (for itself and on behalf of the Debtors)
3

4
                                   By:    _____
5                                         Name: Andrew M. Griffiths
                                          Title:  Senior Vice President/CFO
6

7

8    Dated: August 5, 2010        OFFICIAL COMMITTEE OF CREDITORS HOLDING
                                   UNSECURED CLAIMS
9

10                                 By:    _____
11                                        Name: J. Chris Matthews
                                          Title:  Co-Chair of the Official Committee of
12                                                 Creditors Holding Unsecured Claims

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA1DOCS1-#278556-v2-Fleetwood_-_Fourth_Amended_Joint_Plan_of_Liquidation.DOC

# EXHIBIT "A"

**Exhibit A**

**Schedule of Subsidiary Debtors**

## SCHEDULE OF SUBSIDIARY DEBTORS.

1.    Fleetwood Holdings, Inc.;
2.    Fleetwood Retail Corp.;
3.    Fleetwood Homes Investment, Inc.;
4.    Fleetwood General Partner of Texas, Inc.;
5.    Fleetwood Homes of Texas, L.P.;
6.    Fleetwood Homes of Louisiana, Inc.;*
7.    Fleetwood Homes of Pennsylvania, Inc.;
8.    Fleetwood Homes of Arizona, Inc.;
9.    Fleetwood Homes of Tennessee, Inc.;
10.   Fleetwood Homes of California, Inc.;
11.   Fleetwood Homes of Virginia, Inc.;
12.   Fleetwood Homes of Florida, Inc.;
13.   Fleetwood Homes of Washington, Inc.;
14.   Fleetwood Homes of Georgia, Inc.;
15.   Fleetwood Motor Homes of California, Inc.;
16.   Fleetwood Homes of Idaho, Inc.;
17.   Fleetwood Motor Homes of Indiana, Inc.;
18.   Fleetwood Homes of Indiana, Inc.;
19.   Fleetwood Motor Homes of Pennsylvania, Inc.;
20.   Fleetwood Homes of Kentucky, Inc.;
21.   Fleetwood Travel Trailers of California, Inc.;
22.   Fleetwood Homes of North Carolina, Inc.;
23.   Fleetwood Travel Trailers of Indiana, Inc.;
24.   Fleetwood Homes of Oregon, Inc.;
25.   Fleetwood Travel Trailers of Kentucky, Inc.;
26.   Fleetwood Travel Trailers of Maryland, Inc.;
27.   Fleetwood Travel Trailers of Ohio, Inc.;
28.   Fleetwood Travel Trailers of Oregon, Inc.;
29.   Fleetwood Travel Trailers of Texas, Inc.;
30.   Gold Shield, Inc.;
31.   Gold Shield of Indiana, Inc.;
32.   Hauser Lake Lumber Operations, Inc.;
33.   Fleetwood Home Centers of Nevada, Inc.;
34.   Fleetwood Home Centers of Texas, Inc.;
35.   Fleetwood Retail Corp. of Arizona;
36.   Fleetwood Retail Corp. of Arkansas;
37.   Fleetwood Retail Corp. of California;
38.   Fleetwood Retail Corp. of Florida;
39.   Fleetwood Retail Corp. of Georgia;
40.   Fleetwood Retail Corp. of Illinois;
41.   Fleetwood Retail Corp. of South Carolina;

*In June of 2009, the Bankruptcy Court approved the sale of substantially all of the tangible and intangible assets of
Fleetwood's affiliate Trendsetter Homes, Inc. ("Trendsetter Homes"), to CMH Manufacturing, Inc ("Buyer").
Trendsetter Homes is also a chapter 11 debtor in the Fleetwood bankruptcy proceedings.  As part of the terms of sale
approved by the Bankruptcy Court, after closing the sale of its assets, Trendsetter Homes changed its name to
Fleetwood Homes of Louisiana, Inc., which remains a chapter 11 debtor in the consolidated Fleetwood bankruptcy
cases.

42. Fleetwood Retail Corp. of North Carolina;
43. Fleetwood Retail Corp. of Tennessee;
44. Fleetwood Retail Corp. of Virginia;
45. Fleetwood Retail Corp. of West Virginia;
46. Fleetwood Capital Trust;
47. Fleetwood International Inc;
48. Fleetwood Homes of Mississippi, Inc.;  and
49. Continental Lumber Products, Inc.

Exhibit "A"

# EXHIBIT "B"

**LIQUIDATING TRUST AGREEMENT**
**AND**

**DECLARATION OF TRUST**

**By and Among**

**FLEETWOOD ENTERPRISES, INC.,**
**And its Affiliated Debtors,**

**Debtors**

**and**

**SLTNTRST LLC**

**as Liquidating Trustee**

**in respect of the Fleetwood Liquidating Trust**

**Dated**

**_____, 2010**

BA3DOCS/450883

Exhibit "B"

# Table of Contents

**Page**

SECTION 1 ORGANIZATION; ESTABLISHMENT OF THE LIQUIDATING
TRUST ......................................................................................................... 2

   1.1   Definitions ................................................................................. 2

   1.2   Name ....................................................................................... 4

   1.3   Office ...................................................................................... 4

   1.4   Incorporation of Plan ................................................................ 4

   1.5   Declaration and Establishment of the Liquidating Trust ...................... 4

   1.6   Liquidating Trust ...................................................................... 5

   1.7   Title to Liquidating Trust Assets .................................................. 5

   1.8   Reporting Of Transfer of Liquidating Trust Assets ........................... 6

   1.9   Reservation of Bankruptcy Rights ................................................ 6

   1.10  Preservation of Privileges ........................................................... 6

   1.11  No Assumption of Liabilities ....................................................... 6

   1.12  Appointment of and Acceptance by Liquidating Trustee ...................... 7

   1.13  Valuation of Liquidating Trust Assets ............................................ 7

SECTION 2 BENEFICIARIES .......................................................................... 7

   2.1   Identification of Beneficiaries ...................................................... 7

   2.2   Register ................................................................................... 8

   2.3   Evidence of Liquidating Trust Interests .......................................... 8

   2.4   Securities Law Registration ......................................................... 8

   2.5   Rights of Beneficiaries ............................................................... 9

   2.6   Limit on Transfer of Interests of Beneficiaries ................................. 9

   2.7   No Legal Title in Beneficiaries .................................................... 11

i

**Page**

SECTION 3 THE LIQUIDATING TRUSTEE ...................................................................... 11

    3.1    Liquidating Trustee — Generally ................................................................ 11

    3.2    Manner of Acting ....................................................................................... 11

    3.3    Status of Liquidating Trustee .................................................................... 12

    3.4    Oversight Committee ................................................................................. 12

    3.5    Litigation ................................................................................................... 12

    3.6    Compensation and Reimbursement of Liquidating Trustee and
            Professionals from the Administrative Reserve ........................................ 13

    3.7    Tenure, Removal, and Replacement of the Liquidating Trustee ................ 13

    3.8    Continuance of Trust ................................................................................. 15

    3.9    Acceptance of Appointment by Successor Liquidating Trustee ................. 15

SECTION 4 AUTHORITY, LIMITATIONS, DUTIES, AND FINAL REPORT AND
            DISCHARGE ............................................................................................. 16

    4.1    Authority ................................................................................................... 16

    4.2    Limitations on the Liquidating Trustee ..................................................... 19

    4.3    Liquidating Trustee and Conflicts of Interest ........................................... 20

    4.4    Additional Duties of the Liquidating Trustee ............................................ 20

    4.5    No Implied Obligations .............................................................................. 23

    4.6    Unknown Property and Liabilities ............................................................. 23

    4.7    Compliance with Laws .............................................................................. 23

    4.8    Inquiries into Liquidating Trustee's Authority .......................................... 23

    4.9    Final Report and Discharge of Liquidating Trustee ................................... 23

    4.10   Reliance by Liquidating Trustee ................................................................ 24

    4.11   Standard of Care; Exculpation ................................................................... 25

ii

**Page**

SECTION 5 DISTRIBUTIONS ................................................................................ 25

    5.1    Establishment of Reserves ................................................................. 25

    5.2    Distributions to Beneficiaries; Disbursing Agent ............................. 26

    5.3    Cash Distributions ............................................................................ 27

SECTION 6 OVERSIGHT COMMITTEE ........................................................... 28

    6.1    Oversight Committee ........................................................................ 28

    6.2    Meetings ........................................................................................... 30

    6.3    Special Meetings .............................................................................. 30

    6.4    Manner of Acting ............................................................................. 30

    6.5    Action Without a Meeting ................................................................ 31

    6.6    Compensation ................................................................................... 31

    6.7    Standard of Care; Exculpation ......................................................... 31

SECTION 7 DURATION OF LIQUIDATING TRUST ....................................... 32

    7.1    Duration of Liquidating Trust .......................................................... 32

    7.2    Continuance of Debtors Trust for Winding Up ................................ 32

SECTION 8 INDEMNIFICATION; LIMITATIONS ON LIABILITY ................ 33

    8.1    Action upon Instructions .................................................................. 33

    8.2    Indemnification ................................................................................ 33

    8.3    Limited Recourse ............................................................................. 34

    8.4    No Liability for Acts of Predecessor ............................................... 35

    8.5    Express Exculpatory Clauses in Instruments ................................... 35

    8.6    Limited Liability of the Estates Litigation Representative ............... 35

SECTION 9 REPORTS TO BENEFICIARIES OTHER THAN FINAL REPORT ................. 35

    9.1    Securities Laws and Investment Company Act ................................ 35

iii

**Page**

9.2      Reports ................................................................................................ 36

9.3      Other Reports ...................................................................................... 36

9.4      Calculations; Source of Distributions ................................................ 36

9.5      Tax Reporting ...................................................................................... 37

SECTION 10 AMENDMENT AND WAIVER ..................................................... 37

SECTION 11 MISCELLANEOUS PROVISIONS ................................................ 38

11.1     Notices ................................................................................................. 38

11.2     Post Effective Date Service List ......................................................... 38

11.3     Effectiveness ....................................................................................... 39

11.4     Counterparts ........................................................................................ 39

11.5     Governing Law .................................................................................... 39

11.6     Severability of Provisions ................................................................... 39

11.7     Entire Agreement ................................................................................ 39

11.8     Effect of Death, Incapacity or Bankruptcy of Beneficiary ................ 39

11.9     Effect of Liquidating Trust on Third Parties ...................................... 39

11.10    Waiver .................................................................................................. 40

11.11    Tax Identification Numbers ................................................................. 40

11.12    Headings .............................................................................................. 40

11.13    Reimbursement of Costs ...................................................................... 40

11.14    Jurisdiction .......................................................................................... 41

11.15    Fiscal Year .......................................................................................... 41

11.16    Confidentiality .................................................................................... 41

11.17    Joint Litigation Privilege..................................................................... 42

11.18    Rules of Construction .......................................................................... 42

iv

This Liquidating Trust Agreement and Declaration of Trust (the "<u>Agreement</u>") is entered into as of _____, 2010, and shall be effective as of the Effective Date of the *Joint Plan of Liquidation of Fleetwood Enterprises, Inc. and Its Affiliated Debtors and the Official Committee of Creditors Holding Unsecured Claims* (together with any and all amendments thereto, all Exhibits and schedules thereto and all documents incorporated by reference therein (as the same may be amended, modified or supplemented from time to time in accordance with the terms and provisions thereof) (the "<u>Plan</u>")[1] by and among:

(i)      Fleetwood Enterprises, Inc., and its affiliated debtors,[2] as debtors and debtors in possession in the Cases and on behalf of the Estates, ("<u>Debtors</u>"), as transferor; and

(ii)      SltnTrst LLC, or any designee of which Peter Kravitz is the principal, as liquidating trustee of this Fleetwood Liquidating Trust (the "<u>Liquidating Trustee</u>").

This Agreement is entered into pursuant to the Plan.

## RECITALS

A.      On the Petition Date, Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code.  Debtors have continued in possession of the property and have continued to operate and manage their business as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

B.      On _____, 2010, the Bankruptcy Court entered the Confirmation Order.  The Effective Date of the Plan is the date of execution of this Agreement.

C.      Section VI.F(1) of the Plan provides for the creation of the Liquidating Trust and Section VI.F.(5)(j) provides for the irrevocable transfer, assignment, and vesting to the Liquidating Trust of the Liquidating Trust Assets.

D.      This Liquidating Trust is established for the benefit of the Beneficiaries and is intended to qualify as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d).

E.      The primary purpose of the Liquidating Trust is to (i) receive and maintain the Liquidating Trust Assets for the benefit of the Beneficiaries, (ii) oversee and direct the orderly liquidation of the Net Distributable Proceeds for the benefit of the Beneficiaries, and (iii) distribute the Net Distributable Proceeds to the Beneficiaries pursuant to the terms of the Plan, the Confirmation Order and this Agreement.  The Liquidating Trust will be administered consistent with the liquidating purpose of the Liquidating Trust, and with no objective to

---

[1] Unless otherwise indicated herein, all capitalized terms shall have the meaning provided for in the Plan.

[2] A list of the affiliated debtors is attached as Exhibit A.

1

Exhibit "B"

continue or to engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve the liquidation value of the Liquidating Trust Assets.

F.      Pursuant to the Plan and the Confirmation Order, the Liquidating Trustee was duly appointed as a representative of the Estates pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code.

G.      The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and the Liquidating Trustee shall administer and maintain the Liquidating Trust in compliance with the guidelines for liquidating trusts as set forth in Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and Treasury Regulation Section 1.671-4(a) and all subsequent guidelines regarding liquidating trusts issued by the Internal Revenue Service (the "IRS").  That portion of the Liquidating Trust that consists of the Disputed Claims Fund is intended to qualify as a "disputed ownership fund" pursuant to Treasury Regulations section 1.468B-9 and shall be administered consistent with such Treasury Regulation.

**NOW, THEREFORE,** pursuant to the Plan and the Confirmation Order, in consideration of the promises, the mutual agreements of the parties contained herein and in the Plan, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, Debtors and the Liquidating Trustee agree as follows:

<div align="center">

**SECTION 1
ORGANIZATION; ESTABLISHMENT
OF THE LIQUIDATING TRUST**

</div>

1.1      Definitions

1.1.1    Defined Terms.  Unless otherwise stated herein, capitalized terms used in this Agreement shall have the meanings assigned to them in the Plan.  Terms defined in the Bankruptcy Code, and not otherwise specifically defined in the Plan or herein, when used herein, have the meanings attributed to them in the Bankruptcy Code.

1.1.2    Additional Defined Terms.  As used herein, the following terms shall have the meanings set forth below, unless the context otherwise requires:

1.1.2.1 "Agreement" shall have the meaning set forth in the introductory paragraph hereof.

1.1.2.2 "Beneficiary" means, except as discussed below, the holder of an allowed Claim pursuant to the Plan.

1.1.2.3 "Confidential Information" shall have the meaning set forth in Section 11.16.

1.1.2.4 "Covered Person" shall have the meaning set forth in Section 11.16.

<div align="center">2</div>

Exhibit "B"

1.1.2.5 "Debtors" shall have the meaning set forth in the introductory paragraph of this Agreement.

1.1.2.6 "Designated Liquidating Trustee" shall have the meaning set forth in Section 4.2.

1.1.2.7 "Disputed Claims Fund" shall have the meaning set forth in Section 4.3.7.2.

1.1.2.8 "Disputed Unsecured Claim Reserve" shall have the meaning set forth in Section 5.1.2.1.

1.1.2.9 "Distribution Amount" shall have the meaning set forth in Section 5.2.4.

1.1.2.10    "Distribution Date" means each date on which a Distribution is made by the Liquidating Trustee to Beneficiaries pursuant to the terms of the Plan, the Confirmation Order and this Agreement.

1.1.2.11    "Estates Litigation Representative" shall have the meaning set forth in Section 3.3.

1.1.2.12    "Exchange Act" shall have the meaning set forth in Section 2.4.

1.1.2.13    "Expenses" shall have the meaning set forth in Section 5.1.1.1

1.1.2.14    "Extension Period" shall have the meaning set forth in Section 7.1.

1.1.2.15    "Final Decree" shall have the meaning set forth in Section 6.1.2.

1.1.2.16    "Final Distribution Date" means the day on which the final Distribution is made.

1.1.2.17    "Final Report" shall have the meaning set forth in Section 4.8.1.

1.1.2.18    "Holder" means, depending on the context, any Person holding a Claim or Interest in the Case, or any Person holding an Liquidating Trust Interest.

1.1.2.19    "Indemnified Person" shall have the meaning set forth in Section 8.2.1.

1.1.2.20    "Interim Trustee" shall have the meaning set forth in Section 3.7.2.4.

1.1.2.21    "IRS" shall mean the Internal Revenue Service.

3

|  | 1.1.2.22 | "Investment Company Act" shall have the meaning set forth in |

1.1.2.22    "Investment Company Act" shall have the meaning set forth in Section 2.4.

1.1.2.23    "Liquidating Trust Oversight Committee" means Oversight Committee.

1.1.2.24    "Liquidating Trust Expenses" shall have the meaning set forth in Section 5.1.1.1.1.

1.1.2.25     "Post Effective Date Service List" shall have the meaning set forth in Section 11.2.

1.1.2.26    "Privileges" shall have the meaning set forth in Section 1.10.

1.1.2.27    "Register" shall have the meaning set forth in Section 2.2.1.

1.1.2.28    "Reserves" shall have the meaning set forth in Section 5.1.2.

1.1.2.29    "SEC" shall have the meaning set forth in Section 2.4.

1.1.2.30    "Securities Act" shall have the meaning set forth in Section 2.4.

1.1.2.31    "Transfer" shall have the meaning set forth in Section 2.6.2.

1.2    <u>Name</u>

The Liquidating Trust shall be known as the "Fleetwood Liquidating Trust," in which name the Liquidating Trustee may conduct the affairs of the Liquidating Trust.

1.3    <u>Office</u>

The office of the Liquidating Trust shall be in care of the Liquidating Trustee at SltnTrst LLC, 9952 S. Santa Monica Blvd., 2nd Floor, Beverly Hills, CA 90212 or at any other address that the Liquidating Trustee may designate by written notice to the Post Effective Date Service List.

1.4    <u>Incorporation of Plan</u>

The Plan and Confirmation Order are incorporated into this Agreement.  In the event of any conflict between the Plan and this Agreement, the Plan will govern.  In the event of any conflict between the Confirmation Order and the Plan or this Agreement, the Confirmation Order will control and govern.

1.5    <u>Declaration and Establishment of the Liquidating Trust</u>

For good and valuable consideration, the receipt of which is hereby acknowledged by the undersigned, and pursuant to the Plan and the Confirmation Order, Debtors, on behalf of themselves and the Estates, execute this Agreement and, pursuant to the Plan, the Confirmation

4

Order and this Agreement, hereby establish the Liquidating Trust and irrevocably transfer, absolutely grant, assign, convey, set over, and deliver to the Liquidating Trust, pursuant to the Plan, and at such times as is set forth in the Plan, all of their right(s), title and interest(s) in and to the Liquidating Trust Assets to be held in trust to and for the benefit of the Beneficiaries for the uses and purposes stated herein and in the Plan.  The Liquidating Trustee hereby agrees to accept and hold the Liquidating Trust Assets in trust for the Beneficiaries subject to the terms of the Plan and this Agreement.  The Liquidating Trustee shall have all the rights, powers and duties set forth in the Plan and this Agreement and available under applicable law for accomplishing the purposes of the Liquidating Trust.  The Liquidating Trustee is hereby authorized to file with the governmental authorities (including the State of California) any documents necessary or helpful to establish the Liquidating Trust.

1.6     Liquidating Trust

1.6.1    Beneficiaries.  The Liquidating Trust is organized and established as a trust for the benefit of the Beneficiaries and is intended to qualify as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d).  In accordance with Treasury Regulation Section 301.7701-4(d), the beneficiaries of the Liquidating Trust are the Holders of Allowed Claims, or in the case of the 14% Notes Claims, the beneficial owners thereof, (the "Beneficiaries"); provided, however, except as provided herein and in the Plan, only Beneficiaries and Liquidating Trust Professionals shall be entitled to distributions from the Liquidating Trust.  The Beneficiaries shall be entitled to distributions from the Liquidating Trust from the Liquidating Trust Assets, which distributions shall be as set forth in the Plan.

1.6.2    Purpose.  The primary purpose of the Liquidating Trust is as set forth in the Plan.

1.7     Title to Liquidating Trust Assets

From and after the Effective Date of the Plan, pursuant to, and at such times set forth in, the Plan, title to and all rights and interests in the Liquidating Trust Assets shall be deemed to be automatically vested in and transferred to the Liquidating Trust free and clear of all liens, Claims, encumbrances or interests of any kind in such property of any other person (including all liens, Claims, encumbrances or interests of creditors of, or Holders of Claims against or Interests in, Debtors) in accordance with Sections 1123, 1141 and 1146(a) of the Bankruptcy Code, and the Liquidating Trustee, on behalf of the Liquidating Trust.  The automatic vesting of the Liquidating Trust Assets to the Liquidating Trust by Debtors is made for the benefit and on behalf of the Beneficiaries.  Upon the transfer of the Liquidating Trust Assets, the Liquidating Trustee succeeds to all of Debtors' and the Estates' right(s), title and interest(s) in the Liquidating Trust Assets and Debtors and the Estates will have no further right or interest in or with respect to the Liquidating Trust Assets or this Liquidating Trust; provided however, that nothing herein or in the Plan shall be deemed an assumption of liability by the Liquidating Trustee.

5

BA3DOCS/450883

Exhibit "B"

1.8     Reporting Of Transfer of Liquidating Trust Assets

Subject to Section 4.1(g), for United States federal and applicable state income tax purposes, the vesting of the Liquidating Trust Assets to the Liquidating Trust pursuant to, and in accordance with, the Plan shall be deemed to be, and shall be reported as, a disposition of the Liquidating Trust Assets directly to, and for the benefit of, the Beneficiaries, for all purposes of the Internal Revenue Code (including, but not limited to, sections 61(a)(12), 483, 1001, 1012 and 1274), as provided for in the Plan in satisfaction of the Allowed Claims held by such Beneficiaries, immediately followed by a contribution of the Liquidating Trust Assets by the Beneficiaries to the Liquidating Trust in exchange for distributions to the Beneficiaries.  Upon the vesting of the Liquidating Trust Assets in the Liquidating Trust, neither Debtors nor the Estates will have any further interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust.  The Beneficiaries will be treated as the grantors and deemed owners of the Liquidating Trust.

1.9     Reservation of Bankruptcy Rights

To the full extent permitted by law, and without excluding or limiting other rights transferred to the Liquidating Trust, all rights under the Bankruptcy Code are preserved for the benefit of the Liquidating Trust and its Beneficiaries, and may be exercised by the Liquidating Trustee subject to the provisions hereof.

1.10     Preservation of Privileges

To the fullest extent permitted by law, Debtors will be deemed to irrevocably transfer to the Liquidating Trustee, as its legal successor, all rights of Debtors and the Estates (including the Estates after the Confirmation Date) to exercise or waive Debtors' attorney-client privilege, accountant-client privilege, work-product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) held by Debtors (collectively, the "Privileges"), and Debtors and the Liquidating Trustee are authorized to take all necessary actions to effectuate the transfer of the Privileges.  All such Privileges also shall vest in the Liquidating Trust and its representatives, to the fullest extent permitted by law.  This transfer is self-executing, provided however, that the Liquidating Trustee and Debtors are authorized and directed to take any and all reasonably necessary actions to effectuate the transfer of such Privileges.  After the Effective Date, the Liquidating Trustee shall have the exclusive power and authority to waive the Privileges.

1.11     No Assumption of Liabilities

The Liquidating Trustee, on behalf of the Liquidating Trust, shall receive the Liquidating Trust Assets and agrees that all Liquidating Trust Assets are being transferred, assigned and conveyed to the Liquidating Trust subject to no liabilities of Debtors or the Estates.  The Liquidating Trustee is not and shall not be liable for any of the Claims or liabilities of the Debtors and/or the Estates.

6

1.12    Appointment of and Acceptance by Liquidating Trustee

SltnTrst LLC ("Solution Trust") is hereby appointed as the Liquidating Trustee, as of the Effective Date, provided, however, that if Peter Kravitz shall be unable to serve as the agent for Solution Trust in its capacity as the Liquidating Trustee, the Oversight Committee may appoint a replacement Liquidating Trustee.  By his signature below, Peter Kravitz, on behalf of Solution Trust, accepts and confirms the appointment, vesting of the Liquidating Trust Assets, and obligations and duties imposed on it by this Agreement.  The Liquidating Trustee agrees to receive, hold, administer and distribute the Liquidating Trust Assets and income derived therefrom, and to meet its duties as Liquidating Trustee, all pursuant to the terms of the Plan, the Confirmation Order and this Agreement.

1.13    Valuation of Liquidating Trust Assets

As soon as practicable after the Effective Date, and thereafter as may be required, the Liquidating Trustee shall, if reasonably deemed necessary or desirable by the Liquidating Trustee, in his sole and absolute discretion, make a good faith valuation of the Liquidating Trust Assets, or cause a good faith valuation of the Liquidating Trust Assets to be made by such professionals as the Liquidating Trustee may, in its sole discretion, retain for such purposes, and the Liquidating Trustee shall, upon written request, make available, through means adopted by the Liquidating Trustee in its sole and absolute discretion, to the Beneficiaries the general results of such valuation.  Such general results of the valuation shall be made available from time to time, to the extent relevant as reasonably determined by the Liquidating Trustee in reliance on its professionals, and shall be used consistently by all parties (including Debtors, the Liquidating Trustee and the Beneficiaries) for all federal and applicable state income tax purposes.  Notwithstanding the foregoing, any such valuation shall not be binding upon the Liquidating Trustee for any purpose other than federal and state income taxes.

**SECTION 2**
**BENEFICIARIES**

2.1    Identification of Beneficiaries

2.1.1    Trust Beneficiaries.  In accordance with the Plan, the Beneficiaries of the Liquidating Trust shall be the parties identified as the Beneficiaries in Section 1.6 of this Agreement.

2.1.2    Allocation of Interests.  Each Beneficiary shall receive an uncertificated Liquidating Trust Interest in the Liquidating Trust (and which shall include any underlying or related economic or other interest within or as a part thereof), which Liquidating Trust Interest solely shall entitle the holder thereof to the Distributions from the Liquidating Trust Fund as provided for herein and in the Plan subject to all applicable accounting and tax rules**.**  Ownership of an interest in the Liquidating Trust shall not be evidenced by a certificate, security or receipt or in any form or manner except as maintained in a register of the Liquidating Trust as described further below.  As such, no interests in the Liquidating Trust nor any evidence of an interest in the Liquidating Trust will be physically distributed to any Beneficiary.

7

2.1.3    Interests Beneficial Only.  The ownership of a Liquidating Trust Interest shall not entitle any Beneficiary to any title in or to the Liquidating Trust Fund (which title shall be vested in the Liquidating Trustee) or to any right to call for a partition or division of the Liquidating Trust Fund or to require an accounting or make any investment decision with respect to or in respect of the Liquidating Trust Fund.

2.2    Register

2.2.1    Names and Addresses.  The Liquidating Trustee shall cause to be kept a register (the "Register") in which the Liquidating Trustee shall at all times maintain the names and addresses of the Holders of Liquidating Trust Interests, whether they are allowed or disputed, and the respective interests of the Beneficiaries as allocated under Section 2.1.2 of this Agreement.  The Register shall be adjusted as Disputed Claims or Interests are determined to be Allowed or are disallowed.  The Liquidating Trustee may rely upon this Register for the purposes of delivering Distributions or notices.  In preparing and maintaining this Register, the Liquidating Trustee may rely on the name and address of each holder of a Claim, unless (i) a different name and/or address is set forth in a proof of claim or Interest filed by such Holder in the Case, or (ii) proper notice of a name or address change has been delivered by such Beneficiary to the Liquidating Trustee in accordance with the Plan and Section 11.1 hereof.

2.2.2    Absolute Owners.  The Liquidating Trustee may deem and treat the Beneficiary of record in the Register as the absolute owner of such Liquidating Trust Interests for the purpose of receiving Distributions and payment thereon or on account thereof and for all other purposes whatsoever and the Liquidating Trustee shall not be charged with having received notice of any claim or demand to such Liquidating Trust Interests or the interest therein of any other Person.

2.3    Evidence of Liquidating Trust Interests

The Liquidating Trust Interests shall be represented by book entries on the books and records of the Liquidating Trust.

2.4    Securities Law Registration

To the extent the Liquidating Trust Interests (or any underlying economic or other interest or part thereof) are deemed to be "securities," the issuance of Liquidating Trust Interests to the Beneficiaries shall be exempt, pursuant to section 1145 of the Bankruptcy Code, from registration under the Securities Act of 1933, as amended (the "Securities Act") and any applicable state and local laws requiring registration of securities.  If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with registration and reporting requirements of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), or the Investment Company Act of 1940, as amended (the "Investment Company Act"), then the Liquidating Trustee shall, after consultation with the Oversight Committee, take any and all actions to comply with such registration and reporting requirements, if any, and file periodic reports with the Securities and Exchange Commission (the "SEC"), after the filing of a motion with the Bankruptcy Court seeking approval to do so, upon notice and opportunity for a hearing provided to the Post Effective Date Service List, and the entry of a

8

Final Order of the Bankruptcy Court so directing.  Notwithstanding the foregoing procedure, if the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Exchange Act or the Investment Company Act, then prior to the registration of the Liquidating Trust under the Exchange Act or the Investment Company Act, the Liquidating Trustee or the Oversight Committee shall seek to amend this Agreement to make such changes as are deemed necessary or appropriate to ensure that the Liquidating Trust is not subject to registration or reporting requirements of the Exchange Act, or the Investment Company Act, and this Agreement, as so amended, shall be effective after notice and opportunity for a hearing provided to the Post Effective Date Service List, and the entry of a Final Order of the Bankruptcy Court.  If the Agreement, as amended, is not approved by Final Order of the Bankruptcy Court or the Bankruptcy Court otherwise determines in a Final Order that registration under one or both of the Exchange Act or Investment Company Act is required, then the Liquidating Trustee shall take such actions as may be required to satisfy the registration and reporting requirements of the Exchange Act and/or the Investment Company Act, as applicable.

       2.5      Rights of Beneficiaries

Each Beneficiary will be entitled to participate in the rights due to a Beneficiary hereunder and under the Plan.  Each Beneficiary shall take and hold its uncertificated Liquidating Trust Interest subject to all of the terms and provisions of this Agreement and the Plan.  The Liquidating Trust Interest of a Beneficiary of the Liquidating Trust is in all respects personal property, and upon the death, insolvency or incapacity of an individual Beneficiary, such Beneficiary's interest shall pass to the legal representative of such Beneficiary and such death, insolvency or incapacity shall not terminate or affect the validity of this Agreement.  A Beneficiary shall have no title to, right to, possession of, management of, or control of the Liquidating Trust Assets, or any right to call for a partition or division of the Liquidating Trust Assets, or to require an accounting, or any standing to direct the Liquidating Trustee to do or not to do any act or to institute any action or proceeding upon or with respect to the Liquidating Trust Assets, except as expressly provided in this Agreement or the Plan.  Title to all the Liquidating Trust Assets shall be vested in the Liquidating Trustee, and the sole interest of the Beneficiaries shall be the rights and benefits given to such Persons under this Agreement and the Plan.

       2.6      Limit on Transfer of Interests of Beneficiaries

       2.6.1

          (a)      The Liquidating Trust Interest (including any economic or other interest or part thereof) of a Beneficiary in the Liquidating Trust shall not be transferable, provided, however, subject to the limitations set forth herein and in Sections 2.6.2 and 2.6.3, a Beneficiary may transfer its Liquidating Trust Interest by gift or sale, or upon death or permanent incapacity to such person's guardian, conservator, executor, administrator, trustees, or beneficiaries of such person's will, spouse, children, stepchildren, grandchildren, parents, siblings or legal dependants, to a trust of which the beneficiary or beneficiaries of the corpus and the income thereof shall be such a person or persons, or the Beneficiary, to a partnership of which the partners shall be such a person or persons or the Beneficiary, and to its partners,

9

members, shareholders or other equity owners.  Any of the foregoing permitted transfers may only be affected if (i) the transferee agrees to become a party to this Agreement and (ii) such transfer is exempt from the registration provisions of the Securities Act of 1933, as amended, if applicable or from the qualification provisions of any state securities law, if applicable.

(b)      The Liquidating Trustee need not reflect any transfer (or make any Distribution to any transferee) and will give notice to such Beneficiary that no transfer has been recognized in the event the Liquidating Trustee reasonably believes that such transfers (or the Distribution to such transferee) may constitute a violation of applicable laws or might cause the Liquidating Trust to be required to register Liquidating Trust Interests under the Exchange Act; and

2.6.2    Prior to any transfer, assignment, hypothecation, pledge, exchange or conveyance of an Liquidating Trust Interest (including any economic or other interest or part thereof) pursuant to Section 2.6.1(a) (each, a "Transfer"), the transferring Beneficiary shall submit to the Liquidating Trustee a duly endorsed assignment of the Liquidating Trust Interest to be transferred (in a form reasonably acceptable to the Liquidating Trustee) together with the service charge, if any, to be specified by the Liquidating Trustee pursuant to this subsection 2.6.2.  No such Transfer shall be effected until, and the transferee shall succeed to the rights of a Beneficiary only upon, final acceptance and registration of the Transfer by the Liquidating Trustee in the Register.  No transfer, assignment, pledge, hypothecation or other disposition of an Liquidating Trust Interest may be effected until either (i) the Liquidating Trustee and the Oversight Committee have received such legal advice or other information that they, in their sole discretion, deem necessary or appropriate to assure that any such disposition shall not require the Liquidating Trust to comply with the registration and reporting requirements of the Exchange Act or the Investment Company Act or (ii) the Liquidating Trustee and the Oversight Committee have determined to register and/or make periodic reports in order to enable such disposition to be made.  In the event that any such disposition is allowed, the Oversight Committee and the Liquidating Trustee may add such restrictions upon transfer and other terms to this Agreement as are deemed necessary or appropriate by the Liquidating Trustee, with the advice of counsel, to permit or facilitate such disposition under applicable securities and other laws.

2.6.3    Prior to the registration of any Transfer by a Beneficiary, the Liquidating Trustee shall (i) treat the Person in whose name the Liquidating Trust Interest is registered as the owner for all purposes, and the Liquidating Trustee shall not be affected by notice to the contrary, and (ii) not be liable for making any Distribution to the transferring Beneficiary.  When a request to register the Transfer of a Liquidating Trust Interest is presented to the Liquidating Trustee, the Liquidating Trustee shall register the Transfer as requested if the requirements for Transfers hereunder are met.  The Liquidating Trustee shall charge a service charge in an amount sufficient to cover the expenses of the Liquidating Trustee and its agents and any tax or governmental charge that may be imposed on any Transfer of an Liquidating Trust Interest.  Failure of any Beneficiary to comply with these provisions shall void any Transfer of the related Liquidating Trust Interest, and the proposed transferee shall have no rights under this Agreement.  Upon the Transfer of a transferring Beneficiary's entire Liquidating Trust Interest as evidenced by the Register, such transferring Beneficiary shall have no further right, title or interest in the Liquidating Trust Assets or the Liquidating Trust.

10

2.7    No Legal Title in Beneficiaries

No Beneficiary shall have legal title to any part of the Liquidating Trust Assets.  No transfer by operation of law or otherwise, of the right, title and interest of any Beneficiary in and to the Liquidating Trust Assets or the Liquidating Trust shall operate to terminate this Liquidating Trust or entitle any successor or transferee of such Beneficiary to an accounting or to the transfer to it of legal title to any part of the Liquidating Trust Assets.

<div align="center">

**SECTION 3**
**THE LIQUIDATING TRUSTEE**

</div>

3.1    Liquidating Trustee — Generally

The Liquidating Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of the Liquidating Trust.  The Liquidating Trustee may arrange for payment of Liquidating Trust Expenses (as defined in Section 5.1.1.1 hereof, including its reasonable fees and expenses) from the Liquidating Trust Assets as permitted herein.

The provisions of this Agreement relating to the Liquidating Trust are intended to create a trust and a trust relationship and are to be governed and construed in all respects as a trust.  The Liquidating Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Liquidating Trustee nor the Beneficiaries, or any of them, for any purpose be, or be deemed to be, or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint ventures.  The relationship of the Beneficiaries to the Liquidating Trust and the Liquidating Trustee shall be solely that of beneficiaries of a trust to a trust and its trustee and shall not be deemed a principal and agency relationship, and the rights of the Beneficiaries shall be limited to those expressly conferred upon them by this Agreement.

3.2    Manner of Acting

Subject to the terms and provisions of the Confirmation Order, Plan and this Agreement, the Liquidating Trustee shall oversee the liquidation of the Liquidating Trust Assets in good faith and in a cost-effective manner in a reasonable time, with due regard for the risk that undue haste may minimize the liquidation proceeds of a particular Liquidating Trust Asset.

As often as the Liquidating Trustee in its reasonable discretion and judgment deems appropriate, after consultation with the Oversight Committee, the Liquidating Trustee will transfer and pay, or cause to be transferred and paid, to the Beneficiaries the Net Distributable Proceeds less such amounts as otherwise might be needed to pay the expenses, debts, charges, liabilities and obligations of the Liquidating Trust. The aggregate amounts required to be distributed to the Beneficiaries at various intervals will be determined by the Liquidating Trustee, in consultation with the Oversight Committee, in accordance with the Plan, and the Trustee's determination will be final and conclusive on all Persons and entities, including governmental units, in the absence of gross negligence or willful misconduct on the part of the Liquidating Trustee (which gross negligence or willful misconduct must be determined by a Final Order of a court of competent jurisdiction), and will not be reviewed by the Court in the

<div align="center">11</div>

absence of an allegation of gross negligence or willful misconduct on the part of the Liquidating Trustee, and, only if sufficient funds are available, will be paid at least once per twelve (12) month period commencing with the Effective Date.

In overseeing the selling of the Liquidating Trust Assets, or otherwise monetizing them, the Liquidating Trustee shall use its best efforts to maximize the amount of the net proceeds derived therefrom.  The liquidation of the Liquidating Trust Assets may be accomplished in part through the prosecution, compromise and settlement, abandonment or dismissal of any or all claims, rights or Causes of Action, subject to the terms of the Plan and this Agreement.  Any and all proceeds generated from such Liquidating Trust Assets shall be held and used and distributed by the Liquidating Trustee.  The Liquidating Trustee may incur any reasonable and necessary expenses in liquidating the Liquidating Trust Assets, as set forth herein.

3.3    Status of Liquidating Trustee

The Liquidating Trustee shall be the representative of the Estates from and after the Effective Date within the meaning of Section 1123(b)(3)(B) of the Bankruptcy Code for purposes of administrating, investigating, litigating, and settling, the Causes of Action, and with respect thereto shall (subject to the limitations in the Plan and this Agreement) have all the rights and powers of Debtors and the Estates as provided for in the Bankruptcy Code with respect to the Liquidating Trust and the Liquidating Trust Assets in addition to any rights and powers granted in this Agreement and in the Plan (acting in such capacity, the "Estates Litigation Representative").  The Liquidating Trustee shall be a party in interest as to all matters over which the Bankruptcy Court has jurisdiction.

3.4    Oversight Committee

The Liquidating Trustee may consult with the Oversight Committee and at its discretion, act, or refrain from acting without prior consultation with or written approval of the Oversight Committee if such consultation or approval is deemed prudent by the Liquidating Trustee; provided, however, that the Liquidating Trustee shall consult with the Oversight Committee by providing, unless otherwise agreed, not less than 3 days notice with respect to matters involving:

3.4.1    Resolution of claims or Causes of Action having a face amount in excess of $500,000;

3.4.2    Prosecution of Avoidance Actions having a face amount in excess of $500,000;

3.4.3    Disposition by sale, abandonment, assignment or otherwise of Liquidating Trust Assets having a face amount in excess of $500,000.

3.5    Litigation

Except as to any Cause of Action expressly released under the Plan, the Liquidating Trustee shall be the successor-in-interest to Debtors and the Estates with respect to any Cause of Action that was or could have been commenced by Debtors or the Estates prior to the Effective Date, or thereafter, until the Liquidating Trust disposes of them.  All such Causes of Action,

12

including the right to subordinate Claims under Section 510 of the Bankruptcy Code, shall be retained and pursued and enforced by the Liquidating Trustee, including as the Estates Litigation Representative pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code and the terms of the Plan.

The Liquidating Trustee shall have discretion to pursue or not to pursue any and all Causes of Action, as it determines to be in the best interests of the Beneficiaries and consistent with the purposes of the Liquidating Trust, and shall have no liability for the outcome of its decision.  With respect to any Causes of Action, the Liquidating Trust and the Liquidating Trustee shall be bound by, and shall give effect to, any release, exculpation, waiver, estoppel or injunction provided by the Plan or the Confirmation Order.

3.6     Compensation and Reimbursement of Liquidating Trustee and Professionals from the Administrative Reserve

3.6.1    The Liquidating Trustee shall be compensated monthly for services in the administration of the Liquidating Trust from Liquidating Trust Assets in the amount of $25,000 for the first six months, $20,000 for the next twelve months, and $10,000 per month thereafter until the conclusion of the Liquidating Trustee's engagement, or such other terms as may agreed to between the Liquidating Trustee and the Oversight Committee.

3.6.2    On and after the Effective Date, the Liquidating Trustee may engage such professionals and experts as may be deemed necessary and appropriate by the Liquidating Trustee to assist the Liquidating Trustee in carrying out the provisions of the Plan and the Liquidating Trust Agreement, including, but not limited to, professionals retained prior to the Effective Date by either the Debtors or the Creditors' Committee.   Prior to hiring a professional financial advisory firm who shall be selected by the Liquidating Trustee in its sole discretion, the Liquidating Trustee shall consult Whippoorwill who shall have an opportunity to express its views on the professional financial advisory firm.

3.6.3    Any and all reasonable and necessary costs and expenses incurred by the Liquidating Trustee and any professional or other Person retained by the Liquidating Trust in performing their respective duties will be reimbursed by the Liquidating Trustee from the Liquidating Trust Assets on a monthly basis.

3.7     Tenure, Removal, and Replacement of the Liquidating Trustee

3.7.1    The appointment and authority of the Liquidating Trustee will be effective as of the Effective Date and will remain and continue in full force and effect until the termination of the Liquidating Trust as provided for in Section 7.1.

3.7.2    The service of the Liquidating Trustee will be subject to the following:

3.7.2.1 The Liquidating Trustee will serve until death, resignation pursuant to subsection (a) below, or removal pursuant to subsection (b) below:

(a)     The Liquidating Trustee may resign upon not less than 60 days' prior written notice to the Oversight Committee, provided that no such resignation will be

13

effective until a successor Liquidating Trustee has been appointed and approved in accordance with this Section 3.7 and such successor Liquidating Trustee has accepted such appointment in accordance with Section 3.9 hereof.  If a successor Liquidating Trustee is not appointed or does not accept its appointment within ninety (90) days following delivery of a written notice of resignation, the resigning Liquidating Trustee may file a motion with the Bankruptcy Court, upon notice and hearing to the Post Effective Date Service List, for the appointment of a successor Liquidating Trustee.  Immediately upon the effectiveness of the Liquidating Trustee's resignation, the resigning Liquidating Trustee shall file an interim report comparable to the Final Report described in Section 4.8 but for the period of such Person's service.

(b)    The Liquidating Trustee may be removed upon motion by the Oversight Committee filed with the consent of all of the members of the Oversight Committee, which removal shall become effective upon the entry of an order of the Bankruptcy Court granting such motion and directing such removal.  Prior to the effective date of removal of the Liquidating Trustee, a successor to the Liquidating Trustee (or an Interim Trustee (as defined below)) shall be appointed pursuant this Section 3.7.  The former Liquidating Trustee having been removed immediately shall file an interim report comparable to the Final Report described in Section 4.8 but for the period of its service.

3.7.2.2 In the event of a vacancy in the position of the Liquidating Trustee occurring by reason of resignation, removal or death, a successor Liquidating Trustee shall be appointed upon (i)(x) the consent of at least a majority of the members of the Oversight Committee eligible to vote, or (y) by the Bankruptcy Court upon motion, with notice provided to the Post Effective Date Service List, and (ii) the confirmation of such appointment by the Bankruptcy Court and the acceptance of such appointment by the successor Liquidating Trustee. Upon the appointment of and acceptance by a successor Liquidating Trustee, the Oversight Committee shall file a notice of such appointment and acceptance with the Bankruptcy Court, which notice shall be served upon the Post Effective Date Service List and shall include the name, address, and telephone number of the successor Liquidating Trustee; provided that the filing of such notice shall not be a condition precedent to the vesting in the successor Liquidating Trustee of all the Estates, properties, rights powers, trust and duties of its predecessor.

3.7.2.3 Immediately upon appointment of any successor Liquidating Trustee and acceptance of such appointment by the successor Liquidating Trustee, all rights, powers, duties, authority, and privileges of the predecessor Liquidating Trustee hereunder will be vested in and undertaken by the successor Liquidating Trustee without any further act.  Any successor Liquidating Trustee shall also succeed as the Estates Litigation Representative.

3.7.2.4 During any period in which there is a vacancy in the position of Liquidating Trustee, the Oversight Committee shall appoint one of its members to serve as interim Liquidating Trustee, (the "Interim Trustee").  The Interim Trustee shall be subject to all the terms and conditions applicable to a Liquidating Trustee hereunder.  Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a member of the Oversight Committee merely by its appointment as Interim Trustee.

<div align="center">14</div>

3.8     Continuance of Trust

        3.8.1    The death, resignation, or removal of the Liquidating Trustee shall not operate to terminate the Liquidating Trust created by this Agreement or to revoke any existing agency (other than any agency of the Liquidating Trustee as the Liquidating Trustee) created pursuant to the terms of this Agreement or invalidate any action taken by the Liquidating Trustee, and the Liquidating Trustee agrees that the provisions of this Agreement shall be binding upon and inure to the benefit of the Liquidating Trustee and the Liquidating Trustee's successors or assigns, as the case may be.  In the event of the resignation or removal of the Liquidating Trustee, in addition to preparation and filing with the Bankruptcy Court of an Interim Report, the former Liquidating Trustee promptly shall:

        (a)     execute and deliver by the effective date of resignation or removal such documents, instruments, and other writings as may be reasonably requested by the successor Liquidating Trustee to effect the termination of the resigning or removed Liquidating Trustee's capacity under this Agreement and the conveyance of the Liquidating Trust Assets then held by the resigning or removed Liquidating Trustee to the successor Liquidating Trustee;

        (b)     deliver to the successor Liquidating Trustee all documents, instruments, records and other writings relating to the Liquidating Trust Assets as may be in the possession or under the control of the resigning or removed Liquidating Trustee provided, however, that the resigning or removed Liquidating Trustee shall be entitled to make and retain copies of this information at the expense of the Liquidating Trust; and

        (c)     otherwise assist and cooperate in effecting the assumption of the resigning or removed Liquidating Trustee's obligations and functions by the successor Liquidating Trustee.

        3.8.2    The resigning, removed or departed Liquidating Trustee hereby irrevocably appoints the successor Liquidating Trustee (and the Interim Trustee) as its attorney–in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such resigning or removed Liquidating Trustee is obligated to perform under this Section 3.8.  Such appointment shall not be affected by the subsequent disability or incompetence of the Liquidating Trustee making such appointment.  The Bankruptcy Court also may enter such orders as are necessary to effect the termination of the appointment of the Liquidating Trustee and the appointment of the successor Liquidating Trustee.

3.9     Acceptance of Appointment by Successor Liquidating Trustee

        Any successor Liquidating Trustee appointed hereunder shall execute an instrument accepting such appointment and assuming all of the obligations as and of the Liquidating Trustee under this Agreement and thereupon the successor Liquidating Trustee shall, without any further act, become vested with all the Estates, properties, rights, powers, trusts, and duties of its predecessor as Liquidating Trustee hereunder with like effect as if originally named herein (including without imitation the duties of the Estates Litigation Representative).  The successor Liquidating Trustee will not be personally liable for any act or omission of the predecessor Liquidating Trustee.

15

## SECTION 4
## AUTHORITY, LIMITATIONS, DUTIES, AND
## FINAL REPORT AND DISCHARGE

4.1    Authority

In connection with the administration of the Liquidating Trust, the Liquidating Trustee is authorized to and shall perform, in good faith, in accordance with this Agreement, the Plan and the Confirmation Order, any and all acts necessary or desirable to accomplish the purposes of the Liquidating Trust, and to take such actions, in good faith, as required under this Agreement, the Plan and the Confirmation Order.  Except as expressly required in this Agreement, the Plan, or the Confirmation Order, no prior or subsequent Bankruptcy Court approval is required for any act of the Liquidating Trustee.  Subject to any specific limitations contained in, or as otherwise provided by this Agreement, the Plan, or the Confirmation Order, the Liquidating Trustee shall have the authority, power and obligation, in its capacity as Liquidating Trustee, as applicable, to:

(a)    receive, control, manage liquidate and dispose of all Liquidating Trust Assets for the benefit of the Beneficiaries;

(b)    act as custodian of the Liquidating Trust Assets, liquidate and reduce the Liquidating Trust Assets to Cash at such time as the Liquidating Trustee deems appropriate to accomplish the purpose of the Liquidating Trust, in accordance with the terms of this Agreement, the Plan, and the Confirmation Order;

(c)    hold legal title to any and all rights of the Beneficiaries in or arising from the Liquidating Trust Assets, including, but not limited to, collecting any and all money and other property belonging to the Liquidating Trust and the right to vote any claim or interest in a case under the Bankruptcy Code and receive any distribution therein, which title shall be held by the Liquidating Trustee solely in its capacity as Liquidating Trustee and not in any individual capacity;

(d)    perform the duties, exercise the powers, and assert the rights of a trustee under Sections 704 and 1106 of the Bankruptcy Code, including, without limitation, hold and assert applicable privileges and defenses, and as the Estates Litigation Representative assert all rights vested hereunder and file, commence or prosecute the Litigation (including all Avoidance Actions, any other and all Claims or Causes of Action of Debtors or the Estates);

(e)    protect and enforce the rights to the Liquidating Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

(f)    establish and maintain any necessary reserves pursuant to the terms of the Plan and Confirmation Order, the reserves pursuant to Section 5.1 hereof, and any order of the Bankruptcy Court;

(g)    file or cause to be filed, if necessary, any and all tax and information returns, and any other statements or disclosures relating to the Liquidating Trust that

16

are required to be filed by any governmental unit with respect to the Liquidating Trust, and withhold and pay taxes properly payable by the Liquidating Trust, if any;

(h)      determine and satisfy any and all liabilities created, incurred or assumed by the Liquidating Trust;

(i)      execute offsets against Claims as provided for in the Plan and Confirmation Order;

(j)      pay all expenses and make other payments relating to the Liquidating Trust Assets, including without limitation the reasonable fees and expenses of the Liquidating Trustee hereunder;

(k)      pay any capital calls and other expenditures applicable to interests in entities acquired through foreclosure or execution or otherwise as Liquidating Trust Assets, but only when determined by the Liquidating Trustee in its discretion to be reasonably necessary and appropriate to maximize the distribution of proceeds of the Liquidating Trust Assets to Beneficiaries;

(k)      take or refrain from taking any action the Liquidating Trustee reasonably deems necessary to protect, preserve and maximize the Liquidating Trust Assets, including, but not limited to, improving or repairing the Liquidating Trust Assets and purchasing insurance of any kind;

(l)      enter into contracts in the course of operating the Liquidating Trust Assets for liquidation or in conjunction with their disposition under the Plan and herein;

(m)      manage, sell and convert all or any portion of the Liquidating Trust Assets to Cash;

(n)      make Distributions or direct the Disbursing Agent to make Distributions to Beneficiaries, as specified in the Plan;

(o)      release, convey or assign any right, title or interest in or about the Liquidating Trust Assets or any portion thereof;

(p)      open and maintain bank accounts on behalf of the Liquidating Trust, deposit funds therein, and draw checks thereon, as appropriate under the Plan, the Confirmation Order and this Agreement;

(q)      fund from Cash or the Liquidating Trust Proceeds any necessary increase in the respective Reserves to the extent such Reserves are deemed to be insufficient by the Liquidating Trustee;

(r)      engage, employ and/or pay such attorneys, accountants, engineers, agents, tax specialists, financial advisors, appraisers, investment bankers, other professionals, and other Persons as may, in the discretion of the Liquidating Trustee, be deemed necessary to fulfill its duties under the Plan and this Agreement, including without limitation, former employees of Debtors, and any professionals previously engaged by Debtors or the Committee

17

appointed in the Chapter 11 Cases, and waive any conflicts of interest as deemed necessary or appropriate in its discretion;

(s)    in compliance with Section 3.5 hereof, sue and be sued in the name of the Liquidating Trust and file or pursue objections to Claims and Litigation, and seek to settle or disallow, recharacterize, reclassify or subordinate any of them, and compromise, adjust, arbitrate, sue on or defend, pursue, prosecute abandon, or otherwise deal with and settle any Litigation Claim in favor of or against the Liquidating Trust as the Liquidating Trustee shall deem advisable, including seeking estimation of contingent or unliquidated Claims;

(t)    assert, enforce, waive or release rights, privileges or immunities of any kind of Debtors, including any privilege or defense of Debtors related to the Liquidating Trust Assets;

(u)    request any appropriate tax determination with respect to the Liquidating Trust, including, without limitation, a determination pursuant to Section 505 of the Bankruptcy Code;

(v)    seek the examination of any Person under, and subject to, the provisions of the Bankruptcy Rules, including Bankruptcy Rule 2004;

(w)    pay obligations or expenses of, or relating to, the Liquidating Trust Assets when the Liquidating Trustee, considering the purposes, terms, distributional requirements and other circumstances of the Plan, deems it prudent to do so to effectuate the Plan;

(x)    notwithstanding anything to the contrary herein, abandon any property which it determines in its reasonable discretion to be of de minimis value or otherwise burdensome to the Liquidating Trust, including any pending adversary proceeding or other legal action, provided that if any Person to whom such notice is given provides a written objection to the Liquidating Trustee prior to the expiration of such thirty-day period with respect to the proposed abandonment of such property, then such property may be abandoned only pursuant to a Final Order of the Bankruptcy Court after notice and opportunity for a hearing;

(y)    borrow funds on behalf of, and solely as a liability of, the Liquidating Trust (which loans may be secured by the Liquidating Trust Assets but shall be without recourse to the Liquidating Trustee in its individual capacity) as are necessary to enable the Liquidating Trustee to discharge its powers and duties as Liquidating Trustee under this Agreement, including without limitation funding the costs and expenses of prosecuting any Litigation;

(z)    except as otherwise set forth in this Agreement or in the Plan, and subject to the Treasury Regulations governing liquidating trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan and Confirmation Order, to seek such orders, judgments, injunctions and rulings as it deems necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan and the Confirmation Order; and

18

Exhibit "B"

(aa)    in general, without in any manner limiting any of the foregoing, deal with the Liquidating Trust Assets or any part or parts thereof in all other ways as would be lawful and prudent for any Person owning the same to deal therewith, whether similar to or different from the ways herein specified, or take such other actions as may be necessary or helpful to accomplish the purposes of the Plan; and

(bb)    direct the Disbursing Agent in maintaining the Reserves under the Plan and making Distributions to Beneficiaries; and

(cc)    object to the allowance of Claims pursuant to the terms of the Plan; and

(dd)    investigate, analyze, commence, prosecute, litigate, compromise, and otherwise administer the Causes of Action and all related Liens for the benefit of the Liquidating Trust and its beneficiaries, as set forth in the Plan, and take all other necessary and appropriate steps to collect, recover, settle, liquidate, or otherwise reduce to Cash the Causes of Action, including all receivables, and to negotiate and effect settlements and lien releases with respect to all related Claims and all related Liens; and

(ee)    administer, sell, liquidate, or otherwise dispose of all Collateral and all other Assets of the Estates in accordance with the terms of the Plan and the Liquidating Trust Agreement; and

(ff)    represent the Estates before the Bankruptcy Court and other courts of competent jurisdiction with respect to matters concerning the Liquidating Trust Limitations on the Liquidating Trustee.

4.1.2    Notwithstanding anything in this Agreement to the contrary, the Liquidating Trustee shall not do or undertake any of the following:

(a)    guarantee any debt;

(b)    make a loan from the Liquidating Trust Assets;

(c)    transfer the Liquidating Trust Assets to another trust with respect to which the Liquidating Trustee serves as trustee; or

(d)    make any transfer or Distribution of Liquidating Trust Assets, other than those authorized under the Plan, the Confirmation Order or this Agreement.

4.1.3    Notwithstanding anything herein to the contrary, the Liquidating Trustee, acting in its capacity as Liquidating Trustee, other than to the extent necessary to preserve the liquidation value of the Liquidating Trust Assets, and shall take such actions consistent with the orderly liquidation of the Liquidating Trust Assets as are required by applicable law, and such actions permitted hereunder.  Notwithstanding any other authority granted herein, the Liquidating Trustee is not authorized to engage in any investments or activities inconsistent with

19

the treatment of the Liquidating Trust as a Liquidating Trust within the meaning of Treasury Regulations Section 301.7701-4(d) and in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684.

4.1.4    The Liquidating Trust shall not hold 50% or more of the stock (in either vote or value) of any Person that is treated as a corporation for federal income tax purposes, nor have any interest in a Person that is treated as a partnership for federal income tax purposes, unless such stock or partnership interest was obtained involuntarily or as a matter of practical economic necessity, including through foreclosure of security interests and execution of judgments, in order to preserve the value of the Liquidating Trust Assets; provided, however, the Liquidating Trust shall not hold more than 4.9% of the issued and outstanding securities of any public reporting company.

4.1.5    In the absence of a Final Order of the Bankruptcy Court to the contrary, (i) the Liquidating Trustee shall not facilitate the development of an active trading market for the Liquidating Trust Interests in the Liquidating Trust, and shall not encourage any other Person to do so (including without limitation taking steps to list such interests on any national securities exchange or on NASDAQ, engaging the services of a market maker, placing any advertisements in the media promoting investment in the Liquidating Trust, or collecting or publishing information about prices at which such interests may be transferred); and (ii) the Liquidating Trustee shall take such affirmative action, including the amendment, supplementation or elimination of provisions of this Agreement, as is necessary or desirable to assure itself, its advisors, the Bankruptcy Court and the staff of the SEC (only if required), that neither the terms of Liquidating Trust nor its operation requires the registration of the Liquidating Trust or its Liquidating Trust Interests under the Exchange Act or the Investment Company Act.

4.2    <u>Liquidating Trustee and Conflicts of Interest</u>

If the Liquidating Trustee determines, in the exercise of his reasonable discretion, that it has a material conflict of interest with respect to the settlement, resolution or prosecution of a Litigation Claim, or any other matter, the Liquidating Trustee with the written approval of the Oversight Committee may select a designee to act on behalf of the Liquidating Trust solely with respect to such matter (the "Designated Liquidating Trustee"), with such Designated Liquidating Trustee's authority to act on behalf of the Liquidating Trust to terminate upon the matter's conclusion. If the Designated Liquidating Trustee files a pleading, motion or other paper with a court or tribunal on behalf of the Liquidating Trust, it shall do so in its own name as "Designated Liquidating Trustee of the Liquidating Trust."

4.3    <u>Additional Duties of the Liquidating Trustee</u>

Without limiting the authority, power and obligations set forth in Section 4.1 hereof, subject to any limitations contained in, or as otherwise provided by this Agreement, the Plan or the Confirmation Order, the Liquidating Trustee, in its capacity as Liquidating Trustee, shall have the following duties.

4.3.1    Consultation with Oversight Committee.

4.3.1.1 <u>Meetings</u>.  The Liquidating Trustee shall convene meetings with the Oversight Committee no less frequently than once each month or as otherwise agreed upon

20

between the Liquidating Trustee and all members of the Oversight Committee for the purpose of providing the Oversight Committee with a report on the status and affairs of the Liquidating Trust. In addition, the Liquidating Trustee may seek the advice or obtain the written approval of the Oversight Committee when required by this Agreement and may seek approval from the Bankruptcy Court under the circumstances set forth in this Agreement or under such circumstances as the Liquidating Trustee may deem appropriate. However, the Liquidating Trustee shall not be deemed to have delegated its authority or responsibilities under the Liquidating Trust to the Oversight Committee by means of this Section.

4.3.1.2 <u>Manner of Acting</u>. The Liquidating Trustee or any member of the Oversight Committee may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone, or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof. The Liquidating Trustee or any member of the Oversight Committee participating in a meeting by this means is deemed to be present in person at the meeting.

4.3.2 <u>Maintenance of Cash and Proceeds of the Liquidating Trust Assets.</u> Cash received on or collected subsequent to the Effective Date and/or Cash held by the Liquidating Trustee, and all Liquidating Trust proceeds and income therefrom (pending periodic distributions in accordance with the provisions of the Plan), shall be held by the Liquidating Trustee in United States dollars or shall be invested by the Liquidating Trustee in (i) direct obligations of, or obligations guaranteed by, the United States of America, (ii) obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of Congress of the United States of America as an agency or instrumentality thereof, or (iii) such other obligations or instruments as may from time to time be permitted under Bankruptcy Code section 345 or as may have been authorized by an order of the Bankruptcy Court; provided, however, that the Liquidating Trustee may, to the extent necessary to implement the provisions of the Plan and facilitate his administration of the Liquidating Trust, deposit moneys in demand or time deposits at any banking institution or trust company having combined capital stock and surplus in excess of $40,000,000.00 based upon its most recently available audited financial statements, regardless of whether such investments and deposits are insured. Such investments shall mature in such amounts and at such times as the Liquidating Trustee shall deem appropriate to provide funds when needed to transfer funds or make distributions under the Plan.

4.3.3 <u>Disbursing Agent</u>. So long as the action taken does not adversely affect the Liquidating Trust's status as a grantor trust, the Liquidating Trustee may act as, or retain a, Disbursing Agent for the Estates, pursuant to the Plan, for purposes of administering the assets of the Estates, implementing the Plan (including making Distributions provided for in the Plan), and winding up the Estates in accordance with the Plan and applicable law.

4.3.4 <u>Maintenance of Post Effective Date Service List</u>. Pursuant to Section 11.2 hereof, the Liquidating Trustee shall maintain the Post Effective Date Service List.

4.3.5 <u>Maintenance of Books and Records</u>. The Liquidating Trustee shall store and maintain the books and records of the Liquidating Trust, subject to Section 7.2 hereof.

21

4.3.6   <u>Reports to Beneficiaries</u>.  The Liquidating Trustee shall provide such reports as described in Sections 4.8.2 and 9 hereof.

4.3.7   <u>Tax Returns</u>.

4.3.7.1 The Liquidating Trustee shall cause the timely preparation, distribution and/or filing of any necessary tax returns and other documents or filings as a grantor trust as required by applicable law (including but not limited to (x) those pursuant to Treasury Regulation 1.671-4(a); and (y) any federal, state and local tax returns), and pay any taxes shown as due thereon and which are payable by the Liquidating Trust by virtue of its existence and operations.  Subject to Section 4.3.7.2, the Liquidating Trust's taxable income, gain, loss, deduction or credit will be allocated to the Beneficiaries in accordance with their relative Liquidating Trust Interests in the Liquidating Trust.  Beneficiaries shall be responsible for the payment of any tax due on said income, gain, loss, deduction or credit.

4.3.7.2 The Liquidating Trustee may create, and timely elect to treat, a Disputed Unsecured Claim Reserve for Disputed Administrative Claims, Priority Claims, and General Unsecured Claims in Classes 6, 9, or 11 under the Plan (a "Disputed Claims Fund") as a "disputed ownership fund" pursuant to Treasury Regulations section 1.468B-9(c)(2)(ii). Consistent therewith, the Liquidating Trustee shall prepare and timely file income tax returns for the Disputed Claims Fund (which shall be separate and apart from any income tax returns prepared and filed for the Liquidating Trust) as a C corporation or a qualified settlement fund, as the case may be, and shall pay any income taxes owing by or imposed on the Disputed Claims Fund.  The Liquidating Trustee shall make such election by attaching a statement to that effect to the timely filed Federal income tax return of the Disputed Claims Fund for the first taxable year of the Disputed Claims Fund's existence and shall include the legend, in boldfaced type, "§1.468B-9(c) Election" at the top of the page.  To the extent permitted by applicable law, the Liquidating Trustee shall report consistent with the foregoing for state and local income tax purposes.  The Liquidating Trustee shall file any information returns and make any tax deposits required to be made by applicable Federal, state or local law.

4.3.7.3 In accordance with the Plan, all Beneficiaries shall report, for tax purposes, consistent with the provisions of this Section 4.3.7.

4.3.7.4 The Liquidating Trustee shall pay (x) out of the Liquidating Trust Assets, any taxes imposed on the Liquidating Trust or the Liquidating Trust Assets and (y) out of the Disputed Claims Fund, any taxes imposed on the Disputed Claims Fund.  In the event, and to the extent, any Cash retained on account of Disputed Class 3 Claims in the Disputed Claims Fund is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, such Disputed Claims, such taxes shall be (x) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (y) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidating Trustee as a result of the resolutions of such Disputed Claims.

4.3.7.5 The Liquidating Trustee shall be authorized to, and shall, exercise all powers regarding the Liquidating Trust's tax matters, including filing tax returns and

22

preparing, distributing and filing Liquidating Trust Interest holder tax statements and notices (including I.R.S. Form 1065), to the same extent as if the Liquidating Trustee were the debtor in possession.  In consultation with the Oversight Committee, the Liquidating Trustee may request an expedited determination of any unpaid tax liability of the Liquidating Trust under Section 505(b) of the Bankruptcy Code prior to termination of the Liquidating Trust, and shall represent the interest and account of the Liquidating Trust before any taxing authority in all matters, including, but not limited to, any action, suit, proceeding, or audit.

   4.3.7.6 The Liquidating Trustee shall be solely responsible for any Reserves established (including Disputed Claims in such categories), including the investment of such reserves in interest bearing accounts, the preparation of any tax returns or other tax related documents for such reserves as provided herein, in the Plan.

 4.4 <u>No Implied Obligations</u>

   No covenants or obligations shall be implied into this Agreement, the Plan or the Confirmation Order.  The Liquidating Trustee shall not be responsible in any manner whatsoever for the correctness of any recital, statement, representation, or warranty herein, or in any documents or instrument evidencing or otherwise constituting a part of the Liquidating Trust Assets.

 4.5 <u>Unknown Property and Liabilities</u>

   The Liquidating Trustee shall be responsible for only that property delivered to it, and shall have no duty to make, nor incur any liability for failing to make, any search for unknown property or for any liabilities.

 4.6 <u>Compliance with Laws</u>

   Any and all Distributions of Liquidating Trust Assets and proceeds of borrowings, if any, shall be in compliance with applicable laws.

 4.7 <u>Inquiries into Liquidating Trustee's Authority</u>

   Except as otherwise set forth in the Liquidating Trust or in the Plan, no Person dealing with the Liquidating Trust shall be obligated to inquire into the authority of the Liquidating Trustee in connection with the protection, conservation or disposition of the Liquidating Trust Assets.

 4.8 <u>Final Report and Discharge of Liquidating Trustee</u>

   4.8.1 <u>Final Report</u>.  Prior to termination of the Liquidating Trust, the Liquidating Trustee shall prepare a final report (the "Final Report"), which shall contain the following information:  (i) all Liquidating Trust Assets property including assets originally charged under the Liquidating Trustee's control; (ii) all funds transferred into and out of, the Reserves; (iii) an accounting of all purchases, sales, gains, losses, and income and expenses in connection with the Liquidating Trust Assets during the Liquidating Trustee's term of service (including any predecessor Liquidating Trustee) , (iv) a statement setting forth each

Beneficiary's share of items of income, gain, loss, deduction or credit and the Distributions to Beneficiaries; (v) the ending balance of all Liquidating Trust Assets; (vi) a narrative describing actions taken by the Liquidating Trustee in the performance of its duties which materially affect the Liquidating Trust; and (vii) schedule(s) identifying that:

        (a)    all adversary proceedings and contested matters have been finally adjudicated by the entry of a Final Order or determined by the Liquidating Trustee not to be pursued;

        (b)    all Claims for which the Plan provides for treatment as a distribution of an Liquidating Trust Interest shall have either:  (i) become Allowed Claims and the Holders thereof become Beneficiaries and received the treatment to be given such Allowed Claim pursuant to this Agreement and the Plan; or (ii) been disallowed by a Final Order or been deemed to be disallowed in accordance with the terms of the Plan;

        (c)    all Liquidating Trust Assets (including Causes of Action) have been either:  (i) reduced to Cash; or (ii) abandoned by the Liquidating Trustee, in accordance with the provisions of this Agreement and the Plan; and

        (d)    all expenses of the Liquidating Trust have been paid (or will be paid) and all payments and final Distributions to be made to Beneficiaries have been made (or will be made) by the Liquidating Trustee in accordance with the provisions of this Agreement and the Plan.

        4.8.2    <u>Approval of Final Report and Discharge of the Liquidating Trustee</u>.  The Liquidating Trustee's Final Report, and any audit, or review, thereof, prepared pursuant to the Plan and this Section 4.8.2, shall be filed with the Bankruptcy Court and served on each Person listed on the Post Effective Date Service List, along with a motion for approval of the Final Report and discharge of the Liquidating Trustee.  Upon the entry of the order of the Bankruptcy Court approving the Final Report, the Liquidating Trustee shall be discharged from all liability to the Liquidating Trust or any Person who or which has had or may then or thereafter have a claim against or the Liquidating Trust for acts or omissions in the Liquidating Trustee's capacity as the Liquidating Trustee or in any other capacity contemplated by this Trust Agreement or the Plan, unless the Bankruptcy Court orders otherwise for good cause.

        4.9    <u>Reliance by Liquidating Trustee</u>

Except as otherwise provided herein:

        (a)    the Liquidating Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed reasonable by the Liquidating Trustee to be genuine and to have been signed or presented by the proper party or parties; and

        (b)    Persons dealing with the Liquidating Trustee shall look only to the assets of the Liquidating Trust to satisfy any liability incurred by the Liquidating Trustee to such Person in carrying out the terms of this Agreement, and neither the Liquidating Trustee nor any

BA3DOCS/450883

member of the Oversight Committee shall have any personal obligation to satisfy any such liability.

4.10    Standard of Care; Exculpation

Neither the Liquidating Trustee nor any of its duly designated agents or representatives or professionals shall be liable for any act or omission taken or omitted to be taken by the Liquidating Trustee in good faith, other than acts or omissions resulting from the gross negligence, willful misconduct, or fraud of the Liquidating Trustee or its designated agents or representatives.  The Liquidating Trustee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons.  Notwithstanding such authority, the Liquidating Trustee shall be under no obligation to consult with its attorneys, accountants, financial advisors or agents, and its good faith determination to not do so shall not result in the imposition of liability on the Liquidating Trustee, unless such determination is based on recklessness, gross negligence, willful misconduct, or fraud.

# SECTION 5
# DISTRIBUTIONS

5.1    Establishment of Reserves

5.1.1    Liquidating Trust Expenses Reserve

5.1.1.1 On or as soon as practicable after the Effective Date, the Liquidating Trustee shall establish, and shall thereafter maintain, one or more reserve accounts (the "Liquidating Trust Expenses Reserve") that will fund, and from which Liquidating Trust Expenses Reserve the Liquidating Trust shall pay, (a) all voluntary and involuntary, costs, expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent, or unliquidated (collectively, the "Expenses") incurred by the Liquidating Trust or the Liquidating Trustee after the Effective Date of or related to the implementation of the Plan, including, but not limited to:  (i) the Expenses of the Liquidating Trustee, and the Disbursing Agent in connection with administering and implementing the Plan, including any taxes incurred by the Liquidating Trust or on the Liquidating Trust Assets and accrued on or after the Effective Date; (ii) all fees which accrue after the Effective Date which are payable to the U.S. Trustee under 28 U.S.C. § 1930(a)(6); (iii) the Expenses of the Liquidating Trustee in making the Distributions required by the Plan, including paying taxes, filing tax returns, and paying professionals' fees with respect to such Distributions; (iv) any Expenses incurred by the Liquidating Trust, the Liquidating Trustee, and the Oversight Committee (including the members of the Committee), but not including any attorneys' fees or other Professional Fees of such members; (v) the Expenses of independent contractors and professionals (including, without limitation, attorneys, advisors, accountants, brokers, consultants, experts, professionals and other Persons) providing services to the Liquidating Trustee, or the Oversight Committee; (vi) the Expenses related to the Liquidating Trust indemnity obligations, the purchase of errors and omissions insurance and/or other form of indemnification; and (vii) the fees and expenses of the Disbursing Agent in accordance with the retention agreement approved by the Bankruptcy Court

25

or, in the case of a Disbursing Agent appointed by the Liquidating Trustee, the compensation agreement approved by the Liquidating Trustee and (b) all reasonably foreseeable expenses of preserving, enhancing and maximizing the value of, and distributable proceeds of the Liquidating Trust Assets, including assets acquired through foreclosure, execution or otherwise as Liquidating Trust Assets; (collectively, the "Liquidating Trust Expenses"); provided, however, that funds in reserve accounts comprising the Liquidating Trust Expenses Reserve may be re-allocated and transferred to different reserve accounts, and provided that nothing herein shall prohibit payment of any Liquidating Trust Expenses from any Liquidating Trust Assets.

5.1.1.2 The Liquidating Trustee shall initially fund the Liquidating Trust Expenses Reserve from Cash transferred to the Liquidating Trust on the Effective Date, or such other date as may be agreed to by the Professionals, and shall periodically re-assess and may modify the funding level, in its reasonable discretion (and as and to the extent required by the terms of the Plan, acting in consultation with the Oversight Committee) in an amount necessary to pay in full in Cash the Liquidating Trust Expenses. The Liquidating Trust Expenses Reserve may be funded thereafter as determined by the Liquidating Trustee in its reasonable discretion (and as and to the extent required by the terms of the Plan, acting in consultation with the Oversight Committee) to be necessary with Cash and Cash proceeds from the liquidation of Liquidating Trust Assets. The Liquidating Trustee shall pay Liquidating Trust Expenses hereunder from the Liquidating Trust Expenses Reserve as soon as practicable.

### 5.1.2    Other Reserves

5.1.2.1 On or as soon as practicable after the Effective Date, the Liquidating Trustee may establish and thereafter maintain, one or more reserve accounts, to fund distributions on account of Disputed Claims pending such Disputed Claims becoming Allowed Claims by Final Order (each, an "Disputed Unsecured Claim Reserve" and together with the Liquidating Trust Expenses Reserve, the "Reserves"). No Distribution shall be made on account of any Claim that is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim. Distributions on account of any Disputed Claim that becomes an Allowed Claim shall be: (i) made in accordance with the treatment set forth in the Plan.

5.1.2.2 The Liquidating Trustee shall be responsible for objecting to all Disputed Claims.

### 5.2    Distributions to Beneficiaries; Disbursing Agent

5.2.1    The Liquidating Trustee or the Disbursing Agent (if so determined by the Liquidating Trustee, in its sole discretion) shall be responsible for making Distributions to Beneficiaries from the Liquidating Trust as required by and set forth in the Plan, the Confirmation Order and in this Agreement.

5.2.2    All Distributions made by the Liquidating Trustee to the Beneficiaries shall be payable to the Beneficiaries of record, as set forth in the Register. If the Distribution shall be in Cash, the Liquidating Trustee shall distribute such Cash by wire from a domestic bank, by check drawn on a Liquidating Trust bank account, or by such other method as the Liquidating Trustee deems appropriate under the circumstances. The Liquidating Trustee may

26

withhold from amounts distributable to any Person any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.  Distributions made by the Liquidating Trustee to the holders of the 5% Notes Claims, the 6% Notes Claims or the 14% Notes Claims shall be made to Law Debenture, Bank of New York as the 6% Notes indenture trustee, or DB, respectively.

       5.2.3   All Distributions made to the Beneficiaries under the Plan and this Agreement shall be made only from the Liquidating Trust Assets, and only to the extent that the Liquidating Trustee shall have sufficient assets to make such distributions in accordance with the terms of the Plan and this Agreement, including adequate funding of Reserves.  Each Beneficiary shall look solely to the Liquidating Trust Assets and not to the Liquidating Trustee in its personal, individual or corporate capacity for Distribution to such Beneficiary as herein provided.

       5.2.4   When, in the discretion of the Liquidating Trustee, the Liquidating Trust has Cash in an amount sufficient to render feasible a Distribution to the Beneficiaries after taking into account adequate funding of Reserves, the Liquidating Trustee shall transfer and pay, or cause to be transferred and be paid, to the Beneficiaries such aggregate amount of Cash as shall then be held in the Liquidating Trust in accordance with the Plan; provided, however, that the aggregate amount of Cash shall exclude any Cash held in the Post Effective Date Expenses Reserve or otherwise needed to pay the expenses, debts, charges, liabilities and obligations of the Liquidating Trust, and shall exclude any Cash held in the Disputed Claims Fund not attributable to Allowed Claims as of the Distribution Date (the "Distribution Amount").  The Distribution Amount shall be determined by the Liquidating Trustee in its reasonable discretion, after consultation with, and the written approval of, a majority of the Oversight Committee and, its determination regarding the Distribution Amount shall be final and conclusive on all Persons and shall not be reviewed by the Bankruptcy Court; provided, however, in the event of a dispute between the Liquidating Trustee and the Oversight Committee, the Liquidating Trustee may seek approval from the Bankruptcy Court.  In determining the Distribution Amount, the Liquidating Trustee may rely on and shall be fully protected in relying on the advice and opinion of professionals employed to advise the Liquidating Trustee.

    5.3    <u>Cash Distributions</u>

    No Cash distributions shall be required to be made to any Beneficiary in an amount less than $10.00.  Any funds so withheld and not distributed shall be held in reserve and distributed in subsequent distributions.  Notwithstanding the foregoing, all cash shall be distributed in the final distribution of the Liquidating Trust; provided, however, that no Distribution of less than $100.00 will be made to any Holder of an Allowed Claim on account thereof and no consideration will be provided in lieu of any such de minimis Distribution.

27

## SECTION 6
## OVERSIGHT COMMITTEE

6.1    Oversight Committee

      6.1.1    <u>Function and Initial Composition</u>.  The Liquidating Trustee shall be advised by, and where required by this Agreement or the Plan receive written approval from, the Oversight Committee, a committee of consisting of three (3) members, each of whom shall be a natural person holding or representing a holder of an Liquidating Trust Interest.  The initial members of the Oversight Committee shall be two members nominated by the Committee and one member nominated by Whippoorwill.

      6.1.2    <u>Term</u>.

          (a)    The Oversight Committee shall continue in effect until such time as the discharge of all liabilities of the Liquidating Trustee, final Distribution of the entire Liquidating Trust Assets, entry of the order of the Bankruptcy Court closing the Chapter 11 Case (the "Final Decree"), and the entry of the order of the Bankruptcy Court determining that the Liquidating Trustee shall have no further duties or obligations under this Agreement.  The members of the Oversight Committee shall serve so long as the Oversight Committee is in effect, or until resignation, removal or death.

          (b)    A member of the Oversight Committee may resign at any time by providing ten (10) days' written notice to the Oversight Committee.

          (c)    Oversight Committee members may be removed for cause by a majority vote of the Oversight Committee (not including the affected member) and written notice.  The Oversight Committee may determine that there is cause to remove a member if a majority of the entire Committee (not including the named member) finds there is cause.  Cause shall include, but is not limited to:

                (i)    recklessness, gross negligence or willful misconduct in connection with the performance of the duties of a Committee member;

                (ii)    fraud;

                (iii)    the member no longer holds an Liquidating Trust Interest; or

                (iv)    the presence of circumstances that makes the member incapable of representing the interests of the Beneficiaries.

Any dispute between the Oversight Committee and the removed member with respect to whether cause for removal exists shall be determined by the Bankruptcy Court.  Upon resignation or removal, the Committee member shall be discharged from his duties.

      6.1.3    <u>Replacement of Members of Oversight Committee</u>.  Upon resignation, death or removal of a member of the Oversight Committee, a replacement member who has a

28

Exhibit "B"

direct or indirect Liquidating Trust Interest shall be selected by the Oversight Committee by unanimous vote of the then remaining members of the Oversight Committee eligible to vote.  In the event that there are no remaining members of the Oversight Committee, appointments to fill such vacancies that would have been made by a majority of the remaining members of the Oversight Committee shall be made upon an order entered after an opportunity for a hearing by the Bankruptcy Court, upon motion of the Liquidating Trustee.  The appointment of a successor member of the Oversight Committee will be evidenced by the Liquidating Trustee's filing with the Bankruptcy Court of a notice of appointment, which notice will include the name, address, and telephone number of the successor member of the Oversight Committee.

Notwithstanding the foregoing, in the event that a member of the Oversight Committee originally nominated by Whippoorwill is no longer a member of the Oversight Committee due to resignation, death, removal or otherwise, Whippoorwill or its successor in interest shall be entitled to appoint a replacement member on the Oversight Committee and thereby retain appointment control over the one seat on the Oversight Committee allocated for the benefit of the holders of the 14% Notes Claims.

Immediately upon the appointment of any successor member of the Oversight Committee, all rights, powers, duties, authority, and privileges of the predecessor member of the Oversight Committee hereunder will be vested in and undertaken by the successor member of the Oversight Committee without any further act; and the successor member of the Oversight Committee will not be liable personally for any act or omission of the predecessor member of the Oversight Committee, or the Oversight Committee taken as a whole.

6.1.4    <u>Action by Oversight Committee</u>.  The Oversight Committee actions and consent of the Oversight Committee shall be taken or given by a vote of at least the majority of the members of the Oversight Committee eligible to vote on such a matter, unless otherwise specified herein.

6.1.5    <u>Recusal</u>.  Notwithstanding any other provision of this Agreement, individual members of the Oversight Committee shall recuse themselves from participating in any discussion concerning, and voting on, any proposed action by the Liquidating Trustee that involves (A) an objection to any Claim held by such member or any Insider (as defined by Bankruptcy Code § 101(31)) of such member, (B) the initiation of any litigation or prosecution of any Cause of Action against such member or any Insider of such member (or the Beneficiary which such member represents), (C) the settlement of any Cause of Action against such member or any Insider of such member, or (D) any other matter as to which such member has a conflict of interest; for purposes of this provisions, "member" shall include the Beneficiary which such member represents.

6.1.6    <u>No Liability</u>.  Nothing in this Section or in this Agreement shall be deemed to have transferred any fiduciary responsibilities of the Liquidating Trustee to any member of the Oversight Committee or the Oversight Committee as a whole.

6.1.7    <u>Reporting</u>.  The Liquidating Trustee shall provide reasonable reporting and information to the Oversight Committee, which reporting shall occur no less than quarterly.

29

6.2    Meetings

Meetings of the Oversight Committee are to be held upon due notice to all members of the Oversight Committee and with such frequency and at such place as the Liquidating Trustee and the members of the Oversight Committee may determine in their reasonable discretion.

6.3    Special Meetings

Special meetings of the Oversight Committee may be held upon due notice to all members of the Oversight Committee and whenever and wherever called for by the Liquidating Trustee or any of the members of the Oversight Committee.

6.4    Manner of Acting

6.4.1    A majority of the total number of members of the Oversight Committee then in office shall constitute a quorum for the transaction of business at any meeting of the Oversight Committee. Any or all of the members of the Oversight Committee may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof. Any member of the Oversight Committee participating in a meeting by this means is deemed to be present in person at the meeting. Voting may be conducted by electronic mail or individual communications by each member of the Oversight Committee.

6.4.2    Any member of the Oversight Committee who is present and eligible to vote at a meeting of the Oversight Committee when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Oversight Committee, unless: (i) such member of the Oversight Committee objects at the beginning of the meeting (or promptly upon his/her arrival) to holding it or transacting business at the meeting; or (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice (including by electronic or facsimile transmission) of his/her dissent or abstention to the Oversight Committee before its adjournment. The right of dissent or abstention is not available to any member of the Oversight Committee who votes in favor of the action taken.

6.4.3    Prior to the taking of a vote on any matter or issue or the taking of any action with respect to any matter or issue, each member of the Oversight Committee shall confirm and report to the Oversight Committee with respect to any such person's possible conflict of interest, any potential violation of the rules of governance adopted by the Oversight Committee, or whether such member has or may have with respect to the matter or issue at hand any potential involvement or violation including any conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such member might have with respect to or in connection with such matter or issue, other than solely as a Beneficiary). A member who is or may be disqualified from voting or further participating in the deliberations relating to any such matter (as determined by a majority vote of the Oversight Committee (without the vote of such affected person) or has or who may have a conflict of interest (as determined by a majority vote of the Oversight Committee without the vote of such

30

affected person) shall be deemed to be a "conflicted member" who shall not be entitled to participate in any discussion regarding, or be eligible to vote on any action with respect to, such matter or issue (however such member shall be counted for purposes of determining the existence of a quorum); the vote or action with respect to such matter or issue shall be undertaken only by members of the Oversight Committee who are not "conflicted members." If with respect to a particular issue there is more than one "conflicted members," then in such instance, notwithstanding anything to the contrary herein, with respect to such issues action of the Oversight Committee will require the remaining member who is not a "conflicted member."

6.5     Action Without a Meeting

Any action required or permitted to be taken by the Oversight Committee at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Oversight Committee as evidenced by one or more written consents describing the action taken, signed by all of the members of the Oversight Committee and recorded in the minutes or other transcript of proceedings of the Oversight Committee.

6.6     Compensation

6.6.1    Each member of the Oversight Committee shall be paid, by the Liquidating Trust, all reasonable and documented out-of-pocket expenses, subject to the limitations below, incurred by members of the Oversight Committee in connection with the performance of the services rendered hereunder shall be reimbursed, without duplication, by the Liquidating Trust upon demand for payment thereof.

6.6.2    Any and all reasonable and necessary costs and expenses incurred by the Oversight Committee or members of the Oversight Committee in performing their respective services under this Agreement will be reimbursed by the Liquidating Trustee from the Liquidating Trust Assets, excluding any attorneys' fees or other professional fees incurred by members of the Oversight Committee; provided, however, that if the Oversight Committee incurs attorneys' fees or other professional fees for the purpose of removing the Liquidating Trustee, the reasonable fees and expenses incurred in such regards shall be reimbursed.

6.7     Standard of Care; Exculpation

None of the Oversight Committee, its members, designees or professionals, nor any of their duly designated agents or representatives, shall be liable for the act or omission of any other member, agent or representative of the Oversight Committee, nor shall the Oversight Committee or any of its members be liable for any act or omission taken or omitted to be taken by the Oversight Committee in good faith, other than acts or omissions resulting from the Oversight Committee's own recklessness, gross negligence, willful misconduct, or fraud.  The Oversight Committee and each of its members may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in good faith in accordance with advice or opinions rendered by such Persons.  Notwithstanding such authority, neither the Oversight Committee nor any of its members shall be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and its good

31

faith determination not to do so shall not result in the imposition of liability on the Oversight Committee or, as applicable, its members or designees, unless such determination is based on recklessness, gross negligence, willful misconduct, or fraud.

## SECTION 7
## DURATION OF LIQUIDATING TRUST

7.1    Duration of Liquidating Trust

The Liquidating Trust shall terminate by entry of the Final Decree closing the Case; provided that, the Liquidating Trustee has distributed or resolved all of the property of the Liquidating Trust Assets or determined not to prosecute certain property of the Liquidating Trust Assets and performed all duties required by the Plan and the Liquidating Trust, but in any event no later than five (5) years after the Effective Date.  Notwithstanding the foregoing, either the Liquidating Trustee or the Oversight Committee may if it is in the best interests of the Beneficiaries, file a motion, upon notice and an opportunity for a hearing to the Post Effective Date Service List, with the Bankruptcy Court seeking an extension of the term of the Liquidating Trust for one or more finite periods based upon the particular facts and circumstances at that time (each, an "Extension Period"), provided that each Extension Period is requested by the Liquidating Trustee or the Oversight Committee before expiration of the Liquidating Trust term (as it may then have been extended); provided, however, that a Bankruptcy Court order approving such Extension Period shall be entered within six months of the beginning of such Extension Period.  The Bankruptcy Court may approve multiple Extension Periods.

7.2    Continuance of Debtors Trust for Winding Up

After the termination of the Liquidating Trust and for the purpose of liquidating and winding up the affairs of the Liquidating Trust, the Liquidating Trustee shall continue to act as such until he has fully executed its duties pursuant to the Plan and this Agreement (including, without limitation, its duties as the Estates Litigation Representative).  Prior to the final distribution of all of the remaining assets of the Liquidating Trust and upon approval of the Oversight Committee, the Liquidating Trustee shall be entitled to reserve from such assets any and all amounts required to provide for its own costs and expenses, in accordance with Section 3.6 herein, until such time as the winding up of the Liquidating Trust is completed.  Upon distribution of the entire Liquidating Trust Assets and the entry of the Final Decree and unless ordered otherwise by the Bankruptcy Court as part of the Final Decree, the Liquidating Trustee shall retain for a period of six (6) months the books, records, Register, and certificates and other documents and files which shall have been delivered to or created by the Liquidating Trustee. Subject to the Final Decree, at the Liquidating Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after six (6) months from the completion and winding up of the affairs of the Liquidating Trust.  Upon the discharge of all liabilities of the Liquidating Trustee, final Distribution of the entire Liquidating Trust Assets and entry of the Final Decree, the Liquidating Trustee and the members of the Oversight Committee shall have no further duties or obligations hereunder.

BA3DOCS/450883

Exhibit "B"

## SECTION 8
## INDEMNIFICATION; LIMITATIONS ON LIABILITY

8.1     Action upon Instructions

If in performing the Liquidating Trustee's duties under this Agreement, the Liquidating Trustee is required to decide between alternative courses of action, or the Liquidating Trustee is unsure of the application of any provision of this Agreement or the Plan, then the Liquidating Trustee shall be under no duty to take or refrain from taking such action as is consistent with this Agreement as the Liquidating Trustee shall deem advisable.  The Liquidating Trustee and the Oversight Committee members may consult with legal counsel and shall be fully protected in respect of any action taken or suffered in accordance with the advice of legal counsel.  The Liquidating Trustee may at any time apply to the Bankruptcy Court for a determination as to the course of action to be taken by the Liquidating Trustee, or at any time seek instructions from the Bankruptcy Court concerning the acquisition, management or disposition of the Liquidating Trust Assets.

8.2     Indemnification

8.2.1    Indemnification of Indemnified Persons.  To the fullest extent permitted by law, the Liquidating Trust, to the extent of its Liquidating Trust Assets, but not any Beneficiary, shall indemnify, defend and hold harmless any Person who was, or is, a party, or is threatened to be made a party, to any pending or contemplated action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such Person is or was: (i) the Liquidating Trustee; (ii) an employee of the Liquidating Trust; (iii) the Oversight Committee; (iv) a member of the Oversight Committee; or (v) an employee, contractor, agent, attorney, accountant or other professional for any Person described in the preceding clauses (i) through (iv) (collectively, an "Indemnified Person"), from and against any and all losses, costs, damages, expenses (including fees and expenses of attorneys and other advisors and any court costs incurred by an Indemnified Person), judgments, fines and amounts paid in settlement actually and reasonably incurred by such Person in connection with such action, suit or proceeding, or the defense or settlement of any claim, issue or matter therein, to the fullest extent, except to the extent such liability is finally adjudicated to be the result of such Person's recklessness, gross negligence, willful misconduct, or fraud, and provided that the indemnified parties acted in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the Beneficiaries, and with respect to any criminal action or proceeding, had no reasonable cause to believe its conduct was unlawful, provided, that nothing in this Agreement shall preclude actions by the Liquidating Trustee or the Oversight Committee against any professionals engaged by it as Liquidating Trustee for professional malpractice.  Costs or expenses incurred by any such Person in defending any such action, suit or proceeding may be paid by the Liquidating Trust in advance of the institution or final disposition of such action, suit or proceeding, if authorized by the Liquidating Trustee after consultation with the Oversight Committee.  Any action taken or omitted to be taken with the express approval of the Bankruptcy Court or the Oversight Committee will presumptively be deemed not to constitute recklessness, gross negligence, willful misconduct, or fraud.  Notwithstanding anything to the contrary herein, no Person shall be indemnified by the Liquidating Trust under this Section for any costs, expenses (including attorneys' fees), judgments, fines and amounts paid in settlement

33

arising from or relating to any claim, demand, or cause of action arising, or liability by reason of any act or omission by the Indemnified Person occurring prior to the existence of the Liquidating Trust.

8.2.2    Waiver.  Any Indemnified Person may waive the benefits of indemnification under this Section 8.2, but only by an instrument in writing executed by such Indemnified Person.

8.2.3    Non-Exclusive Rights.  The rights to indemnification under this Section 8.2 are not exclusive of other rights which any Indemnified Person may otherwise have at law or in equity, including without limitation common law rights to indemnification or contribution.  Nothing in this Section 8.2 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under this Agreement, or any other agreement or instrument to which that Person is a party.

8.2.4    Advice of Counsel.  The fact that an act or omission of an Indemnified Person was based upon advice of counsel shall be evidence of good faith and reasonable judgment.  Each Indemnified Person may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties, and any order of the Bankruptcy Court.

8.2.5    Status of Indemnification Claims.  Any Persons entitled to indemnification under the Plan shall have a priority distribution right on the corpus of the Liquidating Trust ranking pari passu with other Persons entitled to indemnification hereunder or under the Plan, provided, however, that such right to payment shall be (i) in all respects Liquidating Trust Expenses, and (ii) subordinate to any right of payment of any Distributions to Beneficiaries of the Liquidating Trust who hold Allowed Secured Claims.

8.2.6    Insurance.  The Liquidating Trustee may use Liquidating Trust Assets to purchase indemnification insurance to satisfy any potential indemnification claims that may arise under this Agreement or the Plan, for the benefit of the Liquidating Trust, the Liquidating Trustee, the Oversight Committee (and its members), and any agents, representatives, attorneys, accountants, advisors or other professionals employed by any of them.

8.3    Limited Recourse

No recourse shall ever be had, directly or indirectly, against the Liquidating Trustee personally, or any member of the Oversight Committee, or against any employee, contractor, agent, attorney, accountant or other professional retained in accordance with the terms of this Agreement or the Plan by either the Liquidating Trustee or the Oversight Committee, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidating Trustee or the Oversight Committee in implementation of this Agreement or the Plan, or by reason of the creation of any indebtedness by the Liquidating Trustee under the Plan for any purpose authorized by this Agreement or the Plan, it being expressly understood and agreed that all such liabilities, covenants, and agreements of the Liquidating Trust or the

34

Oversight Committee, whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Liquidating Trust Assets or such part thereof as shall under the term of any such agreement be liable therefor or shall be evidence only of a right of payment out of the Liquidating Trust Assets.  Notwithstanding the foregoing and except as set forth elsewhere herein, the Liquidating Trustee may be held liable for its gross recklessness, gross negligence, willful misconduct, or fraud; and if liability on such grounds is established, recourse may be had against (a) the Liquidating Trustee's bond or applicable insurance coverage (if any), and, (b) to the extent not covered by such bond, subject to Section 8.4, directly against the Liquidating Trustee.

8.4     No Liability for Acts of Predecessor

No successor Liquidating Trustee shall be in any way responsible or liable for the acts or omissions of any predecessor Liquidating Trustee in office prior to the date on which such Person becomes the Liquidating Trustee, nor shall such successor Liquidating Trustee be obligated to inquire into the validity or propriety of any such act or omission unless such successor Liquidating Trustee expressly assumes such responsibility.  Any successor Liquidating Trustee shall be entitled to accept as conclusive any final accounting and statement of Liquidating Trust Assets furnished to such successor Liquidating Trustee by the predecessor Liquidating Trustee and shall further be responsible only for those Liquidating Trust Assets properly includable in such statement.

8.5     Express Exculpatory Clauses in Instruments

As far as practicable, the Liquidating Trustee shall cause any written instrument creating an obligation of the Liquidating Trust to include a reference to this Agreement and to provide that none of the Beneficiaries or the Liquidating Trustee or the Oversight Committee or any of its members shall be liable thereunder and that the other parties to such instrument shall look solely to the Liquidating Trust Assets for the payment of any claim thereunder or the performance thereof; provided, however, that the omission of such provision from any such instrument shall not render any Beneficiary, the Liquidating Trustee, the Oversight Committee or any of its members, liable nor shall the Beneficiaries, Liquidating Trustee, or Oversight Committee or any of its members be liable to anyone for such omission.

8.6     Limited Liability of the Estates Litigation Representative

For the avoidance of doubt, the provisions of Sections 8 hereof, to the extent applicable, shall include the Liquidating Trustee acting in its capacity as Estates Litigation Representative and, if it so elects, as Disbursing Agent.

**SECTION 9**
**REPORTS TO BENEFICIARIES OTHER**
**THAN FINAL REPORT**

9.1     Securities Laws and Investment Company Act

Were the Liquidating Trust Interests to be deemed by Final Order of the Bankruptcy Court (or any other judicial or quasi-judicial authority with applicable jurisdiction) to be

35

securities as defined in applicable federal and state securities laws, then under Section 1145 of the Bankruptcy Code, the issuance of the Liquidating Trust Interests pursuant to the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and applicable state and local laws requiring registration of securities. The Liquidating Trust is organized as a liquidating Person in the process of liquidation, and therefore should not be considered, and the Liquidating Trust does not and will not hold itself out as, an "investment company" or a Person "controlled" by an "investment company" as such terms are defined in the Investment Company Act. Notwithstanding the foregoing, if the Bankruptcy Court enters an order determining that the Liquidating Trust is required to comply with the registration and reporting requirements of the Exchange Act or the Investment Company Act, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file periodic reports with the SEC and under such circumstances, and solely and exclusively for purposes of Section 1145 of the Bankruptcy Code, the Liquidating Trust shall be successor-in-interest to Debtors.

9.2    Reports


The Liquidating Trustee shall prepare a quarterly written report which (x) may include financial statements of the Liquidating Trust for such period, and, at the end of each calendar year, a financial statement for such calendar year or portion thereof in which the Liquidating Trust operated (which may be prepared by an independent certified public accountant employed by the Liquidating Trustee) and (y) shall include (i) a summary of all material transactions and the amounts thereof consummated or effected during the period covered by such report, as well as a summary of the settlements or other resolutions regarding Disputed Claims consummated or effected during the period covered by such report only to the extent that the face amount of such Disputed Claim is in excess of $125,000 and (ii) a summary description of the progress of converting the Liquidating Trust Assets to Cash and making Distributions to Beneficiaries and any other material information relating to the Liquidating Trust Assets and the administration of the Liquidating Trust. Such reports shall be served on each member of the Oversight Committee, the U.S. Trustee and any Person listed on the Post Effective Date Service List. Any Beneficiary may receive a copy of any such report by making a written request to the Liquidating Trustee.

9.3    Other Reports

The Liquidating Trustee shall prepare all such other reports and financial statements as may be required by law and concurrent with filing or delivery of the same as may be required by law shall serve a copy on each member of the Oversight Committee, the U.S. Trustee and any Person listed on the Post Effective Date Service List. Any Beneficiary may receive a copy of any such report by making a written request to the Liquidating Trustee.

9.4    Calculations; Source of Distributions

The Liquidating Trustee shall maintain detailed records of (i) the calculations performed by the Liquidating Trustee or its professionals in respect of any Distributions and disbursements made pursuant to the Plan and this Agreement; and (ii) the accounts from which any such Distributions or disbursements were made.

36

9.5     Tax Reporting

Within a reasonable period of time after the end of each calendar year (but in any event no later than is required by law), the Liquidating Trustee shall, to the extent practicable, submit to each Beneficiary appearing in its records during such year a separate statement setting forth the information necessary for such Beneficiary to determine its share of items of income, gain, loss, deduction, or credit and will instruct each Beneficiary to report such items on its federal income tax returns (and state and local tax returns, as applicable).  The Liquidating Trustee shall only be required to make a reasonable effort to obtain the tax information of any Beneficiary.

## SECTION 10
## AMENDMENT AND WAIVER

The Liquidating Trustee, with the prior approval of all of the members of the Oversight Committee, may amend, supplement, delete or waive any provision of, this Agreement, without notice to or the consent of any Beneficiary or the approval of the Bankruptcy Court:  (i) to cure any ambiguity, omission, defect or inconsistency in this Agreement provided that such amendments, supplements or waivers shall not adversely affect the Distributions to be made under this Agreement to any of the Beneficiaries, or adversely affect the U.S.  federal income tax status of the Litigation Trust as a "liquidating trust;" (ii) to comply with any requirements in connection with the U.S. Federal income tax status of the Liquidating Trust as a "liquidating trust;" (iii) to comply with any requirements in connection with maintaining that the Liquidating Trust is not subject to registration or reporting requirements of the Exchange Act, or the Investment Company Act; (iv) to make the Liquidating Trust a reporting Person and, in such event, to comply with any requirements in connection with satisfying the registration or reporting requirements of the Exchange Act or the Investment Company Act; (v) to correct provisions which may cause the staff of the SEC, counsel to the Liquidating Trustee or counsel to the Oversight Committee otherwise to conclude that without such deletions, modifications or supplements the Liquidating Trust may be subject to the registration or reporting provisions of the Exchange Act or the Investment Company Act; and (vi) to evidence and provide for the acceptance of appointment hereunder by a successor trustee in accordance with the terms of this Agreement and the Plan.  Only if ordered by the Bankruptcy Court to register under the Exchange Act or the Investment Company Act, then the Liquidating Trustee, with the prior approval of the majority of the members of the Oversight Committee, shall make such amendments, deletions and supplements of provisions of this Agreement as are necessary or desirable under the circumstances, including amendments to provide for the certification of Liquidating Trust Interests and the mechanics relating thereto.

Any substantive provision of this Agreement may be amended or waived by the Liquidating Trustee, subject to the prior approval of a majority of the members of the Oversight Committee, with the approval of the Bankruptcy Court upon notice and an opportunity for a hearing; provided, however, that no change may be made to this Agreement that would adversely affect the Distributions to be made under this Agreement to any of the Beneficiaries, or adversely affect the U.S. Federal income tax status of the Litigation Trust as a "liquidating trust."

Notwithstanding this Section 10, any amendments to this Agreement shall not be inconsistent with the purpose and intention of the Liquidating Trust to liquidate in an expeditious

BA3DOCS/450883

Exhibit "B"

but orderly manner the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d).

## SECTION 11
## MISCELLANEOUS PROVISIONS

11.1    Notices

All notices, requests, elections, demands or other communications in connection with this Agreement or the Plan, including, without limitation, any change of address of any Holder of an Allowed Claim for the purposes of receiving any Distributions under this Agreement or the Plan, shall be served upon the following Persons:

(a)    Liquidating Trustee

SltnTrst LLC
Attn: Peter Kravitz
9952 S. Santa Monica Blvd.
2nd Floor
Beverly Hills, CA 90212

WITH A COPY TO:

(b)    Oversight Committee

11.1.1  Any notice, report, document, statement, pleading or other writing to be provided under this, or pursuant to this, Agreement shall be in writing and shall be delivered personally, by overnight delivery service, or mailed by stamped first class certified mail, return receipt requested.  Any Person may change the address to which notices shall be sent by notice given in accordance with this Section.  Such notice shall be deemed to have been given the next Business Day after receipt or, if mailed by first class certified mail, return receipt requested, seven (7) days after receipt.

11.2    Post Effective Date Service List

A Beneficiary requesting notice under this Agreement where this Agreement provides such notice to a Beneficiary who makes a request therefore, shall make such request in accordance with Section 11.1.  A list setting forth the name, address, e-mail address, if any, and telephone number of each such requesting Beneficiary shall be maintained by the Liquidating Trustee and shall be provided upon request (the "Post Effective Date Service List").  The Persons listed in Section 11.1, the Committee and DB and their respective counsel shall be automatically placed on the Post Effective Date Service List without any further action or direction.

38

11.3   Effectiveness

This Agreement shall become effective upon the Effective Date.

11.4   Counterparts

This Agreement may be executed in one or more counterparts, all of which shall be taken together to constitute one and the same instrument.

11.5   Governing Law

Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, this Agreement shall be governed by, construed under and interpreted in accordance with, the laws of the State of California, without giving effect to conflict-of-law principles.

11.6   Severability of Provisions

If any provision of this Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

11.7   Entire Agreement

This Agreement (including the Recitals), the Plan, and the Confirmation Order constitute the entire agreement by and among the parties and there are no representations, warranties, covenants or obligations except as set forth herein or therein.  This Agreement, the Plan and the Confirmation Order supersede all prior agreements, understandings, negotiations, discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.  Except as otherwise specifically provided herein, in the Plan or in the Confirmation Order, nothing in this Agreement is intended or shall be construed to confer upon or to give any Person other than the parties hereto and their respective heirs, administrators, executors, successors, or assigns any right to remedies under or by reason of this Agreement.

11.8   Effect of Death, Incapacity or Bankruptcy of Beneficiary

The death, incapacity or bankruptcy of a Beneficiary during the term of this Agreement shall not operate to terminate the Agreement, nor shall it entitle the representatives or creditors of the deceased Beneficiary to an accounting, or to take any action in the courts or elsewhere for the distribution of the Liquidating Trust Assets or for a partition thereof, nor shall it otherwise affect the rights and obligations of any Beneficiary.

11.9   Effect of Liquidating Trust on Third Parties

There is no obligation on the part of any purchaser or purchasers from the Liquidating Trustee or any agent of the Liquidating Trustee, or on the part of any other Entities dealing with

the Liquidating Trustee or any agent of the Liquidating Trustee, to see to the application of the purchase money or other consideration passing to the Liquidating Trustee or any agent of the Liquidating Trustee.

11.10   Waiver

No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver by such party of any right or remedy pursuant thereto.  Resort to one form of remedy shall not constitute a waiver of alternative remedies.

11.11   Tax Identification Numbers

The Liquidating Trustee may require any Beneficiary to furnish to the Liquidating Trustee (a) its employer or taxpayer identification number as assigned by the IRS, and (b) such other records or documents necessary to satisfy the Liquidating Trustee's tax reporting obligations (including, but not limited to, certificates of non-foreign status).  The Liquidating Trustee may condition the payment of any Distribution to any Beneficiary upon receipt of such identification number and requested documents.  If the Liquidating Trustee, after contacting the Beneficiary on two separate occasions, does not receive the requested employer or taxpayer identification number requested within the time requested (which time period shall be thirty days or such longer time period as the Liquidating Trust may select in its sole discretion), the Beneficiary shall be deemed to have forfeited its interest in the Distribution and such amount shall become the property of the Liquidating Trust free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary and shall be distributed in accordance with the terms of the Plan as Net Distributable Proceeds and this Liquidating Trust Agreement.

11.12   Headings

The Section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

11.13   Reimbursement of Costs

If the Liquidating Trustee, the Oversight Committee, or the Liquidating Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this Agreement or the enforcement thereof, the Liquidating Trustee, the Oversight Committee or the Liquidating Trust, as the case may be, shall be entitled to collect any and all costs, reasonable and documented out-of-pocket expenses and fees, including attorneys' fees, from the non-prevailing party incurred in connection with such dispute or enforcement action.  To the extent that the Liquidating Trust has advanced such amounts, the Liquidating Trust may recover such amounts from the non-prevailing party.

BA3DOCS/450883

Exhibit "B"

11.14   Jurisdiction

Without limiting any Person or Person's right to appeal any order of the Bankruptcy Court or to seek withdrawal of the reference with regard to any matter, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all actions related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties, including the Beneficiaries, and holders of Claims, hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court.

11.15   Fiscal Year

The first fiscal year of the Liquidating Trust will begin on the Effective Date and end on the last day of December of each year.  All subsequent fiscal years of the Liquidating Trust will begin on the first day of January and end of the last day of December of each such year.

11.16   Confidentiality

The Liquidating Trustee and each successor Liquidating Trustee and each member of the Oversight Committee and each successor member of the Oversight Committee (each a "Covered Person") shall, during the period that each such person, respectively, serve in such capacity under this Agreement and following either the termination of this Agreement or such individual's removal, incapacity, or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of, or pertaining to, any Person to which any of the assets of the Liquidating Trust relates or of which it has become aware in its capacity as a Covered Person (the "Confidential Information"), except to the extent disclosure is required by applicable law, order, regulation or legal process.  In the event that any Covered Person is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigation, demand or similar legal process) to disclose any Confidential Information, such Covered Person shall notify the Oversight Committee and the Liquidating Trustee promptly (unless prohibited by law) so that the Oversight Committee or the Liquidating Trustee may seek an appropriate protective order or other appropriate remedy or, in the discretion of the Oversight Committee or the Liquidating Trustee, waive compliance with the terms of this Section (and if the Oversight Committee or the Liquidating Trustee seeks such an order, the relevant Covered Person will provide cooperation as the Oversight Committee or the Liquidating Trustee, as the case may be, shall reasonably request).  In the event that no such protective order or other remedy is obtained, or that the Oversight Committee and the Liquidating Trustee waives compliance with the terms of this Section and that any Covered Person is nonetheless legally compelled to disclose the Confidential Information, the Covered Person will furnish only that portion of the Confidential Information, which the Covered Person, advised by counsel, is legally required and will give the Oversight Committee written notice (unless prohibited by law) of the Confidential Information to be disclosed as far in advance as practicable and exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Confidential Information.

41

11.17    Joint Litigation Privilege

All communications, whether in writing or oral, among, and all documents exchanged among, the Liquidating Trustee, and its agents and representatives, on the one hand, and the Oversight Committee, and its agents and representative, on the other hand, shall be for all purposes deemed to be, and treated as, privileged communications, not subject to discovery, disclosure, or process seeking the same, based upon their common interests, joint litigation privileges, and joint attorney-work product protections, of the Liquidating Trustee and the Oversight Committee with respect to all matters pertaining to the Plan and this Agreement, except for matters pertaining to the compensation of the Liquidating Trustee.

11.18    Rules of Construction

Except as otherwise expressly provided in this Agreement or unless the context otherwise clearly requires:

(a)    References to designated Sections and other subdivisions of this Agreement, such as "Section ___," refer to the designated Section or other subdivision of this Agreement as a whole and to all subdivisions of the designated Section or other subdivision. The words "herein," "hereof," "hereto," "hereunder" and other words and phrases of similar import refer to this Agreement as a whole and not to any particular Section or other subdivision of this Agreement.

(b)    Any term that relates to a document or a statute, rule, or regulation includes any amendments, modifications, supplements, replacements or any other changes that may have occurred since the document, statute, rule, or regulation came into being, including changes that occur after the date of this Agreement to the extent they apply to this Agreement by their terms.

(c)    Any party may perform any of the requirements under this Agreement either directly or through others, and the right to cause something to be done rather than doing it directly shall be implicit in every requirement under this Agreement. Unless a provision is restricted as to time or limited as to frequency, all provisions under this Agreement are implicitly available from time to time.

(d)    The term "including" and all its variations mean "including, but not limited to."

(e)    All accounting terms used in an accounting context and not otherwise defined shall be construed in accordance with generally accepted accounting principles.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective duly authorized agents as of the day and year first written above.

42

FLEETWOOD ENTERPRISES, INC. on behalf of
itself and its affiliates set forth on Exhibit A hereto,


By:_____

Name:_____

Title:_____



SLTNTRST LLC, Liquidating Trustee



By: _____

Name:   Peter Kravitz

Title:    Managing Principal


100706491_1.DOC

43

# EXHIBIT "A"

## LIST OF AFFILIATED DEBTORS

BA3DOCS/450883

# LIST OF AFFILIATED DEBTORS.

1.    Fleetwood Holdings, Inc.;
2.    Fleetwood Retail Corp.;
3.    Fleetwood Homes Investment, Inc.;
4.    Fleetwood General Partner of Texas, Inc.;
5.    Fleetwood Homes of Texas, L.P.;
6.    Fleetwood Homes of Louisiana, Inc.;*
7.    Fleetwood Homes of Pennsylvania, Inc.;
8.    Fleetwood Homes of Arizona, Inc.;
9.    Fleetwood Homes of Tennessee, Inc.;
10.   Fleetwood Homes of California, Inc.;
11.   Fleetwood Homes of Virginia, Inc.;
12.   Fleetwood Homes of Florida, Inc.;
13.   Fleetwood Homes of Washington, Inc.;
14.   Fleetwood Homes of Georgia, Inc.;
15.   Fleetwood Motor Homes of California, Inc.;
16.   Fleetwood Homes of Idaho, Inc.;
17.   Fleetwood Motor Homes of Indiana, Inc.;
18.   Fleetwood Homes of Indiana, Inc.;
19.   Fleetwood Motor Homes of Pennsylvania, Inc.;
20.   Fleetwood Homes of Kentucky, Inc.;
21.   Fleetwood Travel Trailers of California, Inc.;
22.   Fleetwood Homes of North Carolina, Inc.;
23.   Fleetwood Travel Trailers of Indiana, Inc.;
24.   Fleetwood Homes of Oregon, Inc.;
25.   Fleetwood Travel Trailers of Kentucky, Inc.;
26.   Fleetwood Travel Trailers of Maryland, Inc.;
27.   Fleetwood Travel Trailers of Ohio, Inc.;
28.   Fleetwood Travel Trailers of Oregon, Inc.;
29.   Fleetwood Travel Trailers of Texas, Inc.;
30.   Gold Shield, Inc.;
31.   Gold Shield of Indiana, Inc.;
32.   Hauser Lake Lumber Operations, Inc.;
33.   Fleetwood Home Centers of Nevada, Inc.;
34.   Fleetwood Home Centers of Texas, Inc.;
35.   Fleetwood Retail Corp. of Arizona;
36.   Fleetwood Retail Corp. of Arkansas;
37.   Fleetwood Retail Corp. of California;
38.   Fleetwood Retail Corp. of Florida;
39.   Fleetwood Retail Corp. of Georgia;
40.   Fleetwood Retail Corp. of Illinois;
41.   Fleetwood Retail Corp. of South Carolina;

*In June of 2009, the Bankruptcy Court approved the sale of substantially all of the tangible and intangible assets of
Fleetwood's affiliate Trendsetter Homes, Inc. ("Trendsetter Homes"), to CMH Manufacturing, Inc ("Buyer").
Trendsetter Homes is also a chapter 11 debtor in the Fleetwood bankruptcy proceedings.  As part of the terms of sale
approved by the Bankruptcy Court, after closing the sale of its assets, Trendsetter Homes changed its name to
Fleetwood Homes of Louisiana, Inc., which remains a chapter 11 debtor in the consolidated Fleetwood bankruptcy
cases.

45

BA3DOCS/450883

Exhibit "B"

42.	Fleetwood Retail Corp. of North Carolina;
43.	Fleetwood Retail Corp. of Tennessee;
44.	Fleetwood Retail Corp. of Virginia;
45.	Fleetwood Retail Corp. of West Virginia;
46.	Fleetwood Capital Trust;
47.	Fleetwood International Inc;
48.	Fleetwood Homes of Mississippi, Inc.;  and
49.	Continental Lumber Products, Inc.

46

# EXHIBIT "C"

**Exhibit C**

**List of Executory Contracts to Be Assumed**

Exhibit "C"

# Fleetwood Enterprises, Inc. et al.

## Contracts to be Assumed

**Real Property Leases**

| Contract Type | Property Address | Name | Name and Address<br>Landlord | Expiration | Prepayment | Notes | Original<br>Rent |
|---|---|---|---|---|---|---|---|
| SALE LEASEBACK PROPERTIES | 3555 E. Corp. Dr., Tucson, AZ | | F & R Fleetwood LLC | 2022 | $1,730,000 | | $8,678 |

**Corp. Ex. Cont.**

| Contract Type | Name | Name and Address | Contract Term | Cure | Notes |
|---|---|---|---|---|---|
| File Storage | Iron Mountain | Iron Mountain<br>Justin Lee<br>13579 Jurupa Ave.<br>Fontana, CA 92335 | 30 day renewal | Current | |
| Healthcare Administration | Aetna | Aetna<br>Cathy Blazei<br>6303 Owensmouth Avenue<br>Woodland Hills, CA 91367 | 31-day renewal | Current | |

**Insurance Contracts ***

| Account Number<br>or Policy Number | Name | Name and Address | Year | Cure | Notes |
|---|---|---|---|---|---|
| PHFD37228576 | ACE Seguros S.A. | ACE Seguros S.A.<br>Edificio Arcos Oriente<br>Bosques de Alisos No.47-A 1er piso<br>Bosques de las Lomas<br>Mexico D.F., C.P. 05120<br>Mexico | 1-Nov-08 | Pre-paid | Mexico Insurance Provider |
| | AIG | AIG<br>P.O. Box 923<br>Wall Street Station<br>New York, NY 10268 | | Pre-paid | WC LC |
| 5441037 | AIG Cat Excess Liability | AIG Cat Excess Liability<br>29 Richmond Road<br>Pembroke , HM08<br>Bermuda | 1-Nov-07 | Pre-paid | Excess Punitive Damages Layer 1 |
| 5441038 | AIG Cat Excess Liability | AIG Cat Excess Liability<br>29 Richmond Road<br>Pembroke , HM08<br>Bermuda | 1-Nov-07 | Pre-paid | Excess Punitive Damages Layer 2 |
| 949-6491 | AIG Excess Liability Insurance Company Ltd. | AIG Excess Liability Insurance Company Ltd.<br>70 Pine Street<br>New York, NY 10270 | 1-Nov-07 | Pre-paid | Excess Liability Layer 2 |
| 326-8379 | AIG Excess Liability Insurance Company Ltd. | AIG Excess Liability Insurance Company Ltd.<br>70 Pine Street<br>New York, NY 10270 | 19-Jan-09 | Pre-paid | D&O Excess 4 |
| 1657327 | AIG Excess Liability Insurance Company Ltd. | AIG Excess Liability Insurance Company Ltd.<br>70 Pine Street<br>New York, NY 10270 | 1-Nov-08 | Pre-paid | Excess Liability 2 |
| 5247089 | AIG Excess Liability Insurance International Limited | AIG Excess Liability Insurance International Limited<br>29 Richmond Road<br>Pembroke , HM08<br>Bermuda | 1-Nov-08 | Pre-paid | Punitive Attachment 1 |
| 5242022 | AIG Excess Liability Insurance International Limited | AIG Excess Liability Insurance International Limited<br>29 Richmond Road<br>Pembroke , HM08<br>Bermuda | 1-Nov-08 | Pre-paid | Punitive Attachment 2 |

Exhibit "C"



# Fleetwood Enterprises, Inc. et al.

## Insurance Contracts *

| Account Number or Policy Number | Name | Name and Address | Year | Cure | Notes |
|---|---|---|---|---|---|
| 5242023 | AIG Excess Liability Insurance International Limited | AIG Excess Liability Insurance International Limited 29 Richmond Road Pembroke , HM08 Bermuda | 1-Nov-08 | Pre-paid | Punitive Attachment 3 |
| C008793/003 | Allied World Assurance Company | Allied World Assurance Company 225 Franklin Street Boston, MA 02110 | 19-Jan-09 | Pre-paid | D&O Excess 2 |
| C008793/002 | Allied World Assurance Company | Allied World Assurance Company 225 Franklin Street Boston, MA 02110 | 19-Jan-08 | Pre-paid | D&O Excess 2 |
| AW5820395 | Allied World Assurance Company | Allied World Assurance Company 225 Franklin Street Boston, MA 02110 | 19-Jan-07 | Pre-paid | D&O Excess 2 |
| NU 6148657 | Allied World Assurance Company | Allied World Assurance Company 225 Franklin Street Boston, MA 02110 | 19-Jan-06 | Pre-paid | D&O Excess 2 |
| EG6691483 | American Home Assurance Company | American Home Assurance Company 145 Wellington Street W. Toronto , Ontario M5J 1H8 Canada | 1-Nov-06 | Pre-paid | Canadian General Liability |
| CA1661041 | American Home Assurance Company | American Home Assurance Company 145 Wellington Street W. Toronto , Ontario M5J 1H8 Canada | 1-Nov-06 | Pre-paid | Canadian Auto Liability & Physical Damage |
| WC6611365 | American Home Assurance Company | American Home Assurance Company 70 Pine Street New York, NY 10270 | 1-Apr-06 | Pre-paid | Workers' Compensation for Wisconsin |
| 8123455 | American International Specialty Lines Insurance Company | American International Specialty Lines Insurance Company 70 Pine Street New York, NY 10270 | 1-Nov-08 | Pre-paid | Excess Liability 1 |
| 8122147 | American International Specialty Lines Insurance Company | American International Specialty Lines Insurance Company 70 Pine Street New York, NY 10270 | 1-Nov-07 | Pre-paid | Excess Liability 1 |
| 7412222 | American International Specialty Lines Insurance Company | American International Specialty Lines Insurance Company 70 Pine Street New York, NY 10270 | 1-Nov-06 | Pre-paid | Excess Liability 1 |
| 1539071 | American International Specialty Lines Insurance Company | American International Specialty Lines Insurance Company 70 Pine Street New York, NY 10270 | 1-Nov-06 | Pre-paid | Buffer Umbrella Policy |
| PLS 1164249 | American International Specialty Lines Insurance Company | American International Specialty Lines Insurance Company 70 Pine Street New York, NY 10270 | 1-Nov-06 | Pre-paid | Pollution Legal Liability |
| EG3113207 | American International Specialty Lines Insurance Company | American International Specialty Lines Insurance Company 70 Pine Street New York, NY 10270 | 1-Nov-07 | Pre-paid | General Liability |
| 583-39-78 | American International Specialty Lines Insurance Company | American International Specialty Lines Insurance Company 175 Water Street New York, NY 10038 | 1-Jul-08 | Pre-paid | Corporate Counsel |
| 263-97-20 | American International Specialty Lines Insurance Company | American International Specialty Lines Insurance Company 175 Water Street New York, NY 10038 | 1-Jul-07 | Pre-paid | Corporate Counsel |
| 6256745 | American International Specialty Lines Insurance Company | American International Specialty Lines Insurance Company 175 Water Street New York, NY 10038 | 19-Jan-06 | Pre-paid | Corporate Counsel |
| PLC1164349 | American International Specialty Lines Insurance Company | American International Specialty Lines Insurance Company 70 Pine Street New York, NY 10270 | 1-Nov-07 | Pre-paid | Pollution Legal Liability |
| 4926412 | American International Specialty Lines Insurance Company | American International Specialty Lines Insurance Company 70 Pine Street New York, NY 10270 | | Pre-paid | Real Estate Agents E&O Run-Off |
| | AON | AON Claudette Khnech 1901 Main Street, Suite 300 Irvine, CA 92614 | 1-Jan-09 | Pre-paid | Financial Services Products Broker |

Exhibit "C"

# Fleetwood Enterprises, Inc. et al.

**Insurance Contracts \***

Case 6:09-bk-14254-MJ   Doc 2433   Filed 08/05/10   Entered 08/05/10 13:38:36   Desc
Main Document   Page 182 of 253

| Account Number or Policy Number | Name | Name and Address | Year | Cure | Notes |
|---|---|---|---|---|---|
| DOX00120007-00 | Arch Insurance Group | Arch Insurance Group<br>One Liberty Plaza, 53rd Floor<br>New York, NY 10006 | 19-Jan-06 | Pre-paid | D&O Excess 3 |
| DOX00120007-01 | Arch Insurance Group | Arch Insurance Group<br>One Liberty Plaza, 53rd Floor<br>New York, NY 10006 | 19-Jan-07 | Pre-paid | D&O Excess 3 |
| V15GR109IPNDM | Beazley Insurance Company, Inc. | Beazley Insurance Company, Inc.<br>30 Batterson Park Road<br>Farmington, CT 06032 | 19-Jan-09 | Pre-paid | D&O Excess 3 |
|  | Broadspire | Broadspire<br>1601 SW 80th Terrace<br>Plantation, FL 33324 | Continuous | Pre-paid | Third Party Administration of WC Claims |
|  | Bureau of Workers' Compensation, Dep't of Labor & Industry | Bureau of Workers' Compensation, Dep't of Labor & Industry<br>George Knehr<br>1171 S. Cameron Street<br>Harrisburg, PA 17104-2501 | Continuous | Pre-paid | Pennsylvania Self-Insurance Administration |
|  | Business Insurance | Business Insurance<br>711 Third Avenue<br>New York, NY 10017-4036 | Continuous | Pre-paid | Insurance Periodical |
| 03-0508641S-06 | Canamwil | Canamwil<br>1000 Milwaukee Avenue<br>Glenview, IL 60025 | Continuous | Pre-paid | Premium Finance Facility for 2008 D&O |
| 8102-6855 | Chubb Group of Insurance Companies | Chubb Group of Insurance Companies<br>15 Mountain View Road<br>Warren, NJ 07059 | 19-Jan-09 | Pre-paid | D&O Primary |
| 6DO-884394 | Chubb Group of Insurance Companies | Chubb Group of Insurance Companies<br>15 Mountain View Road<br>Warren, NJ 07059 | 1-Mar-08 | Pre-paid | Mexico D&O |
| 8114-3229 | Chubb Group of Insurance Companies | Chubb Group of Insurance Companies<br>15 Mountain View Road<br>Warren, NJ 07059 | 06,07,08 | Pre-paid | Fiduciary Liability |
| 8102-6855 | Chubb Group of Insurance Companies | Chubb Group of Insurance Companies<br>15 Mountain View Road<br>Warren, NJ 07059 | 06,07,08 | Pre-paid | D&O Primary |
| CA7579157 | Commerce & Industry Insurance Company | Commerce & Industry Insurance Company<br>PO Box 30174<br>New York, NY 10087-0174 | 1-Nov-06 | Pre-paid | Auto Liability |
| CA7075158 | Commerce & Industry Insurance Company | Commerce & Industry Insurance Company<br>PO Box 30174<br>New York, NY 10087-0174 | 1-Nov-07 | Pre-paid | Evaluation Unit Liability |
|  | Comp Physical Therapy Services, Inc. | Comp Physical Therapy Services, Inc.<br>Terry Lawson<br>PO Box 2367<br>Riverside, CA 92516-2367 | Continuous | Pre-paid | Post offer Employment Testing |
|  | Continental Casualty Company (CNA) | Continental Casualty Company (CNA)<br>333 S. Wabash<br>Chicago, IL 60604 | | Pre-paid | GL LLC |
|  | Corvel | Corvel<br>9920 Franklin Square Drive,Suite 100<br>Baltimore, MD 21236 | Continuous | Pre-paid | Third Party Payer of Non-Subscribers Claims |
|  | CS Stars LLC | CS Stars LLC<br>500 W Monroe Street<br>Chicago, IL 60661 | Continuous | Pre-paid | Claims Management System |
|  | Department of Consumer & Business Services, W.C. Division | Department of Consumer & Business Services, W.C. Division<br>Dianna R. Janowski<br>350 Winter Street NE<br>PO Box 14480<br>Salem, OR 97309-0405 | Continuous | Pre-paid | Oregon Self-Insurance Administration |
|  | Department of Industrial Relations, Self-Insurance Plans | Department of Industrial Relations, Self-Insurance Plans<br>Mark T. Johnson<br>2265 Watt Avenue, Suite 1<br>Sacramento, CA 95825 | Continuous | Pre-paid | California Self-Insurance Administration |
|  | Department of Labor & Industries, Self-Insurance Section | Department of Labor & Industries, Self-Insurance Section<br>PO Box 44891<br>Olympia, WA 98504-4891 | Continuous | Pre-paid | Washington Self-Insurance Administration |

Page 3 of 7
174



Exhibit "C"

# Fleetwood Enterprises, Inc. et al.

**Insurance Contracts \***

| Account Number or Policy Number | Name | Name and Address | Year | Cure | Notes |
|---|---|---|---|---|---|
| 81747648 | Executive Risk Indemnity | Executive Risk Indemnity, 15 Mountain View Road, Warren, NJ 07059 | 10-1-06 to 07 | Pre-paid | Mortgage E&O |
| | Fidelity & Deposit Company of Maryland | Fidelity & Deposit Company of Maryland, 3910 Keswick Road, Baltimore, MD 21211 | | Pre-paid | Ft. Sill LC |
| OO36417300 | Firemans Fund Insurance Company | Firemans Fund Insurance Company, 777 San Marin Drive, Novato, CA 94998 | 1-Jul-08 | Pre-paid | Marine Insurance Program |
| | Florida Self-Insurers Guaranty Association, Inc. | Florida Self-Insurers Guaranty Association, Inc., Brian D. Gee, 1427 E. Piedmont Drive, Second Floor, Tallahassee, FL 32308 | Continuous | Pre-paid | Florida Self-Insurance Administration |
| | Georgia Self-Insurers Guaranty Trust Fund | Georgia Self-Insurers Guaranty Trust Fund, Jack Reale, 880 West Peachtree Street NW, Atlanta, GA 30309 | Continuous | Pre-paid | Georgia Self-Insurance Administration |
| GNP-16405261 | Grupo National Provincial S.A.B. | Grupo National Provincial S.A.B., Av. Cerro de las Torres 395, Col. Campestre Churubusco, Mexico, D.F., C.P.04200, Mexico | 1-May-07 | Pre-paid | Mexico Insurance Provider |
| PL9900 | Gibraltar Insurance Co., Ltd (c/o Quest Management Solutions) | Gibraltar Insurance Co., Ltd (c/o Quest Management Solutions), Nick Dove, FB Perry Building, 40 Church Street, Hamilton, HM 11, Bermuda | 06,07,08 | Pre-paid | Products Liability & WC Excess Insurer |
| PD9900 | Gibraltar Insurance Co., Ltd (c/o Quest Management Solutions) | Gibraltar Insurance Co., Ltd (c/o Quest Management Solutions), Nick Dove, FB Perry Building, 40 Church Street, Hamilton, HM 11, Bermuda | 06,07,08 | Pre-paid | Punitive Damages Coverage |
| 0-01-64-91-00 | Great American Insurance Company | Great American Insurance Company, 580 Walnut Street, Cincinnati, OH 45202 | 09,10 | Pre-paid | Excess Liability |
| | Hartford | Hartford, 3600 Wiseman Road, San Antonio, TX 78251 | | Pre-paid | Enterprises WC Coverage from 10-1-09 to 12-31-09 |
| RSA550690000 | ING Seguros, S.A. de C.V. | ING Seguros, S.A. de C.V., Periferico Sur 3325, Piso 11, San Jeronimo Aculco, Mexico, D.F., 10400, Mexico | 21-Dec-07 | Pre-paid | Mexico Insurance Provider |
| RJA027220000 | ING Seguros, S.A. de C.V. | ING Seguros, S.A. de C.V., Periferico Sur 3325, Piso 11, San Jeronimo Aculco, Mexico, D.F., 10400, Mexico | 21-Dec-07 | Pre-paid | Mexico Insurance Provider |
| EEI6997388 | Lexington Insurance Company | Lexington Insurance Company, 100 Summer Street, Boston, MA 02110 | 31-Jan-09 | Pre-paid | Non-Subscriber Program Excess |
| EPIC7211884 | Lexington Insurance Company | Lexington Insurance Company, 100 Summer Street, Boston, MA 02110 | 06,07,08,09 | Pre-paid | Non-Subscriber Program Primary |
| 6462349 | Lexington Insurance Company | Lexington Insurance Company, 100 Summer Street, Boston, MA 02110 | 1-Nov-08 | Pre-paid | Products Liability |
| 206235-018 | Liberty Insurance Underwriters, Inc. | Liberty Insurance Underwriters, Inc., 175 Berkeley Street, Boston, MA 02116 | 19-Jan-08 | Pre-paid | Kidnap & Ransom |

Exhibit "C"



# Fleetwood Enterprises, Inc. et al.

**Insurance Contracts***

| Account Number or Policy Number | Name | Name and Address | Year | Cure | Notes |
|---|---|---|---|---|---|
| 201645-015 | Liberty Insurance Underwriters, Inc. | Liberty Insurance Underwriters, Inc.<br>175 Berkeley Street<br>Boston, MA 02116 | 05,06,07 | Pre-paid | Kidnap & Ransom |
| 59357.1001 | Litter Mendelson P.C. | Litter Mendelson P.C.<br>PO Box 45547<br>San Francisco, CA 94145-0547 | 06,07,08,09 | Pre-paid | Defense Counsel for Injury Benefit Plan in Texas |
| | Lumbermens Mutual Casualty Company (Kemper) | Lumbermens Mutual Casualty Company (Kemper)<br>RMG Collections<br>One Kemper Drive<br>Long Grove, IL 60049-0001 | | Pre-paid | Workers' Compensation LC |
| | Lumbermen's Underwriting Alliance | Lumbermen's Underwriting Alliance<br>2501 North Military Trail<br>Boca Raton, FL 33431 | | Pre-paid | Workers' Compensation LC |
| | Marsh | Marsh<br>Stephen J. Flynn<br>4695 MacArthur Court, Suite 700<br>Newport Beach, CA 92660 | | Pre-paid | Property & Casualty Insurance Broker |
| | Marsh Brockman S.A. de C.V. | Marsh Brockman S.A. de C.V.<br>Torre Mayor A. Paseo de la Reforma No. 505<br>Piso 13 y 14<br>Col. Cuauhtemoc, 06500<br>Mexico, D.F.C.P. | 1-Nov-08 | Pre-paid | Brokerage of Mexico Insurance |
| | Marsh Global Placement (Bermuda) Ltd. | Marsh Global Placement (Bermuda) Ltd.<br>8 Wesley Street<br>Craig Appen House<br>PO Box HM 2444<br>Hamilton HM, JX,<br>Bermuda | | Pre-paid | Brokerage of Bermuda Punitive Placements |
| 1340_WC | Matrix Absence Management, Inc. | Matrix Absence Management, Inc.<br>5225 Hellyer Avenue, Suite 210<br>San Jose, CA 95138 | | Pre-paid | Third Party Administrator in CA, OR & WA |
| EXC007780 | Midwest Employers Casualty Company | Midwest Employers Casualty Company<br>14755 North Outer Forty Drive, Suite 300<br>Chesterfield, MO 63017 | 1-Nov-08 | Pre-paid | Excess Workers Compensation |
| EWC007780 | Midwest Employers Casualty Company | Midwest Employers Casualty Company<br>14755 North Outer Forty Drive, Suite 300<br>Chesterfield, MO 63017 | 1-Nov-07 | Pre-paid | Excess Workers Compensation |
| EWC007781 | Midwest Employers Casualty Company | Midwest Employers Casualty Company<br>14755 North Outer Forty Drive, Suite 300<br>Chesterfield, MO 63017 | 1-Nov-07 | Pre-paid | Excess Workers Compensation |
| EWC007860 | Midwest Employers Casualty Company | Midwest Employers Casualty Company<br>14755 North Outer Forty Drive, Suite 300<br>Chesterfield, MO 63017 | 1-Feb-07 | Pre-paid | Excess Workers Compensation CA |
| 2637717 | National Union Fire Insurance Company of Pittsburgh, PA. | National Union Fire Insurance Company of Pittsburgh, PA.<br>70 Pine Street<br>New York, NY 10270 | 30-Apr-08 | Pre-paid | Property Insurance |
| 01-475-66-61 | National Union Fire Insurance Company of Pittsburgh, PA. | National Union Fire Insurance Company of Pittsburgh, PA.<br>175 Water Street<br>New York, NY 10038 | 19-Jan-09 | Pre-paid | D&O Excess 1 |
| 9660259 | National Union Fire Insurance Company of Pittsburgh, PA. | National Union Fire Insurance Company of Pittsburgh, PA.<br>175 Water Street<br>New York, NY 10038 | 19-Jan-07 | Pre-paid | D&O Excess 1 |
| 01-475-67-21 | National Union Fire Insurance Company of Pittsburgh, PA. | National Union Fire Insurance Company of Pittsburgh, PA.<br>175 Water Street<br>New York, NY 10038 | 19-Jan-09 | Pre-paid | D&O Side A |
| 966-23-16 | National Union Fire Insurance Company of Pittsburgh, PA. | National Union Fire Insurance Company of Pittsburgh, PA.<br>175 Water Street<br>New York, NY 10038 | 19-Jan-07 | Pre-paid | D&O Side A |
| 5895200 | National Union Fire Insurance Company of Pittsburgh, PA. | National Union Fire Insurance Company of Pittsburgh, PA.<br>175 Water Street<br>New York, NY 10038 | 1-Jul-08 | Pre-paid | Fiduciary Excess |
| WC6611362 | National Union Fire Insurance Company of Pittsburgh, PA. | National Union Fire Insurance Company of Pittsburgh, PA.<br>175 Water Street<br>New York, NY 10038 | 1-Apr-06 | Pre-paid | Workers' Compensation for AZ, ID, MD, VA |

Exhibit "C"



**Fleetwood Enterprises, Inc. et al.**

Insurance Contracts *

| Account Number or Policy Number | Name | Name and Address | Year | Cure | Notes |
|---|---|---|---|---|---|
| | North Carolina Department of Insurance | North Carolina Department of Insurance 1201 Mail Service Center Raleigh, NC. 27699-1201 | | Pre-paid | Self-Insurance LC |
| | Old Republic Insurance Company | Old Republic Insurance Company 445 Moreland Road, Suite 300 Brookfield, WI. 53005 | | Pre-paid | Fronting LC |
| | One Comp Health Systems | One Comp Health Systems 3019 Alvin Devane Blvd., Suite 150 Austin, TX. 78741 | | Pre-paid | Third Party Administration of Non-Subscribers Claims |
| PHPK360199 | Philadelphia Insurance Companies | Philadelphia Insurance Companies One Bala Plaza, Suite 100 Bala Cynwyd, PA 19004 | 1-Nov-08 | Pre-paid | (Auto Liability Policy) |
| | Roach Howard Smith & Barton | Roach Howard Smith & Barton Dot Hedman 8750 N. Central Expressway, Suite 500 Dallas, TX 75231 | | Pre-paid | (Non-Subscriber Broker) |
| GBO810.1088 | St. Paul Fire & MARINE Insurance Company (Travelers) | St. Paul Fire & MARINE Insurance Company (Travelers) 1 Tower Square Hartford, CT. 06183 | 1-Nov-07 | Pre-paid | Mexico Insurance Provider |
| 622-4874 | Starr Excess Liability Insurance Company Ltd. | Starr Excess Liability Insurance Company Ltd. 70 Pine Street New York, NY. 10270 | 19-Jan-07 | Pre-paid | D&O Excess 4 |
| 5157349 | Starr Excess Liability Insurance Company Ltd. | Starr Excess Liability Insurance Company Ltd. 29 Richmond Road Pembroke , HM08 Bermuda | 1-Nov-06 | Pre-paid | Punitive Damages Coverage Layer 1 |
| 5157350 | Starr Excess Liability Insurance Company Ltd. | Starr Excess Liability Insurance Company Ltd. 29 Richmond Road Pembroke , HM08 Bermuda | 1-Nov-06 | Pre-paid | Punitive Damages Coverage Layer 2 |
| 5078672 | Starr Excess Liability Insurance Company Ltd. | Starr Excess Liability Insurance Company Ltd. 175 Water Street, 19th Floor New York, NY. 10038 | 1-Nov-06 | Pre-paid | Second Excess Liability Policy |
| | State Compensation Insurance Fund | State Compensation Insurance Fund 900 Corporate Center Drive Monterey Park, CA. 91754 | | Pre-paid | Enterprises WC Coverage from 12-31-09 to current |
| | State of Indiana, Workers' Compensation Board | State of Indiana, Workers' Compensation Board Mary Taavaloski 402 West Washington Street, Room 146 Indianapolis, IN 46204-2753 | Continuous | Pre-paid | Indiana Self-Insurance Administration |
| | State of Maryland, Workers' Compensation Commision | State of Maryland, Workers' Compensation Commision Compliance Division 10 East Baltimore Street Baltimore, MD  21202-1641 | Continuous | Pre-paid | Maryland Self-Insurance Administration |
| WC 192 92 54 | The Insurance Company of the State of Pennsylvania | The Insurance Company of the State of Pennsylvania 70 Pine Street New York, NY. 10270 | 1-Apr-08 | Pre-paid | Workers Compensation All States |
| WC 192 92 55 | The Insurance Company of the State of Pennsylvania | The Insurance Company of the State of Pennsylvania 70 Pine Street New York, NY. 10270 | 1-Apr-08 | Pre-paid | Workers Compensation FL |
| WC 192 92 56 | The Insurance Company of the State of Pennsylvania | The Insurance Company of the State of Pennsylvania 70 Pine Street New York, NY. 10270 | 1-Apr-08 | Pre-paid | Workers Compensation CA |
| WC 292 1375 | The Insurance Company of the State of Pennsylvania | The Insurance Company of the State of Pennsylvania 70 Pine Street New York, NY. 10270 | 1-Apr-07 | Pre-paid | Workers Compensation All States |
| WC 292 1377 | The Insurance Company of the State of Pennsylvania | The Insurance Company of the State of Pennsylvania 70 Pine Street New York, NY. 10270 | 1-Apr-07 | Pre-paid | Workers Compensation FL |
| WC 292 1376 | The Insurance Company of the State of Pennsylvania | The Insurance Company of the State of Pennsylvania 70 Pine Street New York, NY. 10270 | 1-Apr-07 | Pre-paid | Workers Compensation PA |
| WC 6611361 | The Insurance Company of the State of Pennsylvania | The Insurance Company of the State of Pennsylvania 70 Pine Street New York, NY. 10270 | 1-Apr-06 | Pre-paid | Workers Compensation All States |

Exhibit "C"



**Fleetwood Enterprises, Inc. et al.**

Insurance Contracts *

| Account Number or Policy Number | Name | Name and Address | Year | Cure | Notes |
|---|---|---|---|---|---|
| WC 6611363 | The Insurance Company of the State of Pennsylvania | The Insurance Company of the State of Pennsylvania<br>70 Pine Street<br>New York, NY 10270 | 1-Apr-06 | Pre-paid | Workers Compensation FL |
| WC 6611364 | The Insurance Company of the State of Pennsylvania | The Insurance Company of the State of Pennsylvania<br>70 Pine Street<br>New York, NY 10270 | 1-Apr-06 | Pre-paid | Workers Compensation CA |
| KTJ-CMB-123D560-4-07 | Travelers Insurance | Travelers Insurance<br>1 Tower Square<br>Hartford, CT 06183 | 30-Apr-07 | Pre-paid | U.S. Property Insurer |
| KTJ-CMB-123D560-4-06 | Travelers Insurance | Travelers Insurance<br>1 Tower Square<br>Hartford, CT 06183 | 30-Apr-06 | Pre-paid | U.S. Property Insurer |
| | Travelers Insurance | Travelers Insurance<br>A. Nowik<br>1 Tower Square<br>H.O. Bond, 15GZ<br>Hartford, CT 6183-9062 | 30-Apr-06 | Pre-paid | Surety LC |
| 233D1012 | Travelers Insurance | Travelers Insurance<br>1 Tower Square<br>Hartford, CT 06183 | 30-Apr-07 | Pre-paid | Canadian Property Insurer |
| | Western Surety Company | Western Surety Company<br>PO Box 5077<br>Sioux Falls, SD 5117-5077 | 4-May-07 | Pre-paid | Notary E&O |
| 598327202 | Zurich American Insurance Company | Zurich American Insurance Company<br>105 East 17th Street<br>New York, NY 100063 | 21-Jun-07 | Pre-paid | Fidelity |
| 598327201 | Zurich American Insurance Company | Zurich American Insurance Company<br>105 East 17th Street<br>New York, NY 100063 | 21-Jun-06 | Pre-paid | Fidelity |

**Notes**
* Based on their coverage dates, many of the policies listed above appear to be expired. However,
these policies continue to provide coverage against claims made for occurrences during their
policy periods. Because there is no cost to assume these policies, the Debtors will assume them.

Exhibit "C"

EXHIBIT "D"

**Exhibit D**

**Non-Exclusive List of Causes of Action**

**NON-EXCLUSIVE LIST OF RETAINED CAUSES OF ACTION**

THE PLAN PRESERVES **ALL** CAUSES OF ACTION NOT
EXPRESSLY WAIVED, RELINQUISHED, EXCULPATED, RELEASED,
COMPROMISED, OR SETTLED IN THE PLAN OR A BANKRUPTCY COURT
ORDER.  THE ATTACHED LIST IS A NONEXCLUSIVE LIST OF ENTITIES
AGAINST WHOM THE LIQUIDATION TRUST SHALL RETAIN CAUSES OF
ACTION AFTER THE EFFECTIVE DATE.  FAILURE TO INCLUDE AN ENTITY
ON THE ATTACHED LIST SHALL NOT CONSTITUTE A RELEASE OF SUCH
ENTITY AND SHALL NOT INDICATE THAT CAUSES OF ACTION AGAINST
SUCH ENTITY HAVE NOT BEEN RETAINED. THE LIQUIDATING TRUST
SHALL RETAIN ALL CAUSES OF ACTION OF ANY KIND WHATSOEVER
AGAINST ALL ENTITIES NOT EXPRESSLY RELEASED PURSUANT TO THE
PLAN OR A FINAL ORDER IN THEIR CAPACITIES AS SUCH.  FOR AVOIDANCE
OF DOUBT, UNLESS EXPRESSLY RELEASED PURSUANT TO THE PLAN OR A
FINAL ORDER IN THEIR CAPACITIES AS SUCH, ENTITIES NOT LISTED ON
THE ATTACHED LIST ARE NOT RELEASED AND THE LIQUIDATING TRUST,
AS APPLICABLE, EXPRESSLY RETAINS ALL CAUSES OF ACTION OF ANY
KIND WHATSOEVER AGAINST ALL SUCH ENTITIES, INCLUDING WITHOUT
LIMITATION THE CATEGORIES OF CAUSES OF ACTION SET FORTH BELOW.
FAILURE TO ATTRIBUTE ANY SPECIFIC CAUSE OF ACTION TO A
PARTICULAR ENTITY ON THE ATTACHED LIST SHALL NOT UNDER ANY
CIRCUMSTANCE BE INTERPRETED TO MEAN THAT SUCH CAUSE OF
ACTION IS NOT RETAINED AGAINST SUCH ENTITY.  ALL POSSIBLE CAUSES
OF ACTION, INCLUDING CAUSES OF ACTION NOT LISTED BELOW, ARE
RETAINED AGAINST ALL ENTITIES NOT EXPRESSLY RELEASED PURSUANT
TO THE PLAN OR A FINAL ORDER IN THEIR CAPACITIES AS SUCH.  IN THE
EVENT OF ANY APPARENT INCONSISTENCY BETWEEN THE RELEASES OF
ENTITIES IN THEIR CAPACITIES AS SUCH PURSUANT TO THE PLAN OR A
BANKRUPTCY COURT ORDER AND THE ATTACHED LIST, SUCH RELEASES
GRANTED PURSUANT TO THE PLAN OR FINAL ORDER SHALL GOVERN.

Categories (in each case except as otherwise provided in the Plan):

1. Causes of Action against vendors, suppliers of goods or services, or other parties
for overpayments, back charges, duplicate payments, improper holdbacks,
deposits, warranties, guarantees, indemnities or setoff;

2. Causes of Action against utilities, vendors, suppliers of services or goods, or other
parties for wrongful or improper termination, suspension of services or supply of
goods, or failure to meet other contractual or regulatory obligations;

3. Causes of Action against vendors, suppliers of goods or services, or other parties
for failure to fully perform or to condition performance on additional

Exhibit "D"

requirements under contracts with any one or more of the Debtors before the assumption of rejection of the subject contracts;

4. Causes of Action relating to any liens, including mechanic's, artisan's, materialmen's, possessory or statutory liens filed by any contractor or third party against the Debtors' estates;

5. Claims related to or arising from any warranty or indemnification against any supplier or subcontractor or such supplier or subcontractor's insurance carriers;

6. Causes of Action against any current or former director, officer, employee or agent of the Debtors arising out of employment related matters, except the D&O Released Parties for the Claims released against them under the Plan;

7. Causes of Action against insurance carriers, reinsurance carriers, underwriters or surety bond issuers relating to coverage, indemnity, contribution, reimbursement or other matters;

8. Counterclaims and defenses relating to notes, bonds or other contract obligations;

9. Counterclaims in connection with any warranty claims or deposit return claims asserted against any of the Debtors;

10. Causes of Action against local, state, federal and foreign taxing authorities for refunds of overpayments or other payments;

11. Causes of Action against attorneys, accountants, consultants or other professional service providers relating to services rendered, except the Released Parties for the Claims released against them under the Plan;

12. Contract, tort or equitable Causes of Action that may exist or subsequently arise;

13. Causes of Action of the Debtors arising under section 362 of the Bankruptcy Code;

14. Equitable subordination Causes of Action arising under section 510 of the Bankruptcy Code or other applicable law;

15. Turnover Causes of Action arising under section 542 or 543 of the Bankruptcy Code;

16. Causes of Action arising under chapter 5 of the Bankruptcy Code, including preferences under section 547 of the Bankruptcy Code;

17. Causes of Action for unfair competition, interference with contract or potential business advantage, conversion, infringement of intellectual property or other

Exhibit "D"

business tort claims; and

18.  Causes of Action or Claims asserted by the Official Committee of Creditors Holding Unsecured Claims during the Chapter 11 Cases against any third party.

Exhibit "D"

**Fleetwood Enterprises, Inc. et al.**

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | ENCORE PARTNERS, LLC (JIM NICHOLS AND DICK BREIDENBACH INDIVIDUALLY) | ENCORE PARTNERS, LLC (JIM NICHOLS AND DICK BREIDENBACH INDIVIDUALLY) ATTN JAMES D NICHOLS 52 VISTA DEL MAR DANA POINT, CA 92629 | $5,836,497.56 | 2 |
| Third Party Litigation | FLEETWOOD RETAIL CORP | ENCORE PARTNERS, LLC (JIM NICHOLS AND DICK BREIDENBACH INDIVIDUALLY) | ENCORE PARTNERS, LLC (JIM NICHOLS AND DICK BREIDENBACH INDIVIDUALLY) ATTN JAMES D NICHOLS 52 VISTA DEL MAR DANA POINT, CA 92629 | $5,836,497.56 | 2 |
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | WESTCHESTER FIRE INSURANCE COMPANY AND ACE INA INSURANCE | WESTCHESTER FIRE INSURANCE COMPANY AND ACE INA INSURANCE ATTN COLLATERAL MANAGER ACE INA INSURANCE CO 1601 CHESTNUT ST PHILADELPHIA, PA 19103 | $13,897,702.50 | |
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA. | NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA. 175 WATER ST NEW YORK, NY 10038 | $4,302,210.00 | |
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | CONTINENTAL CASUALTY COMPANY AND/OR CNA CLAIMS PLUS | CONTINENTAL CASUALTY COMPANY AND/OR CNA CLAIMS PLUS 333 S WABASH CHICAGO, IL 60604 | $4,000.00 | |
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | NORTH CAROLINA SELF-INSURANCE SECURITY ASSOCIATION | NORTH CAROLINA SELF-INSURANCE SECURITY ASSOCIATION PO Box 12442 Raleigh, NC 27605 | TBD | |
| Third Party Litigation | FLEETWOOD MOTOR HOMES OF CALIFORNIA, INC. | DAN GAMEL, INC. DBA DAN GAMEL'S FRESON RV CENTER | DAN GAMEL, INC. DBA DAN GAMEL'S FRESON RV CENTER 2448 E CENTRAL AVE FRESNO, CA 93725 | TBD | |
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | MARYLAND WORKERS COMPENSATION COMMISSION | MARYLAND WORKER'S COMPENSATION COMMISSION 10 EAST BALTIMORE ST BALTIMORE, MD 21202-1641 | $950,000.00 | |
| Open A/R | FLEETWOOD HOMES OF TN INC | AMERICAN LIFESTYLE HOME CENTER - D803451 | AMERICAN LIFESTYLE HOME CENTER - D803451 900 WEST WATER ST PINCKNEYVILLE, IL 62274 | $57.03 | |
| Open A/R | FLEETWOOD HOMES OF VIRGINIA | BROTHERS HOUSING & REAL ESTATE - D803020 | BROTHERS HOUSING & REAL ESTATE - D803020 1406 S VAN L MUNGO BLVD PAGELAND, SC 29728 | $53,619.00 | |
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | FIDELITY AND DEPOSIT COMPANY OF MARYLAND | FIDELITY AND DEPOSIT COMPANY OF MARYLAND 210 N CHARLES ST BALTIMORE, MD 21201 | $3,017,440.00 | |
| Open A/R | FLEETWOOD TT OF IN INC | FREEDOM ROADS - CAMPING WORLD - GREENWOO | FREEDOM ROADS - CAMPING WORLD - GREENWOO DBA CAMPING WORLD RV SALES 303 SHEEK ROAD GREENWOOD, IN 46143-9713 | $516.19 | |
| Open A/R | FLEETWOOD TT OF IN INC | FREEDOM ROADS - CAMPING WORLD - ISL LAKE | FREEDOM ROADS - CAMPING WORLD - ISL LAKE DBA CAMPING WORLD RV SALES 4450 DARRELL ROAD ISLAND LAKE, IL 60042 | $739.01 | |
| Third Party Litigation | FLEETWOOD TT OF OR INC | STATE OF CALIFORNIA SELF-INSURANCE PLANS | STATE OF CALIFORNIA SELF-INSURANCE PLANS | $11,563,964.00 | 5 |
| Open A/R | FLEETWOOD ENTERPRISES, INC. | FREEDOM ROADS - BLAINE JENSEN RV CENTER | FREEDOM ROADS - BLAINE JENSEN RV CENTER 780 NORTH 900 WEST KAYSVILLE, UT 84037 | $271.65 | |
| Open A/R | FLEETWOOD HOMES OF GA INC - DOUGLAS N | MORGAN BUILDING & SPA GARLAND - D802795 | MORGAN BUILDING & SPA GARLAND - D802795 DBA MORGAN USA 2800 MCCREE RD GARLAND, TX 75041 | $1,077,151.15 | |
| Open A/R | FLEETWOOD HOMES OF TX LP | MORGAN BUILDING & SPA GARLAND - D802795 | MORGAN BUILDING & SPA GARLAND - D802795 DBA MORGAN USA 2800 MCCREE RD GARLAND, TX 75041 | $1,333,530.18 | |
| Open A/R | FLEETWOOD TT OF MD INC | RV SALES OF BROWARD INC - FT LAUDERDALE | RV SALES OF BROWARD INC - FT LAUDERDALE 1955 S STATE ROAD 7 FORT LAUDERDALE, FL 33317 | $23,546.00 | |

Page 85 of 37

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD TT OF OH INC | RV SALES OF BROWARD INC - FT LAUDERDALE | RV SALES OF BROWARD INC - FT LAUDERDALE<br>1955 S STATE ROAD 7<br>FORT LAUDERDALE, FL 33317 | $22,934.60 | |
| Open A/R | FLEETWOOD TT OF IN INC | BETTER LIFE OUTDOOR & TRAVEL RV CENTER | BETTER LIFE OUTDOOR & TRAVEL RV CENTER<br>1673 ST HWY 9<br>DECORAH, IA 52101 | $1,908.19 | |
| Open A/R | FLEETWOOD TT OF IN INC | CAMPING WORLD - EMERALD - ST AUGUSTINE | CAMPING WORLD - EMERALD - ST AUGUSTINE<br>DBA CAMPING WORLD RV SALES<br>600 PRIME OUTLETS BLVD<br>ST AUGUSTINE, FL 32084-2545 | $29.65 | |
| Open A/R | FLEETWOOD TT OF IN INC | CAMPING WORLD - HOLIDAY - N CHARLESTON | CAMPING WORLD - HOLIDAY - N CHARLESTON<br>DBA CAMPING WORLD RV SALES<br>8155 RIVERS AVE<br>N CHARLESTON, SC 29406-9238 | $437.92 | |
| Open A/R | FLEETWOOD TT OF OR INC | CAMPING WORLD - STIERS RV - SAN MARCOS | CAMPING WORLD - STIERS RV - SAN MARCOS<br>DBA CAMPING WORLD RV SALES<br>200 TRAVELERS WAY<br>SAN MARCOS, CA 92069-2797 | $250.99 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | CUTTING EDGE WOOD TECHNOLOGIES INC THE | CUTTING EDGE WOOD TECHNOLOGIES INC THE<br>130 NORTH GILBERT STREET<br>FULLERTON, CA 92833 | $1,329.13 | |
| Open A/R | FLEETWOOD TT OF OR INC | FREEDOM ROADS - CAMPING WORLD RV SALES | FREEDOM ROADS - CAMPING WORLD RV SALES<br>6801 COLONY<br>BAKERSFIELD, CA 93307 | $1,045.20 | |
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | NORTH CAROLINA DEPARTMENT OF INSURANCE | NORTH CAROLINA DEPARTMENT OF INSURANCE<br>1201 MAIL SVC CTR<br>RALEIGH, NC 27699-1201 | $636,966.30 | 4 |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | AUDIOVOX SPECIALIZED APPLICATIONS LLC | AUDIOVOX SPECIALIZED APPLICATIONS LLC<br>2602 MARINA DRIVE<br>ELKHART, IN 46514 | $47,347.17 | |
| Open A/R | FLEETWOOD TT OF IN INC | AUDIOVOX SPECIALIZED APPLICATIONS LLC | AUDIOVOX SPECIALIZED APPLICATIONS LLC<br>2602 MARINA DRIVE<br>ELKHART, IN 46514 | $5,833.16 | |
| Open A/R | FLEETWOOD TT OF OR INC | AUDIOVOX SPECIALIZED APPLICATIONS LLC | AUDIOVOX SPECIALIZED APPLICATIONS LLC<br>2602 MARINA DRIVE<br>ELKHART, IN 46514 | $3,140.29 | |
| Open A/R | FLEETWOOD TT OF IN INC | CAMPERS BARN OF THE HUDSON VALLEY LLC | CAMPERS BARN OF THE HUDSON VALLEY LLC<br>124 STATE ROUTE 28<br>KINGSTON, NY 12401 | $1,058.65 | |
| Open A/R | FLEETWOOD TT OF IN INC | CAMPING WORLD - EMERALD - ROBERTSDALE | CAMPING WORLD - EMERALD - ROBERTSDALE<br>DBA CAMPING WORLD RV SALES<br>21282 HIGHWAY 59 SOUTH<br>ROBERTSDALE, AL 36567 | $463.30 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | DIVERSIFIED MARKETING - HOWARD MILLER | DIVERSIFIED MARKETING - HOWARD MILLER<br>860 EAST MAIN AVENUE<br>ZEELAND, MI 49464 | $1.24 | |
| Open A/R | CONTINENTAL IMPORTS | GREAT LAKES RECREATIONAL PRODUCTS INC | GREAT LAKES RECREATIONAL PRODUCTS INC<br>70 MOUNT HOPE STREET<br>LINDSAY, ON K9V 5G4 | $16,171.31 | |
| Open A/R | FLEETWOOD TT OF OR INC | GREAT WESTERN AUTO BROKERS - GILLETTE | GREAT WESTERN AUTO BROKERS - GILLETTE<br>DBA GREAT WESTERN AUTO BROKERS<br>2400 S DOUGLAS HWY<br>GILLETTE, WY 82718 | $674.38 | |
| Open A/R | FLEETWOOD HOMES OF CA | MAPLE RIDGE HOMES OF CA INC - D512106 | MAPLE RIDGE HOMES OF CA INC - D512106<br>REDLANDS FINANCIAL GROUP | $1,715.72 | |
| Open A/R | FLEETWOOD HOMES OF CA | METRO HOUSING REDEVELOPMENT - D803718 | METRO HOUSING REDEVELOPMENT - D803718<br>16781 VAN BUREN NO C<br>RIVERSIDE, CA 92504 | $778.16 | |
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | TRAVELERS CASUALTY AND SURETY COMPANY | TRAVELERS CASUALTY AND SURETY COMPANY<br>ATTN A NOWIK<br>ONE TOWER SQUARE H O BOND 15C2 3PB<br>HARTFORD, CT 06183-9062 | $859,000.00 | |
| Open A/R | FLEETWOOD HOMES OF OR INC | ANDREWS MANUFACTURED HOMES - D803144 | ANDREWS MANUFACTURED HOMES - D803144<br>3404 8TH ST<br>LEWISTON, ID 83501 | $537.22 | |

Exhibit "D"

**Fleetwood Enterprises, Inc. et al.**

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD TT OF IN INC | CAMPING WORLD - MEYERS RV - SYRACUSE | CAMPING WORLD - MEYERS RV - SYRACUSE<br>DBA CAMPING WORLD RV SALES<br>7030 INTERSTATE ISLAND RD<br>SYRACUSE, NY 13209-9712 | $51.16 | |
| Open A/R | FLEETWOOD HOMES OF TX LP | EASY WAY HOMES CORPORATION - D804401 | EASY WAY HOMES CORPORATION - D804401<br>2323 BROAD ST<br>LAKE CHARLES, LA 70601 | $237.00 | |
| Open A/R | FLEETWOOD TT OF IN INC | FIRESTONE INDUSTRIAL PRODUCTS CO LLC | FIRESTONE INDUSTRIAL PRODUCTS CO LLC<br>1700 FIRESTONE BLVD<br>NOBLESVILLE, IN 46060 | $220.09 | |
| Open A/R | FLEETWOOD TT OF OR INC | FIRESTONE INDUSTRIAL PRODUCTS CO LLC | FIRESTONE INDUSTRIAL PRODUCTS CO LLC<br>1700 FIRESTONE BLVD<br>NOBLESVILLE, IN 46060 | $374.78 | |
| Open A/R | FLEETWOOD TT OF OR INC | MIKE THOMPSONS RV - SANTA FE SPRINGS | MIKE THOMPSONS RV - SANTA FE SPRINGS<br>13940 FIRESTONE BLVD<br>SANTA FE SPRING, CA 90670 | $13,728.03 | |
| Open A/R | FLEETWOOD HOMES OF TX INC - WACO | A & J S TEXAS HOME CENTER - D803176 | A & J S TEXAS HOME CENTER - D803176<br>DBA A & JS TEXAS HOME CENTER<br>4743 N INTERSTATE 35 EAST<br>WAXAHACHIE, TX 75165 | $628.95 | |
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC | BENEFICIARIES OF LC'S OR DRAWN LC'S | BENEFICIARIES OF LC'S OR DRAWN LC'S | TBD | |
| Open A/R | FLEETWOOD TT OF OR INC | FREEDOM ROADS - EARNHARDT RV - MESA | FREEDOM ROADS - EARNHARDT RV - MESA<br>DBA EARNHARDT RV - MESA<br>2222 E MAIN ST<br>MESA, AZ 85213 | $4,830.75 | |
| Open A/R | FLEETWOOD TT OF OR INC | GREAT WESTERN AUTO BROKERS - CASPER | GREAT WESTERN AUTO BROKERS - CASPER<br>DBA GREAT WESTERN AUTO BROKERS<br>111 SE WYOMING BLVD<br>CASPER, WY 82609 | $4,363.83 | |
| Open A/R | FLEETWOOD TT OF IN INC | MFI INTERNATIONAL MANUFACTURING LLC | MFI INTERNATIONAL MANUFACTURING LLC<br>9570 PAN AMERICAN DRIVE<br>EL PASO, TX 79927 | $43.72 | |
| Open A/R | FLEETWOOD HOMES OF CA | NORTH COUNTY MOBILE HOMES - D802328 | NORTH COUNTY MOBILE HOMES - D802328<br>647 WEST 9TH AVENUE<br>ESCONDIDO, CA 92025 | $610.00 | |
| Open A/R | FLEETWOOD TT OF IN INC | TRAVEL COUNTRY RV CENTER OF AUGUSTA | TRAVEL COUNTRY RV CENTER OF AUGUSTA<br>DBA TRAVEL COUNTRY RV CENTER OF AUGUSTA<br>6441 NATURES WAY<br>APPLING, GA 30802 | $801.80 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | AMERICAN TECHNOLOGY COMPONENTS INC | AMERICAN TECHNOLOGY COMPONENTS INC<br>2905 LAVANTURE PLACE<br>ELKHART, IN 46514 | $908.16 | |
| Open A/R | FLEETWOOD TT OF IN INC | AMERICAN TECHNOLOGY COMPONENTS INC | AMERICAN TECHNOLOGY COMPONENTS INC<br>2905 LAVANTURE PLACE<br>ELKHART, IN 46514 | $492.69 | |
| Open A/R | FLEETWOOD TT OF OR INC | AMERICAN TECHNOLOGY COMPONENTS INC | AMERICAN TECHNOLOGY COMPONENTS INC<br>2905 LAVANTURE PLACE<br>ELKHART, IN 46514 | $82.11 | |
| Open A/R | FLEETWOOD TT OF IN INC | DEL AIR RV CENTER - CORPUS CHRISTI | DEL AIR RV CENTER - CORPUS CHRISTI<br>2334 POLLEX AVE<br>CORPUS CHRISTI, TX 78415 | $1,618.00 | |
| Open A/R | FLEETWOOD HOMES - GARRETT | DODGE CITY HOMES - D803662,D803774 | DODGE CITY HOMES - D803662,D803774<br>6200 S OLD SR 37<br>BLOOMINGTON, IN 47401 | $289.74 | |
| Open A/R | FLEETWOOD HOMES OF CA | DUPPA VILLA MOBILE HOMES - D104950 | DUPPA VILLA MOBILE HOMES - D104950<br>15786 N GATEWAY<br>MADERA, CA 93637 | $360.00 | |
| Open A/R | FLEETWOOD HOMES OF VIRGINIA | PRESTIGE HOUSING - D803073,D804091 | PRESTIGE HOUSING - D803073,D804091<br>PO BOX 1013<br>BUCKHANNON, WV 26201 | $57.58 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | ATWOOD - ELKHART 2 CREATION GROUP | ATWOOD - ELKHART 2 CREATION GROUP<br>2701 ADA DRIVE<br>ELKHART, IN 46515 | $2,348.21 | |

Exhibit "D"

**Fleetwood Enterprises, Inc. et al.**

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD TT OF IN INC | BANKSTON MOTOR HOMES - HUNTSVILLE | BANKSTON MOTOR HOMES - HUNTSVILLE<br>2191 JORDAN LANE NW<br>HUNTSVILLE, AL 35816 | $2,397.42 | |
| Open A/R | FLEETWOOD TT OF IN INC | BILLY SIMS TRAILER TOWN - LUBBOCK | BILLY SIMS TRAILER TOWN - LUBBOCK<br>1615 LOOP 289 SOUTH<br>LUBBOCK, TX 79423 | $259.60 | |
| Open A/R | FLEETWOOD HOMES OF OR INC | INDEPENDENCE HOME SAGLE - D513654 | INDEPENDENCE HOME SAGLE - D513654<br>470873 HWY 95<br>SAGLE, ID 83860 | $1,051.00 | |
| Open A/R | FLEETWOOD TT OF IN INC | CAMPING WORLD - EMERALD - MIDWAY | CAMPING WORLD - EMERALD - MIDWAY<br>DBA CAMPING WORLD RV SALES<br>31300 BLUE STAR HIGHWAY<br>MIDWAY, FL 32343-2426 | $19.07 | |
| Open A/R | FLEETWOOD HOMES OF OR INC | CONSOLIDATED HOMES INC - D506186 | CONSOLIDATED HOMES INC - D506186<br>206 OREGON WAY<br>LONGVIEW, WA 98632 | $728.51 | |
| Open A/R | CONTINENTAL IMPORTS | TRIAD DISTRIBUTING NORTHWEST INC | TRIAD DISTRIBUTING NORTHWEST INC<br>7 NINTH AVENUE NORTH<br>NAMPA, ID 83687 | $463.54 | |
| Open A/R | CONTINENTAL IMPORTS | AMERICAN BOLT & SCREW MFRG CORP | AMERICAN BOLT & SCREW MFRG CORP<br>PO BOX 51300<br>ONTARIO, CA 91761 | $690.00 | |
| Open A/R | FLEETWOOD TT OF OR INC | FREEDOM ROADS - ARDELL BROWN RV | FREEDOM ROADS - ARDELL BROWN RV<br>DBA ARDELL BROWN RV<br>13153 S MINUTE MAN DRIVE<br>DRAPER, UT 84020 | $162.51 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | GLENDINNING MARINE PRODUCTS INC | GLENDINNING MARINE PRODUCTS INC<br>740 CENTURY CIRCLE<br>CONWAY, SC 29526 | $919.79 | |
| Open A/R | FLEETWOOD TT OF IN INC | HAPPY TRAILS USA RV SUPERCENTER | HAPPY TRAILS USA RV SUPERCENTER<br>DBA HAPPY TRAILS USA RV SUPERCENTER<br>2315 I 30<br>ROCKWALL, TX 75087 | $931.91 | |
| Open A/R | FLEETWOOD TT OF IN INC | LIGHTNIN RV SALES & SERVICE LLC | LIGHTNIN RV SALES & SERVICE LLC<br>2555 UNIVERSITY PARKWAY<br>LAWRENCEVILLE, GA 30043 | $65.04 | |
| Open A/R | FLEETWOOD TT OF IN INC | PAW PAWS CAMPER CITY - PICAYUNE | PAW PAWS CAMPER CITY - PICAYUNE<br>123 ELM STREET<br>PICAYUNE, MS 39466 | $462.51 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | TECHNOLOGY RESEARCH CORPORATION | TECHNOLOGY RESEARCH CORPORATION<br>5250 140TH AVENUE NORTH<br>CLEARWATER, FL 33762-0469 | $11,859.44 | |
| Open A/R | FLEETWOOD TT OF IN INC | TURNING WHEEL RV CENTER - OCALA | TURNING WHEEL RV CENTER - OCALA<br>DBA THE TURNING WHEEL RV CENTER<br>3040 NW GAINESVILLE ROAD<br>OCALA, FL 34475 | $6,690.53 | |
| Open A/R | FLEETWOOD TT OF IN INC | US ADVENTURE RV QUAD CITIES LLC | US ADVENTURE RV QUAD CITIES LLC<br>DBA US ADVENTURE RV QUAD CITIES LLC<br>5120 NORTH BRADY STREET<br>DAVENPORT, IA 52806 | $296.43 | |
| Open A/R | FLEETWOOD TT OF IN INC | CENTRE DE LA ROULOTTE 1444 INC | CENTRE DE LA ROULOTTE 1444 INC<br>14303 BLVD LA BELLE<br>ST JANVIER, QC J7J 1M2 | $225.73 | |
| Open A/R | FLEETWOOD TT OF IN INC | CHEEK & SHOCKLEY TRAILER SALES | CHEEK & SHOCKLEY TRAILER SALES<br>2600 MECHANICSVILLE PIKE<br>RICHMOND, VA 23223 | $648.05 | |
| Open A/R | FLEETWOOD HOMES OF PA INC | CUSTOM CRAFTED HOMES - D804338 | CUSTOM CRAFTED HOMES - D804338<br>DBA CUSTOM CRAFTED HOMES<br>801 RT 16<br>OSSIPEE, NH 3864 | $60.00 | |
| Third Party Litigation | FLEETWOOD MOTOR HOMES OF INDIANA, INC. | GOODYEAR TIRE & RUBBER COMPANY | GOODYEAR TIRE & RUBBER COMPANY<br>1144 EAST MARKET ST<br>AKRON, OH 44316 | TBD | |

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD TT OR INC | HOLLISTER RV PARTS AND SERVICE | HOLLISTER RV PARTS AND SERVICE<br>281-D SAN FELIPE ROAD<br>HOLLISTER, CA 95023 | $305.78 | |
| Open A/R | FLEETWOOD TT OR INC | HY MOTORS LTD/SASKATOON RV SUP | HY MOTORS LTD/SASKATOON RV SUP<br>3510 IDYWILD DR NORTH<br>SASKATOON, SK  S7L 6G3 | $5,706.53 | |
| Open A/R | FLEETWOOD TT OR INC | HY MOTORS LTD/SASKATOON RV SUP | HY MOTORS LTD/SASKATOON RV SUP<br>3510 IDYWYLD DRIVE N<br>SASKATOON, SK  S7L 6G3 | $18,260.55 | |
| Open A/R | FLEETWOOD TT OR INC | KUSTOM KOACH LEISURE SALES LTD | KUSTOM KOACH LEISURE SALES LTD<br>26875 FRASER HWY BOX 39<br>ALDERGROVE, BC  V4W 3E4 | $2,701.12 | |
| Open A/R | FLEETWOOD TT OR IN INC | LAFAYETTE TRAVEL TRAILER SALES | LAFAYETTE TRAVEL TRAILER SALES<br>2651 State Road 25 N<br>Lafayette, IN  47905 | $37,716.00 | |
| Open A/R | FLEETWOOD TT OR IN INC | MARSHALLS TRAVELAND INC - BUDA | MARSHALLS TRAVELAND INC - BUDA<br>DBA MARSHALLS TRAVELAND INC<br>16611 I H 35 S<br>BUDA, TX  78610 | $64.14 | |
| Open A/R | FLEETWOOD TT OR INC | MCGOVERNS USED AUTO & RV SALES | MCGOVERNS USED AUTO & RV SALES<br>10725 117TH AVE<br>GRANDE PRAIRE, AB  T8V 7N6 | $27,722.04 | |
| Open A/R | FLEETWOOD TT OR IN INC | PIERRE ST-CYR AUTO CARAVANES L | PIERRE ST-CYR AUTO CARAVANES L<br>3465 CH DE LINDUSTRIES<br>ST-MATHIEU-DE DELOEIL<br>ST-MATHIEU-DE, QC  J3G 4S5 | $479.51 | |
| Open A/R | FLEETWOOD TT OR INC | REDWOOD CAMPER & TRAILER SALES | REDWOOD CAMPER & TRAILER SALES<br>850 SOUTH REDWOOD RD<br>SALT LAKE CITY, UT  84104 | $1,798.72 | |
| Open A/R | FLEETWOOD HOMES OF AZ INC | RIVER WEST HOMES INC - D804349 | RIVER WEST HOMES INC - D804349<br>505 CALIFORNIA AVE<br>PARKER, AZ  85344 | $1,114.11 | |
| Open A/R | FLEETWOOD TT IN INC | SOUTHERN COMFORT RV CENTER INC | SOUTHERN COMFORT RV CENTER INC<br>4504 TROY HIGHWAY<br>MONTGOMERY, AL  36116 | $681.88 | |
| Open A/R | FLEETWOOD TT OR INC | STROMBERG CARLSON PRODUCTS INC | STROMBERG CARLSON PRODUCTS INC<br>PO BOX 266<br>TRAVERSE CITY, MI  49685-0266 | $32.49 | |
| Open A/R | FLEETWOOD TT OR INC | TOM JOHNSON CAMPING CENTER INC | TOM JOHNSON CAMPING CENTER INC<br>1885 US HWY 70 WEST<br>MARION, NC  28752 | $1,237.31 | |
| Open A/R | FLEETWOOD TT OR INC | TOM JOHNSON CAMPING CENTER INC | TOM JOHNSON CAMPING CENTER INC<br>6700 BRUTON SMITH BLVD<br>CONCORD, NC  28027 | $676.04 | |
| Open A/R | FLEETWOOD MOTOR HOMES OF PA | TRAVELAND LEISURE VEHICLES LTD | TRAVELAND LEISURE VEHICLES LTD<br>20529 LANGLEY BYPASS<br>LANGLEY, BC  V3A 5E8 | $201,000.00 | |
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | WEEKEND WARRIORS TRAILER, INC. | WEEKEND WARRIORS TRAILER, INC.<br>9150 BENSON AVE<br>MONTCLAIR, CA  91763 | TBD | |
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | WHIRLPOOL CORPORATION (MAYTAG) | WHIRLPOOL CORPORATION (MAYTAG)<br>LAW DEPT<br>2000 NORTH M 63<br>BENTON HARBOR, MI  49022 | TBD | 7 |
| Third Party Litigation | FLEETWOOD TRAVEL TRAILERS OF CALIFORNIA, INC. | WHIRLPOOL CORPORATION (MAYTAG) | WHIRLPOOL CORPORATION (MAYTAG)<br>LAW DEPT<br>2000 NORTH M 63<br>BENTON HARBOR, MI  49022 | TBD | 7 |
| Third Party Litigation | FLEETWOOD TRAVEL TRAILERS OF INDIANA, INC. | WHIRLPOOL CORPORATION (MAYTAG) | WHIRLPOOL CORPORATION (MAYTAG)<br>LAW DEPT<br>2000 NORTH M 63<br>BENTON HARBOR, MI  49022 | TBD | 7 |

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Third Party Litigation | FLEETWOOD TRAVEL TRAILERS OF TEXAS, INC. | WHIRLPOOL CORPORATION (MAYTAG) | WHIRLPOOL CORPORATION (MAYTAG)<br>LAW DEPT<br>2000 NORTH M 63<br>BENTON HARBOR, MI 49022 | TBD | 7 |
| Open A/R | FLEETWOOD TT OR INC | ARBUTUS RV & MARINE SALES LTD | ARBUTUS RV & MARINE SALES LTD<br>5540 BEAVER CREEK RD<br>PORT ALBERNI, BC V9Y 8X6 | $46,172.90 | |
| Open A/R | FLEETWOOD TT OR INC | CONTINENTAL MIRRORED GRAPHICS | CONTINENTAL MIRRORED GRAPHICS<br>1838 MIDDLEBURY ST<br>ELKHART, IN 46516 | $149.31 | |
| Open A/R | FLEETWOOD HOMES OF CA | FLEMING ENTERPRISES - D801863 | FLEMING ENTERPRISES - D801863<br>1700 HAMNER AVE SUITE 105<br>NORCO, CA 92860 | $292.58 | |
| Open A/R | FLEETWOOD TT OF IN INC | FRED & JACK TRAILER SALES INC | FRED & JACK TRAILER SALES INC<br>24218 INTERSTATE 30<br>BRYANT, AR 72022 | $181.53 | |
| Open A/R | FLEETWOOD TT OF IN INC | HEHR INTERNATIONAL - PLYMOUTH | HEHR INTERNATIONAL - PLYMOUTH<br>1101 N OAK RD<br>PLYMOUTH, IN 46563 | $12.50 | |
| Open A/R | FLEETWOOD HOMES OF TX LP | HOME CONNECTION THE - D802995 | HOME CONNECTION THE - D802995<br>1104 TEMPLET DR<br>OKLAHOMA CITY, OK 73127 | $775.20 | |
| Open A/R | FLEETWOOD TT OF IN INC | LEACH CAMPER SALES OF LINCOLN | LEACH CAMPER SALES OF LINCOLN<br>2727 CORNHUSKER HWY<br>LINCOLN, NE 68504 | $14.53 | |
| Open A/R | FLEETWOOD TT OF IN INC | LES ENTERPRISES GILBERT BIRON | LES ENTERPRISES GILBERT BIRON<br>21 INDUSTRIEL<br>CHATEAUGUAY, QC J6J 4Z2 | $395.34 | |
| Third Party Litigation | FLEETWOOD HOMES OF GEORGIA, INC. | MORGAN BUILDINGS & SPAS, INC. | MORGAN BUILDINGS & SPAS, INC.<br>DBA MORGAN USA<br>2800 MCCREE RD<br>GARLAND, TX 75041 | TBD | 3 |
| Third Party Litigation | FLEETWOOD HOMES OF TEXAS, L.P | MORGAN BUILDINGS & SPAS, INC. | MORGAN BUILDINGS & SPAS, INC.<br>DBA MORGAN USA<br>2800 MCCREE RD<br>GARLAND, TX 75041 | TBD | 3 |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | SELECT COMFORT WHOLESALE CORP | SELECT COMFORT WHOLESALE CORP<br>9800 59TH AVE N<br>MINNEAPOLIS, MN 55442 | $14,155.24 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | SHOWER ENCLOSURES AMERICA INC | SHOWER ENCLOSURES AMERICA INC<br>501 KETTERING DR<br>ONTARIO, CA 91761 | $3,022.20 | |
| Open A/R | FLEETWOOD TT OF IN INC | SPECIALTY HITCHES & RV CENTER | SPECIALTY HITCHES & RV CENTER<br>DBA SPECIALTY HITCHES & RV CENTER<br>2315 BOLTON AVE<br>ALEXANDRIA, LA 71303 | $18.89 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | TROMBETTA MOTION TECHNOLOGIES | TROMBETTA MOTION TECHNOLOGIES<br>N88 W13901 MAIN ST STE 200<br>MENOMONEE, WI 53051 | $166.06 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | AQUA-HOT HEATING SYSTEMS INC | AQUA-HOT HEATING SYSTEMS INC<br>15549 E HIGHWAY 52<br>FORT LUPTON, CO 80621 | $4,466.57 | |
| Open A/R | FLEETWOOD TT OF IN INC | BRUCES RECREATION & AUTO CTR | BRUCES RECREATION & AUTO CTR<br>92 BALBO DRIVE<br>CLARENVILLE, NL A5A 4A8 | $566.24 | |
| Open A/R | FLEETWOOD TT OR INC | CALIFORNIA CENTRAL RV CENTER | CALIFORNIA CENTRAL RV CENTER<br>4801 FEATHER RIVER BLVD 32G<br>OROVILLE, CA 95965 | $764.68 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | DAVE CARTER & ASSOCIATES INC | DAVE CARTER & ASSOCIATES INC<br>PO BOX 11407<br>BIRMINGHAM, AL 35246-0429 | $4,435.41 | |
| Open A/R | FLEETWOOD TT OF IN INC | DAVE CARTER & ASSOCIATES INC | DAVE CARTER & ASSOCIATES INC<br>1136 VERDANT DRIVE<br>ELKHART, IN 46516 | $951.99 | |

Page 88 37

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|------|--------------|------------|------------|-----------------|----------|
| Open A/R | FLEETWOOD TT OF OR INC | DAVE CARTER & ASSOCIATES INC | DAVE CARTER & ASSOCIATES INC<br>1136 VERDANT DRIVE<br>ELKHART, IN 46516 | $28,507.18 | |
| Open A/R | FLEETWOOD TT OF IN INC | DAVE COGGINS AUTO & RV SALES | DAVE COGGINS AUTO & RV SALES<br>9865 HWY 1<br>SAALINERVILLE, NS B0W 2L0 | $192.63 | |
| Open A/R | FLEETWOOD TT OF IN INC | DAYS CAMPING & RV CENTER INC | DAYS CAMPING & RV CENTER INC<br>1116 MOUNTAIN ROAD<br>JOPPA, MD 21085 | $5.98 | |
| Open A/R | FLEETWOOD TT OF IN INC | EMERALD COAST RV CENTER INC. | EMERALD COAST RV CENTER INC.<br>2961 ROSS CLARKE CIRCLE S.W.<br>DOTHAN, AL 36301 | $34.12 | |
| Open A/R | FLEETWOOD TT OF IN INC | FORT RECOVERY INDUSTRIES INC | FORT RECOVERY INDUSTRIES INC<br>2440 STATE ROUTE 49<br>FORT RECOVERY, OH 45846 | $32.35 | |
| Open A/R | FLEETWOOD TT OF OR INC | GLOBAL DIRECT COMPONENTS LLC | GLOBAL DIRECT COMPONENTS LLC<br>14519 INNOVATION DR<br>RIVERSIDE, CA 92518 | $3,387.79 | |
| Open A/R | FLEETWOOD TT OF IN INC | HOLIDAY KAMPER - SPARTANBURG | HOLIDAY KAMPER - SPARTANBURG<br>114 BEST DRIVE<br>SPARTANBURG, SC 29303 | $755.72 | |
| Open A/R | FLEETWOOD TT OF IN INC | HOLIDAY KAMPER - STATESVILLE | HOLIDAY KAMPER - STATESVILLE<br>1220 MORLAND DRIVE<br>STATESVILLE, NC 28687 | $85.79 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | HOOSIER WOOD SPECIALTIES INC | HOOSIER WOOD SPECIALTIES INC<br>7474 NORTH PIQUA ROAD<br>DECATUR, IN 46733 | $16.06 | |
| Open A/R | FLEETWOOD TT OF IN INC | IMPERIAL CAMPER SALES INC MN | IMPERIAL CAMPER SALES INC MN<br>P O BOX 209<br>1156 HASTINGS AVE N<br>NEWPORT, MN 55055 | $325.15 | |
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | KEMPER INSURANCE CO., ET. AL. | KEMPER INSURANCE CO., ET. AL.<br>ATTN CORP LEGAL DEPT<br>ONE KEMPER DR<br>LONG GROVE, IL 60049 | $1,428,000.00 | |
| Open A/R | FLEETWOOD TT OF IN INC | RAES TRAILER SALES & SERVICE | RAES TRAILER SALES & SERVICE<br>291 FRENCH FORT RD<br>MIRAMICHI, NB E1V 5N1 | $71,551.20 | |
| Open A/R | FLEETWOOD TT OF OR INC | RANGELAND RV & TRAILER SALES | RANGELAND RV & TRAILER SALES<br>262 10B RANGE ROAD<br>403-279-5200<br>BALZAC, AB T0M 0E0 | $1,716.74 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | SCOTT INDUSTRIAL SYSTEMS INC | SCOTT INDUSTRIAL SYSTEMS INC<br>2655 TOBEY DR<br>INDIANAPOLIS, IN 46219 | $56.12 | |
| Open A/R | FLEETWOOD TT OF IN INC | TCL SALES & DISTRIBUTION INC | TCL SALES & DISTRIBUTION INC<br>11380 7TH STREET<br>RANCHO CUCAMONGA, CA 91730 | $106.50 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | TOUCHSENSOR TECHNOLOGIES LLC | TOUCHSENSOR TECHNOLOGIES LLC<br>203 NORTH GABLES BLVD<br>WHEATON, IL 60187 | $655.77 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | ATWOOD - ELKHART 3 KEMBERLY | ATWOOD - ELKHART 3 KEMBERLY<br>201 E SIMONTON STREET<br>ELKHART, IN 46514-0326 | $244.53 | |
| Open A/R | FLEETWOOD TT OF IN INC | ATWOOD - ELKHART 3 KEMBERLY | ATWOOD - ELKHART 3 KEMBERLY<br>201 E SIMONTON STREET<br>ELKHART, IN 46514-0326 | $16.06 | |
| Open A/R | FLEETWOOD TT OF OR INC | ATWOOD - ELKHART 3 KEMBERLY | ATWOOD - ELKHART 3 KEMBERLY<br>201 E SIMONTON STREET<br>ELKHART, IN 46514-0326 | $212.16 | |
| Open A/R | FLEETWOOD TT OF OR INC | BROADMOOR RV & TRUCK CENTER | BROADMOOR RV & TRUCK CENTER<br>9145 ST. THOMAS DRIVE<br>P.O. BOX 2384<br>PASCO, WA 99302 | $3,655.31 | |

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD TT OF IN INC | CAMPING TIME RV CENTERS LLC | CAMPING TIME RV CENTERS LLC<br>505 PARKWAY 575<br>WOODSTOCK, GA 30188 | $1,247.35 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | CEQUENT ELECTRICAL PRODUCTS | CEQUENT ELECTRICAL PRODUCTS<br>DBA CEQUENT ELECTRICAL PRODUCTS<br>129 INDUSTRIAL AVENUE<br>COLDWATER, MI 49036 | $199.33 | |
| Open A/R | FLEETWOOD TT OF IN INC | CEQUENT ELECTRICAL PRODUCTS | CEQUENT ELECTRICAL PRODUCTS<br>DBA CEQUENT ELECTRICAL PRODUCTS<br>129 INDUSTRIAL AVENUE<br>COLDWATER, MI 49036 | $27.38 | |
| Open A/R | FLEETWOOD HOMES OF PA INC | CHESAPEAKE MH OF LAUREL INC | CHESAPEAKE MH OF LAUREL INC<br>PO BOX 288<br>MILLERSVILLE, MD 21108 | $120.26 | |
| Open A/R | FLEETWOOD HOMES OF CA | CLAYTON HOMES INC - D073800 | CLAYTON HOMES INC - D073800<br>DBA CLAYTON HOMES<br>5000 CLAYTON ROAD<br>MARYVILLE, TN 37802 | $1,325.00 | |
| Open A/R | FLEETWOOD HOMES OF OR INC | CLAYTON HOMES INC - D073800 | CLAYTON HOMES INC - D073800<br>DBA CLAYTON HOMES<br>5000 CLAYTON ROAD<br>MARYVILLE, TN 37802 | $404.18 | |
| Open A/R | FLEETWOOD HOMES OF TX INC - WACO | CLAYTON HOMES INC - D073800 | CLAYTON HOMES INC - D073800<br>DBA CLAYTON HOMES<br>5000 CLAYTON ROAD<br>MARYVILLE, TN 37802 | $1,705.39 | |
| Open A/R | FLEETWOOD HOMES OF VIRGINIA | CLAYTON HOMES INC - D073800 | CLAYTON HOMES INC - D073800<br>DBA CLAYTON HOMES<br>5000 CLAYTON ROAD<br>MARYVILLE, TN 37802 | $512.26 | |
| Open A/R | FLEETWOOD TT OF OR INC | CREATIVE PLASTICS GROUP INC | CREATIVE PLASTICS GROUP INC<br>118 SOUTH HARRISON STREET<br>ATWOOD, IN 46502 | $107.03 | |
| Open A/R | FLEETWOOD TT OF OR INC | GUARANTY RV - JUNCTION CITY | GUARANTY RV - JUNCTION CITY<br>20 HWY 99 S<br>JUNCTION CITY, OR 97448 | $1,839.37 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | HADLEY PRODUCTS CORPORATION | HADLEY PRODUCTS CORPORATION<br>2851 PRAIRIE ST SW<br>GRANDVILLE, MI 49418 | $123.99 | |
| Open A/R | FLEETWOOD TT OF IN INC | HOLIDAY KAMPER-MYRTLE BEACH | HOLIDAY KAMPER-MYRTLE BEACH<br>2295 DICK POND DRIVE<br>MYRTLE BEACH, SC 29575 | $1,046.77 | |
| Open A/R | FLEETWOOD TT OF IN INC | JOHNNY BISHOP AUTO MART INC | JOHNNY BISHOP AUTO MART INC<br>8971 HWY 45 N<br>COLUMBUS, MS 39705 | $175.82 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | MANCHESTER TANK & EQUIPMENT | MANCHESTER TANK & EQUIPMENT<br>3400 WISMANN LANE<br>QUINCY, IL 62301-1256 | $2,687.82 | |
| Open A/R | FLEETWOOD TT OF IN INC | MANCHESTER TANK & EQUIPMENT | MANCHESTER TANK & EQUIPMENT<br>885 FAIRWAY DRIVE<br>WALNUT, CA 91789 | $1,589.53 | |
| Open A/R | FLEETWOOD TT OF OR INC | MANCHESTER TANK & EQUIPMENT | MANCHESTER TANK & EQUIPMENT<br>885 FAIRWAY DRIVE<br>WALNUT, CA 91789 | $693.48 | |
| Open A/R | FLEETWOOD TT OF IN INC | MARIETTA RV & OUTDOOR WORLD | MARIETTA RV & OUTDOOR WORLD<br>DBA MARIETTA RV & OUTDOOR WORLD<br>98 STARLITE DRIVE<br>MARIETTA, OH 45750 | $154.81 | |
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | OLD REPUBLIC INSURANCE, CO. | OLD REPUBLIC INSURANCE, CO.<br>445 MOORLAND RD STE 300<br>BROOKFIELD, WI 53005 | $1,008,000.00 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | OMEGA NATIONAL PRODUCTS LLC | OMEGA NATIONAL PRODUCTS LLC<br>1010 ROWE STREET<br>ELKHART, IN 46516-5590 | $10.22 | |

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | PIONEER ELECTRONICS USA INC | PIONEER ELECTRONICS USA INC<br>2265 E 220TH ST<br>LONG BEACH, CA 90810 | $7,495.01 | |
| Open A/R | FLEETWOOD HOMES OF PA INC | QUALITY HOMES INC - D804267 | QUALITY HOMES INC - D804267<br>P O BOX 288<br>MILLERSVILLE, MD 21108 | $31,208.00 | |
| Open A/R | FLEETWOOD TT OF OR INC | SMILEY RV SALES AND SERVICE | SMILEY RV SALES AND SERVICE<br>53816 CROCKETT RD<br>MILTON FREEWATER, OR 97862 | $359.10 | |
| Open A/R | FLEETWOOD HOMES OF TX INC - WACO | STAR MOBILE HOMES - D802022 | STAR MOBILE HOMES - D802022<br>4603 W 7TH STREET<br>TEXARKANA, TX 75501 | $763.13 | |
| Open A/R | FLEETWOOD TT OF OR INC | STIERS RV CENTER OF VENTURA | STIERS RV CENTER OF VENTURA<br>3355 VENTURA ROAD<br>VENTURA, CA 93003 | $322.26 | |
| Open A/R | FLEETWOOD TT OF OR INC | SUNRIDGE RV & TRAILER SALES | SUNRIDGE RV & TRAILER SALES<br>63 KINGS VIEW ROAD SE<br>AIRDRIE, AB T4A 0A8 | $14,764.81 | |
| Open A/R | FLEETWOOD TT OF OR INC | VICTORY MOTORS OF CRAIG INC | VICTORY MOTORS OF CRAIG INC<br>DBA VICTORY MOTORS OF CRAIG INC<br>2705 WEST 1ST STREET<br>PO BOX 1348<br>CRAIG, CO 81625 | $1,157.61 | |
| Open A/R | FLEETWOOD HOMES - BELTON | WARRIOR GROUP THE - D803613 | WARRIOR GROUP THE - D803613<br>1624 FALCON DRIVE<br>DALLAS, TX 75115 | $63,037.24 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | WILEY METAL FABRICATING INC | WILEY METAL FABRICATING INC<br>PO BOX 1246<br>816 W 34TH ST<br>MARION, IN 46952 | $2,898.77 | |
| Open A/R | FLEETWOOD TT OF IN INC | BOB COX CAMPER COUNTRY INC | BOB COX CAMPER COUNTRY INC<br>6014 CLINTON HWY<br>KNOXVILLE, TN 37912 | $1,111.92 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | CAMPBELL MANUFACTURING INC | CAMPBELL MANUFACTURING INC<br>127 EAST SPRING STREET<br>P O BOX 207<br>BECHTELSVILLE, PA 19505-0207 | $49.00 | |
| Open A/R | FLEETWOOD TT OF IN INC | CAMPERLAND SERVICE & SALES | CAMPERLAND SERVICE & SALES<br>5498 COUNTY TRUNK HWY CV<br>MADISON, WI 53704 | $134.73 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | COASTER COMPANY OF AMERICA | COASTER COMPANY OF AMERICA<br>12928 SANDOVAL STREET<br>SANTE FE SPRINGS, CA 90670 | $105.00 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | DENSO SALES CALIFORNIA INC | DENSO SALES CALIFORNIA INC<br>3900 VIA ORO AVENUE<br>LONG BEACH, CA 90810 | $3,395.06 | |
| Open A/R | FLEETWOOD TT OF IN INC | DRIFTWOODS ATLANTIC RV CTR | DRIFTWOODS ATLANTIC RV CTR<br>6823 BLACK HORSE PIKE<br>EGG HARBOR TWP, NJ 8234 | $20.13 | |
| Open A/R | FLEETWOOD TT OF IN INC | EARLTON CAMPING CENTRE LTD | EARLTON CAMPING CENTRE LTD<br>332442 HWY 11 NORTH<br>EARLTON, ON P0J 1E0 | $1,085.41 | |
| Open A/R | CONTINENTAL IMPORTS | FLEETWOOD FOLDING TRAILERS | FLEETWOOD FOLDING TRAILERS<br>P O BOX 111<br>SOMERSET, PA 15501 | $102,083.53 | |
| Open A/R | FLEETWOOD TT OF IN INC | MEDIA CAMPING CENTER MEDIA | MEDIA CAMPING CENTER MEDIA<br>1243 W BALTIMORE PIKE<br>MEDIA, PA 19063 | $152.97 | |
| Open A/R | FLEETWOOD TT OF OR INC | SEE GRINS RVS & FARM RANCH | SEE GRINS RVS & FARM RANCH<br>DBA SEE GRINS RVS & FARM RANCH<br>13635 SYCAMORE AVENUE<br>SAN MARTIN, CA 95046 | $625.24 | |

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|------|-------------|-----------|-----------|-----------------|----------|
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | SPECIALTY WINDOW COVERINGS | SPECIALTY WINDOW COVERINGS DIV OF DECORATOR INDUSTRIES INC 1614 NORTH EISENHOWER DRIVE GOSHEN IN 46526 | $11,724.25 | |
| Open A/R | FLEETWOOD TT OR INC | SPECIALTY WINDOW COVERINGS | SPECIALTY WINDOW COVERINGS DIV OF DECORATOR INDUSTRIES INC 1614 NORTH EISENHOWER DRIVE GOSHEN IN 46526 | $2,076.41 | |
| Open A/R | FLEETWOOD TT OF IN INC | SUNCOAST RV - JACKSONVILLE | SUNCOAST RV - JACKSONVILLE 9012 BEACH BLVD JACKSONVILLE, FL 32246 | $492.44 | |
| Open A/R | FLEETWOOD TT OF IN INC | UNDER THE SUN TRAILERS LTD | UNDER THE SUN TRAILERS LTD 974 SYER LINE RR1 FRASERVILLE, ON K0L 1V0 | $8.09 | |
| Open A/R | FLEETWOOD TT OR INC | UNIVERSAL PLASTIC MOLD INC | UNIVERSAL PLASTIC MOLD INC 13245 LOS ANGELES STREET BALDWIN PARK, CA 91706-2244 | $121.36 | |
| Open A/R | FLEETWOOD TT OF IN INC | WILLIAMSBURG FURNITURE INC | WILLIAMSBURG FURNITURE INC 2096 CHEYENNE STREET NAPPANEE, IN 46550 | $812.45 | |
| Open A/R | FLEETWOOD TT OR INC | WILLIAMSBURG FURNITURE INC | WILLIAMSBURG FURNITURE INC 2096 CHEYENNE STREET NAPPANEE, IN 46550 | $141.00 | |
| Open A/R | FLEETWOOD TT OR INC | ALS TRAILER SALES - SALEM | ALS TRAILER SALES - SALEM 3085 BLOSSOM ST NE SALEM, OR 97305-1766 | $1,871.49 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | AQUATEC WATER SYSTEMS INC | AQUATEC WATER SYSTEMS INC 17422 PULLMAN STREET IRVINE, CA 92614 | $1,511.49 | |
| Open A/R | FLEETWOOD TT OR INC | ARBUTUS RV & MARINE SALES | ARBUTUS RV & MARINE SALES 3430 TRANSCANADA HWY. RR 2 COBBLE HILL, BC V0R 1L0 | $1,278.70 | |
| Open A/R | FLEETWOOD TT OF IN INC | BILL WAITS RV SUPERCENTER | BILL WAITS RV SUPERCENTER DBA BILL WAITS RV SUPERCENTER 129 CONTINENTAL BLVD POOLER, GA 31322 | $8.64 | |
| Open A/R | FLEETWOOD TT OF IN INC | CAMPING IN STYLE - WHITBY | CAMPING IN STYLE - WHITBY 7775 BALDWIN STREET NORTH HWY 12 NORTH OF WHITBY BROOKLYN, ON L1M 1Y5 | $164.29 | |
| Open A/R | FLEETWOOD TT OF IN INC | CAPE BRETON TRAILER SALES | CAPE BRETON TRAILER SALES 1663 TRANSCANADA HWY 105 BRAS D' OR NS B1Y 2B9 | $1,516.54 | |
| Open A/R | FLEETWOOD TT OF OH INC | CARAVANE VAILLANCOURT INC | CARAVANE VAILLANCOURT INC 180 BOUL MGR LANGLOIS VALLEYFIELD, QC J6S 4V3 | $15,107.95 | |
| Open A/R | FLEETWOOD TT OF IN INC | CARL COX QUALITY CARS LTD | CARL COX QUALITY CARS LTD 40910 OLD HWY 2 EAST BELLEVILLE, ON K8N 4Z4 | $68.02 | |
| Open A/R | FLEETWOOD TT OF IN INC | CLARKS MANUFACTURED HOMES | CLARKS MANUFACTURED HOMES 5365 E PICKARD RD MT PLEASANT, MI 48858 | $801.06 | |
| Open A/R | FLEETWOOD TT OF IN INC | CURTIS TRAILER CENTER INC | CURTIS TRAILER CENTER INC 12515 US 131 SCHOOLCRAFT, MI 49087 | $35.05 | |
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | DEXTER AXLE COMPANY, INC. | DEXTER AXLE COMPANY, INC. 2900 INDUSTRIAL PKWY EAST ELKHART, IN 46516 | TBD | |
| Open A/R | FLEETWOOD HOMES OF TX LP | DSH MFG HOUSING GROUP LLC | DSH MFG HOUSING GROUP LLC 293 E TELEGRAPH STE 201 WASHINGTON, UT 84780 | $1,351.11 | |
| Open A/R | FLEETWOOD TT OF IN INC | EMERALD COAST R.V. CENTER | EMERALD COAST R.V. CENTER 6240 GULF BREEZE PARKWAY GULF BREEZE, FL 32563 | $38.91 | |

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|------|--------------|------------|------------|------------------|----------|
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | FLEXSTEEL INDUSTRIES - IA | FLEXSTEEL INDUSTRIES - IA<br>BRUNSWICK INDUSTRIAL BLOCK<br>P O BOX 877<br>DUBUQUE, IA  52004-0877 | $45,136.07 | |
| Open A/R | FLEETWOOD TT OF IN INC | GRESHAM RV CENTER  GRESHAM | GRESHAM RV CENTER  GRESHAM<br>325 NE HOGAN RD<br>GRESHAM, OR  97030 | $126.11 | |
| Open A/R | FLEETWOOD TT OF IN INC | HARBERSON RV-PINELLAS LLC | HARBERSON RV-PINELLAS LLC<br>17028 US HWY 19 N<br>CLEARWATER, FL  33764 | $71.53 | |
| Open A/R | FLEETWOOD TT OF IN INC | HILLTOP TRAILER SALES INC | HILLTOP TRAILER SALES INC<br>7810 UNIVERSITY AVENUE NE<br>MINNEAPOLIS, MN  55432 | $1,486.57 | |
| Open A/R | FLEETWOOD TT OF IN INC | HOLIDAY KAMPER - COLUMBIA | HOLIDAY KAMPER - COLUMBIA<br>3650 FERNANDINA RD<br>COLUMBIA, SC  29210 | $1,708.29 | |
| Open A/R | FLEETWOOD TT OF OR INC | HOME STYLE INDUSTRIES INC | HOME STYLE INDUSTRIES INC<br>1323 11TH AVE NORTH<br>NAMPA, ID  83687 | $486.47 | |
| Open A/R | FLEETWOOD TT OF OR INC | INTERTEK DISTRIBUTION INC | INTERTEK DISTRIBUTION INC<br>2923 THORNE DRIVE<br>ELKHART, IN  46514-9228 | $344.56 | |
| Open A/R | FLEETWOOD HOMES OF OR INC | J & M HOMES LLC - D804177 | J & M HOMES LLC - D804177<br>15815 POPE LANE<br>OREGON CITY, OR  97045 | $80.00 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | MIDWEST SALES AND SERVICE | MIDWEST SALES AND SERVICE<br>917 S CHAPIN ST<br>SOUTH BEND, IN  46601-2829 | $1,216.00 | |
| Open A/R | FLEETWOOD TT OF IN INC | MIDWEST SALES AND SERVICE | MIDWEST SALES AND SERVICE<br>917 S CHAPIN ST<br>SOUTH BEND, IN  46601-2829 | $433.00 | |
| Open A/R | FLEETWOOD TT OF OR INC | MIDWEST SALES AND SERVICE | MIDWEST SALES AND SERVICE<br>917 S CHAPIN ST<br>SOUTH BEND, IN  46601-2829 | $726.66 | |
| Open A/R | FLEETWOOD HOMES OF CA | MOBILE REPO INC - D801773 | MOBILE REPO INC - D801773<br>DBA MOBILE REPO<br>8044 SOQUEL DRIVE SUITE A<br>APTOS, CA  95003 | $180.85 | |
| Open A/R | FLEETWOOD TT OF IN INC | MOTO SPORT DE LA CAPITALE | MOTO SPORT DE LA CAPITALE<br>1100 SAGUENAY BLVD<br>ROUYN-NORANDA, QC  J9X 7B6 | $5,249.41 | |
| Open A/R | FLEETWOOD HOMES OF TX LP | NELMSTAR NORMAN - D804244 | NELMSTAR NORMAN - D804244<br>2982 MELBA LANE<br>NORMAN, OK  73072 | $716.20 | |
| Open A/R | FLEETWOOD TT OF IN INC | OUTDOOR RV AND MARINE LLC | OUTDOOR RV AND MARINE LLC<br>3760 FERNANDINA RD<br>COLUMBIA, SC  29210 | $994.35 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | OWENS CORNING FABWEL - IN | OWENS CORNING FABWEL - IN<br>2341 E MARKET STREET<br>NAPPANEE, IN  46550 | $6,129.34 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | PETERSON MANUFACTURING CO | PETERSON MANUFACTURING CO<br>4200 E 135TH ST<br>GRANDVIEW, MO  64030 | $78.80 | |
| Open A/R | FLEETWOOD TT OF OR INC | PIK-A-DILLY TRAILER SALES | PIK-A-DILLY TRAILER SALES<br>320 HIGHLAND AVE<br>ATTN PARTS<br>BRANDON, MB  R7C 1A9 | $119.31 | |
| Open A/R | FLEETWOOD TT OF IN INC | RICK BAKERS RV CENTER INC | RICK BAKERS RV CENTER INC<br>327 N ORANGE AVENUE<br>GREEN COVE SPRINGS, FL  32043 | $315.23 | |
| Open A/R | FLEETWOOD TT OF OR INC | ROCKY MOUNTAIN DODGE & RV | ROCKY MOUNTAIN DODGE & RV<br>4415-42 AVENUE BOX 2220<br>ROCKY MTN HOUSE, AB  T4T 1B6 | $45,273.97 | |

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | RV SALES OF BROWARD, INC. | RV SALES OF BROWARD, INC.<br>1955 S STATE RD 7<br>FORT LAUDERDALE, FL 33317 | TBD | 6 |
| Third Party Litigation | FLEETWOOD MOTOR HOMES OF INDIANA, INC. | RV SALES OF BROWARD, INC. | RV SALES OF BROWARD, INC.<br>1955 S STATE RD 7<br>FORT LAUDERDALE, FL 33317 | TBD | 6 |
| Third Party Litigation | FLEETWOOD MOTOR HOMES OF PENNSYLVANIA, INC. | RV SALES OF BROWARD, INC. | RV SALES OF BROWARD, INC.<br>1955 S STATE RD 7<br>FORT LAUDERDALE, FL 33317 | TBD | 6 |
| Third Party Litigation | FLEETWOOD TRAVEL TRAILERS OF KENTUCKY, INC. | RV SALES OF BROWARD, INC. | RV SALES OF BROWARD, INC.<br>1955 S STATE RD 7<br>FORT LAUDERDALE, FL 33317 | TBD | 6 |
| Third Party Litigation | FLEETWOOD TRAVEL TRAILERS OF MARYLAND, INC. | RV SALES OF BROWARD, INC. | RV SALES OF BROWARD, INC.<br>1955 S STATE RD 7<br>FORT LAUDERDALE, FL 33317 | TBD | 6 |
| Open A/R | FLEETWOOD TT OF IN INC | SOUTH TEXAS RV SUPERSTORE | SOUTH TEXAS RV SUPERSTORE<br>3637 W US HWY 90<br>SEGUIN, TX 78155 | $542.43 | |
| Open A/R | FLEETWOOD TT OF IN INC | SPORT RIDER OUTDOOR WORLD | SPORT RIDER OUTDOOR WORLD<br>DBA SPORT RIDER OUTDOOR WORLD<br>2309 SMITHTOWN ROAD<br>MORGANTOWN WV  26508 | $225.27 | |
| Open A/R | FLEETWOOD HOMES OF CA | STATEWIDE HOMES - D800593 | STATEWIDE HOMES - D800593<br>1245 SUTTON WAY<br>GRASS VALLEY, CA 95945 | $600.00 | |
| Open A/R | FLEETWOOD TT OF IN INC | STONES SUPERIOR HOMES LTD | STONES SUPERIOR HOMES LTD<br>2689 WESTVILLE RD<br>NEW GLASGLOW, NS B2H 5E7 | $2,633.09 | |
| Open A/R | FLEETWOOD TT OF IN INC | TOM RAPER INC - FAIRFIELD | TOM RAPER INC - FAIRFIELD<br>5300 N DIXIE HWY<br>FAIRFIELD, OH 45014 | $91.46 | |
| Open A/R | FLEETWOOD TT OF IN INC | APACHE VILLAGE RV CENTER | APACHE VILLAGE RV CENTER<br>9001 DUNN RD<br>HAZELWOOD, MO  63042 | $157.91 | |
| Open A/R | FLEETWOOD TT OF IN INC | CARAVANE VALLANCOURT INC | CARAVANE VALLANCOURT INC<br>180 BOUL MGR LANGLOIS<br>VALLEYFIELD, QC  J6S 0A7 | $3,910.44 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | DECORATOR INDUSTRIES INC | DECORATOR INDUSTRIES INC<br>COLUMBIA COUNTY INDUST PARK<br>18 INDUSTRIAL DRIVE<br>BLOOMSBURG, PA  17815 | $2,109.92 | |
| Open A/R | FLEETWOOD TT OF IN INC | DICKEY-STOUT MOTOR COACH | DICKEY-STOUT MOTOR COACH<br>5156 CANYON DRIVE<br>AMARILLO, TX  79109 | $86.06 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | DIESEL EQUIPMENT COMPANY | DIESEL EQUIPMENT COMPANY<br>21220 ATWELL AVE<br>BOX I6606<br>GREENSBORO, NC  27406 | $88.73 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | DON RAY DRIVE A WAY - IN | DON RAY DRIVE A WAY - IN<br>PO BOX 246<br>DECATUR, IN  46733 | $3,828.63 | |
| Open A/R | FLEETWOOD TT OF IN INC | DUSTY'S CAMPER WORLD LLC | DUSTY'S CAMPER WORLD LLC<br>7400 SR 60 E.<br>BARTOW, FL  33830 | $126.95 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | EL MONTE PLASTICS INC CA | EL MONTE PLASTICS INC CA<br>2449 STROZIER AVENUE<br>SOUTH EL MONTE, CA  91733 | $240.03 | |
| Open A/R | FLEETWOOD ENTERPRISES INC | FLEXSTEEL INDUSTRIES INC | FLEXSTEEL INDUSTRIES INC<br>7227 CENTRAL AVE<br>RIVERSIDE, CA  92504 | - | |
| Open A/R | FLEETWOOD TT OF IN INC | FLEXSTEEL INDUSTRIES INC | FLEXSTEEL INDUSTRIES INC<br>P O BOX 877<br>DUBUQUE, IA  52004-0877 | $859.49 | |

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD TT OF OR INC | FLEXSTEEL INDUSTRIES INC | FLEXSTEEL INDUSTRIES INC<br>P O BOX 877<br>DUBUQUE, IA 52004-0877 | $212.63 | |
| Open A/R | FLEETWOOD ENTERPRISES INC | GIBRALTAR INSURANCE LTD. | GIBRALTAR INSURANCE LTD.<br>C/O QUEST INS SOLUTIONS LTD<br>16 CHURCH ST.<br>PO BOX HM 2062, HM HX<br>HAMILTON | $280,364.44 | |
| Open A/R | FLEETWOOD HOMES OF AZ INC | GREAT AMERICAN - D509905 | GREAT AMERICAN - D509905<br>DBA GREAT AMERICAN<br>1110 N HWY 666<br>GALLUP, NM 87301 | $212.63 | |
| Open A/R | FLEETWOOD HOMES OF TX INC - WACO | GREAT AMERICAN - D509905 | GREAT AMERICAN - D509905<br>DBA GREAT AMERICAN<br>1110 N HWY 666<br>GALLUP, NM 87301 | $509.52 | |
| Open A/R | FLEETWOOD TT OF IN INC | HOLIDAY ON WHEELS INC FL | HOLIDAY ON WHEELS INC FL<br>4100 W 23RD STREET<br>PANAMA CITY, FL 32405 | $338.48 | |
| Open A/R | FLEETWOOD TT OF OR INC | HOLIDAY RV & AUTO CENTRE | HOLIDAY RV & AUTO CENTRE<br>1800 HWY DR S<br>REDCLIFF, AB T0J 2P0 | $22,878.48 | |
| Open A/R | FLEETWOOD HOMES OF OR INC | HUNT MFG HOMES - D166552 | HUNT MFG HOMES - D166552<br>3450 HWY 16<br>BREMERTON, WA 98312 | $1,345.00 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | IRVINE SHADE & DOOR - CA | IRVINE SHADE & DOOR - CA<br>940 CHALLENGER<br>BREA, CA 92821 | $18.00 | |
| Open A/R | FLEETWOOD TT OF IN INC | IRVINE SHADE & DOOR - CA | IRVINE SHADE & DOOR - CA<br>940 CHALLENGER<br>BREA, CA 92821 | $3,184.37 | |
| Open A/R | FLEETWOOD TT OF OR INC | IRVINE SHADE & DOOR - CA | IRVINE SHADE & DOOR - CA<br>940 CHALLENGER<br>BREA, CA 92821 | $368.75 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | IRVINE SHADE & DOOR - IN | IRVINE SHADE & DOOR - IN<br>1000 VERDANT DR<br>ELKHART, IN 46516 | $9,839.58 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | JASPER PLASTIC SOLUTIONS | JASPER PLASTIC SOLUTIONS<br>501 W RAILROAD AVE<br>SYRACUSE, IN 46567 | $100.26 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | KAUFFMAN ENGINEERING INC | KAUFFMAN ENGINEERING INC<br>315 N LIBERTY STREET<br>BREMEN, IN 46506 | $182.76 | |
| Open A/R | FLEETWOOD TT OF IN INC | LAFAYETTE TRAVEL TRAILER | LAFAYETTE TRAVEL TRAILER<br>2651 STATE ROAD 25 NORTH<br>LAFAYETTE, IN 47905-3955 | $2,236.07 | |
| Open A/R | FLEETWOOD TT OF IN INC | LOWERY TRAILER SALES INC | LOWERY TRAILER SALES INC<br>21000 VAN DYKE<br>WARREN, MI 48089 | $2,993.55 | |
| Open A/R | FLEETWOOD HOMES OF CA INC | MAJESTIC HOMES - D801652 | MAJESTIC HOMES - D801652<br>18411 SOLEDAD CANYON RD<br>CANYON COUNTRY, CA 91351 | $657.50 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | MARINCO ELECTRICAL GROUP | MARINCO ELECTRICAL GROUP<br>2655 NAPA VALLEY CORPORATE DR<br>NAPA, CA 94558 | $56.37 | |
| Open A/R | FLEETWOOD TT OF IN INC | MIDWAY TRAILER SALES INC | MIDWAY TRAILER SALES INC<br>600 THIRD STREET NORTH<br>ST LAWRENCE, SD 57373 | $1,503.71 | |
| Open A/R | FLEETWOOD HOMES OF CA INC | NEW HORIZON MOBILE HOMES | NEW HORIZON MOBILE HOMES<br>1510 Parkmoor Ave<br>San Jose, CA 95128 | $540.35 | |
| Open A/R | FLEETWOOD TT OF OR INC | PROGRESSIVE DYNAMICS INC | PROGRESSIVE DYNAMICS INC<br>507 INDUSTRIAL RD<br>MARSHALL, MI 49068-1796 | $232.25 | |

Exhibit "D"

**Fleetwood Enterprises, Inc. et al.**

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD TT OF OR INC | RANGE VEHICLE CENTER INC | RANGE VEHICLE CENTER INC<br>11626 MARIPOSA RD.<br>HESPERIA, CA 92345 | $907.51 | |
| Open A/R | FLEETWOOD TT OF IN INC | SETZERS WORLD OF CAMPING | SETZERS WORLD OF CAMPING<br>5319 CHERRY LAWN RD<br>HUNTINGTON, WV 25705 | $273.73 | |
| Open A/R | FLEETWOOD TT OF IN INC | TOM RAPER INC - RICHMOND | TOM RAPER INC - RICHMOND<br>2250 WILLIAMSBURG PIKE<br>RICHMOND, IN 47374 | $340.24 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | TRIPLEX MANUFACTURING CO | TRIPLEX MANUFACTURING CO<br>2700 WEST 50TH STREET<br>CHICAGO, IL 60678-5151 | $29.45 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | TRISTAR DISTRIBUTING INC | TRISTAR DISTRIBUTING INC<br>PO BOX 464<br>58263 CHARROLET AVE<br>GOSHEN, IN 46527 | $4,793.00 | |
| Open A/R | FLEETWOOD TT OF IN INC | TRISTAR DISTRIBUTING INC | TRISTAR DISTRIBUTING INC<br>58263 CHARLOTTE AVENUE<br>PO BOX 2986<br>ELKHART, IN 46515-2986 | $1,037.09 | |
| Open A/R | FLEETWOOD TT OF OR INC | TRISTAR DISTRIBUTING INC | TRISTAR DISTRIBUTING INC<br>58263 CHARLOTTE AVENUE<br>PO BOX 2986<br>ELKHART, IN 46515-2986 | $2,436.41 | |
| Open A/R | FLEETWOOD TT OF OR INC | AL-KO KOBER CORPORATION | AL-KO KOBER CORPORATION<br>4250 E LOWELL STREET<br>ONTARIO, CA 91761 | $11,667.20 | |
| Open A/R | FLEETWOOD TT OF IN INC | AMERICAN RV & SUPPLY CO | AMERICAN RV & SUPPLY CO<br>DBA AMERICAN RV & SUPPLY CO<br>4110 BEN FICKLIN ROAD<br>SAN ANGELO, TX 76901 | $2,294.11 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | BARKER MANUFACTURING CO | BARKER MANUFACTURING CO<br>730 E MICHGAN AVE<br>BATTLE CREEK, MI 49016 | $955.57 | |
| Open A/R | FLEETWOOD TT OF IN INC | BECKLEYS CAMPING CENTER | BECKLEY'S CAMPING CENTER<br>11109 ANGLEBERGER RD<br>THURMONT, MD 21788 | $202.41 | |
| Open A/R | FLEETWOOD TT OF IN INC | BLANCHARD TRAILER SALES | BLANCHARD TRAILER SALES<br>6632 AIRLINE HWY<br>BATON ROUGE, LA 70805 | $2,774.90 | |
| Open A/R | FLEETWOOD TT OF OR INC | BUTLER AUTO & RV CENTER | BUTLER AUTO & RV CENTER<br>142 TRANQUILLE RD<br>KAMLOOPS, BC V2B 3G1 | $62,998.65 | |
| Open A/R | FLEETWOOD TT OF IN INC | CAMPING SALES & SERVICE | CAMPING SALES & SERVICE<br>DBA CAMPING SALES & SERVICE<br>6003 S KING HWY 17 SOUTH<br>MYRTLE BEACH, SC 29575 | $31.52 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | CENTURY WHEEL & RIM INC | CENTURY WHEEL & RIM INC<br>1550 GAGE ROAD<br>MONTEBELLO, CA 90640-6600 | $82.24 | |
| Open A/R | FLEETWOOD TT OF IN INC | CHARLIES CAMPING CENTER | CHARLIES CAMPING CENTER<br>10100 LIBERTY ROAD<br>RANDALLSTOWN, MD 21133 | ' | |
| Open A/R | FLEETWOOD TT OF IN INC | DEANS RV SUPERSTORE INC | DEANS RV SUPERSTORE INC<br>9955 E 21ST ST<br>TULSA, OK 74129-4422 | $173.14 | |
| Open A/R | FLEETWOOD HOMES OF PA INC | FECTEAU RESIDENTIAL INC | FECTEAU RESIDENTIAL INC<br>350 RIVER STREET<br>MONTPELIER, VT 5602 | $66.39 | |
| Open A/R | FLEETWOOD TT OF IN INC | FRASERWAY RV CENTRE LTD | FRASERWAY RV CENTRE LTD<br>212 ROCKY LAKE DR<br>BEDFORD, NS B4A 2T7 | $196.80 | |
| Open A/R | FLEETWOOD TT OF IN INC | GRUMBINES RV CENTER INC | GRUMBINES RV CENTER INC<br>7501 ALLENTOWN BLVD<br>HARRISBURG, PA 17112 | $450.26 | |

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | GUARDIAN AUTOMOTIVE INC | GUARDIAN AUTOMOTIVE INC<br>PO BOX 336<br>STATE ROAD 67<br>UPPER SANDUSKY, OH  43351 | $11,325.08 | |
| Open A/R | FLEETWOOD TT OF IN INC | HILLTOP TRAVEL TRAILERS | HILLTOP TRAVEL TRAILERS<br>700 WEST RED OAK<br>PO BOX 723<br>RED OAK, TX  75154 | $277.64 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | INDIANA MILLS & MFG INC | INDIANA MILLS & MFG INC<br>130 WEST MAIN ST<br>CARMEL, IN  46032 | $264.40 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | INNOVATIVE LIGHTING INC | INNOVATIVE LIGHTING INC<br>109 PROGRESSIVE AVENUE<br>PO BOX 366<br>ROLAND, IA  50236 | $44.88 | |
| Open A/R | FLEETWOOD TT OF IN INC | INTELLITEC PRODUCTS  LLC | INTELLITEC PRODUCTS  LLC<br>2000 BRUNSWICK LANE<br>DELAND, FL  32724-2001 | $116.57 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | INTELLITEC PRODUCTS LLC | INTELLITEC PRODUCTS LLC<br>3045 TECH PARK WAY<br>DELAND, FL  32724 | $7,725.75 | |
| Open A/R | FLEETWOOD TT OF OR INC | INTERMATIC INCORPORATED | INTERMATIC INCORPORATED<br>PO BOX 92431<br>CHICAGO, IL  60675 | $55.70 | |
| Open A/R | FLEETWOOD TT OF IN INC | LAZY DAYS RV CENTER INC | LAZY DAYS RV CENTER INC<br>6130 LAZY DAYS BLVD<br>SEFFNER, FL  33584 | $1,576.49 | |
| Open A/R | FLEETWOOD TT OF OR INC | LONE PEAK TRAILER SALES | LONE PEAK TRAILER SALES<br>3851 N FRONTAGE ROAD<br>LEHI, UT  84043 | $7,547.17 | |
| Open A/R | FLEETWOOD TT OF IN INC | M & G TRAILER RANCH INC | M & G TRAILER RANCH INC<br>777 SO HWY 288<br>CLUTE, TX  77531 | $634.89 | |
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | MARSHI/MIDWEST EMPLOYERS | MARSHI/MIDWEST EMPLOYERS<br>14755 NORTH OUTER FORTY DR STE 300<br>CHESTERFIELD, MO  63017 | TBD | |
| Open A/R | FLEETWOOD TT OF IN INC | MARSHALLS RV CENTER INC | MARSHALLS RV CENTER INC<br>22719 INTERSTATE 20<br>WILLS POINT, TX  75169 | $330.67 | |
| Open A/R | FLEETWOOD TT OF IN INC | MARSHALLS RV CENTER INC | MARSHALLS RV CENTER INC<br>9474 E US HWY 175<br>KEMP, TX  75143-3356 | $290.84 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | MCMASTER-CARR SUPPLY CO | MCMASTER-CARR SUPPLY CO<br>200 AURORA INDUSTRIAL PKWY<br>AURORA, OH  44202 | $72.52 | |
| Open A/R | FLEETWOOD TT OF OR INC | MCMASTER-CARR SUPPLY CO | MCMASTER-CARR SUPPLY CO<br>9630 NORWALK BLVD<br>SANTA FE SPRINGS, CA  90760 | $188.50 | |
| Open A/R | FLEETWOOD HOMES OF CA | OASIS GARDENS - D801851 | OASIS GARDENS - D801851<br>85-400 GRAPEFRUIT BLVD<br>COACHELLA, CA  92236 | $446.02 | |
| Open A/R | FLEETWOOD TT OF OR INC | PAINTERS SUN COUNTRY RV | PAINTERS SUN COUNTRY RV<br>1500 S HILTON DRIVE<br>SAINT GEORGE, UT  84770 | $1,015.47 | |
| Open A/R | FLEETWOOD TT-CAMPBELLSVILLE | PIKEVILLE RV SALES I NC | PIKEVILLE RV SALES I NC<br>US 23 SOUTH BOX 309<br>HAROLD, KY  41635 | $9,811.00 | |
| Open A/R | FLEETWOOD HOMES OF CA | QUALITY HOMES - D801788 | QUALITY HOMES - D801788<br>DBA QUALITY HOMES<br>715 D CAPITOLA AVE<br>CAPITOLA, CA  95010 | $133.00 | |
| Open A/R | FLEETWOOD TT OF OR INC | SELECT CLASSIC CARRIERS | SELECT CLASSIC CARRIERS<br>226A PORTAGE AVE<br>SASKATOON, SK  S7J 4C6 | - | |

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | SIGMA SWITCHES PLUS INC | SIGMA SWITCHES PLUS INC<br>4703 WYLAND DRIVE<br>ELKHART, IN 46516 | $22.39 | |
| Open A/R | FLEETWOOD TT OF IN INC | TRAVEL TRAILER MISC A/R | TRAVEL TRAILER MISC A/R | $59.25 | |
| Open A/R | FLEETWOOD TT OF OR INC | TRAVEL TRAILER MISC A/R | TRAVEL TRAILER MISC A/R | $1,706.25 | |
| Open A/R | FLEETWOOD TT OF OR INC | WILLIE'S CAMPING CENTER | WILLIE'S CAMPING CENTER<br>3727 HIGHWAY 421 NORTH<br>CLINTON, NC 28328 | $321.28 | |
| Open A/R | FLEETWOOD TT OF IN INC | YOUNGBLOODS CAPETOWN RV | YOUNGBLOODS CAPETOWN RV<br>229 AIRPORT RD<br>CAPE GIRARDEAU, MO 63701 | $969.47 | |
| Open A/R | FLEETWOOD TT OF OR INC | AFFORDABLE RV HESPERIA | AFFORDABLE RV HESPERIA<br>11854 MARIPOSA RD<br>HESPERIA, CA 92345 | $5,393.30 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | AVIONIC STRUCTURES INC | AVIONIC STRUCTURES INC<br>1429 N STATE COLLEGE BLVD<br>ANAHEIM, CA 92806-1293 | $1,077.00 | |
| Open A/R | FLEETWOOD TT OF OR INC | BOBS TRAVEL CENTER INC | BOBS TRAVEL CENTER INC<br>700 SANTA ROSA AVE<br>SANTA ROSA, CA 95404 | $83.84 | |
| Open A/R | FLEETWOOD TT OF OR INC | BOUNDARY RV AND MARINE | BOUNDARY RV AND MARINE<br>2405 50 AVE<br>LLOYDMINSTER, SK S9V 1Z7 | - | |
| Open A/R | FLEETWOOD TT OF OR INC | CAMPING WORLD OF BOISE | CAMPING WORLD OF BOISE<br>1580 W OVERLAND RD<br>MERIDIAN, ID 83642 | $5,574.08 | |
| Open A/R | FLEETWOOD TT OF OR INC | CAMPING WORLD RV SALES | CAMPING WORLD RV SALES<br>DBA CAMPING WORLD RV SALES<br>24901 W PICO CANYON RD<br>VALENCIA, CA 91381 | $591.39 | |
| Open A/R | FLEETWOOD HOMES OF OR INC | COACH CORRAL CORPORATE | COACH CORRAL CORPORATE<br>377 S BURLINGTON BLVD<br>BURLINGTON, WA 98233 | $253.97 | |
| Open A/R | FLEETWOOD TT OF IN INC | CPI PLASTICS GROUP LTD | CPI PLASTICS GROUP LTD<br>1042A MITCHELL JELLISON DR N<br>ELKHART, IN 46516 | $71.16 | |
| Open A/R | FLEETWOOD TT OF IN INC | DEMONTROND MOTORS CORP | DEMONTROND MOTORS CORP<br>28001-45<br>TEXAS CITY, TX 77591 | $1,724.64 | |
| Open A/R | FLEETWOOD TT OF OR INC | FAST TOYS FOR BOYS LTD | FAST TOYS FOR BOYS LTD<br>1 FORD LANCE<br>DAVIDSON, SK S0G 1A0 | $474.16 | |
| Open A/R | FLEETWOOD TT OF OR INC | FIELD OF DREAMS RV LTD | FIELD OF DREAMS RV LTD<br>70 COMMERCIAL CRT<br>CALGARY AB T3Z 2A5 | $305.56 | |
| Open A/R | FLEETWOOD TT OF OR INC | GREAT WESTERN AUTOPLEX | GREAT WESTERN AUTOPLEX<br>DBA GREAT WESTERN AUTO PLEX<br>2100 ELK STREET<br>ROCK SPRINGS, WY 82901 | $657.98 | |
| Open A/R | CONTINENTAL IMPORTS | GUSTAFSON LIGHTING INC | GUSTAFSON LIGHTING INC<br>PO BOX 39<br>ELKHART, IN 46517 | $50,579.26 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | GUSTAFSON LIGHTING INC | GUSTAFSON LIGHTING INC<br>57766 CR 3 SOUTH<br>P.O.BOX 39<br>ELKHART, IN 46515 | $648.16 | |
| Open A/R | FLEETWOOD TT OF IN INC | GUSTAFSON LIGHTING INC | GUSTAFSON LIGHTING INC<br>3414 PAYSPHERE CIRCLE<br>CHICAGO, IL 60674 | $82.36 | |
| Open A/R | FLEETWOOD TT OF OR INC | GUSTAFSON LIGHTING INC | GUSTAFSON LIGHTING INC<br>3414 PAYSPHERE CIRCLE<br>CHICAGO, IL 60674 | $29.17 | |
| Open A/R | FLEETWOOD TT OF OR INC | HOLIDAY MOTORHOMES INC | HOLIDAY MOTORHOMES INC<br>6300 PACIFIC HWY E<br>FIFE, WA 98424 | $120.03 | |

Exhibit "D"

**Fleetwood Enterprises, Inc. et al.**

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD TT OF IN INC | J & J CAMPER SALES INC | J & J CAMPER SALES INC<br>1501 ILLINOIS RT 5<br>EAST MOLINE, IL 61244 | $1,947.48 | |
| Open A/R | FLEETWOOD TT OF OR INC | KUSTOM KOACH RV CENTRE | KUSTOM KOACH RV CENTRE<br>26875 Fraser Hwy<br>Aldergrove, V4W 3E4 | $38,299.55 | |
| Open A/R | FLEETWOOD TT OF IN INC | LEISURE TIME PARK & TS | LEISURE TIME PARK & TS<br>8431 HWY 9<br>CALEDON, ON L7E 0E8 | $5,250.12 | |
| Open A/R | FLEETWOOD TT OF OR INC | MACFAM INC DBA CHIARLE | MACFAM INC DBA CHIARLE<br>1928 RUSTIN AVE<br>RIVERSIDE, CA 92507-2433 | $60.80 | |
| Open A/R | FLEETWOOD TT OF OR INC | MAIN TRAILER SALES INC | MAIN TRAILER SALES INC<br>2900 W SECOND STREET<br>ROSWELL, NM 88201 | $805.30 | |
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | MARSH/WESTCHESTER FIRE | MARSH/WESTCHESTER FIRE | TBD | |
| Open A/R | FLEETWOOD TT OF OR INC | MICHAEL HOHL RV CENTER | MICHAEL HOHL RV CENTER<br>4455 SOUTH CARSON STREET<br>CARSON CITY, NV 89701 | $11.10 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | NESA INTERNATIONAL INC | NESA INTERNATIONAL INC<br>103095 SLUSHER DRIVE UNIT 2<br>SANTA FE SPRINGS, CA 90670 | $3,413.11 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | NICKS DOOR CORPORATION | NICKS DOOR CORPORATION<br>1052 WEST KIRKWALL RD<br>AZUSA, CA 91702 | $4,965.39 | |
| Open A/R | FLEETWOOD TT OF OR INC | NICKS DOOR CORPORATION | NICKS DOOR CORPORATION<br>1052 WEST KIRKWALL RD<br>AZUSA, CA 91702 | $93.20 | |
| Open A/R | CONTINENTAL IMPORTS | PACIFIC COACHWORKS INC | PACIFIC COACHWORKS INC<br>549 RIVERA STREET<br>RIVERSIDE, CA 92501 | $1,825.63 | |
| Open A/R | FLEETWOOD TT OF IN INC | PANASONIC COMPANY WEST | PANASONIC COMPANY WEST<br>P O BOX 100443<br>PASADENA, CA 91189-0443 | $1,051.07 | |
| Open A/R | FLEETWOOD TT OF OR INC | PARKLANE RV CENTRE LTD | PARKLANE RV CENTRE LTD<br>1638 CARY RD<br>KELOWNA, BC V1X 2B9 | $641.53 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | PATRICK INDUSTRIES INC | PATRICK INDUSTRIES INC<br>3099 NORTH PACIFIC HWY<br>WOODBURN, OR 97071 | $947.75 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | PATRICK INDUSTRIES INC | PATRICK INDUSTRIES INC<br>1930 WEST LUSHER ROAD<br>ELKHART, IN 46514-1150 | $218.82 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | PATRICK INDUSTRIES INC | PATRICK INDUSTRIES INC<br>28163 CR 20<br>ELKHART, IN 46517 | $834.15 | |
| Open A/R | FLEETWOOD TT OF IN INC | PATRICK INDUSTRIES INC | PATRICK INDUSTRIES INC<br>13414 SLOVER AVE<br>FONTANA, CA 92337 | $153.84 | |
| Open A/R | FLEETWOOD TT OF OR INC | PATRICK INDUSTRIES INC | PATRICK INDUSTRIES INC<br>13414 SLOVER AVE<br>FONTANA, CA 92337 | $5,940.02 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | PRECISION CIRCUITS INC | PRECISION CIRCUITS INC<br>5403 PATTON DR UNIT 222<br>LISLE, IL 60532 | $573.91 | |
| Open A/R | FLEETWOOD TT OF OR INC | ROBERSON RV CENTER INC | ROBERSON RV CENTER INC<br>3780 TURNER ROAD SE<br>SALEM, OR 97301 | $1,953.38 | |
| Open A/R | FLEETWOOD TT OF IN INC | ROSKOPFS RV CENTER LTD | ROSKOPFS RV CENTER LTD<br>W 164 N 9806 WATER STREET<br>MENOMONEE FALLS, WI 53051 | $1,817.21 | |
| Open A/R | FLEETWOOD TT OF IN INC | ROULOTTES BAIE ST PAUL | ROULOTTES BAIE ST PAUL<br>1588 MGR CAVAL<br>BAIE ST PAUL, QC G3Z 2X7 | $240.25 | |

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD TT OF IN INC | SICARD HOLIDAY CAMPERS | SICARD HOLIDAY CAMPERS<br>7526 HIGHWAY 20<br>SMITHVILLE, ON  L0R 2A0 | $1,995.79 | |
| Open A/R | FLEETWOOD TT OF OR INC | SMITH CHEVROLET CO INC | SMITH CHEVROLET CO INC<br>1523 N 25TH E<br>IDAHO FALLS, ID  83401 | $61.34 | |
| Open A/R | FLEETWOOD TT OF OR INC | STERLING TRAILER SALES | STERLING TRAILER SALES<br>BOX 25 1935 2ND AVE NORTH<br>DUNMORE, AB  T0J 1A0 | $3,373.44 | |
| Open A/R | FLEETWOOD TT OF IN INC | TOP LINE MANUFACTURING | TOP LINE MANUFACTURING<br>P O BOX 739<br>7032 ALONDRA BLVD<br>PARAMOUNT, CA  90723 | $401.72 | |
| Open A/R | FLEETWOOD TT OF OR INC | TOP LINE MANUFACTURING | TOP LINE MANUFACTURING<br>P O BOX 739<br>7032 ALONDRA BLVD<br>PARAMOUNT, CA  90723 | $362.35 | |
| Open A/R | CONTINENTAL IMPORTS | WESCO DISTRIBUTION INC | WESCO DISTRIBUTION INC<br>404 S LASALLE STREET<br>SPENCER, WI  54479 | $98.50 | |
| Open A/R | CONTINENTAL IMPORTS | WESCO DISTRIBUTION INC | WESCO DISTRIBUTION INC<br>1395 SOUTH TEARE AVE<br>MERIDIAN, ID  83642 | $8.40 | |
| Open A/R | FLEETWOOD TT OF OR INC | WESTERN RV COUNTRY LTD | WESTERN RV COUNTRY LTD<br>61 EAST LAKE RAMP NE<br>AIRDRIE, AB  T4A 2K4 | $1,098.15 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | WOODGRAIN MILLWORK INC | WOODGRAIN MILLWORK INC<br>4046 SOLUTIONS CENTER<br>CHICAGO, IL  60677-4000 | $951.29 | |
| Open A/R | CONTINENTAL IMPORTS | WOODMARK INTERNATIONAL | WOODMARK INTERNATIONAL<br>2603 TECHNOLOGY DRIVE<br>PO BOX 941245<br>PLANO, TX  75094-1245 | $656.00 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | XANTREX TECHNOLOGY INC | XANTREX TECHNOLOGY INC<br>5916 195TH NORTH EAST<br>ARLINGTON, WA  98223 | $2,155.09 | |
| Open A/R | FLEETWOOD TT OF OR INC | AFFORDABLE RV RENTALS | AFFORDABLE RV RENTALS<br>9994 HILLVIEW ROAD<br>NEWCASTLE, CA  95658 | $232.84 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | ALBERDING WOODWORKING | ALBERDING WOODWORKING<br>7050 N 200 W<br>DECATUR, IN  46733 | $2,397.19 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | ARIES ENGINEERING INC | ARIES ENGINEERING INC<br>2123 NW ALOCLEK DRIVE SUITE 1205<br>HILLSBRO, OR  97124 | $3,390.51 | |
| Open A/R | FLEETWOOD TT OF OR INC | AUTO GALLERY 1994 LTD | AUTO GALLERY 1994 LTD<br>550 WINNIPEG<br>REGINA, SK  S4R 1H8 | $87,392.25 | |
| Open A/R | FLEETWOOD TT OF OR INC | AUTO GALLERY 1994 LTD | AUTO GALLERY 1994 LTD<br>609 WINNIPEG ST<br>REGINA, SK  S4R 8P2 | $26,268.68 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | BELVEDERE CORPORATION | BELVEDERE CORPORATION<br>1120 NORTH MAIN STREET<br>ELKHART, IN  46514 | $6,056.04 | |
| Open A/R | FLEETWOOD TT OF IN INC | BLUENOSE HOMES CO LTD | BLUENOSE HOMES CO LTD<br>155 HAROLD WHYNOT RD<br>BRIDGEWATER, NS  B4V 2X6 | $142.26 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | C M I ENTERPRISES INC | C M I ENTERPRISES INC<br>4380 EAST 11 AVE<br>HIALEAH, FL  33013 | $8.97 | |
| Open A/R | FLEETWOOD TT OF IN INC | CARLISLE TIRE & WHEEL | CARLISLE TIRE & WHEEL<br>2233 EAST PHILADELPHIA STREET<br>PASADENA, CA  91761 | $669.98 | |

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD TT OR IN INC | COUNTRY RV CENTER INC | COUNTRY RV CENTER INC<br>10212 S STATE HIGHWAY 6<br>BRYAN, TX 77807-4621 | $342.49 | |
| Open A/R | FLEETWOOD TT OR IN INC | CRAFTS TRADING CENTER | CRAFTS TRADING CENTER<br>10566 SOUTH WASHINGTON AVENUE<br>MARSHFIELD, WI 54449 | $1,022.23 | |
| Open A/R | FLEETWOOD TT OR IN INC | CRAIG SMITH RV CENTER | CRAIG SMITH RV CENTER<br>DBA CRAIG SMITH RV CENTER<br>315-329 GELSANLITER RD<br>GALION, OH 44833 | $18.78 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | DAVIDSON PLYFORMS INC | DAVIDSON PLYFORMS INC<br>DBA DAVIDSON PLYFORMS INC<br>5505 33RD STREET SE<br>GRAND RAPIDS, MI 49512 | $289.37 | |
| Open A/R | FLEETWOOD TT OR INC | ECI METAL FABRICATION | ECI METAL FABRICATION<br>3281 GRAPEVINE STREET<br>MIRA LOMA, CA 91752 | $1,351.90 | |
| Open A/R | FLEETWOOD TT OR IN INC | ELKHART COUNTY RV COM | ELKHART COUNTY RV COM<br>DBA ELKHART COUNTY RV COM<br>57607 STATE RD 19 SOUTH<br>ELKHART, IN 46517 | $84.85 | |
| Open A/R | FLEETWOOD TT OR INC | FESTIVAL RV - D514963 | FESTIVAL RV - D514963<br>FESTIVAL RV<br>342 37400 HWY 2 SOUTH<br>RED DEER, AB. T4E 1B9 | $2,914.17 | |
| Open A/R | FLEETWOOD HOMES OF CA | J & I HOMES - D804527 | J & I HOMES - D804527<br>DBA J & I HOMES<br>33440 MISSION TRAIL<br>WILDOMAR, CA 92595 | $153.00 | |
| Open A/R | FLEETWOOD TT OR INC | JF MANUFACTURING CORP | JF MANUFACTURING CORP<br>DBA JF MANUFACTURING CORP<br>2734 THOMPSON CREEK RD A<br>POMONA, CA 91767 | $82.72 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | KIDDE SAFETY PRODUCTS | KIDDE SAFETY PRODUCTS<br>1394 S THIRD ST<br>MEBANE, NC 27302 | $51.48 | |
| Open A/R | FLEETWOOD TT OR INC | KIDDE SAFETY PRODUCTS | KIDDE SAFETY PRODUCTS<br>1394 SOUTH THIRD STREET<br>MEBANE, NC 27302 | $25.70 | |
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | MARSH/SAFETY NATIONAL | MARSH/SAFETY NATIONAL | TBD | |
| Open A/R | FLEETWOOD TT OR INC | MCMAHONS RV - BILLING | MCMAHONS RV - BILLING<br>DBA MCMAHONS RV<br>6441 BURT RD BAY 15<br>IRVINE, CA 92618 | $87.92 | |
| Open A/R | FLEETWOOD TT OR IN INC | NORTH TRAIL RV CENTER | NORTH TRAIL RV CENTER<br>5270 ORANGE RIVER BLVD.<br>FT. MYERS, FL 33905 | $2,633.06 | |
| Open A/R | FLEETWOOD TT OR IN INC | OLATHE FORD SALES INC | OLATHE FORD SALES INC<br>19310 GARDNER ROAD<br>EXIT 207<br>GARDNER, KS. 66030 | $57.94 | |
| Open A/R | FLEETWOOD TT OR INC | OLINGER TRAVEL CENTER | OLINGER TRAVEL CENTER<br>DBA OLINGER TRAVEL CENTER<br>6503 SE ALEXANDER ST<br>HILLSBORO, OR 97123 | $655.95 | |
| Open A/R | FLEETWOOD TT OR IN INC | RCD SALES COMPANY LTD | RCD SALES COMPANY LTD<br>1990 HEBRON ROAD<br>HEBRON, OH. 43025 | $3,063.48 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | R-W WOOD PRODUCTS INC | R-W WOOD PRODUCTS INC<br>1412 N HUNDLEY ST<br>ANAHEIM, CA 92806 | $3,573.94 | |
| Open A/R | FLEETWOOD TT OR IN INC | SHERROD RV CENTER INC | SHERROD RV CENTER INC<br>975 HWY 96 SOUTH<br>SILSBEE, TX 77656 | $2,608.96 | |

Exhibit "D"

**Fleetwood Enterprises, Inc. et al.**

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|------|--------------|------------|------------|------------------|----------|
| Open A/R | FLEETWOOD TT OF IN INC | SUNBELT RV CENTER INC | SUNBELT RV CENTER INC<br>2909 SOUTH MAIN STREET<br>PO BOX 89<br>BELTON, TX 76513 | $1,866.91 | |
| Open A/R | FLEETWOOD TT OF IN INC | THREE WAY CAMPERS INC | THREE WAY CAMPERS INC<br>1400 COBB PARKWAY NORTH<br>MARIETTA, GA 30066 | $4,221.20 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | WHIRLPOOL CORPORATION | WHIRLPOOL CORPORATION<br>403 WEST 4TH STREET NORTH<br>NEWTON, IA 50208 | $2,089.33 | |
| Open A/R | FLEETWOOD TT OF IN INC | WHIRLPOOL CORPORATION | WHIRLPOOL CORPORATION<br>403 WEST 4TH STREET NORTH<br>NEWTON, IA 50208 | $2,559.90 | |
| Open A/R | FLEETWOOD TT OF IN INC | BASDEN RV CENTER INC | BASDEN RV CENTER INC<br>600 E BASELINE RD<br>EVANSVILLE, IN 47725 | $82.29 | |
| Open A/R | FLEETWOOD TT OF IN INC | BOBS CAMPER & RV INC | BOBS CAMPER & RV INC<br>2810 N HANCOCK RD/RT 43<br>WILLIAMSTOWN, MA 1267 | $443.76 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | CAREFREE OF COLORADO | CAREFREE OF COLORADO<br>2145 WEST 6TH AVENUE<br>BROOMFIELD, CO 80020 | $18,885.51 | |
| Open A/R | FLEETWOOD TT OF IN INC | CRABTREE MOTOR SALES | CRABTREE MOTOR SALES<br>225 WEST COLLUM<br>ALMA, AR 72921 | $2,522.42 | |
| Open A/R | FLEETWOOD TT OF IN INC | CSRA CAMPERLAND INC. | CSRA CAMPERLAND INC.<br>3844 WASHINGTON RD.<br>MARTINEZ, GA 30907 | $426.89 | |
| Open A/R | FLEETWOOD TT OF OR INC | DAN GAMELS - REDDING | DAN GAMELS - REDDING<br>3750 AUTO MALL DRIVE<br>ANDERSON, CA 96007 | $2,641.88 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | DAWN ENTERPRISES INC | DAWN ENTERPRISES INC<br>9155 SWEETVALLEY DRIVE<br>VALLEY VIEW, OH 44125 | $33.11 | |
| Open A/R | FLEETWOOD TT OF IN INC | DIXIE RV SUPERSTORES | DIXIE RV SUPERSTORES<br>10241 DESTINATION DRIVE<br>HAMMOND, LA 70403 | $115.72 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | FAN-TASTIC VENT CORP | FAN-TASTIC VENT CORP<br>2283 S ALMONT<br>IMLAY CITY, MI 48444 | $264.20 | |
| Open A/R | FLEETWOOD TT OF IN INC | FINNEGANS RV CENTERS | FINNEGANS RV CENTERS<br>1777 GARDNER ST<br>SOUTH BELOIT, IL 61080 | $427.42 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | GROTE INDUSTRIES LLC | GROTE INDUSTRIES LLC<br>2600 LANIER DR.<br>MADISON, IN 47250 | $5.68 | |
| Open A/R | FLEETWOOD TT OF IN INC | HARVEY TRAILER & RVS | HARVEY TRAILER & RVS<br>DBA HARVEY TRAILERS<br>2230 BROADWAY<br>BANGOR, ME 4401 | $18.79 | |
| Open A/R | FLEETWOOD TT OF IN INC | HORIZON LUSSIER LTEE | HORIZON LUSSIER LTEE<br>1155 RANG DE LEGUISE<br>MARIEVILLE, QC J3M 1N9 | $282.48 | |
| Open A/R | FLEETWOOD TT OF IN INC | HUTTONS CAMPER SALES | HUTTONS CAMPER SALES<br>5376 HUTTON DRIVE<br>URBANA, IA 52345 | $385.92 | |
| Open A/R | FLEETWOOD TT OF IN INC | IMPORT EXPORT RV INC | IMPORT EXPORT RV INC<br>2785 BOUL ST-ELZEAR OUEST<br>LAVAL, QC H7P 4J8 | $2,516.22 | |
| Governmental | FLEETWOOD ENTERPRISES, INC | INTERNAL REVENEU SVC | INTERNAL REVENEU SVC<br>290 NORTH D STREET<br>RIVERSIDE, CA 92401-1734 | $950,000.00 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | KELLEY CHEVROLET INC | KELLEY CHEVROLET INC<br>500 E STATE STREET<br>FORT WAYNE, IN 46895 | $812.45 | |

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD TT OF IN INC | LOWERY TRAILER SALES | LOWERY TRAILER SALES 16755 DIXIE HWY DAVISBURG, MI 48350 | $894.47 | |
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | MARSHINATIONAL UNION | MARSHINATIONAL UNION | | TBD |
| Open A/R | FLEETWOOD TT OF IN INC | MEDIA CAMPING CENTER | MEDIA CAMPING CENTER 1651 BETHLEHEM PIKE HATFIELD, PA 19440 | $331.00 | |
| Open A/R | FLEETWOOD TT OF IN INC | MID TOWN CAMPERS INC | MID TOWN CAMPERS INC 3720 HWY 180 EAST MINERAL WELLS, TX 76067 | $496.22 | |
| Open A/R | FLEETWOOD TT OF IN INC | MIDLAND RV SALES INC | MIDLAND RV SALES INC 607 S SAGINAW RD MIDLAND, MI 48640 | $99.68 | |
| Open A/R | FLEETWOOD TT OF OR INC | MOTOR SPORTSLAND INC | MOTOR SPORTSLAND INC 4001 SOUTH STATE ST SALT LAKE CITY, UT 84107 | $1,558.03 | |
| Open A/R | FLEETWOOD TT OF IN INC | MOUNT COMFORT RV LLC | MOUNT COMFORT RV LLC 5935 W 225 NORTH GREENFIELD, IN 46140 | $814.82 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | NATIVE HARDWOODS INC | NATIVE HARDWOODS INC 316 ROSKE DR ELKHART, IN 46516 | $12,152.74 | |
| Open A/R | FLEETWOOD TT OF IN INC | NORCO INDUSTRIES INC | NORCO INDUSTRIES INC 365 WEST VICTORIA STREET COMPTON, CA 90220-6029 | $3,053.56 | |
| Open A/R | FLEETWOOD TT OF OR INC | NORCO INDUSTRIES INC | NORCO INDUSTRIES INC 365 WEST VICTORIA STREET COMPTON, CA 90220-6029 | $606.90 | |
| Open A/R | FLEETWOOD TT OF OR INC | OLINGER TRAVEL HOMES | OLINGER TRAVEL HOMES DBA OLINGER TRAVEL HOMES 2400 NE SANDY BLVD WOOD VILLAGE, OR 97060 | $100.37 | |
| Open A/R | FLEETWOOD TT OF IN INC | RECREATION WORLD LTD | RECREATION WORLD LTD 2320 DAWSON RD THUNDER BAY, ON P7G 2G2 | $294.30 | |
| Open A/R | FLEETWOOD TT OF IN INC | REINES RV CENTER INC | REINES RV CENTER INC 10850 BALLS FORD RD. MANASSAS, VA 20109 | $59.36 | |
| Open A/R | FLEETWOOD TT OF IN INC | ROTATIONAL SOLUTIONS | ROTATIONAL SOLUTIONS 2400 STERLING AVE ELKHART, IN 46516 | $294.45 | |
| Open A/R | FLEETWOOD TT OF IN INC | RV GENERAL STORE INC | RV GENERAL STORE INC 1707 TOPEKA STREET NORMAN, OK 73069 | $139.34 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | SUMMIT PRODUCTS, INC | SUMMIT PRODUCTS, INC DBA SUMMIT PRODUCTS, INC 6220 NW BEAVER DRIVE SUITE 6 PO BOX 1116 JOHNSTON, IA 50131-1116 | $28.50 | |
| Open A/R | FLEETWOOD TT OF IN INC | SUNCOAST RV - CALERA | SUNCOAST RV - CALERA 730 GEORGE ROY PARKWAY CALERA, AL 35040 | $189.37 | |
| Open A/R | FLEETWOOD TT OF OR INC | TERRACE CHRYSLER LTD | TERRACE CHRYSLER LTD 4916 HWY 16 WEST TERRACE, BC V8G 1L8 | $4,823.63 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | THETFORD CORPORATION | THETFORD CORPORATION ATTN ART DYKMAN PO BOX 1285 ANN ARBOR, MI 48106 | $36,044.16 | |
| Open A/R | FLEETWOOD TT OF IN INC | THETFORD CORPORATION | THETFORD CORPORATION DEPT 77891 P O BOX 77000 DETROIT, MI 48277 | $1,659.73 | |

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD TT OF OR INC | TODD ENTERPRISES LTD | TODD ENTERPRISES LTD<br>401 QUEEN ELIZABETH BLVD<br>KAMSACK, SK S0A 1S0 | $32.65 | |
| Open A/R | FLEETWOOD TT OF OR INC | ARBUTUS RV & MARINE | ARBUTUS RV & MARINE<br>3520 SPITFIRE RD<br>CASSIDY, BC V0R 1H0 | $4,672.11 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | ATWOOD - GREENBRIER | ATWOOD - GREENBRIER<br>6320 KELLY WILLIS ROAD<br>GREENBRIER, TN. 37073 | $5,507.76 | |
| Open A/R | FLEETWOOD TT OF IN INC | ATWOOD - GREENBRIER | ATWOOD - GREENBRIER<br>6320 KELLY WILLIS ROAD<br>GREENBRIER, TN. 37073 | $1,644.40 | |
| Open A/R | FLEETWOOD TT OF OR INC | ATWOOD - GREENBRIER | ATWOOD - GREENBRIER<br>6320 KELLY WILLIS ROAD<br>GREENBRIER, TN. 37073 | $4,474.09 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | ATWOOD - WEST UNION | ATWOOD - WEST UNION<br>800 HIGHWAY 150 S<br>P O BOX 538<br>WEST UNION, IA. 52175-0538 | $2,842.73 | |
| Open A/R | FLEETWOOD TT OF IN INC | BEN DAVIS CHEVROLET | BEN DAVIS CHEVROLET<br>931 WEST 7TH<br>AUBURN, IN. 46706 | $43.26 | |
| Open A/R | FLEETWOOD TT OF OR INC | BIG COUNTRY RV/BEND | BIG COUNTRY RV/BEND<br>63500 N HWY 97<br>541-330-2495<br>BEND, OR. 97701 | $1,103.24 | |
| Third Party Litigation | GOLD SHIELD INC. OF CALIFORNIA | BLACKHAWK MFG. INC. | BLACKHAWK MFG. INC.<br>3122 S Riverside Ave<br>Bloomington, CA. 92316 | $294,779.00 | |
| Open A/R | FLEETWOOD TT OF IN INC | BRK ELECTRONICS INC | BRK ELECTRONICS INC<br>3901 LIBERTY STREET ROAD<br>AURORA, IL. 60504-8122 | $12.74 | |
| Open A/R | FLEETWOOD TT OF OR INC | BRK ELECTRONICS INC | BRK ELECTRONICS INC<br>3901 LIBERTY STREET ROAD<br>AURORA, IL. 60504-8122 | $69.35 | |
| Open A/R | FLEETWOOD TT OF OR INC | C A R S - FT MURRAY | C A R S - FT MURRAY<br>338 GREGOIRE DRIVE<br>FORT MCMURRAY, AB  T9H 3K2 | $243.65 | |
| Open A/R | FLEETWOOD TT OF IN INC | CAMPER DAN RV SALES | CAMPER DAN RV SALES<br>DBA CAMPER DAN RV SALES<br>5950 LAMAR  RD.<br>PARIS, TX. 75462 | $1,182.18 | |
| Open A/R | FLEETWOOD TT OF OR INC | DAN GAMELS - FRESNO | DAN GAMELS - FRESNO<br>2448 E CENTRAL AVE<br>FRESNO, CA. 93725 | $792.49 | |
| Open A/R | FLEETWOOD TT OF IN INC | DOVES TRAILER SALES | DOVES TRAILER SALES<br>2136 RAWLEY PIKE<br>HARRISONBURG, VA. 22801 | $73.46 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | DSM ENTERPRISES INC | DSM ENTERPRISES INC<br>DBA DSM ENTERPRISES INC<br>4140 GARDNER RD<br>RIVERSIDE, CA. 92501 | $4,119.93 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | ECKHART WOODWORKING | ECKHART WOODWORKING<br>424 S VAN BUREN STREET<br>MONROE, IN. 46772 | $1,558.89 | |
| Open A/R | FLEETWOOD TT OF IN INC | EVERGREEN RV CENTER | EVERGREEN RV CENTER<br>1710 IH 35 NORTH<br>NEW BRAUNFELS, TX. 78130 | $54.18 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | FLAIR INTERIORS INC | FLAIR INTERIORS INC<br>1010 EISENHOWER DR SOUTH<br>GOSHEN, IN. 46526 | $1,543.83 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | HAMSAR DIVERSCO INC | HAMSAR DIVERSCO INC<br>5320 DOWNEY STREET<br>BURLINGTON, ON. L7L 6M2 | $526.60 | |

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|------|-------------|-----------|-----------|-----------------|----------|
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | HARVEY DISTRIBUTING | HARVEY DISTRIBUTING<br>DBA HARVEY DISTRIBUTING<br>11160 CIRCLE DRIVE<br>AUSTIN, TX 78736 | $580.31 | |
| Open A/R | FLEETWOOD TT OF IN INC | JIMCO TRAILER SALES | JIMCO TRAILER SALES<br>617 EAST MAIN STREET<br>HANCOCK, MD 21750 | $1,761.25 | |
| Open A/R | FLEETWOOD TT OF IN INC | LANCASTER COUNTY RV | LANCASTER COUNTY RV<br>DBA LANCASTER COUNTY RV<br>122 PROSPECT RD<br>LANDISVILLE, PA 17538 | $18.09 | |
| Open A/R | FLEETWOOD TT OF IN INC | MANNS TRAILER SALES | MANNS TRAILER SALES<br>52 BARRE PAXTON RD<br>RUTLAND, MA 1543 | $203.65 | |
| Open A/R | FLEETWOOD TT OF IN INC | MCGAUGH MOTOR SALES | MCGAUGH MOTOR SALES<br>2650 WAGON WHEEL RD.<br>SPRINGDALE, AR 72762-7928 | $192.07 | |
| Open A/R | FLEETWOOD TT OF OR INC | MCGOVERNS RV CENTRE | MCGOVERNS RV CENTRE<br>10725 117 AVE<br>GRANDE PRAIRIE, AB T8V 7N6 | $42,146.10 | |
| Open A/R | FLEETWOOD TT OF IN INC | NICKEL BELT CAMPING | NICKEL BELT CAMPING<br>401 JOANETTE ROAD<br>CHELMSFORD, ON P0M 1L0 | $834.74 | |
| Open A/R | FLEETWOOD TT OF OR INC | PARADISE RV & COACH | PARADISE RV & COACH<br>DBA PARADISE RV & COACH<br>8336 SPARROW CRES<br>LEDUC, AB T9E 8B7 | $158.38 | |
| Open A/R | FLEETWOOD TT OF IN INC | PARKWAY CAMPERS INC | PARKWAY CAMPERS INC<br>7098 SOUTH HWY 11<br>WESTMINSTER, SC 29693 | $1,571.10 | |
| Open A/R | FLEETWOOD HOMES - ALMA | PJS OF LAKELAND INC | PJS OF LAKELAND INC<br>2150 HWY 92 EAST<br>LAKELAND, FL 33801 | $28,305.00 | |
| Open A/R | FLEETWOOD TT OF IN INC | PRIMO TRAILER SALES | PRIMO TRAILER SALES<br>995 MOODIE DR<br>NEPEAN, ON K2R 1H4 | $1,327.97 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | R V CUSTOM PRODUCTS | R V CUSTOM PRODUCTS<br>14000 ANSON AVENUE<br>SANTA FE SPRINGS, CA 90670 | $83.57 | |
| Open A/R | FLEETWOOD TT OF OR INC | RV AMERICA EAST INC | RV AMERICA EAST INC<br>DBA RV AMERICA EAST INC<br>3640 CHAMBERS RD<br>AURORA, CO 80011 | $305.67 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | RV SANI-CON SYSTEMS | RV SANI-CON SYSTEMS<br>1233 WYNDHAM FOREST CIRCLE<br>LEXINGTON, KY 40514 | $1,878.74 | |
| Open A/R | FLEETWOOD TT OF OR INC | SAN DIEGO RV CENTER | SAN DIEGO RV CENTER<br>DBA SAN DIEGO RV CENTER<br>9398 BOND AVE<br>EL CAJON, CA 92021 | $228.57 | |
| Open A/R | FLEETWOOD TT OF IN INC | SEYMOUR RV & REPAIR | SEYMOUR RV & REPAIR<br>DBA SEYMOUR RV & REPAIR<br>332 BOYDS CREEK HWY<br>SEYMOUR, TN 37865 | $972.60 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | SPARTAN CHASSIS INC | SPARTAN CHASSIS INC<br>1165 REYNOLDS RD<br>CHARLOTTE, MI 48813 | $221.66 | |
| Open A/R | FLEETWOOD TT OF IN INC | SWAN INDUSTRIES INC | SWAN INDUSTRIES INC<br>633 N E FIRST STREET<br>BEND, OR 97701 | $1,917.29 | |
| Open A/R | FLEETWOOD TT OF IN INC | SWAN INDUSTRIES INC | SWAN INDUSTRIES INC<br>633 N E FIRST STREET<br>BEND, OR 97701 | $77.13 | |

Exhibit "D"

**Fleetwood Enterprises, Inc. et al.**

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Third Party Litigation | Fleetwood Enterprises, Inc. | Thompson & Colegate | Thompson & Colegate, 3610 14TH ST, PO BOX 1299, RIVERSIDE, CA 92502 | TBD | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | TRIMARK CORPORATION | TRIMARK CORPORATION, MB-1029, PO BOX D-1560, MINNEAPOLIS, MN 55480 | $3,036.26 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | TRUSTY PRODUCTS INC | TRUSTY PRODUCTS INC, 137 SOUTH 8TH AVENUE D, CITY OF INDUSTRY, CA 91746 | $617.48 | |
| Open A/R | FLEETWOOD TT OR INC | VACATION STATION RV | VACATION STATION RV, DBA VACATION STATION RV, 231 S LINCOLN AVE, CORONA, CA 92882 | $414.02 | |
| Open A/R | FLEETWOOD TT OR IN INC | VANS LEISURE LIVING | VANS LEISURE LIVING, 417 JOHN FITCH BLVD, S.WINDSOR, CT 6074 | $252.18 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | VILLA INTERNATIONAL | VILLA INTERNATIONAL, 13760 MIDWAY STREET, CERRITOS, CA 90703 | $2,835.90 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | VISTA MANUFACTURING | VISTA MANUFACTURING, 52864 LILLIAN AVENUE, ELKHART, IN 46514-9524 | $12.28 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | WESTERN POTTERY LLC | WESTERN POTTERY LLC, 11911 INDUSTRIAL AVENUE, SOUTH GATE, CA 90280 | $233.72 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | AFL AUTOMOTIVE LLP | AFL AUTOMOTIVE LLP, 12746 CIMARRON PATH, SUITE 116, SAN ANTONIO, TX 78249 | $188.59 | |
| Open A/R | FLEETWOOD TT OR INC | ALL ROADS RV SALES | ALL ROADS RV SALES, 2520 QUEENS WAY, PRINCE GEORGE, BC V2L 2Y6 | $5,529.28 | |
| Open A/R | FLEETWOOD TT IN INC | AMERICAN RV / MICH. | AMERICAN RV / MICH., 201 76TH ST S.W., GRAND RAPIDS, MI 49548 | $85.29 | |
| Open A/R | FLEETWOOD HOMES - GARRETT | ARC DEALERSHIP INC | ARC DEALERSHIP INC, 7887 EAST BELLVIEW AVE, ENGLEWOOD, CO 80111 | $196.81 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | ATWOOD - SALT LAKE | ATWOOD - SALT LAKE, 1874 SOUTH PIONEER ROAD, SALT LAKE CITY, UT 84104-4226 | $9,088.66 | |
| Open A/R | FLEETWOOD TT OR INC | BIG COUNTRY RV INC | BIG COUNTRY RV INC, 3190 N HWY 97, REDMOND, OR 97756 | $21,527.31 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | BLANCO AMERICA INC | BLANCO AMERICA INC, 110 MOUNT HOLLY BYPASS, LUMBERTON, NJ 8048 | $250.94 | |
| Open A/R | FLEETWOOD TT OR INC | BUTLER SUZUKI & RV | BUTLER SUZUKI & RV, 142 TRANQUILLE RD, KAMLOOPS, BC V2B 3G1 | $3,937.69 | |
| Open A/R | FLEETWOOD TT IN INC | CARLSON SPORTS LTD | CARLSON SPORTS LTD, 11 COUCHIE INDUSTRIAL RD, NORTH BAY, ON P1B 8G5 | $10,697.66 | |
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | CCI CONTROLS, INC. | CCI CONTROLS, INC., 5052 CECELIA ST, SOUTH GATE, CA 90280 | TBD | 1 |
| Third Party Litigation | FLEETWOOD TRAVEL TRAILERS OF CALIFORNIA, INC. | CCI CONTROLS, INC. | CCI CONTROLS, INC., 5052 CECELIA ST, SOUTH GATE, CA 90280 | TBD | 1 |
| Third Party Litigation | FLEETWOOD TRAVEL TRAILERS OF INDIANA, INC. | CCI CONTROLS, INC. | CCI CONTROLS, INC., 5052 CECELIA ST, SOUTH GATE, CA 90280 | TBD | 1 |

Exhibit "D"

**Fleetwood Enterprises, Inc. et al.**

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Third Party Litigation | FLEETWOOD TRAVEL TRAILERS OF TEXAS, INC. | CCI CONTROLS, INC. | CCI CONTROLS, INC.<br>5052 CECELIA ST<br>SOUTH GATE, CA  90280 | TBD | 1 |
| Open A/R | FLEETWOOD TT OF IN INC | CHESACO MOTORS INC | CHESACO MOTORS INC<br>911 RT 40 EAST  PULASKI HWY<br>JOPPA, MD  21085 | $27.66 | |
| Open A/R | FLEETWOOD TT OF IN INC | COASTAL MARINE LTD | COASTAL MARINE LTD<br>1256 TOPSOIL RD<br>PO BOX 31031<br>MT PEARL, NL  A1N 2C1 | $1,036.45 | |
| Open A/R | FLEETWOOD TT OF IN INC | COASTAL MARINE LTD | COASTAL MARINE LTD<br>19 25 GOFF AVENUE<br>CARBONEAR, NL  A1Y 1A6 | $337.42 | |
| Open A/R | FLEETWOOD TT OF IN INC | DALLAIRE EQUIPMENT | DALLAIRE EQUIPMENT<br>560 MELANÇON<br>ST BRUNO, QC  G0W 2L0 | $3,421.71 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | DECATUR INDUSTRIES | DECATUR INDUSTRIES<br>505 FULTON STREET<br>P O BOX 6<br>BERNE, IN  46711 | $266.31 | |
| Open A/R | FLEETWOOD TT OF IN INC | DECATUR INDUSTRIES | DECATUR INDUSTRIES<br>505 FULTON STREET<br>BERNE, IN  46711 | $162.59 | |
| Open A/R | FLEETWOOD TT OF IN INC | DELMARVA RV CENTER | DELMARVA RV CENTER<br>702 MILFORD HARRINGTON HWY, #R<br>MILFORD, DE  19963 | $60.70 | |
| Open A/R | FLEETWOOD TT OF IN INC | ENDLESS SUMMER RVS | ENDLESS SUMMER RVS<br>DBA ENDLESS SUMMER RVS<br>7633 DEVILBISS BRIDGE RD<br>FREDERICK, MD  21701 | $616.64 | |
| Open A/R | FLEETWOOD TT OR INC | FINDLAY RV COMPANY | FINDLAY RV COMPANY<br>DBA FINDLAY RV COMPANY<br>4530 BOULDER HWY<br>LAS VEGAS, NV  89121 | $76.57 | |
| Open A/R | FLEETWOOD TT OF IN INC | GREAT OUTDOORS THE | GREAT OUTDOORS THE<br>1122  ROUTE # 57<br>FULTON, NY  13069 | $1,718.77 | |
| Open A/R | FLEETWOOD TT OR INC | GROVE RV & LEISURE | GROVE RV & LEISURE<br>100 ST MATTHEWS AVE<br>SPRUCE GROVE, AB  T7X 3A4 | $3,781.89 | |
| Open A/R | FLEETWOOD TT OR INC | GROVE RV & LEISURE | GROVE RV & LEISURE<br>200 St. Mathews Ave<br>Spruce Grove,  T7X 3B2 | $448,179.00 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | HAFELE AMERICAN CO | HAFELE AMERICAN CO<br>3901 CHEYENNE DRIVE<br>PO BOX 4000<br>ARCHDALE, NC  27263-4000 | $18.44 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | HALTEC CORPORATION | HALTEC CORPORATION<br>2956 STATE ROUTE 9<br>SALEM, OH  44460 | $94.00 | |
| Open A/R | FLEETWOOD TT OF IN INC | HOME PLACE LLC THE | HOME PLACE LLC THE<br>5256 PINSON VALLEY PARKWAY<br>BIRMINGHAM, AL  35215 | $160.12 | |
| Open A/R | FLEETWOOD TT OF OH INC | JOE'S CAMPER SALES | JOE'S CAMPER SALES<br>2417 S Broadway St<br>New Ulm, MN  56073 | $20,702.00 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | LAVANTURE PRODUCTS | LAVANTURE PRODUCTS<br>2912 DEXTER DRIVE<br>ELKHART, IN  46514 | $134.74 | |
| Open A/R | FLEETWOOD TT OF IN INC | LIPPERT COMPONENTS | LIPPERT COMPONENTS<br>2703 COLLEGE AVE<br>GOSHEN, IN  46528 | $3,175.25 | |
| Open A/R | FLEETWOOD TT OR INC | LIPPERT COMPONENTS | LIPPERT COMPONENTS<br>2703 COLLEGE AVE<br>GOSHEN, IN  46528 | $93,439.83 | |

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|------|--------------|------------|------------|------------------|----------|
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | MCD RV ACCESSORIES | MCD RV ACCESSORIES<br>DBA MCD RV ACCESSORIES<br>410 INDUSTRIAL BLVD<br>MCKINNEY, TX 75069 | $188.72 | |
| Open A/R | FLEETWOOD TT OR INC | MEEKS RV CENER INC | MEEKS RV CENER INC<br>28355 N HWY 99<br>ACAMPO, CA 95220 | $240.17 | |
| Open A/R | FLEETWOOD TT OF IN INC | MICHAELS RV CENTER | MICHAELS RV CENTER<br>1661 HWY 98 EAST<br>COLUMBIA, MS 38429 | $2,141.78 | |
| Open A/R | FLEETWOOD TT OF IN INC | NATIONAL RV DIRECT | NATIONAL RV DIRECT<br>11900 CARPENTER RD<br>MILAN, MI 48160 | $1,442.00 | |
| Open A/R | FLEETWOOD TT OF IN INC | NORMAN CAMPERS INC | NORMAN CAMPERS INC<br>1722 AUSTELL ROAD<br>MARIETTA, GA 30060 | $1,400.13 | |
| Open A/R | FLEETWOOD TT OF IN INC | NORTH TEXAS RV INC | NORTH TEXAS RV INC<br>2005 S SAM RAYBURN FWY<br>SHERMAN, TX 75090 | $652.08 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | PAGE FOAM PRODUCTS | PAGE FOAM PRODUCTS<br>PAGE FOAM CUSHIONED PRODUCTS<br>850 EISENHOWER BLVD<br>JOHNSTOWN, PA 15904 | - | |
| Open A/R | FLEETWOOD TT OR INC | PARKVIEW RV CENTRE | PARKVIEW RV CENTRE<br>DBA PARKVIEW RV CENTRE<br>5110 56TH STREET<br>WETASKIWIN, AB  T9A 1V9 | $216,449.32 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | PHILIPS - VENTLINE | PHILIPS - VENTLINE<br>902 SOUTH DIVISION STREET<br>BRISTOL, IN 46507 | $287.08 | |
| Open A/R | FLEETWOOD TT OF IN INC | PHILIPS - VENTLINE | PHILIPS - VENTLINE<br>902 SOUTH DIVISION STREET<br>BRISTOL IN 46507 | $380.19 | |
| Open A/R | FLEETWOOD TT OR INC | PHILIPS - VENTLINE | PHILIPS - VENTLINE<br>902 SOUTH DIVISION STREET<br>BRISTOL IN 46507 | $1,601.72 | |
| Open A/R | FLEETWOOD TT OR INC | PORTAGE TOYOTA INC | PORTAGE TOYOTA INC<br>HWY 1A WEST<br>PO BOX 1420<br>PORTAGE LA PRAIRIE, MB  R1N 3N9 | $2,314.96 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | REM INDUSTRIES INC | REM INDUSTRIES INC<br>P O BOX 408<br>902 NELLSONS PARKWAY<br>WAKARUSA, IN 46573 | $912.00 | |
| Open A/R | FLEETWOOD TT OF IN INC | RENE TRAILER SALES | RENE TRAILER SALES<br>31 VANIER ST<br>CAMPBELLTON, NB  E3N 1T8 | $1,769.34 | |
| Open A/R | FLEETWOOD TT OF IN INC | ROULOTTES STE ANNE | ROULOTTES STE ANNE<br>3306 BOUL DES ENT.<br>TERREBONNE, QC  J6X 4J8 | $2.02 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | S STERLING COMPANY | S STERLING COMPANY<br>102 INTERNATIONAL DR<br>PEACHTREE CITY, GA 30269 | $2,127.89 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | SE-GI PRODUCTS INC | SE-GI PRODUCTS INC<br>1900 SECOND STREET<br>NORCO, CA 92860 | $374,241.18 | |
| Open A/R | FLEETWOOD TT OR INC | STETTLER DODGE LTD | STETTLER DODGE LTD<br>4408-44TH AVENUE<br>STETTLER, AB  T0C 2L0 | $30,608.88 | |
| Open A/R | FLEETWOOD TT OR INC | TEAM CALIFORNIA RV | TEAM CALIFORNIA RV<br>DBA TEAM CALIFORNIA RV<br>2170 HUTTON RD.<br>NIPOMO, CA 93444 | $105.00 | |

Exhibit "D"

**Fleetwood Enterprises, Inc. et al.**

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD MOTOR HOMES OF PA | TILBURY AUTO SALES | TILBURY AUTO SALES<br>20600 HWY 42 W<br>TILBURY, ON N0P 2L0 | $69,323.10 | |
| Open A/R | FLEETWOOD TT OR INC | TILBURY AUTO SALES | TILBURY AUTO SALES<br>DBA TILBURY AUTO SALES<br>20600 HWY 42 W<br>TILBURY, ON N0P 2L0 | $513.54 | |
| Open A/R | FLEETWOOD TT OR INC | TRAVEL TIME RV INC | TRAVEL TIME RV INC<br>4035 10TH AVE S<br>GREAT FALLS, MT 59405 | $6,075.33 | |
| Open A/R | FLEETWOOD TT OR INC | TRIPLE A RV CENTER | TRIPLE A RV CENTER<br>938 CHEVY WAY<br>MEDFORD, OR 97504 | $371.89 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | WELDEX CORPORATION | WELDEX CORPORATION<br>6751 KATELLA AVENUE<br>CYPRESS, CA 90630 | $1,641.16 | |
| Open A/R | FLEETWOOD TT OR INC | WEVAC PLASTICS INC | WEVAC PLASTICS INC<br>2401 SOUTH 17TH STREET<br>ELKHART, IN 46515-2690 | $74.25 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | ALPHA SYSTEMS INC | ALPHA SYSTEMS INC<br>12680 PROTECTA DR<br>ELKHART, IN 46516 | $10,889.09 | |
| Open A/R | FLEETWOOD TT OR INC | ALPHA SYSTEMS INC | ALPHA SYSTEMS INC<br>5120 BECK DRIVE<br>ELKHART, IN 46516 | $875.84 | |
| Open A/R | FLEETWOOD TT OR INC | ALPHA SYSTEMS INC | ALPHA SYSTEMS INC<br>5120 BECK DRIVE<br>ELKHART, IN 46516 | $2,922.02 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | AUTO MOTION SHADE | AUTO MOTION SHADE<br>4400 BENTLEY ST UNIT 7-11<br>MARKHAM, ON L3R 8H6 | $4,318.94 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | B & B MOLDERS LLC | B & B MOLDERS LLC<br>58471 FIR ROAD SOUTH<br>MISHAWAKA, IN 46544 | $533.17 | |
| Open A/R | FLEETWOOD TT OR INC | B & B MOLDERS LLC | B & B MOLDERS LLC<br>58471 FIR ROAD SOUTH<br>MISHAWAKA, IN 46544 | $142.90 | |
| Open A/R | FLEETWOOD TT OR INC | B & B MOLDERS LLC | B & B MOLDERS LLC<br>58471 FIR ROAD SOUTH<br>MISHAWAKA, IN 46544 | $221.44 | |
| Open A/R | FLEETWOOD TT OR INC | BERRYLAND CAMPERS | BERRYLAND CAMPERS<br>42775 PLEASANT RIDGE ROAD<br>PO BOX 266<br>PONCHATOULA, LA 70454-0266 | $87.85 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | BLACKHAWK MFG INC | BLACKHAWK MFG INC<br>3122 SOUTH RIVERSIDE AVENUE<br>BLOOMINGTON, CA 92316 | $558.55 | |
| Open A/R | FLEETWOOD TT OR INC | BLACKHAWK MFG INC | BLACKHAWK MFG INC<br>3122 SOUTH RIVERSIDE AVENUE<br>BLOOMINGTON, CA 92316 | $7,208.20 | |
| Open A/R | FLEETWOOD TT OR INC | BRETZ RV & MARINE | BRETZ RV & MARINE<br>4800 GRANT CREEK RD<br>MISSOULA, MT 59808 | $163.25 | |
| Open A/R | FLEETWOOD TT OR INC | COLLINS & COMPANY | COLLINS & COMPANY<br>17880 COMMERCE DRIVE<br>BRISTOL, IN 46507 | $237.52 | |
| Open A/R | FLEETWOOD TT OR INC | COLLINS & COMPANY | COLLINS & COMPANY<br>17880 COMMERCE DRIVE<br>BRISTOL, IN 46507 | $207.36 | |
| Open A/R | FLEETWOOD TT OR INC | COOPERS RV CENTER | COOPERS RV CENTER<br>DBA COOPERS RV CENTER<br>4000 GOLDEN MILE HIGHWAY<br>MURRYSVILLE, PA 15668 | $26.81 | |

Exhibit "D"

**Fleetwood Enterprises, Inc. et al.**

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD TT OF IN INC | CROSSROADS RV INC | CROSSROADS RV INC<br>615 E RICKELMAN<br>EFFINGHAM, IL 62401 | $531.12 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | DICOR CORPORATION | DICOR CORPORATION<br>613 SO FOURTH ST<br>PO BOX 1806<br>ELKHART, IN 46515 | $19.65 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | DUO FORM PLASTICS | DUO FORM PLASTICS<br>69836 KRAUS ROAD<br>EDWARDSBURG, MI 49112 | $370.84 | |
| Open A/R | FLEETWOOD TT OF OR INC | DUO FORM PLASTICS | DUO FORM PLASTICS<br>69836 KRAUS ROAD<br>EDWARDSBURG, MI 49112 | $29,303.45 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | ELIXIR INDUSTRIES | ELIXIR INDUSTRIES<br>2040 INDUSTRIAL PARKWAY<br>ELKHART, IN 46516 | $36.67 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | ELIXIR INDUSTRIES | ELIXIR INDUSTRIES<br>219 S MULBERRY<br>MESA, AZ 85202 | $181.15 | |
| Open A/R | FLEETWOOD TT OF IN INC | ELIXIR INDUSTRIES | ELIXIR INDUSTRIES<br>24800 CHRISANTA DRIVE STE 210<br>MISSION VIEJO, CA 92691 | $85.48 | |
| Open A/R | FLEETWOOD TT OF OR INC | ELIXIR INDUSTRIES | ELIXIR INDUSTRIES<br>24800 CHRISANTA DRIVE STE 210<br>MISSION VIEJO, CA 92691 | $236.18 | |
| Open A/R | FLEETWOOD TT OF IN INC | FRANKS RV SERVICE | FRANKS RV SERVICE<br>10902 US HIGHWAY 59 NORTH<br>VICTORIA, TX 77905 | $544.26 | |
| Open A/R | FLEETWOOD TT OF OR INC | FREEDOM RV CENTER | FREEDOM RV CENTER<br>E 19605 CATOLDO AVE<br>GREENACRES, WA 99016 | $672.48 | |
| Open A/R | FLEETWOOD TT OF IN INC | JOES CAMPER SALES | JOES CAMPER SALES<br>2417 S BROADWAY<br>NEW ULM, MN 56073 | $1,817.41 | |
| Open A/R | CONTINENTAL IMPORTS | K C INTERNATIONAL | K C INTERNATIONAL<br>12155 MAGNOLIA AVENUE<br>SUITE 9A<br>RIVERSIDE, CA 92503 | $668.00 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | MAGNUM ENERGY INC | MAGNUM ENERGY INC<br>2211 W CASINO RD<br>EVERETT, WA 98204 | $8,333.41 | |
| Open A/R | FLEETWOOD TT OF OR INC | MARLOS RV SERVICE | MARLOS RV SERVICE<br>467 YOLANDA AVE<br>SANTA ROSA, CA 95404-6322 | $73.84 | |
| Open A/R | CONTINENTAL IMPORTS | MNM MANUFACTURING | MNM MANUFACTURING<br>3019 EAST HARCOURT ST<br>RANCHO DOMINGUEZ, CA 90221 | $3,925.00 | |
| Open A/R | FLEETWOOD TT OF OR INC | NIELS MOTOR HOMES | NIELS MOTOR HOMES<br>8646 SEPULVEDA BOULEVARD<br>NORTH HILLS, CA 91343 | $53.04 | |
| Open A/R | FLEETWOOD TT OF OR INC | OCONNOR RV CENTRE | OCONNOR RV CENTRE<br>44430 YALE RD W BOX 190<br>CHILLIWACK, V2P 6J1 | $51,497.55 | |
| Open A/R | FLEETWOOD TT OF OR INC | OCONNOR RV CENTRE | OCONNOR RV CENTRE<br>44430 YALE ROAD WEST<br>PO BOX 190<br>CHILLIWACK, BC V2P 6J1 | $1,572.99 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | ODYSSEY GROUP LLC | ODYSSEY GROUP LLC<br>603 EARTHWAY BLVD<br>P O BOX 99<br>BRISTOL, IN 46507 | $119.54 | |
| Open A/R | FLEETWOOD TT OF IN INC | ODYSSEY GROUP LLC | ODYSSEY GROUP LLC<br>603 EARTHWAY BLVD<br>P O BOX 99<br>BRISTOL, IN 46507 | $5,054.14 | |

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD TT OR INC | ODYSSEY GROUP LLC | ODYSSEY GROUP LLC 603 EARTHWAY BLVD PO BOX 99 BRISTOL, IN 46507 | $9,201.40 | |
| Open A/R | FLEETWOOD TT OR INC | PALLISER CHV OLDS | PALLISER CHV OLDS 4604 42ND AVE. INNISFAIL, AB T4G 1P6 | $1,795.51 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | QUANTUM GROUP INC | QUANTUM GROUP INC 7737 KENMAAR COURT SAN DIEGO, CA 92121 | $3,432.64 | |
| Open A/R | FLEETWOOD TT OR IN INC | QUANTUM GROUP INC | QUANTUM GROUP INC 7737 KENMAAR COURT SAN DIEGO, CA 92121 | $368.74 | |
| Open A/R | FLEETWOOD TT OR INC | QUANTUM GROUP INC | QUANTUM GROUP INC 7737 KENMAAR COURT SAN DIEGO, CA 92121 | $207.56 | |
| Open A/R | FLEETWOOD TT OR INC | REDDING RV CENTER | REDDING RV CENTER DBA REDDING RV CENTER 4850 Westside Rd Redding, CA 96001 | $15,001.05 | |
| Open A/R | FLEETWOOD TT OR INC | RON LEE RV REPAIR | RON LEE RV REPAIR 62415 HIGHWAY 82 LA GRANDE, OR 97850 | $1,117.50 | |
| Open A/R | FLEETWOOD TT OR IN INC | SHABBONA CREEK RV | SHABBONA CREEK RV 17982 E 2350 STREET PO BOX 621 ATKINSON, IL 61235 | $153.58 | |
| Open A/R | FLEETWOOD TT OR INC | SUN VALLEY RV INC | SUN VALLEY RV INC BOX 969 HWY 3E MORDEN, MB R6M 1A9 | $10,042.46 | |
| Open A/R | FLEETWOOD TT OR IN INC | SYNTEC INDUSTRIES | SYNTEC INDUSTRIES PO BOX 1653 ROME, GA 30162-1653 | $76.00 | |
| Open A/R | FLEETWOOD TT OR IN INC | TRAVEL COUNTRY RV | TRAVEL COUNTRY RV 5355 MILL STORE ROAD LAKE PARK, GA 31636 | $645.33 | |
| Open A/R | FLEETWOOD TT OR IN INC | TRAVEL COUNTRY RV | TRAVEL COUNTRY RV 530 FL GATEWAY BLVD LAKE CITY, FL 32024 | $293.83 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | TRUCK LITE CO INC | TRUCK LITE CO INC 310 E ELMWOOD AVE FALCONER, NY 14733 | $919.83 | |
| Open A/R | FLEETWOOD HOMES OF TX LP | TWIN CITY HOUSING | TWIN CITY HOUSING RT 6 BOX 860 HWY 96 SOUTH JASPER, TX 75951 | $143.15 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | VETRORESINA S P A | VETRORESINA S P A LAMINATI PLASTICI INDUSTRIALI VIA PORTUENSE 10 44020 MASI S GIACOMO FE | $9,152.20 | |
| Open A/R | FLEETWOOD HOMES OF PA INC | WEISSER HOMES INC | WEISSER HOMES INC 2333 BEAVER VALLEY PIKE NEW PROVIDENCE, PA 17560 | $129.03 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | ATWOOD - ELKHART | ATWOOD - ELKHART 57912 CHARLOTTE AVE ELKHART, IN 46517 | $22,609.08 | |
| Open A/R | FLEETWOOD TT OR INC | C A R S  RED DEER | C A R S  RED DEER DBA C A R S  RED DEER 7424-50 AVE RED DEER, AB T4P 1X7 | $3,868.99 | |
| Open A/R | FLEETWOOD TT OR INC | C A R S  RV LEDUC | C A R S  RV LEDUC 6615 SPARROW DRIVE LEDUC, AB T9E 7L1 | $1,004.06 | |

Exhibit "D"

**Fleetwood Enterprises, Inc. et al.**

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD TT OF IN INC | CARAVANE 185 INC | CARAVANE 185 INC<br>86 PRINCIPALE<br>ST ANTONIN, QC GOL 2J0 | $622.76 | |
| Open A/R | FLEETWOOD TT OF OR INC | CHISOLM TRAIL RV | CHISOLM TRAIL RV<br>12020 CENTRAL SE<br>ALBUQUERQUE, NM 87123 | $685.17 | |
| Open A/R | FLEETWOOD TT OF IN INC | D&N CAMPER SALES | D&N CAMPER SALES<br>DBA D&N CAMPER SALES<br>1160 E BROOKS RD<br>MEMPHIS, TN 38116 | $10.13 | |
| Open A/R | FLEETWOOD TT OF IN INC | DEMONTROND BUICK | DEMONTROND BUICK<br>12600 KUYKENDAHL<br>HOUSTON, TX 77090 | $812.78 | |
| Open A/R | FLEETWOOD TT OF OR INC | DRAKES RV REPAIR | DRAKES RV REPAIR<br>4701 NW AVE. A<br>PENDLETON, OR 97801 | $169.10 | |
| Open A/R | FLEETWOOD TT OF OR INC | FRANK DUNN SALES | FRANK DUNN SALES<br>205 S INDUSTRIAL RD BOX 697<br>PRINCE ALBERT, SK S6V7L7 | $10,769.28 | |
| Open A/R | FLEETWOOD TT OF OR INC | GEWEKE FORD & RV | GEWEKE FORD & RV<br>248 E KETTLEMAN<br>LODI, CA 9624 | $53.75 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | HI-TECH HEAT INC | HI-TECH HEAT INC<br>424 IVY STREET<br>JUNCTION CITY, OR 97448 | $448.00 | |
| Open A/R | FLEETWOOD TT OF IN INC | HUNTER RV CENTER | HUNTER RV CENTER<br>1501 NEW SAPULPA RD.<br>SAPULPA, OK 74066 | $2,156.90 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | ITC INCORPORATED | ITC INCORPORATED<br>1015 VERDANT<br>ELKHART, IN 46516 | $2,455.28 | |
| Open A/R | FLEETWOOD TT OF IN INC | L M COSSETTE ENT | L M COSSETTE ENT<br>870  THIBEAU<br>CAP DE LA MAD, QC G8T 7B1 | $336.69 | |
| Open A/R | FLEETWOOD TT OF OR INC | LOWES RV - HOBBS | LOWES RV - HOBBS<br>DBA LOWES RV<br>3124 N LOVINGTON HIGHWAY<br>HOBBS, NM 88240 | $1,006.90 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | MITO CORPORATION | MITO CORPORATION<br>54847 COUNTY ROAD 17<br>PO BOX 1663<br>ELKHART, IN 46515 | $492.75 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | NEFFS UPHOLSTERY | NEFFS UPHOLSTERY<br>1260 PALMYRITA AVE SUITE J<br>RIVERSIDE, CA 92507 | $62.63 | |
| Open A/R | FLEETWOOD TT OF IN INC | PHILLIPS CAMPERS | PHILLIPS CAMPERS<br>G7101 N SAGINAW ST<br>MT MORRIS, MI 484158 | $1,232.90 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | PIAA CORPORATION | PIAA CORPORATION<br>PO BOX 4500<br>UNIT 46<br>PORTLAND, OR 97208-4500 | $127.80 | |
| Open A/R | FLEETWOOD TT OF OR INC | RUTHRAUFF RV INC | RUTHRAUFF RV INC<br>2750 W RUTHRAUFF<br>TUCSON, AZ 85705 | $96.84 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | SEAL METHODS INC | SEAL METHODS INC<br>10230 FREEMAN AVENUE<br>SANTA FE SPRINGS, CA 90760 | $42.15 | |
| Open A/R | FLEETWOOD TT OF IN INC | SHIPPS RV CENTER | SHIPPS RV CENTER<br>6728 RINGGOLD ROAD<br>CHATTANOOGA, TN 37412 | $1,118.74 | |
| Third Party<br>Litigation | FLEETWOOD ENTERPRISES, INC. | STATE OF INDIANA | STATE OF INDIANA<br>Bankruptcy Section<br>100 N Senate Ave Rm N203<br>Indianapolis, IN 46204 | TBD | |

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|------|-------------|-----------|-----------|-----------------|----------|
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | TDI PRODUCTS INC | TDI PRODUCTS INC<br>589 LEVY ROAD<br>ATLANTIC BEACH, FL 32233 | $504.10 | |
| Open A/R | FLEETWOOD TT OR INC | THOMPSON RV INC. | THOMPSON RV INC.<br>1201 SOUTHGATE<br>PENDLETON, OR 97801 | $2,376.10 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | VENTANA DSM CORP | VENTANA DSM CORP<br>15360 ALLEN AVE<br>PARAMOUNT, CA 90723 | $302.62 | |
| Open A/R | FLEETWOOD TT OF IN INC | WALKER RV CENTER | WALKER RV CENTER<br>3315 NORTH I 35 SERVICE ROAD<br>MOORE, OK 73160 | $4,543.82 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | WINEGARD COMPANY | WINEGARD COMPANY<br>3000 KIRKWOOD STREET<br>BURLINGTON, IA 52601-2000 | $324.17 | |
| Open A/R | FLEETWOOD TT OF IN INC | WINEGARD COMPANY | WINEGARD COMPANY<br>3000 KIRKWOOD STREET<br>BURLINGTON, IA 52601 | $32.14 | |
| Open A/R | FLEETWOOD TT OF IN INC | WINEGARD COMPANY | WINEGARD COMPANY<br>3000 KIRKWOOD STREET<br>BURLINGTON, IA 52601 | $162.88 | |
| Open A/R | FLEETWOOD TT OF IN INC | BOSS MOTORS INC | BOSS MOTORS INC<br>605 BROADWAY<br>MARYSVILLE, KS 66508 | $175.87 | |
| Open A/R | FLEETWOOD TT OF IN INC | CAMPBELL RV INC | CAMPBELL RV INC<br>550 CATTLEMEN ROAD<br>SARASOTA, FL 34232<br>941-342-4313 | $267.50 | |
| Open A/R | FLEETWOOD TT OF IN INC | CAMPER CITY INC | CAMPER CITY INC<br>12202 N NAVARRO<br>VICTORIA, TX 77904 | $620.61 | |
| Open A/R | FLEETWOOD TT OF IN INC | COLTON AUTO INC | COLTON AUTO INC<br>3122 NIAGRA FALLS BLVD<br>N TONAWANDA, NY 14120 | $289.86 | |
| Third Party Litigation | FLEETWOOD MOTOR HOMES OF INDIANA, INC. | DAN GAMEL, INC. | DAN GAMEL, INC.<br>4774 N BLACKSTONE<br>FRESNO, CA 93726 | TBD | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | EMBEDDED FX INC | EMBEDDED FX INC<br>489N W HWY 48<br>BUSHNELL, FL 33513 | $144.71 | |
| Open A/R | CONTINENTAL IMPORTS | FRONTIER RV INC | FRONTIER RV INC<br>1501 SABINE<br>LONGVIEW, TX 75604 | $274.50 | |
| Open A/R | FLEETWOOD TT OF IN INC | GULL BOATS & RV | GULL BOATS & RV<br>2601 WEST BROADWAY<br>MISSOULA, MT 59808 | $4,149.20 | |
| Open A/R | FLEETWOOD TT OR INC | HARTS RV CENTER | HARTS RV CENTER<br>5200 HARRISON AVE<br>BUTTE, MT 59701 | $5,769.36 | |
| Open A/R | FLEETWOOD TT OF IN INC | HAYES RV CENTER | HAYES RV CENTER<br>5009 JUDSON ROAD<br>LONGVIEW, TX 75605 | $17.19 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | HWH CORPORATION | HWH CORPORATION<br>2096 MOSCOW ROAD<br>MOSCOW, IA 52760 | $1,864.02 | |
| Open A/R | FLEETWOOD TT OR INC | KAMPERS KORNERS | KAMPERS KORNERS<br>14615 PALMDALE RD.<br>VICTORVILLE, CA 92392 | $199.20 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | KIB ENTERPRISES | KIB ENTERPRISES<br>53402 CR 13<br>ELKHART, IN 46514 | $342.26 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | KWIKEE PRODUCTS | KWIKEE PRODUCTS<br>DBA KWIKEE PRODUCTS<br>230 DAVIDSON AVENUE<br>COTTAGE GROVE, OR 97424-9545 | $4,549.11 | |

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | LASALLE BRISTOL | LASALLE BRISTOL<br>601 COUNTY ROAD 17<br>ELKHART, IN 46516 | $7,017.70 | |
| Open A/R | FLEETWOOD TT OF OR INC | MARJON RVS INC. | MARJON RVS INC.<br>21085 BOX SPRINGS RD.<br>MORENO VALLEY, CA 92557 | $779.39 | |
| Open A/R | FLEETWOOD TT OF OR INC | PISMO RV OUTLET | PISMO RV OUTLET<br>DBA PISMO RV OUTLET<br>271 & 330 FIVE CITIES DRIVE<br>PISMO, CA 93449 | $54.94 | |
| Open A/R | FLEETWOOD TT OF IN INC | R ALAN KITE LLC | R ALAN KITE LLC<br>1394 N HWY 171<br>LAKE CHARLES, LA 70612 | $1,903.47 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | RIGHT TRACK INC | RIGHT TRACK INC<br>2400 CROFTON BLVD<br>CROFTON, MD  21114 | $1,194.77 | |
| Open A/R | FLEETWOOD TT OF IN INC | RIVERS BUS & RV | RIVERS BUS & RV<br>10626 GENERAL AVE.<br>JACKSONVILLE, FL  32220 | $1,733.49 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | RV PRODUCTS INC | RV PRODUCTS INC<br>3050 N SAINT FRANCIS<br>WICHITA, KS  67219 | $2,991.59 | |
| Open A/R | FLEETWOOD TT OF IN INC | RV PRODUCTS INC | RV PRODUCTS INC<br>3050 N SAINT FRANCIS<br>WICHITA, KS  67219 | $1,332.51 | |
| Open A/R | FLEETWOOD TT OF OR INC | RV PRODUCTS INC | RV PRODUCTS INC<br>3050 N SAINT FRANCIS<br>WICHITA, KS  67219 | $2,296.80 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | SGM COMPANY  INC | SGM COMPANY  INC<br>9060 TYLER BLVD<br>MENTOR, OH  44060-4996 | $71.74 | |
| Open A/R | FLEETWOOD TT OF IN INC | SOUTHERN RV INC | SOUTHERN RV INC<br>3625 INDUSTRIAL DRIVE<br>BOSSIER CITY, LA  71112 | $180.93 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | TACO METALS INC | TACO METALS INC<br>50 N.E. 179 ST.<br>MIAMI, FL  33269 | $143.65 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | TOPLINE MFG INC | TOPLINE MFG INC<br>7032 ALONDRA BLVD<br>PO BOX 739<br>PARAMOUNT, CA  90723 | $547.83 | |
| Open A/R | FLEETWOOD TT OF IN INC | ALL SEASONS RV | ALL SEASONS RV<br>2867 NAZARETH ROAD<br>EASTON, PA  18042 | $75.57 | |
| Open A/R | FLEETWOOD TT OF OR INC | ALL SEASONS RV | ALL SEASONS RV<br>DBA ALL SEASONS RV<br>3300 COLUSA HWY<br>YUBA CITY, CA  95993 | $3,171.08 | |
| Open A/R | FLEETWOOD TT OF OR INC | BIG COUNTRY RV | BIG COUNTRY RV<br>DBA BIG COUNTRY RV<br>BOX 339 30 ERB BLVD<br>OAK BLUFF, MB  R0G 1N0 | $860.55 | |
| Open A/R | FLEETWOOD TT OF IN INC | BO'S RV CENTER | BO'S RV CENTER<br>1900 S. MIDKIFF RD.<br>MIDLAND, TX  79701 | $1,041.84 | |
| Open A/R | FLEETWOOD TT OF IN INC | BRAMBILLAS INC | BRAMBILLAS INC<br>550 VALLEY PARK DRIVE<br>SHAKOPEE, MN  55379 | $50.32 | |
| Open A/R | CONTINENTAL IMPORTS | BRD SUPPLY INC | BRD SUPPLY INC<br>503 BLOOMINGDALE DRIVE<br>BRISTOL, IN 46507 | $1,129.88 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | BRD SUPPLY INC | BRD SUPPLY INC<br>503 BLOOMINGDALE DRIVE<br>BRISTOL, IN 46507 | $62.60 | |

Exhibit "D"

**Fleetwood Enterprises, Inc. et al.**

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD TT OF IN INC | CASEYS CAMPERS | CASEYS CAMPERS<br>1800 W 4TH STREET<br>BIG SPRING, TX 79720 | $260.97 | |
| Open A/R | FLEETWOOD TT OF OR INC | ESQUIRE RV LLC | ESQUIRE RV LLC<br>1285 W 600 SOUTH<br>VERNAL, UT 84078 | $707.01 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | GIRARD SYSTEMS | GIRARD SYSTEMS<br>METRO FINANCIAL SERVICES<br>PO BOX 970817<br>DALLAS, TX 75397-0817 | $7,452.03 | |
| Open A/R | FLEETWOOD TT OF IN INC | HAYDENS RV INC | HAYDENS RV INC<br>8910 BURGE AVENUE<br>RICHMOND, VA 23237 | $1,010.03 | |
| Open A/R | FLEETWOOD TT OF OR INC | JACKS RV SALES | JACKS RV SALES<br>1855 W MAIN ST<br>TREMONTON, UT 84337 | $1,375.62 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | K & B FIXTURES | K & B FIXTURES<br>58263 CHARLOTTE AVENUE<br>ELKHART, IN 46517 | $33.61 | |
| Open A/R | FLEETWOOD TT OF IN INC | NIAGARA SPORTS | NIAGARA SPORTS<br>1224 YORK RD N<br>PO BOX 153<br>ST DAVIDS, ON L0S 1P0 | $318.44 | |
| Open A/R | FLEETWOOD TT OF OR INC | RV AMERICA INC | RV AMERICA INC<br>6701 MARKET PLACE DRIVE<br>LOVELAND, CO 80537 | $17.20 | |
| Open A/R | FLEETWOOD TT OF IN INC | RV OUTLET MALL | RV OUTLET MALL<br>DBA RV OUTLET MALL<br>4500 SO IH35<br>GEORGETOWN, TX 78628 | $2,178.21 | |
| Open A/R | FLEETWOOD TT OF IN INC | RV STATION LTD | RV STATION LTD<br>870 HWY 59 SOUTH<br>CLEVELAND, TX 77327 | $730.27 | |
| Open A/R | FLEETWOOD TT OF IN INC | SCHRECK RV INC | SCHRECK RV INC<br>4616 ROUTE 66<br>APOLLO, PA 15613 | $598.48 | |
| Open A/R | FLEETWOOD TT OF MD INC | TAYLORVILLE RV | TAYLORVILLE RV<br>115 N WEBSTER<br>TAYLORVILLE, IL 62568 | $12,666.00 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | WESTLAND SALES | WESTLAND SALES<br>15650 SE 102ND AVE<br>PO BOX 427<br>CLACKAMAS, OR 97015-0427 | $6,600.93 | |
| Open A/R | FLEETWOOD TT OF IN INC | WICHITA RV INC | WICHITA RV INC<br>12828 SW HWY 54<br>ANDOVER, KS 67002 | $272.06 | |
| Open A/R | FLEETWOOD TT OF OR INC | BOUNDARY FORD | BOUNDARY FORD<br>2405 50TH AVE<br>LLOYDMINSTER, SK S9V 1Z7 | $8,149.89 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | CAST PRODUCTS | CAST PRODUCTS<br>58263 CHARLOTTE AVE<br>ELKHART, IN 46515 | $67.26 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | CHENG USA INC | CHENG USA INC<br>11 PEMBERLY<br>IRVINE, CA 92603 | $149.25 | |
| Open A/R | FLEETWOOD TT OF IN INC | CHENG USA INC | CHENG USA INC<br>11 PEMBERLY<br>IRVINE, CA 92603 | $946.01 | |
| Open A/R | FLEETWOOD TT OF OR INC | CHENG USA INC | CHENG USA INC<br>11 PEMBERLY<br>IRVINE, CA 92603 | $258.44 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | FORD MOTOR CO | FORD MOTOR CO<br>1555 FAIRLANE DR, ROOM 219<br>ALLEN PARK, MI 48101 | $2,579.71 | |

Exhibit "D"

Fleetwood Enterprises, Inc., et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD TT OF OR INC | KAMPER KORNER | KAMPER KORNER 7700 OLD HIGHWAY 99 N ROSEBURG, OR 97470 | $537.03 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | KING CONTROLS | KING CONTROLS DBA KING CONTROLS 11200 HAMPSHIRE AVE SOUTH BLOOMINGTON, MN 55438-2453 | $583.27 | |
| Open A/R | FLEETWOOD TT OF IN INC | MEDIA CAMPING | MEDIA CAMPING 327 TYBURN FAIRLESS HILLS, PA 19030 | $1,544.62 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | OPTRONICS INC | OPTRONICS INC 33765 TREASURY CENTER CHICAGO, IL 6094-3700 | $805.85 | |
| Open A/R | FLEETWOOD TT OF IN INC | PREMIER SALES | PREMIER SALES DBA PREMIER SALES 3659 JUNCTION CITY HWY ELDORADO, AR 71730 | $161.05 | |
| Open A/R | FLEETWOOD TT OF OR INC | RAY CITTE INC | RAY CITTE INC 1677 W RIVERDALE RD ROY, UT 84067 | $269.11 | |
| Open A/R | FLEETWOOD TT OF IN INC | RIVER CITY RV | RIVER CITY RV DBA RIVER CITY RV 6721 WARDEN RD SHERWOOD, AR 72120 | $556.82 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | RIVERPARK INC | RIVERPARK INC 21953 PROTECTA DR ELKHART, IN 46516 | $35,770.12 | |
| Open A/R | FLEETWOOD TT OF OR INC | SIMI RV SALES | SIMI RV SALES 1568 EAST LOS ANGELES AVE SIMI VALLEY, CA 93065-2018 | $612.99 | |
| Open A/R | FLEETWOOD TT OF OR INC | K & C RV INC | K & C RV INC 14504 I-25 FRONTAGE RD. LONGMONT, CO 80504 | $62.72 | |
| Open A/R | FLEETWOOD TT OF OR INC | LAS VEGAS RV | LAS VEGAS RV DBA LAS VEGAS RV 13175 LAS VEGAS BLVD S HENDERSON, NV 89044 | $1,513.83 | |
| Open A/R | FLEETWOOD TT OF IN INC | LONE STAR RV | LONE STAR RV 14150 GULF FREEWAY HOUSTON, TX 77034 | $470.26 | |
| Open A/R | FLEETWOOD TT OF IN INC | ONAN INDIANA | ONAN INDIANA DBA ONAN INDIANA 5125 BECK DRIVE ELKHART, IN 46516-9094 | $786.79 | |
| Open A/R | FLEETWOOD TT OF OR INC | ONAN INDIANA | ONAN INDIANA DBA ONAN INDIANA 5125 BECK DRIVE ELKHART, IN 46516-9094 | $268.05 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | STABILUS INC | STABILUS INC 1201 TULIP DRIVE GASTONIA, NC 28052-1898 | $135.63 | |
| Open A/R | FLEETWOOD TT OF IN INC | STABILUS INC | STABILUS INC 88043 EXPEDITE WAY CHICAGO, IL 60695-0001 | $991.97 | |
| Open A/R | FLEETWOOD TT OF IN INC | STATESIDE RV | STATESIDE RV STATION BUSINESS PARK STICKNEY BOSTON LINCOLNSHIRE ENGLAND, PE229EE | $3,504.71 | |
| Open A/R | FLEETWOOD TT OF IN INC | CAMP-A-RAMA | CAMP-A-RAMA 1107 N GEORGE WASHINGTON HWY CHESAPEAKE, VA 23323 | $153.85 | |
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | DEXTER AXLE | DEXTER AXLE 2900 INDUSTRIAL PKWY EAST ELKHART, IN 46516 | TBD | |

Exhibit "D"

**Fleetwood Enterprises, Inc. et al.**

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|------|--------------|------------|------------|------------------|----------|
| Open A/R | FLEETWOOD TT OF IN INC | FALCON FOAM | FALCON FOAM<br>14104 TOWNE AVENUE<br>LOS ANGELES, CA 90061 | $258.37 | |
| Open A/R | FLEETWOOD TT OF OR INC | FESTIVAL RV | FESTIVAL RV<br>FESTIVAL RV 2 SOUTH<br>342 37400 HWY 2 SOUTH<br>RED DEER, AB T4E 1B9 | $285,068.00 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | GOLIGHT INC | GOLIGHT INC<br>37146 OLD HWY 17<br>CULBERTSON, NE 69024 | $214.12 | |
| Open A/R | FLEETWOOD TT OF OR INC | GORDONS RVS | GORDONS RVS<br>DBA: GORDONS RVS<br>2944 N. MAIN ST.<br>LOGAN, UT 84341 | $224.98 | |
| Open A/R | CONTINENTAL IMPORTS | J & S SALES | J & S SALES<br>9333 MARINA DR<br>RIVERSIDE, CA 92503 | $1,608.00 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | MAGNADYNE | 2 | MAGNADYNE<br>1111 W VICTORIA ST<br>COMPTON, CA 90220-5898 | $8,431.86 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | NORCOLD INC | NORCOLD INC<br>600 S. KUTHER RD<br>P O BOX 180<br>SIDNEY, OH 45365 | $35,824.49 | |
| Open A/R | FLEETWOOD TT OF OR INC | PARADISE RV | PARADISE RV<br>DBA PARADISE RV<br>37417 HWY 2 GASOLINE ALLEY<br>RED DEER, AB T4E 1B3 | $1,988.00 | |
| Open A/R | FLEETWOOD TT OF IN INC | RV PARADISE | RV PARADISE<br>DBA RV PARADISE<br>3000 W. HILLSHORE<br>ELDORADO, AR 71730 | $1,076.68 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | SHURFLO LLC | SHURFLO LLC<br>52748 PARK SIX COURT<br>ELKHART, IN 46514-5427 | $2,313.21 | |
| Open A/R | FLEETWOOD TT OF IN INC | SHURFLO LLC | SHURFLO LLC<br>5900 KATELLA AVE<br>CYPRESS, CA 90630 | $340.36 | |
| Open A/R | FLEETWOOD TT OF OR INC | SHURFLO LLC | SHURFLO LLC<br>5900 KATELLA AVE<br>CYPRESS, CA 90630 | $3,540.07 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | SOUTHCO INC | SOUTHCO INC<br>210 N. BRINTON LAKE ROAD<br>P.O. BOX 0116<br>CONCORDVILLE, PA 19331-0116 | $77.28 | |
| Open A/R | FLEETWOOD TT OF IN INC | SPITLER INC | SPITLER INC<br>4336 LYCOMING MALL DRIVE<br>MONTOURSVILLE, PA 17754 | $158.75 | |
| Open A/R | FLEETWOOD TT OF OR INC | SUNRIDGE RV | SUNRIDGE RV<br>DBA SUNRIDGE RV<br>HWY 11<br>RADDISON, SK S0K 3L0 | $4,187.97 | |
| Open A/R | FLEETWOOD TT OF OR INC | GIBSON RVS | GIBSON RVS<br>DBA GIBSON RVS<br>2549 HIGHWAY 6 AND 50<br>GRAND JUNCTION, CO 81501 | $101.36 | |
| Open A/R | CONTINENTAL IMPORTS | MVP RV INC | MVP RV INC<br>14255 ELSWORTH ST<br>MORENO VALLEY, CA 92553 | $5,277.80 | |
| Open A/R | FLEETWOOD TT OF OR INC | OCONNOR RV | OCONNOR RV<br>20363 10 HWY BYPASS<br>LANGLEY, BC V3A 5E8 | $167,400.45 | |
| Open A/R | FLEETWOOD TT OF OR INC | OCONNOR RV | OCONNOR RV<br>20363 10 HWY LANGLEY BYPASS<br>LANGLEY, BC V3A 5E8 | $6,655.16 | |

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|---|---|---|---|---|---|
| Open A/R | FLEETWOOD TT OF IN INC | PONTIAC RV | PONTIAC RV<br>15481 E. 2000 N. ROAD<br>PONTIAC, IL 61764 | $29.26 | |
| Open A/R | FLEETWOOD TT OF OR INC | RUNNERS RV | RUNNERS RV<br>2813 23RD ST N<br>CRANBROOK, BC V1C 3N9 | $460.73 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | VELVAC INC | VELVAC INC<br>2405 S CALHOUN ROAD<br>NEW BERLIN, WI 53151-2709 | $7,870.97 | |
| Open A/R | FLEETWOOD TT OF OR INC | WESTERN RV | WESTERN RV<br>7503 SPARROW DRIVE<br>LEDUC, AB T9E 0H3 | $2,979.75 | |
| Third Party Litigation | CONTINENTAL LUMBER | FTCA, LLC | FTCA, LLC<br>258 Beacon St<br>Somerset, PA 15501 | $102,083.53 | |
| Open A/R | FLEETWOOD TT OF IN INC | HEIDIS RV | HEIDIS RV<br>3982 HWY 11 SOUTH RR 2<br>HAWKESTONE, ON L0L 1T0 | $797.36 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | HELLA INC | HELLA INC<br>201 KELLY DRIVE<br>PO BOX 2665<br>PEACHTREE CITY, GA 30269 | $144.22 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | KINRO INC | KINRO INC<br>921 SUMMA DRIVE<br>ELKHART, IN 46516 | $726.83 | |
| Open A/R | FLEETWOOD TT OF IN INC | KINRO INC | KINRO INC<br>P O BOX 910886<br>DALLAS, TX 75391-0866 | $974.83 | |
| Open A/R | FLEETWOOD TT OF OR INC | KINRO INC | KINRO INC<br>P O BOX 910886<br>DALLAS, TX 75391-0866 | $7,497.82 | |
| Open A/R | FLEETWOOD TT OF IN INC | MAGNADYNE | MAGNADYNE<br>P O BOX 5365<br>CARSON, CA 90749 | $538.83 | |
| Open A/R | FLEETWOOD TT OF OR INC | MAGNADYNE | MAGNADYNE<br>P O BOX 5365<br>CARSON, CA 90749 | $589.98 | |
| Open A/R | FLEETWOOD TT OF OR INC | OC RV INC | OC RV INC<br>4526 E HASTINGS AVENUE<br>ORANGE, CA 92867 | $293.37 | |
| Open A/R | FLEETWOOD TT OF OR INC | RV OUTLET | RV OUTLET<br>DBA RV OUTLET<br>2949 N PARKWAY DR<br>FRESNO, CA 93722 | $416.79 | |
| Open A/R | FLEETWOOD TT OF OR INC | EDSON RV | EDSON RV<br>DBA EDSON RV<br>7440 4TH AVENUE<br>P O BOX 7769<br>EDSON, AB T7E 1V8 | $90,126.08 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | FTCA INC | FTCA INC<br>258 BEACON STREET<br>SOMERSET, PA 15501 | $16.21 | |
| Open A/R | FLEETWOOD TT OF OR INC | GIANT RV | GIANT RV<br>5400 GARDEN GROVE BLVD<br>WESTMINSTER, CA 92683-1801 | $268.58 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | RESTONIC | RESTONIC<br>1540 E DUNDEE RD<br>PALATINE, IL 60074 | $2,224.49 | |
| Open A/R | FLEETWOOD TT-CAMPBELLSVILLE | RV READY | RV READY<br>DBA RV READY<br>2501 N HWY 190<br>COVINGTON, LA 70433 | $19,672.00 | |

Exhibit "D"

Fleetwood Enterprises, Inc. et al.

| Type | Company Name | Party Name | Mail Label | Potential Amount | End Note |
|------|--------------|------------|------------|------------------|----------|
| Open A/R | FLEETWOOD TT OR INC | RV WORLD | RV WORLD<br>DBA RV WORLD<br>5875 E GILA RIDGE RD<br>YUMA, AZ 85365 | $2,034.21 | |
| Open A/R | FLEETWOOD TT OR INC | WALTS RV | WALTS RV<br>372 WEST TULLOCK<br>RIALTO, CA 92376 | $3.00 | |
| Open A/R | FLEETWOOD TT OR IN INC | DODD RV | DODD RV<br>4705 PORTSMOUTH BLVD<br>PORTSMOUTH, VA 23701 | $92.74 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | IMI INC | IMI INC<br>DBA IMI INC<br>3519 H W COMMONWEALTH AVE<br>FULLERTON, CA 92833 | $69.77 | |
| Open A/R | FLEETWOOD TT OR INC | JCS RVS | JCS RVS<br>958 E AIRWAY BLVD<br>LIVERMORE, CA 94550 | $339.51 | |
| Open A/R | FLEETWOOD TT OR IN INC | VOGT RV | VOGT RV<br>DBA VOGT RV<br>5624 AIRPORT FRWY<br>FORT WORTH, TX 76117 | $2,110.72 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | VOMELA | VOMELA<br>274 EAST FILMORE<br>ST PAUL, MN 55107 | $259.14 | |
| Open A/R | FLEETWOOD TT OR INC | VOMELA | VOMELA<br>274 EAST FILMORE<br>ST PAUL, MN 55107 | $6,047.68 | |
| Open A/R | FLEETWOOD PARTS & SERVICE OF INDIANA | ACTIA | ACTIA<br>52765 BRIDGER COURT<br>ELKHART, IN 46514 | $136.61 | |
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | FATCO | FATCO | TBD | |
| Third Party Litigation | FLEETWOOD ENTERPRISES, INC. | CCI | CCI<br>5052 CECELIA ST<br>SOUTH GATE, CA 90280 | TBD | |
| Third Party Litigation | FLEETWOOD HOMES OF CA | SANTIAGO COMMUNITIES, INC. | SANTIAGO COMMUNITIES, INC.<br>326 WEST KATELLA AVE. SUITE 4-K<br>ORANGE, CA 92867 | TBD | |

End Note
1 - Other Debtors involved in Case: Fleetwood Enterprises, Inc.; Fleetwood Travel Trailers of California, Inc.; Fleetwood Travel Trailers of Indiana, Inc.; Fleetwood Travel Trailers of Texas, Inc.
2 - Other Debtors involved in Case: Fleetwood Retail Corp; Fleetwood Enterprises, Inc.
3 - Other Debtors involved in Case: Fleetwood Homes of Texas, L.P; Fleetwood Homes of Georgia, Inc.
4 - Potential beneficiary: NORTH CAROLINA SELF-INSURANCE SECURITY ASSOCIATION
5 - Contingent cause of action in the event that NORTH CAROLINA SELF-INSURANCE SECURITY ASSOCIATION is a beneficiary of proceeds from NORTH CAROLINA DEPARTMENT OF INSURANCE
6 - Other Debtors involved in Case: Fleetwood Enterprises, Inc.; Fleetwood Motor Homes of Indiana, Inc.; Fleetwood Motor Homes of Pennsylvania, Inc.; Fleetwood Travel Trailers of Maryland, Inc.; Fleetwood Travel Trailers of Kentucky, Inc.
7 - Other Debtors involved in Case: Fleetwood Enterprises, Inc.; Fleetwood Travel Trailers of California, Inc.; Fleetwood Travel Trailers of Indiana, Inc.; Fleetwood Travel Trailers of Texas, Inc.

Exhibit "D"

# EXHIBIT "E"

# EXHIBIT "F"

**EXHIBIT F**

**Mandatory Mediation Procedures for Liquidating Product Liability Personal Injury Claims Covered Under a Policy of Insurance Issued by Gibraltar Insurance Co., Ltd.**

1.    **Personal Injury Claimants with Claims Based on Products Liability Shall Participate in a Mandatory Mediation Process.**

Claims based on product liability theories where personal injuries are alleged ("PI Claims")[1] may be covered by policies of insurance issued by Gibraltar Insurance Co., Ltd., a wholly owned subsidiary of Debtor FEI ("Gibraltar") in favor of Fleetwood.  The proceeds of policies issued by Gibraltar are property of the Debtors' bankruptcy Estates to be administered in a manner that ensures the fair distribution of proceeds to claimants with allowed PI Claims.

Any trial of a PI Claim must be conducted before the United States District Court, rather than before the Bankruptcy Court.[2]  However, before proceeding to trial, the Bankruptcy Court may require parties to participate in alternate dispute resolution proceedings in an effort to efficiently liquidate disputed claims without the need of a trial before the District Court to maximize the benefits available from limited insurance proceeds.  **The Plan requires that all Holders of PI Claims ("PI Claimants") must first complete the mandatory mediation process described below before seeking a trial before the District Court.**  All PI Claims shall remain stayed until the completion of the mediation process.

*The Plan Proponents do not make any representation as to the financial condition of Gibraltar, the financial ability of Gibraltar to pay out the full remaining coverage attributable to any Policy Year or that sufficient coverage remains to pay allowed PI Claims in full.*

2.    **The Debtors' Insurance Coverage for Products Liability Claims.**

Since 1977, the primary layer of products liability insurance for the Debtors' recreational vehicle and manufactured housing businesses has been provided by Gibraltar.  Gibraltar has been in existence since 1977, is organized under the laws of Bermuda and it is subject to the laws of Bermuda governing insurance companies.  Gibraltar only provides coverage to the Debtors and related non-debtor affiliates of the Debtors.  Gibraltar is *not* one of the Debtors in these bankruptcy cases, nor has it filed insolvency proceedings under Bermuda law or other laws.

---

[1]  Capitalized terms used but not defined herein shall have the definitions ascribed to them in the Disclosure Statement.

[2]  Any claimant asserting non-personal injury claims against the Debtors will proceed through the normal claims resolution process administered by this Court and will not participate in mandatory mediation.

Since Gibraltar's inception, Gibraltar had provided Fleetwood with a "Product/Completed Operations Liability" policy to insure Fleetwood as to product liability claims as a primary layer up to a maximum aggregate products liability exposure (the "Gibraltar Policies") by year.[3]  Each Gibraltar Policy is an "occurrence policy" and the coverage year in which a claim falls is based on when the claim occurred rather than when the claim is asserted.  Coverage limits varied by year.  There are pending PI Claims in Policy Years 1993, 1996, 1998, and 2000 through 2008.  Between 2004 and 2008, where the majority of the remaining PI Claims fall, coverage under each policy year is limited to $5,000,000 per occurrence and $5,000,000 in the aggregate.

The Gibraltar Policies also cover investigation and defense costs relating to covered claims, which are also subject to the policy coverage limits.  The Gibraltar Policies are, therefore, known as "wasting policies," meaning Gibraltar's payment of investigation and defense costs reduces total available coverage dollar-for-dollar.  If Gibraltar is forced to pay investigation and defense costs associated with the continuing litigation of the PI Claims, then the policy proceeds available for distribution on account of allowed PI Claims will decline by the amount paid.  Therefore, if any PI Claimant chooses to pursue a larger liquidated claim through litigation in the District Court, the potential opportunity to achieve a larger liquidated claim through litigation will be offset by the smaller pro rata recovery available from the diminished policy proceeds.

The Debtors also obtained excess liability coverage as identified on Schedules 1, 2 and 3 attached hereto, which apply differently depending on the Policy Year.  For 2004-2008, the applicable excess policies only cover any single claim that exceeds $5 million and ***do not*** provide coverage on an aggregate basis.  Further, the excess coverage only covers that portion of any single allowed PI Claim that exceeds $5 million and do the excess coverage does not cover investigation and defense costs.  Fleetwood does not expect any single claim to exceed $5 million and it is unlikely that the excess liability coverage will cover any PI Claims falling in Policy Years 2004 through 2008.[4]  Nevertheless, carriers providing excess coverage will receive notice of the mediation conferences and will be required to participate in the mediation process.

---

[3]  The policies run from November 1 in one year until November 1 of the next year.  For example, the Debtors had a Gibraltar Policy from November 1, 2004 to November 1, 2005 that applied to claims occurring during that year.  For ease of reference, the Plan uses the terms "2004 Gibraltar Policy" and "Policy Year 2004" when referring to the Gibraltar Policy that was in place from November 1, 2004 to November 1, 2005, and follows the same convention for all subsequent years.

[4]  *See* **Schedule 2** attached hereto for a graphic depiction of the Debtors' total products liability insurance coverage for each Policy Year between 2004 and 2008.

3.     **Any Coverage Disputes Will Need to be Resolved Before the PI Claims can be Liquidated.**

Some claimants have asserted that their claims are covered under one or more Gibraltar Policies. The Debtors dispute the existence of any coverage for any non-product liability claim or any claim not involving personal injury. If a dispute as to coverage arises, it will impossible to know the number of PI Claimants with viable PI Claims in any given Policy Year until the coverage dispute is resolved. Thus, if a coverage dispute arises, the Liquidating Trustee will initiate a declaratory relief adversary action in the Bankruptcy Court seeking a determination as to whether coverage exists (the "Coverage Dispute"). The mediation process as to a particular Policy Year may be delayed until all Coverage Disputes are resolved.

4.     **The Treatment of PI Claims Utilizing a Mandatory Mediation Process.**

Gibraltar has established reserves for each Policy Year given its historical claim experience and in conformance with Bermuda law. Payouts in excess of reserves could threaten the solvency of Gibraltar. In the event of Gibraltar's insolvency, Gibraltar may be unable to provide coverage to the full extent of the Gibraltar Policies as to all PI Claims and the value of the Gibraltar entity itself may be lost which may prevent the eventual sale of Gibraltar for the general benefit of the Debtors' Estate.

Because of the numerous competing claims for scarce proceeds, in order to prevent an inequitable "race to the proceeds," to protect the solvency of Gibraltar and to try to avoid the depletion of the Policy proceeds by excessive litigation costs, the Plan requires that all Holders of PI Claims against the Debtors or Gibraltar that occurred in any Policy Year follow the mandatory mediation procedures set forth below.

*The Plan Proponents do not represent that following these mediation procedures will guarantee the solvency of Gibraltar, the financial ability of Gibraltar to pay out the full remaining coverage attributable to any Policy Year or that sufficient coverage remains to pay any allowed PI Claim in full.*

A.     **Overview of the Mandatory Mediation Procedures.**

The Plan imposes a mandatory mediation program, in which the PI Claimants and Liquidating Trustee shall meet directly with a mediator. The goal is to avoid the significant economic burdens and delay that would be involved in formal litigation and to arrive at an agreed upon, liquidated, Allowed Claim. The process is, therefore, designed to preserve Gibraltar's limited, remaining insurance resources for the benefit of the Estates and the PI Claimants. If after fully following these mediation procedures, the parties fail to reach agreement as to the amount of a liquidated Allowed PI Claim, then the PI Claimant shall be allowed to have its claim tried before the United States District Court pursuant to the rules of that court.

While mediation under the procedures set forth below will be far less expensive than traditional litigation, there are nevertheless associated costs. These costs, including mediators' fees and expenses, attorney's fees for counsel to the Liquidating Trust, costs attendant to the Mediation Conferences, such as phone and/or video-teleconferencing costs, reasonable travel and

3

Exhibit "F"

lodging costs of the mediator and counsel for the Liquidating Trustee incurred in attending a Mediation Conference, will be charged to the coverage provided under the applicable Gibraltar Policy and paid from the available Gibraltar Policy proceeds for the Policy Year in question.  For example, all such costs associated with the mediations for Policy Year 2004 will be paid in full from the 2004 Gibraltar Policy proceeds.

**B.      PI Claims Will be Classified and Mediated According to Policy Year.**

All PI Claimants in a given Policy Year will be channeled through a mediation process with separate Mediation Conferences for each PI Claimant in that year.  There will be a different mediation session for each Policy Year, though the mediation procedures will generally be the same for all Policy Years.

Once the mediations for a given Policy Year are completed and, assuming the claims as to all PI Claimants in that Policy Year have been liquidated, the Liquidating Trustee may, in his discretion, begin the distribution of Gibraltar Policy proceeds to Claimants with allowed PI Claims in that year alone without regard to whether the PI Claims in any other Policy Year have been liquidated or allowed.  Alternately, the Liquidating Trustee may wait until PI Claims in other Policy Years, or PI Claims in all Policy Years have been liquidated, before making distributions of Gibraltar Policy proceeds

**C.      Selection of Mediator and Alternate Mediator.**

The Liquidating Trustee will select a mediator and an alternate mediator for each Policy Year from either:  (i) the panel maintained by the United States Bankruptcy Court for the Central District of California of qualified professionals who have volunteered and been chosen to serve as mediators in bankruptcy cases, adversary proceedings and other disputes or, (ii) such other qualified mediator experienced in mediating disputed claims.  The mediator will mediate each PI Claim in the Policy Year for which he/she has been assigned.

**D.      Notice of Mediation.**

Once a Final Order has been entered resolving any Coverage Dispute, the Liquidating Trustee shall cause a Notice of Mediation in Fleetwood Bankruptcy Case to be served by first class mail on counsel of record for each PI Claimant if available, or in the absence of information about counsel, on the last known address for the PI Claimant, and also any provider of excess insurance.  The notice shall include the following:

1.  The name and contact information of the mediator designated to conduct the mediation concerning the PI Claimant's claim.

2.  The date, time and place of the Mediation Conference.

3.  The procedures that will be followed during the Mediation Conference.

4.  Who shall attend the Mediation Conference on behalf of each party.

5.   The materials or exhibits that should be provided to the mediator before the Mediation Conference and any issues or matters that it would be helpful to have the parties address in their written mediation statements.

The mediator may, in his/her discretion, also set a Pre-Mediation Tele-Conference to discuss the above matters.

Unless, in the discretion of the mediator, attendance by telephone or videoconference is permitted, counsel for the Liquidating Trustee, the PI Claimant and authorized representatives of any carrier providing excess coverage shall each personally attend the Mediation Conference and any subsequent session(s) of that conference, unless excused by the mediator.

The Mediation Conference shall proceed informally.  No discovery shall be taken or permitted in connection with the Mediation Conference without the mediator's express approval. The rules of evidence shall not apply.  There shall be no formal examination or cross-examination of witnesses.  The mediator shall have the broadest possible discretion to conduct the Mediation Conference in the manner and style of the mediator's choosing, with the goal of reaching an agreement as to the liquidated amount of the PI Claim.

**5.      Claims Resolved Through the Mediation Process.**

If the parties reach agreement as to the liquidated amount of a PI Claim, the Liquidating Trustee shall prepare a written stipulation to be executed by the parties and the mediator that reflects the liquidated amount of the PI Claim and any other terms of the parties' agreement, including waiver of the PI Claimants' right to a deficiency Claim against the Estate, if that is part of the agreement.

The Liquidating Trustee and the PI Claimant may also resolve PI Claims outside of, or prior to, this mediation process.  The agreement reflecting the parties' compromise may be submitted to the Court for approval along with PI Claims resolved by the mediation process or separately.

Upon the completion of a the Mediation Conferences as to a particular Policy Year, the Liquidating Trustee shall file a motion with the Court seeking approval of the agreement(s) of the parties and reporting whether all PI Claims within that Policy Year have been resolved or whether further proceedings are required to resolve any disputed PI Claim.

**6.      Disposition of Claims Not Resolved Through Mediation.**

If after completing these procedures, a PI Claimant and the Liquidating Trustee fail to reach agreement as to the amount of an allowed liquidated PI Claim, and then the Liquidating Trustee shall take the appropriate actions to cause the transfer of the claim dispute to the District Court as directed by the Bankruptcy Court.  The resolution of the PI Claim shall then be tried before the United States District Court pursuant to the rules of that Court.

5

Exhibit "F"

7.      **Payment of Resolved PI Claims and the Treatment of Deficiency Claims.**

After all PI Claims are liquidated, and after all costs associated with the mediation have been paid in full from the Gibraltar Policy applicable to that Policy Year, the Liquidating Trustee shall submit the liquidated PI Claims to Gibraltar for payment up to the limits of the remaining proceeds attributable to each Policy Year.

- The full remaining proceeds in any Policy Year are ***not*** being tendered to pay PI Claims in that year.  The liquidated amount of any PI Claim will be based on the merits of the PI Claim itself.  ***There is no assurance or representation that the full amount of the remaining proceeds in a given Policy Year will be used to pay liquidated PI Claims that occurred within that Policy Year***.

- ***The aggregate amount of allowed PI Claims within a particular Policy Year may exceed proceeds available***.  If after all PI Claims within a particular Policy Year are liquidated and allowed, the aggregate amount of all PI Claims within that Policy Year exceeds remaining policy proceeds, then the PI Claims in that Policy Year shall receive a pro rata distribution of available proceeds in that Policy Year.

- ***The Plan and these Mediation Procedures do not represent or assure that Gibraltar will remain solvent as determined under Bermuda law or otherwise have the financial ability to pay out the full remaining coverage attributable to any Policy.***  Gibraltar may become insolvent as a result of a number of reasons, including, but not limited to, demands on other polices issued by Gibraltar as to the Debtors' workers' compensation liability or the amount of allowed PI Claims in several policy years exceeding historical amounts and the reserves established.

- If Gibraltar is unable to pay the full amount the allowed PI Claims within a Policy Year due to the overall financial condition Gibraltar or otherwise, then all allowed PI Claims overall shall receive a distribution of proceeds and/or other assets of Gibraltar on a pro rata basis based on the assets of Gibraltar and in compliance with Bermuda law.

**The timing of the distributions of Gibraltar Policy proceeds is within the discretion of the Liquidating Trustee.**  Once all mediations as to PI Claims in a given Policy Year are completed and PI Claims have been liquidated, the Liquidating Trustee may, in its discretion, begin the distribution of Gibraltar Policy proceeds for that year without regard to whether the PI Claims in any other Policy Year have been liquidated or allowed, or he may wait until PI Claims in other Policy Years, or all Policy Years have been liquidated, before making distributions of Gibraltar Policy proceeds.

To the extent the allowed and liquidated amount of any PI Claim is not paid in full from the remaining proceeds of a Gibraltar Policy and/or excess insurance if coverage is available as to the allowed PI Claim within a given Policy Year, and if a PI Claimant has not agreed to waive any deficiency claim against the Estate, **then the amount of the Allowed PI Claim that is not paid from Gibraltar proceeds or excess insurance coverage shall be an Allowed General Unsecured Claim in Class 8 which shall be treated as provided in the Plan.**

8.      **Any Dispute Concerning these Procedures Shall be Resolved by the Bankruptcy Court.**

Any dispute as to these Mediation Procedures or the action of the mediator or any matter related thereto shall be resolved by the United States Bankruptcy Court pursuant to the Plan, the United States Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

7

Exhibit "F"

**Schedule 1.**
**Products Liability Insurance Layers – Primary (with reinsurance) and**
**Excess – 2000-03**

| | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|

**EXCESS**

| 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|
| Gerling $50.0 million | Gerling $50.0 million | Zurich $25 million | Zurich $42.5 million |
| | | Gerling $25 million | |
| Lexington (AIG) $35 million | Lexington (AIG) $35 million | Swiss Re $35 million | National Union $50 million |
| Swiss RE $7.5 million | Swiss RE $7.5 million | National Union $7.5 million | |

**PRIMARY**

| 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|
| New Hampshire $2.5 million | New Hampshire $2.5 million | Gibraltar $7.5 million | Gibraltar $7.5 million |
| Swiss RE $2 million | | | |
| Gibraltar $3 million | Gibraltar $5 million | | |

| Available Proceeds Remaining in Primary Layer | Gibraltar Exhausted | Gibraltar Exhausted?? $2,635,860 | Gibraltar Exhausted?? $3,908,920 | Gibraltar Exhausted?? $4,756,838 |
|---|---|---|---|---|

**Notes:**
- Gibraltar provided the $7.5 million primary layer of insurance in these Policy Years.
- For Policy Years 2000 and 2001, Gibraltar purchased third party reinsurance policies from Swiss Re International Business Insurance Company Limited and New Hampshire Insurance Company Per AIG Europe (UK) Limited. Therefore, Gibraltar's net exposure was less than the $7.5 million aggregate within the primary layer as shown above.
- The Debtor purchased excess coverage in 2000-2003 from Lexington Insurance Company, Gerling, Swiss Re, Zurich and National Union Fire Insurance Company of Pittsburgh, as depicted. In 2000-2003 the excess layer of insurance provided "first dollar coverage once the primary layer was exhausted.

**Schedule 2.**
**Products Liability Insurance Layers – Primary and Excess – 2004-08**



**Notes:** For each of these Policy Years, the Debtors purchased excess coverage from Zurich, Starr Excess (AIG), AIG CAT, and American International Specialty Lines Insurance Company (ASLIC), in the amounts and for the Policy Years depicted above. The excess layer only covers the amount by which any single claim exceeds $5.0 million. The excess layer does not provide coverage in the aggregate, nor does it cover defense costs

9

**Schedule 3**
**Products Liability Insurance Layers—Primary and Excess—for Years with Open Claims
Occurring Prior to 2000**



**Notes:**  In each of these policy years, Gibraltar insures up to $5 million in aggregate and $500,000 per occurrence. However Fleetwood also obtained a primary (supplemental) policy with Lexington, such that any claim (including defense costs) in excess of $500,000 is covered (up to an aggregate of $4.5 million).

100711907_1.DOC

10

# EXHIBIT "G"

## EXHIBIT 13A-1

| Bond Type | MLB | MPP | MSB | WCB |
|---|---|---|---|---|
| | K06814888 | K07932522 | K07932510 | K06884957 |
| | K06814621 | | K07932662 | K06947451 |
| | K06814670 | | | |
| | K0681489A | | | |
| | K07932637 | | | |
| | K06814700 | | | |
| | K06814748 | | | |
| | K06814773 | | | |
| | K06814797 | | | |
| | K06815042 | | | |
| | K06815054 | | | |
| | K0644152A | | | |
| | K06441531 | | | |
| | K06441592 | | | |
| | K06441609 | | | |
| | K07244423 | | | |
| | K07932509 | | | |
| | K06884763 | | | |
| | K07243996 | | | |
| | K06815017 | | | |
| | K06814943 | | | |
| | K06815029 | | | |
| | K06814591 | | | |
| | K06814955 | | | |
| | K06815078 | | | |
| | K06814608 | | | |
| | K0724440A | | | |
| | K06884891 | | | |
| | K06947712 | | | |
| | K06814992 | | | |
| | K0681492A | | | |
| | K06442225 | | | |
| | K0713485A | | | |
| | K07244198 | | | |
| | K06884787 | | | |
| | K07024538 | | | |
| | K06814566 | | | |
| | K06884878 | | | |
| | K06884696 | | | |
| | K06814864 | | | |
| | K06441543 | | | |
| | K06441567 | | | |
| | K06441579 | | | |
| | K06441580 | | | |
| | K07932625 | | | |
| | K07932492 | | | |
| | k06814979 | | | |
| | K06814906 | | | |
| | K07574071 | | | |
| | K0681475A | | | |
| | K06814803 | | | |
| | Ko6947153 | | | |
| | K07573960 | | | |
| | K07932455 | | | |
| | K06884830 | | | |
| | K06814475 | | | |
| | K07024228 | | | |
| | K06884726 | | | |
| | K06884799 | | | |
| | K07573984 | | | |

**Exhibit 13A-2**

| Projected LC Proceeds Release Date | Bond # | Bond Type | Original Bond Amount | Current Bond Amount | Collateral Currently Held | Settlement Adjustment | Collateral Currently Held | Proceeds Released | LC Proceeds Held by ACE |
|---|---|---|---|---|---|---|---|---|---|
| Opening Amount | | | | | | | | | $ 8,870,500 |
| | K07932510 | MSB | 3,500,000 | 3,500,000 | 5,250,000 | 875,000 | 4,375,000 | (3,500,000) | |
| | K07932522 | MPP | 1,250,000 | 1,250,000 | 1,250,000 | - | 1,250,000 | (1,250,000) | |
| | K06814888 | MLB | 30,000 | - | 30,000 | 15,000 | 15,000 | (15,000) | |
| | K06814621 | MLB | 100,000 | - | 100,000 | 50,000 | 50,000 | (50,000) | |
| | K06814670 | MLB | 100,000 | - | 100,000 | 50,000 | 50,000 | (50,000) | |
| | K0681489A | MLB | 30,000 | - | 30,000 | 15,000 | 15,000 | (15,000) | |
| | K07932637 | MLB | 30,000 | - | 30,000 | 15,000 | 15,000 | (15,000) | |
| | K06814700 | MLB | 75,000 | - | 75,000 | 37,500 | 37,500 | (37,500) | |
| | K06814748 | MLB | 75,000 | - | 75,000 | 37,500 | 37,500 | (37,500) | |
| | K06814773 | MLB | 75,000 | - | 75,000 | 37,500 | 37,500 | (37,500) | |
| | K06814797 | MLB | 75,000 | - | 75,000 | 37,500 | 37,500 | (37,500) | |
| | | | | | | | | $ (5,045,000) | |
| September 30, 2010 | | | | | | | | $ 3,825,500 | |
| | K06815042 | MLB | 100,000 | - | 100,000 | 50,000 | 50,000 | (50,000) | |
| | K06815054 | MLB | 100,000 | - | 100,000 | 50,000 | 50,000 | (50,000) | |
| | K0644152A | MLB | 100,000 | - | 100,000 | 50,000 | 50,000 | (50,000) | |
| | K06441531 | MLB | 100,000 | - | 100,000 | 50,000 | 50,000 | (50,000) | |
| | K06441592 | MLB | 100,000 | - | 100,000 | 50,000 | 50,000 | (50,000) | |
| | K06441609 | MLB | 100,000 | - | 100,000 | 50,000 | 50,000 | (50,000) | |
| | K07244423 | MLB | 50,000 | - | 50,000 | 25,000 | 25,000 | (25,000) | |
| | K07932509 | MLB | 50,000 | - | 50,000 | 25,000 | 25,000 | (25,000) | |
| | K06884763 | MLB | 100,000 | - | 100,000 | 50,000 | 50,000 | (50,000) | |
| | K07243996 | MLB | 100,000 | - | 100,000 | 50,000 | 50,000 | (50,000) | |
| | | | | | | | | $ (450,000) | |
| October 30, 2010 | | | | | | | | $ 3,375,500 | |
| | K07932510 | MSB | 3,500,000 | - | - | - | 875,000 | (875,000) | |
| | K06815017 | MLB | 65,000 | - | 65,000 | 32,500 | 32,500 | (32,500) | |
| | K06814943 | MLB | 100,000 | - | 100,000 | 50,000 | 50,000 | (50,000) | |
| | K06815029 | MLB | 65,000 | - | 65,000 | 32,500 | 32,500 | (32,500) | |
| | K06814591 | MLB | 100,000 | - | 100,000 | 50,000 | 50,000 | (50,000) | |
| | | | | | | | | $ (1,040,000) | |
| June 30, 2011 | | | | | | | | $ 2,335,500 | |
| | K06814955 | MLB | 100,000 | - | 100,000 | 50,000 | 50,000 | (50,000) | |
| | K06815078 | MLB | 100,000 | - | 100,000 | 50,000 | 50,000 | (50,000) | |
| | K06814608 | MLB | 100,000 | - | 100,000 | 50,000 | 50,000 | (50,000) | |
| | K0724440A | MLB | 50,000 | - | 50,000 | 25,000 | 25,000 | (25,000) | |
| | K06884891 | MLB | 100,000 | - | 100,000 | 50,000 | 50,000 | (50,000) | |
| | K06947712 | MLB | 100,000 | - | 100,000 | 50,000 | 50,000 | (50,000) | |
| | K06814992 | MLB | 65,000 | - | 65,000 | 32,500 | 32,500 | (32,500) | |
| | K0681492A | MLB | 100,000 | - | 100,000 | 50,000 | 50,000 | (50,000) | |
| | | | | | | | | $ (357,500) | |
| October 30, 2011 | | | | | | | | $ 1,978,000 | |
| | K06884957 | WCB | 800,000 | 800,000 | 800,000 | | 800,000 | (800,000) | |
| | K06947451 | WCB | 678,000 | 678,000 | 678,000 | | 678,000 | (678,000) | |
| | | | | | | | | $ (1,478,000) | |
| Undetermined Date | | | | | | | | $ 500,000 | |
| | Expense Claim Reserve | | | | 500,000 | - | 500,000 | (500,000) | |
| | | | | | | | | $ (500,000) | |
| Undetermined Date | | | | | | | | $ - | |

**Exhibit 13A-3**

| MLB Bond Tail Period Termination Dates | September 30, 2010 | October 30, 2010 | June 30, 2011 | October 30, 2011 |
|---|---|---|---|---|
| | K06814888 | K06815042 | K06815017 | K06814955 |
| | K06814621 | K06815054 | K06814943 | K06815078 |
| | K06814670 | K0644152A | K06815029 | K06814608 |
| | K0681489A | K06441531 | K06814591 | K0724440A |
| | K07932637 | K06441592 | | K06884891 |
| | K06814700 | K06441609 | | K06947712 |
| | K06814748 | K07244423 | | K06814992 |
| | K06814773 | K07932509 | | K0681492A |
| | K06814797 | K06884763 | | |
| | | K07243996 | | |

DMWEST #7721176 v1

| In re:<br>FLEETWOOD ENTERPRISES, INC.<br><br><div align="right">Debtor(s).</div> | CHAPTER 11<br><br>CASE NUMBER 09-bk-14254-MJ |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2049 Century Park East, Suite 2100, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as
**FOURTH AMENDED JOINT PLAN OF LIQUIDATION OF FLEETWOOD ENTpERPRISES, INC.**
**AND ITS AFFILIATED DEBTORS AND THE OFFICIAL COMMITTEE OF CREDITORS**
**HOLDING UNSECURED CLAIMS DATED AUGUST 5, 2010**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General
Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink
to the document. On ___August 5, 2010___ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and
determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email
address(es) indicated below:

<div align="right">☒  Service information continued on attached page</div>

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On _____ I served the following person(s) and/or entity(ies) at the last known
address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed
envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as
follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours
after the document is filed.

<div align="right">☒  Service information continued on attached page</div>

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or
entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____August 5, 2010_____ I served the
following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method),
by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery
on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

<div align="right">☒  Service information continued on attached page</div>

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 5, 2010 | Bambi Clark | /s/ Bambi Clark |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                                **F 9013-3.1**

| In re:<br>FLEETWOOD ENTERPRISES, INC.<br><br><div align="right">Debtor(s).</div> | CHAPTER 11<br><br>CASE NUMBER 09-bk-14254-MJ |
|---|---|

## BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

- Andrew K Alper    aalper@frandzel.com, efiling@frandzel.com;ekidder@frandzel.com
- Dennis G Bezanson    dennis.bezanson@bbklaw.com,
  arthur.johnston@bbklaw.com;kenneth.burgess@bbklaw.com;bknotices@bbklaw.com;dennis.bezanson@bbklaw.com
- Mark S Blackman    MBlackman@AlpertBarr.Com
- Bradley D Blakeley    bblakeley@blakeleyllp.com
- William C Bollard    eal@jbblaw.com, kmg@jbblaw.com;dritchie@jbblaw.com;william@jbblaw.com
- Timothy Bortz    tbortz@state.pa.us
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Bradley E Brook    bbrook@bbrooklaw.com, jimmy@bbrooklaw.com
- Rebecca J Callahan    rcallahan@callahanlaw.biz
- Charles Canter    charles.canter@usdoj.gov
- Craig C Chiang    cchiang@buchalter.com
- Louis J Cisz    lcisz@nixonpeabody.com
- Fred M Cohen    fmcbktaxlaw@hotmail.com
- Sidney A Cotlar    scotlar@hhkc.com
- Peter A Davidson    pdavidson@ecjlaw.com
- Melissa Davis    mdavis@shbllp.com
- Caroline Djang    crd@jmbm.com
- Lynsey M Eaton    leaton@gglts.com
- Richard T Egger    richard.egger@bbklaw.com
- Amanda N Ferns    aferns@fernslaw.com
- Travis W Feuerbacher    tfeuerbacher@gglts.com
- Abram Feuerstein    abram.s.feuerstein@usdoj.gov
- Wayne S Flick    wayne.s.flick@lw.com, colleen.rico@lw.com
- Donald L Gaffney    dgaffney@swlaw.com
- Jeffrey K Garfinkle    bkgroup@buchalter.com, jgarfinkle@buchalter.com
- Matthew B George    mbg@girardgibbs.com
- Kenneth A Glowacki    kglowacki@gibsondunn.com
- Julian I Gurule    jgurule@milbank.com
- Jeffrey T Gwynn    jgwynn@gwynn-law.com
- Michael J Heyman    michael.heyman@klgates.com
- Mark D Houle    mark.houle@pillsburylaw.com
- Sophie A Hubscher    sophie@korperlemonlaw.com
- Jay W Hurst    jay.hurst@oag.state.tx.us, sherri.simpson@oag.state.tx.us
- Yale K Kim    ykim@allenmatkins.com
- Alan J Kornfeld    akornfeld@pszjlaw.com, akornfeld@pszjlaw.com
- Solmaz Kraus    skraus@gibsondunn.com, skraus@gibsondunn.com
- John F Kurtz    jkurtz@hawleytroxell.com
- Daniel C Lapidus    dan@lapiduslaw.com
- Jean LeBlanc    jleblanc@mwe.com
- Scott Lee    slee@lbbslaw.com
- Ira M Levee    ilevee@lowenstein.com
- Elizabeth A Lossing    elizabeth.lossing@usdoj.gov
- Donald K Ludman    dludman@brownconnery.com
- Gregory O Lunt    gregory.lunt@lw.com
- Rose D Manos    manos@nexsenpruet.com
- Rose D Manos    rmanos@nexsenpruet.com
- Frank F McGinn    ffm@bostonbusinesslaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re:<br>FLEETWOOD ENTERPRISES, INC.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 09-bk-14254-MJ |
| --- | --- |

- David W. Meadows    david@davidwmeadowslaw.com
- James P Menton    jmenton@pwkllp.com
- Craig Millet    cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com
- Christopher Minier    becky@ringstadlaw.com
- Byron Z Moldo    bmoldo@ecjlaw.com, tmelendez@ecjlaw.com
- John D Monte    montelaw@earthlink.net
- Harvey M Moore    hmoore@bidnakeys.com
- Randall P Mroczynski    randym@cookseylaw.com
- Randy P Orlik    rorlik@coxcastle.com
- Todd L Padnos    tpadnos@dl.com, dkennedy@dl.com;sholstrom@dl.com;;tboothe@dl.com
- Leo D Plotkin    lplotkin@lsl-la.com, dsmall@lsl-la.com
- David M Poitras    dpoitras@jmbm.com
- Kimberly A Posin    kim.posin@lw.com
- Samuel Price    sprice@pooleshaffery.com
- Hamid R Rafatjoo    hrafatjoo@venable.com,
  ataylor@venable.com;revey@venable.com;jnassiri@venable.com;bclark@venable.com
- Michael Reed    othercourts@mvbalaw.com
- Jeffrey H. Reeves    jreeves@gibsondunn.com
- Michael B Reynolds    mreynolds@swlaw.com, kcollins@swlaw.com
- Christopher P Ridout    c.ridout@ridoutlyonlaw.com
- Martha E Romero    Romero@mromerolawfirm.com
- Diane W Sanders    austin.bankruptcy@publicans.com
- Scott A Schiff    sas@soukup-schiff.com
- Mark C Schnitzer    mschnitzer@rhlaw.com
- Daniel R Shapiro    dnalaw@sbcglobal.net
- Pamela E Singer    psinger@pszjlaw.com, ksuk@pszjlaw.com
- Ramesh Singh    claims@recoverycorp.com
- Richard A Solomon    richard@sgsslaw.com
- Howard Steinberg    hsteinberg@irell.com, awsmith@irell.com
- Jason D Strabo    jstrabo@venable.com, losangelestrialdocket@mwe.com
- Derrick Talerico    dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com
- Michael H Traison    traison@millercanfield.com
- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov
- Anne A Uyeda    auyeda@gibsondunn.com
- Gary R Wallace    gwallace@hbblaw.com
- Madeleine C Wanslee    mwanslee@gustlaw.com, rstein@gustlaw.com
- Michael D Warner    echou@warnerstevens.com
- Martha A Warriner    mwarriner@rhlaw.com
- Sharon Z Weiss    sharon.weiss@hro.com
- Joseph M Welch    jwelch@buchalter.com
- Elizabeth Weller    dallas.bankruptcy@publicans.com
- Christopher T Williams    ctwilliams@venable.com, jcontreras@venable.com
- Rebecca J Winthrop    winthropr@ballardspahr.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                          F 9013-3.1

| In re:<br>FLEETWOOD ENTERPRISES, INC.<br><br><div align="right">Debtor(s).</div> | CHAPTER 11<br><br>CASE NUMBER 09-bk-14254-MJ |
|---|---|

**SERVED BY U.S. MAIL**

| | |
|---|---|
| **Office of the U.S. Trustee**<br>Charles Canter<br>Office of the U.S. Trustee<br>3685 Main Street, Suite 300<br>Riverside, Ca 92501 | |
| **Secured Creditor**<br>Bank of America, N.A.<br>55 South Lake Avenue, Suite 900<br>Pasadena, CA 91101 | **Secured Creditor**<br>Barclays Capital Inc.<br>Attn: John Clifford<br>222 Broadway<br>New York, NY 10038 |
| **Secured Creditor**<br>BNP Paribas Prime Brokerage, Inc.<br>Attn: Gene Banfi, Vice President<br>One Bryant Park, 8th Floor<br>New York, NY 10036 | **Secured Creditor**<br>Brown Brothers Harriman & Co.<br>Attn: Dorota Malkiewicz<br>525 Washington Blvd.<br>New Port Towers<br>Jersey City, NJ 07302 |
| **Secured Creditor**<br>Credit Suisse Securities (USA) Inc.<br>Issuer Service<br>c/o ADP Proxy Services<br>51 Mercedes Way<br>Edgewood, NY 11717 | **Secured Creditor**<br>First Clearing Corporation, LLC<br>Attn: Kristie Daniel<br>One North Jefferson Street<br>St. Louis, MO 63103 |
| **Secured Creditor**<br>Goldman Sachs Execution & Clearing, LP<br>Attn: Anthony Bruno<br>Proxy Department<br>30 Hudson Street<br>Jersey City, NJ 07302 | **Secured Creditor**<br>JP Morgan Chase Bank, NA<br>Attn: Sanjay Ghuliani<br>Paradigm, B Wing, Floor 6<br>Mindspace, MaLad (W)<br>MUMBAI INDIA |
| **Secured Creditor**<br>JP Morgan Clearing Corp.<br>Attn: Vincent Marzella<br>One Metrotech Center North, 4th Floor<br>Brooklyn, NY 11201-3862 | **Secured Creditor**<br>JP Morgan Securities, Inc.<br>Attn: Eric Alsop<br>500 Stanton Christiana Road<br>Newark, DE 19713 |
| **Secured Creditor**<br>Jeffries & Company, Inc.<br>Attn: Charles Errigo<br>Harborside financial Center<br>705 Plaza 3<br>Jersey City, NJ 07311 | **Secured Creditor**<br>Morgan Stanley & Co. Inc.<br>Attn: Michelle Ford<br>901 South Bond Street, 6th Floor<br>Baltimore, MD 21231 |
| **Secured Creditor**<br>SSB – Trust Custody<br>Attn: Ed Chaney<br>1200 Crown colony Drive<br>Quincy, MA 02169 | **Secured Creditor**<br>State Street Bank and Trust Company<br>Attn: Paul desharnais<br>1776 Heritage Drive<br>North Quincy, MA 02171 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                **F 9013-3.1**

| In re:<br>FLEETWOOD ENTERPRISES, INC.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 09-bk-14254-MJ |
|---|---|

| | |
|---|---|
| **Secured Creditor**<br>The Bank of New York Mellon / Mellon Trust of<br>New England, N.A.<br>Attn: Melissa Tarasovich<br>BNY Mellon Asset Servicing<br>525 william Penn Place, Suite 0400<br>Pittsburgh, PA 15259 | **Secured Creditor**<br>Union Bank of California, N.A.<br>Attn: Maria Bragge<br>350 California Street, 8th Floor<br>San Francisco, CA 94104 |
| **RSN – State Farm Mutual Automobile Ins. Co.**<br>Dean P. Sperling<br>Law Offices of Dean P. Sperling<br>201 East Sandpointe, Suite 220<br>Santa Ana, CA 92707-57425 | **RSN – Style Crest, Inc.**<br>Jean Robertson<br>Tiiara N.A. Patton<br>Calfee, Halter & Griswold LLP<br>1400 KayBank Center<br>800 Superior Avenue<br>Cleveland, OH 44114-2688 |
| **RSN**<br>Tennessee Department of Revenue<br>c/o TN Attorney General's Office, Bankruptcy Division<br>P.O. Box 20207<br>Nashville, TN 37202-0207 | **RSN**<br>Travelers<br>National Accounts<br>Attn: Chantel Pinnock<br>1 Tower Square – 5MN<br>Hartford, CT 06183-4044 |
| **RSN – IBM Corporation**<br>Beverly H. Shideler<br>Two Lincoln Centre<br>Oakbrook Terrace, IL 60181 | **RSN**<br>Patrick Barrows<br>721 N. 8th<br>Ellin, OR 97827 |
| **Counsel for Pima County, AZ**<br>Terri A. Roberts<br>Pima County Attorney's Office<br>32 N. Stone Avenue, Ste. 2100<br>Tucson, AZ 85701 | **Counsel for North Carolina Self-Insurance Security Assoc.**<br>Charles C. Kyles<br>Stuart Law Firm PLLC<br>1033 Wade Street, Ste. 202<br>Raleigh, NC 27605-115 |
| **Counsel for First American Trust Company as Trustee of the Century Trust**<br>Howard M. Bidna<br>Richard D. Keys<br>Bidna & Keys APLC<br>5120 Campus Drive<br>Newport Beach, CA 92660 | Vincent E. Rhynes (Pro-Se)<br>1514 W. Manchester Ave. #5<br>Los Angeles, CA 90047 |
| Counsel for Lumbermen's Underwriting Alliance<br>Mindy Appel, Esquire<br>1905 N.W. Corporate Blvd.<br>Boca Raton, FL  33431 | |
| Securities and Exchange Commission<br>5670 Wilshire Blvd., 11th Floor<br>Los Angeles, CA 90036 | Internal Revenue Service<br>P.O. Box 21126<br>Philadelphia, PA 19114 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**

| In re:<br>FLEETWOOD ENTERPRISES, INC.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 09-bk-14254-MJ |
|---|---|

**SERVED BY E-MAIL**

| **Counsel for Debtors**<br>Craig H. Millet<br>cmillet@gibsondunn.com<br>Kenneth A. Glowacki<br>kglowacki@gibsondunn.com<br>Solmaz Kraus<br>skraus@gibsondunn.com<br>Gibson, Dunn & Crutcher LLP<br>3161 Michelson Drive<br>Irvine, CA 92612-4412 | **RSN – Westchester Fire Insurance Company**<br>Rebecca J. Winthrop<br>winthropr@ballardspahr.com<br>Ballard Spahr Andrews & Ingersoll, LLP<br>2029 Century Park East, Suite 800<br>Los Angeles, CA 90067-2909 |
|---|---|
| **RSN – Bluelinx Corporation**<br>Michael H. Traison, Esq.<br>traison@millercanfield.com<br>Miller, Canfield, Paddock and Stone, PLC<br>225 W. Washington, Suite 2600<br>Chicago, IL 60606 | **RSN – Office of Unemployment Compensation**<br>Timothy A. Bortz<br>tbortz@state.pa.us<br>Department of Labor and Industry<br>Bankruptcy & Compliance4 Unit<br>625 Cherry Street – Room 203<br>Reading, PA 19602-1184 |
| **RSN – Jessee Browder, et al.**<br>Michael S. Etkin<br>metkin@lowenstein.com<br>Ira M. Levee<br>ilevee@lowenstein.com<br>Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ 07068 | **RSN – Whippoorwill Associates, Inc.**<br>David R. Zaro<br>dzaro@allenmatkins.com<br>Yale K. Kim<br>ykim@allenmatkins.com<br>Allen Matkins Leck Gamble Mallory & Natsis LLP<br>515 S. Figueroa Street, 9th Floor<br>Los Angeles, CA 90071-3309 |
| **RSN – Deutsche Bank Trust Company Americas**<br>Todd L. Padnos<br>tpadnos@dl.com<br>Paul S. Jasper<br>pjasper@dl.com<br>Danielle T. Kennedy<br>dkennedy@dl.com<br>Dewey & LeBoeuf LLP<br>1950 University Avenue, Suite 500<br>East Palo Alto, CA 94303 | **RSN – California Self-Insurers' Security Fund**<br>Daniel R. Sovocool<br>dsovocool@nixonpeabody.com<br>Louis J. Cisz, III<br>lcisz@nixonpeabody.com<br>Gina M. Fornario<br>gfornario@nixonpeabody.com<br>Nixon Peabody LLP<br>One Embarcadero Center, 18th Floor<br>San Francisco, CA 94111 |
| **RSN – City of Waco et al.**<br>Michael Reed<br>othercourts@mvbalaw.com<br>McCreary, Veselka, Bragg & Allen, P.C.<br>P.O. Box 1269<br>Round Rock, TX 78680 | **RSN – Dallas County / Tarrant County**<br>Elizabeth Weller, Esq.<br>dallas.bankruptcy@publicans.com<br>Linebarger Goggan Blair & Sampson, LLP<br>2323 Bryan Street, Suite 1600<br>Dallas, TX 75201 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                                      **F 9013-3.1**

| In re:<br>FLEETWOOD ENTERPRISES, INC.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 09-bk-14254-MJ |
|---|---|

| | |
|---|---|
| **RSN – Dave Carter & Associates, Inc.**<br>Jeffrey T. Gwynn<br>jgwynn@gwynn-law.com<br>The Gwynn Law Firm, PC<br>455 W. La Cadena Drive, Suite 18<br>Riverside, CA 92501 | **RSN – Deutsche Bank Trust Company Americas**<br>Peter A. Ivanick<br>pivanick@dl.com<br>Allison H. Weiss<br>aweiss@dl.com<br>Dewey & LeBoeuf LLP<br>1301 Avenue of the Americas<br>New York. NY 10019 |
| **RSN – CTF5-Citrus Park LLC**<br>Matthew F. Kennedy<br>mkennedy@dgdk.com<br>Danning, Gill, Diamond & Kollitz LLP<br>2029 Century Park East, Third Floor<br>Los Angeles, CA 900067-2904 | **RSN – Deutsche Bank Trust Company Americas**<br>Deutsche Bank Trust Company Americas<br>Stanley Burg<br>stan.burg@db.com<br>Rodney Gaughan<br>rodney.gaughan@db.com<br>60 Wall Street, MS NY C60-2720<br>New York, NY 10005 |
| **RSN – Whippoorwill Associates, Inc.**<br>Joseph P. Glynn<br>joseph.glynn@cwt.com<br>Cadwalader. Wickersham & Taft LP<br>One World Financial Center<br>New York, NY 10281 | **RSN – Harris County, Fort Bend County**<br>**and Liberty County**<br>John P. Dillman<br>houston_bankruptcy@publicans.com<br>Linebarger Goggan Blair & Sampson, LLP<br>P.O. Box 3064<br>Houston, TX 77253-3064 |
| **RSN – GE Commercial Distribution Finance Corp. and**<br>**Gelco Corporation dba GE Capital Fleet Services**<br>Andrew K. Alper<br>aalper@frandzel.com<br>Frandzel Robins Bloom & Csato LC<br>6500 Wilshire Blvd., 17th Floor<br>Los Angeles, CA 90048-4920 | **RSN – Bank of America, N.A.**<br>Gregory O. Lunt<br>gregory.lunt@lw.com<br>Andrew a. Faye<br>andrew.faye@lw.com<br>Kimberly A. Posin<br>kim.posin@lw.com<br>Latham & Watkins LLP<br>355 South Grand Avenue<br>Los Angeles, CA 90071-1560 |
| **RSN – Hewlett-Packard Company**<br>Ramona Neal<br>ramona.neal@hp.com<br>Hewlett-Packard Company<br>11311 Chinden Blvd.<br>Mailstop 314<br>Boise, ID 83714-0021 | **RSN – Hewlett-Packard Company**<br>Esmeralda Vargas<br>esmere.vargas@hp.com<br>Hewlett-Packard Company<br>Periferico Sur #6751<br>Tlaquepaque, Jalisco Mexico 45060 |
| **RSN – LazyDays RV Supercenter, Inc.**<br>Sharon Z. Weiss<br>sweiss@richardsonpatel.com<br>Richardson & Patel LLP<br>10900 Wilshire Blvd., Suite 500<br>Los Angeles, CA 90024 | **RSN**<br>Madeline C. Wanslee<br>mwanslee@gustlaw.com<br>Gust Rosenfeld, PLC<br>201 E. Washington, Suite 800<br>Phoenix, AZ 85004-2327 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**

| In re:<br>FLEETWOOD ENTERPRISES, INC.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 09-bk-14254-MJ |
|---|---|

| | |
|---|---|
| **RSN – McLennan County**<br>Diane W. Sanders<br>austin.bankruptcy@publicans.com<br>Linebarger Goggan Blair & Sampson LLP<br>P. O. Box 17428<br>Austin, TX 78760-7428 | **RSN – Westchester Fire Insurance Company**<br>Robert McL. Boote<br>boote@ballardspahr.com<br>Ballard Spahr Andrews & Ingersoll, LLP<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103-7599 |
| **RSN-Kendall County**<br>John T. Banks<br>jbanks@pbfcm.com<br>Perdue, Brandon, Fielder, Collins & Mott, LLP<br>3301 Northland Drive, Suite 505<br>Austin, TX 78731 | **RSN-National General Assurance Company**<br>Mark T. Young<br>myoung@donahoeyoung.com<br>Donahoe & Young LLP<br>25152 Springfield Court, Suite 345<br>Valencia, CA 91355-1096 |
| **RSN – The Bank of New York Mellon Trust Co., N.A.**<br>Mark D. Houle<br>mark.houle@pillsburylaw.com<br>Pillsbury Winthrop Shaw Pittman LLP<br>650 Town Center Drive. Suite 700<br>Costa Mesa, CA 92626-7122 | **RSN – North Pacific Group, Inc.**<br>George J. Cooper<br>jcooper@dunncarney.com<br>Dunn Carney Allen Higgins & Tongue LLP<br>851 SW Sixth, Suite 1500<br>Portland. OR 97204 |
| **RSN – Philips Products, Inc.**<br>Lawrence Bass<br>lbass@faegre.com<br>Faegre & Benson LLP<br>3200 Wells fargo Center<br>1700 Lincoln Street<br>Denver, CO 80203-4532 | **RSN – Power Gear**<br>Jean B. LeBlanc<br>jleblanc@mwe.com<br>McDermott Will & Emery LLP<br>2049 Century Park East, 38th Floor<br>Los Angeles, CA 90012-3218 |
| **RSN – Power Gear**<br>Nathan F. Coco<br>ncoco@mwe.com<br>Emily K. Harring<br>eharring@mwe.com<br>McDermott Will & Emery LLP<br>227 West Monroe Street, Suite 4700<br>Chicago, IL 60606 | **RSN – Whippoorwill Associates, Inc.**<br>John H. Thomson<br>johnh.thompson@cwt.com<br>Cadwalader, Wickersham & Taft LLP<br>1201 F Street, N.W.<br>Washington,. DC 20004 |
| **RSN – Parties in Interest Schechter v. Smith**<br>Ray A. Mandlekar<br>rmandlekar@themis.us.com<br>Themis PLLC<br>2305 Calvert Street, N.W.<br>Washington, DC 20008 | **RSN – Parties in Interest Schechter v. Smith**<br>Christopher J. Morosoff<br>cjmorosoff@morosofflaw.com<br>Law Offices of Christopher J. Morosoff<br>77735 California Drive<br>Palm Desert, CA 92211 |
| **RSN – County of San Bernardino**<br>Martha E. Romero<br>Romero@mromerolawfirm.com<br>Romero Law Firm<br>BMR Professional Building<br>6516 Bright Ave.<br>Whittier, CA 90601 | **RSN – Style Crest, Inc.**<br>David R. Weinstein<br>david.weinstein@hro.com<br>Sharon Z. Weiss<br>sharon.weiss@hro.com<br>Holme Roberts & Owen LLP<br>800 West Olympic Blvd., 4th Floor<br>Los Angeles, CA 90015 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**

| In re:<br>FLEETWOOD ENTERPRISES, INC.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 09-bk-14254-MJ |
|---|---|

| **RSN – Texas Comptroller of Public Accountants**<br>Jay W. Hurst<br>jay.hurst@oag.state.tx.us<br>Assistant Attorney General<br>Bankruptcy & Collections Division<br>P.O. Box 12548<br>Austin, TX 78711-2548 | **Counsel for Encore Partners, LLC**<br>Mark Bradshaw<br>mbradshaw@shbllp.com<br>Melissa R. Davis<br>mdavis@shbllp.com<br>Shulman Hodges & Bastian LLP<br>26632 Towne Centre Drive, Suite 300<br>Foothill Ranch, CA 92610-2808 |

**SERVED BY OVERNIGHT MAIL**

The Honorable Meredith A. Jury
United States Bankruptcy Court - Central District of California
3420 Twelfth Street, Suite 325
Riverside, CA 92501-3819

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                      **F 9013-3.1**